June 3, 2022
*Via CM/ECF and Hand Delivery*

The Honorable Karen B. Owens
US Bankruptcy Court for the District of Delaware
824 North Market Street
Wilmington, DE 19801

**Re:**  *24 Hour Fitness Worldwide, Inc. v. Continental Casualty Company et al*,
   Case No. 20-51051

Dear Judge Owens:

      Defendant Continental Casualty Inc. (CNA) brings to the Court's attention a discovery dispute with Plaintiff 24 Hour Fitness. Based on its understanding of the Court's preferred procedure for addressing discovery disputes, this letter contains both CNA's statement of the dispute and Plaintiff 24 Hour Fitness's counter-statement. CNA is prepared to submit a formal motion pursuant to Delaware Bankruptcy Court Local Rule 7026-1, and Plaintiff is prepared to respond, if the Court would prefer that the parties engage in motion practice to resolve this dispute.

**Defendant CNA's Position**

      CNA is seeking to take the depositions of Tony Ueber and Karl Sanft. Mr. Ueber and Mr. Sanft were, respectively, the CEO and COO of 24 Hour Fitness on March 16, 2020 when the company decided to close all of its fitness clubs nationwide. Mr. Sanft still works for 24 Hour Fitness as its CEO; Mr. Ueber is no longer employed by 24 Hour Fitness but plaintiff's counsel has indicated that it is representing him. The plaintiff has refused to provide deposition dates for either individual, claiming that CNA is not legally entitled to take their depositions. The parties have discussed this issue both in writing and by telephone, but have not been able to resolve it. As detailed below, CNA seeks to take these two individuals' depositions because deposition testimony taken in the case to date indicates that they are the only two identifiable people, other than the company's legal counsel, who can explain why the company closed its fitness clubs on March 16, 2020. The reason for the club closings is a threshold issue in the case, and some evidence elicited through discovery already suggests that the company's reason for closing its clubs may not be the reason stated in its Complaint.

      In the plaintiff's Complaint, it alleged that "Due to all the conditions set forth above, on March 16, 2020, Plaintiff had no choice but to close all of its club locations while it (and the government and medical professionals) worked to develop safe protocols for reopening, and was required to keep its club locations closed due to various governmental orders." Complaint (D.I. 1) at ¶ 40. The Plaintiff also alleged that "The presence of individuals who contracted or suffered from Covid-19, coupled with the prevalence of the disease in the community, caused physical loss of or damage to Plaintiff's business locations," id. at ¶ 41, and that "Due to this physical loss or damage, Plaintiff's operations were suspended and Plaintiff suffered, and continues to suffer, significant losses." Id. at ¶ 42. The Plaintiff also specifically alleged that some or all of the closings were the result of government orders. Id. at ¶ 61. The coverages invoked by the plaintiff in its Complaint are dependent upon, among other things, the reason that it closed its facilities.

For this reason, CNA has sought through discovery to determine the reason that the plaintiff closed its clubs nationwide on March 16, 2020. The Plaintiff identified three people in response to CNA's request that it identify people with knowledge of the matters alleged in the Complaint. CNA deposed two of those individuals: Dan Larson (identified by the Plaintiff as Environment, Health, and Safety Manager), and Matthew Piro (identified as Director of Club Operations). Another defendant in the case took a Rule 30(b)(6) deposition of the plaintiff; Mr. Larson testified as the corporate representative.

