## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RS FIT NW LLC, | ) | |
| | ) | Case No. 20-11568 (KBO) |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| 24 HOUR FITNESS WORLDWIDE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY; | ) | Adv. Pro. No. 20-51051 (KBO) |
| ENDURANCE AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY; STARR SURPLUS | ) | |
| LINES INSURANCE COMPANY; ALLIANZ | ) | |
| GLOBAL RISKS US INSURANCE COMPANY; | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY; | ) | |
| BEAZLEY-LLOYD'S SYNDICATES 2623/623; | ) | |
| ALLIED WORLD NATIONAL ASSURANCE | ) | |
| COMPANY; QBE SPECIALTY INSURANCE | ) | |
| COMPANY; and GENERAL SECURITY | ) | |
| INDEMNITY COMPANY OF ARIZONA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PROPERTY INSURER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

# EXHIBIT A-1

*Policy No. USP000783190 issued by*
*Allianz Global Risks US Insurance Company*

Allianz Global Corporate & Specialty®

# Insurance policy

## Commercial Lines Policy



A.0002

Allianz ⑪

# Allianz Global Risks US Insurance Company
225 West Washington Street, Suite 1800, Chicago, IL 60606-3484

**THIS POLICY CONSISTS OF:**
- **DECLARATIONS**
- **ONE OR MORE COVERAGE PARTS.**

**A COVERAGE PART CONSISTS OF:**
- **ONE OR MORE COVERAGE FORMS**
- **APPLICABLE FORMS AND ENDORSEMENTS**

**In Witness Whereof**, we have caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary                    President and Chief Executive Officer

**AGR-DS 1003 (08-16)**                                           **Page 1 of 1**

A.0003

# Allianz Global Risks US Insurance Company

(A Stock Company)
225 West Washington Street, Suite 1800
Chicago, IL 60606-3484

## COMMON POLICY DECLARATIONS

Policy No.: **USP000783190**                     Policy Period:    From: **June 30, 2019**
                                                                  To:     **June 30, 2020**

| First Named Insured: | Producer: |
|---|---|
| **24 Hour Holdings I Corp.**<br>12647 Alcosta Boulevard, Suite 300<br>San Ramon, CA 94583<br>USA | **Lockton Companies, LLC**<br>3280 Peachtree Road, Suite 800<br>Atlanta, GA 30305<br>USA |

Property Policy Premium

State Surcharges
  FL Fire Surcharge
  FL EMPA Surcharge
  NJ PLIGA Surcharge
  NY Fire Fee
  TX Fire Assessment



**TOTAL AMOUNT PAYABLE BY THE INSURED**

**Allianz Global Risks US Insurance Company**

## FORMS AND ENDORSEMENT LIST

**NAMED INSURED:**   24 Hour Holdings I Corp.
**POLICY NUMBER:**   USP000783190
**EFFECTIVE DATE:**   6/30/2019

**The following policy forms and endorsements have been attached to and made a part of the policy at inception.**

| FORM NAME | FORM NUMBER | EDITION DATE |
|---|---|---|
| Policyholder Notice - All States | AGR-IL 8001 (07-14) | 07/2014 |
| Policyholder Notice - OFAC | AGR-IL 8003 (01-05) | 01/2005 |
| Florida Citizens Emergency Assessment Policyholder Disclosure Notice | AGR-CP 8FL3 (09-14) | 09/2014 |
| 24 Hour Holdings I Corp. Manuscript Property Form | No Form Number Assigned | 06/2019 |
| Standard Fire Policy Provisions Endorsement | AGR-CP 4005 (11-07) | 11/2007 |
| California Changes - Cancellation and Nonrenewal Endorsement | AGR-CP CA01 (10-07) | 10/2007 |
| Asbestos and Related Materials Exclusion Endorsement | AGR-CP 5100 (02-05) | 02/2005 |
| Deductibles Endorsement | AGR-CP 3107 (11-10) | 11/2010 |
| Electronic Data Limitation Endorsement | AGR-CP 5104 (02-05) | 02/2005 |
| Fungi Limitation Endorsement | AGR-CP 5106 (05-07) | 05/2007 |
| Pollution and Contamination Exclusion Endorsement | AGR-CP 5103 (02-05) | 02/2005 |
| Sanction Limitation and Exclusion Endorsement | AGR-CP 5125 (10-14) | 10/2014 |
| Terrorism Endorsement: Certified Act of Terrorism Exclusion | AGR-IL 5T44 (01-15) | 01/2015 |
| General Change Endorsement | AGR-IL M001 (11-03) | 11/2003 |

A.0005

Allianz (||)

# POLICYHOLDER NOTICE - ALL STATES

Allianz Global Risks US Insurance Company
24 Hour Emergency Claims Service

**TO OBTAIN INFORMATION, FILE A CLAIM OR TO MAKE A COMPLAINT:**

You may call Allianz Global Risks US Insurance Company's toll free number at:

**Phone:**      **1 (800) 558 1606 [or 1 (314) 513 1353 from outside the United States]**
**Fax:**         **1 (888) 323 6450 [or 1 (314) 513 1345 from outside the United States]**

**To report a claim via e-mail:      NewLoss@agcs.allianz.com**

You may also write to:

Allianz Global Corporate & Specialty
Attn: FNOL Claims Unit
One Progress Point Parkway
3rd Floor
O'Fallon, MO 63368

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

**Allianz (ⁱ)**

# POLICYHOLDER NOTICE - OFAC

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- o   Foreign agents;
- o   Front organizations;
- o   Terrorists;
- o   Terrorist organizations; and
- o   Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



## FLORIDA CITIZENS EMERGENCY ASSESSMENT
## POLICYHOLDER DISCLOSURE NOTICE

**2007 FLORIDA CITIZENS EMERGENCY ASSESSMENT  (FL Citizens EA-07)**

In January 2007, the Florida OIR issued an order approving the certification of an Emergency Assessment by Citizens for its HRA.

Citizens determined that the 2005 Plan Year deficit in the HRA exceeds the maximum amount recoverable via a Regular Assessment and therefore an Emergency Assessment was needed.

It concluded that the remaining deficit, after the collection of the Regular Assessment, which is to be funded through the Emergency Assessment is $887,502,331.  This amount is to be amortized over a period of ten (10) years and is based on an initial annual assessment 1.40% on the direct written premium of all subject lines of business.

The order requires us to collect **1.00%** of premiums we write in the following lines of business: fire and allied lines. This premium surcharge is applicable to policies with inception dates **on or after July 1, 2011** and to any endorsements to such policies.

### PARTICIPATION PAGE

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies), do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy, pages 1 –35 (including Appendix A).

Provided that:

1.   The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.
2.   The liability of each of the Insurers shall not exceed the Participation Limit set against its name with the exception of loss adjustment and professional fees which cost shall be 100% assumed by the Insurers on each applicable layer of insurance.

Insured:      **24 Hour Holdings I Corp.**

Policy Period:    June 30, 2019 – June 30, 2020

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

| Insurer | Policy Number | Participation (Excess of Deductibles) | Authorized Signature |
|---|---|---|---|
| Allianz Global Risks US Insurance Company | USP000783190 | 13.75% or $6,875,000 part of Excess $50,000,000 | *[signature]* |

24 Hour Holdings I Corp.                                          2019 - 2020 Property Policy

# TABLE OF CONTENTS
## (Order In Which They Appear)

**Page**

1. NAMED INSURED AND MAILING ADDRESS ........................................................... 4
2. TERM OF INSURANCE ...................................................................................... 4
3. LIMITS OF LIABILITY ....................................................................................... 4
4. PRIMARY DEDUCTIBLES ................................................................................... 6
5. LOSS PAYABLE .............................................................................................. 8
6. TERRITORY .................................................................................................. 8
7. COVERAGE ................................................................................................... 8
   A.  Real and Personal Property ......................................................................... 8
   B.  Business Interruption ................................................................................ 9
   C.  Extra Expense ........................................................................................ 10
   D.  Rental Value .......................................................................................... 10
   E.  Royalties .............................................................................................. 10
   F.  Time Element Extensions ........................................................................... 11
   G.  Provisions Applicable to Business Interruption, Extra Expense, Rental Value and Royalties
       Coverages ............................................................................................. 11
   H.  Transit ................................................................................................. 12
   I.  Accounts Receivable ................................................................................. 13
   J.  Leasehold Interest ................................................................................... 14
   K.  Service Interruption .................................................................................. 15
8. COVERAGE EXTENSIONS .................................................................................. 15
   A.  Demolition and Increased Cost of Construction ................................................. 15
   B.  Debris Removal ....................................................................................... 16
   C.  Expediting Expense .................................................................................. 16
   D.  Professional Fees .................................................................................... 16
   E.  Fire Brigade Charges and Extinguishing Expenses .............................................. 16
   F.  Defense Costs ......................................................................................... 16
   G.  Consequential Loss ................................................................................... 17
   H.  Control of Damaged Merchandise .................................................................. 17
   I.  Brands or Trademarks ................................................................................ 17
   J.  Automatic Coverage (Newly Acquired) ............................................................ 17
   K.  Machinery Breakdown Extensions .................................................................. 17
9. PERILS INSURED AGAINST ................................................................................ 18
10. PERILS EXCLUDED ........................................................................................ 19
11. PROPERTY EXCLUDED .................................................................................... 20
12. VALUATION ................................................................................................ 21
13. EARTHQUAKE AND FLOOD ............................................................................... 23
14. ACCIDENT .................................................................................................. 23
15. CONTRIBUTING INSURANCE ............................................................................. 24
16. EXCESS INSURANCE ...................................................................................... 24
17. UNDERLYING INSURANCE ................................................................................ 25
18. OTHER INSURANCE ....................................................................................... 25
19. SUBROGATION ............................................................................................ 25
20. SALVAGE AND RECOVERIES ............................................................................. 26
21. MACHINERY ................................................................................................ 26
22. ERRORS OR OMISSIONS .................................................................................. 26
23. NOTICE OF LOSS .......................................................................................... 26
24. PROOF OF LOSS ........................................................................................... 26
25. PARTIAL PAYMENT OF LOSS ............................................................................ 26
26. ASSIGNED ADJUSTER ..................................................................................... 26
27. APPRAISAL ................................................................................................. 27

24 Hour Holdings I Corp.

2019 - 2020 Property Policy

28. PAIR AND SET ........................................................................................................... 27
29. ASSISTANCE AND COOPERATION OF THE INSURED .................................................... 27
30. SUE AND LABOR ....................................................................................................... 27
31. PAYMENT OF LOSS .................................................................................................... 28
32. REINSTATEMENT ....................................................................................................... 28
33. SUIT AGAINST THE COMPANY .................................................................................... 28
34. CERTIFICATES OF INSURANCE .................................................................................... 28
35. MORTGAGE CLAUSE ................................................................................................. 29
36. CANCELLATION ........................................................................................................ 29
37. VACANCY ................................................................................................................. 30
38. JOINT LOSS AGREEMENT (AS APPLICABLE) ................................................................ 30
39. VALUES .................................................................................................................... 31
40. CONSTRUCTION SOFT COSTS .................................................................................... 31
41. TITLES OF PARAGRAPHS ........................................................................................... 31
42. CONFORMANCE ....................................................................................................... 31
ENDORSEMENT 1 ........................................................................................................... 32
ENDORSEMENT 2 ........................................................................................................... 33
ENDORSEMENT 3 ........................................................................................................... 34
APPENDIX A .................................................................................................................. 35

1.    **NAMED INSURED AND MAILING ADDRESS**

    **24 Hour Holdings I Corp.**

24 Hour Holdings I Corp. and any and all subsidiary or affiliated companies, corporations, firms, organizations, partnerships or joint ventures and/or any owned, whether wholly or partially, or controlled company(ies) where the Insured maintains interest, or as now or hereafter constituted or acquired, as their respective interests may appear or interests of others which the Insured is required by contract or other agreement to insure.

