# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>24 HOUR FITNESS WORLDWIDE, INC. e*t al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 20-11558 (KBO)<br><br>(Jointly Administered) |
| 24 HOUR FITNESS WORLDWIDE, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>CONTINENTAL CASUALTY COMPANY; ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY; STARR SURPLUS LINES INSURANCE COMPANY; ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; BEAZLEY-LLOYD'S SYNDICATES 2623/623; ALLIED WORLD NATIONAL ASSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; and GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA,<br><br>        Defendants. | Adversary Proceeding No. 20-51051 |

**QBE SPECIALTY INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, AND ALLIANZ GLOBAL RISKS US INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS | | 1 |
| SUMMARY OF ARGUMENT | | 1 |
| STATEMENT OF FACTS | | 2 |
| ARGUMENT | | 3 |
| I. | Plaintiff's Claims Against the Excess Insurers Must Be Dismissed Because Plaintiff's Insurance Claim For Interruption By Communicable Disease Cannot Possibly Reach The Excess Policiess Attachment Point | 3 |
| CONCLUSION | | 5 |

# TABLE OF AUTHORITIES

**Cases**                                                   **Pages**

*Ali v. Federal Ins. Co.*, 719 F.3d 83 (2d Cir. 2013) .................................................................. 4

*Deere & Co. v. Allstate Ins. Co.*, 32 Cal. App. 5th 499 (2019) .................................................. 4

*Genting Americas Inc. v. American Intern. Group UK Ltd.*, No. 704595/21,
2022 WL 2101311 (N.Y. Sup. Ct., Feb. 6, 2023) ....................................................................... 4

*Highgate Hotels, L.P. v. Liberty Mut. Fire Ins. Co.*, No. BER-L-002318-21,
2021 WL 4618658 (N.J. Super. Ct. Law Div., Oct. 5, 2021) .................................................. 4, 5

*JRK Prop. Holdings, Inc. v. Colony Ins. Co.*, 313 Cal. Rptr. 3d 895 (Ct. App. 2023) ................ 4

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021) ........................... 3

*Orient Overseas Assocs. v. XL Ins. Am., Inc.*, No. 652292/2013, 2016 WL 2770278
(N.Y. Sup. Ct. May 11, 2016) ..................................................................................................... 5

*Zurich Am. Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158 (2d Cir. 2005) ...................................... 4


**Rules**                                                     **Pages**

Federal Rule of Civil Procedure 56 ....................................................................................... 1, 2

Federal Rules of Bankruptcy Procedure 7056 .......................................................................... 2


**Statutes**                                                  **Pages**

28 U.S.C. § 157(b) ..................................................................................................................... 1

Excess Insurers QBE Specialty Insurance Company ("QBE"), General Security Indemnity Company of Arizona ("GSINDA"), and Allianz Global Risks US Insurance Company ("Allianz") (collectively herein "Excess Insurers") move this Court for summary judgment seeking dismissal of Plaintiff's claims as they pertain to Excess Insurers, pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 56 of the Federal Rules of Civil Procedure, showing the Court as follows:

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

These proceedings arise from a disputed insurance claim based on alleged business income losses during the COVID-19 pandemic. Specifically, Plaintiff made an insurance claim under its Property Policies for economic losses it allegedly experienced as a result of the closure of its clubs, including a provision pertaining to Interruption by Communicable Disease ("ICD"). In the adversary proceeding, Plaintiff. seeks a declaration that it is entitled to recovery under the Property Policies for the economic losses it purportedly incurred as the result of the closure of its 477 fitness clubs (the "facilities") ((See Adv. DE 1).[1]

## SUMMARY OF ARGUMENT

1.     The Excess Insurers join in Property Insurer Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law [Adv. DE 232], and seek dismissal of Plaintiff's claims against them for all the reasons set forth in Property Insurer Defendants' Motion and supporting Memorandum.

---

[1] This Adversary Proceeding is a non-core proceeding within the meaning of 28 U.S.C. § 157(b). (Adv. DE 68). The Property Insurers, including the Excess Insurers, have not consented to this Court's entry of final judgments in this Adversary Proceeding. (See Adv. DE 37 ¶ 15, 40 ¶ 15, 43 ¶ 15, 49 ¶ 15, 53 ¶ 15, 56 ¶ 15). The Property Insurers, including the Excess Insurers, have preserved their right to seek withdrawal of the reference of this Adversary Proceeding. (See Adv. DE 231-1 ¶ 2). The Property Insurers, including the Excess Insurers, do not, by filing this motion, consent to entry of final judgments by the Court in this Adversary Proceeding or otherwise waive any rights with respect to withdrawal of the reference, all of which rights are reserved.

