# EXHIBIT 2

AW0013



## ALLIED WORLD NATIONAL ASSURANCE COMPANY

199 Water Street, 24th Floor, New York, NY 10038 · Tel. (646) 794-0500 · Fax (646) 794-0611

## SCHEDULED LOCATION POLLUTION LIABILITY POLICY DECLARATIONS

**Policy Number:** 0309-1873          **New/Renewal of:** 0309-1873

**Item 1. Named Insured and Address:**

24 Hour Holdings I Corp.
12647 Alcosta Boulevard, 5th Floor
San Ramon, CA 94583

**Item 2. Policy Period:**     **From** September 3, 2017   **To** September 3, 2020
**12:01 AM STANDARD TIME AT THE ADDRESS SHOWN IN ITEM 1.**

**Item 3. Coverages and Coverage Section Limits and Deductibles:**

**This Policy covers only those Coverages stated below:**

| Coverage | Deductible Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| 1. Pre-Existing Conditions | $50,000 | $25,000,000 | $25,000,000 |
| 2. New Conditions | $50,000 | $25,000,000 | $25,000,000 |
| 3. Blanket Non-Owned Site | $50,000 | $25,000,000 | $25,000,000 |
| 4. Blanket Transportation | $50,000 | $25,000,000 | $25,000,000 |

| Coverage | Business Interruption-Waiting Period - Hours | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| 5. Business Interruption | 72 | $25,000,000 | $25,000,000 |

**Item 4. Policy Aggregate Limit:**     **$25,000,000**

**Item 5. Insured Locations:**

| | | | |
|---|---|---|---|
| 1265 Laurel Tree Lane | Carlsbad | CA | 92008 |
| 140A Alamo Plaza | Alamo | CA | 94507 |
| 18305 Brookhurst Drive | Fountain Valley | CA | 92708 |
| SEC of Windmill Ave & Antonio Pkwy | Ladera Ranch | CA | 92694 |
| 820 State Street | Santa Barbara | CA | 93101 |
| Crenshaw Blvd. & Century Fwy (I-105) | Hawthorne | CA | 90250 |
| 6348 College Grove Way | San Diego | CA | 92115 |
| 1600 Azusa Drive, Space 300 | City of Industry | CA | 91748 |
| 324 Horton Plaza, Space No. 25 | San Diego | CA | 92101 |

ENV-SPL2 00002 00 (09/14)          Page 1 of 10
Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

**EXHIBIT**

Ex. 2 - Allied World-Serrano

exhibitsticker.com

AW0014
AWPLL000148

| | | | |
|---|---|---|---|
| 3605 Avocado Blvd. | La Mesa | CA | 91941 |
| 406 Crosby Street | Altadena | CA | 91001 |
| 3600 West Orangewood | Orange | CA | 92868 |
| SE Corner of Lemon and Durst Streets | Anaheim | CA | 92801 |
| 909-919 Garnet Avenue | San Diego | CA | 92109 |
| SWC Silverado Ranch Blvd & Md Pkwy | Las Vegas | NV | 89123 |
| 315 Westfield Ctr, Mission Valley | San Diego | CA | 92108 |
| 1415-1417 Second St. | Santa Monica | CA | 90401 |
| Imperial Hwy and Carmenita | Santa Fe Springs | CA | 90670 |
| 15301 Ventura Boulevard, Space U-3 | Sherman Oaks | CA | 91403 |
| 320 Third Avenue | Chula Vista | CA | 91910 |
| 26741 Rancho Pkwy. | Lake Forest | CA | 92630 |
| 5035 W. Tropicana | Las Vegas | NV | 89103 |
| Hillsborough Dr. & Beach Blvd. | La Mirada | CA | 90638 |
| 589 Anton Boulevard | Costa Mesa | CA | 32626 |
| 4480 Charleston Blvd., Las Vegas | Las Vegas | NV | 89104 |
| Hwy 76 & Frazee Road | Oceanside | CA | 92057 |
| 1530 W. West Covina Parkway | West Covina | CA | 91790 |
| 870 Amena Court | Chula Vista | CA | 91910 |
| 32451 St. of the Golden Lantern, Ste 1A | Laguna Niguel | CA | 92677 |
| Sunset/DeLongpre | Los Angeles | CA | 90027 |
| 2595 Thousand Oaks Blvd | Thousand Oaks | CA | 91362 |
| 3965 5th Avenue, Suites 100-160 | San Diego | CA | 92103 |
| 9550 Miramar Road | San Diego | CA | 92126 |
| 400 La Terraza Blvd | Escondido | CA | 92025 |
| 1605-1617 Pacific Coast Highway | Hermosa Beach | CA | 90254 |
| 1490 E. Daily | Camarillo | CA | 93011 |
| 2106 W. Craig Road, Suite # 2 | North Las Vegas | NV | 89032 |
| 7450 University Avenue | La Mesa | CA | 91041 |
| 1660 Broadway, Suite 18-22 | Chula Vista | CA | 91011 |
| 3675 Midway Dr., A1 | San Diego | CA | 92110 |
| 9906 Mission Gorge Rd | Santee | CA | 92071 |
| 5858 Warner Ave | Huntington Beach | CA | 92649 |
| 5885 Rancho Mission Rd | San Diego | CA | 9210 |
| 4501 Katella Avenue, Building 4 | Cypress | CA | 90630 |
| 240 Brand Blvd | Glendale | CA | 91203 |
| 455 Santa Fe Drive | Encinitas | CA | 92024 |
| 4302 Gosford Road | Bakersfield | CA | 93313 |
| 1335 West Avenue P | Palmdale | CA | 93551 |
| 3699 Wilshire Blvd. 3rd floor #110 | Los Angeles | CA | 90010 |
| 9911 W. Pico Blvd., #B-16 & Floor A | Los Angeles | CA | 90035 |
| 1600 Adams Avenue | Costa Mesa | CA | 92626 |
| 10125 Whitwood Drive | Whittier | CA | 90603 |
| 25252 McIntyre | Laguna Hills | CA | 92653 |
| 3521 E. Chapman | Orange | CA | 92869 |
| 3633 Rosedale Highway | Bakersfield | CA | 93308 |
| 2685 Pacific Coast Hwy | Torrance | CA | 90505 |
| 8105 Sheridan Boulevard | Westminster | CO | 80003 |
| 27131 Calle Arroyo #1701 | San Juan Capistrano | CA | 92675 |
| 8350 Van Nuys Blvd | Panorama City | CA | 91402 |
| 15315 Culver Dr. #165 | Irvine | CA | 92604 |
| 2556 Wigwam Parkway | Henderson | NV | 89014 |
| 100 Oceangate Ave suite P20 | Long Beach | CA | 90802 |
| 9561 Chapman Avenue | Garden Grove | CA | 92841 |

Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

AW0015
AWPLL000149

| | | | |
|---|---|---|---|
| 23166 Los Alisos Blvd, #140 | Mission Viejo | CA | 92691 |
| 27141 Aliso Creek Rd, #100 | Aliso Viejo | CA | 92656 |
| NWC State College & Birch St. | Brea | CA | 92621 |
| 17170 Bernardo Center Dr. | San Diego | CA | 92128 |
| 1500 Rosecrans Ave #100 | Manhattan Beach | CA | 90266 |
| 685 West Foothill Boulevard | Upland | CA | 91786 |
| 2893 North Green Valley Pkwy | Henderson | NV | 89014 |
| 7680 Girard Ave | La Jolla | CA | 92037 |
| 16200 Bear Valley, Suite # L-1 | Victorville | CA | 92392 |
| 18645 Via Princessa | Santa Clarita | CA | 91351 |
| 715 E. Huntington Dr. | Monrovia | CA | 91016 |
| 22331 El Paseo | Santa Margarita | CA | 92688 |
| 465 North Halstead St. #102 | Pasadena | CA | 91107 |
| 975 Lomas Santa Fe Drive, Suite A-C | Solana Beach | CA | 92075 |
| 1352 Madera Rd. | Simi Valley | CA | 93065 |
| 5601 Grossmont Center Dr. | La Mesa | CA | 91942 |
| 525 Colorado Boulevard | Pasadena | CA | 91101 |
| 4200 Chino Hills Parkway | Chino Hills | CA | 91709 |
| Val Vista Drive & Elliot Road | Gilbert | AZ | 85234 |
| 2929 31st Street | Santa Monica | CA | 90405 |
| 8612 Santa Monica Blvd | West Hollywood | CA | 90069 |
| 555 West 19th ST. | Costa Mesa | CA | 92627 |
| 3030 Bellflower Blvd. | Long Beach | CA | 90808 |
| 18007 Von Karman Avenue | Irvine | CA | 92612 |
| 10025 Carmel Mountain Road | San Diego | CA | 92127 |
| 945 Dominguez Avenue | Carson | CA | 90746 |
| 300 South Festival Lane | Anaheim Hills | CA | 92808 |
| 8697 Irvine Center Drive | Irvine | CA | 92618 |
| 11787 Foothill Boulevard | Rancho Cucamonga | CA | 91730 |
| 275 Teller Street, #100 | Corona | CA | 92879 |
| 10616 Research Blvd. | Austin | TX | 78759 |
| 2145 Baseline Road | Tempe | AZ | 85283 |
| 3233 E. Camel Back Road | Phoenix | AZ | 85018 |
| 13220 N. Scottsdale Road | Scottsdale | AZ | 85254 |
| 7300 West Greens Road | Willow Brook | TX | 77064 |
| 14111 Southwest Parkway | Sugarland | TX | 77478 |
| 10707 Westheimer Rd. | Houston | TX | 77042 |
| 601 S. Rainbow Blvd. | Las Vegas | NV | 89128 |
| 3600 Emporium Circle | Mesquite | TX | 75150 |
| 4600 West Park Blvd. | Plano | TX | 75093 |
| 1375 East Campbell Rd | Richardson | TX | 75081 |
| 1131 W. Arbrook Blvd. | Arlington | TX | 76015 |
| 2100 Plaza Parkway | Bedford | TX | 76021 |
| 9800 West Atlantic Blvd. | Coral Springs | FL | 33071 |
| 700 Pine Island Rd | Plantation | FL | 33324 |
| 5001 Overton Ridge Blvd. | Fort Worth | TX | 76132 |
| 400 N. Brand Blvd., Ste. 120 | Glendale | CA | 91203 |
| Spring Gate Ln & Town Ctr Drive | Las Vegas | NV | 89134 |
| 2920 Aborn Square Road | San Jose | CA | 95121 |
| 771 Jackson Street | Hayward | CA | 94544 |
| 35630 Fremont Boulevard | Fremont | CA | 94536 |
| 567 Floresta Boulevard | San Leandro | CA | 94578 |
| 3951 Alemany Boulevard | San Francisco | CA | 94132 |
| 3435 S. Inca Street | Englewood | CO | 80110 |

Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

AW0016
AWPLL000150

| | | | |
|---|---|---|---|
| 7635 West 88th Avenue | Arvada | CO | 80005 |
| 720 S. Colorado Boulevard | Denver | CO | 80246 |
| 360 South Teller Street | Lakewood | CO | 80226 |
| 10001 Grant Street | Thornton | CO | 80229 |
| 1450 South Abilene Street | Aurora | CO | 80012 |
| 99 U.S. Highway 22 | Springfield | NJ | 07081 |
| 140 Central Avenue | Clark | NJ | 07066 |
| 189 US Highway 46 | Saddle Brook | NJ | 07663 |
| 918 Bergen Avenue | Jersey City | NJ | 07306 |
| 245-24 Horace Harding Expressway | Little Neck | NY | 11362 |
| 15926 Jamaica Avenue | Jamaica | NY | 11432 |
| 2032 Coney Island Avenue | Brooklyn | NY | 11223 |
| 8002 Kew Gardens Road | Kew Gardens | NY | 11415 |
| 2503 Grand Concourse | Bronx | NY | 10468 |
| 2163 Tilden Avenue | Brooklyn | NY | 11226 |
| 1921 86th Street | Brooklyn | NY | 11214 |
| 298 West 231st Street | Bronx | NY | 10463 |
| 1720 Sheepshead Bay Road | Brooklyn | NY | 11235 |
| 1675 Sunrise Hwy | Bay Shore | NY | 11706 |
| 589 Tuckahoe Road | Yonkers | NY | 10710 |
| 12260 Gulf Freeway # A-5 & #A-15 | Houston | TX | 77070 |
| 15542 Highway 529 (Spencer Road) | Houston | TX | 77095 |
| 5721 Westheimer Road | Houston | TX | 77057 |
| 9336 Westview | Houston | TX | 77055 |
| 7622 Campbell Rd | Dallas | TX | 75248 |
| 2770 East Trinity Mills | Carrollton | TX | 75006 |
| 1550 S. Mason Road | Katy | TX | 77450 |
| 724 W. Main St, Suite 190/Valley Square | Lewisville | TX | 75067 |
| 3650 Austin Bluff Parkway, #197 | Colorado Springs | CO | 80918 |
| 12039 W. Alameda Parkway, #Z-3 | Lakewood | CO | 80228 |
| 6044 South Kipling Parkway | Littleton | CO | 80127 |
| 11420 I-10 East Freeway | Jacinto City | TX | 77029 |
| 6425 San Felipe | Houston | TX | 77057 |
| 10301 South 1300 East | Sandy City | UT | 84094 |
| 4650 W 120th Ave. & Sheridan | Broomfield | CO | 80020 |
| 5100 Beltline Rd, #600 | Addison | TX | 75240 |
| S 1100 E & Ashton Avenue | Salt Lake City | UT | 84106 |
| 2407 West Airport Freeway | Irving | TX | 75062 |
| 1892 Southgate Ctr | Colorado Springs | CO | 80906 |
| 18541 Kuykendahl Road | Houston | TX | 77379 |
| 7068 FM 1960 East | Humble | TX | 77346 |
| S. Meridian Blvd at Oswego St. | Englewood | CO | 80112 |
| 4120 E. Alameda | Glendale | CO | 80246 |
| 7400 E. Hampden Ave. | Denver | CO | 80231 |
| 146 West Parkwood | Friendswood | TX | 77546 |
| Portion of Lot IR-Bray Central 1 Add. | Allen | TX | 75013 |
| NEC E. Dad Clark Dr. & S. Broadway | Highlands Ranch | CO | 80126 |
| 21602 State Highway 249 | Houston | TX | 77070 |
| 700 N. Harwood | Dallas | TX | 75201 |
| Six Pines Road | Woodlands | TX | 77380 |
| 11100 Central Expressway | Dallas | TX | 75243 |
| Meyerland Plaza Ctr, Space #8650E | Houston | TX | 77096 |
| 5706 E. Mockingbird Lane | Dallas | TX | 75206 |
| 1000 E. 41st St., #850 | Austin | TX | 78751 |

          Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

AW0017
AWPLL000151

| | | | |
|---|---|---|---|
| 1208-S N. IH-35 | Round Rock | TX | 78681 |
| 3301 E. Bell Road | Phoenix | AZ | 85032 |
| 13802 Research Blvd. | Austin | TX | 78750 |
| 18707 & 18737 E. Hampden Avenue | Aurora | CO | 80013 |
| 2401 Rio Grande Blvd | Euless | TX | 76039 |
| 4112 FM 762 | Rosenberg | TX | 77471 |
| Bingle Shopping Center | Houston | TX | 77055 |
| Warren Parkway & Preston Road | Frisco | TX | 75034 |
| 188 106th Ave NE, 5th Floor | Bellevue | WA | 98004 |
| 10115 Gravelly Lake Drive SW, Suite 2 | Lakewood | WA | 98499 |
| 20202 Ballinger Way, NE, Space A-10 | Seattle | WA | 98155 |
| 2130 South 314th Street | Federal Way | WA | 98003 |
| 2500 SW Barton | Seattle | WA | 98126 |
| 800 S.E. Tech Center Drive | Vancouver | WA | 98684 |
| 1220 Howell Street | Seattle | WA | 98101 |
| 1407 SW Fourth Avenue | Portland | OR | 97201 |
| 11100 SW Murray Schools Pl. | Beaverton | OR | 97007 |
| 18930 29th Avenue West | Lynwood | WA | 98036 |
| 9946 SE Washington, Space E-1 | Portland | OR | 97216 |
| 4546 SE McLoughlin Blvd | Portland | OR | 97216 |
| 815 Auburn Way | Auburn | WA | 98002 |
| 5400 South & Redwoord | Salt Lake City | Utah | 84118 |
| 9th Street Marketplace | Murray City | Utah | 84121 |
| 515 South 700 East | Salt Lake City | Utah | 84102 |
| 45 Montgomery Street/111Sutter Street | San Francisco | CA | 94104 |
| 3813 Center View Drive | West Jordan | UT | 84084 |
| 512 S Chambers RD | Aurora | CO | 80017 |
| 6839 South Vine Street | Centennial | WA | 80122 |
| 5712 East lake Sammamish Parkway | Issaquah | WA | 98209 |
| 18006 120th Ave | Bothel | WA | 98011 |
| 17200 Brookhurst St | Fountain Valley | CA | 92708 |
| 2520 Somersville Road | Antioch | CA | 94509 |
| 1049 Broadway St | Redwood City | CA | 94063 |
| 555 Oceana Blvd. | Pacifica | CA | 94044 |
| 2480 Whipple Road | Hayward | CA | 94544 |
| La Cienega & Slauson Ave. | Los Angeles | CA | 90056 |
| 17941 SW McEwan Road | Tigard | OR | 97224 |
| 7320 170th Ave NE | Redmond | WA | 98052 |
| 4500 Auto Mall Parkway | Fremont | CA | 94538 |
| Store #A-225, A-103, A-226 | Richmond | CA | 94806 |
| 1000 Kamehameha Highway | Pearl City | HI | 96782 |
| 6223 Santa Teresa Blvd | San Jose | CA | 95119 |
| 7905 Walerga Road | Antelope | CA | 95843 |
| 304 Bayfair | San Leandro | CA | 94578 |
| 1200 Van Ness Ave | San Francisco | CA | 94109 |
| 520 S. El Camino Real | San Mateo | CA | 94402 |
| Leigh/Hillsdale Avenue | San Jose | CA | 95124 |
| 375A North Capitol Ave | San Jose | CA | 95133 |
| 150 E. Fremont Ave | Sunnyvale | CA | 94087 |
| 373 Gellert Blvd | Daly City | CA | 94015 |
| 101 Larkspur Landing Cr. | Larkspur | CA | 94939 |
| 3550 Industrial Dr. | Santa Rosa | CA | 95403 |
| Sunvalley, Store # E-118C & Store #E-203 | Concord | CA | 94520 |
| 4500 Norris Canyon Road | San Ramon | CA | 94538 |

Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

**AW0018**
AWPLL000152

| | | | |
|---|---|---|---|
| 550 Showers Dr., #7D, 4D, 3D, 8D | Mountain View | CA | 94040 |
| 3839 E. Castro Valley | Castro Valley | CA | 94552 |
| 4300 Sonoma Blvd #408 | Vallejo | CA | 94589 |
| 2033 N. Main Street | Walnut Creek | CA | 94596 |
| 1201 Soquel Ave | Santa Cruz | CA | 95062 |
| 303 Second Street | San Francisco | CA | 94107 |
| 350 Bay Street | San Francisco | CA | 94133 |
| 100 California Street | San Francisco | CA | 94111 |
| Auburn Boulevard and Van Maren Lane | Citrus Heights | CA | 95621 |
| 9574 Micron Ave | Sacramento | CA | 95827 |
| 2050 Webster Street | Oakland | CA | 94612 |
| 850 Tennent Station | Morgan Hill | CA | 95037 |
| 1090 North Main Street | Manteca | CA | 95336 |
| 24727 Amador St. | Hayward | CA | 94544 |
| 1595 Sky Mountain Dr. | Reno | NV | 89503 |
| 1850 Ocean Avenue | San Francisco | CA | 94112 |
| 1680 Kapiolani Blvd. | Honolulu | HI | 96814 |
| 39300 Paseo Padre Parkway | Fremont | CA | 94538 |
| 1531 Parkmore Ave | San Jose | CA | 95128 |
| 1645 Bryant Street | San Francisco | CA | 94103 |
| 5234 Newpark Mall Road | Newark | CA | 94560 |
| 2145 Market Street | San Francisco | CA | 94114 |
| 95221 Kipapa Drive | Mililani | HI | 96789 |
| 6155 Neil Road | Reno | NV | 89511 |
| 8785 Center Parkway | Sacramento | CA | 95823 |
| 4100 S. Parker Road | Aurora | CO | 80014 |
| 1000 Bishop Building, Suite 101 | Honolulu | HI | 96813 |
| 3137 West Benjamin Holt Drive | Stockton | CA | 95219 |
| 150 Hana Highway, #108 | Kahului, Maui | HI | 96732 |
| 45-480 Kanoehe Bay Drive, C-21 | Kaneohe | HI | 96744 |
| 7600 Greenhaven Drive, Suite 15 | Sacramento | CA | 95831 |
| Hall Blvd. & Watson Avenue | Beaverton | OR | 97005 |
| 1210 NW Johnson | Portland | OR | 97209 |
| Fulton & Hurley, Sacramento | Sacramento | CA | 95825 |
| Rampart Way and Academy Blvd | Denver | CO | 80230 |
| 441 Lancaster Drive NE | Salem | OR | 97301 |
| 6095 SE Tulatin Valley HWY | Hillsboro | OR | 97123 |
| 6 Petaluma Blvd., North | Petaluma | CA | 94954 |
| 2072 Addison Street | Berkeley | CA | 94704 |
| 336 N. Sunrise Blvd. | Roseville | CA | 95661 |
| 7120 Kalanianaole Hwy | Honolulu | HI | 96825 |
| 1211 E. Arquez | Sunnyvale | CA | 94086 |
| 1650 Industrial Road | San Carlos | CA | 94070 |
| 1020 7th Street | Sacramento | CA | 95814 |
| 301 Jacklin Road | Milpitas | CA | 95035 |
| 200 Harker Place | Annapolis | MD | 21401 |
| 260 East Route 4 | Paramus | NJ | 7652 |
| 2982 Grand Avenue | Coconut Grove | FL | 33133 |
| 8333 Pines Boulevard | Pembroke Pines | FL | 33024 |
| 8400 Mills Drive | Miami | FL | 33183 |
| 6846 Forest Hilld Blvd | Greenacres | FL | 33413 |
| 20851 Dixie Drive Highway | Miami | FL | 33189 |
| 11645 Red Road | Miramar | FL | 33025 |
| 1775 North Congress Ave | Boynton Beach | FL | 33426 |

Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

**AW0019**
AWPLL000153

| | | | |
|---|---|---|---|
| 9919 West Oakland Park Blvd | Sunrise | FL | 33351 |
| 15 West Crystal Lake Drive | Orlando | FL | 32806 |
| 4270 Aloma Avenue, Suite 164 | Winter Park | FL | 32792 |
| 850 W Osceola Parkway | Kissimmee | FL | 34741 |
| 150 Triangle Plaza | Ramsey | NJ | 7446 |
| 150 Sylvan Avenue | Englewood Cliffs | NJ | 07632 |
| 133 Route 23 | Wayne | NJ | 07470 |
| 405 East Interstate 30 | Rockwall | TX | 75087 |
| 5901 Golden Triangle | Keller | TX | 76548 |
| 459 State Route 17 | Hasbrouck | NJ | 07604 |
| 400 East Fordham RD | Bronx | NY | 10010 |
| 19770 Saums Road | Houston | TX | 77084 |
| NWC FM 518 & Miller Ranch Rd | Pearland | TX | 77584 |
| 1401 Town Center | Pflugerville | TX | 78681 |
| 2599 Dunstan Rd | Houston | TX | 77005 |
| 2570 West Grand Parkway | Richmond | TX | 77406 |
| 159000 E Brianwood Circle | Aurora | CO | 80013 |
| 2650 Belleview Ave | Littleton | CO | 80120 |
| 213 North Highway 67 | Cedar Hill | TX | 75104 |
| 2208 E Harmony Road | Ft Colins | CO | 80528 |
| 2900 Iris Ave | Boulder | CO | 80528 |
| 1719 Spring Green Blvd | Katy | TX | 77494 |
| Western Oaks Retail Ctr | Austin | TX | 78745 |
| 19770 Saums Road | Houston | TX | 77084 |
| 213 North Highway 67 | Cedar Hill | TX | 75104 |
| 6601 Northeast Loop 820 | North Richland Hills | TX | 76180 |
| SWC Parmer Lane and I-35 | Austin | TX | 78727 |
| 25632 Northwest Freeway | Cypress | TX | 77429 |
| NEC Woodlands Pkwy & Kukendahl | The Woodlands | TX | 77382 |
| Marketplace & Olympus Blvd | Irving | TX | 75063 |
| Old Denton Road | Ft. Worth | TX | 76137 |
| 5946 Fairmont Parkway | Pasadena | TX | 77505 |
| 4425 FM 1960 West | Houston | TX | 77014 |
| 1101 N Walnut Creek Dr | Mansfield | TX | 76063 |
| 2765 Gulf Freeway | League City | TX | 77573 |
| 2700 E Eldorado Parkway | Little Elm | TX | 75068 |
| 3501Garth Road | Baytown | TX | 77521 |
| 321 Louisiana Street | Houston | TX | 77006 |
| 12555 Westheimer | Houston | TX | 77077 |
| SE Corner Hwy 360 & Camp Wisdom | Grand Prairie | TX | 75050 |
| 3800 24th Street | San Francisco | CA | 94114 |
| 1773 Solano Ave | Berkeley | CA | 94704 |
| 136 Crosby | New York | NY | 10010 |
| Town Square | New York | NY | 10010 |
| 153 East 53rd street | New York | NY | 10010 |
| 5205 Fashion Drive | Nanuet | NY | 10954 |
| 750 West Sunrise Hwy, Ste 100 Green | Valley Stream | NY | 11581 |
| 5114 Arden Way | Carmichael | CA | 95608 |
| 3950 Alameda Avenue | Oakland | CA | 94601 |
| 1519 Gateway Blvd | Fairfield | CA | 94533 |
| 979 Broadway | Millbrae | CA | 95670 |
| 6061 Florin RD | Sacramento | CA | 95823 |
| 2244 Sunrise Blvd | Rancho Cordova | CA | 95620 |
| Bel Air Village Phase II | Elk Grove | CA | 95624 |

Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

**AW0020**
AWPLL000154

| Address | City | State | ZIP |
|---|---|---|---|
| 1006 Riley St | Folsom | CA | 95630 |
| 2306 Almaden RD Suite 140 | San Jose | CA | 95125 |
| 1610 Crane CT | San Jose | CA | 95112 |
| 351Rheem BLVD | Morage | CA | 94556 |
| 93 Bovert RD | San Mateo | CA | 94402 |
| 2535 California St | Mountain View | CA | 94040 |
| 6345 Commerce Blvd. | Rohnert | CA | 94928 |
| 9450 Ruby Lockhart Blvd | Lanham | MD | 20706 |
| 1500 Cornerside Blvd | Vienna | VA | 22182 |
| 1000 East Broad Street | Falls Church | VA | 22042 |
| 12300 Price Club Plaza | Fairfax | VA | 22033 |
| 4770 Willow Road | Pleasanton | CA | 94558 |
| 110  Avenida La Pata | San Clement | CA | 92673 |
| 6830 E County Line RD | Highland Ranch | CO | 80130 |
| 1265 Waterhouse Ave | Beverton | OR | 97006 |
| 7887 Center Avenue | Huntington Beach | CA | 92647 |
| 1085 South Arizona Avenue | Chandler | AZ | 95248 |
| 27520 Ynez Road | Temecula | CA | 92591 |
| Buena Park Mall | Buena Park | CA | 92802 |
| 97 S Val Vista Drive | Glendale | AZ | 85308 |
| 1919 N Power Rd | Mesa | AZ | 85207 |
| 321 W. Katella | Anaheim | CA | 92702 |
| SWC Rose St & Valley Pkwy | Escondido | CA | 92677 |
| 21560 Valley Blvd | City Of industry | CA | 91789 |
| 10046 N Metro Parkway | Phoenix | AZ | 85051 |
| 27921 La Paz | Laguna Niguel | CA | 92618 |
| 31 Fortune Drive | Irvine | CA | 92618 |
| 6731 Westminster  Blvd | Westminster | CA | 92683 |
| 19350 Nordhoff St Unit D | Northridge | CA | 91324 |
| 500 N Atlantic Blvd Suite A-102-1 | Monterey Park | CA | 91754 |
| 324 Sycamore Ave | Vista | CA | 92083 |
| 1844 W th Street | Mesa | AZ | 85051 |
| 5851 Centennial Center Blvd | Las Vegas | NV | 89107 |
| 18825 Bear Valley Rd | Apple Valley | CA | 92308 |
| 4345 Imperial Ave | San Diego | CA | 92113 |
| 230 E Via Rancho Parkway, Suite 210 | Escondido | CA | 92025 |
| 8810 Apollo Way | Downey | CA | 90242 |
| 1220 West Avenue K | Lancaster | CA | 93534 |
| 198 West Main Street | El Cajon | CA | 92020 |
| 4866 State Highway 121 | Lewisville | TX | 75056 |
| 5070 Richmond Ave | Houston | TX | 77056 |
| 1903 Empire Ave. | Burbank | CA | 91504 |
| 13752 Jamboree Rd. | Irvine | CA | 92602 |
| 2800 North Main Street | Walnut Creek | CA | 94597 |
| 507 NE Northgate Way | Seattle | WA | 98125 |
| 762 Sunnyvale Saratoga Road | Sunnyvale | CA | 94087 |
| 4425 La Jolla Village Drive | San Diego | CA | 92122 |
| 5300 Lankershim Blvd. | North Hollywood | CA | 91601 |
| 4821 Del Amo Blvd | Lakewood | CA | 90712 |
| 1870 Harbor Blvd | Costa Mesa | CA | 92627 |
| 7715 Balboa Avenue | San Diego | CA | 92111 |
| 12354 Limonite Avenue | Eastvale | CA | 91752 |
| 2501 El Camino Real | Carlsbad | CA | |
| 2650 Kittyhawk Road | Livermore | CA | 94551 |

Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

**AW0021**
AWPLL000155

| | | | |
|---|---|---|---|
| 4848 Valley View Ave | Yorba Linda | CA | 92886 |
| 12155 Central Ave | Chino | CA | 91710 |
| 2800 North Main Street, Unit 3100 | Santa Ana | CA | 92705 |
| 9750 Central Avenue | Montclair | CA | 91763 |
| 4240 Redondo Beach | Torrance | CA | 90504 |
| 2350 Tapo Street | Simi Valley | CA | 93063 |
| Fallbrook Mall Bldg 008 | West Hills | CA | 91307 |
| 505 South Flower St., Level B | Los Angeles | CA | 90007 |
| First & Santa Clara | Arcadia | CA | 91006 |
| NEC Summit Rd & I-15 | Fontana | CA | 92336 |
| Valley Center Dr/Gladstone | Glendora | CA | 91740 |
| Murrieta Hot Springs Rd | Murrieta | CA | 92563 |
| 100 City Parkway | Las Vegas | NV | 89106 |
| 110 Towne Center Dr | Compton | CA | 90220 |
| 1422 Azuza Ave | West Covina | CA | 91791 |
| 1651 Victoria Ave. | Oxnard | CA | 93035 |
| 2580 S. Archibald ave | Ontario | CA | 91761 |
| 42900 Jackson St | Indio | CA | 92203 |
| 2102 North Tustin Street | Orange | CA | 92865 |
| 17204 Slover Avenue | Fontana | CA | 92337 |
| 12660 Day Street | Moreno Valley | CA | 92553 |
| 27621 San Bernardino | Redlands | CA | 92374 |
| 3409 Via Montebello | Carlsbad | CA | 92009 |
| 400 Town Center Drive | Oxnard | CA | 93036 |
| 6220 N Topanga Canyon Blvd Ste 2410 | Woodland Hills | CA | 91367 |
| 2200 Eastridge Loop | San Jose | CA | 95122 |
| 17970 Studebaker Rd Plaza 183 | Cerritos | CA | 90703 |
| 9051 Atlanta Avenue | Huntington Beach | CA | 92646 |
| 897 Harriman Place | San Bernardino | CA | 92408 |
| 2770 South Colorado Blvd | Denver | CO | 80222 |
| 4110 B NE 4th Street | Renton | WA | 98059 |
| 8720 SE Sunnybrook Road | Clackamas | OR | 97015 |
| 4204 NE Halsey Street | Portland | OR | 97213 |
| 4600 West 38th | Denver | CO | 80212 |
| The Promenade at Capital Mall | Olympia | WA | 98502 |
| 2913 NE 72nd | Vancouver | WA | 98661 |
| 7720 N. Academy Blvd | Colorado Springs | CO | 80920 |
| 13019 NE Fourth Plain Rd | Vancouver | WA | 98682 |
| 12922 SE Kent Kangley Rd | Kent | WA | 98030 |
| 11014 19th Ave SE | Everett | WA | 98208 |
| 91-5431 Kapolei Parkway, Suite 1700 | Kapolei | HI | 96707 |
| 23750 Alessandro Blvd | Moreno Valley | CA | 92553 |
| 641 S. Rancho Sante Fe Rd. | San Marcos | CA | 92078 |
| 5045 River Road N | Keizer | OR | 97303 |
| 400 NW Eastman Pkwy | Gresham | OR | 97030 |
| 15575 SW Sequoia Pkwy, 100 | Tigard | OR | 97224 |
| 8235 SW Apple Way | Portland | OR | 97225 |

