# EXHIBIT 4

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

--o0o--

| | |
|---|---|
| In Re | Chapter 11 |
| 24 HOUR FITNESS WORLDWIDE, INC., et al, | Case No. 20-11558 (KBO) |
|     Debtors. | |

_____/

24 HOUR FITNESS WORLDWIDE, INC.,

    Plaintiff,

vs.

CONTINENTAL CASUALTY COMPANY, et al.,

    Defendants.

_____/

DEPOSITION OF 24 HOUR FITNESS WORLDWIDE, INC.

by and through 30(b)(6) Witness DAN LARSON

Thursday, April 28, 2022

7:30 a.m. PST

U.S. Legal Support - Remote Videoconferencing

Wilmington, Delaware

STENOGRAPHICALLY REPORTED BY:

CARRIE HEWERDINE, RDR, CSR No. 4579

JOB #6135197

```
 1   REMOTE APPEARANCES
 2
 3        FOR PLAINTIFF:
 4             REED SMITH LLP
 5             BY:  THOMAS CONNOR O'CARROLL,
 6                  Attorney at Law
 7             101 Second Street, Suite 1800
 8             San Francisco, California 94105
 9             cocarroll@reedsmith.com
10
11        FOR DEFENDANT ALLIED WORLD NATIONAL ASSURANCE
12   COMPANY:
13             OTTERBOURG, P.C.
14             BY:  RICHARD G. HADDAD, Attorney at Law
15                  ANDREW S. HALPERN, Attorney at Law
16             230 Park Avenue
17             New York, New York 10169
18             T:  212.661.9100
19             F:  212.682.6104
20             rhaddad@otterbourg.com
     and
21             SELMAN LAW LLP
22             BY:  LIZ BROCKMAN, Attorney at Law
23             11766 Wilshire Boulevard, Sixth Floor
24             Los Angeles, California 90025
25             lbrockman@selmanlaw.com
```

```
 1  REMOTE APPEARANCES (CONTINUED)
 2  and
 3       FOR DEFENDANT ALLIED WORLD NATIONAL ASSURANCE
 4  COMPANY:
 5            MOUND COTTON WOLLAN & GREENGRASS LLP
 6            BY:  DEANNA M. MANZO, Attorney at Law
 7            One New York Plaza
 8            One Water Street, 44th Floor
 9            New York, New York 10004
10            dmanzo@moundcotton.com
11
12       FOR DEFENDANT CONTINENTAL CASUALTY COMPANY:
13            DLA PIPER LLP (US)
14            BY:  MATTHEW DENN, Attorney at Law
15            1201 North Market Street, Suite 2100
16            Wilmington, Delaware 19801
17            matthew.denn@dlapiper.com
    and
18            PAUL WEISS RIFKIND WHARTON & GARRISON LLP
19            BY:  JACQUELINE MATYSZCZYK,
20               Attorney at Law
21            1285 Avenue of the Americas
22            New York, New York 10019
23            jmatyszczyk@paulweiss.com
24
25
```

```
 1   REMOTE APPEARANCES (CONTINUED)
 2
 3       FOR DEFENDANT (not identified):
 4            HINSHAW & CULBERTSON LLP
 5            BY:  COURTNEY E. MURPHY, Attorney at Law
 6                 ANDREW ZAMPELLA, Attorney at Law
 7            800 Third Avenue, 13th Floor
 8            New York, New York 10022
 9            cmurphy@hinshawlaw.com
10
11       FOR DEFENDANT QBE Specialty Insurance Company
12   and General Security Indemnity Company of Arizona:
13            ZELLE LLP
14            BY:  ELIZABETH KNIFFEN, Attorney at Law
15            500 Washington Avenue South, Suite 4000
16            Minneapolis, Minnesota 55415
17            ekniffen@zelle.com
18
19       FOR DEFENDANT (not identified):
20            CLYDE & CO US LLP
21            BY:  MARLIE McDONNELL, Attorney at Law
22            271 17th Street NW, Suite 1720
23            Atlanta, Georgia 30363
24            marlie.mcdonnell@@clydeco.us
25
```

