# EXHIBIT 6

AW0202

# In Re:

*24 HOUR FITNESS WORLDWIDE, INC. v.*
*CONTINENTAL CASUALTY COMPANY, et al.*

---

*September 7, 2021*

---

*eScribers, LLC*
*(973) 406-2250*
*operations@escribers.net*
*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*



Min-U-Script® with Word Index

AW0203

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

24 HOUR FITNESS WORLDWIDE, INC.,          Case No.

et al.,                                   20-11558 (KBO)

        Reorganized Debtors.

- - - - - - - - - - - - - - - - - - - -x

24 HOUR FITNESS WORLDWIDE, INC.,

        Plaintiff,                        Adv. Proc. No.

  - against -                             20-51051 (KBO)

CONTINENTAL CASUALTY COMPANY;

ENDURANCE AMERICAN SPECIALTY

INSURANCE COMPANY; STARR SURPLUS

LINES INSURANCE COMPANY; ALLIANZ

GLOBAL RISKS US INSURANCE COMPANY;

LIBERTY MUTUAL INSURANCE COMPANY;

BEAZLEYLLOYD'S SYNDICATES 2623/623;

ALLIED WORLD NATIONAL ASSURANCE

COMPANY; QBE SPECIALTY INSURANCE

COMPANY; and GENERAL SECURITY

INDEMNITY COMPANY OF ARIZONA,

        Defendants.

- - - - - - - - - - - - - - - - - - - -x

AW0204

1

2          United States Bankruptcy Court

3          824 North Market Street

4          Wilmington, Delaware

5

6          September 7, 2021

7          10:02 AM

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E:

22   HON. KAREN B. OWENS,

23   U.S. BANKRUPTCY JUDGE

24

25   ECR OPERATOR:  LISA BROWN

1

2   Defendant Allied World National Assurance Company's Motion for

3   Judgment on the Pleadings [D.I. 75; Filed on May 13, 2021]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Transcribed by:  Sharona Shapiro

25

AW0206

```
 1

 2  A P P E A R A N C E S: (All present by video or telephone)

 3  REED SMITH LLP

 4       Attorneys for Debtor

 5  BY:  DAVID E. WEISS, ESQ.

 6       JASON D. ANGELO, ESQ.

 7       T. CONNOR O'CARROLL, ESQ.

 8

 9

10  24 HOUR FITNESS

11       General counsel for debtor

12  BY:  KIMBERLY GRIFFIN, ESQ.

13

14

15  CHOATE, HALL & STEWART LLP

16       Attorneys for Liberty Mutual

17  BY:  JONATHAN D. MARSHALL, ESQ.

18

19

20  DLA PIPER

21       Attorneys for Continental Casualty Company

22  BY:  MATTHEW P. DENN, ESQ.

23

24

25
```

AW0207

WILMERHALE

     Attorneys for Continental Casualty Company; Endura

BY:   BENJAMIN W. LOVELAND, ESQ.

     LAUREN R. LIFLAND, ESQ.


OTTERBOURG P.C.

     Attorneys for Allied World National Assurance Company

BY:   RICHARD G. HADDAD, ESQ.

     ANDREW S. HALPERN, ESQ.


GELLERT SCALI BUSENKELL & BROWN

     Attorneys for Allied World National Assurance Company

BY:   MICHAEL BUSENKELL, ESQ.


CLYDE & CO LLP

     Attorneys for Endurance American Specialty Insurance

BY:   JAMES BAUER, ESQ.

AW0208

1

2  HINSHAW & CULBERTSON LLP

3      Attorneys for Starr Surplus Lines Insurance Company

4  BY:   ADAM S. COHEN, ESQ.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AW0209

1                    P R O C E E D I N G S

2             THE COURT:  Good morning, counsel.  This is Judge

3    Owens.  We're gathered today for oral argument in the adversary

4    proceeding between 24 Hour Fitness and an array of insurance

5    carriers, including Allied.

6             Why don't I turn the podium over to the movant, and we

7    can begin?  Good morning.

8             MR. HADDAD:  Good morning, Your Honor.

9             THE COURT:  Good morning.

10             MR. HADDAD:  This is Richard Haddad from Otterbourg,

11    along with my cocounsel, Michael Busenkell, and we represent

12    Allied World Insurance Company.

13             THE COURT:  Good morning.

14             MR. HADDAD:  Good morning.  Your Honor, this is our

15    motion, under Rule 12(c) of the Federal Rules of Civil

16    Procedure, for judgment on the pleadings.  And a Rule 12(c)

17    motion, Your Honor, is viewed under the same standard as a Rule

18    12(b)(6) motion to dismiss.  And here, because the plaintiff's

19    own pleadings doom the claims, because the plaintiff's own

20    pleadings defeat the claim on its face, judgment on the

21    pleadings, dismissing the cases, is appropriate and should be

22    entered today.  And the ultimate reason is because the business

23    loss is not "solely and directly" the cause of business

24    interruption.  And we have additional reasons as well, but I'm

25    going to keep coming back to the "solely and directly" language

AW0210

1  in the insuring clause.

2          And Your Honor, in this case, as you indicated just a

3  moment ago, there's a lot of parties, a lot of different

4  insurance companies.  There are two insurance policies in the

5  case.  There's a liability policy, which involves all of the

6  defendants, and then there's a pollution policy, which involves

7  just Allied World.  And this motion is addressed only to the

8  Allied World pollution policy.

9          And when we look at the complaint, very few paragraphs

10 of the complaint are devoted exclusively to the pollution

11 policy.  But when viewed by the words of the insurance policy

12 and the words of the complaint, it's clear that no claim exists

13 or could exist, as a matter of law, and that's why judgment is

14 appropriate.

15         And when we review a policy for coverage -- and this

16 is a declaratory judgment action for insurance coverage.  When

17 we review insurance policy for coverage, we first look to the

18 insuring clause, because that defines the scope of the

19 coverage.  And for that, we look to the words of the policy

20 itself, which are included within the complaint and also

21 attached as Exhibit A to the opposing affidavit on the motion.

22         But we begin with that, the words of the policy.  Now,

23 in opposition to the motion, there was a question raised as to

24 whether California law or some other law should apply.  First,

25 I don't think it makes a difference because, under any law, the

AW0211

1    scope of insurance coverage is defined by the policy, and you

2    read the policy words to determine its scope.  Here, we did

3    brief case law under California law because, in their

4    complaint, the plaintiff said, paragraph 73, they're seeking

5    declaratory judgment under California law.  But I don't think

6    there's any argument that there's any different outcome based

7    upon any different law, so I don't think that's really an

8    issue.

9            So let's focus, if I would, at the insuring clause.

10    It's quoted in the complaint; it's attached to the opposing

11    affidavit, and its docket 81-1, at page 48 of 161.  It's the

12    declaration of David Weiss.  Paragraph 5 says "business

13    interruption coverage".  And it says:  "We will pay business

14    interruption costs resulting from business interruption caused

15    solely and directly by a pollution incident on, at, or under a

16    scheduled location."  "Solely and directly by a pollution

17    incident", and a pollution incident is defined at page -- that

18    same exhibit, docket 81-1, page 61 of 161.  A pollution

19    incident is defined as the "presence of microbial matter on,

20    at, or within buildings or structures".

21            So there are two requirements to be pleaded here, in

22    order to state a claim for coverage, before we even look to

23    exclusions.  So looking at the insuring clause, it has to be

24    caused solely and directly by a pollution incident on, at, or

25    under a scheduled location.  And that requires the presence of

AW0212

1  microbial matter on, at, or within buildings or structures.

2         And then when we look to what is being pleaded here,

3  well, they're not pleading an "all risks" clause, from which

4  you then seek to apply exclusions.  No, they're pleading

5  specific coverage based upon these specific insuring clauses.

6  And here, what they have pleaded, in paragraph after paragraph

7  after paragraph of their complaint, paragraphs 36, 39, 41 -- we

8  can go on and on throughout, paragraph after paragraph, is that

9  the business interruption, to the extent there was any -- they

10  haven't actually pleaded what it was, but to the extent there

11  was any, was the result of government orders compelling shut

12  downs in March of 2020.

13         And once you plead, which they have, that they closed

14  because of government shutdowns, that defeats the coverage,

15  because it is no longer solely and directly because of

16  pollution at, on, or within buildings.  They haven't pleaded

17  that either.  So they didn't plead that it was the sole and

18  direct cause, nor that there was pollution present.  So when

19  there's multiple causes, there is no coverage.  That's what the

20  policy says.  And we've looked and highlighted each of those

21  paragraphs.

22         On top of that, we have the failure to plead the

23  second part of the coverage, which is that there is microbial

24  matter on, at, or within buildings or structures.  And they've

25  not pleaded that.  What they said is we believe that members or

AW0213

1  employees of the gyms either had COVID or were suspected of

2  having COVID.  Well, that fails for two reasons; number one, it

3  doesn't plead the presence of microbial matter at or on the

4  premises, as opposed to people who might have it, regardless of

5  where they are.  And you can't -- and then they go beyond that

6  and say, well, they either had it or were suspected of having

7  it.  Well, that doesn't create a plausible claim.  You can't

8  plead that the light might have been red or it might have been

9  green.  You're supposed to plead the elements of your cause of

10 action, and here they fail.

11      Instead, they plead these shutdowns were designed by

12 the government, because we wanted to prevent, as everyone

13 recalls -- as they pleaded as well -- we wanted to prevent

14 community spread of an illness.  We wanted to flatten the

15 curve.  We wanted to do all the things that people recall, and

16 as pleaded, occurred a year ago in March.

17      And those two failures, the failure to plead solely

18 and directly, and the failure to plead presence of microbial

19 matter -- they have 435 locations; they haven't pleaded anyone.

20 They didn't say any specific facility was shut down because of

21 the actual presence of microbial matter.  To the contrary, they

22 say we shut down because there were government requirements.

23 And even if someone walks through a building, that had COVID,

24 it doesn't mean the building was infected.  It doesn't mean

25 there's a pollution incident at the premises.  And it certainly

AW0214

1  doesn't trigger coverage under business interruption.

2          THE COURT:  Mr. Haddad, let me interrupt you and ask

3  you on that point.

4          MR. HADDAD:  Sure.

5          THE COURT:  You say that 24 Hour Fitness specifically

6  alleges that the orders caused the shutdown of the facilities.

7  Where in the complaint did the plaintiff specifically allege

8  that?

9          MR. HADDAD:  At paragraph --

10          THE COURT:  I'm struggling to find that, so please

11  point that out to me.

12          MR. HADDAD:  Paragraph 24: "California Governor Newsom

13  ordered Californians to stay inside their homes, only allowing

14  them to leave to perform activities necessary to maintain

15  federal critical infrastructure."

16          25: "Various stay-at-home and shelter-in-place orders

17  were issued in locations."

18          26:  "San Francisco's order, stay at home because of

19  the propensity of the virus to spread person to person."

20          27, Alameda County, California, similarly.

21          And in 29, the City of New York ordered the closure of

22  all commercial gyms.

23          And 30, Dallas, Texas ordered the close of gyms.

24          31, State of Washington.  And it goes on and on.

25          And in none of the allegations do they say was present

**AW0215**

1  at any particular location, as opposed to people, members, or

2  employees who might have had it.  They plead they've got 435

3  locations, but they haven't identified, in particular, even one

4  location as to which there was an actual pollutant on a

5  physical premises, which is the requirement under the coverage

6  clause.

7          And even in opposition to the motion -- even in

8  opposition to the motion, when we look at the plaintiff's

9  papers, they don't say that it was the actual and direct cause

10 of any business interruption.  They don't say that it was

11 exclusively.  They don't say it was at a particular location or

12 at a particular presence.  And so those failures require the

13 dismissal of the complaint as well.

14         Your Honor, the University of Pennsylvania has a COVID

15 coverage litigation tracker, and what they pointed out is that

16 more than 350 suits like this have been dismissed by the

17 federal courts.  Now, each case obviously has to be decided

18 based upon its own insurance policy terms and the own pleadings

19 that the plaintiff asserts, but what that study does show is

20 that many other companies, like 24 Hour Fitness, are trying to

21 push a square peg through a round hole, and that the federal

22 courts, throughout the country, are not letting them get away

23 with it.

24         So as we go through this particular pleading, this

25 particular insurance policy, and the language that I said

AW0216

1  before, which I keep -- I said I would come back to it, and I

2  did come back to it again.  The business interruption must be

3  caused solely and directly by that pollution incident, and

4  their own pleading proves that not to be the case.

5          This case is ripe to be dismissed right now, today,

6  with prejudice.  They've asked -- without providing a proposed

7  amended pleading, they've said, well, why don't we kick the

8  can?  Why don't we delay?  Why don't we see what discovery may

9  show?  Well, there's no discovery that we have that could

10  possibly help them frame a claim.  They certainly have the

11  ability, and had the ability when they filed this complaint, to

12  see whether they are able to satisfy the coverage requirements

13  of their own insurance policy.  Those facts are all known or

14  available to them, not to us.  And so, under those

15  circumstances, Your Honor, the dismissal that we believe is

16  required here should be with prejudice.

