# EXHIBIT 55

Matthew Piro
April 27, 2022

```
UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE
                                              Matthew Piro
                                              April 27, 2022
------------------------------------x
In re:                               Chapter 11
                                     Case No. 20-11558
                                     (KBO)

24 HOUR FITNESS WORLDWIDE,
INC., et al.,

                Debtors.
------------------------------------x
24 HOUR FITNESS WORLDWIDE, INC.,

                Plaintiff,

     v.                              Adv. Pro. No.
                                     20-51051 (KBO)

CONTINENTAL CASUALTY COMPANY;
ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY; STARR SURPLUS
LINES INSURANCE COMPANY; ALLIANZ
GLOBAL RISKS US INSURANCE COMPANY;
LIBERTY MUTUAL INSURANCE COMPANY;
BEAZLEY-LLOYD'S SYNDICATES 2623/623;
ALLIED WORLD NATIONAL ASSURANCE
COMPANY; QBE SPECIALTY INSURANCE
COMPANY and GENERAL SECURITY
INDEMNITY COMPANY OF ARIZONA,

                Defendants.
------------------------------------x
          DATE:  April 27, 2022

          TIME:  11:32 a.m.

     Video-recorded Deposition of MATTHEW

PIRO, on behalf of 24 Hour Fitness

Worldwide, Inc., taken by counsel for

defendant, held via Zoom videoconference,

before Roberta Caiola, a Notary Public of

the State of New York.
```

U.S. Legal Support | www.uslegalsupport.com

Matthew Piro
April 27, 2022

### Page 2

```
 1   REMOTE APPEARANCES:
 2
     REED SMITH LLP
 3   Attorneys for Plaintiff
        101 Second Street
 4      Suite 1800
        San Francisco, California 94105
 5      (415) 659-4787
     BY:  T. CONNOR O'CARROLL, ESQ.
 6        cocarroll@reedsmith.com
 7
     DLA PIPER LLP (US)
 8   Attorneys for Defendant Continental
     Casualty Company
 9      1201 North Market Street
        Suite 2100
10      Wilmington, Delaware 19801-1147
        (302) 468-5700
11   BY:  MATTHEW P. DENN, ESQ.
          MATTHEW S. SARNA, ESQ.
12        matthew.denn@us.dlapiper.com
          matthew.sarna@us.dlapiper.com
13
           - and -
14
     DLA PIPER LLP (US)
15      6225 Smith Avenue
        Baltimore, Maryland 21209-3600
16      (410) 580-3000
     BY:  BRETT INGERMAN, ESQ.
17        brett.ingerman@us.dlapiper.com
18         - and -
     PAUL, WEISS, RIFKIND, WHARTON
19   & GARRISON LLP
     Attorneys for Defendant Continental
20   Casualty Company
        1285 Avenue of the Americas
21      New York New York 10019
        (212) 373-3000
22   BY:  JACQUELINE MATYSZCZYK, ESQ.
23        jmatyszczyk@paulweiss.com
24
25
```

### Page 3

```
 1   REMOTE APPEARANCES (CONT'D):
 2
     ZELLE LLP
 3   Attorneys for Defendant QBE Specialty
     Insurance Company and General Security
 4   Indemnity Company of Arizona
        500 Washington Avenue South
 5      Suite 4000
        Minneapolis, Minnesota 55415
 6      (612) 359-4261
     BY:  ELIZABETH KNIFFEN, ESQ.
 7        EKniffen@zelle.com
 8
     MOUND COTTON WOLLAN & GREENGRASS LLP
 9   Attorneys for Defendant Allied World
     National Assurance Company
10      3 Greenway Plaza, Suite 1300
        Houston, Texas 77046
11      (281) 572-8353
     BY:  ANDREA A. ORTIZ, ESQ.
12        aortiz@moundcotton.com
13
     OTTERBOURG P.C.
14   Attorneys for Defendant Allied World
     National Assurance Company
15      230 Park Avenue
        New York, New York 10169
16      (212) 661-9100
     BY:  RICHARD G. HADDAD, ESQ.
17        rhaddad@otterbourg.com
          ANDREW S. HALPERN, ESQ.
18        ahalpern@otterbourg.com
19
     CLYDE & CO US LLP
20   Attorneys for Defendant Allianz Global
     Risks US Insurance Company
21      271 17th Street NW
        Suite 1720
22      Atlanta, Georgia 30363
        (404) 410-3184
23   BY:  MARLIE McDONNELL, ESQ.
          marlie.mcdonnell@clydeco.us
24
25
```

