# EXHIBIT 56

```
          IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF DELAWARE

   IN RE                          )
                                  )
   RS FIT NW LLC,                 )
                                  )
          DEBTOR.                 )
   _____  )
                                  )
   24 HOUR FITNESS                )
   WORLDWIDE, INC.,               )
                                  )
          PLAINTIFF,              )
                                  )
   V.                             )   CHAPTER 11
                                  )
   CONTINENTAL CASUALTY           )   CASE NO.: 20-11558
   COMPANY; ENDURANCE             )   (KBO)
   AMERICAN SPECIALTY             )
   INSURANCE COMPANY; STARR       )
   SURPLUS LINES INSURANCE        )
   COMPANY; ALLIANZ GLOBAL        )
   RISKS US INSURANCE             )
   COMPANY; LIBERTY MUTUAL        )
   INSURANCE COMPANY;             )
   BEAZLEY-LLOYD'S                )
   SYNDICATES 2623/623;           )
   ALLIED WORLD NATIONAL          )
   ASSURANCE COMPANY; QBE         )
   SPECIALTY INSURANCE            )
   COMPANY; AND GENERAL           )
   SECURITY INDEMNITY             )
   COMPANY OF ARIZONA,            )
                                  )
          DEFENDANTS.             )
   _____  )


            ORAL DEPOSITION OF MELANIE WOLSKI,
                PERSON MOST QUALIFIED FOR
         ALLIANZ GLOBAL RISKS US INSURANCE COMPANY
                     OCTOBER 28, 2022



   REPORTED BY: CHRISTINE E. SPERBECK, CSR, RPR

   JOB NO. 77332
```

First Legal Depositions - Calendar@firstlegal.com
855.348.4997

First Legal Depositions - Calendar@firstlegal.com
855.348.4997

**MELANIE WOLSKI**

October 28, 2022

### Page 2

```
 1      ORAL DEPOSITION of MELANIE WOLSKI, produced as a
 2   witness at the instance of the Defendant, and duly
 3   sworn, was taken in the above-styled and numbered cause
 4   on October 28, 2022, from 12:14 P.M. CST to 4:30 P.M.
 5   CST, before Christine Sperbeck, CSR in and for the State
 6   of California, reported by machine shorthand, remotely
 7   via Microsoft Teams videoconferencing, with all parties
 8   appearing from their respective homes and/or offices,
 9   pursuant to the Federal Rules of Civil Procedure.
```

### Page 3

```
 1                    A P P E A R A N C E S
 2        (ALL APPEARANCES VIA MICROSOFT TEAMS VIDEOCONFERENCE)
 3
 4   FOR THE PLAINTIFF 24 HOUR FITNESS WORLDWIDE, INC.:
 5            REED SMITH, LLP
              BY: NATALIE OCHOA, ESQ.
 6            101 SECOND STREET, SUITE 1800
              SAN FRANCISCO, CA 94105
 7            (415) 543-8700
              NOCHOA@REEDSMITH.COM
 8
 9   FOR THE DEFENDANT ALLIANZ GLOBAL RISKS US INSURANCE
     COMPANY:
10
              CLYDE & CO.
11            BY: MARLIE MCDONNELL, ESQ.
              271 17TH STREET NW, SUITE 1720
12            ATLANTA, GA 30363
              (404) 410-3150
13            MARLIE.MCDONNELL@CLYDECO.US
14   FOR THE DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY:
15            ROBINSON & COLE
              BY: JOEL MCNABNEY, ESQ.
16            777 BRICKELL AVENUE, SUITE 680
              MIAMI, FL 33131
17            (786) 725-4119
              JMCNABNEY@RC.COM
18
19   FOR THE DEFENDANT ALLIED WORLD NATIONAL ASSURANCE
     COMPANY:
20
              MOUND COTTON WOLLAN & GREENGRASS, LLP
21            BY: ANDREA ORTIZ, ESQ.
              THREE GREENWAY PLAZA, SUITE 1300
22            HOUSTON, TX 77046
              (281) 572-8350
23            AORTIZ@MOUNDCOTTON.COM
24
25   (CONTINUED ON NEXT PAGE)
```

