# EXHIBIT 57

```
 1        IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF DELAWARE
 2

 3   IN RE:                        *
                                   *
 4   24 HOUR FITNESS               *   Chapter 11
     WORLDWIDE, INC., ET AL.,      *
 5        Debtors.                 *   Case No.: 20-11558 (KBO)
                                   *
 6   _____   *   (Jointly Administered)
                                   *
 7   24 HOUR FITNESS               *
     WORLDWIDE, INC.,              *
 8        Plaintiff,               *
                                   *
 9   VS.                           * Adv. Proc. No. 20-51051 (KBO)
                                   *
10   CONTINENTAL CASUALTY          *
     COMPANY, ET AL.,              *
11        Defendants.              *

12

13

14

15   ****************************************************

16      ORAL AND VIDEOTAPED DEPOSITION OF MIKE ALLEN

17                       VOLUME 1

18                  SEPTEMBER 21, 2022

19                  (Reported Remotely)

20   ****************************************************

21

22

23

24

25
```

NELL McCALLUM & ASSOCIATES, INC.

1  ORAL AND VIDEOTAPED DEPOSITION of MIKE ALLEN,
2  produced as a witness at the instance of the Plaintiff,
3  and remotely duly sworn, was taken in the above-styled
4  and numbered cause on September 21, 2022, from 11:04
5  a.m. to 2:02 p.m. Central Time, before Carol Jenkins,
6  CSR, RPR, CRR, in and for the State of Texas, reported
7  by machine shorthand, with the Witness in California,
8  pursuant to the Federal Rules of Civil Procedure, the
9  Emergency Order Regarding the COVID-19 State of
10 Disaster, and the provisions stated on the record or
11 attached hereto.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**NELL McCALLUM & ASSOCIATES, INC.**

Exhibit 57 to Plaintiff's Appendix of Evidence         Page 951 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

```
 1              R E M O T E   A P P E A R A N C E S:

 2


 3   FOR THE PLAINTIFF:
         Mr. Connor O'Carroll
 4       Reed Smith LLP
         101 Second Street, Suite 1800
 5       San Francisco, California 94105
         415.543.8700
 6       cocarroll@reedsmith.com

 7   FOR THE DEFENDANT, CONTINENTAL CASUALTY COMPANY:
         Mr. Brett Ingerman
 8       Mr. Matthew Denn
         Ms. Jacqueline Matyszczyk (Paul Weiss)
 9       DLA Piper LLP
         6225 Smith Avenue
10       Baltimore, Maryland 21209
         410.580.3000
11       matthew.denn@us.dlapiper.com

12   FOR THE STARR SURPLUS DEFENDANT:
         Ms. Courtney Murphy
13       Hinshaw & Culbertson
         800 Third Avenue, Suite 1300
14       New York, New York 10022
         212.471.6200
15       cmurphy@hinshawlaw.com

16   FOR THE ALLIED WORLD DEFENDANT:
         Ms. Elizabeth M. Brockman
17       Mr. Austin Westergom (Mound Cotton)
         Selman Breitman LP
18       11766 Wilshire Boulevard, Suite 600
         Los Angeles, California 90025
19       310.445.0800
         ebrockman@selmanlaw.com
20
     FOR THE ALLIANZ DEFENDANT:
21       Ms. Marlie McDonnell
         Clyde & Co
22       271 17th Street NW, Suite 1720
         Atlanta, Georgia 30363
23       404.410.3150
         marlie.mcdonnell@clydeco.us
24

25
```

NELL McCALLUM & ASSOCIATES, INC.

