# EXHIBIT 58

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| 24 HOUR FITNESS | * | Chapter 11 |
| WORLDWIDE, INC., ET AL., | * | |
| Debtors. | * | Case No.: 20-11558 (KBO) |
| | * | |
| _____ | * | (Jointly Administered) |
| | * | |
| 24 HOUR FITNESS | * | |
| WORLDWIDE, INC., | * | |
| Plaintiff, | * | |
| | * | |
| VS. | * | Adv. Proc. No. 20-51051 (KBO) |
| | * | |
| CONTINENTAL CASUALTY | * | |
| COMPANY, ET AL., | * | |
| Defendants. | * | |

**CONFIDENTIAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED 30(b)(6) DEPOSITION OF CONTINENTAL

CASUALTY COMPANY THROUGH TRACY SCHOHN

CONFIDENTIAL

VOLUME 1

APRIL 14, 2022

(Reported Remotely)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NMA
COMPRESSED TRANSCRIPT

## Page 2

1  ORAL AND VIDEOTAPED 30(b)(6) DEPOSITION of
2  CONTINENTAL CASUALTY COMPANY through TRACY SCHOHN,
3  produced as a witness at the instance of the Plaintiff,
4  and remotely duly sworn, was taken in the above-styled
5  and numbered cause on April 14, 2022, from 11:05 a.m. to
6  3:07 p.m., before Carol Jenkins, CSR, RPR, CRR, in and
7  for the State of Texas, reported by machine shorthand,
8  with the Witness in Chicago, Illinois, pursuant to the
9  Federal Rules of Civil Procedure, the Emergency Order
10 Regarding the COVID-19 State of Disaster, and the
11 provisions stated on the record or attached hereto.

## Page 3

REMOTE APPEARANCES:

FOR THE PLAINTIFF:
Mr. David E. Weiss
Ms. Elizabeth Bowman
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, California 94105
415.543.8700
dweiss@reedsmith.com

FOR THE DEFENDANT, CONTINENTAL CASUALTY COMPANY:
Mr. Brett Ingerman
Mr. Matthew S. Sarna
Mr. Matt Denn
DLA Piper LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410.580.3000
brett.ingerman@us.dlapiper.com

FOR THE STARR SURPLUS DEFENDANT:
Ms. Ferdusi Chowdhury
Hinshaw & Culbertson
800 Third Avenue, Suite 1300
New York, New York 10022
212.471.6200
fchowdhury@hinshawlaw.com

FOR THE ALLIED WORLD DEFENDANT:
Ms. Elizabeth M. Brockman
Ms. Andrea Ortiz of Mound Cotton
Mr. Andrew Halpern of Otterbourg P.C.
Selman Breitman LP
11766 Wilshire Boulevard, Suite 600
Los Angeles, California 90025
310.445.0800
ebrockman@selmanlaw.com

FOR THE ALLIANZ DEFENDANT:
Ms. Marlie McDonnell
Clyde & Co
271 17th Street NW, Suite 1720
Atlanta, Georgia 30363
404.410.3150
marlie.mcdonnell@clydeco.us

## Page 4

1  FOR THE ENDURANCE AMERICAN DEFENDANT:
   Mr. James Bauer
2  Clyde & Co
   271 17th Street NW, Suite 1720
3  Atlanta, Georgia 30363
   404.410.3150
4  james.bauer@clydeco.us
5  FOR THE LIBERTY MUTUAL FIRE DEFENDANT:
   Mr. Joel L. McNabney
6  Robinson & Cole LLP
   777 Brickell Avenue, Suite 680
7  Miami, Florida 33131
   786.725.4119
8  jmcnabney@rc.com
9  FOR THE QBE AND GENERAL SECURITY DEFENDANTS:
   Ms. Elizabeth Kniffen
10 Zelle LLP
   500 Washington Avenue South, Suite 4000
11 Minneapolis, Minnesota 55415
   612.359.4261
12 ekniffen@zelle.com
13     ALSO PRESENT:
       The Videographer, Ms. Keitha Hanks

