# EXHIBIT 69

Select Language  Powered by  Translate



CENTER FOR INSURANCE POLICY AND RESEARCH

Library    Events & Education    Journal of Insurance Regulation    Insurance Topics    Fellows Program    Catastrophe Modeling Center

## BUSINESS INTERRUPTION/BUSINESSOWNER'S POLICIES (BOP)

Last updated 8/25/2023

**Issue:**  Business interruption (BI) insurance, also called business income insurance, helps small businesses protect against monetary losses due to periods of suspended operations when a covered event, such as a fire, occurs and causes physical property damage.  The coverage allows businesses to pay fixed expenses, including costs incurred while operating at an offsite location, while the property is closed for repairs and restoration.  Policies also reimburse owners for lost revenue that would have otherwise been earned if the business remained open. Business interruption policies are typically bundled within a larger businessowner's policy (BOP) that includes business property and liability coverages.  Companies with 100 or less employees with revenues of up to **$5 million or less** (https://www.iii.org/article/understanding-business-owners-policies-bops) are eligible for these plans.  It is estimated that between **30-40%  of small business owners** (/sites/default/files/legacy/documents/government_relations_200521.pdf) carry business interruption insurance.

**Background:**  According to the **Federal Emergency Management Agency** (https://www.fema.gov/press-release/20210318/stay-business-after-disaster-planning-ahead) (FEMA), about 25 percent of businesses fail to reopen after a disaster strikes.  One component of adequate disaster preparedness for small businesses includes purchasing a business owner's insurance policy, or BOP.  A BOP is the **most commonly purchased policy** (https://www.iii.org/publications/insurance-handbook/insurance-basics/small-business-insurance-basics) by small businesses and includes general liability, commercial property/business property coverage, and business interruption insurance.

- **General liability:**  Also known as business liability insurance, this coverage protects the business from liability claims alleging bodily injury, property damage, libel, and slander.  If someone gets hurts on the business property, general liability helps pay for medical expenses.  It also pays legal fees if someone files a lawsuit against the business.
- **Commercial property:**  Also known as business property insurance, this coverage protects the business's location and physical property, such as equipment, inventory, and furniture.  Commercial property insurance can help with repair or replacement costs if a covered peril such as fire or lightening results in physical structural damages to a building or items inside the building, such as office equipment.  Property that has been damaged due to **riots, civil commotion, and vandalism** (https://www.iii.org/insuranceindustryblog/faq-riots-and-business-insurance/?utm_source=I.I.I.+Daily+Newsletter&utm_campaign=bcedb6bff9-EMAIL_CAMPAIGN_2020_06_01_12_08_COPY_01&utm_medium=email&utm_term=0_092139a76a-bcedb6bff9-122044113) is also usually included. Commercial property insurance works in tandem with business interruption coverage.
- **Business interruption:**  While commercial property pays for actual physical damages or losses, BI covers lost net income due to the closure of the business

### Committees Related to This Topic

**Property and Casualty Insurance (C) Committee** (/cmte_c.htm)

### Additional Resources

**The History and Development of Business Interruption Insurance** (https://content.naic.org/sites/default/files/the-history-and-development-of-business-interruption-insurance-jir-2022-07.pdf)  (*Journal of Insurance Regulation*, 2022)

**NAIC Legal Division:  Business Interruption Litigation Update** (/sites/default/files/national_meeting/2021%20NAIC%20Legal%20Final.pdf) (Dec. 2021, starts on pg. 16)

**Regulator Insight: Business Interruption Insurance & Pandemics** (/sites/default/files/inline-files/Business%20Interruption%20%26%20Pandemics%20RI%20Dec.%202020_0.pdf) (CIPR Research Library, Dec. 2020)

**NAIC letter to U.S. House Financial Services' Subcommittee on Insurance regarding the hearing on "Insuring Against a Pandemic: Challenges and Solutions for Policyholders and Insurers"** (/sites/default/files/inline-files/NAIC%20Letter%20for%20the%20Record%2011.19.20%...) (Nov. 19, 2020)

**Many Businesses Thought They Were Insured for a Pandemic. They Weren't** (https://freakonomics.com/podcast/insurance/) .  (*Freakonomics* podcast, Oct. 28th, 2020, 40 min.)

while repairs are underway.  These policies may cover rent or lease payments, relocation costs, employee wages, taxes, and loan payments.  Business interruption does not typically cover damages or losses from flooding, earthquakes, and mudslides, although consumers can purchase additional coverages for these specific perils.  Exclusions from coverage include losses unrelated to property damage, such as lost revenues due to viral outbreaks or pandemics.