Both Mr. Piro and Mr. Larson testified that it was their understanding on the morning of March 16, 2020 that 24 Hour Fitness was not planning to close its clubs nationwide, and the decision to do so was made during the course of the day on March 16. Larson Tr. (Ex. 1) at 44-45; Piro Tr. (Ex. 2) at 86-87. Both Mr. Larson and Mr. Piro stated that they were not involved in the conversations that resulted in the decision that day to close the company's clubs nationwide, and were not aware of the reasoning. (Ex. 1 at 40, 46; Ex. 2 at 141). (Mr. Larson also confirmed that even though the facilities were "closed," staff were present in the facilities intermittently. This was true even in jurisdictions that had "shelter in place" orders in effect. (Ex. 1 at 51-52.) Testifying as the plaintiff's Rule 30(b)(6) corporate representative, Mr. Larson stated that the decision to close all of the plaintiff's facilities was made by "counsel and our executive leadership team," (Ex. 3 at 29), and when asked "what members of the senior executive management team participated in the decision to close all of the facilities," he indicated that he did not have a specific list but that when he referred to the senior management team, he would include in that group "Tony Ueber, who was our CEO. Karl Sanft, who was our chief operating officer, [and] our legal counsel." *Id*. at 30. Other than legal counsel, Mr. Ueber and Mr. Sanft are the only individuals identified by 24 Hour Fitness as having been likely participants in the decision to close the company's clubs nationwide on March 16, 2020. In that regard, this case is unlike "Apex doctrine" cases invoked by 24 Hour Fitness, where courts have limited depositions of high-ranking company officials who did not have direct knowledge that was not equally available from other sources. In this case, Mr. Ueber and Mr. Sanft are the only people with direct knowledge the plaintiff's witnesses could identify other than the company's legal counsel.

The Plaintiff's Complaint also alleges that many of its clubs were forced to close by government order, but the plaintiff's witnesses repeatedly insisted during their depositions that they considered government closure orders in their closure decisions but did not consider them binding. (Ex. 2 at 88-90, 128-129, 134-136; Ex. 3 at 96, 106-107).

Aside from CNA's right to inquire through discovery into the factual basis for the allegations in the Complaint, there is affirmative evidence that 24 Hour Fitness's nationwide closure on March 16, 2020 was not caused by the health and safety issues presented by Covid-19. 24 Hour Fitness was in financial distress before March 16, 2020. Its credit rating had been downgraded two levels by Moody's in December, 2019 (Ex. 2 at 110). A draft of talking points to be sent to club General Managers immediately after the March 16, 2020 national closing described the rationale for the closing entirely in economic terms, mentioning nothing about health, safety, or government orders:

> Due to the impact of COVID-19, the world is now grappling with an issue of enormous scale and human impact. Employers everywhere are having to take emergency actions to deal with slowing business operations across the board. The current situation is similarly impacting 24 Hour Fitness. We've seen a significant decline in club member traffic and sign-ups, putting even greater strain on

our already challenging financial picture.  This unprecedented situation is having a dramatic impact on our business and our people, and it is imperative that we take immediate action to ensure we can continue providing services to our club members and sustain our business for our team members over the long term.  As a result, starting the week of March 16, we are temporarily closing all clubs, until further notice, no later than Tuesday, March 17 at 12:00 a.m."

(Ex. 4) 24 Hour Fitness's witness, unsurprisingly, claimed that this document was incorrect (Ex. 2 at 244-248), but the document certainly raises substantial questions.  Documents produced more recently indicate that 24 Hour Fitness was aware on March 16, 2020 that other fitness club chains were planning on closing their facilities, and were inviting 24 Hour Fitness to join them as part of a joint announcement. (Ex. 5)

The few documents that 24 Hour Fitness has produced that include the individuals identified as decision-makers with respect to the decision to close nationwide on March 16, 2020 have been almost completely redacted on privilege grounds.  (Ex. 6, 7)

Even in the absence of evidence that 24 Hour Fitness's decision to close nationwide was based on business rationales rather than health and safety concerns or government orders, CNA would be entitled to make basic inquiries about the reasoning for the plaintiff's decision given its materiality to all of the Plaintiff's claims.  But the need to hear from the decision-makers is particularly acute when there is actual evidence in the record that the company's professed reason for closing is not accurate.  There are multiple reasons why the plaintiff is not entitled to coverage under the policy in dispute in this case, but CNA should be entitled to ask the only identified decision-makers with respect to this key decision about the reason for the decision.