    Herein after referred to as "The Insured"

    Mailing Address:        12647 Alcosta Blvd
                                 Suite 300
                                 San Ramon, CA 94583

2.    **TERM OF INSURANCE**

    This policy attaches and covers for a period of 12 Months from June 30, 2019 to June 30, 2020, beginning and ending at 12:01 A.M., standard time, at the location of the property involved.

    The actual effective time of attachment of this insurance on the above date shall be the same time as the actual effective time of cancellation or expiration of policy(ies) replaced or renewed by this policy.

3.    **LIMITS OF LIABILITY**

    The Company(ies) shall not be liable for more than its proportion of the following limits for any one occurrence, applicable separately to each limit, irrespective of the sequence of occurrences, whether or not proximate or ensuing as respects loss or damage arising out of all coverages insured against under this policy:

    A.    $50,000,000, except that the Company(ies) liability shall not exceed any of the specific sublimits of liability for any one occurrence designated in Clause B below;

B.    Sublimits:

The liability of the Company(ies) resulting from loss or damage insured against shall not exceed more than its proportion of:

1)  $10,000,000        Accounts Receivable;

2)  45 Days            Civil Authority;

3)  $25,000,000        Course of Construction including erection, installation & assembly;

4)  $5,000,000         Contingent Time Element and Contingent Extra Expense;

5)  $10,000,000        Electronic Data Processing Equipment and Media;

6)  $10,000,000        Extra Expense;

7)  $2,500,000         Fine Arts;

8)  45 Days            Ingress/Egress;

9)  $2,500,000         Interruption by Communicable Disease;

10) $2,500,000         Leader Properties;

11) $1,000,000         Per conveyance as respects property in transit; each railroad car or trailer shall be considered a separate conveyance;

12) $15,000,000        Miscellaneous Unnamed Locations;

13) $10,000,000        Expediting Expenses;

14) $15,000,000        Errors and Omissions;

15) $2,500,000         Personal Property of Insured's officials, employees, and representatives while on insured's premises;

16) $1,000,000         Professional Fees;

17) $10,000,000        Service Interruption Property Damage and Service Interruption Time Element combined;

18) $1,000,000         Soft Cost;

19) $5,000,000         Valuable Papers and Records;

20) $500,000           Exhibition, Exposition, Fair or Trade Show;

21) $50,000,000        Machinery Breakdown;

22) $5,000,000         Mold;

C.    With respect to the peril of Flood, the Company(ies) shall not be liable, per occurrence and in any one policy year, for more than its proportion of $50,000,000 which shall apply to the peril of Flood.  Even if the peril of Flood is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause C.;

D.    With respect to the peril of Flood to locations within Special Flood Hazard Areas (SFHA), areas of 100-year flooding, as defined by the Federal Emergency Management Agency, the Company(ies) shall not be liable, per occurrence and in any one policy year, for more than its proportion of $15,000,000 which shall apply to the peril of Flood.  Even if the peril of Flood is

the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause D.;

E.      With respect to the peril of Earthquake in Hawaii, Alaska, New Madrid Earthquake Counties, and Pacific Northwest Earthquake Counties, as defined in Appendix A, the Company(ies) shall not be liable, per occurrence and in any one policy year, for more than its proportion of $50,000,000 which shall apply to the peril of Earthquake.  Even if the peril of Earthquake is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause E.;

F.      With respect to the peril of Earthquake in the State of California, the Company(ies) shall not be liable, per Occurrence and in any one policy year, for more than its proportion of $20,000,000 which shall apply to the peril of Earthquake.  Even if the peril of Earthquake is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause F.;

G.      With respect to the peril of Earthquake not described above in Clauses E and F  the Company(ies) shall not be liable, per Occurrence and in any one policy year, for more than its proportion of $50,000,000 which shall apply to the peril of Earthquake.  Even if the peril of Earthquake is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause G.;

H.      With respect to the peril of Named Storm Wind in Tier 1 Counties as defined in Appendix A, the Company(ies) shall not be liable, per occurrence, for more than its proportion of $50,000,000 which shall apply to the peril of Named Storm Wind.  Even if the peril of Named Storm Wind is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits specified in this Clause H.;

I.      Debris Removal Expenses:  $5,000,000 or 25% of the amount of Property Damage and Time Element loss incurred, whichever is greater, for loss or damage arising out of one occurrence.

J.      Pollutant Cleanup and Removal Expenses:  $2,000,000 for loss arising out of one Occurrence and in any one policy year.

## 4.    PRIMARY DEDUCTIBLES

All losses, damages or expenses arising out of any one occurrence shall be adjusted as one loss, and from the amount of such adjusted loss shall be deducted $250,000 except:

A.  For the peril of Flood, in any one occurrence:
   1) With respect to locations within Special Flood Hazard Areas (SFHA), areas of 100-year flooding, as defined by the Federal Emergency Management Agency (if these locations are not excluded elsewhere in this policy with respect to the peril of Flood), the deductible shall be $500,000 per building per occurrence for Real Property, $500,000 per building per occurrence for Personal Property, and $100,000 per building per occurrence for Time Element.   However, this deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

   2) With respect to any other flood loss, the deductible shall be $250,000 for any one occurrence.

In the event that the Insured maintains underlying insurance through the National Flood Insurance Program, it is agreed that this policy excludes the peril of flood to the extent of recovery under such National Flood Insurance Policy(s).  Should the amount of loss payable under such National Flood Insurance Policy(s) exceed the applicable flood deductible under this policy,

then no deductible shall apply hereunder.  However, if the amount to be paid under such National Flood Insurance Policy(s) is less than the applicable flood deductible under this policy, then the amount to be deducted hereunder shall not exceed the difference between the amount to be paid under the Insured's National Flood Insurance Policy(s) and the applicable flood deductible under this policy.  Insurance maintained through the National Flood Insurance Program shall be considered Underlying Insurance.

B.   For the peril of Earthquake, in any one occurrence:

1) 5% of the total values at the time of loss at each location where the insured files a claim within the state of California for the peril of Earthquake, subject to a minimum of $250,000 per location for any one occurrence. However, this deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

2) 2% of the total values at the time of loss at each location where the insured files a claim when such loss occurs at locations within the entire state of Hawaii, Alaska, New Madrid Earthquake Counties, and Pacific Northwest Earthquake Counties as defined in Appendix A, for the peril of Earthquake subject to a minimum of $250,000 per occurrence.  However, this deductible shall not apply to ensuing loss or damage not otherwise excluded herein.

3) $250,000 for loss from the peril of Earthquake for all other locations per occurrence.

C.   For the peril of Named Storm Wind, in any one Occurrence

1)   5% of the total values at the time of loss at each location where the insured files a claim when such loss occurs at locations within Florida, Hawaii, or Harris County, Texas, subject to a minimum of $250,000 for any one occurrence.

2)   2% of the total values at the time of loss at each location where the insured files a claim when such loss occurs at locations within Tier 1 areas as defined in Appendix A (except for Florida, Hawaii and Harris County, Texas), subject to a minimum of $250,000 for any one occurrence.

3)   With respect to all other locations, all loss, damage, and/or expense arising out of any one occurrence shall be adjusted as one loss, and from the amount of each such adjusted loss shall be deducted the sum of $250,000 ;

All reference herein to "Tier One", "Tier 1 Windstorm" or similar "Tier 1" references, shall be defined as all locations situated within Tier 1 Counties as defined in Appendix A.


NAMED STORM OCCURRENCE:

All loss or damage occurring during a period of 120 consecutive hours which is caused by or results from a storm or weather disturbance which is named by the National Weather Service. Storm or weather disturbance includes all weather phenomenon associated with or occurring in conjunction with the storm or weather disturbance, including, but not limited to flood, storm surge, wind, hail, sleet, tornadoes, hurricane or lightning.

D.    Service Interruption: With respect to any Service Interruption, "the duration of such interruption" referred to in the policy must be in excess of 24 hours.

E.    Transit: $10,000

F.    Machinery Breakdown: $10,000

If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the Insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s) specified in this section, notwithstanding the above reference to two or more deductibles and the policy limits.

As respects theft, the term Occurrence as referred to elsewhere within the policy means the sum total of all losses of covered property resulting from one or more concealed acts committed by one person or more than one person acting in unison to the extent such loss is not otherwise excluded under this policy.

The deductible amounts specified above shall not apply to general average contributions, salvage charges and sue and labor expenses.

5.    **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to 24 Hour Holdings I Corp., or order whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

6.    **TERRITORY**

This policy covers loss occurring anywhere within the 50 states comprising the United States of America including the District of Columbia.

7.    **COVERAGE**

Except as hereinafter excluded, this policy covers;

A.    **Real and Personal Property**

1)    The interest of the Insured in all real and personal property including but not limited to property owned, used, leased or intended for use by the Insured, or hereafter constructed, erected, installed, or acquired, including while in course of construction, erection, installation, and assembly.  In the event of loss or damage, the Company(ies) agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or leases to the contrary.

2)    The interest of the Insured in real and personal property of others in the Insured's care, custody, or control.

3)    Real and personal property which the Insured is responsible for or has agreed to insure.

4)    At the option of the Insured, personal property of the Insured's officials, employees and representatives while on the premises of the Insured.  This insurance shall then act as primary insurance, except as respects employees' automobiles.

5)    Contractors' and vendors' interest in property covered to the extent of the Insured's liability imposed by law or assumed by contract, whether written or oral.

B.    **Business Interruption**

1)    Loss resulting from necessary interruption of business conducted by the Insured, whether total or partial, and caused by loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A.

2)    If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED by the Insured, consisting of the net profit which is thereby prevented from being earned and of all charges and expenses only to the extent that these must necessarily continue during the interruption of business excluding Ordinary Payroll and only to the extent such charges and expenses would have been earned had no loss occurred.

"Ordinary payroll" is defined to be the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other important employees as determined by the Insured.

3)    In the event of loss, damage, or destruction covered herein to property as described in Clause 7.A, which results in an interruption of research and development activities which in themselves would not have produced income during the indemnity period, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including Ordinary Payroll directly attributable to such research and development activities.

4)    However, the Company(ies) shall not be liable under this Clause B. for any loss resulting from damage to or destruction of finished stock nor for the time required to reproduce said finished stock.  Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

5)    Resumption of Operations:  If the Insured, by reasonable means within its control, could reduce the loss resulting from the interruption of business:

(a)    by a complete or partial resumption of operation of the property insured, whether damaged or not; or

(b)    by making use of available stock, merchandise, or other property;  such reduction shall be taken into account in arriving at the amount of loss hereunder.

6)    Experience of the Business:

(a)    In determining the amount of net profit, charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real or personal property as described in Clause 7.A.

(b)    With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

(c)    With respect to property under course of construction, delay in opening caused by an insured peril, loss shall be deemed an insured loss for business interruption purposes if the business operations fail to begin on the scheduled completion date existing at the time of insured loss, all other issues being equal. The loss

amount shall be determined by evaluating the actual income experienced after actual reopening and applying said levels of income experienced for the time delay period. The time delay period is equal to the difference between the actual opening date of operation and the scheduled completion date existing at the time of the insured loss.

C.    **Extra Expense**

(1)    Extra Expense incurred resulting from physical loss, damage, or destruction covered herein during the term of this policy to real or personal property as described in Clause 7.A.

D.    **Rental Value**

(1)    Rental Value loss sustained by the Insured resulting directly from the necessary untenantability, during the period of restoration caused by loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenantability.