1

2.     Under the Federal Rules of Civil Procedure, Rule 56, applicable pursuant to Federal Rules of Bankruptcy Procedure, Rule 7056, the Court shall grant summary judgment to the moving party if the movant shows there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.

3.     The Excess Insurers also seek dismissal for an additional reason: The insurance policies issued by the Excess Insurers, referred to here as the "Excess Policies,"[2] provide coverage only for covered losses that exceed $20,000,000 in a single occurrence. All of the relevant insurance policies limit ICD coverage to $2,500,000 per occurrence. Thus, Plaintiff's ICD claim cannot exceed $20,000,000, and cannot trigger coverage under the Excess Policies under any circumstance as a matter of law. Accordingly, Plaintiff's declaratory judgment claim against the Excess Insurers fails, and must be dismissed.

## STATEMENT OF FACTS

In addition to the facts set forth in Property Insurer Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law, which are adopted by the Excess Insurers and incorporated herein, the Excess Insurers provide the Court with the following additional relevant facts.

The Excess Insurers, together with the other Defendants, participate in a first-party commercial property insurance program (the "Program") providing coverage in primary and excess layers. All insurers participating in the Program, including the Excess Insurers, have entered into insurance contracts with Plaintiff based on a manuscript policy form to which each insurer has added its own endorsements. The primary layer has a limit of liability of $20,000,000, excess of deductibles. Ex. 1 at 11. The Excess Insurers' Excess Policies provide coverage in an excess

---

[2] References herein to the Excess Policies refer to the excess policies issued by the Excess Insurers for the policy period June 30, 2019 to June 30, 2020, attached hereto as Exhibit 1.

layer above the Primary Policy. In other words, Excess Insurers' obligations under the Excess Policies are not triggered until, among other things, a covered loss exceeds the $20,000,000 primary limit for any one occurrence.[3]

Plaintiff has asserted a claim for coverage under the Primary Policy's Interruption by Communicable Disease provisions, alleging its losses are covered "in whole or in part under the…communicable disease coverage provisions." Adv. DE 1 at ¶¶ 59 – 66. The Primary Policy contains various sublimits, including a $2,500,000 per occurrence sublimit applicable to claims for Interruption by Communicable Disease. *Id*. at 15. In addition, the Primary Policy also contains a Sublimit Endorsement, which provides in part:

> . . . all Sub-limits of Liability apply on a "Per Occurrence" basis, which is the most that the Company will pay for all covered loss and damage for the type of Coverage or peril to which the sub-limit applies in any one Occurrence, regardless of the number of Coverages, insureds or Insured Locations.

*Id*. at 67.

## ARGUMENT

**Plaintiff's Claims Against the Excess Insurers Must Be Dismissed Because Plaintiff's Insurance Claim For Interruption By Communicable Disease Cannot Possibly Reach The Excess Policies' Attachment Point.**

Under California law[4] the "burden is on the insured to establish that a claimed loss is within the basic scope of insurance coverage." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890 (9th Cir. 2021). Because limits of liability, including sublimits, "define the scope of coverage," an insured seeking coverage under an excess policy bears the burden of proving that

---

[3] The Excess Policies' Participation Endorsements provide that QBE participates at $9,703,125 part of $30,000,000 excess of the Attachment Point, GSINDA participates at $3,234,375 part of $30,000,000 excess of the Attachment Point and Allianz participates at $6,875,000 part of $50,000,000 excess of the Attachment Point. Ex. 1 at p. 8 of the QBE/GSINDA policy and page 1 of 36 of the Allianz Policy.

[4] As set forth in Property Insurer Defendants' Motion, California law applies to this dispute. [Adv. DE 232]

3

its covered loss exceeds the attachment point necessary to trigger the excess policy. *Zurich Am. Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158, 172 (2d Cir. 2005). Under California law, where "policy language is clear and unambiguous, it must be interpreted according to its plain meaning." *Deere & Co. v. Allstate Ins. Co.*, 32 Cal. App. 5th 499, 516 (2019).