**Item 6. Policy Premium:** $119,163.00

**Item 7. Retroactive Date:** September 3, 2014

Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

**AW0022**
**AWPLL000156**

**Item 8. Notice of Pollution Incident or Claim:**

ALLIED WORLD NATIONAL ASSURANCE COMPANY
ATTN: ENVIRONMENTAL CLAIMS DEPT.
199 WATER STREET, 24TH FLOOR
NEW YORK, NY 10038
EnvCasClaims@awac.com

**All Other Notices:**

ALLIED WORLD NATIONAL ASSURANCE COMPANY
ATTN: ENVIRONMENTAL CASUALTY
199 WATER STREET, 24TH FLOOR
NEW YORK, NY 10038

**Item 9. Broker:**

Lockton Companies, LLC
4725 Piedmont Row Drive, Suite 510
Charlotte, NC 28210

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

President

Asst. Secretary

**AUTHORIZED REPRESENTATIVE**

AW0023
AWPLL000157

**Named Insured: 24 Hour Holdings I Corp.**
Effective Date: September 3, 2017
12:01 A.M., Standard Time

## SCHEDULE OF FORMS AND ENDORSEMENT

The following forms and endorsements are made a part of this Policy:

| Endorsement Number | Form # / Edition | Title |
|---|---|---|
| | ENV-SPL2 00002 00 (09/14) | Scheduled Location Pollution Legal Liability Policy Declarations |
| 1 | ENV-IL 00007 00 (02/15) | Terrorism Exclusion With Exception For Certified Acts Of Terrorism |
| 2 | ENV-SPL2 00006 00 (09/14) | Additional Insured - Where Required by Written Contract |
| 3 | ENV-SPL2 00017 00 (09/14) | Biological Hazard Response Expense Coverage |
| 4 | ENV-SPL2 00018 00 (09/14) | Broad Named Insured |
| 5 | ENV-SPL2 00037 00 (09/14) | CPL Coverage |
| 6 | ENV-SPL2 00039 00 (02/15) | Claim Expense Partially Outside of Limits of Liability |
| 7 | ENV-SPL2 00049 00 (09/14) | Disclosed Document |
| 8 | ENV-SPL2 00101 00 (09/14) | Multi-Year Policy Term – Minimum Earned Premium |
| 9 | ENV-SPL2 00108 00 (10/14) | Microbial Matter Definition Amendment |
| 10 | ENV-SPL2 00113 00 (09/14) | Named Insured |
| 11 | ENV-SPL2 00125 00 (09/14) | Amendment of Non-Owned Location Coverage – Specified Retroactive Date |
| 12 | ENV-SPL2 00136 00 (09/14) | Amendment of Other Insurance Condition |
| 13 | ENV-SPL2 00174 00 (09/14) | Real Estate ENVIRO-Suite IV |
| 14 | ENV-SPL2 00181 00 (09/14) | Schedule of Insured Contract(s) |
| 15 | ENV-SPL2 00183 00 (09/15) | Self-Insured Retention |
| 16 | ENV-SPL2 00199 00 (09/14) | Transportation - Scheduled Location |
| 17 | ENV-SPL2 00200 00 (09/14) | Transportation - Transportation Date |
| 18 | 2H Manu A | Insured Location Definition Amendment |
| 19 | 2H Manu B | Unintentional Address Change |
| 20 | 2H Manu C | Addition of Scheduled Locations, Retroactive Date, Coverages, Limits and Deductibles |
| | ENV-SPL2 00003 00 (09/14) | Scheduled Location Pollution Liability Policy |

## CALIFORNIA – SUITS INVOLVING A SURPLUS LINES BROKER - REMEDIES

A. A surplus lines insurer may be sued upon any cause of action arising in this state under any surplus lines insurance contract made by it, or any evidence of insurance issued or delivered by the surplus lines broker, pursuant to the procedure set forth in Sections 1610 to 1620, inclusive. Any policy or evidence of insurance issued by the surplus lines insurer or the surplus lines broker shall contain a provision stating the substance of this section, and designating the person to whom the Commissioner shall mail process.

B. Every surplus lines insurer assuming a surplus lines insurance shall be deemed thereby to have subjected itself to this chapter.

C. The remedies provided by this section shall be in addition to any other methods provided by law for service of process.

IL 00017 04 (11/08)

**Endorsement No:** 1
This endorsement, effective: September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)
forms a part of Policy No: 0309-1873
Issued to: 24 Hour Holdings I Corp.
by: Allied World National Assurance Company

## TERRORISM EXCLUSION WITH EXCEPTION FOR CERTIFIED ACTS OF TERRORISM

It is agreed that this policy does not provide coverage for any claim, liability, injury, damage, loss, cost or expense resulting directly, or indirectly, from or arising in whole, or in part, out of **terrorism**.

This exclusion does not apply to a **certified act of terrorism**.

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Terrorism** means activities against persons, property, organizations or the environment of any nature that involve the following or preparation for the following:

a. Use, commission or threat of force, violence or a dangerous act; or

b. Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

the effect or intent is to intimidate or coerce a government or civilian population or any segment thereof; or to disrupt any segment of the economy; or to further political, religious ideological, social or economic objectives or beliefs.

If the terms "loss" and "claim" are not defined in this endorsement, they shall have the same meaning as these terms are defined in this policy.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any claim, liability, injury, damage, loss, cost or expense that is otherwise excluded under this policy.

All other terms and conditions of this policy remain unchanged.

By:

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

ENV-IL 00007 00 (02/15)　　　　　Page 1 of 1

| Endorsement No: | 2 |
| This endorsement, effective: | September 3, 2017 |
| | (at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations) |
| forms a part of Policy No: | 0309-1873 |
| Issued to: | 24 Hour Holdings I Corp. |
| by: | Allied World National Assurance Company |

## ADDITIONAL INSURED- WHERE REQUIRED BY WRITTEN CONTRACT

It is hereby agreed that solely with respect to insurance that may be afforded under **SECTION I - INSURING AGREEMENTS**, 1. **Pre-existing Conditions Coverage** and 2. **New Conditions Coverage**, each of the following is an **additional insured**, but only to the extent provided below.

1.  Each **additional insured** identified below is deemed an **insured**, but only:

    a.  With respect to such person's or organization's liability arising out of a **named insured**'s ownership, operation, maintenance or use of a **scheduled location**; and

    b.  If and while such person or organization is a co-defendant in a lawsuit brought and maintained against a **named insured**, alleging that such person or organization is liable on a basis described in clause a. above.

## ADDITIONAL INSUREDS

Any person or organization that a **named insured** has agreed in a written contract or written agreement to add such person or organization as an **additional insured** on this policy prior to a **pollution incident**.

All other terms and conditions of this policy remain unchanged.

By: _Jull_

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

**AW0027**
**AWPLL000161**

| This endorsement, effective: | September 3, 2017 |
| | (at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations) |
| forms a part of Policy No: | 0309-1873 |
| Issued to: | 24 Hour Holdings I Corp. |
| by: | Allied World National Assurance Company |

<u>BIOLOGICAL HAZARD RESPONSE EXPENSE COVERAGE</u>

It is hereby agreed that the following changes are made to the policy.

1.  The following is added to **SECTION I – INSURING AGREEMENTS**:

    **Biological Hazard Response Expense Coverage**

    We will pay **biological hazard response expense** resulting from a **pollution incident** on, at, or within a building or structure at a **scheduled location**, provided that the **pollution incident** is first discovered during the **policy period** and reported to us, in writing, during the **policy period**.

2.  Solely with regard to insurance afforded in connection with **biological hazard response expense**, the following is added to Item 3. of the Declarations:

| Coverage | Deductible Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| **Biological Hazard Response Expense** | $50,000 | $50,000 | $50,000 |

3.  The following are added to **SECTION III – EXCLUSIONS**:

    **Human Remains**

    That is or for a cost, fee or expense associated with the removal or disposal of human remains.

    **First Responder**

    That is or for a cost, fee, charge or expense associated with any emergency medical technician services, fire or police department services, medical examiner services, ambulance services or any other safety, governmental or medical response-related services.

4.  The following are added to **SECTION VII – DEFINITIONS**:

    **Biological hazard** means human tissue or human bodily fluids including blood.

    **Biological hazard response expense** means reasonable and necessary expenses to abate, contain, treat, remove, or dispose of **biological hazard**. **Biological hazard response expense** incurred more than seventy-two (72) hours after first discovery of the **pollution incident** shall be subject to our prior written consent, which consent shall not be unreasonably withheld or delayed. **Biological hazard response expense** does not include costs, charges or expenses for goods or services of an **insured** or its parent, subsidiary or affiliate.

**AW0028**

**AWPLL000162**

5. Solely for the purpose of coverage afforded for **Biological Hazard Response Expense**, **SECTION VII – DEFINITIONS**, Definition 23., Pollution Incident, is deleted in its entirety and replaced with the following:

   **Pollution incident** means the presence of **biological hazard** which is not contained within a human body.

All other terms and conditions of this policy remain unchanged.

By: _Jilli_

   **Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

**AW0029**
**AWPLL000163**

**Endorsement No:**      4
This endorsement, effective:      September 3, 2017
    (at 12:01 A.M. standard time at the address of the Named Insured as
    shown in Item 1. of the Declarations)
forms a part of Policy No:      0309-1873
Issued to:      24 Hour Holdings I Corp.
by:      Allied World National Assurance Company

## BROAD NAMED INSURED

It is hereby agreed that **SECTION II – WHO IS AN INSURED** is amended by the addition of the following:

**Named Insured** also means each of the following:

a. Any subsidiary, associated or affiliated company or corporation of the **first named insured** where the **first named insured** has more than a fifty percent (50%) ownership interest in such company or corporation on the first day of the **policy period**.

b. Any person or organization that has more than fifty percent (50%) ownership interest in the **first named insured** on the first day of the **policy period,** but only with respect to such person's or organization's liability arising out of their financial control of the **first named insured**.

c. Any organization that the **first named insured** newly acquires or forms during the **policy period**, other than a partnership, joint venture or limited liability company, and over which the **first named insured** maintains an ownership interest of more than fifty percent (50%), provided there is no other insurance available to that organization that is similar to the type of insurance afforded by this policy. However:

     1. Coverage under this provision is afforded only until the 90th day after the **first named insured** acquires or forms the organization or the end of the **policy period**, whichever is earlier; and

     2. In no event is such organization a **named insured** with regard to any **bodily injury**, **property damage**, **environmental damage** or **business interruption** that first commenced or took place before the **first named insured** acquired or formed the organization.

     3. The coverage limitations set forth in paragraphs 1 and 2 above may be amended by endorsement, if any, attached to this policy.

All other terms and conditions of this policy remain unchanged.

By: _Jull_

**Joseph Cellura**

Title:      **President, North American Casualty Division**

Date:      **October 16, 2017**

ENV-SPL2 00018 00 (09/14)

**AW0030**
**AWPLL000164**

| Endorsement No: | 5 |
| --- | --- |
| This endorsement, effective: | September 3, 2017 |
| | (at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations) |
| forms a part of Policy No: | 0309-1873 |
| Issued to: | 24 Hour Holdings I Corp. |
| by: | Allied World National Assurance Company |

<u>CONTRACTORS POLLUTION LIABILITY COVERAGE</u>

It is hereby agreed that the following changes are made to the policy.

1. The following is added to **SECTION I – INSURING AGREEMENTS**:

   **Contractors Pollution Liability Coverage**

   a. On behalf of the **insured** shown in the Schedule below, we will pay **loss** that the **insured** shown in the Schedule below becomes legally obligated to pay because of **bodily injury**, **property damage** or **environmental damage** resulting from a **pollution incident** caused by **your work**, including **completed operations**, but only if:

      (1) The **pollution incident** results in a **claim** for **bodily injury**, **property damage** or **environmental damage**;

      (2) **Your work**, which causes the **pollution incident**, is performed on or after September 3, 2014; and

      (3) The **claim** is first made against the **insured** shown in the Schedule below during the **policy period** and reported to us, in writing, during the **policy period** or the extended reporting period, if applicable.

   | Schedule |
   | --- |
   | 24 Hour Holdings I Corp. |

2. Solely for the purpose of insurance that may be afforded for Contractors Pollution Liability Coverage pursuant to this endorsement, the following additional changes are made to the policy:

   A. The following is added to **SECTION II – WHO IS AN INSURED**:

      5. Any client that hires the **insured** shown in the Schedule above to perform **your work** pursuant to a written contract is an **additional insured**, provided that the **insured** shown in the Schedule above has agreed in that written contract to name such client as an **additional insured** for Contractors Pollution Liability Coverage under this policy. Each client that qualifies as an **additional insured** pursuant to the preceding sentence is an **insured**, but only with respect to its liability for **loss** caused solely by **your work** for which insurance may be afforded under paragraph 1. of this endorsement.

   B. **SECTION III – EXCLUSIONS**, paragraphs 13., **Products** and 14. **Underground Storage Tanks**, are deleted in their entirety and replaced with the following:

      13. **Products**

      Arising from **your product** or any part of it after you have relinquished possession.
      This exclusion does not apply to the assembly, fabrication or installation of **your product** as part of **your work**.

      14. **Underground Storage Tanks**

ENV-SPL2 00037 00 (09/14)

**AW0031**
AWPLL000165

Arising from an **underground storage tank**. This exclusion does not apply to an **underground storage tank**:

a. At a **scheduled location** whose existence is not known by or reported to any **responsible manager** prior to the **policy period**;

b. At a **scheduled location** that is scheduled onto this policy by endorsement;

c. At a **scheduled location** which has been closed, abandoned in place or removed prior to the commencement of the **policy period** in accordance with **environmental law** at the time of such closure, abandonment or removal;

d. At a **scheduled location** that is an oil / water separator, storm water collection system, or process tank located partially in the ground; or.

e. That is not owned, leased, operated or permitted by the **insured** and is part of or the subject of **your work**.

C. **SECTION VI – CONDITIONS**, Paragraph 16. **Transfer of Rights of Recovery Against Others to Us** is deleted in its entirety and replaced with the following:

16. **Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after discovery of a **pollution incident** to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

However, we agree to waive any right of recovery that we may have against a client that qualifies as an **additional insured** under paragraph 2.A. of this endorsement if an **insured** shown in the Schedule above: (i) has agreed to waive such right of recovery in a written contract with such client; and (ii) signed such written contract prior to the performance of **your work** that gives rise to coverage under paragraph 1. of this endorsement.

Any recovery as a result of subrogation proceedings arising out of the payment of **loss** or any other amounts covered under this policy shall accrue first to us to the extent of our payment under the policy, and then to you to the extent of your deductible. Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

D. It is hereby agreed that **SECTION VII – DEFINTIONS**, is amended with the addition of the following:

**Your work** means incidental work performed beyond the legal boundaries of an insured location to support the insureds operations.

**Completed operations** means **your work** that has been completed. **Your work** will be deemed complete at the earliest of the following times:

a. When **your work** to be performed under a contract is completed;

b. When **your work** to be performed at a job site has been completed; and

c. When that part of **your work** at a job site has been put to its intended use.