1  REMOTE APPEARANCES
2
3      FOR DEFENDANT LIBERTY MUTUAL FIRE INS. COMPANY:
4           ROBINSON & COLE LLP
5           BY:  JOEL McNABNEY, Attorney at Law
6           777 Brickell Avenue, Suite 680
7           Miami, Florida 33131
8           T:  786.725.4119
9           jmcnabley@rc.com
10
11
12
13
14  ALSO PRESENT (REMOTELY):
15  CARISSA NARCISO, Videographer
16
17
18
19
20
21
22
23
24
25

```
 1                INDEX TO EXAMINATION
 2   WITNESS:          24 HOUR FITNESS WORLDWIDE, INC.
 3                     30(b)(6) Witness DAN LARSON
 4   EXAMINATION                                    PAGE
 5   Mr. Haddad                                  10, 113
 6   Mr. O'Carroll                                   112
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

INDEX TO EXHIBITS

24 HOUR FITNESS WORLDWIDE, INC.
30(b)(6) Witness DAN LARSON
24 Hour Fitness Worldwide
vs. Continental Casualty Company, et al

Thursday, April 28, 2022

Carrie Hewerdine, RDR, CSR No. 4579

| MARKED | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Document A - Amended Notice of Deposition | 23 |
| Exhibit 2 | Document C - AWPLL00033-AWPLL000134 | 28 |
| Exhibit 3 | Document J - 24HF Production 0195718 | 38 |
| Exhibit 4 | Document N - 24HF Production 0003423 | 62 |
| Exhibit 5 | Document O - 24HF Production 024656-63 | 62 |
| Exhibit 6 | Document K - 24HF Production 205002-3 | 69 |
| Exhibit 7 | Document L - 24HF Production 0081994 | 71 |
| Exhibit 8 | Document M - 24HF Production 0195724 | 76 |
| Exhibit 9 | Document F - 24HF Production 003425 | 84 |
| Exhibit 10 | Document D - 24HF Production 0003406 | 89 |
| Exhibit 11 | Document G - 24HF Production 0003426 | 93 |
| Exhibit 12 | Document H - 24HF Production 0003427 | 108 |

1 could ask when that would have occurred --
2      Q    Okay.
3      A    -- and give that to you.
4      Q    Did the national call on March 16, 2020,
5 with the CEO and COO, communicate to other
6 management of 24 Hour Fitness that you were closing
7 all the clubs by midnight March 16, 2020?
8           MR. O'CARROLL:  Objection to form.
9           THE WITNESS:  That was an element that was
10 covered in the call, yes.
11 BY MR. HADDAD:
12     Q    And was the reason, provided by the CEO
13 and COO on the national call, that the closing was,
14 quote, to comply with federal, state, and local
15 government ordinances, unquote?
16          MR. O'CARROLL:  Objection to form.
17          THE WITNESS:  That was a component of what
18 was covered.
19 BY MR. HADDAD:
20     Q    And that was true, right?
21          MR. O'CARROLL:  Objection to form.
22          THE WITNESS:  I hear your question asking
23 if it was true.
24          Yes, that was a component, which is true,
25 of the decision-making process.

1  this email?

2  A   KBS was our third-party janitorial
3  contractor that we used for cleaning our clubs
4  nationally.

5  Q   Did they do every club?

6  A   To the best of my knowledge they did all
7  of our clubs, yes.

8  Q   Okay.  Do they still do your work?

9  A   KBS is no longer a vendor for 24 Hour
10 Fitness.

11 Q   When did KBS cease being a vendor?

12 A   I believe -- I don't have the exact date,
13 but it was -- I believe May -- April, May, June
14 timeframe of 2020.

15 Q   Are the recipients of this email, Jay
16 Garcia and Matt Adame, officers or senior people at
17 KBS?

18 A   They were the point of contacts for
19 24 Hour Fitness.  I don't know their titles.

20 Q   In the email that Mr. Piro sent he wrote,
21 quote, Please be advised that due to all of the gym
22 closures required by the government related to the
23 COVID-19 virus outbreak, all of our clubs will close
24 tonight at midnight, unquote.

25      Do you see that?

1       A     I do see that in the email.

2       Q     Was that a true statement from Mr. Piro,

3  that the --

4             MR. O'CARROLL:  Object to form.

5  BY MR. HADDAD:

6       Q     That the gym closures were required by the

7  government?

8             MR. O'CARROLL:  Sorry.

9             Objection to form.

10            THE WITNESS:  It's a partially true

11 statement, yes, sir.  Government-related

12 requirements were part of the decision-making

13 process.  But also the fact that COVID-19 was within

14 our clubs, and other factors were considered.

15 BY MR. HADDAD:

16      Q     But which particular clubs was COVID-19 in

17 as of March 16, 2020, at 10:50 p.m.?

18      A     I believe COVID-19 was within all of our

19 clubs as of March 16.

20      Q     And -- and what specific evidence, if any,

21 do you have to substantiate the presence of COVID-19

22 on or at each of your clubs as of March 16, 2020, at

23 10:50 p.m.?

24            MR. O'CARROLL:  Objection to form.

25            THE WITNESS:  Based on WHO, World Health

1  Organization, declaring it an international
2  pandemic, COVID-19 cases within the communities we
3  operate in, and the basis of our business where
4  people breathe heavily, are in areas for an
5  hour-plus, potentially, we had reason to believe
6  COVID-19 was within our clubs at all times.
7  BY MR. HADDAD:
8      Q   As of March 16, 2020, at 10:50 p.m., you
9  had no actual evidence, correct?
10         MR. O'CARROLL:  Objection to form.
11         THE WITNESS:  The evidence we had was --
12 were the reports of COVID to the local county health
13 departments.  Within the tracking that we had based
14 on our business model, we had a high chance of
15 transmission with heavy breathing, close proximity
16 to others, and length of time in the club.
17 BY MR. HADDAD:
18     Q   Sir, can I ask you to please look at
19 Document N again, which is Exhibit 4, the letter
20 from the CEO?
21     A   I have Document N up.
22     Q   That's the document which says "A Letter
23 from our CEO" at the top?
24     A   Yes, sir.
25     Q   Who prepared this document?

1  You're correct.
2              Let me rephrase the question.  Thank you.
3  BY MR. HADDAD:
4      Q    Sir, with respect to each of the items in
5  Column N, titled "Second COVID Closure Date," was
6  each facility that closed on the dates indicated
7  closed as a result of a government order?
8              MR. O'CARROLL:  Objection to form.
9              THE WITNESS:  No, sir.
10 BY MR. HADDAD:
11     Q    Which ones were not closed pursuant to a
12 government order, Column N?
13     A    It looks like Clubs 870, 637, 573, 694,
14 208, 387, 673, 366, 658, and 676 were not closed for
15 government.  It was, according to the document, a
16 lease rejection.
17     Q    Other than lease rejections, were any of
18 the facilities that were closed under Column N on
19 the dates indicated under "Second COVID Closure
20 Date," closed for any reason other than government
21 orders?
22             MR. O'CARROLL:  Objection to form.
23             THE WITNESS:  Not to my knowledge.
24 BY MR. HADDAD:
25     Q    All right.  Now, I'd ask you to look at