17          So Your Honor, I think that I would end with the words

18  that I started with, which is "solely and directly".  And given

19  their own pleading that shows that it's not solely and directly

20  a pollution incident -- a pollution incident, as defined in the

21  policy, is not the sole and direct cause of business

22  interruption, Your Honor, under those circumstances, there is

23  no coverage, and this complaint should be dismissed under Rule

24  12(c).

25          THE COURT:  Okay.  Well, thank you, Mr. Haddad.  I

AW0217

1  don't have any questions for you at this time.  So why don't I

2  hear from 24 Hour Fitness, and then you'll get a chance to

3  reply in due course.

4          MR. HADDAD:  Thank you, Your Honor.

5          THE COURT:  Thank you.

6          MR. WEISS:  Good morning, Your Honor.  Can you hear me

7  okay?

8          THE COURT:  I can, and I should have announced at the

9  beginning, because it's very awkward; the way my screens are

10  arranged, it looks like I'm -- I think it looks like I'm

11  looking away from you all.  But when I'm looking away from you

12  all, I'm actually looking directly at you.  So I know it's

13  confusing, but it's the way my screens are set up.  But just,

14  Mr. Haddad, I apologize for not saying that in the beginning

15  because it is an awkward setup here.

16          But good morning, Mr. Weiss.  How are you?

17          MR. WEISS:  Good morning, Your Honor.  And I have my

18  colleague Connor O'Carroll, who also is on with us.

19          THE COURT:  Good morning.

20          MR. O'CARROL:  Good morning, Your Honor.

21          MR. WEISS:  So what we really have here is a square

22  peg and a square hole or a round peg and a round hole, Your

23  Honor.  And those 350 or so cases that counsel has talked

24  about, that aren't in the record, don't involve a policy like

25  we have here, and also failed to mention the many state court

AW0218

1  cases and other federal court cases where courts have not

2  dismissed cases like this.

3         So let's take a step back and talk about the policy

4  that 24 Hour Fitness bought from Allied World.  Allied World

5  sold 24 Hour Fitness twenty-five million dollars in coverage

6  for losses from a pollution incident, including business income

7  losses.  And a pollution incident includes, specifically, the

8  presence of a virus in a building at an insured location, and

9  also includes the migration and spread of a virus in the

10  surrounding environment.  And that includes the atmosphere,

11  both outside and indoors.  And this case most certainly

12  involves the migration of COVID-19 throughout the communities

13  where plaintiff operates, including within plaintiff's

14  properties, as we have alleged.

15         The Allied World policy form itself, the actual main

16  policy form, did not include viruses in the definition of what

17  constitutes a pollutant that could give rise to a pollution

18  incident, Your Honor.  Instead, Allied World specifically,

19  through endorsement number 9, agreed to broaden the coverage,

20  by way of that endorsement, to add viruses to the policy

21  coverage, including business income losses caused by the

22  presence and migration of viruses.  And we believe that this

23  demonstrates, Your Honor, a conscious choice by Allied World to

24  provide coverage for claims involving the spread of a virus.

25         Now, we have a global pandemic, which certainly

AW0219

1  involves the presence and migration of a virus throughout the
2  communities where plaintiff operated.  We have specific
3  instances of customers and employees with the virus in our
4  clubs, which we've alleged.  We have a situation where testing
5  was scarce, and professionals were indicating at the time that
6  you should assume that everyone is infected with COVID-19 and
7  that it was dangerous for individuals to gather together
8  because of that.

9          So under the unique facts and circumstances of this
10  case, involving a policy that specifically covers the presence
11  and migration of viruses, there's no basis to dismiss on a
12  pleadings motion.

13          Now, as Mr. Haddad also alluded to, we shouldn't lose
14  sight of the fact that this case doesn't just involve the
15  pollution policy issued by Allied World, but also property
16  insurance policies issued by the other defendants, including
17  Allied World.  Allied World issued one of those other property
18  policies.  And Allied World sold 24 Hour Fitness that separate
19  policy, and that policy is also at issue here in this case.
20  And the property insurance also provides coverage for business
21  interruption losses, and it provides coverage for claims
22  arising from communicable diseases.  And we believe it would be
23  improper to adjudicate coverage under the Allied World
24  pollution policy, in a vacuum, without considering the fact
25  that it is part of an overall insurance program that 24 Hour

AW0220

1  Fitness obtained.

2         For instance, I was curious, when I was preparing for
3  the hearing, so I went back and looked at what Allied World and
4  some of the other property insurers were saying with respect to
5  the separate property policies.  And I saw that these insurers,
6  at least some of them, including Allied World, in their
7  answers, say that coverage is barred in those policies due to a
8  pollution exclusion.

9         And with respect to its separate insurance policy for
10  property, Allied World says that this case involves a pollution
11  claim and therefore there is no coverage due to a pollution
12  exclusion.  And that's docket number 56 at page 28.  So while
13  Allied World says there's no coverage under the pollution
14  policy we're talking about today, because there's no pollution
15  incident, they're citing a pollution exclusion in their
16  property policy to say that there's no coverage because this
17  case involves a pollution incident.

18         And while we don't think the pollution exclusions in
19  the property policies apply, for another number of reasons,
20  including because, unlike coverage provisions, exclusions have
21  to be interpreted narrowly, and because those policies also
22  cover communicable diseases, just like this policy covers
23  viruses, it seems to us an important fact that the property
24  insurers are saying this is a pollution event, so there's no
25  coverage under their policies, while Allied World is saying

AW0221

1 this isn't a pollution event, so there is no coverage under its

2 pollution policy.

3          And we brought this case for declaratory relief so the

4 Court can sort out these competing and perhaps contradictory

5 arguments in a single lawsuit, including how these different

6 policies are supposed to work together.  And while the insurers

7 apparently have decided it would be beneficial to decide issues

8 piecemeal, we think it would be unfair to 24 Hour Fitness to

9 pick up part of the claim in a vacuum without considering the

10 entirety of the case and what all the other parties are

11 arguing.

12          Now, Allied World argues we have not pled business

13 interruption "solely and directly from pollution incident on,

14 at, or under an insured location".  And Mr. Haddad said the

15 words "solely and directly" several times to the Court.  So

16 that raises a question:  Do we need to plead the presence of a

17 virus at each and every location, or is it enough to plead that

18 at least some of our locations had the virus present, and that

19 this led to the closure of our locations, which we allege

20 occurred on March 16th, 2020?  And we believe that, under the

21 notice pleading standard, only the latter is required, and

22 discovery is for getting additional information, but we don't

23 need to establish a pollution incident at every location to

24 prevail.

25          And also, there is a fundamental question the Court

AW0222

1  needs to decide, which is not addressed by Allied World's

2  motion, and that is:  What does it mean for a pollution

3  incident to be on, at, or under an insured location?  Is the

4  pervasiveness of the virus within the communities where our

5  clubs operated which, in addition to specific incidents at the

6  insured locations, led to the closure sufficient, or does

7  something else have to be shown?

8          While this is yet to be litigated, it needs to be

9  resolved before any dispositive ruling can be made.  On, at, or

10  under and insured location does not require the presence of

11  virus inside of a 24 Hour Fitness club.  The term "location" is

12  broader than a particular building, and a pollution incident

13  includes more than the presence of a virus inside of a

14  building.  Pollution incident includes pollution within the

15  atmosphere.  It includes bodies of water.  It includes in the

16  air.  It includes a lot of things.

17          And so while the definition of pollution incident

18  includes the presence of a virus within a building, it also

19  includes the migration or dispersal of a virus.  So we believe,

20  Your Honor, that the migration of COVID-19 throughout the

21  communities where the 24 Hour Fitness clubs were located,

22  including due to the presence of individuals infected with and

23  spreading the virus, should constitute covered pollution

24  incidents under this policy.

25          And at the very least, this scope of coverage question

AW0223

 1  has not been addressed in the briefing, and needs to be

 2  addressed before coverage under the policy can be determined.

 3  It shouldn't be determined on a motion for judgment on the

 4  pleadings.  Moreover, we clearly have pled the presence of

 5  COVID-19 at 24 Hour Fitness locations, and if incidents at some

 6  clubs led to closures at other clubs, that also should be

 7  sufficient for plaintiff to recover the entirety of its losses

 8  under this policy.

 9          This is because the policy covers business income

10  losses from a pollution incident at a scheduled location.  So

11  if there is a pollution incident at one location, and that led

12  to the closure of other locations, the losses from those

13  closures are also covered.  At the very least, this is a

14  question that needs to be resolved.

15          Also, what does it mean for losses to result solely

16  and directly from a pollution incident?  What does "solely and

17  directly" mean?  What is the pollution incident here?  If the

18  pollution incident is the presence of COVID-19 throughout the

19  communities where the plaintiff operates, including at

20  plaintiff's locations, then that is sufficient to show that the

21  business interruption losses were solely and directly from a

22  pollution incident, and plaintiff certainly has pled enough to

23  meet any pleading requirement.  What else caused the closures

24  other than the presence of COVID-19 throughout the communities

25  where plaintiff operated?

AW0224

1      Moreover, whether there were covered pollution
2  incidents, what the pollution incidents are, and whether the
3  business interruption losses were solely and directly from the
4  pollution incidents are questions of fact that should not be
5  decided on this pleadings motion.

6      What is clear is that the insurance policy coverage
7  provisions must be interpreted broadly in favor of coverage.
8  Ambiguous policy language must be construed against the
9  insurance company.  And here we have a policy that was broadly
10 intended to cover losses from pollution incidents, including by
11 endorsement, from the presence of viruses and the migration and
12 dispersal of viruses in the environment.

13     It provides twenty-five million dollars in coverage,
14 so Allied World obviously intended and expected to cover
15 catastrophic events like what we have here.  The policy has to
16 be interpreted to give effect to the intent of the parties,
17 which was to cover incidents where the presence of a virus
18 causes business income losses.

19     And contrary to Allied World's argument, and I think
20 the Court picked this up in your question, plaintiff does not
21 allege that just the governmental orders caused its business
22 income losses.  Plaintiff alleges that the presence of COVID-19
23 caused its losses.  The governmental orders were obviously a
24 byproduct of the presence of COVID-19.  Without the presence of
25 COVID-19, there wouldn't be any governmental orders.  But that

AW0225

1  doesn't make the governmental orders the cause of plaintiff's

2  losses for the purposes of applying the Allied World policy.

3  The policy covers losses from the presence and migration of

4  viruses.  The presence or migration of a virus caused

5  plaintiff's losses, whether that's because a government ordered

6  the closures due to the presence or migration of the virus or

7  because the plaintiff independently closed due to the presence

8  or migration of the virus.  Allied World keeps coming back --

9  and Your Honor, I'll point out that some of the orders that we

10  cite in our complaint postdated the closures of March 16th,

11  2020.

12        Now, Allied World keeps coming back to the order as

13  being a cause of a loss.  But why were the orders issued?  They

14  were issued solely and directly due to the presence of the

15  virus in the communities where plaintiff operated.  And this

16  means that they were issued due to a virus at, on, or under our

17  scheduled locations.  And at the very least, this is an issue

18  that needs to be litigated in the case, not on a pleadings

19  motion.

20        THE COURT:  Mr. Weiss, let me interrupt you.

21        MR. WEISS:  I'm going to --

22        THE COURT:  Let me --

23        MR. WEISS:  Yes.

24        THE COURT:  Let me interrupt you, because I want to

25  make sure I understand.  You've mentioned this a couple of

AW0226

 1  times, and it's not in the briefing at all.  So if you have the

 2  insurance policy in front of you, I'd like to connect the dots

 3  on this migration concept that you've brought up --

 4          MR. WEISS:  Yes.

 5          THE COURT:  -- which is when I look at the policy, and

 6  I look at the briefing, the argument of the parties was focused

 7  solely on one clause.  And that clause says:  "We will pay

 8  business interruption costs resulting from business

 9  interruption caused solely and directly by a pollution incident

10  on, at, or under a scheduled location."  So can you connect the

11  dots on the migration?  Where is that?

12          MR. WEISS:  Sure.

13          THE COURT:  How does that play into this policy?

14          MR. WEISS:  Yeah.  If you look at -- first of all, on

15  page -- so it's Exhibit A.  It's in my declaration, page 60 of

16  160.

17          THE COURT:  Okay.

18          MR. WEISS:  First of all, the definition of

19  "pollutant" includes "microbial".  And then if you go to

20  endorsement number 9, that's where "microbial matter" was

21  broadened to include viruses.

22          THE COURT:  Okay.

23          MR. WEISS:  And then if you look below the definition

24  of "pollutant", there's the definition of "pollution incident".

25  And "pollution incident" has three parts; I think, for us, A

AW0227

1  and B are the most relevant.  A talks about the discharge,

2  emission, seepage, migration, dispersal, release, or escape of

3  any pollutant into or on land, or any structure on land, the

4  atmosphere, including indoor air or any water, body of water,

5  including groundwater, provided such conditions are not

6  naturally present in the environment.

7          So that's where we see that the migration of a

8  pollutant, including in the atmosphere -- and a pollutant is a

9  virus -- would constitute a pollution incident.