### Page 4

```
 1   REMOTE APPEARANCES (CONT'D):
 2
     ROBINSON & COLE LLP
 3   Attorneys for Defendant Liberty Mutual
     Fire Insurance Company
 4      777 Brickell Avenue
        Suite 680
 5      Miami, Florida 33131
        (786) 725-4119
 6   BY:  JOEL L. McNABNEY, ESQ.
          jmcnabney@rc.com
 7
 8   Also Present:
 9      MIGUEL EVANGELISTA, The Videographer
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

### Page 5

```
 1                Matthew Piro
 2         THE VIDEOGRAPHER:  Good
 3   morning.  We are on the record at
 4   8:32 a.m. on April 27, 2022.
 5         Please note that recording will
 6   continue to take place until all
 7   parties agree to go off the record.
 8         This is the video deposition of
 9   Matthew Piro in the matter of 24 Hour
10   Fitness Worldwide, Incorporated
11   versus Continental Casualty Company,
12   Case Number 20-11558.
13         This proceeding is being taken
14   remotely via Zoom video.
15         My name is Miguel Evangelista,
16   I am the videographer.  The court
17   reporter is Roberta Caiola.  We are
18   here from U.S. Legal Support located
19   at 1818 Market Street, Suite 1400,
20   Philadelphia, Pennsylvania 19103.  I
21   am not related to any party nor am I
22   financially interested in the
23   outcome.
24         Will the court reporter please
25   swear in the witness.
```

U.S. Legal Support | www.uslegalsupport.com          2 to 5

Exhibit 55 to Plaintiff's Appendix of Evidence       Page 938 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

Matthew Piro
April 27, 2022

Matthew Piro
April 27, 2022

Page 6

1  Matthew Piro
2  THE COURT REPORTER: The
3  attorneys participating in this
4  deposition acknowledge that I am not
5  physically present in the deposition
6  room and that I will be reporting
7  this deposition remotely.
8       They further acknowledge that
9  in lieu of an oath administered in
10 person, I will place the witness
11 under penalty of perjury. The
12 parties and their counsel consent to
13 this arrangement and waive any
14 objections to this manner of
15 reporting.
16      Please indicate your agreement
17 by stating your name and your
18 agreement on the record.
19      MR. DENN: Matt Denn from DLA
20 Piper agrees.
21      MR. O'CARROLL: This is Connor
22 O'Carroll on behalf of plaintiff. We
23 agree as well.
24 MATTHEW PIRO, called as a witness herein,
25 having been first duly sworn, is examined

Page 7

1  Matthew Piro
2  and testifies as follows:
3  EXAMINATION BY
4  MR. DENN:
5       Q. Good morning, Mr. Piro. How
6  are you this morning?
7       A. Good, thank you.
8       Q. My name is Matt Denn, part of
9  the fraternity of Matts, and I am with the
10 DLA Piper law firm. We represent
11 Continental Casualty and I'm going to be
12 taking your deposition today. You were
13 just sworn in by the court reporter, so
14 you're aware that you're testifying under
15 oath today just as you would be if you were
16 testifying in court?
17      A. I am.
18      Q. Great. Just a few sort of
19 preliminaries. I'm going to be asking you
20 a series of questions and if you don't
21 understand a question that I've asked you,
22 please just ask me to clarify the question
23 and I would be happy to do that for you.
24 If you answer a question, then of course
25 we'll assume that you've understood it. If

Page 8

1  Matthew Piro
2  at any point today you want to take a
3  break, please just let me know that and
4  obviously we would be happy to do that for
5  you.
6       As you know, we're doing this
7  deposition remotely and these remote
8  depositions can be a little bit challenging
9  if people are talking at the same time
10 because the court reporter is not in the
11 same room, so please just make sure that
12 you let me finish whatever question I'm
13 asking you before you try to answer it so
14 we're not talking over each other and I
15 will try to do the same. I will try not to
16 talk while you're talking, and if there
17 ever is a point where you feel like you
18 haven't had a chance to answer a question,
19 please just let me know that so we can make
20 sure that you have an opportunity to answer
21 any question as fully as you want to.
22      You know Mr. O'Carroll, your
23 attorney, and he may make some objections
24 to the form of the questions that I ask.
25 Unless he specifically tells you not to