### Page 4

```
 1   FOR THE DEFENDANTS STARR SURPLUS LINES INSURANCE COMPANY
     AND BEAZLEY-LLOYD'S SYNDICATES 2623/623:
 2   ALSO PRESENT:
 3            HINSHAW LAW
              BY: FERDUSI CHOWDHURY, ESQ.
 4            800 THIRD AVENUE, 13TH FLOOR
              NEW YORK, NY 10022
 5            (212) 471-6200
              FCHOWDHURY@HINSHAWLAW.COM
 6
 7   FOR THE DEFENDANT CONTINENTAL CASUALTY COMPANY:
 8            DLA PIPER
              BY: MATTHEW DENN, ESQ.
 9            1201 NORTH MARKET STREET, SUITE 2100
              WILMINGTON, DE 19801
10            (302) 468-5700
              MATTHEW.DENN@US.DLAPIPER.COM
11
12   ALSO PRESENT:
13            JOEL CARRETER, VIDEOCONFERENCE TECHNICIAN
```

### Page 5

```
 1                       I N D E X
 2   APPEARANCES                                           2
 3   MELANIE WOLSKI
 4       EXAMINATION BY MS. OCHOA                          7
 5
 6   REPORTER'S CERTIFICATE                              138
 7
 8
 9               E X H I B I T S
10   NO.         DESCRIPTION                            PAGE
11   EXHIBIT A   PLAINTIFF'S AMENDED NOTICE OF            12
                 30(B)(6) DEPOSITION TO ALLIANZ
12               GLOBAL RISKS US INSURANCE
                 COMPANY
13
     EXHIBIT B   DOCUMENT BATES-LABELED                   35
14               AGRUS000352
15   EXHIBIT C   DOCUMENTS BATES-LABELED                  42
                 AGRUS000365-000383
16
     EXHIBIT D   DOCUMENTS BATES-LABELED                  49
17               AGRUS000400-000401
18   EXHIBIT E   DOCUMENTS BATES-LABELED                  59
                 AGRUS000288-000351
19
     EXHIBIT F   ALLIANZ DOCUMENT TITLED                  82
20               "COVID-19 CHANGING CLAIMS
                 PATTERNS"
21
     EXHIBIT G   DOCUMENTS BATES-LABELED                  86
22               AGRUS000402-000406
23   EXHIBIT H   DOCUMENTS BATES-LABELED                  88
                 AGRUS000428-000443
24
25   (CONTINUED ON NEXT PAGE)
```

First Legal Depositions - Calendar@firstlegal.com
855.348.4997                                            2 to 5

Exhibit 56 to Plaintiff's Appendix of Evidence          Page 943 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

**MELANIE WOLSKI**

October 28, 2022

### Page 6

```
1    EXHIBIT I      DOCUMENTS BATES-LABELED           95
                    AGRUS000446-000455
2
     EXHIBIT J      DOCUMENTS BATES-LABELED          108
3                   AGRUS000467-000479
4    EXHIBIT K      DOCUMENTS BATES-LABELED          119
                    AGRUS000482-000494
5
     EXHIBIT L      DOCUMENTS BATES-LABELED          120
6                   AGRUS000502-000518
7    EXHIBIT M      DOCUMENTS BATES-LABELED          123
                    AGRUS000521-000535
8
     EXHIBIT N      DOCUMENTS BATES-LABELED          125
9                   AGRUS001005-001011
10   EXHIBIT O      DOCUMENTS BATES-LABELED          132
                    AGRUS000541-AGRUS000563
11
12
13
14
15          QUESTIONS INSTRUCTED NOT TO ANSWER
16                  PAGE        LINE
17                   75          2
18                  107          18
19                  121          16
20                  129          21
21
22
23
24
25
```