Exhibit 57 to Plaintiff's Appendix of Evidence         Page 952 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

```
 1   FOR THE LIBERTY MUTUAL FIRE DEFENDANT:
     Mr. Joel L. McNabney
 2   Robinson & Cole LLP
     777 Brickell Avenue, Suite 680
 3   Miami, Florida 33131
     786.725.4119
 4   jmcnabney@rc.com

 5

 6        ALSO PRESENT:
     The Videographer, Ms. Jessica Rawls
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        INDEX
 2                                                        PAGE
 3   Appearances                                           03
 4   Stipulations                                          02
 5   MIKE ALLEN
 6       Examination by Mr. O'Carroll                      07
 7   Signature and Jurat                                   131
 8   Reporter's Certificate                                132
 9
10                       EXHIBITS
11
12   NO.   DESCRIPTION                                    PAGE
13       Allen Exhibit 1                                   21
         McLarens Coronavirus 3/28/20 Claim Report No. 1
14       for 24 Hour Fitness

15       Allen Exhibit 2                                   25
         Handwritten Notes and Email String Bates MCL
16       306-344

17       Allen Exhibit 3                                   34
         McLarens Coronavirus 4/24/20 Claim Report No. 2
18       for 24 Hour Fitness

19       Allen Exhibit 4                                   37
         McLarens Coronavirus 4/27/20 Claim Report No. 3
20       for 24 Hour Fitness

21       Allen Exhibit 5                                   44
         McLarens Coronavirus 5/15/20 Claim Report No. 4
22       for 24 Hour Fitness

23       Allen Exhibit 6                                   70
         McLarens Coronavirus 6/4/20 Claim Report No. 5
24       for 24 Hour Fitness

25
```

NELL McCALLUM & ASSOCIATES, INC.

Exhibit 57 to Plaintiff's Appendix of Evidence   Page 954 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

| | | |
|---|---|---|
| 1 | Allen Exhibit 7<br>McLarens Coronavirus 4/24/20 Claim Report No. 2 for 24 Hour Fitness | 74 |
| 2 | | |
| 3 | Allen Exhibit 8<br>Handwritten Notes Bates MCL 334 | 79 |
| 4 | | |
| 5 | Allen Exhibit 9<br>McLarens Coronavirus 6/19/20 Claim Report No. 6 for 24 Hour Fitness | 81 |
| 6 | | |
| 7 | Allen Exhibit 10<br>McLarens Coronavirus 6/22/20 Claim Report No. 7 for 24 Hour Fitness | 86 |
| 8 | | |
| 9 | Allen Exhibit 11<br>Email String Bates AGRUS 536-38 | 95 |
| 10 | Allen Exhibit 12<br>McLarens Coronavirus 9/3/20 Claim Report No. 8 for 24 Hour Fitness | 106 |
| 11 | | |
| 12 | Allen Exhibit 13<br>Ms. Suarez's Email with Attachments Bates Liberty 1515-19 | 124 |
| 13 | | |
| 14 | Allen Exhibit 14<br>Ms. Suarez's Email with Attachments Bates Liberty 1520-23 | 127 |
| 15 | | |
| 16 | Allen Exhibit 15<br>Ms. Suarez's Email with Attachments Bates Liberty 1524-28 | 128 |
| 17 | | |

1         THE VIDEOGRAPHER: Good morning. Today is
2    Wednesday, September 21st, 2022. The time is
3    11:04 a.m., and we are now on the record.
4         THE REPORTER: Good morning. My name is
5    Carol Jenkins reporting this remotely from Chambers
6    County, Texas; and the witness is located in California.
7                    MIKE ALLEN,
8    having been first remotely duly sworn, testified as
9    follows:
10        MR. O'CARROLL: Good morning. This is
11   Connor O'Carroll on behalf of plaintiffs, 24 Hour
12   Fitness.
13        MS. MURPHY: Good morning. This is
14   Courtney Murphy representing certain of the insureds,
15   and also representing Mike Allen in today's deposition.
16                   EXAMINATION
17   BY MR. O'CARROLL:
18   Q.   All right. Mr. Allen, good morning.
19   A.   Good morning.
20   Q.   My name -- like I said, my name is Connor
21   O'Carroll. I'm counsel for plaintiffs here, and I'm
22   going to be taking your deposition today.
23        Mr. Allen, I assume you've had a
24   deposition before.
25   A.   I have.