## Page 5

INDEX

|  | PAGE |
|---|---|
| Appearances | 02 |
| Stipulations | 01 |

TRACY SCHOHN
Examination by Mr. Weiss  08
Signature and Jurat  129
Reporter's Certificate  130

EXHIBITS

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Schohn Exhibit 1 | Plaintiff's Fourth Amended Notice of 30(b)(6) Deposition to Continental Casualty Company | 13 |
| Schohn Exhibit 2 | Defendant's Responses and Objections to Plaintiff's Third Amended Notice of 30(b)(6) Deposition to Continental Casualty Company | 15 |
| Schohn Exhibit 3 | Ms. Schohn's LinkedIn | 18 |
| Schohn Exhibit 4 | Defendant Continental Casualty Company's Responses and Objections to Plaintiff's First Set of Interrogatories | 24 |
| Schohn Exhibit 5 | McLarens Reply Requested - ROR Letter Document | 27 |
| Schohn Exhibit 6 | CNA ClaimPlus New Loss Notification | 29 |
| Schohn Exhibit 7 | Email String Bates CNA 170-71 | 32 |

2 (Pages 2 to 5)

Page 6

| | | |
|---|---|---|
| 1 | Schohn Exhibit 8 | 34 |
| | CNA Summary Document | |
| 2 | | |
| | Schohn Exhibit 9 | 44 |
| 3 | Email String Bates CNA 1382-83 | |
| 4 | Schohn Exhibit 10 | 71 |
| | Email String Bates AGRUS 391-95 | |
| 5 | | |
| | Schohn Exhibit 11 | 72 |
| 6 | Email String Bates AGRUS 400-06 | |
| 7 | Schohn Exhibit 13 | 75 |
| | McLarens Coronavirus 4/24/20 Claim Report for 24 | |
| 8 | Hour Fitness | |
| 9 | Schohn Exhibit 14 | 56 |
| | CNA Property Policy Declarations | |
| 10 | | |
| | Schohn Exhibit 15 | 91 |
| 11 | Email String Bates CNA 1403-06 | |
| 12 | Schohn Exhibit 16 | 100 |
| | McLarens 4/27/20 COVID-19 Pandemic Report | |
| 13 | | |
| | Schohn Exhibit 17 | 103 |
| 14 | McLarens 5/15/20 COVID-19 Pandemic Report | |
| 15 | Schohn Exhibit 18 | 107 |
| | McLarens 6/4/20 COVID-19 Pandemic Report | |
| 16 | | |
| | Schohn Exhibit 19 | 109 |
| 17 | McLarens 6/19/20 COVID-19 Pandemic Report | |
| 18 | Schohn Exhibit 20 | 110 |
| | McLarens 6/22/20 Reply Requested Document | |
| 19 | | |
| | Schohn Exhibit 21 | 112 |
| 20 | McLarens 9/3/20 COVID-19 Pandemic Report | |
| 21 | Schohn Exhibit 22 | 113 |
| | McLarens 10/29/20 COVID-19 Pandemic Report | |
| 22 | | |
| | Schohn Exhibit 23 | 114 |
| 23 | McLarens 2/22/21 COVID-19 Pandemic Report | |
| 24 | Schohn Exhibit 24 | 115 |
| | Email String Bates CNA 1389-90 | |
| 25 | | |

Page 7

| | | |
|---|---|---|
| 1 | Schohn Exhibit 25 | 119 |
| | Ms. Schohn's Email Bates CNA 1391 | |
| 2 | | |
| | Schohn Exhibit 26 | 120 |
| 3 | Email String Bates CNA 1643 | |
| 4 | Schohn Exhibit 27 | 121 |
| | Email String Bates CNA 1396 | |
| 5 | | |
| | Schohn Exhibit 28 | 123 |
| 6 | Ms. Wilmes' Email Bates CNA 1397 | |
| 7 | Schohn Exhibit 29 | 124 |
| | Excel Spreadsheet Printouts Bates CNA 1408-13 | |