**Civil authority coverage:**  Business interruption policies may contain a clause for civil authority coverage.  If a state, local, or federal government entity prohibits access to the business premises, and thereby forces businesses to temporarily close, BI insurance may cover lost income through a civil authority clause.  The civil authority provision in a standard BI policy form issued by the Insurance Services Office (ISO) stipulates **certain provisions** (https://www.irmi.com/articles/expert-commentary/when-civil-authorities-take-over-are-you-covered) be met to trigger coverage:

- Access to the premises must be completely prohibited; and
- physical damages must be present near the insured property; and
- damages must be caused by a peril covered under the property policy.

Civil authority coverage usually applies in the wake of natural disaster events where physical damages have occurred within a specific proximity to the insured's business, even if the business itself is not damaged.  For example, a tornado strikes an area of town causing structural damage to buildings and authorities cordon off the area, restricting ingress and egress to property.  As a result, a businessowner in that area cannot access his property and must temporarily close his business.  Civil authority in this instance may be triggered since physical damages were sustained to properties within the surrounding area of the insured business, access to the business owner's property was restricted because of a city mandate, and the peril causing the damages (a tornado) was covered in the policy.  As each policy is unique and wording may differ, policyholders should consult the specifics in their contract.

Additionally, there are two more types of business interruption insurance policies: contingent business interruption and extended business interruption. These are optional coverages that are available as riders to a standard business interruption policy.

- **Contingent business interruption (CBI):**   Contingent business interruption insurance policies protect against losses from supply chain disruptions, but may require the occurrence of property damage to trigger coverage  When supply chain disruptions or closures occur with suppliers, vendors, or other companies a business relies on, a business may be eligible for payouts with CBI.   For example, a print media publisher that relies on a single print company that goes out of business would utilize CBI to recover lost business revenues due to the print company's closure.  These policies provide businesses with cash to help cover payroll, rent, and other expenses to keep the business open.   Like business interruption insurance, payouts on CBI claims are typically related to physical damage or other commercial property claims.
- **Extended business interruption (EBI):** This policy covers the intermediary period between when a business property is repaired, but before its income returns to pre-loss levels.

The cost of business interruption insurance depends on a variety of factors, including the type of industry, the number of employees, and the amount of coverage needed.  A business's physical location may also factor into the total cost.  For example, if the business is in a high-risk area that is prone to wildfires or hurricanes the premiums may be higher than for those businesses located in lower-risk locations.

**Pandemics & Business Interruption**

**Feasibility Questions About Government-Sponsored Insurance for Business Interruption Losses from Pandemics** (/sites/default/files/inline-files/JIR-ZA-39%20%28002%29.pdf) (*Journal of Insurance Regulation*, September 2020)

**Business Interruption Insurance and COVID-19: Coverage and Issues and Public Policy Interpretations** (/sites/default/files/inline-files/JIR-ZA-39-05-EL.pdf) (*Journal of Insurance Regulation*, June 2020)  Read a brief **article overview** (http://content.naic.org/sites/default/files/inline-files/JIR-ZA-39-05-EL-summary.pdf) .