**Plaintiff 24 Hour Fitness' Positions and Proposed Compromise**

Plaintiff 24 Hour Fitness ("24HF") asks that this Court deny CNA's requests to depose its current and former CEO, Tony Ueber and Karl Sanft, for two reasons.  First, contrary to CNA's contentions, Mr. Ueber and Mr. Sanft are *not* "the only two identifiable people, other than the company's legal counsel, who can explain why the company closed its fitness clubs on March 16, 2020."  Second, and relatedly, because this discovery may be achieved by other less burdensome means, the "Apex Doctrine" precludes the depositions of 24HF's current and former CEO.

**A.    CNA is wrong that Mr. Ueber and Mr. Sanft are the "only two individuals identified" who can discuss 24HF's decision to close its clubs on March 16, 2020.**

As a threshold matter, 24HF does not dispute that the reasons it decided to close all of its clubs on March 16, 2020 is an appropriate topic for discovery, subject to any applicable privileges.[1]  The issue here, however, is the manner by which such discovery may be achieved.

To that end, 24HF has offered to allow CNA to conduct a 30(b)(6) deposition concerning 24HF's decision to close all of its clubs on March 16, 2020, and other related topics.  CNA has rejected this proposal.

---

[1]    Because 24HF agrees that the reasons it closed all of its clubs on March 16, 2020 is an appropriate topic for discovery, **Exhibits 4-7**, which concern club closures on March 16, are not germane to this dispute.

3

According to CNA, 24HF's current and former CEO should be forced to testify because "Mr. Ueber and Mr. Sanft are the ***only individuals identified by 24 Hour Fitness*** as having been ***likely*** participants in the decision to close the company's clubs nationwide on March 16, 2020." (Emphasis added). In support of this carefully worded contention, CNA cites the deposition testimony of 24HF's Director of Club Operations, Matthew Piro, and 24HF's Environmental Health and Safety Manager, Dan Larson. But CNA is wrong because neither Mr. Piro nor Mr. Larson identified Mr. Ueber and Mr. Sanft as the "only individuals" with knowledge of 24HF's decision to close its clubs.

In fact, Mr. Piro and Mr. Larson did not identify anyone as being the "only individuals" who can testify regarding 24HF's March 16 closure. Instead, Mr. Piro testified that he was "not aware" of 24HF's "decision-making related to closing the clubs" on March 16, 2020. (Ex. 2 at 84:15-85:10). Mr. Larson similarly testified that he "was not involved in the decision" to close all the clubs on March 16, 2020. (Ex. 3 at 30:9-17; *see also* Ex. 1 at 39:17-40:8). Nowhere in Mr. Piro's or Mr. Larson's deposition testimony does either individual claim that only Mr. Sanft or Mr. Ueber were involved in the decision-making process to close all of 24HF clubs on March 16, 2020.

At most, Mr. Larson testified that he believed 24HF's counsel and executive leadership team were involved in this decision. (Ex. 3 at 30:19-23). Importantly, when asked which "members of the senior executive management team participated in the decision to close all of the facilities" on March 16, 2020, Mr. Larson responded, "I do not have a specific list." (*Id.* at 31:11-16). Mr. Larson was then asked who *he* "include[d]" in the senior executive management team, and he responded by naming Mr. Ueber, Mr. Sanft, and "legal counsel." (*Id.* at 31:18-25). Contrary to CNA's arguments above, Mr. Larson did not identify Mr. Ueber and Mr. Sanft as being the "only" individuals who could testify about 24HF's decision to close its clubs, nor could Mr. Larson make such statements because he admittedly "was not involved in the decision." (*Id.* at 30:9-17). Rather, Mr. Larson merely identified Mr. Ueber and Mr. Sanft – the current and former CEO – as being some of the members of 24HF's "senior executive management team."[2] Such testimony does not support apex depositions in this case.