(2)    "Rental Value" is defined as the sum of:

(a)    the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured; and

(b)    the amount of all charges which are the legal obligation of the tenant(s) and which, because of loss, would otherwise be obligations of the Insured; and

(c)    the fair rental value of any portion of said property which is occupied by the Insured.

(3)    Experience of the Business:

(a)    In determining the amount of rental value covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real and personal property as described in Clause 7.A.

(b)    With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation, or assembly.

E.    **Royalties**

(1)    Loss of income to the Insured under royalty, licensing fees, management fees and/or commission agreements between the Insured and another party which is not realizable due to loss, damage, or destruction by any of the perils covered herein during the term of this policy to property of the other party.

(2)    If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED of such income referred to in paragraph 1 above, which would have been earned had no loss occurred.

(3)    Resumption of Operations:  The Insured shall influence, to the extent reasonably possible, the party with whom the agreement described in paragraph 1 above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder, and the Insured shall cooperate with that party in every reasonable way to effect this, but not financially unless such expenditures shall be authorized and paid by the Company(ies).

(4)    Experience of the Business:  In determining the amount of income derived from the agreement(s) described in paragraph  1 above for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred to real and personal property of the type insured under this policy of such other party.

**F.    Time Element Extensions**

(1)    This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against, to:

    (a)    Contingent Time Element and Contingent Extra Expense:  property that wholly or partially prevents any direct supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that wholly or partially prevents any direct receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere within the 50 states comprising the United States of America including the District of Columbia.

        There is no liability for any loss resulting from Contingent Time Element and Contingent Extra Expense that is insured under subparagraph identified as Service Interruption (Clause 7.K).

    (b)    Impounded Water:  dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business, not to exceed 30 consecutive days, as a result of lack of water supply from such sources;

    (c)    Leader Property:  property not owned or operated by the Insured, located within (5) statute miles of the Insured premises, which attracts business to the Insured.

(2)    Interruption by Civil or Military Authority:  This policy is extended to cover the loss sustained during the period of time when access to real or personal property is prohibited by order or action of civil or military authority issued in connection with or following a peril insured against within five (5) statute miles of the insured premises and for a period not to exceed thirty (30) days.

(3)    Ingress/Egress:  This policy is extended to cover the loss sustained during the period of time when, in connection with or following a peril insured against, access to or egress from real or personal property is prevented within five (5) statute miles of the insured premises and for a period not to exceed thirty (30) days.

**G.    Provisions Applicable to Business Interruption, Extra Expense, Rental Value and Royalties Coverages**

(1)     Period of Recovery:  The length of time for which loss may be claimed:

(a)  shall not exceed such length of time as would be required:

    (i.)    with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged;

    (ii.)   to restore the interrupted services to the premises and the premises made ready for normal operations when such interruption is caused by an accidental occurrence;

(b)  and, such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

    (i.)    the date on which the liability of the Company(ies) for loss or damage would otherwise terminate; or

    (ii.)   the date on which repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for more than 365 consecutive calendar days from said later commencement date;

(c)  with respect to alterations, additions and property while in the course of construction, erection, installation, or assembly shall be determined as provided in subparagraph (a) above, but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operations;

(d)  shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy or cancellation date.

(2)     Special Exclusions:  This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order; nor for any increase of loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the reoccupancy of the premises.

(3)     Expense to Reduce Loss:  This policy also covers such expenses incurred for the purpose of reducing any loss under this policy, even though such expenses may exceed the amount by which the loss under this policy is thereby reduced.

## H.   **Transit**

(1)     Property in transit within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted into place of final destination.

(2)     This insurance is extended to cover loss or damage to property:

(a)   sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

(b)   arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

(c)   occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

(d)   at the Insured's option, which is incoming to the Insured.

(3)   (a)   The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

(b)   With respect to shipments made under subparagraphs 2(a) and 2(d) above, the Company(ies) agrees to waive its rights of subrogation against consignees at the option of the Insured.

(4)   The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

(5)   Seaworthiness of any vessel or watercraft and airworthiness of any aircraft are admitted between the Company(ies) and the Insured.

I.   **Accounts Receivable**

(1)   All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

(2)   Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

(3)   Collection expense in excess of normal collection cost and made necessary by such loss or damage;

(4)   Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1)   The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2)     The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

J.     **Leasehold Interest**

(1)     Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

(a)     the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

(b)     improvements and betterments to real property which are not covered under any other section of this policy;

(c)     the amount of advance rental paid by the Insured and not recoverable under the terms of the lease;

when property is rendered wholly or partially untenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

(2)     (a)     "The Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured under this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

(b)     "The Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3)     Definitions:

The following terms, wherever used in this section shall mean::

(a)  "The Interest of the Insured as Lessee" is defined as:

(i)     the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

(ii)     the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

(b) "The Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this policy.

(c) "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "The Interest of the Insured as Lessee or Lessor."

(4) The Company(ies) shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease.  Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this clause.

K.    **Service Interruption**

This policy is extended to cover physical loss or damage to Insured Property and/or Time Element Coverage arising from a Covered Cause of Loss to: (1) incoming electrical, gas, water, or telecommunications equipment or outgoing sewer or (2) electrical, telecommunications, fuel, water, steam, refrigeration, or other service transmission lines, all situated outside the Insured Locations.

There shall be no loss payable under this additional coverage unless the interruption exceeds the qualifying period shown.  In such case, the loss shall be measured from date and time of the loss.  With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunications equipment or outgoing sewer or (2) electrical, telecommunications, fuel, water, steam, refrigeration, or other service transmission lines is restored.  The sublimit set forth applies to all loss or damage to Insured Property and Time Element Coverage combined arising out of one Service Interruption.

The Company(ies) will not be liable if the interruption of such utility or service is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified utilities or services.

The Insured will immediately notify the suppliers of utilities or services of any interruption of such services.

There is no liability for any loss resulting from the interruption of the business that is insured under subparagraph identified as Contingent Time Element.

Definition:  Wherever used in this policy, the term "Time Element" means any one or all of the following coverages:  Business Interruption, Extra Expense, Rental Value, Leasehold Interest, Royalties and Time Element Extensions described herein.

**8.    COVERAGE EXTENSIONS**

A.  **Demolition and Increased Cost of Construction**

In the event of loss or damage under this policy that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, the Company(ies) shall be liable for:

24 Hour Holdings I Corp.                                          2019 - 2020 Property Policy

1) the cost of demolishing the undamaged property including the cost of clearing the site;

2) the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

3) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  However, the Company(ies) shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

4) any increase in the business interruption, extra expense, rental value or royalties loss arising out of the additional time required to comply with said law or ordinance.

B.    **Debris Removal**

This policy covers the following expenses resulting from a covered loss:

(1)    the cost of removal of debris of property covered hereunder;

(2)    the cost of removal of debris of property not covered hereunder from the premises of the Insured;

C.    **Expediting Expense**

This policy covers the extra cost of temporary repair and/or replacement and of expediting the repair and/or replacement of damaged property insured hereunder, including, but not limited to, overtime and express freight or other rapid means of transportation.

D.    **Professional Fees**

This Policy is extended to include reasonable and necessary expenses incurred by the Insured for preparing and certifying particulars or details of the insured's business in order to determine the amount of loss payable under this policy.    There shall be no coverage under this policy for expenses incurred by the Insured in utilizing the services of Attorneys, Public Adjusters, Insurance Agents or Brokers, or any of their subsidiary, related or associated entities.  This Policy also excludes any fees or costs for consultation on coverage or negotiation of claims, and the costs or expenses of overhead or operating expenses of any Insured, including salaries of such Insured's employees.

E.    **Fire Brigade Charges and Extinguishing Expenses**

This policy covers the following expenses resulting from a covered loss:

(1)    fire brigade charges and any extinguishing expenses which the Insured incurs;

(2)    loss and disposal of fire extinguishing materials expended.

F.    **Defense Costs**

This policy, subject to all of its provisions, also insures the costs and fees to defend any claim or suit against the Insured and/or its directors, officers and/or employees alleging physical loss

or damage as insured against to property of others in the care, custody or control of the Insured to the extent of the Insured's liability therefore, even if such claim or suit is groundless, false or fraudulent; but the Company(ies) may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient.

G.    **Consequential Loss**

(1)    In the event of loss or damage not otherwise excluded to property, and such damage, without the intervention of any other independent excluded cause, results in a sequence of events which causes physical damage to insured property, then there shall be liability under the policy for the resulting loss.

(2)    This policy also insures against consequential loss to the property insured caused by but not limited to change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from loss or damage not otherwise excluded.

(3)    This policy also insures the reduction in value to the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or other classifications due to a cause of loss not otherwise excluded.

H.    **Control of Damaged Merchandise**

The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow the Company(ies) any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured shall have full right to the possession of all goods involved in any loss under this policy.

I.    **Brands or Trademarks**

In case of damage insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at the Company's(ies) expense in the customary manner of all such brands or trademarks or other identifying characteristics.

J.    **Automatic Coverage (Newly Acquired)**

This Policy covers all property at any location rented, leased or purchased by the Insured after the inception date of this policy. This coverage applies from the date of rental, lease or purchase. Newly acquired locations should be reported to the Company within 180 days of acquisition.

K.    **Machinery Breakdown Extensions**

(1)    Spoilage

The Company(ies) will pay for the spoilage damage to raw materials, property in process or finished products, provided all of the following conditions are met:

a)    The raw materials, property in process or finished products must be in storage or in

the course of being manufactured;

b)   The Insured must own or be legally liable under written contract for the raw materials, property in process or finished products; and

c)   The spoilage damage must be due to the lack or excess of power, light, heat, steam or refrigeration.

The Company (ies) will also pay any necessary expenses the Insured incurs to reduce the amount of loss under this coverage.   The Company(ies) will pay such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage form.

(2)   Hazardous Substance

The Company(ies) will pay any additional expenses incurred by the Insured for the clean-up, repair or replacement or disposal of Real and Personal Property that is damaged, contaminated or polluted by a Hazardous Substance caused by an Accident.

As used here, additional expenses mean the additional cost incurred over and above the amount that the Company(ies) would have paid had no Hazardous Substance been involved with the loss.

Hazardous Substance means any substance other than ammonia that has been declared to be hazardous to health by a government agency.

Ammonia is not considered to be a Hazardous Substance as respects this limitation.

(3)   Ammonia Contamination

The Company(ies) will pay the spoilage to covered property contaminated by ammonia, including any salvage expense caused by an Accident.

(4)   CFC Refrigerants

The Company(ies) will pay for the additional cost to repair or replace Real and Personal Property because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances if the loss is caused by an Accident.   This means the additional expense to do the least expensive of the following:

a)   Repair the damaged property and replace any lost CFC refrigerant;

b)   Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

c)   Replace the system with one using a non-CFC refrigerant.

## 9.   PERILS INSURED AGAINST

This policy insures against:

A.   All risk of direct physical loss or damage to property described herein including general average, salvage and all other charges on shipments covered hereunder, except as hereinafter excluded.

B.   Service Interruption as set forth under Clause 7. K.

**10.   PERILS EXCLUDED**

This policy does not insure:

A.  against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

    (1)  cause the Insured to sustain such loss, and

    (2)  obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment.

This exclusion does not apply to acts of damage or destruction by employees, but theft by employees is not covered.

B.  against the cost of making goods defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

C.  against errors in processing or manufacture of the Insured's product unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

D.  against ordinary wear and tear, or gradual deterioration unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

E.  against normal settling or normal shrinkage of walls, floors, or ceilings unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

F.  against nuclear reaction, or nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote; except:

    (1)  if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

    (2)  the Company(ies) shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on an insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining a nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

G.  (1)  against warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

    (a) by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

    (b) or by military, naval, or air forces;

    (c) or by an agent of any such government, power, authority, or forces;

(2)   against any weapon employing atomic fission or fusion;

(3)   against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

(4)   against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction not otherwise excluded under this policy;

(5)   against risks of contraband or illegal trade.