The "fundamental purpose of excess insurance . . . is to protect the insured against amounts of loss or damage in excess of the underlying policy's limits." *Id*. Thus, "excess insurance attaches only after a predetermined amount of underlying coverage has been exhausted." *Id*. See *Ali v. Federal Ins. Co.*, 719 F.3d 83, 90-91 (2d Cir. 2013) (finding that excess policies are trigged only when the underlying policies have been exhausted). Where an insured seeks insurance coverage subject to a sublimit which "prevent[s] [the insured's] claim from triggering the excess coverage layer" the claim cannot stand. *Highgate Hotels, L.P. v. Liberty Mut. Fire Ins. Co.*, No. BER-L-002318-21, 2021 WL 4618658, at *8 (N.J. Super. Ct. Law Div., Oct. 5, 2021), *aff'd in part, rev'd in part on different grounds* (N.J. Super. Ct. App. Div., Apr. 24, 2023); see *Genting Americas Inc. v. American Intern. Group UK Ltd.*, No. 704595/21, 2022 WL 2101311, at *3 (N.Y. Sup. Ct., Feb. 6, 2023) (dismissing excess insurers from the case because the insured's claims subject to a sublimit were below the attachment point of the excess policies).

It is undisputed that the ICD per occurrence sublimit is $2,500,000. It is similarly undisputed that the Attachment Point for the Excess Policies is $20,000,000 per occurrence. A California appellate court recently affirmed a trial court's decision to dismiss claims against an excess carrier where the insured sought recovery for a coverage that was subject to a sublimit below a particular excess insurer's attachment point. See *JRK Prop. Holdings, Inc. v. Colony Ins. Co.*, 313 Cal. Rptr. 3d 895, 902–03 (Ct. App. 2023) (holding that "[t]he communicable disease provision did not apply to the excess insurers because the provision was subject to a $2.5 million

cap, and the excess insurers' policies attached above that level."). This is consistent with decisions from other states as well. *See Highgate Hotels*, 2021 WL 4618658 at *8-9 (dismissing excess insurers from a COVID-19 case with affirmative coverage grants for Contagious Disease and Cancellation of Bookings, subject to program sublimits of $1,500,000 and $5,000,000 respectively because the sublimits were "well below" the attachment points); *Orient Overseas Assocs. v. XL Ins. Am., Inc.*, No. 652292/2013, 2016 WL 2770278, at *8 (N.Y. Sup. Ct. May 11, 2016) ("The very concept of a sublimit is to cap a carrier's exposure at an amount below the policy limit if a particular type of covered peril caused the loss.").

In this case, it is *impossible* for Plaintiff to demonstrate that its ICD claims exhaust the primary layer of insurance and exceed the Attachment Point of the Excess Policies because the ICD per occurrence sublimit of $2,500,000 is far below the $20,000,000 per occurrence Attachment Point. Thus, even if Plaintiff could prove coverage under the ICD provisions, the claim can never exceed the Attachment Point and can never trigger the Excess Policies. The Excess Carriers, therefore, have no obligation to pay for losses below their attachment point. Because Plaintiff's claims for ICD coverage cannot reach Excess Insurers' layer, all claims for coverage under the ICD provisions against the Excess Insurers must be dismissed.

## CONCLUSION

For the foregoing reasons, QBE Specialty Insurance Company, General Security Indemnity Company of Arizona, and Allianz Global Risks US Insurance respectfully request that the Court dismiss with prejudice Plaintiff's claims in their entirety and grant any other relief as the Court deems just.

November 10, 2023

**HOGAN♦McDANIEL**

*/s/Garvan F. McDaniel*
Garvan F. McDaniel (DE #4167)
1311 Delaware Avenue
Wilmington, DE 19806
Telephone: (302) 656-7596
gfmcdaniel@dkhogan.com

*Delaware Counsel for Defendants QBE Specialty Insurance Company, General Security Indemnity Company of Arizona, and Allianz Global Risks US Insurance Company*

-and-

Elizabeth Kniffen (admitted *pro hac vice*)
Dennis Anderson (admitted *pro hac vice*)
**ZELLE LLP**
500 Washington Avenue South, Suite 4000
Minneapolis MN 55415
Telephone: (612) 359-4261
EKniffen@zellelaw.com
danderson@zellelaw.com

*Counsel for Defendants QBE Specialty Insurance Company and General Security Indemnity Company of Arizona*

-and-

Marlie McDonnell
Georgia Bar No. 489804 (*pro hac vice*)
**CLYDE & CO US LLP**
271 17th Street NW, Suite 1720
Atlanta, GA 30363
Tel: (404) 410-3150
Fax: (404) 410-3151
E: marlie.mcdonnell@clydeco.us

*Counsel for Defendant Allianz Global Risks US Insurance Company*