**Your work** that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as **your work** that has been completed.

**Completed operations** do not include **your work** that has been abandoned.

ENV-SPL2 00037 00 (09/14)

**AW0032**
AWPLL000166

E. It is hereby agreed that **SECTION VII – DEFINTIONS**, 16. **Insured contract** is deleted in its entirety and replaced with the following:

16. **Insured contract** means:

That part of any written contract for **your work** under which the **insured** shown in the Schedule above assumes the tort liability of another party to pay compensatory damages for **bodily injury**, **property damage** or **environmental damage** to a third person or organization, provided that such written contract is signed by such **insured** prior to the performance of **your work** that gives rise to coverage under paragraph 1. of this endorsement. For the purpose of this definition, the term "tort liability" means liability that would be imposed by law in the absence of any contract or agreement.

3. The following changes are made to the Declarations:

1. ITEM 3. Coverages and Coverage Section Limits and Deductibles is amended to include:

| Coverage | Deductible Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| Contractors Pollution Liability | $50,000 | $25,000,000 | $25,000,000 |

All other terms and conditions of this policy remain unchanged.

By: *Jullu*

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

ENV-SPL2 00037 00 (09/14)

| Endorsement No: | 6 |
| --- | --- |
| This endorsement, effective: | September 3, 2017 |
| | (at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations) |
| forms a part of Policy No: | 0309-1873 |
| Issued to: | 24 Hour Holdings I Corp. |
| by: | Allied World National Assurance Company |

## CLAIM EXPENSE PARTIALLY OUTSIDE OF LIMITS OF LIABILITY

It is hereby agreed that the following changes are made to the policy:

1. Item 3. of the Declarations is amended to include the following Separate Claim Expense Limit applicable to Coverages 1 – 4 to the extent purchased:

   **Separate Claim Expense Limit**:  $250,000

2. **SECTION IV – LIMITS OF INSURANCE AND DEDUCTIBLE** is deleted in its entirety and replaced with the following:

   **SECTION IV – LIMITS OF INSURANCE AND DEDUCTIBLE**

   1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of: (a) **insureds**; (b) **claims**; (c) persons or organizations making **claims**; or (d) **pollution incidents**.

   2. The Policy Aggregate Limit shown in Item 4. of the Declarations and Separate Claim Expense Limit shown in Item 3. of the Declarations are the most we will pay under this policy for the sum of all applicable **loss**, **claim expense**, **emergency response expense**, **business interruption costs** and any other amounts for which insurance may be afforded under this policy. Our total liability for all insurance afforded under this policy, combined, will not exceed the Policy Aggregate Limit and Separate Claim Expense Limit shown in Item 3. and 4. of the Declarations and as set forth in this Section IV.

   3. Subject to paragraph 2. above, the Coverage Section Aggregate Limit shown for each Coverage, and the Separate Claim Expense Limit shown in Item 3. of the Declarations is the most we will pay for the sum of all applicable amounts for which insurance is afforded for such Coverage including **claim expense** under this policy.

   4. Subject to paragraphs 2. and 3.above, the Each Incident Limit and Separate Claim Expense Limit shown in Item 3. of the Declarations are the most we will pay for the sum of all applicable **loss**, **claim expense**, **emergency response expense**, **business interruption costs** and any other amounts for which insurance may be afforded for such Coverage arising out of a single **pollution incident**.

   5. **Claim expense** first applies to and reduces the Separate Claim Expense Limit shown in Item 3. of the Declarations.  Once the Separate Claim Expense Limit shown in Item 3. of the Declarations is exhausted, **claim expense**:

      a. Is part of, and is not in addition to, the Each Incident Limit, Coverage Section Aggregate Limit, and Policy Aggregate Limit shown in Items 3. and 4. of the Declarations and as set forth in this Section IV.; and

      b. Applies to, and reduces, the Each Incident Limit, Coverage Section Aggregate Limit and Policy Aggregate Limit shown in Items 3. and 4. of the Declarations and as set forth in this Section IV.

**AW0034**
AWPLL000168

6. Notwithstanding anything to the contrary above, if the Policy Aggregate Limit shown in Item 3. of the Declarations is exhausted by payment of applicable **loss**, **emergency response expense**, **business interruption costs** and any other amounts for which insurance may be afforded by this policy, or any combination of the foregoing, then the Separate Claim Expense Limit shall also be deemed exhausted and no further **claim expense** will be paid under this policy; and if the Coverage Section Aggregate Limit is exhausted by payment of applicable **loss** or **emergency response expense** and any other amounts for which insurance may be afforded by this policy, or any combination of the foregoing, then the Separate Claim Expense Limit shall also be deemed exhausted for such applicable coverage section and no further **claim expense** will be paid under this policy for such coverage section.

7. Notwithstanding the above, if insurance applies under two or more Coverages shown in Item 3. of the Declarations with respect to **loss**, **claim expense**, **emergency response expense**, **business interruption costs** and any other amounts for which insurance may be afforded by this policy arising out of a single **pollution incident**, the most we will pay is the highest Each Incident Limit amount available under one such Coverage applicable to the single **pollution incident**. Nothing in this paragraph shall operate to increase any Each Incident Limit or other limit shown in Items 3. and 4 of the Declarations.

8. All **loss**, **claim expense**, **emergency response expense**, **business interruption costs** and any other amounts for which insurance may be afforded by this policy arising out of the same, related, repeated or continuous **pollution incident** are deemed to arise out of a single **pollution incident**.

9. Subject to the limits of insurance set forth in Items 3. and 4. of the Declarations, we are liable only for that portion of **loss**, **claim expense**, **emergency response expense** and any other amounts for which insurance may be afforded by this policy in excess of the Deductible Each Incident amount shown for each Coverage in Item 3. of the Declarations. If insurance applies under two or more Coverages shown in Item 3. of the Declarations with respect to any **loss**, **claim expense**, **emergency response expense**, and any other amounts for which insurance may be afforded by this policy arising out of a single **pollution incident**, only the highest applicable Deductible Each Incident amount shown in Item 3. of the Declarations applies.

10. The Deductible Each Incident amount is your obligation to pay and applies to any **loss**, **claim expense**, **emergency response expense** or any other amounts for which insurance may be afforded by this policy arising from a single **pollution incident**. We may choose to advance payment of any part or all of the Deductible Each Incident amount to effect settlement of any **claim**, or to pay **clean-up costs**, **emergency response expense**, **claim expense** or any other amounts for which insurance may be afforded by this policy and, upon notification of the action taken, you shall promptly reimburse us for the Deductible Each Incident amount that has been paid by us.

All other terms and conditions of this policy remain unchanged.

By:

**Joseph Cellura**

Title:     **President, North American Casualty Division**

Date:     **October 16, 2017**

AW0035
AWPLL000169

**Endorsement No:** 7
This endorsement, effective: September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)
forms a part of Policy No: 0309-1873
Issued to: 24 Hour Holdings I Corp.
by: Allied World National Assurance Company

## DISCLOSED DOCUMENT SCHEDULE

It is hereby agreed that for the purpose of **SECTION III – EXCLUSIONS**, 9. **Known Pollution**, any **pollution incident** set forth in the following listed document(s) is deemed disclosed to us.

Document List

24 Hour Fitness Facilities Management Process Document, Water Leak Preparedness & Resolution Process

24 Hour Fitness Facilities Playbook, dated January 2014

24 Hour Fitness Notice of Sprinkler Repair, Premises at 1285 Ridgeway Road, Memphis, TN, dated September 13, 2013

Health Directive, from Shelby County Health Department, to 24 Hour Fitness, dated June 21, 2013

Health Directive Rescind Notice, from Shelby County Health Department, to 24 Hour Fitness, dated October 10, 2013

All other terms and conditions of this policy remain unchanged.

By:

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

ENV-SPL2 00049 00 (09/14)          Page 1 of 1

| | |
|---|---|
| **Endorsement No:** | 8 |
| This endorsement, effective: | September 3, 2017 |
| | (at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations) |
| forms a part of Policy No: | 0309-1873 |
| Issued to: | 24 Hour Holdings I Corp. |
| by: | Allied World National Assurance Company |

<u>MULTI-YEAR POLICY TERM – MINIMUM EARNED PREMIUM</u>

It is hereby agreed that **SECTION VI – CONDITIONS**, 3. **Cancellation** is deleted in its entirety and replaced with the following:

3. Cancellation

a. In the event of cancellation of this policy, the minimum earned premium that we are entitled to retain will be calculated based on the following rules.

| If: | Then: |
|---|---|
| The effective date of cancellation is prior to September 3, 2018 | The minimum earned premium is 25% of the total premium charged for the policy. |
| The effective date of cancellation is on or after September 3, 2018 and prior to September 3, 2019, | The minimum earned premium is 50% of the total premium charged for the policy. |
| The effective date of cancellation is on or after **Error! Reference source not found.**, | The minimum earned premium is one hundred percent (100%) of the total premium charged for the policy. |

b. The **first named insured** may cancel this policy by mailing or delivering to us advance written notice of cancellation. If the **first named insured** cancels this policy, we will calculate return premium on a pro rata basis after applying the minimum earned premium shown in paragraph a. above.

c. We may cancel this policy for non-payment of premium or your failure to reimburse us for any Deductible Amount paid by us by mailing or delivering to the **first named insured** written notice of cancellation at least ten (10) days before the effective date of cancellation.

d. We may cancel this policy due to fraud or a material misrepresentation or concealment by any **insured** by mailing or delivering to the **first named insured** written notice of cancellation at least ninety (90) days before the effective date of cancellation. During the first sixty (60) days of such cancellation notice period, the **first named insured** may attempt to cure the circumstances that formed the basis of such notice of cancellation and request that we rescind our notice of cancellation. We will consider any such request and determine, in our sole discretion, whether or not to rescind the notice of cancellation.

e. We will mail or deliver our notice of cancellation to the **first named insured**'s last mailing address known to us. Our notice of cancellation will state the effective date and hour of cancellation of the policy. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice. If we cancel this policy, we will calculate return premium on a pro rata basis after applying the minimum earned premium shown in paragraph a. above.

AW0037
AWPLL000171

All other terms and conditions of this policy remain unchanged.

By: _Jull_

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

**AW0038**
**AWPLL000172**

**Endorsement No:** 9

This endorsement, effective: September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)

forms a part of Policy No: 0309-1873
Issued to: 24 Hour Holdings I Corp.
by: Allied World National Assurance Company

## MICROBIAL MATTER DEFINITION AMENDMENT

It is hereby agreed that **SECTION VI – DEFINITIONS**, 18. **Microbial matter** is deleted in its entirety and replaced with the following:

**Microbial matter** means fungi, mold, bacteria or viruses which reproduce through the splitting of cells, the release of spores or by any other means, whether or not such **microbial matter** is living.

All other terms and conditions of this policy remain unchanged.

By: *Jull*

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

ENV-SPL2 00108 00 (10/14)          Page 1 of 1

**AW0039**
**AWPLL000173**

**Endorsement No:** 10

This endorsement, effective: September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)

forms a part of Policy No: 0309-1873
Issued to: 24 Hour Holdings I Corp.
by: Allied World National Assurance Company

## ADDITIONAL NAMED INSURED(S)

It is hereby agreed that for the purpose of paragraph 2. of **SECTION II – WHO IS AN INSURED**, each person or entity identified below is a **named insured**.

### ADDITIONAL NAMED INSURED(S)

| |
|---|
| 24 Hour Holdings I Corp (Delaware) |
| 24 Hour Holdings II LLC (Delaware) |
| 24 Hours Fitness Worldwide, Inc. (Delaware) |
| 24 Hour Fitness United States, Inc. (Delaware) |
| 24 Hour Fitness USA, Inc. (California) |
| 24 Hour Fitness Holdings, LLC (Delaware) |
| 24 Hour Fitness International, Inc. (Delaware) |
| Two 4 One, LLC (Delaware) |
| 24 Hour Fitness Helping Hands Foundation (California) |
| 24 San Francisco, LLC (Delaware) |
| 24 Denver, LLC (Delaware) |
| 24 New York, LLC (Delaware) |
| RS FIT Holdings LLC (Delaware) |
| RS FIT CA LLC (Delaware) |
| RS FIT NW LLC (Delaware) |

All other terms and conditions of this policy remain unchanged.

By:

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

ENV-SPL2 00113 00 (09/14)      Page 1 of 1

**AW0040**
**AWPLL000174**

**Endorsement No:** 11
This endorsement, effective: September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)
forms a part of Policy No: 0309-1873
Issued to: 24 Hour Holdings I Corp.
by: Allied World National Assurance Company

## AMENDMENT OF NON-OWNED LOCATION COVERAGE – SPECIFIED RETROACTIVE DATE

It is hereby agreed that **SECTION I – INSURING AGREEMENTS**, 3. **Blanket Non-Owned Location Coverage** is deleted in its entirety and replaced with the following:

**3. Blanket Non-Owned Location Coverage**

    a.  On behalf of the **insured**, we will pay **loss** that the **insured** becomes legally obligated to pay because of **bodily injury**, **property damage** or **environmental damage** resulting from a **pollution incident** on, at, under or migrating from a **non-owned location**, provided that:

        (1)  The waste or recyclable materials are delivered to the **non-owned location** on or after the Non-owned Location Retroactive Date set for below;

            Non-owned Location Retroactive Date: September 3, 2014

        (2)  The **pollution incident** results in a **claim** for **bodily injury**, **property damage** or **environmental damage**; and

        (3)  The **claim** is first made against the **insured** during the **policy period** and reported to us, in writing, during the **policy period** or extended reporting period, if applicable

All other terms and conditions of this policy remain unchanged.

By:

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

**AW0041**
**AWPLL000175**

**Endorsement No:** 12
**This endorsement, effective:** September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)

**forms a part of Policy No:** 0309-1873
**Issued to:** 24 Hour Holdings I Corp.
**by:** Allied World National Assurance Company

## AMENDMENT OF OTHER INSURANCE CONDITION

It is hereby agreed that **SECTION V- CONDITIONS**, 11. **Other Insurance** is deleted in its entirety and replaced with the following:

11. **Other Insurance**

If other valid and collectible insurance is available to the **insured** for coverage afforded by this policy, our obligations are limited as follows:

a. **Primary Insurance**

Upon exhaustion of the applicable Self-Insured Retention, this insurance is primary. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph b. below.

b. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

All other terms and conditions of this policy remain unchanged.

By:

*Jell*

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

AW0042
AWPLL000176

| Endorsement No: | 13 |
|---|---|
| This endorsement, effective: | September 3, 2017 |
| | (at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations) |
| forms a part of Policy No: | 0309-1873 |
| Issued to: | 24 Hour Holdings I Corp. |
| by: | Allied World National Assurance Company |

## <u>REAL ESTATE ENVIRO-SUITE IV</u>

It is hereby agreed that the following changes are made to the policy:

1. **SECTION VI – CONDITIONS**, is amended to include the following:

   **Acquired Locations**

   1. Any location initially purchased, leased or otherwise acquired by you during the **policy period**, where the use and occupancy of the entire location consists of one or more of the following: Fitness Facilities/Health Clubs, All Other Commercial, Vacant Land, shall be considered a **scheduled location** (except as to any Excluded Use or Occupancy shown in paragraph 3. below, ) for a period of ninety (90) days from the **closing or lease effective date** but only with respect to a **pollution incident** that first commences on or after the **closing or lease effective date**.