10         So then when you go back to the business interruption

11  coverage, you see a business interruption resulting from a

12  pollution incident on, at, or under a scheduled location would

13  include the migration of a virus, which is a pollutant, on, at,

14  or under a scheduled location.  And it doesn't -- and the

15  pollution incident, meaning the migration of the virus, does

16  not have to be inside of a building or a structure; it could be

17  on, at, or under the scheduled location.  And the scheduled

18  location is just an address, if you look at the endorsements.

19  So while --

20         THE COURT:  Well, it's a club, right?

21         MR. WEISS:  It's a club, right.

22         THE COURT:  It's a club.  All right.  So you're saying

23  that -- I just want to make sure I understand.  So can we agree

24  or not agree -- and perhaps now is not the time, and you can

25  tell me this, but can we agree that it has to be -- the virus

AW0228

1  has to be in -- sorry, the virus has to be on, at, or under a

2  scheduled location, a club?

3          MR. WEISS:  Yes, I agree.

4          THE COURT:  Okay.  I want to make sure I understand

5  your argument.  Okay.  So the migration idea is not that it is

6  outside the scheduled location.  Is that your theory?  I just

7  want to make sure I understand.  So the theory right now that

8  you're proffering is that the virus could be outside the

9  scheduled location and fall under the policy?

10          MR. WEISS:  As long as it's -- it could be outside of

11  the physical building.  It could be people walking around in

12  the parking lot.  It could be people coming in and out of the

13  building.  It's the migration on, at, or under the scheduled

14  location --

15          THE COURT:  Okay.  I appreciate that.

16          MR. WEISS:  -- Your Honor, which includes that.

17          THE COURT:  I appreciate that.

18          MR. WEISS:  Yeah.

19          THE COURT:  Okay.  So we are tethered by the clubs.  I

20  mean, this argument --

21          MR. WEISS:  Yeah.

22          THE COURT:  -- is tethered by a club.  Okay.  We can

23  all agree.  All right.  That's very helpful.  I was getting

24  confused by the migration concept, and you helped me understand

25  it.  Thank you.

AW0229

1          MR. WEISS:  Yeah.  And to conclude, I wanted to just

2     go through some parts of our complaint, which I think are

3     salient.

4          So first, paragraph 20, we talk about how COVID-19 is

5     a highly contagious, deadly infectious disease that is

6     transmitted from person to person.

7          Paragraph 21, we say that in January 2020, it reached

8     the U.S. and spread across the country.

9          Paragraph 22, on March 11th, the World Health

10    Organization declared a global outbreak.

11          Paragraph 35, what distinguishes COVID-19 from other

12    diseases is its propensity to spread via persons who show no

13    symptoms of the disease.  We talk about how asymptomatic

14    carriers of the disease are seemingly healthy people who can

15    unknowingly transmit the disease by spreading infectious

16    droplets through speaking, breathing, and touching objects.

17    Everyone is at risk for getting COVID-19, according to the CDC.

18          In paragraph 36, in the months following the first

19    COVID-19 case in the U.S., in January 2020, the spread of the

20    disease in the United States was rampant, as public health

21    authorities and medical professionals sought to understand the

22    disease.  The state of the public health system in the U.S.,

23    both before and after the start of the crisis, was unable to

24    stop the unrestrained spread of COVID-19, which led to the

25    presence of COVID-19 throughout the communities where plaintiff

AW0230

1  operated its fitness clubs.  In the immediate area surrounding
2  its club locations, members and employees of plaintiff's clubs
3  were also infected with COVID-19.

4        Then in paragraph 38 we say COVID-19 spread largely
5  undetected into an unsuspecting U.S. population.  Individuals
6  infected with COVID-19 roamed undetected throughout the
7  community, including in and throughout the business locations
8  like plaintiff's fitness club locations.

9        Paragraph 39, in March 2020, plaintiff became aware of
10  several incidents of individuals with actual or suspected cases
11  of COVID-19 being present in plaintiff's fitness club
12  locations.  And given the widespread presence of the disease
13  within the community, including the areas where plaintiff's
14  clubs are and were located, plaintiff believes that individuals
15  with COVID-19 were present at most, if not all, of plaintiff's
16  clubs from January 2020 to March 16th, 2020.  And it was on
17  March 16th, 2020 that plaintiff decided to close the clubs.

18        And then, in paragraph 61, we say that the presence
19  and spread of COVID-19 throughout the community, including at
20  plaintiff's fitness club locations, led to the closure orders
21  discussed above.  This resulted in plaintiff suffering
22  substantial business interruption losses.

23        So it's obvious, Your Honor, that whether you want to
24  talk about the orders, you want to talk about our decision to
25  close the clubs, it was all solely and directly due to the

AW0231

1  spread, migration, and presence of COVID-19.  And that's what
2  this case is about.

3          And it is very interesting that, in taking a step back
4  and looking at this COVID-19 coverage litigation more broadly,
5  it's funny that, in cases where there's a virus exclusion in
6  the policy, the insurers argue that it's the virus that causes
7  the loss, the virus causes the loss, not the governmental
8  orders that cause the loss; the virus causes the loss.  So here
9  we have a situation where it's obviously that the virus is
10 causing a loss, but now they want to say that the governmental
11 orders is what's causing the loss, not the virus.

12         And so we have just insurers, in all these different
13 cases, talking out of multiple sides of their mouths, including
14 in this case, where we have some insurers saying this is a
15 pollution event so there's no coverage, and then we have Allied
16 World here saying that this is not a pollution event so there's
17 no coverage.

18         And that's why we need to get this case decided as a
19 single unit, Your Honor.  All of these policies need to be
20 interpreted together at one time.  This is a declaratory relief
21 action, and that's how the case should be resolved, not picking
22 off one policy here so that the insurers can argue one thing,
23 get out of the case, and then turn to these other policies and
24 argue something completely different to support their argument
25 over there.

AW0232

1          And with regard to California law versus other law, we

2     do think that that's an issue, what law is going to apply in

3     this case.  And Mr. Haddad talked about our reference to the

4     California Civil Procedure section in our complaint which,

5     frankly, was a mistake, Your Honor.  It was cut and pasted from

6     something and put in there.  That declaratory relief statute in

7     California is a procedural statute.  It doesn't apply in this

8     court.  This court has its own declaratory relief provision

9     under the federal rule that applies here.

10          And besides, the citation to a procedural rule is not

11     an admission of what the substantive choice of law should be in

12     this case.  Choice of law is determined based upon the forum

13     state's choice of law rules.  And Allied World did not go

14     through a choice of law analysis in its motion.

15          And as we cited in the JMP Securities case, at pages 6

16     and 7 of our brief, if you don't first address choice of law,

17     you shouldn't be able to prevail in a motion for judgment on

18     the pleadings.

19          And we cited the Chesapeake Utilities Corp. case, at

20     page 7 of our brief, which is a District of Delaware case,

21     where it was an environmental insurance case with multiple

22     sites.  And we have multiple locations here.  And the Court in

23     that case said that, in looking at each site separately, you

24     would apply the law of where the site is and not one law.

25          So here, choice of law is still an open issue.  It

AW0233

1  hasn't been addressed in this motion.  There's no choice of law

2  analysis in the motion as to why California law should apply to

3  everything here.  And so that's an independent reason why the

4  motion should be denied.  So thank you, Your Honor.

5          THE COURT:  Thank you very much.

6          Mr. Haddad, would you like time to reply?

7          MR. HADDAD:  Thank you, Your Honor.  Yes.  Yes, I

8  would.  Your Honor, our argument here is based on this pleading

9  and the words of this policy.  It's not based on other people,

10 other claims, other policies, and there's no reason or need to

11 consider another policy in this case.  The plaintiffs have

12 sought declaratory relief with respect to this policy.  And it

13 is on this policy that we're moving.  Each contract rises and

14 falls on its own terms.

15         And as I indicated in my opening remarks, the scope of

16 the coverage is defined by the insuring clause, and if it's not

17 within the insuring clause, you don't even get to the

18 exclusions.  So to the extent that, in other policies other

19 parties are arguing about exclusions, it really does not inform

20 today's decision or today's motion.

21         The insuring clause is not as broad as counsel now

22 suggests.  And I think Your Honor's question was a good one

23 because they can't rewrite the insurance policy to say I want

24 to cover a virus in the community or a virus in the atmosphere,

25 but it need to come specifically to the structure or the

AW0234

1    building or the location.  And they haven't really -- not

2    really; they haven't pleaded it.  Rule 8 does not give them the

3    right to just formulaically say people might have had this.

4         And counsel went through certain paragraphs of the

5    complaint to support his points in his arguments a few moments

6    ago.  And in paragraph 36, he highlighted "members and

7    employees at plaintiff's clubs were also infected with COVID-

8    19".  Well, that doesn't say they were infected on the

9    premises.  That doesn't say that those people who had the

10   illness were on the premises.  It doesn't say that there was

11   microbial matter present on the premises.  It just said members

12   were infected with COVID-19.  Well, that's not good enough

13   under any standard, certainly not Rule 8, or any other

14   standard, to satisfy the insuring clause here.

15        Paragraph 39, just read this as well; Mr. Weiss just

16   read this.  "There's widespread presence of the disease within

17   the community, including the areas where plaintiff's clubs are

18   located."  And plaintiff believes that people were present.

19   That's also not good enough.  We've got 435 facilities,

20   according to the complaint, and they haven't identified a

21   single one, not a one, as to which this virus was present.

22   They haven't pleaded it, and it shouldn't be up to us to guess,

23   and it's not for another day.

24        And this pleading, in paragraph 61, they say COVID is

25   a communicable disease; we're not disputing that.  Paragraph

AW0235

 1  61:  "The presence and spread of COVID throughout the

 2  community, including at plaintiff's fitness club locations, led

 3  to the closure orders discussed above" -- "led to the COVID

 4  orders discussed above".  That's what closed them; it was the

 5  orders.  And that's what they pleaded.

 6          And when the policy that they bought provides -- has

 7  to be the sole and direct cause, sole and direct cause, and

 8  they failed to satisfy that pleading requirement, then their

 9  claim has to be dismissed.  They haven't pleaded any particular

10  structure or any particular bill that had COVID present that

11  caused the shutdown.  Not a one.  And under those

12  circumstances, Your Honor, they can't get past this motion at

13  all.

14          The suggestion that another law might apply -- and

15  this was the first time we've heard that this was a mistake in

16  their pleading or a cut and paste or anything else.  They

17  pleaded California law -- the very first page of the insurance

18  policy says that the insured's address is in California.  We

19  addressed California law.  They have not suggested that there's

20  any different outcome required under any law of any state.  And

21  the reason for that, Your Honor, is because everyone begins

22  with the insuring clause.

23          Everyone reads that insuring clause, solely and

24  directly by a pollution incident on, at, or under a scheduled

25  location, and that means within -- at or within the buildings.

AW0236

1  And I guess if he wants to talk about the parking lot, maybe
2  the parking lot.  They haven't pleaded any parking lot.  They
3  haven't pleaded any parking lot.  What they did plead is lots
4  and lots of orders.  They did plead lots and lots of
5  governmental closing orders.  And not a one of them, not one of
6  those orders was the result of COVID at any 24 Hour Fitness
7  location.  They were all for the very fine public policy
8  reasons that are pleaded, not just because we remembered them,
9  but they were pleaded, to shut and slow community spread.
10          So you can't say, because there's COVID in the
11  community I have coverage, because I didn't buy a "COVID in the
12  community" policy; I bought a "solely and directly business
13  interruption" policy.  They don't meet that standard.  They
14  can't meet that standard.  And for those reasons, Your Honor,
15  this complaint should be dismissed with prejudice.
16          THE COURT:  Okay.
17          MR. HADDAD:  Thank you.
18          THE COURT:  Thank you.  I appreciate the
19  presentations.  Let's take a ten-minute break, and I'm going to
20  come back and rule from the bench today.  Okay?
21          So why don't we adjourn for ten minutes until 11, and
22  then we'll go back on the record.  So in the meantime, you can
23  mute your audio and your video, and I'll see you all in about
24  ten minutes.  Thank you.
25          MR. HADDAD:  Thank you, Your Honor.

**AW0237**

1          (Recess at 10:48 a.m. until 11:01 a.m.)

2          THE COURT:  All right, folks, thank you very much for

3   giving me a few minutes to gather my thoughts and look over my

4   notes.  And as promised, I told you I would rule, and I'm

5   prepared to do so.  And given that I'm reading my ruling on the

6   record, as opposed to writing it, it will be a little thorough.

7   So forgive the length.

8          So 24 Hour Fitness filed the pending adversary to

9   obtain a declaratory judgment that its business losses,

10  sustained as a result of the closure of its clubs due to the

11  COVID-19 outbreak, are covered under several insurance policies

12  issued by the defendants.  The plaintiff is a reorganized

13  debtor who operates health and fitness clubs.  It is alleged

14  that prior to the COVID-19 outbreak, it operated in 14

15  different states and Washington, D.C., with 445 clubs, serving

16  3.4 million members, and employing approximately 19,000

17  individuals.