Page 9

1  Matthew Piro
2  answer a question, then you can go ahead
3  and answer the question after he makes
4  whatever objection that he has to make.
5       You have a set of documents
6  with you that we sent to your attorneys
7  last night; correct?
8       A. I do. I have them printed in
9  front of me and I also have them on my
10 computer, if that's okay to review when we
11 may need to review ones that are pretty
12 hard to read in printed form.
13      Q. Sure. And we sent them over
14 identified by letter, so A, B, C. I'm
15 probably not going to use them exactly in
16 the order that they were sent. So at
17 various times during the deposition I will
18 just ask you to take out an exhibit with a
19 particular letter and then we'll just ask
20 the court reporter to mark it with a
21 number, just to make sure that we're all
22 looking at the same exhibit.
23      Most of the documents also have
24 a number at the bottom of them that were
25 stamped by your attorneys, so for those

U.S. Legal Support | www.uslegalsupport.com          6 to 9

Exhibit 55 to Plaintiff's Appendix of Evidence          Page 939 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

Matthew Piro
April 27, 2022

Page 50
1   Matthew Piro
2   A.   No, I would not say that that's
3   the most that we would do.  We had other
4   procedures, I don't recall all of them off
5   the top of my head, but in addition to
6   doing a deep cleaning we would close the
7   club and I believe we notified all of the
8   team members of a confirmed case so that
9   they could be aware, and I'm not sure when
10  we started the process, but I believe we
11  also had a process by which we were working
12  to notify the member population who used
13  the club at the time that there was a
14  confirmed case.
15        So there were several things
16  that we were doing to try to, when we had a
17  confirmed case, make sure even just from
18  a -- you know, from the standpoint of
19  making sure that, like, as a business if
20  we're aware of a confirmed case that it was
21  clear in those instances, since the
22  confirmed case had been reported to us,
23  that we were reacting appropriately and
24  doing everything that we could.
25     Q.   So the company believed that

Page 51
1   Matthew Piro
2   the virus was likely in all of its
3   facilities, but it only took those extra
4   steps if a customer or employee took the
5   initiative to inform the company that they
6   had tested positive?
7        MR. O'CARROLL:  Objection to
8     form.
9     A.   During that period of time we
10  were -- we were certainly very concerned
11  that COVID-19 was present in all of our
12  clubs because of the information that was
13  related to how contagious it was, and
14  because our typical club has anywhere
15  between, you know, 500 and 2,000, 2,500
16  people that walk through its doors on any
17  given day, so yes, we were very concerned
18  with that many people coming into our club
19  at any given day and how fast the virus
20  seemed to be spreading, that it was very
21  likely in all of our clubs.
22        However, given the fact that we
23  didn't even precisely know what to do about
24  it because there wasn't clarity on what
25  businesses should do, we did what we

Page 52
1   Matthew Piro
2   thought was best and probably was frankly
3   a -- well, we did what we thought was best
4   when we had a confirmed exposure, because
5   we felt very clearly that we had a high
6   level of responsibility to go above and
7   beyond when there was an instance that we
8   had a confirmed exposure reported.
9     Q.   In terms of protecting the
10  health and safety of members, what was the
11  difference between a confirmed exposure and
12  what I think you referred to as the concern
13  that the virus was likely present in all of
14  the clubs, what prompted the heightened
15  response to a confirmed exposure?
16        MR. O'CARROLL:  Objection to
17    form.
18    A.   You finished your question with
19  what prompted the response, which I think I
20  just answered.  Can you articulate your
21  question again, what you're specifically
22  asking?
23    Q.   Sure.  Why was there a
24  different response with a confirmed
25  exposure in comparison to all other clubs

Page 53
1   Matthew Piro
2   where you've testified that there was a