### Page 7

```
1                 OCTOBER 28, 2022
2            12:14 P.M. CST - 4:30 P.M. CST
3                      ---o0o---
4
5                   MELANIE WOLSKI,
6            HAVING BEEN FIRST DULY SWORN,
7         WAS EXAMINED AND TESTIFIED AS FOLLOWS:
8
9                     EXAMINATION
10   BY MS. OCHOA:
11      Q  Good morning.  My name is Nat Ochoa, and I'm
12   representing 24 Hour Fitness in this case.
13         How are you?
14      A  Good.  How are you?
15      Q  Doing well.
16         Can you please state and spell your full name
17   for the record.
18      A  Melanie Wolski, M-e-l-a-n-i-e; and then Wolski
19   is W-o-l-s-k-i.
20      Q  Is it okay if I call you Ms. Wolski throughout
21   the deposition?
22      A  Yes.
23      Q  Great.
24         Are you in your office or at home today?
25      A  I'm at home.
```

### Page 8

```
1       Q  And did your office physically shut down during
2    the pandemic?
3       A  I don't know if it actually shut down, but we
4    were just encouraged to work from home.
5       Q  Okay.  So there wasn't a formal, like, you
6    can't come into the office for X amount of months or X
7    amount of weeks?
8       A  I don't remember.
9       Q  Okay.  Do you remember just generally what the
10   COVID protocol was for your company?
11         MS. MCDONNELL:  Object to the form.
12         THE WITNESS:  In regards to the office or just
13   working or --
14   BY MS. OCHOA:
15      Q  Just, like, your -- if someone tests positive
16   for COVID, you're not able to go into the building or
17   anything like that?
18      A  Yeah, if we tested positive, we obviously
19   wouldn't be able to go into the building.  And then I
20   think if we were to enter the building, we were required
21   to wear a mask.
22      Q  Cool.  Okay.
23         So I'd like to go over a couple of ground rules
24   relating to the fact that the deposition is remote.
25         Can you affirm that you won't use any text
```

### Page 9

```
1    messages, chats, e-mails, or any other form of
2    communication while testifying today?
3       A  Yes.
4       Q  Can you affirm that you won't review any notes
5    or any other documentation while testifying except for
6    the exhibits that I ask you to pull up?
7       A  Yes.
8       Q  And did you bring any notes with you today?
9       A  No.
10      Q  Is anyone in the room with you?
11      A  No.
12      Q  If at any point someone joins you in the room,
13   make sure to just let me know and we can disclose their
14   presence and then move forward after they exit.
15         Does that make sense?
16      A  Yes.
17      Q  Have you ever given any testimony before?
18      A  Yes.
19      Q  And was that at a deposition or a trial?
20      A  A deposition.
21      Q  How many times would you say?
22      A  I would say at least five.
23      Q  And generally what did those matters relate to?
24      A  Property insurance claims.
25      Q  Any involving COVID-19?
```

First Legal Depositions - Calendar@firstlegal.com         6 to 9
855.348.4997

Exhibit 56 to Plaintiff's Appendix of Evidence         Page 944 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

**MELANIE WOLSKI**

October 28, 2022

Page 66

1   access to the building even if it doesn't say
2   specifically, "You can't go in and out of the building"?
3       A   Say that again.
4       Q   If a government order says something like, "You
5   must shut down your facility," is that enough to
6   constitute prohibiting access, as opposed to a
7   government order like the example you gave saying, "We
8   are prohibiting from you leaving or coming into a
9   building"?
10          MS. MCDONNELL:  Object to the form.
11          THE WITNESS:  I think I would just have to read
12  the entire order and, like, what it says.
13  BY MS. OCHOA:
14      Q   You can't tell me one way or another if an
15  order in a situation said, "You have to shut down your
16  facility under this policy provision," whether that
17  would constitute prohibiting access?
18      A   Just because you have to shut down, like, say
19  the business operations doesn't mean that someone can't
20  enter or leave the building.  That's kind of two
21  different things of what you're -- what you just said.
22      Q   Okay.  So to your -- it's your understanding
23  that saying something like, "You must shut down your
24  facility," as opposed to, "You can't go in and out" --
25  those are two different things?

Page 67

1       A   Correct.
2       Q   Okay.  And the policy in -- to your knowledge,
3   is meant to cover the latter, the -- "You can't go in
4   and out of the building"?
5       A   What do you mean "the latter"?
6       Q   Like, it -- it applies to -- we gave the two
7   examples where they're different, the -- "You have to
8   shut down your facility," versus, "You can't go in and
9   out of the building."
10          To your knowledge, it's your understanding that
11  the policy is meant to cover the -- "You can't go in and
12  out of the building"?
13      A   Yeah.  That's prohibited access.
14      Q   Okay.  If we could look at Subdivision (a), it
15  says, "Due" -- so, "All coverage above must be directly
16  resulting from access being prohibited to a described
17  location or any portion thereof, (a) Due to the actual
18  presence of and the spread of communicable diseases at
19  the described location."
20          So just looking at (a) there, do you agree that
21  if someone infected with COVID-19 entered a location,
22  that that would mean that COVID-19 would be present at
23  the location?
24          MS. MCDONNELL:  Object to the form.
25          THE WITNESS:  Not necessarily.

Page 68

1   BY MS. OCHOA:
2       Q   Why not?
3       A   I think that there needs to be a timeline of
4   when they entered the location as well as, you know,
5   say -- also if they tested positive -- tested positive
6   and also when -- in regards to when they tested positive
7   when they entered the location.
8       Q   What about if someone hypothetically tested
9   positive, is positive for COVID-19, walks into a 24 Hour
10  Fitness location?  Would you agree that then COVID-19 is
11  at the 24 Hour Fitness location if they were actively
12  positive for COVID-19?
13      A   Yes, it could be.
14      Q   What do you mean by "it could be"?  When
15  couldn't it be?
16      A   I mean, it just depends on the circumstances.
17  I mean, if they're sitting there -- if they're walking
18  in and walking out, it doesn't necessarily mean -- are
19  they wearing a mask?  It -- it just depends.
20      Q   So it doesn't necessarily -- just because --
21  it's your understanding that if someone has COVID and
22  they walk into a building, whether or not the
23  building -- whether or not that location -- excuse me.
24          If someone walks into a building actively with
25  COVID-19, whether or not that location would have the

Page 69

1   presence of COVID would depend upon certain things such
2   as if they were wearing a mask or if they just walked in
3   or walked out?
4       A   I mean, like I said, it could be present.
5       Q   I'm just trying to figure out when you're
6   saying what that could and could not be present.  So --
7   and you -- you said that it could be present unless
8   they, like, walked in and out of the building or there
9   was a circumstance like they were wearing a mask.
10          So I'm trying to figure out if a person
11  actively with COVID-19 walks into a 24 Hour Fitness
12  location, when would that mean that the location has the
13  presence of COVID-19, in what circumstance?
14      A   There could be the presence of COVID-19 there.
15      Q   Right.  But when couldn't there be, then?
16  Like, when would a person that actively has COVID,
17  walked into a premises -- when wouldn't there be the
18  presence of COVID at that premises then?
19          MS. MCDONNELL:  Object to the form.
20          THE WITNESS:  I'm not sure.
21  BY MS. OCHOA:
22      Q   Okay.  So according to this endorsement, there
23  may be a situation where someone is actively infected
24  with COVID-19, walks into a premises, COVID-19 may be on
25  those premises -- it may not, but you're not sure of any

First Legal Depositions - Calendar@firstlegal.com    66 to 69
855.348.4997

Exhibit 56 to Plaintiff's Appendix of Evidence    Page 945 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

**MELANIE WOLSKI**                                October 28, 2022

Page 70

1 other situation where it would not?  Like, you can't
2 recall that distinction then?
3      A  Correct.  But again, like I said, they would
4 have to have a test -- a positive test and then walk
5 into the premise.  We would need to know the timeline
6 and that they did, in fact, test positive.
7      Q  So if a person tested positive for COVID on a
8 Monday -- for COVID on Monday and walked into a gym on
9 Tuesday or Wednesday, would that mean that there is the
10 presence of COVID-19 in the gym?
11     A  It depends on the circumstances.  That could
12 have been the last day that they had COVID when they got
13 tested.  I would say it would have to be the exact same
14 day.
15     Q  Okay.  So they would have to -- in order for
16 COVID to be on the premises, the person would have to
17 be -- test positive for COVID and walk into the gym that
18 same day?
19     A  Yes.
20     Q  Okay.  Have you ever consulted anyone to figure
21 out what type of information a policyholder would need
22 to present to satisfy this kind of endorsement?
23     A  In regards to this particular endorsement?  I
24 would say -- examples would be that there has to be an
25 actual presence of and spread of; there has to be some

Page 71

1 order saying that access is prohibited; and then there
2 also has to be -- the insured has to incur clean-up
3 costs.
4      Q  Okay.  So those are the things that you just
5 listed would need to be satisfied, the evidence that
6 would need to be shown to satisfy this endorsement?
7      A  Yes, I would say those are examples.
8      Q  And those examples that we talked about before
9 with regard to these specific things is, one, access
10 would need to be prohibited, i.e., you can't go in and
11 out, as you said; two, it has to be at a described
12 location, which you said it has to refer to a specific
13 building or have an address; and three, there has to be
14 the actual presence, i.e., a person has to actively have
15 tested positive and walked into the gym that day, right?
16         MS. MCDONNELL:  Objection.  She said those are
17 examples, so please don't mischaracterize the testimony.
18 BY MS. OCHOA:
19     Q  Is that -- is that correct, what I just
20 described?  Is that an example of what would satisfy
21 this endorsement?
22     A  And then I think the other example I gave was
23 they would have to incur clean-up costs.  I don't think
24 you said that.
25     Q  And -- okay.  And incur clean-up costs; is that

Page 72

1 accurate?
2      A  Those are examples.
3      Q  What are other examples that would satisfy this
4 endorsement besides what I just mentioned?
5      A  That's all I can think of right now.
6      Q  Okay.  And have you -- did you ever consult
7 anyone else about what a policyholder would need to
8 satisfy for this particular endorsement?
9      A  No.
10     Q  And did you ever -- you didn't ever discuss
11 with Mr. Allen the information that 24 Hour Fitness
12 could provide; is that right?
13     A  Correct.  I never spoke to him.
14     Q  And none of the other insurers, right?
15     A  Correct.
16     Q  What about Ms. Reyes?
17     A  I don't think I spoke to Ms. Reyes on this
18 particular endorsement.
19     Q  Are you aware that 24 Hour Fitness sent
20 information to the insurers about individuals that
21 tested positive for COVID-19 that were at 24 Hour
22 Fitness's premises?
23     A  I -- they didn't test positive.  It was
24 presumed that they were infected and at the location.
25 It wasn't confirmed.

Page 73

1      Q  In every -- in every instance you're saying it
2 wasn't confirmed?
3      A  The ones that the insured provided.
4      Q  And where are you getting that information
5 based off of?
6      A  That was in one of the -- that was part of the
7 claims file, and it was part of the answer to one of the
8 RFIs.
9      Q  So is it your understanding that 24 Hour
10 Fitness did not provide one instance where someone
11 tested positive for COVID-19?
12         MS. MCDONNELL:  Object to the form.
13         If she's referring to a document in the list,
14 I'd prefer if we pulled it up.
15 By MS. OCHOA:
16     Q  I'm just asking right now based off of your --
17 and we'll -- we'll pull it up.
18         But based off of your understanding right now,
19 you don't recall 24 Hour Fitness ever providing a
20 positive -- an instance of a positive test?
21     A  It might have been positive, but they weren't
22 then on the premise.  I mean the timeline was off.  I
23 would like to see it in front of me.
24     Q  Okay.  We'll pull -- we'll pull it up.  I'll --
25 I'll get there.

**MELANIE WOLSKI**

October 28, 2022

Page 126

1  Q  Do you know who Odell Bradley is?
2  A  No.
3  Q  You've never heard of him before or worked with
4  him before in any capacity?
5  A  Not that I can recall.
6  Q  I'll represent that he is the adjuster for CNA
7  or the claims handler for CNA.
8     If we go to Bates 001008 --
9  A  Okay.
10 Q  In that e-mail that you can see on the screen,
11 it's from Odell Bradley, sent June 25th, 2020, to Mike
12 Allen and the insurer representatives.
13    MS. OCHOA:  And if we could scroll down,
14 just -- thank you.  Keep scrolling if you can.  That's
15 good.
16 BY MS. OCHOA:
17 Q  It says, "Market, after further review of
18 endorsement for interruption by communicable disease, I
19 believe it is best to engage coverage counsel moving
20 forward."  And then it appears that he copies the
21 interruption by communicable disease endorsement and
22 that it continues on to 001009, if we could scroll down.
23    And he writes, "There seems to be a good chance
24 business interruption coverage will be triggered.  I
25 think we all agree.  However, there is a question based

Page 127

1  on language of the endorsement that is not
2  straightforward specifically speaking to business
3  interruption."
4     This e-mail was written in June of 2020, June
5  25th, 2020.  This was after the insurers had already
6  received a number of rounds of responses to information
7  requests from 24 Hour Fitness that we already looked at,
8  right?
9  A  Yes.
10 Q  And is it your understanding that Mr. Bradley's
11 comment reflects that there seems to be a good chance of
12 business interruption as triggered based -- was that
13 based on the information that the market had at that
14 point?
15 A  Say the question again.  I'm sorry.
16 Q  No worries.
17    His comment that there seems to be a good
18 chance that business interruption coverage was
19 triggered -- was that, to your knowledge, based upon
20 information that the market had at that point?
21 A  I don't exactly know what he meant when he said
22 that.
23 Q  So you don't know what he meant when he said
24 there's a good chance that business interruption
25 coverage will be triggered?

Page 128

1  A  Yeah, meaning I don't know why he said that or
2  what he meant by that.
3  Q  You just know that it was after having received
4  a bunch of information from 24 Hour Fitness and the
5  market having discussions about the claim?
6  A  What's the question?
7  Q  You don't know what he meant by this, correct?
8  You just know that this e-mail was sent after the market
9  had discussions and after 24 Hour Fitness provided
10 responses to information requests?
11 A  Yeah, but what he said is he didn't speak on
12 behalf of the market.  But yeah, so it was after the
13 insured -- according to the dates it was after the
14 insured submitted the communications that they did to
15 the independent adjuster.
16 Q  When he says, "I think we all agree," who do
17 you -- who is he referring to when he says "we," do you
18 think?
19 A  I don't know.
20 Q  Could it be the other market insurers on this
21 e-mail?
22 A  Well, it seems that no one responded to this
23 e-mail.
24 Q  I was going to ask about that.
25    Why do you think an adjuster for Allianz would

Page 129

1  not respond to an e-mail from a market insurer about a
2  coverage determination if they don't agree with the
3  position?
4     MS. MCDONNELL:  Object to the form.
5     If you know.
6     THE WITNESS:  I feel like if she -- if she
7  agreed, she would have responded that she agreed, but
8  she didn't respond.
9  BY MS. OCHOA:
10 Q  So if she agreed, she would have responded; but
11 if she didn't agree, you wouldn't respond?
12    MS. MCDONNELL:  Object to form.
13    THE WITNESS:  I don't know why she didn't
14 respond.  But she didn't say anywhere that she did
15 agree.
16 BY MS. OCHOA:
17 Q  She didn't say anywhere that she did agree and
18 she didn't say anywhere that she didn't agree?
19 A  No.  I just said she didn't respond saying that
20 she agreed to that statement.
21 Q  Would you think it's important, if someone like
22 you evaluating coverage determination -- if you didn't
23 agree with an insurer's coverage analysis, to respond
24 and say that you did not agree?
25    MS. MCDONNELL:  Object to the form.  It's

First Legal Depositions - Calendar@firstlegal.com        126 to 129
855.348.4997

Exhibit 56 to Plaintiff's Appendix of Evidence            Page 947 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

## MELANIE WOLSKI
October 28, 2022

**Page 134**

1  BY MS. OCHOA:
2  Q   Is it Allianz's position that it's not
3  important to respond to an e-mail where another insurer
4  makes a coverage determination that Allianz does not
5  agree with?
6  A   I mean, they don't necessarily have to tell the
7  market what their coverage position is, because at the
8  end of the day they go by, you know, what their policy
9  says and what the coverage is.  And they can write their
10 own coverage letter like, for example, Sompo did.
11 Q   So would you say that it's Allianz's position
12 that it's not important to respond to a coverage
13 determination e-mail by a different insurer if Allianz
14 disagrees with it?
15     MS. MCDONNELL:  Object to the form; asked and
16 answered.
17     THE WITNESS:  I mean, they could respond, but I
18 don't think they absolutely need to or it's important.
19 I mean, there could have been a phone conversation about
20 it.
21 BY MS. OCHOA:
22 Q   Are you aware of a phone conversation about it?
23 A   No.  But I'm aware that Allianz didn't agree --
24 or Lourdes didn't agree with the statement.
25 Q   And you're aware that she didn't respond and

**Page 135**

1  Allianz didn't respond?
2  A   Right.  But I know she didn't agree, because I
3  spoke to her about that.
4  Q   In preparation for this deposition?
5  A   Yes.
6  Q   Is it Allianz's position that not asking for
7  specific documentation of what needs to show the actual
8  presence like we've been talking about -- i.e., the date
9  that the person tested positive and the same date that
10 they entered the building -- is appropriate?  In other
11 words, that Allianz does not need to do that?
12     MS. MCDONNELL:  Object to the form.
13     THE WITNESS:  I mean, I think, like I said
14 before, they -- we did request information in regards to
15 there being an actual presence, and it was an ongoing
16 investigation.  It was the beginning stages of the claim
17 as well.  I -- I guess that's the end.
18 BY MS. OCHOA:
19 Q   I mean just specific; not just the actual
20 presence language.
21     I'm asking, is it Allianz's position that they
22 did not have to ask the insured, "You need to show the
23 actual presence by submitting a positive test and
24 evidence that they walked into the gym on the same day
25 that they tested positive"?

**Page 136**

1  MS. MCDONNELL:  Object to the form.
2  THE WITNESS:  I think, again, it was the
3  initial stages of the claim, so we asked them to prove
4  the actual presence, and then we kept following up
5  requesting more information.  They would respond, but
6  then, you know, a coverage determination wasn't made,
7  and then they filed suit.
8      So we could have got there, but at that -- or
9  we didn't because we just -- the insured went to suit.
10 BY MS. OCHOA:
11 Q   Okay.  So I'm just trying to understand the
12 response.
13     So it's Allianz's position that they did not
14 ask for those specific things that were needed to show
15 the actual presence of COVID-19 like what we've been
16 talking about this entire time, the specific date of the
17 test and the specific day that they walked in being on
18 that same day.  They didn't ask for that, but they could
19 have continued to ask -- they could have asked for that
20 down the line, but the insured filed suit?
21 A   Correct.
22 Q   And do you think that -- strike that.
23     MS. OCHOA:  Let's end it at that.  That's fine.
24 I have no more questions.
25     MS. MCDONNELL:  I don't have any.

**Page 137**

1  MS. OCHOA:  Great.  I think we can go off the
2  record.
3      (Brief discussion held off the record.)
4  MS. OCHOA:  There have been numerous objections
5  about questions being outside the scope of the 30(b)(6)
6  amended notice, and I -- we want to reserve our right to
7  be able to meet and confer on those but also compel a
8  further 30(b)(6) to the extent that we see necessary or
9  move to compel.  And I just want to put that on the
10 record.
11     MS. MCDONNELL:  And can I ask on what
12 grounds -- what you're specifically -- what you have an
13 issue with?
14     MS. OCHOA:  There were just numerous instances
15 where there were objections for outside the record, and
16 I believed that I was asking for Allianz's position with
17 regard to this claim and Allianz's position generally
18 with regard to coverage, and there was objections and
19 instructions not to answer.  And so that's what we're
20 maintaining our -- our right to assert.
21     MS. MCDONNELL:  Okay.
22     THE COURT REPORTER:  All right.  Off the
23 record?
24     MS. OCHOA:  Yep.
25     (Concluded at 4:30 P.M. CST)

First Legal Depositions - Calendar@firstlegal.com    134 to 137
855.348.4997

Exhibit 56 to Plaintiff's Appendix of Evidence    Page 948 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

**MELANIE WOLSKI**

October 28, 2022

### Page 138

```
 1       IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF DELAWARE
 2
     IN RE                        )
 3                                )
     RS FIT NW LLC,               )
 4                                )
              DEBTOR.             )
 5   _____  )
                                  )
 6   24 HOUR FITNESS              )
     WORLDWIDE, INC.,             )
 7                                )
              PLAINTIFF,          )
 8                                )
     V.                           ) CHAPTER 11
 9                                )
     CONTINENTAL CASUALTY         ) CASE NO. 20-11558
10   COMPANY; ENDURANCE           ) (KBO)
     AMERICAN SPECIALTY           )
11   INSURANCE COMPANY; STARR     )
     SURPLUS LINES INSURANCE      )
12   COMPANY; ALLIANZ GLOBAL      )
     RISKS US INSURANCE           )
13   COMPANY; LIBERTY MUTUAL      )
     INSURANCE COMPANY;           )
14   BEAZLEY-LLOYD'S              )
     SYNDICATES 2623/623;         )
15   ALLIED WORLD NATIONAL        )
     ASSURANCE COMPANY; QBE       )
16   SPECIALTY INSURANCE          )
     COMPANY; AND GENERAL         )
17   SECURITY INDEMNITY           )
     COMPANY OF ARIZONA,          )
18                                )
              DEFENDANTS.         )
19   _____  )
20
             REPORTER'S CERTIFICATION
21           DEPOSITION OF MELANIE WOLSKI
                 NOVEMBER 11, 2022
22
23       I, CHRISTINE SPERBECK, Certified Shorthand
24   Reporter in and for the State of California, hereby
25   certify to the following:
```

### Page 139

```
 1       That the witness, MELANIE WOLSKI, was duly
 2   sworn by the officer and that the transcript of the oral
 3   deposition is a true record of the testimony given by
 4   the witness;
 5       I further certify that pursuant to FRCP Rule
 6   30(e)(1) that the signature of the deponent:
 7   _____ was requested by the deponent or a party before
 8   the completion of the deposition and returned within 30
 9   days from date of receipt of the transcript.  If
10   returned, the attached Changes and Signature Page
11   contains any changes and the reasons therefor;
12   ___X___ was not requested by the deponent or a party
13   before the completion of the deposition.
14       I further certify that I am neither attorney
15   nor counsel for, related to, nor employed by any of the
16   parties to the action in which this testimony was taken.
17       Further, I am not a relative or employee of any
18   attorney of record in this cause, nor do I have a
19   financial interest in the action
20       Subscribed and sworn to on this 11th day of
21   November, 2022.
22                    _____
23                    Christine Sperbeck, CSR No. 14008
24                    CHRISTINE E. SPERBECK, CSR, RPR
                      CALIFORNIA CSR NO. 14008
25                    TEXAS CSR NO. 9135
```

### Page 140

```
 1   Errata Sheet
 2
 3   NAME OF CASE: 24 HOUR FITNESS WORLDWIDE V. CONTINENTAL CASUALTY
 4   DATE OF DEPOSITION: 10/28/2022
 5   NAME OF WITNESS: Melanie Wolski
 6   Reason Codes:
 7      1. To clarify the record.
 8      2. To conform to the facts.
 9      3. To correct transcription errors.
10   Page _____ Line _____ Reason _____
11   From _____ to _____
12   Page _____ Line _____ Reason _____
13   From _____ to _____
14   Page _____ Line _____ Reason _____
15   From _____ to _____
16   Page _____ Line _____ Reason _____
17   From _____ to _____
18   Page _____ Line _____ Reason _____
19   From _____ to _____
20   Page _____ Line _____ Reason _____
21   From _____ to _____
22   Page _____ Line _____ Reason _____
23   From _____ to _____
24
25                    _____
```

First Legal Depositions - Calendar@firstlegal.com
855.348.4997
138 to 140

Exhibit 56 to Plaintiff's Appendix of Evidence
in support of Plaintiff's Motion for Partial Summary Judgment
Page 949 of 1418