1            One of the prerequisites to this coverage,
2   you would agree, is showing the actual presence and
3   spread of a communicable disease at an insured location,
4   correct?
5       A.   Let's go through that again.
6       Q.   So it says:  All coverage must be directly
7   resulting from access being prohibited to a described
8   location or any portion thereof.
9            And then it has two subparts.  And the
10  first subpart, so one of the conditions is due to the
11  actual spread -- or due to the actual presence of and
12  spread of a communicable disease at the described
13  location.
14           Do you agree?
15      A.   That's -- that's what it says, yeah.
16      Q.   Okay.  And so as the adjuster investigating
17  this claim, what type of information would you be
18  interest -- would you -- what type of information would
19  you need to determine if that -- that provision of this
20  endorsement was satisfied?
21      A.   I'd want some evidence that there was a
22  communicable disease there at the described location.
23  And if -- however they would be able to determine it was
24  spread to the -- to the property.  I'm not sure how they
25  would do that, but that's what I would request.

1  Q. Okay. And so would evidence of a person
2  confirmed to have COVID-19 being at an insured location,
3  would that -- would that be sufficient to satisfy this
4  prong in your opinion?
5  　　　　　MS. MURPHY: Objection.
6  A. Connor, I would have to go to the insurers and
7  give them the information and leave it up to them.
8  Q. (By Mr. O'Carroll) Okay. Let's talk about the
9  second prong here. It talks about the second prong here
10 of access being prohibited is as a direct result of a
11 declaration by civil authority enforcing any law or
12 ordinance regulating any communicable disease.
13 　　　　　Did I read that right?
14 A. Yes.
15 Q. Okay. How would you understand that provision
16 to be met when you're in -- or strike that.
17 　　　　　When you're investigating this claim, what
18 information, if any, are you interested in to try and
19 assess this prong of the communicable disease
20 endorsement?
21 A. Well, let's see. As a direct result of
22 declaration by a civil authority, so I would want to see
23 the declaration by the civil authority enforcing any law
24 or ordinance. So there -- if there's a declaration by
25 civil authority, I'd want to see it.

**NELL McCALLUM & ASSOCIATES, INC.**

Exhibit 57 to Plaintiff's Appendix of Evidence   Page 958 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

1   A.   Uh-huh.
2   Q.   But that may have been a little later.
3        Do you recall, do you -- do you recall if
4   any of the insurers assisted with these April 16th, 2020
5   questions?
6   A.   I can't tell you right now.  I don't remember.
7   Q.   Okay.  I want to -- I want to ask you about
8   question No. 5.
9        Do you see it there?
10  A.   Yeah.
11  Q.   Okay.  And it says:  Have the properties been
12  tested for the presence of the COVID-19 virus?
13       Mr. Allen, are you aware of any tests that
14  can be performed to test a property for the presence of
15  COVID-19?
16  A.   Personally, no.
17  Q.   Okay.  What -- what -- what were you or the
18  insurers trying to get at with question No. 5?
19  A.   The first report that we had from Jeremy said
20  we had a COVID-19 situation at the Portland location.
21  So somehow he determined that they had an issue.
22       So if there was some test results they
23  had, we'd like to see those.  How did he determine that
24  the building had COVID-19, if there were positive tests,
25  have you done any type of special cleaning.

1  along with that.
2    Q.   And, Mr. Allen, in your course of investigating
3  this claim, did you find any orders that restricted
4  access to any of the insureds' locations?
5    A.   And I'll tell --
6              MS. MURPHY:  Objection.
7    A.   -- you what.  I'm going to go back and say off
8  the top of my head, I think the orders I saw were
9  closing businesses so that people didn't gather.  But I
10 don't think I saw anything that said we prohibit you
11 from going into a location.
12   Q.   (By Mr. O'Carroll) Okay.  And so you mentioned
13 orders.  Were you also interested in investigating
14 whether or not COVID-19 was present in any of the
15 insureds' locations?
16   A.   We requested that the insured provide us with
17 any evidence they have.  You know, if they know it was
18 there, just send us the documentation you have that
19 establishes that.
20   Q.   And what's your opinion of what type of
21 evidence may constitute the presence of COVID-19 at an
22 insured location?
23   A.   Well, if they knew it was there, I would ask
24 them how did you determine that.
25   Q.   Okay.  And what type of response could the

1  insured give that would satisfy you that COVID-19 was
2  present at an insured location?
3       A.   If -- if there was an event with an individual,
4  if there was some testing that was done.  If you cleaned
5  up something, how did you know there was COVID there.
6  And if it was -- if your cleanup was confined to a
7  certain area, how did you establish that.
8       Q.   Okay.  And when you say an event with a certain
9  individual, does that mean an individual that is
10 confirmed to have COVID-19 being at the location?
11      A.   Yeah, that would at least establish that
12 somebody -- somebody that had it was there.
13      Q.   Okay.
14      A.   So I would take -- Connor, I would take
15 whatever they could give me to establish that we have
16 COVID there, and that could be anything.
17      Q.   Okay.  Mr. Allen, I appreciate that.
18           If you want to go back to Exhibit Q, this
19 is your report, your May 15 report.
20      A.   Okay.
21      Q.   And if you go to PDF page 4 -- well, it starts
22 on PDF page 3, but there's a response from 24 Hour
23 Fitness that you quoted here.  And it's talking about
24 the communicable disease endorsement.  This -- this
25 is -- and ending our email, we also asked the insured if

1    A.   Not specifically as I recall.
2    Q.   Did you ever follow up specifically about any
3 of the 24 incidents that 24 Hour Fitness provided to you
4 about COVID-19?
5    A.   Yeah.  I think in a general way, we asked for
6 copies of any of the cleanup invoicing and so forth or
7 any of the testing that might have been done to confirm
8 not only those 28 but any others they may have had.
9    Q.   And, Mr. Allen, what is your understanding of
10 what type of confirmation 24 Hour could have -- 24 Hour
11 Fitness could have provided to establish the actual
12 presence of COVID-19 in an insured location?
13   A.   Yeah, I don't know of -- I don't know of what
14 tests are available.  So I have to plead ignorance on
15 that one.
16   Q.   Sure.
17   A.   If -- if there was a situation where a
18 jurisdiction civil authority came in and said, hey,
19 you've got a problem here such as you might see in a
20 Legionaire's disease type claim, there may be something
21 from a civil authority that says, you know, there's
22 COVID here.
23   Q.   Okay.  So I appreciate that answer.
24        So one -- one example that 24 Hour Fitness
25 could have provided would have been a specific order or

**NELL McCALLUM & ASSOCIATES, INC.**

Exhibit 57 to Plaintiff's Appendix of Evidence    Page 962 of 1418
in support of Plaintiff's Motion for Partial Summary Judgment

1    government edict saying, like you mentioned
2    Legionaire's, is there anything else that the 24 Hour
3    Fitness could have provided that would have, in your
4    understanding, confirmed the actual presence of COVID-19
5    in its insured locations?
6        A.    You know, specifically, I don't know.
7        Q.    Okay.  Do you think that that -- knowing that
8    would help inform your investigation under the policy?
9             MS. MURPHY:  Knowing what?  Objection.
10       Q.    (By Mr. O'Carroll)  Knowing -- knowing exactly
11   what information that you're looking for to confirm the
12   presence of COVID-19 at the insured locations.
13       A.    If there was a common test, for instance, mold,
14   you can test; asbestos, you can test.  I don't know if
15   there's a COVID test.
16             So we would ask them if you know or you
17   think you have COVID there, if you've cleaned it up, you
18   must have had something that indicates there's COVID
19   there.  So whatever you can provide, and if you can't
20   provide anything, then -- then you can't provide
21   anything.
22       Q.    Okay.
23       A.    But if you have something, you know, please
24   send it to us.
25       Q.    And you agree there's -- you're not aware they

```
 1  test for -- testing property for COVID-19?
 2      A.   I have no idea.
 3      Q.   Okay.  And is your under -- so the 24 incidents
 4  that 24 Hour provided, is your -- do you -- is your
 5  opinion that that's sufficient to establish the actual
 6  presence of COVID-19 in an insured location?
 7              MS. MURPHY:  Objection.
 8      A.   Yeah, I think, Connor, if you go back to the
 9  28, it talks about a member that reported they had
10  COVID.  It doesn't say the member reported he had COVID
11  and was in our facility.  It's just a member reporting
12  it.
13              It doesn't -- it doesn't give you a lot of
14  information.  When's the last time he was there?  Was it
15  six months ago or was he there yesterday?
16      Q.   (By Mr. O'Carroll)  So, Mr. Allen, we can -- we
17  can pull them back up.  And I don't -- I don't
18  necessarily want to fuss with you about what each of
19  them say.
20              Really what I'm getting at here is you're
21  investigating this claim.  A part of coverage is the
22  actual presence and spread of a communicable disease at
23  the insured location.
24              Do you agree with that?  A part of this
25  claim is your investigation into the actual presence and
```

```
              IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE


IN RE:                            *
                                  *
24 HOUR FITNESS                   *   Chapter 11
WORLDWIDE, INC., ET AL.,          *
         Debtors.                 *   Case No.: 20-11558 (KBO)
                                  *
_____*        (Jointly Administered)
                                  *
24 HOUR FITNESS                   *
WORLDWIDE, INC.,                  *
         Plaintiff,               *
                                  *
VS.                               *   Adv. Proc. No. 20-51051 (KBO)
                                  *
CONTINENTAL CASUALTY              *
COMPANY, ET AL.,                  *
         Defendants.              *
```

REPORTER'S CERTIFICATE

DEPOSITION OF MIKE ALLEN

SEPTEMBER 21, 2022

      I, CAROL JENKINS, Certified Shorthand Reporter in and for the State of Texas, hereby certify that this transcript is a true record of the testimony given by the witness named herein, after said witness was duly sworn by me.

      I further certify that the deposition transcript was submitted on _____, _____ to the witness or to the attorney for the witness for examination, signature, and return to me by _____, _____.

```
 1              I further certify the amount of time used
 2   by each party at the deposition is as follows:
 3              Mr. Connor O'Carroll - (02h28m)
 4              Mr. Matt Denn - (00h00m)
 5              Ms. Courtney Murphy - (00h00m)
 6              Ms. Elizabeth Brockman - (00h00m)
 7              Ms. Marlie McDonnell - (00h00m)
 8              Mr. Joel L. McNabney - (00h00m)
 9              I further certify that I am neither
10   attorney nor counsel for, related to, nor employed by
11   any of the parties to the action in which this testimony
12   was taken.  Further, I am not a relative or employee of
13   any attorney of record in this cause, nor do I have a
14   financial interest in the action.
15              SUBSCRIBED AND SWORN TO by the undersigned
16   on this the 26th day of September, 2022.
17
18
19   _____
     CAROL JENKINS, CSR, RPR, CRR
20   Certificate No. 2660
     Date of Expiration:  8/31/2023
21   Nell McCallum & Associates, Inc.
     Firm Registration No. 10095
22   718 Westcott Street
     Houston, Texas 77007
23   713.861.0203
24
25
```

**NELL McCALLUM & ASSOCIATES, INC.**

Exhibit 57 to Plaintiff's Appendix of Evidence in support of Plaintiff's Motion for Partial Summary Judgment        Page 966 of 1418