Page 8

1  THE VIDEOGRAPHER: Good morning. Today's
2  date is Thursday, April 13th, 2022 -- or, I'm sorry,
3  April 14th, 2022. It is 11:05, and we are now on the
4  record.
5      Will everyone please state their location
6  and the court reporter please swear in the witness.
7      MR. WEISS: I'll start. My name is David
8  Weiss from Reed Smith on behalf of the plaintiff, 24
9  Hour Fitness; and I'm located currently in Corte Madera,
10 California.
11     MR. INGERMAN: Brett Ingerman, DLA Piper,
12 on behalf of CNA, Continental Casualty Company, and
13 representing the witness here today.
14     MS. SCHOHN: Tracy Schohn with CNA
15 Insurance, and we're in Chicago, Illinois.
16     (Witness sworn)
17     MR. WEISS: Do -- do we need to have the
18 videographer give any speech or anything?
19     (Reporter clarification.)
20     TRACY SCHOHN,
21 having been first remotely duly sworn, testified as
22 follows:
23              EXAMINATION
24 BY MR. WEISS:
25     Q. All right. Good morning, Ms. Schohn. My name

Page 9

1  is David Weiss, and I represent 24 Hour Fitness.
2      How are you today?
3      A. I'm good. Thank you.
4      Q. Have you ever given a deposition before?
5      A. No.
6      Q. Have you ever testified previously in a court
7  proceeding before?
8      A. No.
9      Q. Have you ever testified in an arbitration
10 proceeding before?
11     A. No.
12     Q. I'm going to go through some of the ground
13 rules for the deposition.
14     I understand that you have counsel with
15 you today, correct?
16     A. Yes.
17     Q. All right. First, do you understand that
18 you're under oath and that the oath that you've taken
19 has the same effect as if you were testifying in court?
20     A. I do.
21     Q. The -- we have a -- so a deposition is a unique
22 experience. It's not like a regular conversation where
23 people finish each other's sentences and talk over each
24 other.
25     We have a court reporter here who is

3 (Pages 6 to 9)

Page 54

1  rights letter.
2  Q. Is it -- where there's a quota share policy and
3  an adjuster like McLarens involved, is it typically the
4  process for McLarens or another adjuster in that role to
5  be responsible for preparing drafts of reservation of
6  rights letters?
7  A. They can, yeah. It's not unusual.
8  Q. You mentioned earlier that there were, I guess,
9  somewhere between 50 and 100 quota share COVID claims
10 that CNA was dealing with.
11      At around this particular time period in
12 March, so March 28th of 2020, can you estimate about how
13 many of those claims had been submitted to CNA already?
14 A. Of the COVID quota share claims?
15 Q. Yeah.
16 A. I have -- I don't know.
17 Q. All right. Where is your office located
18 personally?
19 A. So I -- I'm remote. I work from home.
20 Q. Okay. In March of 2020, were you working from
21 home?
22 A. Yes.
23 Q. And how about Mr. Bradley, do you know if he
24 was working from home in March of 2020?
25 A. I believe so, yes.

Page 55

1  Q. Did -- was that because of COVID, or was that
2  something that existed prior to COVID?
3  A. That existed prior to COVID.
4  Q. If you go back to the draft reservation of
5  rights letter that begins on CNA 53, which is part of
6  Exhibit 5.
7  A. Okay.
8  Q. And turn to page -- the second page of the
9  letter, page -- which is Bates numbered 54. It says:
10 The 24 Hour Fitness property policies provide all risk
11 coverage on all real and personal property subject to
12 stated exclusions. The policy is -- policy coverage is
13 also extended per endorsement No. 2 to "interruption by
14 communicable disease."
15      And then there is a -- then it quotes from
16 that endorsement No. 2.
17      Do you see that?
18 A. I see that.
19 Q. And then it says: The policy is extended to
20 cover the reasonable and necessary expenses incurred by
21 the insured to, (a), clean up, remove and dispose of
22 communicable diseases from insured property at a
23 described location.
24      Do you see that?
25 A. I see that.

Page 56

1  Q. Do you know what is being referred to there as
2  a "described location"?
3  A. This should be one of the insured's locations.
4  Q. And why do you -- does the policy, the 24 Hour
5  Fitness policy, have a list of locations in it?
6  A. I don't believe so, no. The policy itself does
7  not.
8  Q. So why do you think that the reference to
9  described location refers to a 24 Hour Fitness location?
10 A. Because that's the -- those are the locations
11 they have an interest in.
12 Q. Does the policy define the term described
13 location anywhere?
14      MR. INGERMAN: You should -- you can look
15 at it, what he's shown, if you don't have a memory, if
16 you want to.
17 A. Oh, I'll look at it.
18 Q. (By Mr. Weiss) Okay. So the policy is
19 previously marked as Exhibit 14 if you want to take a
20 look at that.
21      (Schohn Exhibit 14 marked.)
22 Q. (By Mr. Weiss) And it's Bates numbered CNA
23 1150 to 1198.
24      THE VIDEOGRAPHER: Would you like me to
25 pull it up?

Page 57

1       MR. WEISS: No, I don't think -- you don't
2  have to because the witness has it, but thank you.
3  Q. (By Mr. Weiss) I think the question was: Is
4  there anyplace in the policy where it defines what a
5  described location is?
6  A. I don't believe that it's in here, no.
7  Q. Going back to Exhibit 5, we were looking at
8  this draft reservation of rights letter and the
9  communicable disease endorsement language that was put
10 into the letter on page CNA 54. It talks -- it says --
11 there's a -- there's a section that says -- it says:
12 All coverage above must be directly resulting from
13 access being prohibited to a described location or any
14 portion thereof and, (a), due to the actual presence of
15 and the spread of communicable diseases at that
16 described location; and, (b), as a direct result of a
17 declaration by civil authority enforcing any law or
18 ordinance regulating communicable diseases.
19      Do you see that?
20 A. I see that.
21 Q. Okay. In -- in around -- in the spring of
22 2020, was CNA aware of any measures that were available
23 to test for the presence of COVID-19 at a business
24 location?
25 A. I'm not aware of any ability to test.

Page 58

1  Q.  Did -- are you aware of whether CNA did any
2  testening -- testing of any insured business locations
3  for the presence of COVID-19 during the spring of 2020?
4  A.  I'm not aware of any testing that was done by
5  CNA.
6  Q.  Are you aware of any testing done on behalf of
7  CNA by any adjuster?
8  A.  No.
9  Q.  Are you aware of CNA conducting any testing at
10 any time during the pandemic at insured business
11 locations?
12 A.  I am not aware of any testing done, no.
13 Q.  Are you aware of CNA publishing any guidance
14 for policyholders as to how they might test for the
15 presence of COVID at an insured location?
16 A.  I am not aware of any -- anything that was --
17 any guidance that was given to anyone.
18 Q.  Are you aware of any research that CNA has done
19 regarding the ability to test for the presence of COVID
20 at an insured location?
21 A.  No, I'm not.
22 Q.  Are you aware of any testing that CNA has ever
23 done at an insured location for any communicable
24 disease?
25     MR. INGERMAN:  I'm going to -- I'm going

Page 59

1  to object as being beyond the scope of the 30(b)(6)
2  notice.  You're certainly free to ask her about what
3  they did with respect to the 24 Hour claim.  But any
4  testing for any communicable disease, now we're beyond
5  even COVID-19.  So I'm going to object.
6      I'm going to allow you to answer it, but I
7  -- I just hope we can stay closer to the 30(b)(6)
8  notice.
9  A.  I'm not aware of other testing for other
10 communicable disease.
11 Q.  (By Mr. Weiss)  Okay.  In connection with the
12 24 Hour Fitness claim, what would CNA need from 24 Hour
13 Fitness to demonstrate the actual presence of communic
14 -- of COVID-19 at a described location?
15     MR. INGERMAN:  Objection to the form.
16     You can answer.
17 A.  So in the context of this claim, what we were
18 provided did not, you know, did not satisfy that.  In
19 terms of what would be required, I don't have an answer
20 to that.  I just know that what was provided did not
21 demonstrate or did not meet that requirement.
22 Q.  (By Mr. Weiss)  If 24 Hour Fitness identified
23 somebody who had tested positive with COVID-19 and they
24 were present at an insured location, would that be
25 sufficient to demonstrate the actual presence of -- of

Page 60

1  COVID-19 at the location?
2      MR. INGERMAN:  Objection, speculation.
3      You can answer.
4  A.  No, I don't think it would be -- it would
5  demonstrate the presence --
6  Q.  (By Mr. Weiss)  Okay.
7  A.  -- and certainly not the -- the spread.
8  Q.  Okay.  And why don't you think it would
9  demonstrate the presence of COVID at an -- at a location
10 if somebody with COVID was at the location?
11     MR. INGERMAN:  Same objection.
12 A.  I'm sorry.  Could you repeat your question?
13 Q.  (By Mr. Weiss)  Sure.
14     MR. WEISS:  Can we have that read back,
15 please?
16     (Requested portion was read.)
17 A.  I don't think we -- in the context of this
18 claim, we were not presented with any evidence that
19 somebody was on any of their locations that had -- we --
20 nothing -- we weren't given anything that confirmed the
21 presence at one of their locations.
22 Q.  (By Mr. Weiss)  And you're not able to tell us
23 what 24 Hour Fitness would have need -- needed to show
24 you to demonstrate satisfactorily to you that they had
25 the presence of COVID at a location?

Page 61

1      MR. INGERMAN:  Objection, asked and
2  answered.
3      You can answer it again.
4  A.  So, again, in the context of this claim, we
5  don't know; but we know what was provided to us did not
6  confirm the actual presence and spread of COVID-19.
7  Q.  (By Mr. Weiss)  So if you're -- if 24 Hour
8  Fitness, your customer, came to you and said, okay,
9  well, tell us what you need to see and we'll go out and
10 find it, would you be able to tell them what you needed
11 to see?
12     MR. INGERMAN:  Objection.  The third --
13 that's the third time we've asked the question.  So
14 objection, asked and answered.
15     You can answer it one more time.
16     MR. WEISS:  I don't think it was answered,
17 but go -- you can go ahead and --
18     MR. INGERMAN:  I think it was.
19     But you can answer it again.
20 A.  Again, what was provided to us -- and we did
21 have an RFI.  And what was responded to did not confirm
22 the actual presence or spread at a described location.
23 Q.  (By Mr. Weiss)  I know that you keep saying
24 what was provided didn't demonstrate the actual spread.
25 But my question was:  What, in addition to what was

16 (Pages 58 to 61)

Exhibit 58 to Plaintiff's Appendix of Evidence
in support of Plaintiff's Motion for Partial Summary Judgment
Page 971 of 1418

Page 62

1  provided, would they needed to have given you to satisfy
2  that?
3    A.  And it --
4        MR. INGERMAN:  Same objection.
5        You can answer it again.  Go ahead.
6    A.  And again, I don't know.  But what we did get
7  did not satisfy that requirement.
8    Q.  (By Mr. Weiss)  Have in any of the other
9  COVID-19 claims that you've been involved with, has any
10 insured provided sufficient information to you to
11 satisfy CNA that they had the presence of COVID at a
12 location?
13       MR. INGERMAN:  I'm going to object and
14 instruct the witness not to answer.  I mean, we're not
15 here to talk about other claims.  We negotiated that
16 actually out of the 30(b)(6) notice.  So she's happy to
17 answer any questions about the adjustment and coverage
18 decisions as to the 24 Hour claim, but not as to other
19 claims.
20   Q.  (By Mr. Weiss)  All right.  So on here, on --
21 for 24 Hour Fitness -- and 24 Hour Fitness is your
22 customer.  And your customer is asking you, all right,
23 we've given you information and you're telling us it's
24 not enough, what more can we give you to satisfy you,
25 and you're not able to -- to tell us; is that right?

Page 63

1        MR. INGERMAN:  Objection, asked and
2  answered.
3        You can answer it again.
4    A.  Again, we did ask through our RFIs.  And I -- I
5  believe not all those were answered.  But the
6  information that was provided, we reviewed, and this
7  requirement was not met.  There was no actual presence
8  or spread at their locations.
9    Q.  (By Mr. Weiss)  Do you recall that 24 Hour
10 Fitness identified several locations where they said
11 that there were individuals who had COVID-19 who were
12 present?
13       MR. INGERMAN:  Objection to the form of
14 the question.
15       You can answer it.
16   A.  I -- I don't believe that there was
17 confirmation that any of those -- that there was actual
18 presence at the location.  It was, you know, from what
19 we can tell, it was employees or customers who may have
20 been exposed or may have tested positive.  But again, it
21 doesn't correlate to the actual presence and spread at
22 their location.
23   Q.  (By Mr. Weiss)  Why doesn't that correlate to
24 the actual presence and spread at the location?
25   A.  So, again, we have no support to show that it

Page 64

1  was actually there.
2    Q.  And what kind of support would you need?
3    A.  I --
4        MR. INGERMAN:  Objection, asked and
5  answered.
6        You can answer it again.
7    A.  I don't know.  But what was provided did not
8  meet this requirement.
9    Q.  (By Mr. Weiss)  Did anybody from -- did anyone
10 on behalf of CNA visit any of the 24 Hour Fitness
11 locations in connection with the COVID claim that 24
12 Hour Fitness submitted?
13   A.  I don't believe so, no.
14   Q.  Did anyone from McLarens visit any of the 24
15 Hour Fitness locations in connection with the 24 Hour
16 Fitness claim?
17   A.  Not that I'm aware of.
18   Q.  Did CNA instruct McLarens not to visit any of
19 the 24 Hour Fitness locations?
20   A.  Not that I'm aware of.
21   Q.  Did -- are you aware of any of the other
22 insurers instructing McLarens not to visit any 24 Hour
23 Fitness location in connection with this claim?
24   A.  Not that I'm aware of.
25   Q.  Do you agree that CNA has the right and ability

Page 65

1  to visit insured locations that are subject of a claim?
2        MR. INGERMAN:  I'm going to object to the
3  form of the question.
4        You can answer it.
5    A.  Yes.
6    Q.  (By Mr. Weiss)  Okay.  So, for example, and CNA
7  does, in fact, send adjusters out to visit loss
8  locations in investigating property claims; is that
9  right?
10   A.  Yes.
11   Q.  Right.  So if there's a fire, you might send
12 somebody out to look at the fire damage, right?
13   A.  Correct.  Not typical with our quota share
14 claims or the market share claims, but with our regular
15 claims, yes.
16   Q.  So on a quota share claim, you might -- the
17 adjuster might send somebody out, correct?
18   A.  The market adjuster?
19   Q.  Yes.
20   A.  Yes.
21   Q.  And if there's smoke damage on a -- involved in
22 a claim, the market adjuster might send somebody out to
23 assess that, correct?
24   A.  Potentially, yes.
25   Q.  All right.  So there wasn't anything with

17 (Pages 62 to 65)

Page 110

1   A. No.
2   Q. Did you -- did the topic of the 24 Hour Fitness
3   bankruptcy come up in that video call with Mr. Bradley
4   that we were talking about a bit ago?
5   A. I believe only that they filed bankruptcy early
6   on.
7   Q. All right. Let's look at what was premarked as
8   Exhibit 20.
9       (Schohn Exhibit 20 marked.)
10  A. This is No. 7?
11  Q. (By Mr. Weiss) Yes, the seventh McLarens
12  report dated June 22nd, 2020; and the Bates No. is
13  CNA 546 to CNA 560.
14      Have you seen this report prior to
15  preparing for your deposition?
16  A. No.
17  Q. And then if you turn to page 547, do you see
18  that in the McLarens report, they're reporting that they
19  had received a response from 24 Hour Fitness to the
20  additional questions that had been posted -- posed
21  recently?
22  A. I see that.
23  Q. Okay. Were you aware of the responses to the
24  questions that had been provided by 24 Hour Fitness
25  prior to preparing for the deposition and looking at the

Page 111

1   documents?
2   A. No, I was not.
3   Q. When did CNA make the determination that 24
4   Hour Fitness had not provided sufficient information to
5   establish coverage for its claim?
6   A. Are you asking when we developed a coverage
7   opinion?
8   Q. Right. When -- because you testified earlier
9   that information that 24 Hour Fitness had provided was
10  not sufficient to establish that, for example, that the
11  communicable disease endorsement is applicable. And so
12  my question is: When did those -- when did that
13  coverage determination get made?
14  A. So our coverage determination was basically our
15  -- the answer to the -- the suit. So that's when that
16  was made in the suit responses.
17  Q. Okay. Prior to the response to the lawsuit,
18  had Mr. Bradley formulated any preliminary opinion after
19  reviewing all the information that 24 Hour Fitness had
20  provided as to whether there might be coverage for the
21  claim?
22  A. No, not that I'm aware of. But I know that we
23  were still waiting for some more information.
24  Q. As you sit here, do you know what the
25  additional information was that you were waiting for?

Page 112

1   A. I know there was a follow-up list of questions.
2   I'm not sure what report it was in, but I don't believe
3   we received a response to that. But I would assume
4   everything was included in the suit.
5   Q. Okay. Let's look at the next one, which was
6   premarked as Exhibit 21. This will be the eighth
7   McLarens report.
8       (Schohn Exhibit 21 marked.)
9   Q. (By Mr. Weiss) And it's Bates numbered CNA 561
10  to 583 dated September 3rd, 2020.
11  A. Okay.
12  Q. And on page 562, Mr. Allen wrote that pursuant
13  to insurer's instructions, they had forwarded two
14  letters to 24 Hour Fitness, one was a denial from Sompo
15  because of its communicable or infectious disease
16  exclusion. And the second letter is a reservation of
17  rights letter to the insured requesting additional
18  documentation relating to the interruption by a
19  communicable disease endorsement.
20      And then if you turn to page, let's see,
21  579, there's a September 2nd letter from McLarens to Mr.
22  Gottlieb at 24 Hour Fitness.
23      Do you see that?
24  A. Yes.
25  Q. Okay. Is this the -- are these -- are the

Page 113

1   information requests in this letter, the information
2   requests that you're referring to that you were waiting
3   for responses from or to?
4   A. I believe this was the last one, yeah.
5   Q. All right. Was -- did CNA have any role in the
6   drafting of this September 2nd, 2020 letter?
7   A. I don't know.
8   Q. Had the insureds already retained coverage
9   counsel at the time that this letter had been sent?
10  A. I don't believe we had at that time. I'm not
11  sure if we had at that time.
12  Q. And had -- were you aware of the September 2nd,
13  2020 letter that had been sent to 24 Hour Fitness prior
14  to the time that you were preparing for your deposition?
15  A. No, I wasn't aware.
16  Q. And then the next premarked exhibit was 22, and
17  that's the ninth report from McLarens dated
18  October 29th, 2020.
19      (Schohn Exhibit 22 marked.)
20  Q. (By Mr. Weiss) And that's Bates numbered 683
21  to 690.
22      Do you have that in front of you?
23  A. I do.
24  Q. Were you aware of this report prior to the time
25  that you were preparing for your deposition?

Exhibit 58 to Plaintiff's Appendix of Evidence
in support of Plaintiff's Motion for Partial Summary Judgment
Page 973 of 1418

```
                                      Page 130
 1      IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF DELAWARE
 2
 3   IN RE:              *
                         *
 4   24 HOUR FITNESS     *  Chapter 11
     WORLDWIDE, INC., ET AL., *
 5      Debtors.    *  Case No.: 20-11558 (KBO)
                    *
 6   _____*  (Jointly Administered)
                    *
 7   24 HOUR FITNESS     *
     WORLDWIDE, INC.,    *
 8      Plaintiff,       *
                         *
 9   VS.             *  Adv. Proc. No. 20-51051 (KBO)
                    *
10   CONTINENTAL CASUALTY *
     COMPANY, ET AL.,    *
11      Defendants.     *
12
              REPORTER'S CERTIFICATE
13
            DEPOSITION OF TRACY SCHOHN
14
                 APRIL 14, 2022
15
16         I, CAROL JENKINS, Certified Shorthand
17   Reporter in and for the State of Texas, hereby certify
18   that this transcript is a true record of the testimony
19   given by the witness named herein, after said witness
20   was duly sworn by me.
21         I further certify that the deposition
22   transcript was submitted on _____,
23   _____ to the witness or to the attorney for the
24   witness for examination, signature, and return to me by
25   _____, _____.
```

```
                                      Page 131
 1         I further certify the amount of time used
 2   by each party at the deposition is as follows:
 3         Mr. David E. Weiss - (03h28m)
 4         Mr. Brett Ingerman - (00h00m)
 5         Ms. Ferdusi Chowdhury - (00h00m)
 6         Ms. Elizabeth Brockman - (00h00m)
 7         Ms. Marlie McDonnell - (00h00m)
 8         Mr. James Bauer - (00h00m)
 9         Mr. Joel L. McNabney - (00h00m)
10         Ms. Elizabeth Kniffen - (00h00m)
11         I further certify that I am neither
12   attorney nor counsel for, related to, nor employed by
13   any of the parties to the action in which this testimony
14   was taken. Further, I am not a relative or employee of
15   any attorney of record in this cause, nor do I have a
16   financial interest in the action.
17         SUBSCRIBED AND SWORN TO by the undersigned
18   on this the 21st day of April, 2022.
19
20
21         _____
           CAROL JENKINS, CSR, RPR, CRR
22         Certificate No. 2660
           Date of Expiration: 8/31/2023
23         Nell McCallum & Associates, Inc.
           Firm Registration No. 10095
24         718 Westcott Street
           Houston, Texas 77007
25         713.861.0203
```

34 (Pages 130 to 131)

1            I further certify the amount of time used
2  by each party at the deposition is as follows:
3                Mr. David E. Weiss - (03h28m)
4                Mr. Brett Ingerman - (00h00m)
5                Ms. Ferdusi Chowdhury - (00h00m)
6                Ms. Elizabeth Brockman - (00h00m)
7                Ms. Marlie McDonnell - (00h00m)
8                Mr. James Bauer - (00h00m)
9                Mr. Joel L. McNabney - (00h00m)
10               Ms. Elizabeth Kniffen - (00h00m)
11           I further certify that I am neither
12 attorney nor counsel for, related to, nor employed by
13 any of the parties to the action in which this testimony
14 was taken.  Further, I am not a relative or employee of
15 any attorney of record in this cause, nor do I have a
16 financial interest in the action.
17           SUBSCRIBED AND SWORN TO by the undersigned
18 on this the 21st day of April, 2022.
19
20
21  _____
    CAROL JENKINS, CSR, RPR, CRR
22  Certificate No. 2660
    Date of Expiration:  8/31/2023
23  Nell McCallum & Associates, Inc.
    Firm Registration No. 10095
24  718 Westcott Street
    Houston, Texas 77007
25  713.861.0203