**Covid Coverage Litigation Tracker** (https://cclt.law.upenn.edu/) (University of Pennsylvania's Carey Law School)

**COVID-19 and Business Income (Interruption) Insurance Fact Sheet** (https://www.iii.org/article/covid-19-and-business-income-interruption-insurance?utm_source=I.I.I.+Daily+Newsletter&utm_campaign=bbd3345... EMAIL_CAMPAIGN_2020_06_10_01_00_COPY_01&utm_med... bbd3345ac1-122044113) (Insurance Information Institute, June 2020)

**NAIC Insurance Brief: COVID-19 and Insurance** (/sites/default/files/inline-files/Insurance%20Brief%20-%20Covid-19%20and%20Insurance.pdf) (NAIC, March 2020)

**Pandemic Business Interruption Insurance Coverage: Insights from WSB Survey of Insurance Experts** (/sites/default/files/Pandemic%20Business%20Interruption%2... %20Insights%20from%20WSB%20Survey%20of%20Insurar... (Wisconsin School of Business & CIPR – May 2020)

**Business Interruption Basics** (https://youtu.be/lAL3ZQ8eBZE) (May 28, 2020, YouTube, Future of American Insurance and Reinsurance)

**Fact Sheet: Understanding Business Interruption Insurance and Pandemics** (https://www.iii.org/sites/default/files/docs/pdf/business_interru... (Insurance Information Institute)

**Do I Need Business Interruption Insurance?** (https://www.iii.org/article/do-i-need-business-interruption-insurance) (Insurance Information Institute)

Insurers started excluding viral and bacterial infections from their BI policies after the SARS (Severe Acute Respiratory Syndrome) outbreak in 2003 caused massive losses to insurers, including a **$16 million BI payout** (https://www.businessinsurance.com/article/20031102/story/100013638/hotel-chain-to-get-payout-for-sars-related-losses) to Mandarin Oriental, a hotel chain in Asia. In **2006** (https://www.insurancejournal.com/news/east/2020/04/15/564920.htm) the **Insurance Services Office** (https://www.verisk.com/insurance/brands/iso/) (ISO) developed an exclusion for losses due to virus or bacteria.  Since then, many insurers have edited their policy language to specifically exclude bacterial and viral outbreaks.

It is important to make the distinction that **not all BI policies are "one size fits all** (https://www.iii.org/insuranceindustryblog/business-interruption-claims-related-to-covid-19/) " and in some instances, coverage due to viral outbreaks may vary depending on the policy. For example, an all-risk policy does not distinguish between losses due to forced government closures (civil authority) or physical loss since all-risk policies cover all perils except those that are specifically excluded.  Additionally, other coverages may have exclusions for losses resulting from mold, fungi, or bacteria; however, since COVID-19 is a virus, that exclusion may not apply.  The **policy language** (http://news.ambest.com/newscontent.aspx?AltSrc=97&refnum=224149) is critical to understanding what is included and excluded from coverage.  If there is a specific exclusion for virus-related losses outlined in the policy, it could be more difficult for businesses to successfully appeal a denial for coverage. Consumers should consult their insurer or agent to learn the specifics of their policy.

**State Legislative Activity & Industry Response**

As of August 2020, ten states (**New York** (https://www.businessinsurance.com/article/20200330/NEWS06/912333772/New-York-introduces-bill-on-coronavirus-COVID-19-pandemic-related-business-inter) , **Massachusetts** (https://malegislature.gov/Bills/191/SD2888) , New Jersey, **Louisiana,** (https://www.legis.la.gov/legis/BillInfo.aspx?s=20RS&b=SB477&sbi=y) **Ohio** (https://www.legislature.ohio.gov/legislation/legislation-summary?id=GA133-HB-589) , **Pennsylvania** (https://www.businessinsurance.com/article/20200407/NEWS06/912333911/Pennsylvania-bill-would-force-COVID-19-business-interruption-coverage-coronaviru) , **Rhode Island** (http://webserver.rilin.state.ri.us/BillText20/HouseText20/H8064.pdf) , **California** (https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB1552) , **Michigan** (http://www.legislature.mi.gov/(S(a4njb1jrv5tiemld5wcvaa0k))/mileg.aspx?page=BillStatus&objectname=2020-HB-5739) , and **South Carolina** (https://www.scstatehouse.gov/sess123_2019-2020/bills/1188.htm) ) had **drafted legislation** (https://www.natlawreview.com/article/proposed-legislation-regarding-business-interruption-insurance-covid-19-claims) that would force insurers to retroactively pay for BI losses incurred by the coronavirus shutdowns.  New Jersey was the first state to introduce legislation, but ultimately **tabled the original bill** (https://news.bloomberglaw.com/us-law-week/insight-covid-19-state-legislation-could-shake-up-insurance-contracts) .  Additionally, Louisiana legislators modified **Senate Bill 477** (https://www.legis.la.gov/legis/BillInfo.aspx?s=20RS&b=SB477&sbi=y) to include a proposal requiring insurers to be more transparent about specific exclusions on policy contracts after **facing criticism** (https://www.businessinsurance.com/article/20200513/NEWS06/912334550/Louisiana-lawmakers-scrap-bill-to-make-interruption-coverage-retroactive-COVID-1) about the original bill's content. Language specifying the requirement of retroactive insurance coverage for COVID-19 was eliminated in the final version of the bill. The modified legislation passed the Louisiana Senate on May 19, 2020.

Opponents argue retroactively rewriting contracts is unconstitutional under Article 1, Section 10 in the U.S. Constitution's **Contract Clause** (https://www.law.cornell.edu/constitution/articlei) , which asserts that **states have limited ability** (https://www.insurancejournal.com/news/east/2020/04/15/564920.htm) to interfere with private contracts. If there is no resolution, then it is likely that any debate over BI coverage between insureds and their insurance companies regarding coronavirus damages will be **litigated in the courts.** (https://www.workerscompensation.com/news_read.php?id=35979)

**Insurance Industry's Response to COVID-19** (https://www.iii.org/presentation/insurance-industrys-response-to-covid-19-042420?utm_source=I.I.I.+Daily+Newsletter&utm_campaign=2fa23380 EMAIL_CAMPAIGN_2020_04_23_11_56_COPY_01&utm_mec 2fa23380d3-122044113) (III, April 24, 2020)

**The True Costs of Rewriting Business Income (Interruption) Policies** (https://www.iii.org/article/the-true-cost-of-rewriting-business-income-interruption-policies?utm_source=I.I.I.+Daily+Newsletter&utm_campaign=bf56e3f6 EMAIL_CAMPAIGN_2020_04_23_11_56_COPY_01&utm_mec bf56e3f663-122044113) (III, April 28, 2020)

**Business Interruption Insurance and COVID-19** (https://crsreports.congress.gov/product/pdf/IN/IN11295) .(*Congressional Research Services*, March 31, 2020)

**Understanding Business Owner's Policies (BOP)** (https://www.iii.org/article/understanding-business-owners-policies-bops) (Insurance Information Institute)

**Covering Losses with Business Interruption Insurance** (https://www.iii.org/article/covering-losses-with-business-interruption-insurance) (Insurance Information Institute)

*The Risk of Pandemics to the Insurance Industry* (/cipr_article/risk_pandemics_insurance_industry.htm) .  (CIPR, 2015)

**News Releases**

**NAIC Session on Business Interruption Coverage Garners Strong Participation** (https://naic.soutronglobal.net/Portal/Public/en-GB/RecordView/Index/25423 ) (Dec. 9, 2020)

**NAIC 2020 Fall National Meeting to Include Special Session on Business Interruption** (/article/news_release_naic_2020_fall_national_meeting_inclu (Nov. 11, 2020)

The insurance industry opposes retroactive BI payments due to concerns about insurer insolvency and subsequently, the inability to pay existing policyholders' claims. According to the American Property Casualty Insurance Association (APCIA), the industry holds a nearly (https://www.apci.org/media/news-releases/release/59762/) **$800 billion surplus** (https://www.apci.org/media/news-releases/release/60522/) to pay all future losses. APCIA notes this surplus is insufficient to cover the estimated $255 to $431 billion per month in BI claims. Enforcing retroactive BI payments could bankrupt the industry in 2 to 3 months, during a time when insurers will see claims activity rise from damages due to severe weather and natural catastrophes.

Pandemics are viewed by the insurance industry as **uninsurable events** (https://www.iii.org/press-release/triple-is-ceo-tells-us-house-global-pandemics-are-uninsurable-052120) because they affect policyholders everywhere at the same time. Experts posit that only the federal government has the financial resources necessary to cover pandemic risks.

**Federal Legislation**

On May 22, 2020 U.S. Representative Carolyn Maloney (D-NY) introduced **H.R. 7011** (https://www.congress.gov/bill/116th-congress/house-bill/7011/text?q=%7B%22search%22%3A%5B%22HR+7011%22%5D%7D&r=1&s=3) , the Pandemic Risk Insurance Act (PRIA). The bill is modeled after the **Terrorism Risk Insurance Act** (/cipr_topics/topic_terrorism_risk_insurance_act_tria.htm) (TRIA) and would function as a public-private partnership between the federal government and insurance companies. The federal government and insurance companies would share costs associated with pandemic losses. The legislation, if passed, would not be retroactive and participation by insurers would be voluntary. Industry support of the bill is **divided** (https://www.insurancejournal.com/news/national/2020/05/19/569115.htm?utm_source=I.I.I.+Daily+Newsletter&utm_campaign=746b7acef8-EMAIL_CAMPAIGN_2020_05_11_11_58_COPY_01&utm_medium=email&utm_term=0_092139a76a-746b7acef8-122044113) . Some industry groups, such as the American Property Casualty Insurance Association (APCIA) and the National Association of Mutual Insurance Companies (NAMIC), have **expressed concerns** (https://www.carriermanagement.com/news/2020/05/19/206826.htm) over the bill. Both associations believe the full cost of the program should be funded by the federal government, arguing that terrorist attacks and pandemics are different types of risks based on frequency of occurrence and geographical concentration. However, the American Academy of Actuaries (AAA) supports a federal reinsurance program. The AAA **states** (https://www.actuary.org/sites/default/files/2020-05/Actuaries-Coverage%20of%20Pandemic%20Risk%20Through%20Property%20Casualty%20Insurance%20Could%20Be%20Designed%20Like%20Federal%20Programs_0.pdf) that "pandemic risk is more similar to the catastrophic risks covered by programs like the Terrorism Risk Insurance Program and the National Flood Insurance Program than to risks normally insured by the commercial insurance market and any new federal program seeking to facilitate pandemic risk coverage should reflect that difference."

Other representatives also introduced legislation relating to insurance and pandemics. On April 14, 2020, Rep. Mike Thompson (D-CA) introduced **H.R. 6494,** (https://www.congress.gov/bill/116th-congress/house-bill/6494/text?r=4&s=1) the "Business Interruption Coverage Act of 2020." The legislation appears to be retroactive in nature and would require insurers who provide BI coverage to include losses from pandemics or government-ordered business closure. Another bill, **H.R. 6497** (https://www.congress.gov/bill/116th-congress/house-bill/6497?q=%7B%22search%22%3A%5B%22never+again+small%22%5D%7D&s=1&r=1) , the "Never Again Small Business Protection Act," proposed by Rep. Brian Fitzpatrick (R-PA), also requires insurers to cover losses associated with viruses or pandemics, but it includes a provision requiring a federal reinsurance backstop. On May 20, 2020, the NAIC **submitted a letter** (/sites/default/files/legacy/documents/government_relations_200521.pdf?52) to the U.S. House Committee on Small Business opposing proposals that would require insurers to retroactively pay claims for COVID-19 claims.

**Contacts**

*Media queries should be directed to the NAIC Communications Division at 816-783-8909 or* **news@naic.org** (mailto:news@naic.org) .

**Aaron Brandenburg**
(mailto:abrandenburg@naic.org)
Assistant Director, P&C Regulatory Services
(816) 783-8271

**CIPR Homepage** (/cipr_home.htm)

**Looking ahead**

According to the **Allianz Risk Barometer** (https://www.agcs.allianz.com/news-and-insights/reports/allianz-risk-barometer.html) , business interruption insurance (34%) is one of the top three global business risks in 2023, along with cyber incidents (34%) and macroeconomic developments (25%). It will be important to monitor continuing developments in the BI sphere, especially as lawsuits from larger companies and organizations (such as Major League Baseball) move forward.  Larger corporations usually have **more tailored policies** (https://www.wsj.com/articles/covid-19-insurance-lawsuits-move-toward-high-stakes-phase-11637058600) that do not always include specific virus-specific exclusions that smaller business commonly incorporate into their contracts. The **Penn State Covid Coverage Litigation Tracker** (https://cclt.law.upenn.edu) , which updates statistics in Covid-related BI litigation, has found the majority of courts so far have ruled in favor of insurers in motions to dismiss or for summary judgment.  In 2021 only one case, *Hopps Ltd. vs. Cincinnati Insurance Co.*, moved to a jury trial. In late October, the jury rendered a verdict for the defendant in the **first jury trial** (https://www.jdsupra.com/legalnews/insurer-wins-first-jury-trial-on-7386889/) for Covid business interruption losses.

**Status**: On March 25, 2020 the NAIC released a statement on Congressional actions related to COVID-19 and the insurance industry.  In the statement, the NAIC opposed **proposed legislation** (https://www.congress.gov/bill/116th-congress/house-bill/6494?s=1&r=3) that would require insurance companies to retroactively pay for claims arising out of the COVID-19 pandemic losses that were not covered under the original policy, arguing that such actions could create a substantial solvency risk and undermine the ability of insurers to pay other types of claims.  Further, the NAIC noted that insurance is not the ideal product to cover pandemic losses, due to the widespread nature of disease and the substantial number of policyholders affected simultaneously.  Instead, the NAIC recommended direct federal intervention to address economic disruption related to the current COVID-19 pandemic and offered to work with Congress on potential solutions.

In May 2020, state insurance regulators, through the NAIC, developed and issued **a data call** (/industry_property_casualty_data_call.htm) to collect business interruption information from insurers. This data will assist state insurance regulators and others in understanding which insurers are writing applicable coverage, the size of the market, and the extent of exclusions related to COVID-19. Preliminary results show that nearly 8 million commercial insurance policies include business interruption coverage. Of that amount, 90% were for small businesses, as defined as having 100 or fewer employees; 8% for medium businesses, and 2% for large businesses, as defined as having more than 500 employees. Significantly, 83% of all policies included an exclusion for viral contamination, virus, disease, or pandemic and 98% of all policies had a requirement for physical loss. Exclusions and physical loss requirements were slightly more likely to occur in small business policies as compared to large business policies. Insurance regulators are also regularly collecting loss and claims data in order to obtain a sense of how claims are developing and the extent of payments by insurers.

An October 22, 2020 NAIC **report**  (/sites/default/files/inline-files/COVID-19%20BI%20Nat%27l%20Claims%20Aggregates_Oct_1.pdf) detailing business interruption claims and loss data disclosed that U.S. insurers have received 201,285 claims for business-interruption losses caused by coronavirus orders. Of those, 164,178 were closed without payment, 34,106 remained open and 3,001 were paid.

The Center for Insurance Policy & Research (CIPR) hosted a **special event** (/article/news_release_naic_2020_fall_national_meeting_include_special_session_business_interruption.htm) about business interruption and pandemics at the NAIC's **Fall Virtual National Meeting** (/events) on Dec. 8, 2020.  Titled *Pandemic Business Interruption Federal Insurance Mechanism - Learning from the Past, Thinking About the Future*, the event featured industry, government, and academic speakers. The **program** (https://www.youtube.com/watch?v=65OCKJgwTpA) , its **agenda** (/sites/default/files/inline-

files/agenda_cipr_2020_fall_special_session_program_0_0.pdf) , and **speaker biographie** (/sites/default/files/inline-files/cipr_2020_fall_special_session_program_0_0.pdf) **s** (/sites/default/files/inline-files/cipr_2020_fall_special_session_program_0_1.pdf)  are available to view.

© 1991-2023 National Association of Insurance Commissioners.

All rights reserved.

Stop.Call.Confirm is a registered service mark of the National Association of Insurance Commissioners.

| Privacy Policy | Accessibility | Connect | Workplace | Web CMS |

**SERVICES**

MyNAIC

iSite+

Financial Statement Filing

Automated Valuation Service

Account Manager

**RESOURCES**

Resource Center

Newsroom

Publications

Meetings and Events

Education and Training

Glossary of Insurance Terms

**SUPPORT**

Contact

Help

Careers