In sum, CNA is wrong that "only" 24HF's current and former CEO can testify regarding 24HF's decision to close its clubs on March 16, 2020. All of CNA's desired discovery may be achieved through a 30(b)(6) deposition on this topic or interrogatories. For these reasons, the Court should deny CNA's requests.

**B.     Because this discovery dispute may be resolved with a 30(b)(6) deposition or interrogatories, the "Apex Doctrine" precludes deposition discovery from 24HF's current and former CEO.**

When a party wishes to depose high-ranking corporate officers, like Mr. Ueber and Mr. Sanft, Delaware district courts employ the "apex doctrine." *British Telcoms. PLC v. IAC/Interactivecorp*, 2020 U.S. Dist. Lexis 37271, at *24 (D. Del. Mar. 4, 2020). The "apex doctrine" precludes "depositions of high-ranking corporate and governmental officers" unless the moving party shows: (1) "that those officers have particularly relevant information to offer" and (2) that such discovery "*is not equally available from other, less burdensome sources*." *Id.* (emphasis added).[3]

---

[2]     Of course, it should be no surprise that 24HF's CEOs are part of the company's senior management team and participate in corporate decisions.

[3]     S*ee also In re Jevic Holding Corp.*, 526 B.R. 547, 556 (D. Del. 2014); *Ford Motor Co. v. Edgewood Props.*, 2011 U.S. Dist. Lexis 15776, at *8 (D.N.J. Feb. 15, 2011) ("Courts in this circuit consider two factors when

Moreover, in weighing whether an apex deposition is appropriate, courts in the Third Circuit apply a rebuttable presumption that such depositions "represent[] a significant burden upon the deponent and that this burden is undue absent the two factors set forth in the apex doctrine." *United States ex rel. Galmines v. Novartis Pharm. Corp*., 2015 U.S. Dist. Lexis 109997, at *4 (E.D. Pa. Aug. 19, 2015); *see Reif v. CNA*, 248 F.R.D. 448, 454 (E.D. Pa. 2008) (the party seeking the discovery "must demonstrate the insufficiency of interrogatories or the depositions of the lower level employees before obtaining a deposition" of CEO).

Here, CNA has not come close to meeting its burden to warrant the depositions of 24HF's current and former CEO. Instead, CNA devotes much of its portion of this letter arguing why discovery regarding 24HF's decision to close its clubs is appropriate, an issue 24HF does not necessarily dispute. At most, CNA seeks to justify its desired CEO discovery by claiming that, because 24HF's CEOs were identified as members of its senior management team, it is "entitled to make basic inquiries" and "hear from the decision-makers" about "the reasoning for [24HF's] decision" to close its clubs. But deposing 24HF's current and former CEOs are far from "basic inquiries," especially when all of CNA's proposed discovery may be achieved through other, less burdensome, sources like a 30(b)(6) witness or interrogatories. For these additional and independent reasons, this Court should deny CNA's requests to depose 24HF's current and former CEO.

**C.    24HF's Proposed Discovery Compromise.**

To resolve this dispute, 24HF suggests that this Court allow CNA to either serve interrogatories on this subject or depose a 30(b)(6) witness regarding 24HF's decision to close all of its clubs on March 16, 2020. Such a deposition or interrogatories should resolve all of CNA's alleged concerns about any purported inconsistencies for why the company decided to close its clubs on March 16, 2020.

Respectfully,

*/s/ Matthew P. Denn (I.D. No. 2985)*

Matthew Philip Denn
*Attorney for Defendant Continental Casualty Company*

*/s/ T. Connor O'Carroll (pro hac vice)*

T. Connor O'Carroll
*Attorney for Plaintiff 24 Hour Fitness*

cc:    All counsel of record *(Via CM/ECF)*

---

assessing whether the deposition of a high-ranking corporate officer, executive or manager is appropriate: (1) whether the executive or top-level employee has personal or unique knowledge on relevant subject matters; and (2) whether the information sought can 'be obtained from lower[-]level employees or through less burdensome means, such as interrogatories'").