Notwithstanding the above provisions, G. (1), (3), (4), and (5), this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include any loss, damage or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon of war employing atomic fission or fusion whether in time of peace or war;

H.   against mysterious disappearance, loss or shortage disclosed upon taking inventory, or any unexplained loss;

I.   against any loss from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense;

J.   against insect, animal, or vermin damage;

K.   against changes in temperature damage (except to machinery and equipment); or changes in relative humidity damage, all whether atmospheric or not;

L.   Acts, Errors or Omissions exclusion shall apply only if a cause of loss otherwise excluded by this policy contributes to the loss or is a cause of the loss. Notwithstanding any of the terms of this policy that might be construed otherwise, this policy does not insure against loss or damage cause by any act, error or omission (whether by the Insured or others) in:

(1)   planning, zoning, surveying, sitting or developing property;

(2)   establishing or enforcing building codes or standards for construction or materials;

M.   against underground mines, caverns or any property contained therein.

N.   loss of Market Share

Exclusions B, C, and E do not apply to property in transit.

Exclusion C does not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusions A through E do not apply to Service Interruption (as set forth in Clause 7. K.)

11.   **PROPERTY EXCLUDED**

This policy does not cover loss or damage to:

A.   Land; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements.  Land improvements are defined as any alteration to the natural condition of the land by grading, man-made landscaping, earthen dikes or dams,  and additions to land such as pavements, roadways, or similar works;

B.   Water, except water which is normally contained within any type of tank, piping system or other process equipment;

C.   Money and securities, precious metals and jewelry;

D.   Growing crops, standing timber which is grown or maintained specifically for purposes of conversion to lumber, and animals except for research;

E.   Watercraft, aircraft, or motor vehicles licensed for highway use, but this exclusion shall not apply to contractor's equipment;

F.   Waterborne shipments via the Panama Canal, and to and from Puerto Rico, the Virgin Islands, Hawaii, and Alaska;

G.   Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

H.   Offshore property which is seaward beyond the line of normal tidal low water along coastal land except that structures and their contents extending from land or shore, floating docks permanently moored to dock, river bank or shore are not to be considered as offshore.

I.   As respects property damage only, transmission and distribution lines of every type and description; except when located on the Insured's premises or within one-thousand (1,000) feet thereof.

## 12.   VALUATION

In case of loss, the basis of adjustment shall be as follows:

### A.   Stock

(1)   Raw Stock (materials and supplies in the state in which the Insured received them for conversion by the Insured into finished stock, including supplies consumed in such conversion or in the service rendered by the Insured) shall be valued at replacement cost at the time and place of loss.

(2)   Stock in process (raw stock which has undergone any aging, seasoning, or other processing by the Insured but which has not become finished stock) shall be valued at the Insured's selling price of finished stock at the time of loss, less any manufacturing expense not incurred by the Insured and less any discounts, rebates, and uncurred expenses to which the sales price would have been subject.

(3)   Finished stock (stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale) and merchandise shall be valued at the Insured's selling price at the time of loss, less all discounts, rebates, and uncurred expenses to which such sales price would have been subject.

**B.     Real and Personal Property**

(1)     Buildings, structures, furniture and fixtures, machinery, equipment, improvements and betterments, shall be valued at the replacement cost new on the same premises, as of the date of replacement.

(2)     Electronic Data Processing or control equipment and production machinery and equipment or any part thereof shall be valued at the cost to repair or replace new on the same premises as of the time of replacement except, that with respect to items for which replacement with identical property is impossible, the replacement cost shall be the cost of items similar to the destroyed property and intended to perform the same function but which may include technological advances.

(3)     Valuable papers and records shall be valued at the cost to reproduce the property as of the date of reproduction including the cost of gathering and/or assembling information;

"Valuable papers and records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and media and the data recorded thereon, but not including money and/or securities.

"Media" is defined as materials upon which data is recorded including, but not limited to, paper tapes, cards, electronic memory circuits, and magnetic or optical storage devices.   "Data" is defined as facts, concepts, or instructions in a form usable for communications, interpretation, or processing by automatic means.   It includes computer programs.

The term "securities" shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens and tickets but does not include money.

(4)     Property of others which the Insured is required to insure to a stipulated value shall be valued at the replacement cost new as of the date of replacement, if replaced at the Insured's option; otherwise at the stipulated value.

(5)     Fine Arts shall be valued at the appraised value; or, if there is no appraisal, at the greater of the original acquisition cost or the market value at the time of the loss.

(6)     Other property not otherwise provided for, at replacement cost new on the same premises as of the date of replacement.

(7)     Permission is granted for the Insured to replace the damaged property with any property at the same site and/or at another site and/or new site within the territorial limits of this policy, but recovery is limited to what it would cost to replace on same site.   If property damaged or destroyed is not repaired, rebuilt or replaced within a reasonable period after the loss or damage, this company shall not be liable for more that actual cash value at the time of loss (ascertained with proper deduction for depreciation) of the property damaged or destroyed. However, limitations imposed by federal, state or municipal building codes shall not result in actual cash valuation.

    a)     The Insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed.   Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement

are expended on other capital expenditures related to the Insured's operations within two years from the date of loss.  As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an Insured Location under this policy.

(8)     For property in Transit the amount of recovery shall be the value stated on the invoice, including prepaid or advance freight, if any, plus the profit or commission of the named insured as selling agent, and such other cost and charges as may have been accrued and become legally due thereon since shipment, In the absence of an invoice, the measure of loss shall be actual cash value at the point of shipment after taking into account all allowances for depreciation.

## 13.   EARTHQUAKE AND FLOOD

A.   Each loss by earthquake or flood shall constitute a single occurrence hereunder if:

(1)   more than one earthquake shock occurs within any period of 168  hours during the term of this policy, the beginning of which 168  hour period may be determined by the Insured; or

(2)   any flood occurs within a period of the continued rising or overflow of any river(s) or stream(s) and the subsidence of same within the banks of such river(s) or stream(s); or

(3)   any flood results from any tidal wave or series of tidal waves caused by any one disturbance.

Earthquake is defined as a shaking or trembling of the earth that is tectonic in origin including resulting tsunami.

Flood is defined as a rising and overflowing of a body of water onto normally dry land.

B.   Should any time period referred to in Clause  A. above commence prior to expiration or cancellation date of this policy, the Company(ies) shall pay all such Earthquake or flood losses occurring during such period as if such period fell entirely within the term of this policy.

C.   The Company(ies) shall not be liable, however, for any loss caused by any Earthquake or flood commencing before the effective date and time or commencing after the expiration date and time of this policy.

## 14.   ACCIDENT

The term "accident" is defined solely for the determination of the limits of liability and/or deductible(s) and application of the Sue and Labor and Suspension section only.  The term "accident" shall not limit or define the perils or coverages provided elsewhere in this policy.

A.   The term "accident" shall mean:

(1)   Any condition or occurrence within boilers or fired or unfired vessels owned by, operated by, or under the control of the Insured and subject to pressure or vacuum including piping or apparatus attached to and forming a part thereof, except that the words "any condition or occurrence" shall not include explosion, other than explosion of the parts of a steam boiler containing steam or water, steam piping, steam turbines, or steam engines;

(2)   mechanical breakdown of any machine or apparatus arising out of any condition or occurrence within such machine or apparatus;

(3)    electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated.

However, the term "accident" does not include:

(1)    loss or damage from fire or from the use of water or other means to extinguish fire; and

(2)    the normal operation of any safety or protective device;

B.    The term "accident" shall not apply to the following property:

(1)    property in transit;

(2)    property while in the course of construction, erection, installation, or assembly;

(3)    electronic data processing systems used for administrative, statistical, or accounting purposes;

(4)    any sewer piping, any piping forming a part of a fire protective system, or any water piping other than:

(a)    boiler feed water piping;

(b)    boiler condensate return piping;

(c)    water piping used in a heat transfer system for cooling, humidifying, or space heating purposes;

(5)    any vehicle, aircraft, or self-propelled equipment or floating vessel;

(6)    any elevator, crane, ladle or bucket, hoist, power shovel, drag line, excavator, scale, or conveyor, but not excluding any pressure vessel, gears, engines or electrical equipment used with a machine.

## 15.    CONTRIBUTING INSURANCE

Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy.  This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

## 16.    EXCESS INSURANCE

Excess insurance is insurance over the limit of liability set forth in this Policy.  The existence of such excess insurance shall not prejudice the coverage provided under this Policy nor will it reduce any liability hereunder.

### Step Down / Drop Down / Priority of Payments

A.    Primary

Any recoveries made under the primary shall first apply to loss or damage not insured against by the excess policy(ies).  Upon exhaustion of the primary limit, the excess policy(ies) shall step down and be liable for loss in the excess of the amount attributed to

such policy as respects loss or damage insured thereunder subject to the excess policy(ies) limits.

B.    Excess

The amount of loss from any one occurrence, for which this policy is excess, shall be determined by combining the loss, damage or expense as insured under the primary policy.

In the event of loss or damage involving more than one coverage or peril, the Limits of Liability of the underlying policies shall first apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any, to the coverage(s) or peril(s) as provided hereunder.  Upon erosion or exhaustion of the Limits of Liability of underlying policy(ies), this policy shall then be liable for the loss uncollected from the coverage(s) or peril(s) insured hereunder, subject to the Limit of Liability specified herein.

In the event of reduction or exhaustion of the aggregate limit(s) in respect of flood and/or earthquake designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as afforded by this policy shall apply in excess of the reduced or exhausted underlying limits.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

## 17.  UNDERLYING INSURANCE

A.    Underlying insurance is insurance on all or any part of the deductible and against all or any of the causes of loss covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

B.    If the limits of such underlying insurance exceed the deductible amount, which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered other insurance, as defined in the Other Insurance clause.

## 18.  OTHER INSURANCE

Except for insurance described by the contributing insurance clause, the excess insurance clause, or the underlying insurance clause, this policy shall not cover to the extent of any other collectible insurance, whether directly or indirectly covering the same property against the same causes of loss. The Company(ies) shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other collectible insurance.  As used herein, "other collectible insurance" does not include self-insurance, deductibles, self-insured retentions or fronting policies.

## 19.  SUBROGATION

A.    Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder.  The right of subrogation against the Insured, affiliated, subsidiary, and associated companies or corporations, the Insured's officers, directors, and employees, or any other corporations or companies associated with the Insured through ownership or management, or between contractors, subcontractors, sub-subcontractors, and at the option of the Insured against a tenant, vendor, supplier, guest, or customer of the Insured, is waived.

B.    In the event of any payment under this policy, the Company(ies) shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore.  The Insured shall execute all papers required and shall do anything that may be reasonably necessary at the

expense of the Company(ies) to secure such right.  The Company(ies) will act in concert with all other interests concerned, i.e., the Insured and any other Company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the cost of recovery shall be divided between the interests concerned in the proportion of their respective interests.  If there should be no recovery, the expense of proceedings shall be borne by the insurers instituting the proceedings.

## 20.  SALVAGE AND RECOVERIES

All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance, recovered or received prior to a loss settlement under this policy, shall reduce the loss accordingly.  If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(ies) participating in the payment of any loss, in the proportion of their respective interests.

## 21.  MACHINERY

In case of loss or damage insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company(ies) shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

## 22.  ERRORS OR OMISSIONS

Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department.

## 23.  NOTICE OF LOSS

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's Home Office Insurance Department, the Insured shall report such loss or damage to Jodi Jennings, Lockton Inc., 4725 Piedmont Row Dr., Suite 510, Charlotte, NC 28210 for transmission to the Assigned Adjuster.  Any delay by the Insured in providing notice shall not affect the Insured's right to coverage under this policy, except if and to the extent that the Company(ies) proves that it actually and substantially was prejudiced by any unreasonable delay in notice.

## 24.  PROOF OF LOSS

The Insured, at the request of the Company(ies), will render a signed and sworn proof of loss to the Company(ies) or its appointed representative stating: the place, time, cause of the loss, damage, or expense; the interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

## 25.  PARTIAL PAYMENT OF LOSS

In the event of a loss covered by this policy, it is understood and agreed that the Company(ies) will issue partial payment(s) of claim subject to the policy provisions, and shall not be less than the undisputed estimate of loss or damage between the Insured and the Company(ies).

## 26.  ASSIGNED ADJUSTER

It is agreed that at the Insured's option, the Company will use:

Michael R. Allen
McLarens
180 Montgomery Street, Suite 2100
San Francisco, CA 94104

for the adjustment of all claims made against this policy. This assignment may be changed by mutual consent of the Insured and the Company(ies).  Copies of routine monthly/quarterly reports including reserve amounts to be copied to the Attention of Jodi Jennings, Lockton Inc., 4725 Piedmont Row Dr., Suite 510, Charlotte, NC 28210.

## 27.   APPRAISAL

If the Insured and the Company(ies) fail to agree on the amount of the loss, each, upon written demand of either the Insured or the Company(ies) made within 60 days after receipt of proof of loss by the Company(ies), shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire.  If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of the Company(ies), such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss and shall be paid by the Company(ies) within 30  days thereafter.  The Insured and the Company(ies) shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.  However, if the award is greater than the amount offered by the Company(ies) in payment of the loss at any time before the award is rendered, then the Company(ies) shall pay 100% of the fees and expenses for each appraiser and the umpire and for the appraisal.

## 28.   PAIR AND SET

Except as provided under the Machinery clause and paragraph  (3) of the Consequential Loss clause, in the event of loss or damage insured against to any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

A.      the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

B.      the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company(ies).

## 29.   ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall reasonably cooperate with the Company(ies), and, at the Company's reasonable request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in conducting suits.

## 30.   SUE AND LABOR

In case of actual or imminent loss or damage covered by this policy except imminent loss or damage as respects an "accident", it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor and travel for, in and about the defense, the safeguard, and the recovery of property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of the Company(ies) in recovering, saving,

and preserving the insured property be considered a waiver or an acceptance of abandonment.  The Company(ies) shall pay the expenses so incurred.

**31.   PAYMENT OF LOSS**

All adjusted claims shall be due and payable to 24 Hour Holdings I Corp. no later than 30 days after presentation and acceptance of proofs of loss by the Company(ies) or its appointed representative.

**32.   REINSTATEMENT**

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in Section 3, no loss hereunder shall reduce the amount of this policy.

**33.   SUIT AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy; however, if there is any dispute between the Insured and the as to whether the Insured has fully complied with all the requirements of this policy, such a dispute may be resolved in a suit or action on the policy for recovery of any claim.  The Company(ies) agrees that any action or proceedings against it for recovery of any loss under this policy shall not be barred if commenced within two years and one day after the Insured provides notice to the Company(ies) in accordance with clause 23 above, which period shall be tolled from the date of notice until the date that the Insured receives the Company's final coverage decision (this two year and one day period is referred to as the "limitations period").  However, the limitations period shall not apply if by the laws of the State of the address of the Insured such a limitation is invalid or if the laws of the state in which any such action is brought permit a longer period of time within which to commence such a suit. Furthermore, any tolling of the limitations period shall not preclude the Insured from bringing a suit or any other proceeding regarding recovery for any loss or of any claim hereunder during the period of tolling or at any other time.  Prosecution of a suit by the Insured shall not be barred due to the failure of the Company(ies) to timely advise and notify the Insured of the expiration of any applicable dates to file and commence said suit.

It is agreed that in the event of the failure of the Company(ies) to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company(ies), at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United  States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law.  The Company(ies) shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

**34.   CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s), Mortgagee(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance.  In the event any Additional Insured(s), Mortgagee(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein.

The Company(ies) hereby authorizes Lockton Companies, LLC to issue certificates of insurance including any Mortgagee, Loss Payee and Additional Insured clauses.

## 35.   MORTGAGE CLAUSE

Loss or damage, if any, under this policy, shall be payable to any mortgagee, (or trustee) as designated herein by endorsement or certificate of insurance, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title of ownership of the property (provided the insured has an insurable interest in property), nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided, also, that the mortgagee (or trustee) shall notify the Company(ies) of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

The Company(ies) reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and the Company(ies) shall have the right, on like notice, to cancel this agreement.

Whenever the Company(ies) shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company(ies) shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued thereon to the date of such payments, and shall receive a full assignment and transfer of the mortgage and of all such other securities; but not subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

## 36.   CANCELLATION

A.    This policy may be canceled at any time at the request of the Insured or it may be canceled by the Company(ies) by mailing to the Insured at 12647 Alcosta Blvd., Suite 300, San Ramon, CA 94583, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.  However, if such request by the Insured or the Company(ies) occur(s), all Additional Insured(s), Mortgagee(s) and Loss Payee(s) indicated on the certificates of insurance issued during the term of this policy shall receive written notice by mailing to the address(es) noted on the certificates, stating when, not less than 30 days thereafter, such cancellation shall be effective. The earned premium shall be computed on a pro rata basis if cancelled by the Insurer and on a short rate basis if the entire policy is cancelled by the Insured.

B.    The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period.  Delivery of such written notice either by the Insured or by the Company(ies) shall be equivalent to mailing.

C.      Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

D.      In the event of non-payment of premium this policy may be canceled by the Company(ies) by mailing to the Insured at the address shown in A. above stating when, not less than 10 days thereafter, such cancellation shall be effective.

E.      Lockton Inc. will maintain and provide a list of all of the Additional Insured(s), Mortgagee(s) and Loss Payee(s) (including all necessary contact information) to the Company(ies) within 30 days of cancellation.

## 37.  VACANCY

Permission is granted to cease operations or remain vacant and/or unoccupied without limit of time, and such vacancy and/or unoccupancy shall not affect the insurance provided under this policy provided that any existing protective safeguards (including but not limited to security, automatic sprinkler protection) are maintained. For purposes of this coverage, locations are considered "vacant" and/or "unoccupied" if sixty nine percent (69%) or more of the total building area is vacant or unoccupied.

## 38.  JOINT LOSS AGREEMENT (AS APPLICABLE)

With respect to insurance provided by this policy, it is agreed that:

A.      If at the time of loss, there is in existence a policy(ies) issued by a boiler and machinery insurance Company(ies) and/or excess Difference in Conditions (DIC) insurance Company(ies) which may cover the same property or cover the location at which the property subject to loss is situated; and

B.      if there is a disagreement between the companies under this policy and such other contract either as to:

    (1)    whether such damage or destruction is insured against by this policy or by an accident insured against by such boiler and machinery insurance policy and/or excess DIC insurance Company(ies); or

    (2)    the extent of participation of this policy and of such boiler and machinery insurance policy and/or excess DIC insurance Company(ies) in a loss which is insured against, partially or wholly, by any one or all of said policies;

the Company(ies) shall, upon written request of the Insured, pay to the Insured one-half of the amount of the loss which is in disagreement, but in no event more than the Company(ies) would have paid if there had been no boiler and machinery insurance policy and/or excess DIC insurance policy in effect, subject to the following conditions:

    (1)    the amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and the companies is limited to the minimum amount remaining payable under either the boiler and machinery and/or excess DIC or this policy(ies);

    (2)    the boiler and machinery insurance Company(ies) and/or excess DIC insurance Company(ies) shall simultaneously pay to the Insured at least one half of said amount which is in disagreement;

(3)     the payments by the companies hereunder and acceptance of the same by the Insured signify the agreement of the companies to submit to and proceed with arbitration within ninety days of such payments;

The arbitrators shall be three in number, one of whom shall be appointed by the boiler and machinery insurance Company(ies) and/or excess DIC insurance Company(ies), one of whom shall be appointed by the Company(ies), and the third of whom shall be appointed by consent of the other two; the decision by the arbitrators shall be binding on the companies and that judgment upon such award may be entered in any court of competent jurisdiction;

(4)     the Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

(5)     the provisions shall not apply unless such other policy issued by the boiler and machinery insurance Company(ies) and/or excess DIC insurance Company(ies) is similarly endorsed;

(6)     acceptance by the Insured of sums paid pursuant to the provisions, including an arbitration award, shall not operate to alter, waive, surrender or in any way affect the rights of the Insured against any of the companies.

## 39.  VALUES

The values and schedule of property declared to the Company(ies) at the inception of the policy are for premium purposes only and shall not limit the coverages provided by this policy.

## 40.  CONSTRUCTION SOFT COSTS

"Construction soft costs" are defined to include cost of interest, additional cost of interest, loan points, marketing and promotional cost, taxes, insurance, security, contingency costs, advertising, broker fees, search costs and appraisal, and leasing commissions.

## 41.  TITLES OF PARAGRAPHS

The titles of paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

## 42.  CONFORMANCE

The terms of this policy which are in conflict with the applicable statutes of the state wherein this policy is issued are hereby amended to conform to such statutes, unless the statutes narrow or limit the coverage afforded by this policy and do not bar a policy from providing broader coverage.

**ENDORSEMENT 1**

**INSURED:  24 Hour Holding I Corp.**

**EFFECTIVE DATE:**          June 30, 2019

**The following provisions are hereby attached to and made part of this Policy:**

Policy Language Applicable to the Individual Company(ies) Noted

In addition to each Company(ies)'s Declaration's Page (excluding any pre-printed terms and conditions), Price, Renewal Date, Premium Credits, Premium Payment Conditions, State Statue Amendatory Endorsements and Producer Compensation Notices/Disclosures, if applicable; the following Company(ies)'s endorsements, forms, exclusions, etc... are added and apply only towards the individual Company(ies)'s to which such is noted.  No other Company(ies) may claim such wording as their own, whether more or less restrictive, in the event of loss to apply against all recovery.

The terms and conditions contained within this policy shall supersede those of any General Policy Conditions, General Property Conditions; terms and conditions within a Policy Jacket; Fire Policy Form; terms and conditions of the Declarations Page which conflict with the policy; and any other endorsements or conditions added by the Company(ies) upon policy's issuance or thereafter which are not noted in the above paragraph or listed below or have not been previously advised and agreed to by the Insured.

Engineering fees, loss prevention fees, object certificates fees, plan reviews and subsequent services / products, surplus lines taxes and fees, US FET Taxes and various state and local taxes and fees such as the Florida Fire College Trust Fund and Florida Emergency Management, Preparedness & Assist Fund Trust for the State of Florida and/or other statement assessments should be viewed as unequal as charged on an individual Company basis separately from premium.

**Allianz Global Risks US Insurance Company**

- AGR-IL 8001 (07-14) Policyholder Notice - All States
- AGR-IL 8003 (01-05) Policyholder Notice - OFAC
- AGR-CP 4005 (11-07) Standard Fire Policy Provisions Endorsement
- AGR-CP CA01 (10-07) California Changes - Cancellation and Nonrenewal Endorsement
- AGR-CP 8FL3 (09-14) Florida Citizens Emergency Assessment Policyholder Disclosure Notice
- AGR-CP 5100 (02-05) Asbestos and Related Materials Exclusion Endorsement
- AGR-CP 3107 (11-10) Deductibles Endorsement
- AGR-CP 5104 (02-05) Electronic Data Limitation Endorsement
- AGR-CP 5106 (05-07) Fungi Limitation Endorsement
- AGR-CP 5103 (02-05) Pollution and Contamination Exclusion Endorsement
- AGR-CP 5125 (10-14) Sanction Limitation and Exclusion Endorsement
- AGR-CP 5T11 (02-08) Terrorism Endorsement: Certified Act Of Terrorism

24 Hour Holdings I Corp.                                    2019 - 2020 Property Policy

**ENDORSEMENT 2**

**INSURED:  24 Hour Holding I Corp.**

**EFFECTIVE DATE:**          June 30, 2019

**The following provisions are hereby attached to and made part of this Policy:**

**Interruption by Communicable Disease:**

This policy is extended to cover the reasonable and necessary expenses incurred by the Insured to:

   a) Clean up, remove, and dispose of communicable diseases from insured property at a described location; and
   b) Restore the premises;

In a manner to satisfy the minimum requirements of any law or ordinance regulating communicable diseases.  This policy is also extended to cover business interruption (if provided) loss directly resulting from items a) and b) above.

All coverage above must be directly resulting from access being prohibited to a described location or any portion thereof:
   a) Due to the actual presence of and the spread of communicable diseases at that described location; and
   b) b) As a direct result of a declaration by a civil authority enforcing any law or ordinance regulating communicable diseases.

For the purpose of this extension, the presence of and the spread of communicable diseases will be considered direct physical damage and the expenses listed in items a) and b) above will be considered expenses to repair such damage. There will be no coverage to comply with any law or ordinance with which the Insured was required to comply had the direct physical damage not occurred.


Communicable disease means a disease that:
   A. May be transmitted directly or indirectly by one person or other life form to another and;
   B. Is due to:
        1.  An infectious agent; or
        2.  A toxic product produced by such infectious agent.

24 Hour Holdings I Corp.                                      2019 - 2020 Property Policy

**ENDORSEMENT 3**

**INSURED:  24 Hour Holding I Corp.**

**EFFECTIVE DATE:**  June 30, 2019

The following is hereby added to the policy:

**Company Reimbursement for Certificate or Loss Payable Deductibles Provision**

In situations where it shall be necessary to adjust a loss hereunder for the benefit of a party other than the Insured, with application of a lower deductible provision indicated on a certificate of insurance or loss payable endorsement, other than that stipulated under this policy, it is agreed that the loss shall be payable subject to this other deductible provision.

It is further agreed that the Insured shall promptly pay the *Company*, after the payment of loss, for the difference between the deductible amount which would have been applicable under this policy and the deductible amount necessary to satisfy the claim with the other party.  Further, with respect to loss(es) or portion(s) thereof below the policy deductible, the Insured shall reimburse the *Company* for any additional expenses incurred in the adjustment/investigation of said losses within this wording.

Such reimbursement shall be made within 15 business days, payable and forwarded to the *Company*.

This Endorsement applies to the following premises:

| Address | Deductibles |
|---|---|
| 10616 Research Blvd, Austin TX 78759 | $10,000 AOP; $25,000 Earthquake and Flood |
| 10707 Westheimer Rd., Houston, TX 77042 | $10,000 AOP; $25,000 Earthquake and Flood |
| 11798 E Oswego St., Englewood, CO 80112 (Midwest HQ) | $10,000 AOP; $25,000 Earthquake and Flood |
| 11798 E Oswego St., Englewood, CO 80112 (Club 350) | $10,000 AOP; $25,000 Earthquake and Flood |
| 2100 Plaza Pkwy, Bedford, TX 76021 | $10,000 AOP; $25,000 Earthquake and Flood |
| 13395 Beach Boulevard, La Mirada, CA 90638 | $10,000 AOP |
| 6633 Auburn Boulevard, Citrus Heights, CA 95621 | $25,000 AOP |
| 601 South Rainbow Blvd, Las Vegas, NV 89128 | $50,000 AOP |
| 1335 W. Renaissance Parkway, Rialto, CA  92376 | $125,000 AOP |
| 641 S. Rancho Santa Fe Rd, San Marcos, CA 92069 | $25,000 AOP; $25,000 Earthquake and Flood |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

**Appendix A**

**Tier One (1) Counties**

**Designated Named Windstorm Areas**

(States and Applicable Counties/Parishes)

| State | Tier I Counties |
|---|---|
| **Alabama** | Baldwin, Mobile |
| **Florida** | Entire State |
| **Georgia** | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| **Hawaii** | Entire State |
| **Louisiana** | Calcasieu, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Mary, St. Bernanrd, St. Charles, St. James, St. Tammany, St. John the Baptist, Tangipahoa, Terrebonne, Vermilion |
| **Mississippi** | Hancock, Harrison, Jackson |
| **North Carolina** | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington |
| **South Carolina** | Beaufort, Berkley, Charleston, Colleton, Georgetown, Horry, Jasper |
| **Texas** | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victoria, Willacy |
| **Virginia** | Accomack, Chesapeake City, Gloucester, Hampton City, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Newport news, Norfolk City, Northampton, Northumberland, Poquoson City, Portsmouth City, Suffolk City, Surry, Virginia Beach City, Westmoreland, Williamsburg City, York |

**New Madrid Earthquake Counties**

(States and Applicable Counties/Parishes)

| State | Counties |
|---|---|
| Arkansas | Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Randolph,  Sharp, Mississippi, Poinsett |
| Illinois | Alexander, Bond, Clinton, Franklin, Hardin, Jackson, Jefferson, Johnson, Madison, Massac, Monroe,  Perry, Pope, Pulaski, Randolph, Saline, St. Clair, Union, Washington, Williamson |
| Indiana | Gibson, Pike, Posey, Vanderburgh, Warrick |
| Kentucky | Ballard, Calloway, Carlisle, Fulton, Graves, Hickman, Livingston, Marshall, McCracken, |
| Mississippi | Bolivar, Coahoma, De Soto, Marshall, Tate, Tunica, |
| Missouri | Bollinger, Butler, Cape Girardeau, Dunklin, Franklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Pemiscot, Perry, Reynolds, , Scott, St. Charles, St. Francois, St. Louis, Ste. Genevieve, Stoddard, Warren, Washington, Wayne |
| Tennessee | Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Lake, Lauderdale, Madison, Obion, Shelby, Tipton. |

24 Hour Holdings I Corp.                                          2019 - 2020 Property Policy

**Pacific Northwest Earthquake Counties**
(States and Applicable Counties/Parishes)

| State | Counties |
|---|---|
| Washington | Callum, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Shohomish, Thurston, Watcom |



**Policy No.:**      **USP000783190**                                    **Endorsement No.**
**Effective Date:**      **June 30, 2019**                                    **4**

## STANDARD FIRE POLICY PROVISIONS ENDORSEMENT

This policy is amended by the following conditions but only if such conditions are construed to be more liberal than those already stated in the policy relating to the perils of fire, lightning or removal:

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED in the Declarations or in endorsements made a part hereof, this Company, for the term of years specified in the Declarations from the inception date shown in the Declarations at 12:01 A.M. (Standard Time) to the expiration date shown in the Declarations at 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the limit of liability specified in the Declarations, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from the interruption of business or manufacture, nor in any event for more than the interest of the Insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provision, stipulations and agreements as may be added hereto, as provided in this policy.

| | | |
|---|---|---|
| 1 | **Concealment**, | This entire policy shall be void if, whether |
| 2 | **fraud.** | before or after a loss, the insured has wil- |
| 3 | | fully concealed or misrepresented any ma- |
| 4 | terial fact or circumstance concerning this insurance of the | |
| 5 | subject thereof, or the interest of the insured therein, or in case | |
| 6 | of any fraud or false swearing by the insured relating thereto. | |
| 7 | **Uninsurable** | This policy shall not cover accounts, bills, |
| 8 | **and** | currency, deeds, evidences of debt, money or |
| 9 | **excepted property.** | securities; nor, unless specifically named |
| 10 | | hereon in writing, bullion or manuscripts. |
| 11 | **Perils not** | This Company shall not be liable for loss by |
| 12 | **included.** | fire or other perils insured against in this |
| 13 | | policy caused, directly or indirectly, by: (a) |
| 14 | enemy attack by armed forces, including action taken by mili- | |
| 15 | tary, naval or air forces in resisting an actual or an immediately | |
| 16 | impending enemy attack; (b) invasion; (c) insurrection; (d) | |
| 17 | rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) | |
| 18 | order of any civil authority except acts of destruction at the time | |
| 19 | of and for the purpose of preventing the spread of fire, provided | |
| 20 | that such fire did not originate from any perils excluded | |
| 21 | by this policy; (i) neglect of the insured to use all reasonable | |

**Allianz ⑪**
Global Risks

**Policy No. USP000783190 | Endorsement No. 4**
**STANDARD FIRE POLICY PROVISIONS ENDORSEMENT**

22    means to save and preserve the property at and after a loss, or
23    when the property is endangered by fire in neighboring prem-
24    ises; (j) nor shall this Company be liable for loss by theft.
25    **Other Insurance**.         Other insurance may be prohibited or the
26    amount of insurance may be limited by en-
27    dorsement attached hereto.
28    **Conditions suspending or restricting insurance.  Unless other-**
29    **wise provided in writing added hereto this Company shall not**
30    **be liable for loss occurring**
31    (a) while the hazard is increased by any means within the con-
32    trol or knowledge of the insured; or
33    (b) while a described building, whether intended for occupancy
34    by owner or tenant, is vacant or unoccupied beyond a period of
35    sixty consecutive days; or
36    (c) as a result of explosion or riot, unless fire ensues, and in
37    that event for loss by fire only.
38    **Other perils**           Any other peril to be insured against or sub-
39    **or subjects**.          ject of insurance to be covered in this policy
40                          shall be by endorsement in writing hereon or
41    added hereto.
42    **Added provisions**.         The extent of the application of insurance
43                          under this policy and of the contribution to
44    be made by this Company in case of loss, and any other pro-
45    vision or agreement not inconsistent with the provisions of this
46    policy, may be provided for in writing added hereto, but no pro-
47    vision may be waived except such as by the terms of this policy
48    is subject to change.
49    **Waiver**           No permission affecting this insurance shall
50    **provisions**.          exist or waiver of any provision be valid,
51                          unless granted herein or expressed in writing
52    added hereto.  No provision, stipulation or forfeiture shall be
53    held to be waived by any requirement or proceeding on the part
54    of this Company relating to appraisal or to any examination
55    provided for herein.
56    **Cancellation**           This policy shall be cancelled at any time
57    **of policy**.          at the request of the insured, in which case
58                          this Company shall, upon demand and sur-
59    render of this policy, refund the excess of paid premium above
60    the customary short rates for the expired time.  This pol-
61    icy may be cancelled at any time by this Company by giving
62    to the insured a five day's written notice of cancellation with
63    or without tender of the excess of paid premium above the pro
64    rata premium for the expired time, which excess, if not ten-
65    dered, shall be refunded on demand.  Notice of cancellation shall
66    state that said excess premium (if not tendered) will be re-
67    funded on demand.
68    **Mortgagee**           If loss hereunder is made payable, in whole
69    **interests and**          or in part, to a designated mortgagee not
70    **obligations**.          named herein as the insured, such interest in
71                          this policy may be cancelled by giving to such
72                          mortgagee a ten day's written notice of can-
73                          cellation.
74    If the insured fails to render proof of loss, such mortgagee, upon



**Policy No. USP000783190 | Endorsement No. 4**
**STANDARD FIRE POLICY PROVISIONS ENDORSEMENT**

| | |
|---|---|
| 75 | notice, shall render proof of loss in the form herein specified |
| 76 | within sixty (60) days thereafter and shall be subject to the pro- |
| 77 | visions hereof relating to appraisal and time of payment and of |
| 78 | bringing suit.  If this Company shall claim that no liability ex- |
| 79 | isted as to the Mortgagor or owner, it shall, to the extent of pay- |
| 80 | ment of loss to the mortgagee, be subrogated to all the mort- |
| 81 | gagee's rights or recovery, but without impairing mortgagee's |
| 82 | right to sue; or it may pay off the mortgage debt and require |
| 83 | an assignment thereof and of the mortgage.  Other provisions |
| 84 | relating to the interests and obligations of such mortgagee may |
| 85 | be added hereto by agreement in writing. |
| 86 | **Pro rata liability**.          This Company shall not be liable for a greater |
| 87 |                                        proportion of any loss than the amount |
| 88 | hereby insured shall bear to the whole insurance covering the |
| 89 | property against the peril involved, whether collectible or not. |
| 90 | **Requirements in**          The insured shall give immediate written |
| 91 | **case loss occurs**.          notice to this Company of any loss, protect |
| 92 |                                        the property from further damage, forthwith |
| 93 | separate the damaged and undamaged personal property, put |
| 94 | it in the best possible order, furnish a complete inventory of |
| 95 | the destroyed, damaged and undamaged property, showing in |
| 96 | detail quantities, costs, actual cash value and amount of loss |
| 97 | claimed; **and within sixty days after the loss, unless such time** |
| 98 | **is extended in writing by the Company, the insured shall render** |
| 99 | **to this Company a proof of loss**, signed and sworn to by the |
| 100 | insured, stating the knowledge and belief of the insured as to |
| 101 | the following:  the time and origin of the loss, the interest of the insured |
| 102 | and of all others in the property, the actual cash value of |
| 103 | each item thereof and the amount of loss thereto, all encum- |
| 104 | brances thereon, all other contracts of insurance, whether valid |
| 105 | or not, covering any said property, any changes in the title, |
| 106 | use occupation, location, possession or exposures of said prop- |
| 107 | erty since the issuing of this policy, by whom and for what |
| 108 | purpose any building herein described and the several parts |
| 109 | thereof were occupied at the time of loss and whether or not it |
| 110 | then stood on leased ground, and shall furnish a copy of all the |
| 111 | descriptions and schedules in all policies and, if required, verified |
| 112 | plans and specifications of any building, fixtures or machinery |
| 113 | destroyed or damaged.  The insured, as often as may be reason- |
| 114 | ably required, shall exhibit to any person designated by this |
| 115 | Company all that remains of any property herein described, and |
| 116 | submit to examinations under oath by any person named by this |
| 117 | Company, and subscribe the same; and, as often may be |
| 118 | reasonably required, shall produce for examination all books of |
| 119 | account, bills, invoices and other vouchers. or certified copies |
| 120 | thereof if originals be lost, at such reasonable time and place as |
| 121 | may be designated by this Company or its representative, and |
| 122 | shall permit extracts and copies thereof to be made. |
| 123 | **Appraisal**.          In case the insured and this Company shall |
| 124 |                                        fail to agree as to the actual cash value or |
| 125 | the amount of loss, then, on the written demand of either, each |
| 126 | shall select a competent and disinterested appraiser and notify |
| 127 | the other of the appraiser selected within twenty days of such |



| | |
|---|---|
| 128 | demand.  The appraisers shall first select a competent and dis- |
| 129 | interested umpire; and failing for fifteen days to agree upon |
| 130 | such umpire, then, on request of the insured or this Company, |
| 131 | such umpire shall be selected by a judge of a court of record in |
| 132 | the state in which the property covered is located.  The ap- |
| 133 | praisers shall then appraise the loss, stating separately actual |
| 134 | cash value and loss to each item; and, failing to agree, shall |
| 135 | submit their differences, only, to the umpire.  An award in writ- |
| 136 | ing, so itemized, of any two when filed with this Company shall |
| 137 | determine the amount of actual cash value and loss.  Each |
| 138 | appraiser shall be paid by the party selecting him and the ex- |
| 139 | penses of appraisal and umpire shall be paid by the parties |
| 140 | equally. |

141 **Company's**    It shall be optional with this Company to
142 **options**.    take all, or any part of the property at the
143     agreed or appraised value, and also to re-
144 pair, rebuild or replace the property destroyed or damaged with
145 other of like kind and quality within a reasonable time, on giv-
146 ing notice of its intention so to do within thirty days after the
147 receipt of the proof of loss herein required.
148 Abandonment.   There can be no abandonment to this Com-
149     pany of any property.

150 **When loss**    The amount of loss for which this Company
151 **payable**.    may be liable shall be payable sixty days
152     after proof of loss, as herein provided, is
153 received by this Company and ascertainment of the loss is made
154 either by agreement between the insured and this Company ex-
155 pressed in writing or by the filing with Company of an
156 award as herein provided.

157 **Suit**.    No suit or action on this policy for the recov-
158     ery of any claim shall be sustainable in any
159 court of law or equity unless all the requirements of this policy
160 shall have been complied with, and unless commenced within
161 twelve months next after inception of the loss.

162 **Subrogation**.   This Company may require from the insured
163     an assignment of all right of recovery against
164 any party for loss to the extent that payment therefor is made
165 by this Company.

## STATE EXCEPTIONS - NUMBERED LINE CONDITIONS:

**NO. CAROLINA, NO. DAKOTA:** The words "twelve months" in line 161 are changed to "three years". This policy shall be effective and shall terminate at noon (Standard Time) on the inception and expiration dates specified in the Declarations.

**IDAHO:** The words "five days'" in line 62 are changed to "thirty days'"

**VIRGINIA:** The words "twelve months" in line 161 are changed to "two years".

**WISCONSIN:** The words "five days'" in line 62 are changed to "ten days'".

**MAINE:** The words "five days" in line 62 are changed to "ten days".  The words twelve months" in line 161 are changed to "two years."



**Policy No. USP000783190 | Endorsement No. 4**
**STANDARD FIRE POLICY PROVISIONS ENDORSEMENT**

      **NEW YORK:** The words "twelve months" in line 161 are changed to "twenty-four months".  This policy shall be effective and shall terminate at noon (Standard Time) on the inception and expiration dates specified in the Declarations.

      **ARIZONA, CONNECTICUT, HAWAII. IOWA, MISSOURI, NEBRASKA, NEW HAMPSHIRE, OKLAHOMA, PENNSYLVANIA:**  This policy shall be effective and shall terminate at noon (Standard Time) on the inception and expiration dates specified in the Declarations.

Where the terms "policy", "location" or "company" in this endorsement are defined in the policy to which it is attached, these terms assume those same definitions.

All other terms and conditions remain unchanged.



| | | |
|---|---|---|
| **Policy No.:** | **USP000783190** | **Endorsement No.** |
| **Effective Date:** | **June 30, 2019** | **5** |

## CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL ENDORSEMENT

This policy is amended by the following conditions but only if such conditions are construed to be more liberal than those already stated in the policy:

A.   **CANCELLATION**

1.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.   All Policies In Effect For 60 Days Or Less

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

a.   10 days before the effective date of cancellation if we cancel for:

(1)   Nonpayment of premium; or

(2)   Discovery of fraud or material misrepresentation by:

(a)   Any insured or his or her representative in obtaining this insurance; or

(b)   You or your representative in pursuing a claim under this policy.

b.   30 days before the effective date of cancellation if we cancel for any other reason.

3.   All Policies In Effect For More Than 60 Days

a.   If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1)   Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(2)   Discovery of fraud by:

(a)   Any insured or his or her representative in obtaining this insurance; or

(b)   You or your representative in pursuing a claim under this policy.

(3)   A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

(4)   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5)   Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

A.0050



**Policy No. USP000783190 | Endorsement No. 5**
**CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL**
**ENDORSEMENT**

    (6)    A determination by the Commissioner of Insurance that the:

        (a)    Loss of, or changes in our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

        (b)    Continuation of the policy coverage would:

            (i)    Place us in violation of California law; or

            (ii)    Threaten our solvency.

    (7)    A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

    b.    We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

        (1)    10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

        (2)    30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph 3.a.

4.    Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.    If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.    If notice is mailed, proof of mailing will be sufficient proof of notice.

7.    Residential Property

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under the Property Coverage Form.

    a.    If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in b. below.

    b.    We may not cancel this policy solely because the first Named Insured has:

        (1)    Accepted an offer of earthquake coverage; or

        (2)    Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**AGR-CP CA01 (10-07)**               **Page 2 of 4**
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

A.0051



**Policy No. USP000783190 | Endorsement No. 5**
**CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL**
**ENDORSEMENT**

B.  **NONRENEWAL**

1.  Subject to the provision of Paragraphs 2. and 3. below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

    We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2.  Residential Property

    This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under the Property Coverage Form.

    a.  We may elect not to renew such coverage for any reason, except as provided in b. below:

    b.  We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

        However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

        (1)  The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

        (2)  The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims, or

        (3)  We have:

            (a)  Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage, or

            (b)  Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

        the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

    c.  We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

A.0052



**Policy No. USP000783190 | Endorsement No. 5**
**CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL**
**ENDORSEMENT**

3.  We are not required to send notice of nonrenewal in the following situations:

    a.  If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

    b.  If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph 1. above.

    c.  If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

    d.  If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

    e.  If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

    f.  If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph 1. above, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

**C.    DEFINITIONS**

Throughout this endorsement the words "you" or "your" refer to the first Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

All other terms and conditions remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

A.0053



**Policy Number:** USP000783190                                    **Endorsement Number**
**Effective Date:** June 30, 2019                                          **6**

## ASBESTOS AND RELATED MATERIALS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

    24 Hour Holdings I Corp. Manuscript Property Form

### THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

**Words that appear in quotation marks in this endorsement have special meaning. Refer to Section B - DEFINITION.**

A.  Notwithstanding any other provision, this policy, including its endorsements, does not cover loss, damage, costs or expenses arising out of or in connection with:

    1.  The removal of "Materials" from any structure, or fixture, or item of personal property, or product, unless the "materials" are damaged by a peril not otherwise excluded under this policy;

    2.  Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating "materials";

    3.  Any governmental direction or request declaring that "materials" present in or part of or utilized on any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

B.  DEFINITION

    "Materials"

    The term "materials" shall mean asbestos, dioxin, or polychlorinated biphenyls.

**Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.**



**Policy No.:** USP000783190                              **Endorsement No.**
**Effective Date:** June 30, 2019                              **7**

## DEDUCTIBLES ENDORSEMENT

This policy is amended as follows:

A.    The deductibles specified for property damage and time element apply separately to each such coverage even if both are involved in a single occurrence.

B.    If two or more deductibles provided in this policy apply to a single occurrence, then the total to be deducted will be the largest deductible applicable.

Where the terms "policy" and "occurrence" in this endorsement are defined in the policy to which this endorsement is attached, such terms herein assume those same definitions.

All other terms and conditions remain unchanged.



**Policy Number:**   **USP000783190**                                   **Endorsement Number**
**Effective Date:**   **June 30, 2019**                                            **8**

## ELECTRONIC DATA LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

> 24 Hour Holdings I Corp. Manuscript Property Form

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

**Words that appear in quotation marks in this endorsement have special meaning. Refer to Section C - DEFINITION.**

A. Notwithstanding any other provision, this policy, including its endorsements, does not cover:

    1. Loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to or breakdown of "electronic data" from any cause whatsoever except for losses directly caused by any of the following causes:

        fire, lightning, explosion, windstorm, hail, aircraft or vehicle impact, riot, civil commotion, smoke, or, leakage or automatic discharge from fire protection systems, all occurring during the policy period to property insured by this policy.

    2. Any time element loss, including, but not limited to, interruption of business, extra expense, rental value, royalties, expediting expense and leasehold interest, resulting from any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to, or breakdown of "electronic data" excluded by paragraph 1. above.

This policy will not pay the cost of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for any Insured to determine, rectify, or test for any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to or breakdown of "electronic data" excluded by paragraph 1. above.

In addition, this policy will not pay for the repair, replacement or modification of any computer hardware, including microprocessors, firewalls, routers, or hubs, computer application software, computer operating systems and related software, or computer networks and related hardware and software to correct any deficiencies, change any features, or otherwise prevent the occurrence of any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to or breakdown of "electronic data" excluded by paragraph 1. above.

Nevertheless, if fire or explosion is not excluded from this policy and a fire or explosion results directly or indirectly from any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to, or breakdown of "electronic data" excluded by paragraph 1. above, any loss or damage reinsured arising directly from that fire or explosion shall (subject to the terms, exclusions, limits and conditions of this policy) be covered.

B. Electronic Data Processing Media Valuation

Notwithstanding any provision to the contrary within this policy or its endorsements, in the event of direct physical loss or damage to electronic data processing "media" insured by this policy, the basis of valuation shall be, if such items are actually reproduced, the cost of blank "media" plus the costs of copying the "electronic data" from back ups or from originals of a previous generation, but no liability is assumed for any other cost, including research, engineering, programming, or assembling or gathering information, incurred in restoring or recreating data or programs lost, nor any liability inconsistent with the terms of this endorsement.

**AGR-CP 5104 (02-05)**                                               **Page 1 of 2**



C.  DEFINITIONS

1.  "Electronic Data"

The term "electronic data" shall mean electronic data of any kind including, but not limited to, facts, concepts, data, or other information in a form useable by computers or other electronic or electromagnetic data processing equipment, including computer software and all other coded instructions for the processing or manipulation of data on such equipment.

2.  "Media"

The term "media" shall mean the materials upon which data is recorded, including but not limited to, paper tapes, cards, electronic memory circuits, and magnetic or optical storage devices.

**Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.**



Allianz
Global Risks

| | |
|---|---|
| **Policy Number:**   **USP000783190** | **Endorsement Number** |
| **Effective Date:**   **June 30, 2019** | **9** |

## FUNGI LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

> 24 Hour Holdings I Corp. Manuscript Property Form

**This endorsement contains words and phrases which have specific definitions for this endorsement only.  Please refer to item E. below for details of these definitions.**

In consideration of the premium charged, and subject to the terms, exclusions, limits and conditions of the "policy" to which this endorsement is attached and to the provisions contained within this endorsement, the following changes are made to this "policy".

**A.      Exclusion**

The following exclusion is added to this "policy":

This "policy" does not insure against:

1.      Any cost or expense incurred to clean up, remove or remediate any Fungi, or

2.      Any cost or expense incurred to test for, monitor, or assess the existence, concentration, or effects of Fungi.

**B.      Extension of Coverage**

This "Policy" is hereby extended to insure:

1.      Any cost or expense incurred to clean up, remove or remediate any Fungi, or

2.      Any cost or expense incurred to test for, monitor, or assess the existence, concentration, or effects of Fungi;

when direct physical loss or damage is caused by one of the following perils:

- Fire

- Lightning

- Explosion

- Wind

- Hail

- Vehicle Impact

- Smoke

- Collapse

- Riot or Civil Commotion

- Vandalism or Malicious Mischief

- Water Damage caused by the discharge or leakage of fire protective equipment or domestic water piping

- Flood if insured by this "policy" and not otherwise excluded at the insured location(s)

- Earth Movement if insured by this "policy" and not otherwise excluded at the insured location(s)

A.0058



3.  Coverage in B.1 and/or B.2 includes the cost of clean up or remediation of the Fungi, the cost to tear out and replace any part of the insured property as needed to gain access to the Fungi, and the cost of testing performed, provided there is reason to believe that Fungi is present.

**C.  Limitation of Coverage**

The maximum liability of this "company" for coverage provided under B. is subject to a sublimit of $ per occurrence and in the aggregate in any one policy year.  This sublimit does not increase the Policy Limit or any other sublimit.  The "company" shall not be liable for more than the sublimit specified for this extension in any one "occurrence" regardless of the number of "locations" or coverages involved in the "occurrence". This sublimit includes any Time Element coverage as may be provided by this "policy". The "company" shall not be liable under this extension unless such loss, damage or expense is reported to the "company" within six (6) months of the date on which the covered property damage loss occurred.

**D.  Demolition and Increased Cost of Construction**

1.  If this "policy" provides any coverage for the enforcement of laws or ordinance regulating the construction, repair, replacement, use or removal, including debris removal, of any property or that requires the demolition of any property, including the cost in removing its debris, then this "policy" shall also include the costs associated with:

    (1)  the enforcement of any ordinance or law which requires the Insured or others to test for, monitor, clean up, remove or contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of Fungi; or

    (2)  the enforcement of any ordinance or law that regulates or requires the demolition, repair, replacement, reconstruction, remodeling or remediation of insured property due to the presence, growth or proliferation, spread or any activity of Fungi.

**E.  Definition**

For the purpose of this endorsement, Fungi shall mean any form of fungus including, but not limited to, yeast, mold, mildew, rust, smut, mushroom, spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of Fungi.

**F.  Change**

Any definition within the "policy" as respects Pollutant(s), Contaminant(s), Pollution or Contamination or Hazardous Substance(s) or Material is revised to delete the term Fungi.



**Policy Number:** **USP000783190**                                          **Endorsement Number**
**Effective Date:** **June 30, 2019**                                                    **10**

## POLLUTION AND CONTAMINATION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

    24 Hour Holdings I Corp. Manuscript Property Form

### THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

**Words that appear in quotation marks in this endorsement have special meaning. Refer to Section B - DEFINITION.**

A.    Notwithstanding any other provision, this policy, including its endorsements, does not cover:

    1.    Expenses, fines, penalties or costs incurred or sustained by the Insured or imposed on the Insured at the order of any government agency, court or other authority, in connection with any kind or description of environmental impairment including seepage or "pollution" or "contamination" from any cause whatsoever.

    2.    Loss, damage, costs or expenses in connection with any kind of description of seepage and/or "pollution" and/or "contamination", direct or indirect, arising from any cause whatsoever.

Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from seepage and/or "pollution" and/or "contamination", any loss or damage insured under this policy arising directly from that fire shall (subject to the terms, exclusions, limits and conditions of this policy) be covered.

However, if the insured property is the subject of direct physical loss or damage for which the Company has paid or agreed to pay, then this policy (subject to its terms, exclusions, limits and conditions) insures against direct physical loss or damage to the insured property caused by resulting seepage and/or "pollution" and/or "contamination"; provided that nothing in the foregoing shall be construed to mean that this policy covers the cost of decontamination or removal or restoration or replacement of water, soil, or any other substance on or under the premises at any location covered hereunder.

The Insured shall give notice to the Company of intent to claim no later than twelve (12) months after the date of the original physical loss or damage.

B.    DEFINITION

    "Pollution" and/or "Contamination"

    The terms "pollution" and/or "contamination" shall mean the presence of any material which after its release or discharge can cause or threaten damage to human health and/or human welfare, or causes or threatens damage, deterioration, loss of value, marketability and/or loss of use to insured property, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and/or Toxic Substances Control Act, or as designated by the US Environmental Protection Agency.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.



**Policy No.:**          **USP000783190**                                                    **Endorsement No.**
**Effective Date:**      **June 30, 2019**                                                    **11**

## SANCTION LIMITATION AND EXCLUSION ENDORSEMENT

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

| | | |
|---|---|---|
| **Policy No.:** | **USP000783190** | **Endorsement No.** |
| **Effective Date:** | **June 30, 2019** | **12** |

## TERRORISM ENDORSEMENT: EXCLUSION OF CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

    24 Hour Holdings I Corp. Manuscript Property Form

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement contains words or phrases that have specific Definitions. Refer to Items A. and B. below for details of these Definitions.**

A. **Definitions**

The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, as amended, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. **Certified Act of Terrorism Exclusion**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

C. **Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph B. applies if the location of the Insured's Covered Property or Property Insured is within a jurisdiction that has a Standard Fire Policy law.

If a "certified act of terrorism" results in fire, then we will pay for the loss or damage caused by that fire up to our share of the program limit. Such coverage for fire applies only to direct loss or damage by fire to Covered Property or Property Insured. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage, or to the Legal Liability coverage, or the Leasehold Interest coverage, or the Net Leasehold coverage.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act, as amended, exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, as amended, then we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

D. **Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy.

All other terms and conditions remain unchanged.



**Policy Number:** **USP000783190**                                      **Endorsement Number**
**Effective Date:** **June 30, 2019**                                      **13**

## General Change Endorsement

This endorsement modifies insurance provided under the following:

**24 Hour Holdings I Corp. Manuscript Property Form**

It is hereby agreed that **Section 3. LIMITS OF LIABILITY**, Item B. **Sublimits** is amended to include the following:

23) $1,000,000        Soft Costs (This sublimit is part of and not in addition to the sublimit for Course of Construction.)

24) $10,000,000       Boiler and Machinery – Ammonia Contamination

25) $10,000,000       Boiler & Machinery - Hazardous Substances

26) $10,000,000       Boiler & Machinery – Spoilage

27) $1,000,000        Control of Damaged Property

28) $1,000,000        Defense Costs

29) $5,000,000        Tax Treatment of Profits

30) $5,000,000        Temporary Removal of Property

31) $5,000,000        Commission, Profits and Royalties

32) $1,000,000        Impounded Water

It is hereby agreed that **Mold** is subject to annual aggregate and **Pollutant Cleanup** is subject to annual aggregate.

It is hereby agreed that **Section 4. Primary Deductibles**, item F. **Machinery Breakdown** is amended to 50,000 in lieu of 10,000.

It is hereby agreed that **Section 7. COVERAGE**, Item F. **Time Element Extensions** is amended to include the following:

(2) Civil/Military Authority: 24 hour waiting period

(3) Ingress/Egress: 24 hour waiting period

It is hereby agreed that **Section 7. COVERAGE** , Item K. **Service Interruption** is amended to include the following:

24 hour waiting period

It is hereby agreed that **Endorsement (2) Time Element Extensions** is amended to include the following:

**AGR-IL M001 (11-03)**                                                      **Page 1 of 2**



Communicable Disease: 24 hour waiting period.

It is hereby agreed that **Section B of the Policy, peril of Earthquake**, the final paragraph is deleted in its entirety.

It is hereby agreed that **Section K, Boiler & Machinery** (Ammonia Contamination, Hazard Substances, Spoilage), it is sublimited to $10,000,000 program limit.

It is hereby agreed that **Section Named Storm Occurrence** the following should be added to **Section D**: 72 consecutive hours.

Implementation of adequate insuring clause: "This policy insures against all risks of sudden accidental direct physical loss or direct physical damage, except as excluded, to tangible covered property while on described premises, provided such direct physical loss or direct physical damage occurs during the term of this policy. Insured Location(s) includes the area within one thousand (1,000) feet of such location, all within the Policy Territory."

Implementation of adequate occurrence definition: "Occurrence for the purposes of this policy shall mean any one loss, disaster, or casualty, or series of losses, disasters or casualties attributable directly or indirectly to one cause or to one series of similar causes. All such losses will be added together and the total amount of such losses will be treated as one occurrence. When the term applies to loss or losses from the peril of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief (including terrorism), it shall be defined as the sum total of all losses arising out of or caused by such peril during any period of 72 consecutive hours. When filing proof of loss, the Insured shall have the right to elect the moment at which the 72 hour period shall be deemed to have commenced provided always that no elected period of 72 hours shall commence earlier than when the first loss to the insured property or interests occurs."

All other terms and conditions remain unchanged.