   2. Any location initially purchased, leased or otherwise acquired by you during the **policy period**, where the use and occupancy of the entire location consists of one or more of the following: Fitness Facilities/Health Clubs, All Other Commercial, Vacant Land, shall be considered a **scheduled location** (except as to any Excluded Use or Occupancy shown in paragraph 3. below), provided you pay the additional premium due and all of the conditions precedent to such coverage set forth in paragraphs a. through c. below are fully satisfied:

      a. We must receive written notice of your purchase, lease or other acquisition of the location as follows: ninety (90) days. For each location, such notice must include all of the following: the physical address, **closing or lease effective date**, the type of use and occupancy for such location, and corresponding square footage, units, acres or other applicable Rating Unit set forth in paragraph 4.a. below.  However, if such notice is not provided for a particular location within the ninety (90) days, we will consider a written request by you to add that location by separate endorsement; and

      b. You receive a Phase I Environmental Site Assessment report for the location that has been prepared for you by a qualified environmental consultant, provided that the assessment is conducted and the related report is prepared in accordance with ASTM Standard E 1527-05 (or subsequent revisions thereto).  Such Phase I Environmental Site Assessment report must have been prepared within one year before the **closing or lease effective date**; or

      You receive a Phase I Environmental Site Assessment report for the location that has been prepared for a third-party by a qualified environmental consultant, provided that the assessment is conducted and the related report is prepared in accordance with ASTM Standard E 1527-05 (or subsequent revisions thereto), and the consultant that performed the assessment and prepared the report has given you written confirmation that you are entitled to rely on the statements, recommendations and conclusions of that report.  Such Phase I Environmental Site Assessment report must have been prepared within one year before the **closing or lease effective date**; and

      c. If the Phase I Environmental Site Assessment report does not identify any Recognized Environmental Condition(s), as defined by ASTM Standard E 1527-05 (as may be subsequently revised), and does not identify any Historical Recognized Environmental Condition(s) or Controlled Recognized Environmental Condition the location shall be added to the policy as a **scheduled location** effective as of the **closing or lease effective date** for

**AW0043**
AWPLL000177

a **pollution incident** that first commences after the **closing or lease effective date**, provided the **location** is endorsed onto the policy, the additional premium is paid when due and coverage is subject to all other terms, conditions and exclusions of the policy; or

If the Phase I Environmental Site Assessment report identifies one or more Recognized Environmental Condition(s), Controlled Recognized Environmental Condition(s) or Historical Recognized Environmental Condition(s), the location shall be added to the policy as a **scheduled location** effective as of the **closing or lease effective date** for a **pollution incident** that first commences on or after the **closing or lease effective date**, provided the location is endorsed onto the policy, the additional premium is paid when due and coverage is subject to all other terms, conditions and exclusions of the policy. Notwithstanding the foregoing, each Recognized Environmental Condition, Historical Recognized Environmental Condition and Controlled Recognized Environmental Condition shall not be considered disclosed for purposes of Exclusion 9. Known Pollution in **SECTION III – EXCLUSIONS** of the policy unless, and to the extent that such Recognized Environmental Condition, Historical Environmental Condition and Controlled Environmental Condition is specifically endorsed onto the policy for coverage.

3. You may complete a Phase II Environmental Site Assessment or provide written confirmation from the consultant who prepared the Phase I Environmental Site Assessment report that no further investigation or remediation is warranted based on the nature of the Recognized Environmental Condition(s), Controlled Recognized Environmental Condition(s) and Historical Recognized Environmental Condition(s), and provide us with such written confirmation or the applicable Phase II Environmental Site Assessment report along with a request to evaluate the location for additional coverage. Upon our receipt of such documentation, we shall endeavor to review the Phase II Environmental Assessment report or written confirmation within thirty (30) days. We reserve the right to limit coverage with respect to any Recognized Environmental Condition(s), Controlled Recognized Environmental Condition(s) and Historical Recognized Environmental Condition(s) or other conditions at the location in our sole discretion. If additional coverage is provided, we shall provide you with a separate written endorsement confirming the extent of coverage being afforded including coverage, if any, with respect to any Recognized Environmental Condition(s), Controlled Recognized Environmental Condition(s) and Historical Recognized Environmental Condition(s) identified at the location, and the additional premium due.

4. Notwithstanding anything in this endorsement to the contrary, the insurance afforded under this policy does not apply to any **pollution incident** on, at, under or migrating from the portion of the location where any Excluded Use or Occupancy shown below did or does exist.

| Excluded Use or Occupancy |
|---|
| Manufacturing, Industrial, Chlorinated Solvent Dry Cleaning Operations; Gas Stations; Hotel(s) |

You may request that we evaluate any Excluded Use or Occupancy for coverage. If such a request is made, we will notify you of the information that we require to consider your request. Upon our receipt of the requested information, we shall endeavor to complete our review within thirty (30) days. We reserve the right to limit coverage with respect to any Excluded Use or Occupancy in our sole discretion. If additional coverage is provided, we shall provide you with a separate written endorsement confirming the extent of coverage being afforded, and the additional premium due.

5. For a location that is added to this policy as a **scheduled location** pursuant to the terms of this Endorsement, the additional premium for such location will be calculated as follows:

a. For each Use and Occupancy shown below applicable to the location, the additional premium is the Rate associated with such Use and Occupancy multiplied by the number of rating units reported to us and associated with such Use and Occupancy, and adjusted according to the Rate Basis indicated below.

AW0044
AWPLL000178

| Use and Occupancy | Rating Unit | Rate | Minimum AP |
|---|---|---|---|
| Fitness Facility/Health Clubs | Less than 15,000 sq. ft. | $250.00 | N/A |
| | 15,000 sq. ft. and greater | $500.00 | |
| All Other Commercial | Less than 15,000 sq. ft. | $500.00 | |
| | 15,000 sq. ft. and greater | $750.00 | |
| Vacant Land | acre | $150.00 | |

The Rate above shall apply on the following Rate Basis:

☐ Pro Rate as of the **closing or lease effective date**
☒ Flat Rate

If a Minimum Additional Premium (AP) is specified and the premium derived by the calculation specified in this paragraph is less than the Minimum Additional Premium, the Minimum Additional Premium shall apply for each such location.

b. To calculate the premium due for any additional coverage that is requested by you and added by us to this policy by separate endorsement, we will apply our usual and customary rating methodologies.

2. **SECTION II – WHO IS AN INSURED**, is amended as follows:

A. The following is added:

**Additional Insureds – Blanket Lender**

If the **named insured** is required by a written contract to name a lender (mortgagee) as an **additional insured** under this policy as a result of the lender's financing of a **scheduled location**, such lender is included as a mortgagee **additional insured**. Coverage for such mortgagee **additional insured** applies under this policy:

1. Solely to the mortgagee **additional insured's** liability arising out of the **named insured's** ownership, operation, maintenance or use of the **scheduled location** as to which the mortgagee **additional insured** is the lender;

2. Only if the mortgagee **additional insured** is named in a suit as a co-defendant with the **named insured**, alleging the mortgagee **additional insured** is liable on the basis described in paragraph 1 above;

3. Only if the written contract which requires the **named insured** to name the lender as an **additional insured** is executed by all parties prior to the assertion of a **claim** against the **named insured** or the mortgagee **additional insured**; and

4. For purposes of **SECTIONS II – VII** of the policy each mortgagee **additional insured** defined by this endorsement shall be deemed an **insured**.

B. The following is added:

**Lender Liability**

It is hereby agreed the existence of legal protection available to a mortgagee **additional insured** as a result of such mortgagee **additional insured's** status as a lender to a **named insured** for financing of a **scheduled location**, as established by 42 U.S.C. Section 9601 (20)(E) – (G) of the Comprehensive Environmental Response, Compensation and Liability Act or similar statutory protections promulgated by a State, shall not void coverage for such mortgagee **additional insured** under this policy.

AW0045
AWPLL000179

Any voluntary or involuntary failure of such mortgagee **additional insured** to qualify for the lender liability protection as established by 42 U.S.C. Section 9601 (20)(E) – (G) of the Comprehensive Environmental Response, Compensation and Liability Act or similar statutory protections promulgated by a State of the United States, shall not void coverage for such mortgagee **additional insured** under this policy.

C. The following is added:

**Advancement of Mortgagee Additional Insured**

In the event a mortgagee **additional insured** foreclosures or otherwise acquires fee simple title to a **scheduled location**, such mortgagee **additional insured** shall qualify as a **named insured** on the policy, but solely with respect to the **scheduled location** upon which it has foreclosed or otherwise acquired fee simple title. The mortgagee **additional insured** must notify us of their acquisition of any **scheduled location**, in writing, within thirty (30) days, and forward to us all necessary documents evidencing such acquisition.

3. **SECTION III – EXCLUSIONS**, is amended as follows:

A. Paragraph 1. **Asbestos and Lead**, is deleted in its entirety and replaced with the following:

**Asbestos and Lead-based Paint**

Arising from lead-based paint or asbestos in any form, including asbestos-containing materials in or on any building or other structure.

This exclusion does not apply to:

a. A **claim** for **bodily injury** or **property damage**;

b. That portion of **clean-up costs** to remediate soil, surface water or groundwater; or

c. That portion of **clean-up costs** that arise out of the inadvertent disturbance of lead-based paint or asbestos in any form, including asbestos-containing materials in or on any building or other structure.

4. **SECTION VII – DEFINITIONS**, is amended as follows:

A. Paragraph 27., **Restoration costs**, is deleted in its entirety and replaced with the following:

**Restoration costs** means reasonable and necessary expenses incurred by you, with our prior written consent, to repair or replace real or personal property that was damaged during the course and as a result of clean-up activities following a **pollution incident** to which this insurance applies. **Restoration costs** shall not exceed the replacement cost of such real or personal property and shall not include any improvement or betterment to the damaged property unless it is a **green improvement**.

B. The following are added:

**Closing or lease effective date** means the date on which the sale, lease or other acquisition of the location becomes final and you take possession.

**Green improvement** means products or materials which are certified to conserve natural resources, reduce energy or water consumption, avoid toxic emissions, or otherwise minimize environmental impact by ANSI/ASHRAE/USGBC/IES Standard 189.1, the Leadership in Energy and Environmental Design (LEED®), U.S. Green Building Council, Energy Star Rating System, Global Green USA or any other "green" rating system we approve in writing.

**AW0046**
**AWPLL000180**

All other terms and conditions of this policy remain unchanged.

By: *Jelu*

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

**AW0047**
**AWPLL000181**

**Endorsement No:** 14
**This endorsement, effective:** September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)
**forms a part of Policy No:** 0309-1873
**Issued to:** 24 Hour Holdings I Corp.
**by:** Allied World National Assurance Company

## SCHEDULE OF INSURED CONTRACT(S)

It is hereby agreed that for the purpose of **SECTION VII - DEFINITIONS**, 16. **Insured contract**, each document listed in the Schedule below is an **insured contract**.

Schedule

Any written lease agreement for a scheduled location executed by the insured in the normal course of their business, provided such lease and all written modifications thereto are executed prior to a claim or discovery of a pollution incident

All other terms and conditions of this policy remain unchanged.

By: _Jull_

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

**AW0048**
**AWPLL000182**

**Endorsement No:** 15
This endorsement, effective: September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)
forms a part of Policy No: 0309-1873
Issued to: 24 Hour Holdings I Corp.
by: Allied World National Assurance Company

## SELF-INSURED RETENTION

It is hereby agreed that the following changes are made to the policy:

1. The phrase **"Deductible Each Incident"** set forth in Item 3. of the Declarations is deleted in its entirety and replaced with the phrase **"Self-Insured Retention Each Incident."**

2. All references in the policy to "deductible" are hereby deleted in their entirety and replaced with the phrase "self-insured retention," and all references in the policy to "deductible each incident" are hereby deleted in their entirety and replaced with the phrase "self-insured retention each incident."

3. All references in the policy to **"SECTION IV – LIMITS OF INSURANCE AND DEDUCTIBLE"** are deleted in their entirety and replaced with the phrase **"SECTION IV – LIMITS OF INSURANCE AND SELF-INSURED RETENTION."**

All other terms and conditions of this policy remain unchanged.

By: _Joseph Cellura_

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

**AW0049**
**AWPLL000183**

**Endorsement No:** 16
This endorsement, effective: September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)
forms a part of Policy No: 0309-1873
Issued to: 24 Hour Holdings I Corp.
by: Allied World National Assurance Company

## TRANSPORTATION TO AND FROM A SCHEDULED LOCATION

1. It is hereby agreed that **SECTION VII – DEFINITIONS**, 30. **Transportation**, is deleted in its entirety and replaced with the following:

   30. **Transportation** means the movement of goods, products, merchandise, supplies, waste or recyclable materials to or from a **scheduled location**, in a **conveyance**, by the **insured** or by a third party carrier properly licensed to transport such goods, products, merchandise, supplies or waste, from the time of movement: (i) from a **scheduled location** until delivery to the final destination; or (ii) from the point of origin until delivery to a **scheduled location**. **Transportation** includes the movement of goods, products, merchandise, supplies, waste or recyclable materials into, onto or from a **conveyance**.

All other terms and conditions of this policy remain unchanged.

By: _Jull_

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

**AW0050**
**AWPLL000184**

**Endorsement No:** 17
This endorsement, effective: September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)

forms a part of Policy No: 0309-1873
Issued to: 24 Hour Holdings I Corp.
by: Allied World National Assurance Company

## TRANSPORTATION COVERAGE – NEW TRANSPORTATION ACTIVITIES

It is hereby agreed that **SECTION I. INSURINGING AGREEMENTS, 4. Blanket Transportation Coverage** is deleted in its entirety and replaced with following:

4. **Blanket Transportation Coverage**

   a. On behalf of the **insured**, we will pay **loss** that the **insured** becomes legally obligated to pay because of **bodily injury**, **property damage** or **environmental damage** resulting from a **pollution incident** that is caused by and takes place during the course of **transportation**, provided that:

   (1) The **transportation** takes place on or after the Transportation Date, set forth below, and in the **coverage territory**;

   Transportation Date: September 3, 2014

   (2) The **pollution incident** results in a **claim** for **bodily injury**, **property damage** or **environmental damage**; and

   (3) The **claim** is first made against the **insured** during the **policy period** and reported to us, in writing, during the **policy period** or extended reporting period, if applicable.

All other terms and conditions of this policy remain unchanged.

By: _Jull_

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

**AW0051**
**AWPLL000185**

| | |
|---|---|
| **Endorsement No:** | 18 |
| This endorsement, effective: | September 3, 2017 |
| | (at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations) |
| forms a part of Policy No: | 0309-1873 |
| Issued to: | 24 Hour Holdings I Corp. |
| by: | Allied World National Assurance Company |

## INSURED LOCATION DEFINITION AMENDMENT

It is hereby agreed that the following changes are made to the policy:

1. **SECTION VI -- DEFINITIONS**, 21. **Insured location**, is deleted in its entirety and replaced with the following:

    21. **Insured location** means:

    a.  the **location(s)** entered in Item 5. of the Declarations; and

    b.  an **inadvertently omitted location**.

2. The following definition is added to **SECTION VI – DEFINITIONS**:

    **Inadvertently omitted location** means a **location** in the **coverage territory**: (a) in which you have an ownership or leasehold interest on the day before the first day of the **policy period**, and (b) that you inadvertently omitted from the materials submitted to us during the Application process, provided that:

    i.    the nature and scope of insurance afforded under this policy for such **location** complies, in all material respects, with our underwriting guidelines applicable on the day before the first day of the **policy period**;

    ii.   at all times during the **policy period**, the use of and operations at such **location** are similar to the use of and operations at the **locations** listed in Item 5. of the Declarations;

    iii.  such **location** poses no greater risk of loss, injury or damage arising out of a **pollution incident** than the **locations** listed in Item 5. of the Declarations;

    iv.   if an insured becomes aware of the inadvertent omission of such **location**, you report such **location** to us, in writing, as soon as practicable after becoming aware of it; and

    v.    you pay any additional premium associated with such **location** and charged by us, when due.

All other terms and conditions of this policy remain unchanged.

By: ~~Jull~~

**Joseph Cellura**

Title:    **President, North American Casualty Division**

Date:    **October 16, 2017**

**AW0052**
**AWPLL000186**

**Endorsement No:** 19

This endorsement, effective: September 3, 2017
(at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations)

forms a part of Policy No: 0309-1873
Issued to: 24 Hour Holdings I Corp.
by: Allied World National Assurance Company

## UNINTENTIONAL ADDRESS CHANGE

It is hereby agreed that the following is added to SECTION V., CONDITIONS:

### Unintentional Address Change

Where an **insured location** or other property is identified by address in this Policy and, subsequent to the first day of the **policy period**, the address for any such **insured location** or property is changed by a Federal, State, Municipal or other governmental authority, we agree such address change shall not prejudice any of our or your rights or obligations under this Policy.

All other terms and conditions of this policy remain unchanged.

By:

**Joseph Cellura**

Title: **President, North American Casualty Division**

Date: **October 16, 2017**

2H Manu B                    Page 1 of 1

**AW0053**
**AWPLL000187**

| Endorsement No: | 20 |
|---|---|
| This endorsement, effective: | September 3, 2017 |
| | (at 12:01 A.M. standard time at the address of the Named Insured as shown in Item 1. of the Declarations) |
| forms a part of Policy No: | 0309-1873 |
| Issued to: | 24 Hour Holdings I Corp. |
| by: | Allied World National Assurance Company |

## ADDITION OF SCHEDULED LOCATIONS, RETROACTIVE DATE, COVERAGES, LIMITS AND DEDUCTIBLES

1. It is hereby agreed that each location set forth below is included in Item 5. of the Declarations as an **insured location**, subject to all of the terms and conditions of the policy, and subject to the following changes to Item 7., Retroactive Date of the Declarations:

| Item 5: Insured Locations: | | | | Item 7. Retroactive Date |
|---|---|---|---|---|
| 498 S Boulder Hwy | Henderson | NV | 89015 | 01/13/2017 |
| 5959 W Century Blvd | Los Angeles | CA | 90045 | 02/03/2017 |
| 18200 Yorba Linda Blvd | Yorba Linda | CA | 92886 | 09/03/2016 |
| 23750 Alessandro Blvd | Moreno Valley | CA | 92553 | 10/31/2015 |
| 295 E Caroline St, Ste A | San Bernardino | CA | 92408 | 12/23/2015 |
| 700 E Redlands Blvd A11-A12 | Redlands | CA | 92373 | 06/30/2015 |
| 4255 Campus Dr #A-150 | Irvine | CA | 92612 | 09/30/2016 |
| 2605 South Eastern | Las Vegas | NV | 89109 | 12/09/2016 |
| 600 Newport Center Dr. | Newport Beach | CA | 92660 | 08/14/2015 |
| 303 Third Street | Huntington Beach | CA | 92648 | 12/16/2016 |
| 641 S Rancho Sante Fe Rd | San Marcos | CA | 92069 | 10/14/2016 |
| 2121 W. Danforth Rd. | Edmond | OK | 73003 | 06/15/2016 |
| 647 SW 19th Street | Moore | OK | 73160 | 06/15/2016 |
| 14651 Sprague St. | Omaha | NE | 68116 | 06/15/2016 |
| 8966 West Bowles Ave | Littleton | CO | 80123 | 09/30/2015 |
| 193 Chambers Bridge Rd | Brick | NJ | 08723 | 11/18/2016 |
| 7528 Queen's Boulevard | Elmhurst | NY | 11373 | 02/10/2017 |
| 298 West 231st Street | Bronx | NY | 10463 | Divestiture date |
| 2100 Bartow Avenue | Bronx | NY | 10475 | 09/30/2016 |
| 350 US Highway 46 | Wayne | NJ | 07470 | 09/30/2016 |
| 2718 North 118th Circle | Omaha | NE | 68164 | 06/15/2016 |
| 1805 Hwy 121 | Bedford | TX | 76022 | 06/30/2015 |
| 14885 W. Clayton Road | Chesterfield | MO | 63017 | 06/15/2016 |
| 215 Arnold Crossroads | Arnold | MO | 63010 | 06/15/2016 |
| 10920 FM 1960 West | Houston | TX | 77070 | 07/17/2015 |
| 2121 N. 550 West | Provo | UT | 84604 | 12/04/2015 |
| 84th & Giles Rd. | Papillion | NE | 68138 | 06/15/2016 |
| 3935 S. 147th St. | Omaha | NE | 68144 | 06/15/2016 |
| Bolger Square Shopping Center | Independence | MO | 64055 | 06/15/2016 |
| 1095 Regency Parkway | St. Charles | MO | 63303 | 06/15/2016 |
| 12075 Metcalf | Overland Park | KS | 66213 | 06/15/2016 |
| 7420 Metcalf Avenue | Overland Park | KS | 66204 | 06/15/2016 |
| 229 Queen Anne Avenue North | Seattle | WA | 98109 | 09/11/2015 |
| 8600 Ward Pkwy | Kansas City | MO | 64114 | 06/15/2016 |
| 11311 W. 64th St., Shawnee, KS | Shawnee | KS | 66203 | 06/15/2016 |
| 12526 Totem Lake Boulevard NE | Kirkland | WA | 98034 | 04/30/2016 |
| 2490 Kalakaua Ave. | Honolulu | HI | 96815 | 10/07/2016 |
| 2632 Somersville Road | Antioch | CA | 94509 | 12/16/2016 |
| 10320 Manchester Road | Kirkwood | MO | 63122 | 06/15/2016 |
| 7777 Cass St | Omaha | NE | 68114 | 06/15/2016 |
| 124th Place & Blackfoot Dr | Olathe | KS | 66062 | 06/15/2016 |

AW0054
AWPLL000188

| 900NE Deerbrook | Lee's Summit | MO | 64086 | 06/15/2016 |
| E Frank Wright Lloyd Bldg | Scottsdale | AZ | 85260 | 06/30/2016 |
| 3400 Bernard | Bakersfield | CA | 93306 | Divestiture date |
| 1505 140th Ave NE | Bellevue | WA | 98005 | Divestiture date |
| 2234 Rutherford Rd. | Carlsbad | CA | 92008 | Divestiture date |
| 5420 Philadelphia Street, Ste A | Chino | CA | 91710 | Divestiture date |
| 8101 E Belleview Ave Ste A-20 | Denver | CO | 80237 | Divestiture date |
| 8150 South Quebec St. | Englewood | CO | 80112 | Divestiture date |
| 10200 Juniper Ave | Fontana | CA | 92335 | Divestiture date |
| 40910 Fremont Blvd | Fremont | CA | 94538 | Divestiture date |
| 1456 Railroad Ave | Livermore | CA | 94550 | Divestiture date |
| 1285 Ridgeway Rd. | Memphis | TN | 38119 | Divestiture date |
| 2213 El Camino Real | Oceanside | CA | 92037 | Divestiture date |
| 915 W. Parker Rd. Ste 310, 311, 31 | Plano | TX | 75023 | Divestiture date |
| 7690 Limonite | Riverside | CA | 92509 | Divestiture date |
| 701 Montgomery St | Westlake Village | CA | 91362 | Divestiture date |

2. It is further agreed that with respect to each above-listed **insured location**, Item 2., of the Declarations is deleted and replaced with the following:

> **Item 2. Policy Period:**     **From September 3, 2017     To September 3, 2020**
> **12:01 AM STANDARD TIME AT THE ADDRESS SHOWN IN ITEM 1.**

3. It is further agreed that with respect to each above-listed **insured location**, Item 3., of the Declarations is deleted and replaced with the following:

> **Item 3. Coverages and Coverage Section Limits and Deductibles:**

This policy includes only those coverages as stated in Section I of the Policy for which deductibles and limits of liability appear below.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| 1 | $50,000 | $25,000,000 | $25,000,000 |
| 2 | N/A | N/A | N/A |
| 3 | N/A | N/A | N/A |
| 4 | N/A | N/A | N/A |

| Coverage | Business Interruption – Deductible - Days | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| 5 | N/A | N/A | N/A |

All other terms and conditions of this policy remain unchanged.

By:     _Jculn_

**Joseph Cellura**

Title:     **President, North American Casualty Division**

Date:     **October 16, 2017**

2H Manu C                    Page 2 of 2

**AW0055**
**AWPLL000189**

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism: to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government will generally reimburse 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible that must be met by the Company, and which deductible is based on a percentage of the Company's direct earned premiums for the year preceding the Certified Act of Terrorism.
.
The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year and the Company has met its deductible under the Act, the Company shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Certified Acts of Terrorism.

The portion of your premium that is attributable to coverage for Certified acts of terrorism is $2,337.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

ENV-IL 00001 (01/15)

**AW0056**

# POLICYHOLDER DISCLOSURE STATEMENT
## UNDER THE
## TERRORISM RISK INSURANCE ACT

The Insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the Insured has a right to purchase insurance coverage for Losses arising out of an Act of Terrorism, as defined in Section 102(1) of the Act. The term "act of terrorism" means an act certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside of the United States in case of certain air carriers or vessels or the premises of a U.S. mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The Insured should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism covered by the Act is final and not subject to review.

Coverage provided by this policy for losses caused by a Certified Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law. However, the insured's policy may contain other exclusions that might affect coverage, such as an exclusion for nuclear events.   Under the formula, the United States Government will generally reimburse 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding a statutorily established deductible that must be met by the company, and which deductible is based on a percentage of the company's direct earned premiums for the year preceding the Certified Act of Terrorism.

Be advised that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a Calendar Year, the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a Calendar Year and we have met our deductible under the Act, we shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Certified Acts of Terrorism.

The Insured should know that under federal law, the Insured is not required to purchase coverage for losses caused by Certified Acts of Terrorism.

Please indicate the selection of the Insured below.

_____ The Insured hereby elects to purchase coverage in accordance with the Act for a premium of $2,337.00

_____ The Insured hereby rejects coverage and accepts reinstatement of the exclusion in accordance with the Act.

_____     Insured Name:  24 Hour Holdings I Corp.

Signature of Insured

_____     Policy Number:  0309-1873

Print/Title

_____

Date

ENV-IL 00002 (01/15)

**AW0057**
AWPLL000191



## Scheduled Location Pollution Liability Policy

### TABLE OF CONTENTS

SECTION I – INSURING AGREEMENTS
SECTION II – WHO IS AN INSURED
SECTION III – EXCLUSIONS
SECTION IV – LIMITS OF INSURANCE AND DEDUCTIBLE
SECTION V – EXTENDED REPORTING PERIODS
SECTION VI – CONDITIONS
SECTION VII – DEFINITIONS

**AW0058**
AWPLL000192



# Scheduled Location Pollution Liability Policy

Terms that appear in bold print, other than those appearing in headings, are defined terms. Refer to **SECTION VII – DEFINITIONS** and **SECTION II – WHO IS AN INSURED**. Throughout this policy the words "you" and "your" refer to the **first named insured** and any other person or organization qualifying as a **named insured** under this Policy. The words "we," "us" and "our" refer to the Company providing this insurance.

> CERTAIN INSURING AGREEMENTS IN THIS POLICY REQUIRE THAT A CLAIM BE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY IN WRITING DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE. IN ADDITION TO OTHER LIMITATIONS ON COVERAGE, PAYMENT OF CLAIM EXPENSE REDUCES THE LIMITS OF INSURANCE. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

In consideration of the payment of the premium and in reliance upon the statements and information in the Application and all information submitted in support thereof, we agree to provide coverage as follows.

EACH INSURING AGREEMENT BELOW IS IN EFFECT ONLY IF LIMITS OF INSURANCE ARE SHOWN FOR THE PARTICULAR INSURING AGREEMENT IN ITEM 3. OF THE DECLARATIONS.

## SECTION I – INSURING AGREEMENTS

1. **Pre-existing Conditions Coverage**

    a. On behalf of the **insured**, we will pay **loss** that the **insured** becomes legally obligated to pay because of **bodily injury**, **property damage** or **environmental damage** resulting from a **pollution incident** on, at, under or migrating from a **scheduled location**, provided that:

       (1) The **pollution incident** results in a **claim** for **bodily injury**, **property damage** or **environmental damage**;

       (2) The **pollution incident** first commenced prior to the **retroactive date**; and

       (3) The **claim** is first made against the **insured** during the **policy period** and reported to us, in writing, during the **policy period** or the extended reporting period, if applicable.

    b. We will pay **clean-up costs** and **emergency response expense** because of **environmental damage** resulting from a **pollution incident** on, at, under or migrating from a **scheduled location**, provided that:

       (1) The **pollution incident** first commenced prior to the **retroactive date**; and

       (2) The **pollution incident** is first discovered during the **policy period** and reported to us, in writing, during the **policy period**.

2. **New Conditions Coverage**

    a. On behalf of the **insured**, we will pay **loss** that the **insured** becomes legally obligated to pay because of **bodily injury**, **property damage** or **environmental damage** resulting from a **pollution incident** on, at, under or migrating from a **scheduled location**, provided that:

       (1) The **pollution incident** results in a **claim** for **bodily injury**, **property damage** or **environmental damage**;

       (2) The **pollution incident** first commenced on or after the **retroactive date**; and

       (3) The **claim** is first made against the **insured** during the **policy period** and reported to us, in writing, during the **policy period** or extended reporting period, if applicable.

ENV-SPL2 00003 00  (09/14)          Page 2 of 17

**AW0059**
**AWPLL000193**

b. We will pay **clean-up costs** and **emergency response expense** because of **environmental damage** resulting from a **pollution incident** on, at, under or migrating from a **scheduled location**, provided that:

   (1) The **pollution incident** first commenced on or after the **retroactive date**; and

   (2) The **pollution incident** is first discovered during the **policy period** and reported to us, in writing, during the **policy period**.

## 3. Blanket Non-Owned Location Coverage

a. On behalf of the **insured**, we will pay **loss** that the **insured** becomes legally obligated to pay because of **bodily injury**, **property damage** or **environmental damage** resulting from a **pollution incident** on, at, under or migrating from a **non-owned location**, provided that:

   (1) The waste or recyclable materials are delivered to the **non-owned location** on or after the **retroactive date**;

   (2) The **pollution incident** results in a **claim** for **bodily injury**, **property damage** or **environmental damage**; and

   (3) The **claim** is first made against the **insured** during the **policy period** and reported to us, in writing, during the **policy period** or extended reporting period, if applicable.

## 4. Blanket Transportation Coverage

a. On behalf of the **insured**, we will pay **loss** that the **insured** becomes legally obligated to pay because of **bodily injury**, **property damage** or **environmental damage** resulting from a **pollution incident** that is caused by and takes place during the course of **transportation**, provided that:

   (1) The **transportation** takes place on or after the **retroactive date** and in the **coverage territory**;

   (2) The **pollution incident** results in a **claim** for **bodily injury**, **property damage** or **environmental damage**; and

   (3) The **claim** is first made against the **insured** during the **policy period** and reported to us, in writing, during the **policy period** or extended reporting period, if applicable.

## 5. Business Interruption Coverage

a. We will pay **business interruption costs** resulting from **business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location**, provided that:

   (1) The **pollution incident** first commenced prior to the **retroactive date** if you have purchased the pre-existing conditions coverage described in SECTION I – INSURING AGREEMENTS, 1. Pre-existing Conditions Coverage, or the **pollution incident** first commenced on or after the **retroactive date** if you have purchased the new conditions coverage described in SECTION I – INSURING AGREEMENTS, 2. New Conditions Coverage;

   (2) The **pollution incident** is first discovered during the **policy period**; and

   (3) You report the **business interruption** to us, in writing, during the **policy period**.

AW0060
AWPLL000194

**6. Our Rights and Duties in the Event of a Pollution Incident or Claim**

    a. **Defense**

We have the right and duty to defend the **insured** against any **claim**, to which this insurance applies, by the payment of **claim expense**. We have the right to select legal counsel to defend the **insured** against any such **claim**. However, we will have no duty to defend the **insured** against any **claim** to which this insurance does not apply. We may, at our discretion, investigate any **pollution incident** and settle any **claim** that may result. But:

      (1) The amount we will pay for **loss** and any other amounts for which insurance may be afforded under this policy is limited as set forth in SECTION IV - LIMITS OF INSURANCE AND DEDUCTIBLE; and

      (2) Our right and duty to defend end when the applicable Limit of Insurance as set forth in SECTION IV - LIMITS OF INSURANCE AND DEDUCTIBLE has been used up or tendered into court.

    b. **Settlement**

When we present a settlement offer to the **insured** that is acceptable to a claimant and within the applicable Limits of Insurance or Deductible Each Incident amount, and the **insured** rejects the proposed settlement of the **claim** for the amount of the settlement offer, our duty to defend the **claim** shall end and the **insured** shall defend the **claim** at the **insured**'s own expense. In that event, our liability shall not exceed the amount of the settlement offer that was rejected by the **insured**, plus the amount of **claim expense** incurred up to and including the date of such rejection by the **insured**, less any outstanding deductible amounts. For the purpose of this paragraph, rejection of the proposed settlement offer includes the **insured**'s failure to accept, in writing, the proposed settlement offer within five (5) calendar days of the **insured**'s receipt of such offer.

    c. **Clean-up**

We also have the right, but not the duty, to assume direct control of any clean-up, investigation, abatement, containment, treatment, removal, remediation, monitoring or disposal activities to which this insurance applies. In the event we exercise such right, all amounts we incur which are **loss**, **clean-up costs**, **emergency response expense**, **business interruption costs**, or any other amount for which coverage may be afforded under this policy will reduce the applicable Deductible and Limits of Insurance according to SECTION IV – LIMITS OF INSURANCE AND DEDUCTIBLE.

## SECTION II – WHO IS AN INSURED

1. The **first named insured** means the person or entity designated in Item 1. of the Declarations. This person or entity is responsible for payment of all premiums and deductibles and any applicable co-insurance obligations, and shall act on behalf of all other **insured**s for the giving and receiving of notice of cancellation or non-renewal, receipt and acceptance of the policy when issued and any endorsement issued during the **policy period**, receipt of any return premiums that become payable under this policy, the addition or reduction of coverage, and the exercise of the right, if any, to purchase an optional extended reporting period.

2. **Named insured** means the **first named insured** and any other person or entity that is designated as such in an endorsement, if any, attached to this policy.

3. **Insured** means each **named insured** and any past or present director, officer, partner, member or employee of such **named insured**, but only while acting in the course and scope of his or her duties as such with respect to the conduct of such **named insured**'s business. If a **named insured** is a limited liability company, then **insured** also means your managers, but only with respect to their duties as your managers.

4. **Additional Insured** means any person or entity that is designated as such in an endorsement, if any, attached to this policy. Any such **additional insured** shall maintain only those rights to coverage under this policy as specified by the endorsement.

**AW0061**
AWPLL000195

## SECTION III – EXCLUSIONS

The insurance provided in SECTION I – INSURING AGREEMENTS does not apply to any **claim**, **loss**, **clean-up costs**, **emergency response expense**, **business interruption costs** or any other amount, injury or damage for which insurance may be afforded:

1. **Asbestos and Lead-based Paint**

   Arising from lead-based paint or asbestos in any form, including asbestos-containing materials in or on any building or other structure.

   This exclusion does not apply to: (a) a **claim** for **bodily injury** or **property damage**; or (b) that portion of **clean-up costs** to remediate soil, surface water or groundwater.

2. **Contractual Liability**

   Arising from the **insured**'s assumption of liability in a contract or agreement.

   This exclusion does not apply to:

   a. Liability that the **insured** would have in the absence of the contract or agreement; or

   b. Liability assumed in a contract or agreement that is an **insured contract**. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be **loss** other than **claim expense**, provided: (1) liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and (2) such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

3. **Criminal Fines, Penalties and Assessments**

   That is or for a criminal fine, criminal penalty or criminal assessment.

4. **Damage to Property**

   That is **property damage** to: (a) property owned, leased or occupied by or loaned to an **insured** (including any costs or expenses for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property); or (b) personal property in the care, custody or control of an **insured**.

5. **Employer's Liability**

   Arising from **bodily injury** to: (a) an **insured** arising out of and in the course of employment by an **insured** or performing duties related to the conduct of an **insured**'s business; or (b) to the spouse, child, parent, brother, sister or member of the household of such **insured** as a consequence of **bodily injury** described in clause (a) above.

   This exclusion applies whether an **insured** may be liable as an employer or in any other capacity and to any obligation to share damages with or repay another.

6. **Hostile Acts**

   Arising directly or indirectly from war (whether or not declared), civil war, insurrection, rebellion, revolution, invasion, act of foreign enemy, hostilities or any act or condition incidental to the foregoing.

**AW0062**
AWPLL000196

7. **Insured Versus Insured**

Arising from a **claim** by any **insured** against any other person or entity that is also an **insured** under this policy. This exclusion does not apply to a **claim** by one **insured** against another **insured** for the latter's liability assumed in an **insured contract**.

8. **Intentional Non-compliance**

Arising from a **pollution incident** that happens because of a **responsible manager**'s intentional disregard of, or deliberate, willful or dishonest noncompliance with any law, statute, ordinance, regulation, order, judgment, decree, notice of violation, instruction or directive issued by or on behalf of any governmental body. This exclusion does not apply to a **responsible manager**'s non-compliance based on such **responsible manager**'s reasonable and good faith efforts to mitigate a **pollution incident** that requires immediate action, provided that such **pollution incident** is reported to us, in writing, within seven (7) days of its commencement.

9. **Known Pollution**

Arising from a **pollution incident** that took place, in whole or in part, prior to the commencement of the **policy period** where the **pollution incident** was known by, or reported to, a **responsible manager** and not disclosed to us, in writing, prior to the first day of the **policy period**. Any such **pollution incident** that was so disclosed to us, and not otherwise excluded from coverage will be deemed to have been first discovered during the **policy period**. If this policy is a renewal and the **insured** has maintained, on a continuous and uninterrupted basis, consecutive policies of insurance issued by us or an affiliate of us, that afford substantially the same coverage from the time that such **pollution incident** was first disclosed to us, in writing, and not otherwise excluded from coverage, such **pollution incident** will be deemed to have been first discovered during the first policy period when such **pollution incident** was disclosed to us and subject to all terms and conditions of that prior policy.

10. **Material Change in Use**

Arising from a change in the use of or operations at a **scheduled location** from that which you disclosed to us, in writing, prior to the first day of the **policy period**, where such change materially increases the likelihood or extent of a **pollution incident**, **bodily injury**, **property damage**, **environmental damage**, **loss** or **claim** in relation to the disclosed use or operations.

11. **New Pollution Incident at Divested Property**

Arising from a **pollution incident** on, at, under or migrating from a **scheduled location**, where such **pollution incident** commenced after the time such **scheduled location** was sold, given away or abandoned by an **insured**, or was condemned.

12. **Prior Claims**

Arising from a **claim**, **clean-up costs**, **emergency response expense**, **pollution incident** or other circumstances reported by an **insured** under any policy issued prior to the commencement of the **policy period** by an entity other than us or any entity affiliated with the Company.

13. **Products**

Arising from **your product** or any part of it after an **insured** has relinquished physical possession.

14. **Underground Storage Tanks**

Arising from an **underground storage tank** at a **scheduled location**. This exclusion does not apply to an **underground storage tank**:

AW0063
AWPLL000197

a. Whose existence is not known by or reported to any **responsible manager** prior to the commencement of the **policy period**;

b. That is scheduled onto this policy by endorsement;

c. Which has been closed, abandoned in place or removed prior to the commencement of the **policy period** in accordance with **environmental law** at the time of such closure, abandonment or removal; or

d. That is an oil / water separator, storm water collection system, or flow-through process tank located partially in the ground.

15. **Workers Compensation and Similar Laws**

Arising from any obligation of the **insured** under workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

## SECTION IV – LIMITS OF INSURANCE AND DEDUCTIBLE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of: (a) **insureds**; (b) **claims**; (c) person or organizations making **claims**; or (d) **pollution incidents**.

2. The Policy Aggregate Limit shown in Item **4.** of the Declarations is the most we will pay for the sum of all **loss**, **emergency response expense**, **business interruption costs** and any other amounts for which insurance may be afforded under this policy. Our total liability for all insurance afforded under this policy, combined, will not exceed the Policy Aggregate Limit shown in Item **4.** of the Declarations.

3. Subject to paragraph **2.** above, the Coverage Section Aggregate Limit shown for each Coverage in Item **3.** of the Declarations is the most we will pay for the sum of all amounts for which insurance is afforded for such Coverage.

4. Subject to paragraphs **2.** and **3.** above, the Each Incident Limit shown for each Coverage in Item **3.** of the Declarations is the most we will pay for the sum of all **loss**, **emergency response expense**, **business interruption costs** and any other amounts for which insurance may be afforded for such Coverage arising out of a single **pollution incident**.

5. Notwithstanding paragraph **4.** above, if insurance applies under two or more Coverages shown in Item **3.** of the Declarations with respect to any **loss**, **emergency response expense**, **business interruption costs** or any other amounts for which insurance may be afforded under this policy arising out of a single **pollution incident**, the most we will pay is the highest Each Incident Limit amount available under one such Coverage applicable to the single **pollution incident**. Nothing in this paragraph shall operate to increase any Each Incident Limit or other limit shown in Items **3.** and **4.** of the Declarations.

6. All **loss**, **emergency response expense**, **business interruption costs** and any other amounts for which insurance may be afforded under this policy arising out of the same, related, repeated or continuous **pollution incident** are deemed to arise out of a single **pollution incident**.

7. Subject to the limits of insurance set forth in Items **3.** and **4.** of the Declarations, we are liable only for that portion of **loss**, **emergency response expense** or any other amounts for which insurance may be afforded under this policy in excess of the Deductible Each Incident amount shown for each Coverage in Item **3.** of the Declarations. If insurance applies under two or more Coverages shown in Item **3.** of the Declarations with respect to any **loss**, **emergency response expense** or any other amounts for which insurance may be afforded under this policy arising out of a single **pollution incident**, only the highest applicable Deductible Each Incident amount shown in Item **3.** of the Declarations applies.

8. The Deductible Each Incident amount is your obligation to pay and applies to all **loss**, **emergency response expenses** or any other amount for which insurance may be afforded under this policy arising from a single **pollution**

**AW0064**
AWPLL000198

**incident**. We may choose to advance payment of any part or all of the Deductible Each Incident amount to effect settlement of any **claim**, or to pay **clean-up costs**, **emergency response expense**, **claim expense** or any other amounts for which insurance may be afforded under this policy and, upon notification of the action taken, you shall promptly reimburse us for the Deductible Each Incident amount that has been paid by us.

## SECTION V – EXTENDED REPORTING PERIODS

If this policy is cancelled by the **insured** or not renewed, and the **insured** has not purchased or obtained other insurance to replace the insurance afforded by this policy, the following provisions apply.

1. **Automatic Extended Reporting Period**

   a. The **insured** is entitled to a ninety (90) day Automatic Extended Reporting Period, commencing on the date and at the time that the **policy period** ends. When the **insured** is entitled to the ninety (90) day Automatic Extended Reporting Period, the **insured** has the right to report to us, in writing, during this ninety (90) day Automatic Extended Reporting Period:

      (1) A **claim** first made against the **insured** during the **policy period**; or

      (2) A **claim** first made against the **insured** during the ninety (90) day Automatic Extended Reporting Period, if such **claim** results from a **pollution incident** first discovered and reported to us, in writing, during the **policy period**.

   When the ninety (90) day Automatic Extended Reporting Period applies, a **claim** reported to us, in writing, during this ninety (90) day period will be deemed to have been made on the last day of the **policy period**.

2. **Optional Extended Reporting Period**

   a. The **first named insured** is also entitled to purchase an Optional Extended Reporting Period of up to thirty-six (36) months, commencing on the date and at the time the **policy period** ends, provided that:

      (1) Within thirty (30) days of such cancellation or non-renewal, we receive written notice from the **first named insured** of its election to purchase an Optional Extended Reporting Period for a specific period of not more than thirty-six (36) months; and

      (2) The **first named insured** pays, prior to the commencement of the Optional Extended Reporting Period and in accordance with our payment terms, the additional premium charged by us, and upon payment we will issue an endorsement providing for such Optional Extended Reporting Period.

   b. The additional premium charged for the Optional Extended Reporting Period will not be more than two hundred per cent (200%) of the total policy premium.

   c. When the **first named insured** is entitled to and purchases the Optional Extended Reporting Period, the **insured** has the right to report to us, in writing, during the specified Optional Extended Reporting Period, a **claim** first made against the **insured** during such Optional Extended Reporting Period, provided that the **claim** results from a **pollution incident** first discovered and reported to us, in writing, during the **policy period**. Any **claim** so reported will be deemed to have been made on the last day of the **policy period**.

If the Optional Extended Reporting Period is purchased by the **first named insured** in accordance with the preceding paragraphs, the Automatic Extended Reporting Period becomes a part of, and is not in addition to, the purchased Optional Extended Reporting Period.

When applicable, the Automatic Extended Reporting Period and Optional Extended Reporting Period do not operate to increase any limit of insurance under this policy, extend the **policy period** or change the scope of coverage provided.

**AW0065**
AWPLL000199

For the purpose of this section, the quotation of different terms and conditions by us shall not be construed as a non-renewal of this policy.

## SECTION VI – CONDITIONS

1. **Assignment**

   This policy may not be assigned without our prior written consent, which shall not be unreasonably withheld.

2. **Bankruptcy**

   Bankruptcy or insolvency of the **insured** or the **insured**'s estate shall not relieve us of our obligations under this policy and shall also not relieve any **insured** of its obligations under this policy.

3. **Cancellation**

   a. The **first named insured** may cancel this policy by mailing or delivering to us advance written notice of cancellation. When the **first named insured** cancels this policy, we will calculate return premium on a short rate basis unless the **policy period** is three (3) years or greater, in which case the premium shall be 100% earned on the first day of the **policy period** and you shall not be entitled to any return of premium.

   b. We may cancel this policy for non-payment of premium or your failure to reimburse us for any Deductible Amount paid by us by mailing or delivering to the **first named insured** written notice of cancellation at least ten (10) days before the effective date of cancellation.

   c. We may cancel this policy due to fraud or a material misrepresentation or concealment by any **insured** by mailing or delivering to the **first named insured** written notice of cancellation at least ninety (90) days before the effective date of cancellation. During the first sixty (60) days of such cancellation notice period, the **first named insured** may attempt to cure the circumstances that formed the basis of such notice of cancellation and request that we rescind our notice of cancellation. We will consider any such request and determine, in our sole discretion, whether or not to rescind the notice of cancellation.

   d. We will mail or deliver our notice of cancellation to the **first named insured**'s last mailing address known to us. Our notice of cancellation will state the effective date and hour of cancellation of the policy. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

4. **Changes**

   This policy contains all the agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

5. **Economic and Trade Sanctions**

   If affording insurance under this policy would be a violation of any United States of America economic or trade sanctions, including, but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then such insurance will be null and void.

6. **Headings**

   The descriptions in the headings and sub-headings of this policy are inserted solely for convenience and do not constitute any part of the terms or conditions of this policy.

**AW0066**
**AWPLL000200**

7. **Independent Counsel**

In the event the **insured** is entitled by law to select independent counsel, the fees and all other litigation expenses we must pay to that counsel are limited to the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar **claim**s in the community where the **claim**-related proceeding is being defended, or if there is no **claim**-related proceeding to defend, where the **claim** arose.

Additionally, we may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency including experience in defending **claim**s similar to the one pending against the **insured**, and to require that such counsel have errors and omissions insurance coverage.

Furthermore, the **insured** may at any time, by the **insured**'s signed consent, freely and fully waive the right, if any, to select independent counsel.

8. **Inspections and Surveys**

   a. We have the right to make inspections and surveys, at any time during normal business hours with reasonable advance written notice, of books, records, services, properties and activities as far as they relate to the subject matter of this policy, and monitor and audit, give you reports on the conditions we find and recommend changes.

   b. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. Also, we do not warrant that conditions:

      (1) Are safe or healthful; or

      (2) Comply with laws, regulations, codes or standards.

   This applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

   c. We may modify, amend or delete any of the terms and conditions of this policy, including the right to charge additional premium and the right to cancel, rescind or void this policy, if our examination, audit, monitoring or inspection reveals any material risk, hazard or condition that was not previously disclosed by you in the Application or supplemental materials submitted to us prior to the first day of the **policy period**, or which materially deviates from the information disclosed in the Application or supplemental materials submitted to us prior to the first day of the **policy period**.

9. **Legal Action Against Us**

No person or organization has a right under this policy to join us as a party or otherwise bring us into a suit asking for damages from an **insured**, or to sue us on this policy, unless there has been full compliance with all of its terms.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **insured**, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

10. **Notice of Possible Claim**

   a. If during the **policy period**, the **responsible manager** first becomes aware of a **possible claim**, the **responsible manager** may provide written notice to us during the **policy period** containing all the information required under paragraph b. below. Provided the **insured** has maintained, on a continuous and uninterrupted basis, consecutive policies of insurance issued by us or an affiliate of us, that afford substantially the same coverage as provided under this policy, any **possible claim** which subsequently becomes a **claim** made against you and reported to us

**AW0067**
AWPLL000201

under any such consecutive policy, shall be deemed to have been first made and reported during the **policy period** of this policy. Such **claim** shall be subject to the terms, conditions and limits of coverage of the policy under which the **possible claim** was reported.

b. It is a condition-precedent to the coverage afforded by this policy that notice under paragraph a., above contain all of the following information:

   (1) The cause of the **pollution incident**;

   (2) The **scheduled location** or other location where the **pollution incident** took place;

   (3) The **bodily injury**, **property damage**, or **environmental damage** which has resulted or may result from such **pollution incident**;

   (4) The insured(s) which may be subject to the **claim** and any potential claimant(s);

   (5) All engineering information available on the **pollution incident** and any other information that the Company deems reasonably necessary; and

   (6) The circumstances by which and the date the **insured** first became aware of the **possible claim**.

11. **Other Insurance**

If other valid and collectible insurance is available to the **insured** for insurance afforded by this policy, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except as set forth in paragraph c. below. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph b. below.

b. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable Limits of Insurance of all insurers.

c. **Microbial Matter**

Solely with respect to insurance afforded for a **pollution incident** arising from **microbial matter**, this insurance is excess over any other valid and collectible insurance and we will: (i) have the right, but not duty to defend the **insured** against any **claim** to which this insurance applies; and (ii) pay only the amount of **loss**, **emergency response expense**, **business interruption costs** and any other amounts for which insurance may be afforded under this policy which exceed the total amount of such other insurance.

12. **Reporting Under Multiple Policies**

a. If a **pollution incident** is first discovered during the **policy period** and reported to us, in writing, during the **policy period**, and a **claim** arising out of the same, related, repeated or continuous **pollution incident** is first made against the **insured** and reported to us, in writing, after the expiration of the **policy period** under the terms of a policy of insurance subsequently issued by us or an affiliate of us, then such **claim** will be deemed to have been first made and reported to us on the last day of the **policy period**, provided that:

**AW0068**
AWPLL000202

(1) The **insured** has maintained, on a continuous and uninterrupted basis, consecutive policies of insurance issued by us or an affiliate of us, that afford substantially the same coverage, from the time that such **pollution incident** is first reported to us, through the date the **claim** is reported to us; and

(2) The **claim** is covered under the policy of insurance subsequently issued by us or an affiliate of us.

Any such **claim** shall be deemed to arise out of a single **pollution incident** and shall be subject to the terms of this policy including the Each Incident Limit, Coverage Section Aggregate Limit and Policy Aggregate Limit in accordance with SECTION IV – LIMITS OF INSURANCE AND DEDUCTIBLE of this policy, and no other policy shall respond.

### 13. Representations

By accepting this policy, you agree that: (a) the statements and information in the Application and other supplemental materials submitted to us are accurate and complete and are material to our underwriting of this policy; (b) such statements and information are representations you made to us; and (c) we have issued this policy in reliance upon your representations.

### 14. Separation of Insureds

Except with respect to the Limits of Insurance, SECTION III – EXCLUSIONS, 7. Insured Versus Insured, and any rights or duties specifically assigned in this policy to the **first named insured**, this insurance applies as if each **insured** were the only **insured** and separately to each **insured** against whom a **claim** is made. However, misrepresentation, concealment, breach of condition or violation of any duty under this policy by one **insured** shall not prejudice the interest of coverage for another **insured** under this policy, except where an **insured** is a parent, subsidiary or affiliate of the **first named insured** set forth in the Declarations.

### 15. Service of Suit

In the event of failure of us to pay any amount claimed to be due hereunder, we, at the request of the **insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon counsel, Legal Department, Allied World Assurance Company (U.S.) Inc., 199 Water Street, 24th Floor, New York, NY 10038 or his or her representative, and that in any suit instituted against us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as its true and lawful agent upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **insured** or any beneficiary hereunder arising out of this policy of insurance.

### 16. Transfer of Rights of Recovery Against Others to Us

If the **insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **insured** must do nothing after discovery of a **pollution incident** to impair such rights. At our request, the **insured** will bring suit or transfer those rights to us and help us enforce them.

Any recovery as a result of a subrogation proceeding arising out of the payment of **loss** or any other amounts covered under this policy shall accrue first to us to the extent of our payment under the policy, and then to you to the extent of your deductible. Expenses incurred in such subrogation proceeding shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

AW0069
AWPLL000203

17. **Your Duties in the Event of a Pollution Incident or Claim**

    a. You must see to it that we are notified of a **pollution incident** or **claim** to which this insurance may apply, as soon as practicable at the address shown in Item 8. of the Declarations or via email at *envcasclaims@awac.com*. To the extent possible, notice should include:

        (1) How, when and where the **pollution incident** took place;

        (2) The names and addresses of any injured persons and witnesses;

        (3) The nature and location of any injury or damage arising out of the **pollution incident**;

        (4) The specifics of the **claim** and the date it was first asserted against and received by an **insured**; and

        (5) With respect to **emergency response expense**, the nature and extent of the emergency, the manner in which you or others acting on your behalf responded to the emergency, the amount of **emergency response expense** incurred, and the names and addresses of those persons having knowledge of any of the foregoing. You and any other involved **insured** must send us any technical reports, laboratory data, field notes, expert reports, investigation reports, data collected, invoices, regulatory correspondence or any other documents relating to such **emergency response expense**.

    b. You and any other involved **insured** must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim**;

        (2) Authorize us to obtain records and other information relevant to the **claim** or **pollution incident**;

        (3) Co-operate with us in the investigation of the **pollution incident**, as well as the investigation, settlement or defense of the **claim**;

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply; and

        (5) Update us regarding any requested information that is not available at the time of the request but subsequently becomes available.

    c. No **insured** will, except at that **insured**'s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than **emergency response expense** for which you are entitled to recover under this policy, without our prior consent.

    d. The **insured** must:

        (1) Submit, for our approval, all proposed work plans prior to submittal to any regulatory agency or duly licensed scientist or engineer authorized by law to oversee the investigation and clean-up of a **pollution incident**;

        (2) Submit, for our approval, any bid or contract regarding any investigation, removal, response or clean-up action or activity prior to the submission, execution or issuance of such bid or contract; and

        (3) Forward progress reports in connection with any investigation, removal, response or clean-up action or activity at reasonable intervals and always prior to submitting such reports to any regulatory agency or duly licensed scientist or engineer that is authorized by law to review and approve such reports.

    This clause d. does not apply to any investigation, removal, response or clean-up action or activity for which you are entitled to recover **emergency response expense** under this policy.

**AW0070**
AWPLL000204

## SECTION VII – DEFINITIONS

1. **Bodily injury** means physical injury, sickness, building related illness, mental anguish, shock or emotional distress or disease sustained by a person, including death resulting from any of these.

2. **Business income** means:

   a. Your net profit or loss before income taxes that would have been earned or incurred had there been no **business interruption**;

   b. Your continuing normal operating and payroll expenses, except for payroll expenses of officers, executives, department managers and employees under contract;

   c. Costs you are required to pay to rent temporary premises when that portion of the **scheduled location** occupied by you cannot be occupied, loaned, leased or rented. Such costs shall not exceed the fair rental value of such portion of the **scheduled location** that cannot be occupied, loaned, leased or rented; and

   d. Charges you incur which are the legal obligations of your tenant under the terms of a written lease that would have otherwise been your obligations but for the written lease.

3. **Business interruption** means the necessary suspension of your operations, at a **scheduled location**, but only if such suspension of your operations first commenced during the **policy period**.

4. **Business interruption costs** mean actual loss of **business income** and **extra expense** you incur during the **business interruption period**. **Business interruption costs** will be reduced to the extent that the **insured** can resume operations, in whole or in part, at the **scheduled location**, or by making use of other locations.

5. **Business interruption period** means the period of time that begins the number of hours shown as the "Business Interruption Waiting Period" in Item 3. of the Declarations after the time and date that the **business interruption** first commenced, and ends on the time and date that is the earlier of:

   a. The time and date that the **insured** resumes normal business operations at the **scheduled location** or at another location;

   b. The time and date that the **insured**, acting reasonably and with due diligence, should have resumed normal business operations at the **scheduled location** or at another location; and

   c. The time and date that is three hundred sixty five (365) days after the time and date that the **business interruption** first commenced.

6. **Claim** means a demand by a third party seeking a remedy and alleging liability or responsibility on the part of the **insured**.

7. **Claim expense** means reasonable and necessary fees and expenses authorized by us and incurred in the investigation and defense of a **claim** for **bodily injury**, **property damage** or **environmental damage** to which this insurance applies. **Claim expense** does not include any fees of counsel retained by the **insured** without our written consent or any cost or charge incurred by the **insured** in assisting in the investigation or defense of a **claim,** including salaries or wages of the **insured**'s in-house counsel or other employee.

8. **Clean-up costs** means reasonable and necessary expenses (including **restoration costs** and legal expenses), incurred with our prior written consent, which consent shall not be unreasonably withheld or delayed, to investigate, abate, contain, treat, remove, remediate, monitor or dispose of soil, surface water, groundwater or other contaminated media, but only:

   a. To the extent required by **environmental law**;

**AW0071**
**AWPLL000205**

b. For those costs actually incurred by the government or any political subdivision of the United States of America (including its territories and possessions), Puerto Rico and Canada for which **you** are legally liable; or

c. In the absence of a. or b. above, to the extent recommended by an **environmental professional**.

**Clean-up costs** does not include **emergency response expense** or costs, charges or expenses for goods or services of an **insured** or its parent, subsidiary or affiliate.

9. **Conveyance** means only an auto, rolling stock, watercraft or aircraft.

10. **Coverage territory** means the United States of America (including its territories and possessions) and Canada.

11. **Emergency response expense** means reasonable and necessary expenses incurred by **you**: (a) on an emergency basis, to remediate a **pollution incident** which is an imminent and substantial threat to human health or the environment; and (b) for the period of no more than seven (7) consecutive days beginning on the day that the **pollution incident** was first discovered.

12. **Environmental damage** means contamination of the soil, soil vapor, the atmosphere, any watercourse or body of water (including groundwater) or plant or non-human animal life or buildings or other structures that results in **clean-up costs** or **emergency response expense**.

13. **Environmental law** means any federal, state, provincial, municipal or other local law, statute, ordinance, rule, guidance document, regulation, administrative order and directive and any amendments thereto, including state voluntary clean-up or risk-based corrective action guidance, related to **environmental damage**.

14. **Environmental professional** means an individual or entity **we** approve, in writing, which is qualified to provide professional services.

15. **Extra expense** means the reasonable and necessary expenses incurred by **you** that would not have been incurred had there been no **business interruption**, and are reasonable and necessary to avoid, mitigate or minimize the necessary suspension of **your** operations, but only to the extent that such expenses reduce the loss of **business income** that would have otherwise been payable as **business interruption costs** had **you** not incurred such expenses.

16. **Insured contract** means that part of any written agreement, that is scheduled as an Insured Contract by endorsement attached to this policy, under which **you** assume the tort liability of another party to pay compensatory damages for **bodily injury**, **property damage** or **environmental damage** to a third person or organization, provided that such written agreement is signed by **you** prior to the discovery of the **bodily injury**, **property damage** or **environmental damage**. For the purpose of this definition, the term "tort liability" means liability that would be imposed by law in the absence of any contract or agreement.

17. **Loss** means:

a. Monetary judgment, award or settlement of compensatory damages for **bodily injury**, **property damage** or **environmental damage** and, where allowable by law, punitive, exemplary or multiple damages, and civil fines, penalties or assessments for **bodily injury** or **property damage**;

b. **Clean-up costs**;

c. Monetary judgment, award or settlement of medical monitoring costs and environmental monitoring costs, provided that such monitoring is the result of physical **bodily injury** for which **you** are determined to be legally liable; and

d. **Claim expense**.

**AW0072**
**AWPLL000206**

18. **Microbial matter** means any organism of the kingdom Fungi including spores and mycotoxins released by such organism and *Legionella pneumophilia,* whether or not such **microbial matter** is living.

19. **Natural resource damage** means physical injury to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act [16 U.S.C. 1801 et seq.]), any state, local or provincial government, any foreign government, any Native American tribe or, if such resources are subject to a trust restriction on alienation, any member of a Native American tribe.

20. **Non-owned location** means a location in the **coverage territory** where waste or recyclable materials generated from work or operations performed by you or on your behalf at a **scheduled location** is treated, stored, processed, recycled or disposed of, provided that:

    a. The location was not at any time owned, occupied, operated, managed or leased by an **insured** or an affiliate of an **insured**;

    b. The location was legally licensed and permitted by the appropriate federal, state or local authority to accept such waste or recyclable materials for such treatment, storage, processing, recycling or disposal at the time such waste or recyclable materials were sent to such location; and

    c. The location, or any part thereof, was not subject to a consent order, consent decree or corrective action under **environmental law** or was not listed or proposed to be listed on the federal National Priorities List (NPL) or any equivalent list by a state or local authority prior to the later of: (1) the time waste or recyclable materials were first sent to such location by the **insured** or on their behalf; and (2) the first day of the **policy period**.

21. **Policy period** means the period of time stated in Item 2. of the Declarations. If a location is endorsed onto this policy as a **scheduled location** after the effective date of this policy, the **policy period** for such **scheduled location** commences on the effective date that such location is added by us to this policy. If a **scheduled location** is deleted from this policy, the **policy period** for such location ends on the effective date that such location is removed by us as a **scheduled location**. If the policy is cancelled, the **policy period** ends on the effective date of such cancellation.

22. **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals, hazardous substances, petroleum hydrocarbons, low-level radioactive material and waste, medical or infectious or pathological waste, waste materials, electromagnetic fields, *Legionella pneumophilia,* and **microbial matter**.

23. **Pollution incident** means:

    a. The discharge, emission, seepage, migration, dispersal, release or escape of any **pollutant** into or upon land, or any structure on land, the atmosphere (including indoor air) or any watercourse or body of water (including groundwater), provided such conditions are not naturally present in the environment in the concentration or amounts discovered;

    b. The presence of **microbial matter** on, at or within buildings or structures; or

    c. The presence of **pollutants**, whether contained or uncontained, that have been illegally disposed of or abandoned at a **scheduled location** by parties other than an **insured**, provided that no **insured** had knowledge of such disposal or abandonment.

24. **Possible claim** means a **pollution incident** that first commenced during the **policy period** that you reasonably expect may result in a **claim**.

**AW0073**
AWPLL000207

25. **Property damage** means:

    a. Physical injury to or destruction of tangible property, including all resulting loss of use and diminished value of that property;

    b. Loss of use of tangible property that is not physically injured or destroyed arising out of physical injury to or destruction of other tangible property; and

    c. **Natural resource damage**.

    **Property damage** does not include **environmental damage**.

26. **Responsible manager** means an officer or director of an **insured**, or a manager or supervisor of an **insured** that is responsible, in whole or in part, for environmental, health or safety affairs or compliance, or an employee of an **insured** authorized by an **insured** to give or receive notice of a **pollution incident** or **claim**.

27. **Restoration costs** means reasonable and necessary expenses incurred by you, with our prior written consent, to repair or replace real or personal property that was damaged during the course and as a result of performing clean-up activities following a **pollution incident** to which this insurance applies. **Restoration costs** shall not exceed the replacement cost of such real or personal property. If repair or replacement results in kind or quality exceeding that of the real or personal property before it was damaged, whether at your option or not, we will not pay for the amount of the betterment.

28. **Retroactive date** means the date entered in Item 7. of the Declarations.

29. **Scheduled location** means the location(s) entered in Item 5. of the Declarations.

30. **Transportation** means the movement of goods, products, merchandise, supplies, waste or recyclable materials in a **conveyance** by the **insured** or a third party carrier properly licensed to transport such goods, products, merchandise, supplies, waste or recyclable materials from the time of movement from the point of origin until delivery to the final destination. **Transportation** includes the movement of goods, products, merchandise, supplies, waste or recyclable materials into, onto or from a **conveyance**.

31. **Underground storage tank** means any tank that has or had at least ten (10) percent of its volume below ground including associated piping connected to the tank. Underground storage tank does not include a storage tank situated in an underground structure (such as a basement, cellar, mine shaft or tunnel) if such storage tank is situated upon or above the surface of the floor and the entire surface area of the tank can be visually inspected.

32. **Your product** means any goods or products (other than real property) manufactured, sold, handled, distributed or disposed by: (a) an **insured**; (b) others trading under an **insured**'s name; or (c) a person or organization whose business or assets an **insured** has acquired; and containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and the providing of or failure to provide warnings or instructions.

**AW0074**
AWPLL000208