18         Before the Court is defendant Allied's motion for

19  judgment on the pleading, which asks this Court to dismiss,

20  under federal Rule 12(c), 24 Hour Fitness' complaint against

21  it, to which, to the extent the complaint seeks relief against

22  it arising from the "pollution policy" which is described by

23  the parties as the scheduled location pollution liability

24  policy number 0309-1873.  And as relevant to the motion, in the

25  sole count of the complaint, 24 Hour Fitness seeks this Court

AW0238

1  to issue a declaratory judgment that some or all of its

2  business interruption losses from the COVID-19 outbreak are

3  covered by the pollution policy.

4          As alleged in the complaint and acknowledged by

5  Allied, the pollution policy provides coverage for business

6  interruption costs resulting from business interruption caused

7  solely and directly by a pollution incident on, at, or under a

8  scheduled location.  And the term "pollution incident" includes

9  the presence of a virus on, at, or within buildings or

10 structures.  "Business interruption" means the necessary

11 suspension of the insured's operations.  And "business

12 interruption cost" mean actual loss of business income and

13 extra expense the insured incurs during the period of business

14 interruption.

15         The scheduled locations are delineated in the policy

16 and amount to hundreds of 24 Hour Fitness clubs.  In moving for

17 relief, Allied argues, and 24 Hour Fitness agrees, that 24 Hour

18 Fitness must allege that its operations were closed solely and

19 directly because of the presence of COVID-19 on, at, or under a

20 scheduled location.

21         Allied contends, however, that 24 Hour Fitness fails

22 to do so for two reasons.  First, because 24 Hour Fitness does

23 not allege that COVID-19 was actually present at its clubs, and

24 second, because 24 Hour Fitness does not allege that its

25 scheduled locations or clubs were closed solely and directly

AW0239

1  because of the actual presence of COVID.  Rather, Allied

2  contends that 24 Hour Fitness admits in the complaint that it

3  was required to cease operations because of the government

4  shutdown orders.  Because Allied believes that 24 Hour Fitness

5  can never cure this latter defect, it argues that dismissal is

6  warranted.

7         And before ruling, let me briefly lay out the standard

8  applicable to Allied's motion.  Federal Rule 12(h)(2) permits a

9  party to raise the defense of failure to see the claim upon

10  which relief can be granted on a motion for judgment on the

11  pleadings, which may be filed after the pleadings are closed.

12  When a party raises the defense of a failure to state a claim,

13  the same standards apply as if the defense were raised under

14  12(b)(6).

15         To survive a motion under 12(b)(6), a complaint must

16  contain sufficient factual matter accepted as true to state a

17  claim to relief that is plausible on its face.  A claim has

18  facial plausibility when the plaintiff pleads factual content

19  that allows the Court to draw the reasonable inference that the

20  defendant is liable for the misconduct alleged.  The

21  plausibility standard is not akin to a probability requirement,

22  but it asks for more than the sheer possibility that the

23  defendant has acted unlawfully.

24         As explained by the Third Circuit Court of Appeals,

25  under Rule 12(c), like Rule 12(b)(6), judgment will not be

**AW0240**

1  granted unless the movant clearly establishes that no material

2  issue of fact remains to be resolved and that he is entitled to

3  judgment as a matter of law.  And considering a motion for

4  judgment on the pleadings, the trial court is required to view

5  the facts presented in the pleadings, and the inferences to be

6  drawn therefrom, in the light most favorable to the nonmoving

7  party.  And in this fashion, the courts hope to ensure that the

8  rights of the nonmoving party are decided as fully and fairly

9  on a Rule 12(c) motion as if there had been a trial.

10         And after carefully reviewing the complaint and

11  briefing on Allied's motion, and considering your very helpful

12  presentations today, I've determined to deny the relief

13  requested.

14         As a threshold matter, the parties dispute what law

15  applies to the action.  However, even assuming California law

16  applies, as Allied urges, 24 Hour Fitness has sufficiently

17  alleged a plausible claim for coverage under the pollution

18  policy.

19         24 Hour Fitness alleges, in at least paragraphs 1 and

20  61 of the complaint, that a communicable disease was present at

21  its business locations, namely the COVID-19 virus.  Moreover,

22  even without this allegation, 24 Hour Fitness alleges

23  sufficient facts in paragraphs 20, 21, 36 through 39, for the

24  fact finder to reasonably infer that COVID-19 was physically

25  present at its club properties.

AW0241

1          Specifically, 24 Hour Fitness alleges that the virus
2     is highly transmissible, it spreads freely through airborne
3     droplets transmitted via contaminated people, surfaces, or
4     objects, and did so across the country, and that there was not
5     enough done to contain the spread, that it spread throughout
6     the country, that the virus was present at the club's
7     communities and immediate surrounding areas, and that it knows
8     of several incidences of infected individuals at its clubs, and
9     that because of the widespread presence of the disease, it
10    believes infected individuals were present at most, if not all,
11    of its clubs from January to March 16th, 2020.

12         Considering the totality of these allegations with
13    common sense, and in a light most favorable to the plaintiffs,
14    I believe that 24 Hour Fitness' allegations are sufficient to
15    suggest the presence of COVID-19 at one or more of its
16    scheduled locations.  Whether or not COVID-19 was physically
17    present at one or more of the clubs will be an issue for
18    discovery and the ultimate fact finder.

19         Second, in paragraphs 1, 35 through 43, and 49, 24
20    Hour Fitness sufficiently alleges that its clubs were rendered
21    dangerous and unsafe as a result of COVID's presence and that,
22    as a result thereof, it had no choice but to close them.
23    Again, whether or not discovery will prove these allegations
24    correct is a matter for another day.

25         The complaint does allege that, in mid-March,

AW0242

1  regulatory authorities in locations where 24 Hour Fitness

2  conducts operations issued various stay-at-home orders or

3  shelter-in-place orders.  Some prevented individuals from

4  visiting 24 Hour Fitness' clubs.  Some ceased nonessential

5  business operations or specifically ordered the closure of

6  commercial gyms.

7          Even 24 Hour Fitness acknowledges, in paragraphs 40

8  and 49 of the complaint, that the orders caused its clubs to

9  remain closed.  Nonetheless, the orders do not automatically

10  negate the fact that at least one club could have been closed

11  by 24 Hour Fitness, independently of these orders, due to the

12  presence of COVID-19.

13          Allied's arguments regarding the government shutdown

14  orders is a defense that it raises to either defend against

15  coverage, in toto or in part, or to reduce the amount of

16  covered business losses.  Namely, it argues that the government

17  orders were the reason why 24 Hour Fitness closed its clubs,

18  not the presence of COVID-19.

19          It also argues that, even if a club was closed because

20  of COVID-19's presence, the club did not need to be closed for

21  a lengthy period of time to address and remedy its presence.

22  To Allied, the government orders caused the clubs to close and

23  remain closed, giving rise to 24 Hour Fitness' losses.

24          No matter how you apply the defense, however, it

25  relies on issues of fact that are not appropriate for

AW0243

 1   consideration and decision at this time.  Why and to what

 2   extent a club closed and remained closed is the job of the fact

 3   finder, following the close of discovery and full presentation

 4   of the parties at trial, or at summary judgment, if

 5   appropriate.  To the extent that issues of law arise after the

 6   facts surrounding a club's closure have been established, such

 7   as the effect and extent that the orders had on club closures,

 8   those issues can be decided after trial or summary judgment

 9   briefing is complete.

10          So accordingly, I do not believe it is appropriate to

11   close, today, the courthouse doors on the plaintiff's claim

12   arising from the pollution policy, and therefore, I will deny

13   Allied's motion and enter in order to that effect today.

14          Thank you all very much for your presentations today,

15   especially that it's the day after a long holiday weekend.  And

16   I appreciate your patience in getting the hearing scheduled.

17          So with that, I will go ahead and prepare an order and

18   make sure it's entered today.  And I'll look forward to the

19   next item that may be presented in this case.

20          I understand that, Mr. Weiss, you have a motion to

21   withdraw, or perhaps the defendants have a motion to withdraw

22   the reference.  Has there been any indication from the district

23   court on the timing of decision of that?

24          MR. WEISS:  No, Your Honor, there hasn't been.  And it

25   is the defendants' motion.  Thank you.

AW0244

1      THE COURT:  Okay.  All right.  Well, then I will just

2  wait to hear from you if there's any movement on that and how

3  it affects the proceedings of this going forward.  But until

4  then, I'll just wait to hear from you all on the next steps.

5  Okay?

6      MR. WEISS:  Thank you, Your Honor.

7      THE COURT:  All right.  Thank you all very much.  I

8  hope you have a nice rest of your day, and I hope you're well

9  and continue to be well during this time.  So with that, we'll

10  consider the hearing adjourned.  Thank you all very much and

11  take care.

12      MR. HADDAD:  Thank you.

13      THE COURT:  Thank you.

14   (Whereupon these proceedings were concluded at 11:11 AM)

15

16

17

18

19

20

21

22

23

24

25

AW0245

1

2                         I N D E X

3                          RULINGS

4                                        Page     Line

5   Defendant Allied World National         38       12

6   Assurance Company's motion for

7   judgment on the pleadings is denied.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AW0246

1

2                    C E R T I F I C A T I O N

3

4  I, Sharona Shapiro, certify that the foregoing transcript is a

5  true and accurate record of the proceedings.

6

7  *Sharona Shapiro*

8                                      September 9, 2021

9  _____      _____

10 SHARONA SHAPIRO (CET-492)            DATE

11 AAERT Certified Transcriber CET-492

12

13 eScribers, LLC

14 352 Seventh Avenue, Suite #604

15 New York, NY 10001

16 (973) 406-2250

17 operations@escribers.net

18

19

20

21

22

23

24

25

AW0247

**[**

**[DI (1)**
3:3

**A**

**ability (2)**
14:11,11
**able (2)**
14:12;30:17
**above (3)**
28:21;33:3,4
**accepted (1)**
37:16
**according (2)**
27:17;32:20
**accordingly (1)**
41:10
**acknowledged (1)**
36:4
**acknowledges (1)**
40:7
**across (2)**
27:8;39:4
**acted (1)**
37:23
**action (4)**
8:16;11:10;29:21;
38:15
**activities (1)**
12:14
**actual (7)**
11:21;13:4,9;
16:15;28:10;36:12;
37:1
**actually (3)**
10:10;15:12;36:23
**ADAM (1)**
6:4
**add (1)**
16:20
**addition (1)**
20:5
**additional (2)**
7:24;19:22
**address (4)**
25:18;30:16;
33:18;40:21
**addressed (6)**
8:7;20:1;21:1,2;
31:1;33:19
**adjourn (1)**
34:21
**adjourned (1)**
42:10
**adjudicate (1)**
17:23
**admission (1)**
30:11
**admits (1)**
37:2

**adversary (2)**
7:3;35:8
**affects (1)**
42:3
**affidavit (2)**
8:21;9:11
**again (2)**
14:2;39:23
**against (4)**
22:8;35:20,21;
40:14
**ago (3)**
8:3;11:16;32:6
**agree (5)**
25:23,24,25;26:3,
23
**agreed (1)**
16:19
**agrees (1)**
36:17
**ahead (1)**
41:17
**air (2)**
20:16;25:4
**airborne (1)**
39:2
**akin (1)**
37:21
**Alameda (1)**
12:20
**allegation (1)**
38:22
**allegations (4)**
12:25;39:12,14,23
**allege (7)**
12:7;19:19;22:21;
36:18,23,24;39:25
**alleged (6)**
16:14;17:4;35:13;
36:4;37:20;38:17
**alleges (6)**
12:6;22:22;38:19,
22;39:1,20
**Allied (38)**
3:2;5:9,15;7:5,12;
8:7,8;16:4,4,15,18,
23;17:15,17,17,18,
23;18:3,6,10,13,25;
19:12;20:1;22:14,
19;23:2,8,12;29:15;
30:13;36:5,17,21;
37:1,4;38:16;40:22
**Allied's (5)**
35:18;37:8;38:11;
40:13;41:13
**allowing (1)**
12:13
**allows (1)**
37:19
**alluded (1)**
17:13
**along (1)**
7:11

**Ambiguous (1)**
22:8
**amended (1)**
14:7
**American (1)**
5:20
**amount (2)**
36:16;40:15
**analysis (2)**
30:14;31:2
**ANDREW (1)**
5:11
**announced (1)**
15:8
**apologize (1)**
15:14
**apparently (1)**
19:7
**Appeals (1)**
37:24
**applicable (1)**
37:8
**applies (3)**
30:9;38:15,16
**apply (10)**
8:24;10:4;18:19;
30:2;7,24;31:2;
33:14;37:13;40:24
**applying (1)**
23:2
**appreciate (4)**
26:15,17;34:18;
41:16
**appropriate (5)**
7:21;8:14;40:25;
41:5,10
**approximately (1)**
35:16
**area (1)**
28:1
**areas (3)**
28:13;32:17;39:7
**argue (3)**
29:6,22,24
**argues (5)**
19:12;36:17;37:5;
40:16,19
**arguing (2)**
19:11;31:19
**argument (8)**
7:3;9:6;22:19;
24:6;26:5,20;29:24;
31:8
**arguments (3)**
19:5;32:5;40:13
**arise (1)**
41:5
**arising (3)**
17:22;35:22;41:12
**around (1)**
26:11
**arranged (1)**
15:10

**array (1)**
7:4
**asserts (1)**
13:19
**assume (1)**
17:6
**assuming (1)**
38:15
**Assurance (3)**
3:2;5:9,15
**asymptomatic (1)**
27:13
**atmosphere (5)**
16:10;20:15;25:4,
8;31:24
**attached (2)**
8:21;9:10
**Attorneys (5)**
5:3,9,15,20;6:3
**audio (1)**
34:23
**authorities (2)**
27:21;40:1
**automatically (1)**
40:9
**available (1)**
14:14
**aware (1)**
28:9
**away (3)**
13:22;15:11,11
**awkward (2)**
15:9,15

**B**

**back (11)**
7:25;14:1,2;16:3;
18:3;23:8,12;25:10;
29:3;34:20,22
**Bankruptcy (2)**
2:2,23
**barred (1)**
18:7
**based (6)**
9:6;10:5;13:18;
30:12;31:8,9
**basis (1)**
17:11
**BAUER (1)**
5:21
**became (1)**
28:9
**begin (2)**
7:7;8:22
**beginning (2)**
15:9,14
**begins (1)**
33:21
**believes (4)**
28:14;32:18;37:4;
39:10
**below (1)**

**24:23**
**bench (1)**
34:20
**beneficial (1)**
19:7
**BENJAMIN (1)**
5:4
**besides (1)**
30:10
**beyond (1)**
11:5
**bill (1)**
33:10
**bodies (1)**
20:15
**body (1)**
25:4
**both (2)**
16:11;27:23
**bought (3)**
16:4;33:6;34:12
**break (1)**
34:19
**breathing (1)**
27:16
**brief (1)**
9:3;30:16,20
**briefing (5)**
21:1;24:1,6;38:11;
41:9
**briefly (1)**
37:7
**broad (1)**
31:21
**broaden (1)**
16:19
**broadened (1)**
24:21
**broader (1)**
20:12
**broadly (1)**
22:7;9;29:4
**brought (2)**
19:3;24:3
**BROWN (2)**
2:25;5:14
**building (10)**
11:23,24;16:8;
20:12,14,18;25:16;
26:11,13;32:1
**buildings (6)**
9:20;10:1,16,24;
33:25;36:9
**BUSENKELL (3)**
5:14,16;7:11
**business (37)**
7:22,23;9:12,13,
14;10:9;12:1;13:10;
14:2,21;16:6,21;
17:20;19:12;21:9,
21;22:3,18,21;24:8,
8;25:10,11;28:7,22;
34:12;35:9;36:2,5,6,

10,11,12,13;38:21;
40:5,16
**buy (1)**
34:11
**byproduct (1)**
22:24

**C**

**California (13)**
8:24;9:3,5;12:12,
20;30:1,4,7;31:2;
33:17,18,19;38:15
**Californians (1)**
12:13
**can (19)**
7:7;10:8;14:8;
15:6,8;19:4;20:9;
21:2;24:10;25:23,24,
25;26:22;27:14;
29:22;34:22;37:5,
10;41:8
**care (1)**
42:11
**carefully (1)**
38:10
**carriers (2)**
7:5;27:14
**case (30)**
8:2,5;9:3;13:17;
14:4,5;16:11;17:10,
14,19;18:10,17;19:3,
10;23:18;27:19;
29:2,14,18,21,23;
30:3,12,15,19,20,21,
23;31:11;41:19
**cases (8)**
7:21;15:23;16:1,1,
2;28:10;29:5,13
**Casualty (1)**
5:3
**catastrophic (1)**
22:15
**cause (10)**
7:23;10:18;11:9;
13:9;14:21;23:1,13;
29:8;33:7,7
**caused (14)**
9:14,24;12:6;14:3;
16:21;21:23;22:21,
23;23:4;24:9;33:11;
36:6;40:8,22
**causes (5)**
10:19;22:18;29:6,
7,8
**causing (2)**
29:10,11
**CDC (1)**
27:17
**cease (1)**
37:3
**ceased (1)**
40:4

**certain (1)**
32:4
**certainly (6)**
11:25;14:10;
16:11,25;21:22;
32:13
**chance (1)**
15:2
**Chesapeake (1)**
30:19
**choice (9)**
16:23;30:11,12,13,
14,16,25;31:1;39:22
**Circuit (1)**
37:24
**circumstances (4)**
14:15,22;17:9;
33:12
**citation (1)**
30:10
**cite (1)**
23:10
**cited (2)**
30:15,19
**citing (1)**
18:15
**City (1)**
12:21
**Civil (2)**
7:15;30:4
**claim (14)**
7:20;8:12;9:22;
11:7;14:10;18:11;
19:9;33:9;37:9,12,
17,17;38:17;41:11
**claims (4)**
7:19;16:24;17:21;
31:10
**clause (14)**
8:1,18;9:9,23;
10:3;13:6;24:7,7;
31:16,17,21;32:14;
33:22,23
**clauses (1)**
10:5
**clear (2)**
8:12;22:6
**clearly (2)**
21:4;38:1
**close (7)**
12:23;28:17,25;
39:22;40:22;41:3,11
**closed (14)**
10:13;23:7;33:4;
36:18,25;37:11;40:9,
10,17,19,20,23;41:2,
2
**closing (1)**
34:5
**closure (9)**
12:21;19:19;20:6;
21:12;28:20;33:3;
35:10;40:5;41:6

**closures (6)**
21:6,13,23;23:6,
10;41:7
**club (17)**
20:11;25:20,21,
22;26:2,22;28:2,8,
11,20;33:2;38:25;
40:10,19,20;41:2,7
**clubs (28)**
17:4;20:5,21;21:6,
6;26:19;28:1,2,14,
16,17,25;32:7,17;
35:10,13,15;36:16,
23,25;39:8,11,17,20;
40:4,8,17,22
**club's (2)**
39:6;41:6
**CLYDE (1)**
5:19
**CO (1)**
5:19
**cocounsel (1)**
7:11
**COHEN (1)**
6:4
**colleague (1)**
15:18
**coming (4)**
7:25;23:8,12;
26:12
**commercial (2)**
12:22;40:6
**common (1)**
39:13
**communicable (4)**
17:22;18:22;
32:25;38:20
**communities (9)**
16:12;17:2;20:4,
21;21:19,24;23:15;
27:25;39:7
**community (10)**
11:14;28:7,13,19;
31:24;32:17;33:2;
34:9,11,12
**companies (2)**
8:4;13:20
**Company (6)**
5:3,9,15;6:3;7:12;
22:9
**Company's (1)**
3:2
**compelling (1)**
10:11
**competing (1)**
19:4
**complaint (27)**
8:9,10,12,20;9:4,
10;10:7;12:7;13:13;
14:11,23;23:10;
27:2;30:4;32:5,20;
34:15;35:20,21,25;
36:4;37:2,15;38:10,

20;39:25;40:8
**complete (1)**
41:9
**completely (1)**
29:24
**concept (2)**
24:3;26:24
**conclude (1)**
27:1
**concluded (1)**
42:14
**conditions (1)**
25:5
**conducts (1)**
40:2
**confused (1)**
26:24
**confusing (1)**
15:13
**connect (2)**
24:2,10
**Connor (1)**
15:18
**conscious (1)**
16:23
**consider (2)**
31:11;42:10
**consideration (1)**
41:1
**considering (5)**
17:24;19:9;38:3,
11;39:12
**constitute (2)**
20:23;25:9
**constitutes (1)**
16:17
**construed (1)**
22:8
**contagious (1)**
27:5
**contain (2)**
37:16;39:5
**contaminated (1)**
39:3
**contends (2)**
36:21;37:2
**content (1)**
37:18
**Continental (1)**
5:3
**continue (1)**
42:9
**contract (1)**
31:13
**contradictory (1)**
19:4
**contrary (2)**
11:21;22:19
**Corp (1)**
30:19
**cost (1)**
36:12
**costs (3)**

9:14;24:8;36:6
**counsel (4)**
7:2;15:23;31:21;
32:4
**count (1)**
35:25
**country (4)**
13:22;27:8;39:4,6
**County (1)**
12:20
**couple (1)**
23:25
**course (1)**
15:3
**Court (48)**
2:2;7:2,9,13;12:2,
5,10;14:25;15:5,8,
19,25;16:1;19:4,15,
25;22:20;23:20,22,
24;24:5,13,17,22;
25:20,22;26:4,15,17,
19,22;30:8,8,22;
31:5;34:16,18;35:2,
18,19,25;37:19,24;
38:4;41:23;42:1,7,13
**courthouse (1)**
41:11
**courts (4)**
13:17,22;16:1;
38:7
**cover (5)**
18:22;22:10,14,
17;31:24
**coverage (44)**
8:15,16,17,19;9:1,
13,22;10:5,14,19,23;
12:1;13:5,15;14:12,
23;16:5,19,21,24;
17:20,21,23;18:7,11,
13,16,20,25;19:1;
20:25;21:2;22:6,7,
13;25:11;29:4,15,17;
31:16;34:11;36:5;
38:17;40:15
**covered (6)**
20:23;21:13;22:1;
35:11;36:3;40:16
**covers (4)**
17:10;18:22;21:9;
23:3
**COVID (12)**
11:1,2,23;13:14;
32:24;33:1,3,10;
34:6,10,11;37:1
**COVID- (1)**
32:7
**COVID-19 (35)**
16:12;17:6;20:20;
21:5,18,24;22:22,24,
25;27:4,11,17,19,24,
25;28:3,4,6,11,15,
19;29:1,4;32:12;
35:11,14;36:2,19,23;

38:21,24;39:15,16;
40:12,18
**COVID-19's (1)**
40:20
**COVID's (1)**
39:21
**create (1)**
11:7
**crisis (1)**
27:23
**critical (1)**
12:15
**CULBERTSON (1)**
6:2
**cure (1)**
37:5
**curious (1)**
18:2
**curve (1)**
11:15
**customers (1)**
17:3
**cut (2)**
30:5;33:16

### D

**Dallas (1)**
12:23
**dangerous (2)**
17:7;39:21
**David (1)**
9:12
**day (4)**
32:23;39:24;
41:15;42:8
**DC (1)**
35:15
**deadly (1)**
27:5
**debtor (1)**
35:13
**decide (2)**
19:7;20:1
**decided (7)**
13:17;19:7;22:5;
28:17;29:18;38:8;
41:8
**decision (4)**
28:24;31:20;41:1,
23
**declaration (2)**
9:12;24:15
**declaratory (9)**
8:16;9:5;19:3;
29:20;30:6,8;31:12;
35:9;36:1
**declared (1)**
27:10
**defeat (1)**
7:20
**defeats (1)**
10:14

**defect (1)**
37:5
**defend (1)**
40:14
**Defendant (4)**
3:2;35:18;37:20,
23
**defendants (4)**
8:6;17:16;35:12;
41:21
**defendants' (1)**
41:25
**defense (5)**
37:9,12,13;40:14,
24
**defined (5)**
9:1,17,19;14:20;
31:16
**defines (1)**
8:18
**definition (5)**
16:16;20:17;
24:18,23,24
**Delaware (2)**
2:4;30:20
**delay (1)**
14:8
**delineated (1)**
36:15
**demonstrates (1)**
16:23
**denied (1)**
31:4
**deny (2)**
38:12;41:12
**described (1)**
35:22
**designed (1)**
11:11
**determine (1)**
9:2
**determined (4)**
21:2,3;30:12;
38:12
**devoted (1)**
8:10
**difference (1)**
8:25
**different (8)**
8:3;9:6.7;19:5;
29:12,24;33:20;
35:15
**direct (5)**
10:18;13:9;14:21;
33:7,7
**directly (25)**
7:23,25;9:15,16,
24;10:15;11:18;
14:3,18,19;15:12;
19:13,15;21:16,17,
21;22:3;23:14;24:9;
28:25;33:24;34:12;
36:7,19,25

**discharge (1)**
25:1
**discovery (6)**
14:8,9;19:22;
39:18,23;41:3
**discussed (3)**
28:21;33:3,4
**disease (11)**
27:5,13,14,15,20,
22;28:12;32:16,25;
38:20;39:9
**diseases (3)**
17:22;18:22;27:12
**dismiss (3)**
7:18;17:11;35:19
**dismissal (3)**
13:13;14:15;37:5
**dismissed (6)**
13:16;14:5,23;
16:2;33:9;34:15
**dismissing (1)**
7:21
**dispersal (3)**
20:19;22:12;25:2
**dispositive (1)**
20:9
**dispute (1)**
38:14
**disputing (1)**
32:25
**distinguishes (1)**
27:11
**District (2)**
30:20;41:22
**docket (3)**
9:11,18;18:12
**dollars (2)**
16:5;22:13
**done (1)**
39:5
**doom (1)**
7:19
**doors (1)**
41:11
**dots (2)**
24:2,11
**down (2)**
11:20,22
**downs (1)**
10:12
**draw (1)**
37:19
**drawn (1)**
38:6
**droplets (2)**
27:16;39:3
**due (11)**
15:3;18:7,11;
20:22;23:6,7,14,16;
28:25;35:10;40:11
**during (2)**
36:13;42:9

### E

**ECR (1)**
2:25
**effect (3)**
22:16;41:7,13
**either (4)**
10:17;11:1,6;
40:14
**elements (1)**
11:9
**else (3)**
20:7;21:23;33:16
**emission (1)**
25:2
**employees (5)**
11:1;13:2;17:3;
28:2;32:7
**employing (1)**
35:16
**end (1)**
14:17
**endorsement (4)**
16:19,20;22:11;
24:20
**endorsements (1)**
25:18
**Endura (1)**
5:3
**Endurance (1)**
5:20
**enough (5)**
19:17;21:22;
32:12,19;39:5
**ensure (1)**
38:7
**enter (1)**
41:13
**entered (2)**
7:22;41:18
**entirety (2)**
19:10;21:7
**entitled (1)**
38:2
**environment (3)**
16:10;22:12;25:6
**environmental (1)**
30:21
**escape (1)**
25:2
**especially (1)**
41:15
**ESQ (7)**
5:4,5,10,11,16,21;
6:4
**establish (1)**
19:23
**established (1)**
41:6
**establishes (1)**
38:1
**even (10)**

9:22;11:23;13:3,7,
7;31:17;38:15,22;
40:7,19
**event (4)**
18:24;19:1;29:15,
16
**events (1)**
22:15
**everyone (5)**
11:12;17:6;27:17;
33:21,23
**exclusion (4)**
18:8,12,15;29:5
**exclusions (5)**
9:23;10:4;18:18,
20;31:18,19
**exclusively (2)**
8:10;13:11
**Exhibit (3)**
8:21;9:18;24:15
**exist (1)**
8:13
**exists (1)**
8:12
**expected (1)**
22:14
**expense (1)**
36:13
**explained (1)**
37:24
**extent (7)**
10:9,10;31:18;
35:21;41:2,5,7
**extra (1)**
36:13

### F

**face (2)**
7:20;37:17
**facial (1)**
37:18
**facilities (2)**
12:6;32:19
**facility (1)**
11:20
**fact (10)**
17:14,24;18:23;
22:4;38:2,24;39:18;
40:10,25;41:2
**facts (5)**
14:13;17:9;38:5,
23;41:6
**factual (2)**
37:16,18
**fail (1)**
11:10
**failed (2)**
15:25;33:8
**fails (2)**
11:2;36:21
**failure (5)**
10:22;11:17,18;

37:9,12
**failures (2)**
11:17;13:12
**fairly (1)**
38:8
**fall (1)**
26:9
**falls (1)**
31:14
**fashion (1)**
38:7
**favor (1)**
22:7
**favorable (2)**
38:6;39:13
**Federal (8)**
7:15;12:15;13:17,
21;16:1;30:9;35:20;
37:8
**few (3)**
8:9;32:5;35:3
**Filed (4)**
3:3;14:11;35:8;
37:11
**find (1)**
12:10
**finder (3)**
38:24;39:18;41:3
**fine (1)**
34:7
**first (10)**
8:17,24;24:14,18;
27:4,18;30:16;33:15,
17;36:22
**Fitness (38)**
7:4;12:5;13:20;
15:2;16:4,5;17:18;
18:1;19:8;20:11,21;
21:5;28:1,8,11,20;
33:2;34:6;35:8,13,
25;36:16,17,18,21,
22,24;37:2,4;38:16,
19,22;39:1,20;40:1,
7,11,17
**Fitness' (4)**
35:20;39:14;40:4,
23
**flatten (1)**
11:14
**focus (1)**
9:9
**focused (1)**
24:6
**folks (1)**
35:2
**following (2)**
27:18;41:3
**forgive (1)**
35:7
**form (2)**
16:15,16
**formulaically (1)**
32:3

**forum (1)**
30:12
**forward (2)**
41:18;42:3
**frame (1)**
14:10
**Francisco's (1)**
12:18
**frankly (1)**
30:5
**freely (1)**
39:2
**front (1)**
24:2
**full (1)**
41:3
**fully (1)**
38:8
**fundamental (1)**
19:25
**funny (1)**
29:5

**G**

**gather (2)**
17:7;35:3
**gathered (1)**
7:3
**GELLERT (1)**
5:14
**given (3)**
14:18;28:12;35:5
**giving (2)**
35:3;40:23
**global (2)**
16:25;27:10
**goes (1)**
12:24
**Good (14)**
7:2,7,8,9,13,14;
15:6,16,17,19,20;
31:22;32:12,19
**government (9)**
10:11,14;11:12,
22;23:5;37:3;40:13,
16,22
**governmental (7)**
22:21,23,25;23:1;
29:7,10;34:5
**Governor (1)**
12:12
**granted (2)**
37:10;38:1
**green (1)**
11:9
**groundwater (1)**
25:5
**guess (2)**
32:22;34:1
**gyms (2)**
11:1;12:22,23;
40:6

**H**

**HADDAD (20)**
5:10;7:8,10,10,14;
12:2,4,9,12;14:25;
15:4,14;17:13;
19:14;30:3;31:6,7;
34:17,25;42:12
**HALPERN (1)**
5:11
**Health (4)**
27:9,20,22;35:13
**healthy (1)**
27:14
**hear (4)**
15:2,6;42:2,4
**heard (1)**
33:15
**hearing (3)**
18:3;41:16;42:10
**help (1)**
14:10
**helped (1)**
26:24
**helpful (2)**
26:23;38:11
**highlighted (2)**
10:20;32:6
**highly (2)**
27:5;39:2
**HINSHAW (1)**
6:2
**hole (3)**
13:21;15:22,22
**holiday (1)**
41:15
**home (1)**
12:18
**homes (1)**
12:13
**HON (1)**
2:22
**Honor (30)**
7:8,14,17;8:2;
13:14;14:15,17,22;
15:4,6,17,20,23;
16:18,23;20:20;
23:9;26:16;28:23;
29:19;30:5;31:4,7,8;
33:12,21;34:14,25;
41:24;42:6
**Honor's (1)**
31:22
**hope (3)**
38:7;42:8,8
**Hour (36)**
7:4;12:5;13:20;
15:2;16:4,5;17:18,
25;19:8;20:11,21;
21:5;34:6;35:8,20,
25;36:16,17,17,21,
22,24;37:2,4;38:16,

19,22;39:1,14,20;
40:1,4,7,11,17,23
**hundreds (1)**
36:16

**I**

**idea (1)**
26:5
**identified (2)**
13:3;32:20
**illness (2)**
11:14;32:10
**immediate (2)**
28:1;39:7
**important (1)**
18:23
**improper (1)**
17:23
**incidences (1)**
39:8
**incident (35)**
9:15,17,17,19,24;
11:25;14:3,20,20;
16:6,7,18;18:15,17;
19:13,23;20:3,12,14,
17;21:10,11,16,17,
18,22;24:9,24,25;
25:9,12,15;33:24;
36:7,8
**incidents (9)**
20:5;24:21;25:22:2,
2,4,10,17;28:10
**include (3)**
16:16;24:21;25:13
**included (1)**
8:20
**includes (13)**
16:7,9,10;20:13,
14,15,15,16,18,19;
24:19;26:16;36:8
**including (20)**
7:5;16:6,13,21;
17:16;18:6,20;19:5;
20:22;21:19;22:10;
25:4,5,8;28:7,13,19;
29:13;32:17;33:2
**income (6)**
16:6,21;21:9;
22:18,22;36:12
**incurs (1)**
36:13
**independent (1)**
31:3
**independently (2)**
23:7;40:11
**indicated (2)**
8:2;31:15
**indicating (1)**
17:5
**indication (1)**
41:22
**individuals (9)**

19,22;39:1,14,20;
40:1,4,7,11,17,23
17:7;20:22;28:5,
10,14;35:17;39:8,10;
40:3
**indoor (1)**
25:4
**indoors (1)**
16:11
**infected (10)**
11:24;17:6;20:22;
28:3,6;32:7,8,12;
39:8,10
**infectious (2)**
27:5,15
**infer (1)**
38:24
**inference (1)**
37:19
**inferences (1)**
38:5
**inform (1)**
31:19
**information (1)**
19:22
**infrastructure (1)**
12:15
**inside (4)**
12:13;20:11,13;
25:16
**instance (1)**
18:2
**instances (1)**
17:3
**Instead (2)**
11:11;16:18
**Insurance (24)**
5:20;6:3;7:4,12;
8:4,4,11,16,17;9:1;
13:18,25;14:13;
17:16,20,25;18:9;
22:6,9;24:2;30:21;
31:23;33:17;35:11
**insured (6)**
16:8;19:14;20:3,6,
10;36:13
**insured's (2)**
33:18;36:11
**insurers (8)**
18:4,5,24;19:6;
29:6,12,14,22
**insuring (11)**
8:1,18;9:9,23;
10:5;31:16,17,21;
32:14;33:22,23
**intended (2)**
22:10,14
**intent (1)**
22:16
**interesting (1)**
29:3
**interpreted (4)**
18:21;22:7,16;
29:20
**interrupt (3)**

12:2;23:20,24
**interruption (25)**
7:24;9:13,14,14;
10:9;12:1;13:10;
14:2,22;17:21;
19:13;21:21;22:3;
24:8,9;25:10,11;
28:22;34:13;36:2,6,
6,10,12,14
**into (3)**
24:13;25:3;28:5
**involve (2)**
15:24;17:14
**involves (6)**
8:5,6;16:12;17:1;
18:10,17
**involving (2)**
16:24;17:10
**issue (8)**
9:8;17:19;23:17;
30:2,25;36:1;38:2;
39:17
**issued (7)**
12:17;17:15,16,
17;23:13,14,16;
35:12;40:2
**issues (4)**
19:7;40:25;41:5,8
**item (1)**
41:19

**J**

**JAMES (1)**
5:21
**January (4)**
27:7,19;28:16;
39:11
**JMP (1)**
30:15
**job (1)**
41:2
**JUDGE (2)**
2:23;7:2
**Judgment (17)**
3:3;7:16,20;8:13,
16:9;5;21:3;30:17;
35:9,19;36:1;37:10,
25;38:3,4;41:4,8

**K**

**KAREN (1)**
2:22
**keep (2)**
7:25;14:1
**keeps (2)**
23:8,12
**kick (1)**
14:7
**known (1)**
14:13
**knows (1)**

39:7

**L**

**land (2)**
25:3,3
**language (3)**
7:25;13:25;22:8
**largely (1)**
28:4
**latter (2)**
19:21;37:5
**LAUREN (1)**
5:5
**law (29)**
8:13,24,24,25;9:3,
3,5,7;30:1,1,2,11,12,
13,14,16,24,24,25;
31:1,2;33:14,17,19,
20;38:3,14,15;41:5
**lawsuit (1)**
19:5
**lay (1)**
37:7
**least (7)**
18:6;19:18;20:25;
21:13;23:17;38:19;
40:10
**leave (1)**
12:14
**led (8)**
19:19;20:6;21:6,
11;27:24;28:20;
33:2,3
**length (1)**
35:7
**lengthy (1)**
40:21
**letting (1)**
13:22
**liability (2)**
8:5;35:23
**liable (1)**
37:20
**LIFLAND (1)**
5:5
**light (3)**
11:8;38:6;39:13
**Lines (1)**
6:3
**LISA (1)**
2:25
**litigated (2)**
20:8;23:18
**litigation (2)**
13:15;29:4
**little (1)**
35:6
**LLP (2)**
5:19;6:2
**located (3)**
20:21;28:14;32:18
**location (29)**

9:16,25;13:1,4,11;
16:8;19:14,17,23;
20:3,10,11;21:10,11;
24:10;25:12,14,17,
18;26:2,6,9,14;32:1;
33:25;34:7;35:23;
36:8,20
**locations (22)**
11:19;12:17;13:3;
19:18,19;20:6;21:5,
12,20;23:17;28:2,7,
8,12,20;30:22;33:2;
36:15,25;38:21;
39:16;40:1
**long (2)**
26:10;41:15
**longer (1)**
10:15
**look (13)**
8:9,17,19;9:22;
10:2;13:8;24:5,6,14,
23;25:18;35:3;41:18
**looked (2)**
10:20;18:3
**looking (6)**
9:23;15:11,11,12;
29:4;30:23
**looks (2)**
15:10,10
**lose (1)**
17:13
**loss (9)**
7:23;23:13;29:7,7,
8,8,10,11;36:12
**losses (22)**
16:6,7,21;17:21;
21:7,10,12,15,21;
22:3,10,18,22,23;
23:2,3,5;28:22;35:9;
36:2;40:16,23
**lot (8)**
8:3,3;20:16;26:12;
34:1,2,2,3
**lots (4)**
34:3,4,4,4
**LOVELAND (1)**
5:4

**M**

**main (1)**
16:15
**maintain (1)**
12:14
**makes (1)**
8:25
**many (2)**
13:20;15:25
**March (9)**
10:12;11:16;
19:20;23:10;27:9;
28:9,16,17;39:11
**Market (1)**

2:3
**material (1)**
38:1
**matter (14)**
8:13;9:19;10:1,24;
11:3,19,21;24:20;
32:11;37:16;38:3,
14;39:24;40:24
**May (4)**
3:3;14:8;37:11;
41:19
**maybe (1)**
34:1
**mean (7)**
11:24,24;20:2;
21:15,17;26:20;
36:12
**meaning (1)**
25:15
**means (3)**
23:16;33:25;36:10
**meantime (1)**
34:22
**medical (1)**
27:21
**meet (3)**
21:23;34:13,14
**members (6)**
10:25;13:1;28:2;
32:6,11;35:16
**mention (1)**
15:25
**mentioned (1)**
23:25
**MICHAEL (2)**
5:16;7:11
**microbial (9)**
9:19;10:1,23;11:3,
18,21;24:19,20;
32:11
**mid-March (1)**
39:25
**might (6)**
11:4,8,8;13:2;
32:3;33:14
**migration (22)**
16:9,12,22;17:1,
11;20:19,20;22:11;
23:3,4,6,8;24:3,11;
25:2,7,13,15;26:5,
13,24;29:1
**million (3)**
16:5;22:13;35:16
**minutes (3)**
34:21,24;35:3
**misconduct (1)**
37:20
**mistake (2)**
30:5;33:15
**moment (1)**
8:3
**moments (1)**
32:5

**months (1)**
27:18
**more (5)**
13:16;20:13;29:4;
37:22;39:15,17
**Moreover (3)**
21:4;22:1;38:21
**morning (11)**
7:2,7,8,9,13,14;
15:6,16,17,19,20
**most (6)**
16:11;25:1;28:15;
38:6;39:10,13
**Motion (33)**
3:2;7:15,17,18;
8:7,21,23;13:7,8;
17:12;20:2;21:3;
22:5;23:19;30:14,
17;31:1,2,4,20;
33:12;35:18,24;37:8,
10,15;38:3,9,11;
41:13,20,21,25
**mouths (1)**
29:13
**movant (2)**
7:6;38:1
**movement (1)**
42:2
**moving (2)**
31:13;36:16
**much (5)**
31:5;35:2;41:14;
42:7,10
**multiple (4)**
10:19;29:13;
30:21,22
**must (5)**
14:2;22:7,8;36:18;
37:15
**mute (1)**
34:23

**N**

**namely (2)**
38:21;40:16
**narrowly (1)**
18:21
**National (3)**
3:2;5:9,15
**naturally (1)**
25:6
**necessary (2)**
12:14;36:10
**need (7)**
19:16,23;29:18,
19;31:10,25;40:20
**needs (5)**
20:1,8;21:1,14;
23:18
**negate (1)**
40:10
**New (1)**

12:21
**Newsom (1)**
12:12
**next (2)**
41:19;42:4
**nice (1)**
42:8
**none (1)**
12:25
**nonessential (1)**
40:4
**Nonetheless (1)**
40:9
**nonmoving (2)**
38:6,8
**nor (1)**
10:18
**North (1)**
2:3
**notes (1)**
35:4
**notice (1)**
19:21
**number (6)**
11:2;16:19;18:12,
19;24:20;35:24

## O

**objects (2)**
27:16;39:4
**obtain (1)**
35:9
**obtained (1)**
18:1
**obvious (1)**
28:23
**obviously (4)**
13:17;22:14,23;
29:9
**O'CARROL (1)**
15:20
**O'Carroll (1)**
15:18
**occurred (2)**
11:16;19:20
**off (1)**
29:22
**once (1)**
10:13
**one (18)**
11:2;13:3;17:17;
21:11;24:7;29:20,22,
22;30:24;31:22;
32:21,21;33:11;34:5,
5;39:15,17;40:10
**only (3)**
8:7;12:13;19:21
**open (1)**
30:25
**opening (1)**
31:15
**operated (6)**

17:2;20:5;21:25;
23:15;28:1;35:14
**operates (3)**
16:13;21:19;35:13
**operations (5)**
36:11,18;37:3;
40:2,5
**OPERATOR (1)**
2:25
**opposed (3)**
11:4;13:1;35:6
**opposing (2)**
8:21;9:10
**opposition (3)**
8:23;13:7,8
**oral (1)**
7:3
**order (5)**
9:22;12:18;23:12;
41:13,17
**ordered (5)**
12:13,21,23;23:5;
40:5
**orders (29)**
10:11;12:6,16;
22:21,23,25;23:1,9,
13;28:20,24;29:8,11;
33:3,4,5;34:4,5,6;
37:4;40:2,3,8,9,11,
14,17,22;41:7
**Organization (1)**
27:10
**OTTERBOURG (2)**
5:8;7:10
**out (8)**
12:11;13:15;19:4;
23:9;26:12;29:13,
23;37:7
**outbreak (4)**
27:10;35:11,14;
36:2
**outcome (2)**
9:6;33:20
**outside (4)**
16:11;26:6,8,10
**over (3)**
7:6;29:25;35:3
**overall (1)**
17:25
**OWENS (2)**
2:22;7:3
**own (9)**
7:19,19;13:18,18;
14:4,13,19;30:8;
31:14

## P

**page (8)**
9:11,17,18;18:12;
24:15,15;30:20;
33:17
**pages (1)**

30:15
**pandemic (1)**
16:25
**papers (1)**
13:9
**paragraph (21)**
9:4,12;10:6,6,7,8,
8;12:9,12;27:4,7,9,
11,18;28:4,9,18;
32:6,15,24,25
**paragraphs (8)**
8:9;10:7,21;32:4;
38:19,23;39:19;40:7
**parking (5)**
26:12;34:1,2,2,3
**part (4)**
10:23;17:25;19:9;
40:15
**particular (9)**
13:1,3,11,12,24,
25;20:12;33:9,10
**parties (8)**
8:3;19:10;22:16;
24:6;31:19;35:23;
38:14;41:4
**parts (2)**
24:25;27:2
**party (4)**
37:9,12;38:7,8
**past (1)**
33:12
**paste (1)**
19:8
**pasted (1)**
30:5
**patience (1)**
41:16
**pay (2)**
9:13;24:7
**PC (1)**
5:8
**peg (3)**
13:21;15:22,22
**pending (1)**
35:8
**Pennsylvania (1)**
13:14
**people (11)**
11:4,15;13:1;
26:11,12;27:14;
31:9;32:3,9,18;39:3
**perform (1)**
12:14
**perhaps (3)**
19:4;25:24;41:21
**period (2)**
36:13;40:21
**permits (1)**
37:8
**person (4)**
12:19,19;27:6,6
**persons (1)**
27:12

**pervasiveness (1)**
20:4
**physical (2)**
13:5;26:11
**physically (2)**
38:24;39:16
**pick (1)**
19:9
**picked (1)**
22:20
**picking (1)**
29:21
**piecemeal (1)**
19:8
**plaintiff (21)**
9:4;12:7;13:19;
16:13;17:2;21:7,19,
22,25;22:20,22;23:7,
15;27:25;28:9,14,17,
21;32:18;35:12;
37:18
**plaintiffs (2)**
31:11;39:13
**plaintiff's (17)**
7:18,19;13:8;
16:13;21:20;23:1,5;
28:2,8,11,13,15,20;
32:7,17;33:2;41:11
**plausibility (2)**
37:18,21
**plausible (1)**
11:7;37:17;38:17
**play (1)**
24:13
**plead (14)**
10:13,17,22;11:3,
8,9,11,17,18;13:2;
19:16,17;34:3,4
**pleaded (18)**
9:21;10:2,6,10,16,
25;11:13,16,19;32:2,
22;33:5,9,17;34:2,3,
8,9
**pleading (13)**
10:3,4;13:24;14:4,
7,19;19:21;21:23;
31:8;32:24;33:8,16;
35:19
**Pleadings (15)**
3:3;7:16,19,20,21;
13:18;17:12;21:4;
22:5;23:18;30:18;
37:11,11;38:4,5
**pleads (1)**
37:18
**please (1)**
12:10
**pled (3)**
19:12;21:4,22
**podium (1)**
7:6
**point (3)**
12:3,11;23:9

**pointed (1)**
13:15
**points (1)**
32:5
**policies (14)**
8:4;17:16,18;18:5,
7,19,21,25;19:6;
29:19,23;31:10,18;
35:11
**policy (64)**
8:5,6,8,11,11,15,
17,19,22;9:1,2;
10:20;13:18,25;
14:13,21;15:24;16:3,
15,16,20;17:10,15,
19,19,24;18:9,14,16,
22;19:2;20:24;21:2,
8,9;22:6,8,9,15;23:2,
3;24:2,5,13;26:9;
29:6,22;31:9,11,12,
13,23;33:6,18;34:7,
12,13;35:22,24;36:3,
5,15;38:18;41:12
**pollutant (8)**
13:4;16:17;24:19,
24;25:3,8,8,13
**pollution (65)**
8:6,8,10;9:15,16,
17,18,24;10:16,18;
11:25;14:3,20,20;
16:6,7,17;17:15,24;
18:8,10,11,13,14,15,
17,18,24;19:1,2,13,
23;20:2,12,14,14,17,
23;21:10,11,16,17,
18,22;22:1,2,4,10;
24:9,24,25;25:9,12,
15;29:15,16;33:24;
35:22,23;36:3,5,7,8;
38:17;41:12
**population (1)**
28:5
**possibility (1)**
37:22
**possibly (1)**
14:10
**postdated (1)**
23:10
**prejudice (3)**
14:6,16;34:15
**premises (6)**
11:4,25;13:5;32:9,
10,11
**prepare (1)**
41:17
**prepared (1)**
35:5
**preparing (1)**
18:2
**presence (44)**
9:19,25;11:3,18,
21;13:12;16:8,22;
17:1,10;19:16;20:10,

13,18,22;21:4,18,24;
22:11,17,22,24,24;
23:3,4,6,7,14;27:25;
28:12,18;29:1;
32:16;33:1;36:9,19;
37:1;39:9,15,21;
40:12,18,20,21
**present (16)**
10:18;12:25;
19:18;25:6;28:11,
15;32:11,18,21;
33:10;36:23;38:20,
25;39:6,10,17
**presentation (1)**
41:3
**presentations (3)**
34:19;38:12;41:14
**presented (2)**
38:5;41:19
**prevail (2)**
19:24;30:17
**prevent (2)**
11:12,13
**prevented (1)**
40:3
**prior (1)**
35:14
**probability (1)**
37:21
**procedural (2)**
30:7,10
**Procedure (2)**
7:16;30:4
**proceeding (1)**
7:4
**proceedings (2)**
42:3,14
**professionals (2)**
17:5;27:21
**proffering (1)**
26:8
**program (1)**
17:25
**promised (1)**
35:4
**propensity (2)**
12:19;27:12
**properties (2)**
16:14;38:25
**property (9)**
17:15,17,20;18:4,
5,10,16,19,23
**proposed (1)**
14:6
**prove (1)**
39:23
**proves (1)**
14:4
**provide (1)**
16:24
**provided (1)**
25:5
**provides (5)**

17:20,21;22:13;
33:6;36:5
**providing (1)**
14:6
**provision (1)**
30:8
**provisions (2)**
18:20;22:7
**public (3)**
27:20,22;34:7
**purposes (1)**
23:2
**push (1)**
13:21
**put (1)**
30:6

**Q**

**quoted (1)**
9:10

**R**

**raise (1)**
37:9
**raised (2)**
8:23;37:13
**raises (3)**
19:16;37:12;40:14
**rampant (1)**
27:20
**Rather (1)**
37:1
**reached (1)**
27:7
**read (3)**
9:2;32:15,16
**reading (1)**
35:5
**reads (1)**
33:23
**really (5)**
9:7;15:21;31:19;
32:1,2
**reason (5)**
7:22;31:3,10;
33:21;40:17
**reasonable (1)**
37:19
**reasonably (1)**
38:24
**reasons (6)**
7:24;11:2;18:19;
34:8,14;36:22
**recall (1)**
11:15
**recalls (1)**
11:13
**Recess (1)**
35:1
**record (3)**
15:24;34:22;35:6

**recover (1)**
21:7
**red (1)**
11:8
**reduce (1)**
40:15
**reference (2)**
30:3;41:22
**regard (1)**
30:1
**regarding (1)**
40:13
**regardless (1)**
11:4
**regulatory (1)**
40:1
**release (1)**
25:2
**relevant (2)**
25:1;35:24
**relief (10)**
19:3;29:20;30:6,8;
31:12;35:21;36:17;
37:10,17;38:12
**relies (1)**
40:25
**remain (2)**
40:9,23
**remained (1)**
41:2
**remains (1)**
38:2
**remarks (1)**
31:15
**remedy (1)**
40:21
**remembered (1)**
34:8
**rendered (1)**
39:20
**reorganized (1)**
35:12
**reply (2)**
15:3;31:6
**represent (1)**
7:11
**requested (1)**
38:13
**require (2)**
13:12;20:10
**required (5)**
14:16;19:21;
33:20;37:3;38:4
**requirement (4)**
13:5;21:23;33:8;
37:21
**requirements (3)**
9:21;11:22;14:12
**requires (1)**
9:25
**resolved (4)**
20:9;21:14;29:21;
38:2

**respect (3)**
18:4;9;31:12
**rest (1)**
42:8
**result (6)**
10:11;21:15;34:6;
35:10;39:21,22
**resulted (1)**
28:21
**resulting (4)**
9:14;24:8;25:11;
36:6
**review (2)**
8:15,17
**reviewing (1)**
38:10
**rewrite (1)**
31:23
**RICHARD (2)**
5:10;7:10
**right (10)**
14:5;25:20,21,22;
26:7,23;32:3;35:2;
42:1,7
**rights (1)**
38:8
**ripe (1)**
14:5
**rise (2)**
16:17;40:23
**rises (1)**
31:13
**risk (1)**
27:17
**risks (1)**
10:3
**roamed (1)**
28:6
**round (3)**
13:21;15:22,22
**Rule (15)**
7:15,16,17;14:23;
30:9,10;32:2,13;
34:20;35:4,20;37:8,
25,25;38:9
**Rules (2)**
7:15;30:13
**ruling (3)**
20:9;35:5;37:7

**S**

**salient (1)**
27:3
**same (3)**
7:17;9:18;37:13
**San (1)**
12:18
**satisfy (3)**
14:12;32:14;33:8
**saw (1)**
18:5
**saying (7)**

15:14;18:4,24,25;
25:22;29:14,16
**SCALI (1)**
5:14
**scarce (1)**
17:5
**scheduled (21)**
9:16,25;21:10;
23:17;24:10;25:12,
14,17,17;26:2,6,9,
13,33:24;35:23;
36:8,15,20,25;39:16;
41:16
**scope (5)**
8:18;9:1,2;20:25;
31:15
**screens (2)**
15:9,13
**second (3)**
10:23;36:24;39:19
**section (1)**
30:4
**Securities (1)**
30:15
**seek (1)**
10:4
**seeking (1)**
9:4
**seeks (2)**
35:21,25
**seemingly (1)**
27:14
**seems (1)**
18:23
**seepage (1)**
25:2
**sense (1)**
39:13
**separate (3)**
17:18;18:5,9
**separately (1)**
30:23
**September (1)**
2:6
**serving (1)**
35:15
**set (1)**
15:13
**setup (1)**
15:15
**several (2)**
19:15;28:10;
35:11;39:8
**Shapiro (1)**
3:24
**Sharona (1)**
3:24
**sheer (1)**
37:22
**shelter-in-place (2)**
12:16;40:3
**show (4)**
13:19;14:9;21:20;

27:12
**shown (1)**
20:7
**shows (1)**
14:19
**shut (4)**
10:11;11:20,22;
34:9
**shutdown (4)**
12:6;33:11;37:4;
40:13
**shutdowns (2)**
10:14;11:11
**sides (1)**
29:13
**sight (1)**
17:14
**similarly (1)**
12:20
**single (3)**
19:5;29:19;32:21
**site (2)**
30:23,24
**sites (1)**
30:22
**situation (2)**
17:4;29:9
**slow (1)**
34:9
**sold (2)**
16:5;17:18
**sole (5)**
10:17;14:21;33:7,
7;35:25
**solely (25)**
7:23,25;9:15,16,
24;10:15;11:17;
14:3,18,19;19:13,15;
21:15,16,21;22:3;
23:14;24:7,9;28:25;
33:23;34:12;36:7,18,
25
**someone (1)**
11:23
**sorry (1)**
26:1
**sort (1)**
19:4
**sought (2)**
27:21;31:12
**speaking (1)**
27:16
**Specialty (1)**
5:20
**specific (5)**
10:5,5;11:20;17:2;
20:5
**specifically (8)**
12:5,7;16:7,18;
17:10;31:25;39:1;
40:5
**spread (15)**
11:14;12:19;16:9,

24;27:8,12,19,24;
28:4,19;29:1;33:1;
34:9;39:5,5
**spreading (2)**
20:23;27:15
**spreads (1)**
39:2
**square (3)**
13:21;15:21,22
**standard (8)**
7:17;19:21;32:13,
14;34:13,14;37:7,21
**standards (1)**
37:13
**Starr (1)**
6:3
**start (1)**
27:23
**started (1)**
14:18
**state (7)**
9:22;12:24;15:25;
27:22;33:20;37:12,
16
**States (3)**
2:2;27:20;35:15
**state's (1)**
30:13
**statute (2)**
30:6,7
**stay (2)**
12:13,18
**stay-at-home (2)**
12:16;40:2
**step (2)**
16:3;29:3
**steps (1)**
42:4
**still (1)**
30:25
**stop (1)**
27:24
**Street (1)**
2:3
**structure (4)**
25:3,16;31:25;
33:10
**structures (4)**
9:20;10:1,24;
36:10
**struggling (1)**
12:10
**study (1)**
13:19
**substantial (1)**
28:22
**substantive (1)**
30:11
**suffering (1)**
28:21
**sufficient (6)**
20:6;21:7,20;
37:16;38:23;39:14

**sufficiently (2)**
38:16;39:20
**suggest (1)**
39:15
**suggested (1)**
33:19
**suggestion (1)**
33:14
**suggests (1)**
31:22
**suits (1)**
13:16
**summary (2)**
41:4,8
**support (2)**
29:24;32:5
**supposed (2)**
11:9;19:6
**Sure (7)**
12:4;23:25;24:12;
25:23;26:4,7;41:18
**surfaces (1)**
39:3
**Surplus (1)**
6:3
**surrounding (4)**
16:10;28:1;39:7;
41:6
**survive (1)**
37:15
**suspected (3)**
11:1,6;28:10
**suspension (1)**
36:11
**sustained (1)**
35:10
**symptoms (1)**
27:13
**system (1)**
27:22

**T**

**talk (6)**
16:3;27:4,13;
28:24,24;34:1
**talked (2)**
15:23;30:3
**talking (2)**
18:14;29:13
**talks (1)**
25:1
**ten (2)**
34:21,24
**ten-minute (1)**
34:19
**term (2)**
20:11;36:8
**terms (2)**
13:18;31:14
**testing (1)**
17:4
**tethered (2)**

26:19,22
**Texas (1)**
12:23
**theory (2)**
26:6,7
**therefore (2)**
18:11;41:12
**therefrom (1)**
38:6
**thereof (1)**
39:22
**Third (1)**
37:24
**thorough (1)**
35:6
**thoughts (1)**
35:3
**three (1)**
24:25
**threshold (1)**
38:14
**throughout (13)**
10:8;13:22;16:12;
17:1;20:20;21:18,
24;27:25;28:6,7,19;
33:1;39:5
**times (2)**
19:15;24:1
**timing (1)**
41:23
**today (10)**
7:3,22;14:5;18:14;
34:20;38:12;41:11,
13,14,18
**today's (2)**
31:20,20
**together (3)**
17:7;19:6;29:20
**told (1)**
35:4
**top (1)**
10:22
**totality (1)**
39:12
**toto (1)**
40:15
**touching (1)**
27:16
**tracker (1)**
13:15
**Transcribed (1)**
3:24
**transmissible (1)**
39:2
**transmit (1)**
27:15
**transmitted (2)**
27:6;39:3
**trial (4)**
38:4,9;41:4,8
**trigger (1)**
12:1
**true (1)**

37:16
**trying (1)**
13:20
**turn (2)**
7:6;29:23
**twenty-five (2)**
16:5;22:13
**two (5)**
8:4;9:21;11:2,17;
36:22

**U**

**ultimate (2)**
7:22;39:18
**unable (1)**
27:23
**under (45)**
7:15,17;8:25;9:3,
5,15,25;12:1;13:5;
14:14,22,23;17:9,23;
18:13,25;19:1,14,20;
20:3,10,24;21:2,8;
23:16;24:10;25:12,
14,17;26:1,9,13;
30:9;32:13;33:11,20,
24;35:11,20;36:7,19;
37:13,15,25;38:17
**undetected (2)**
28:5,6
**unfair (1)**
19:8
**unique (1)**
17:9
**unit (1)**
29:19
**United (2)**
2:2;27:20
**University (1)**
13:14
**unknowingly (1)**
27:15
**unlawfully (1)**
37:23
**unless (1)**
38:1
**unlike (1)**
18:20
**unrestrained (1)**
27:24
**unsafe (1)**
39:21
**unsuspecting (1)**
28:5
**up (5)**
15:13;19:9;22:20;
24:3;32:22
**upon (5)**
9:7;10:5;13:18;
30:12;37:9
**urges (1)**
38:16
**Utilities (1)**

30:19

## V

**vacuum (2)**
17:24;19:9
**Various (2)**
12:16;40:2
**versus (1)**
30:1
**via (2)**
27:12;39:3
**video (1)**
34:23
**view (1)**
38:4
**viewed (2)**
7:17;8:11
**virus (39)**
12:19;16:8,9,24;
17:1,3;19:17,18;
20:4,11,13,18,19,23;
22:17;23:4,6,8,15,
16;25:9,13,15,25;
26:1,8;29:5,6,7,8,9,
11;31:24,24;32:21;
36:9;38:21;39:1,6
**viruses (9)**
16:16,20,22;
17:11;18:23;22:11,
12;23:4;24:21
**visiting (1)**
40:4

## W

**wait (2)**
42:2,4
**walking (1)**
26:11
**walks (1)**
11:23
**wants (1)**
34:1
**warranted (1)**
37:6
**Washington (2)**
12:24;35:15
**water (3)**
20:15;25:4,4
**way (3)**
15:9,13;16:20
**weekend (1)**
41:15
**Weiss (24)**
9:12;15:6,16,17,
21;23:20,21,23;24:4,
12,14,18,23;25:21;
26:3,10,16,18,21;
27:1;32:15;41:20,
24;42:6
**what's (1)**
29:11

**Whereupon (1)**
42:14
**widespread (3)**
28:12;32:16;39:9
**WILMERHALE (1)**
5:2
**Wilmington (1)**
2:4
**withdraw (2)**
41:21,21
**within (15)**
8:20;9:20;10:1,16,
24;16:13;20:4,14,18;
28:13;31:17;32:16;
33:25,25;36:9
**without (5)**
14:6;17:24;19:9;
22:24;38:22
**words (8)**
8:11,12,19,22;9:2;
14:17;19:15;31:9
**work (1)**
19:6
**World (29)**
3:2;5:9,15;7:12;
8:7,8;16:4,4,15,18,
23;17:15,17,17,18,
23;18:3,6,10,13,25;
19:12;22:14;23:2,8,
12;27:9;29:16;30:13
**World's (2)**
20:1;22:19
**writing (1)**
35:6

## Y

**year (1)**
11:16
**York (1)**
12:21

## 0

**0309-1873 (1)**
35:24

## 1

**1 (2)**
38:19;39:19
**10:02 (1)**
2:7
**10:48 (1)**
35:1
**11 (1)**
34:21
**11:01 (1)**
35:1
**11:11 (1)**
42:14
**11th (1)**
27:9

**12b6 (4)**
7:18;37:14,15,25
**12c (6)**
7:15,16;14:24;
35:20;37:25;38:9
**12h2 (1)**
37:8
**13 (1)**
3:3
**14 (1)**
35:14
**160 (1)**
24:16
**161 (2)**
9:11,18
**16th (5)**
19:20;23:10;
28:16,17;39:11
**19 (1)**
32:8
**19,000 (1)**
35:16

## 2

**20 (2)**
27:4;38:23
**2020 (10)**
10:12;19:20;
23:11;27:7,19;28:9,
16,16,17;39:11
**2021 (1)**
2:6
**2021] (1)**
3:3
**21 (2)**
27:7;38:23
**22 (1)**
27:9
**24 (37)**
7:4;12:5,12;13:20;
15:2;16:4,5;17:18,
25;19:8;20:11,21;
21:5;34:6;35:8,20,
25;36:16,17,17,21,
22,24;37:2,4;38:16,
19,22;39:1,14,19;
40:1,4,7,11,17,23
**25 (1)**
12:16
**26 (1)**
12:18
**27 (1)**
12:20
**28 (1)**
18:12
**29 (1)**
12:21

## 3

**3.4 (1)**
35:16

**30 (1)**
12:23
**31 (1)**
12:24
**35 (2)**
27:11;39:19
**350 (2)**
13:16;15:23
**36 (4)**
10:7;27:18;32:6;
38:23
**38 (1)**
28:4
**39 (4)**
10:7;28:9;32:15;
38:23

## 4

**40 (1)**
40:7
**41 (1)**
10:7
**43 (1)**
39:19
**435 (3)**
11:19;13:2;32:19
**445 (1)**
35:15
**48 (1)**
9:11
**49 (2)**
39:19;40:8

## 5

**5 (1)**
9:12
**56 (1)**
18:12

## 6

**6 (1)**
30:15
**60 (1)**
24:15
**61 (5)**
9:18;28:18;32:24;
33:1;38:20

## 7

**7 (3)**
2:6;30:16,20
**73 (1)**
9:4
**75 (1)**
3:3

## 8

**8 (2)**

32:2,13
**81-1 (2)**
9:11,18
**824 (1)**
2:3

## 9

**9 (2)**
16:19;24:20