3   concern that the virus was likely present?
4        MR. O'CARROLL:  Objection.
5        Go ahead.
6     A.   I would say a couple of
7   reasons.  One, we didn't know, frankly,
8   what to do other than just do our best and
9   try to clean up high-touch areas as much as
10  possible in all of our clubs, as was
11  generally the common practice of most
12  businesses.  We were doing more I would say
13  than many businesses because of how much we
14  were being targeted by health departments,
15  as just the fitness industry and gyms.
16        However, we felt that there
17  was, you know, greater risk, frankly, to
18  the organization to show we were doing --
19  taking it very, very seriously when we had
20  a confirmed positive because, number one,
21  we knew then 100 percent with certainty,
22  and it wasn't just a grave concern, but
23  there was clear evidence that there was
24  COVID-19 present in a club, and we were
25  concerned also from the risk standpoint of

Matthew Piro
April 27, 2022

Page 254

1  Matthew Piro
2  Q.  Would it be accurate to say
3  that in those areas where clubs were
4  reopened in June of 2020, that case counts
5  were higher than they had been when the
6  clubs were closed in March of 2020?
7      MR. O'CARROLL:  Objection to
8      form.
9  A.  I would have to consult case
10  count-related data.  I don't have any
11  reason to disagree with that, but I don't
12  know off the top of my head what case count
13  was specifically in March versus what it
14  was in June.
15      MR. DENN:  Those are all the
16      questions that I have; thank you very
17      much for your patience.
18      MR. O'CARROLL:  Are we okay to
19      go off the record and conclude the
20      deposition?  I don't have any
21      questions; we'll reserve all our
22      questions.
23      Miguel, I think we're finished.
24      THE VIDEOGRAPHER:  Okay.  This
25      concludes today's deposition of

Page 255

1  Matthew Piro
2  Matthew Piro.  We're going off the
3  record at 3:31 p.m.
4      (Time noted:  6:32 p.m.
5  Eastern.)
6      (Off the video record.)
7      THE COURT REPORTER:
8  Mr. O'Carroll, you're ordering the
9  transcript?
10      MR. O'CARROLL:  Yes, we'll take
11  a rough draft.
12      MR. HADDAD:  We'll take the
13  rough draft as well.
14      THE COURT REPORTER:  You're
15  ordering the transcript; correct?
16      MR. HADDAD:  Sure.
17
18  _____
19          MATTHEW PIRO
20
21  Subscribed and sworn to before me
22  this_____day of_____20___.
23
24  _____
25

Page 256

1  Matthew Piro
2       C E R T I F I C A T E
3
4  STATE OF NEW YORK  )
5                     : ss
6  COUNTY OF BRONX    )
7
8      I, ROBERTA CAIOLA, a Certified
9  Shorthand Reporter, do hereby certify:
10      That MATTHEW PIRO, the witness whose
11  deposition is hereinbefore set forth, was
12  duly sworn by me and that such deposition
13  is a true record of the testimony given by
14  the witness.
15      I further certify that I am not
16  related to any of the parties to this
17  action by blood or marriage, and that I am
18  in no way interested in the outcome of this
19  matter.
20      IN WITNESS WHEREOF, I have hereunto
21  set my hand on May 5, 2022
22
23      _Roberta Caiola_
24      ROBERTA CAIOLA
25

Page 257

1  Matthew Piro
2              INDEX
3  EXAMINATION OF MATTHEW PIRO          PAGE
4   BY MR. DENN                            7
5
6  PIRO       DESCRIPTION               PAGE
7  Exhibit 1  Emails Bates-stamped        68
8             24HF_Production_0202587 to
9             24HF_Production_0202590
10  Exhibit 2  Email Bates-stamped         74
11             24HF_Production_0081994
12  Exhibit 3  Email with attachment, Bates- 82
13             stamped 24HF_Production_0195718
14  Exhibit 4  Emails Bates-stamped        99
15             24HF_Production_0205006 to
16             24HF_Production_0205009
17  Exhibit 5  Emails Bates-stamped       104
18             24HF_Production_0194800
19  Exhibit 6  Emails Bates-stamped       114
20             24HF_Production_0215237 to
21             24HF_Production_0215240
22  Exhibit 7  Emails Bates-stamped       120
23             24HF_Production_0203985 to
24             24HF_Production_0203988
25

U.S. Legal Support | www.uslegalsupport.com    254 to 257

Exhibit 55 to Plaintiff's Appendix of Evidence    Page 941 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment