**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RS FIT NW LLC, | ) | |
| | ) | Case No. 20-11568 (KBO) |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| 24 HOUR FITNESS WORLDWIDE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY; | ) | Adv. Pro. No. 20-51051 (KBO) |
| ENDURANCE AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY; STARR SURPLUS | ) | |
| LINES INSURANCE COMPANY; ALLIANZ | ) | |
| GLOBAL RISKS US INSURANCE COMPANY; | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY; | ) | |
| BEAZLEY-LLOYD'S SYNDICATES 2623/623; | ) | |
| ALLIED WORLD NATIONAL ASSURANCE | ) | |
| COMPANY; QBE SPECIALTY INSURANCE | ) | |
| COMPANY; and GENERAL SECURITY | ) | |
| INDEMNITY COMPANY OF ARIZONA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MOTION OF THE PROPERTY INSURER DEFENDANTS
## TO EXCLUDE DR. CARNETHON'S PROPOSED EXPERT TESTIMONY

Defendants Continental Casualty Company ("Continental"), Starr Surplus Lines Insurance

Company ("Starr"), Allianz Global Risks US Insurance Company ("Allianz"), Liberty Mutual

Insurance Company ("Liberty Mutual"), Certain Underwriters at Lloyd's ("Underwriters"), Allied

World National Assurance Company ("Allied World"), QBE Specialty Insurance Company

("QBE"), and General Security Indemnity Company of Arizona ("GSINDA") (collectively, the

"Property Insurers"), by and through their undersigned counsel, hereby submit this motion to

exclude (this "<u>Motion to Exclude</u>")[1] the proposed expert testimony of Dr. Mercedes Carnethon. In support of this Motion to Exclude, the Property Insurers respectfully state as follows:

## <u>PRELIMINARY STATEMENT</u>

1.     In order to trigger coverage under the Interruption by Communicable Disease Endorsement ("<u>ICD Endorsement</u>"), 24 Hour Fitness Worldwide, Inc. ("<u>24 Hour</u>") must prove, among other things, that it incurred expenses to clean up, remove and dispose of communicable diseases from insured property and restore the premises *and* such expenses directly resulted from access to a 24 Hour facility being prohibited: (a) ***due to the actual presence of and spread of COVID-19 at a particular location***; and (b) as a direct result of a declaration by a civil authority enforcing any law or ordinance regulating a communicable disease. (Exh. A-4 at A.0227) (Continental Policy, p. 33, at Endorsement 2).[2]

2.     In her expert report and at her deposition, 24 Hour's expert witness Dr. Mercedes Carnethon ("<u>Dr. Carnethon</u>") offered one principal opinion—24 Hour's decision to close all of its gyms was purportedly reasonable because it reasonably *assumed* that COVID-19 was present and spreading at all of its locations. That opinion should be excluded because: (a) it is irrelevant to any issue in this case; (b) Dr. Carnethon is not qualified to opine on the reasonableness of 24 Hour's assumptions; (c) Dr. Carnethon's opinion is not supported by sufficient facts or data; and (d) Dr. Carnethon does not reliably apply her purported methodology or analysis to determine whether

---

[1]      The Adversary Proceeding is a non-core proceeding within the meaning of 28 U.S.C. § 157(b). (*See* Adv. D.I. 68). The Property Insurers have not consented to this Court's entry of final judgments in this Adversary Proceeding. (*See* Adv. D.I. 37 at ¶ 15; Adv. D.I. 40 at ¶ 15; Adv. D.I. 43 at ¶ 15; Adv. D.I. 49 at ¶ 15; Adv. D.I. 53 at ¶ 15; and Adv. D.I. 56 at ¶ 15). By filing this Motion, the Property Insurers do not consent to entry of final judgments by this Court in this Adversary Proceeding or otherwise waive any rights with respect to withdrawal of the reference, all of which rights are reserved.

[2]      For purposes of this Motion, references to the Property Insurers' appendix of exhibits in support of the Property Insurers' Summary Judgment Motion is referred to herein as "Exh A-xxx" and references to 24 Hour's appendix of exhibits in support of the 24 Hour Motion is referred to herein as "24 Hour Appx-xxx".

COVID-19 was *actually* present and spreading at any particular 24 Hour location. It is 24 Hour's burden to come forward with admissible evidence that COVID-19 was *actually* present and spreading at a particular location. Dr. Carnethon has no opinion on that issue and therefore her testimony should be excluded.

3.      Perhaps recognizing the ultimate irrelevancy of her original opinion, Dr. Carnethon offers a completely new opinion in the Carnethon Declaration in support of 24 Hour's *Motion for Partial Summary Judgment*, namely that "communicable diseases, including the flu and the common cold, were also present and spreading at each 24 Hour location, including locations in Los Angeles County . . . ." (Carnethon Declaration at ¶ 40).  24 Hour's attempt to offer this new opinion for the first time in support of its Motion (*and 392 days after the expert witness disclosure deadline*), should be rejected outright by the Court as untimely. But even if considered, Dr. Carnethon's new "flu opinion," like her original opinion, is neither the product of any reliable analysis nor is it based on any facts or data. It is merely *ipse dixit*—because the flu was prevalent in Los Angeles County at the time, it must have been present and spreading in all 24 Hour locations. Dr. Carnethon's new opinion also should be excluded.

## BACKGROUND

4.      Pursuant to the *Fifth Amended Stipulated Scheduling Order* [Adv. D.I. 228] (the "Case Management Order"), the deadline for 24 Hour to submit expert disclosures was October 14, 2022.

5.      On October 21, 2022, 24 Hour served its *Plaintiff's Expert Disclosure Pursuant to Federal Rule of Civil Procedure 26(a)(2)* (the "Carnethon Report") on counsel to the Property Insurers.

6.      On August 16, 2023, the Property Insurers conducted a deposition of Dr. Carnethon, 24 Hour's sole expert in this case.

7.      Dr. Carnethon is an epidemiologist, Professor and Vice Chair of the Department of Preventive Medicine, and Professor of Medicine in Pulmonary and Critical Care at the Northwestern University Feinberg School of Medicine.

8.      In the Carnethon Report, Dr. Carnethon provides the following summary of her professional opinion:

> Based on the prevalence of SARS-CoV-2 and COVID-19 in the United States, including in the communities where 24HF operates; given the nature of 24HF's operations and the information 24HF had regarding the spread of COVID-19 generally, and at its locations; and given the prevalence and presence of individuals with other respiratory illnesses with similar symptoms, and the inability to differentiate them; 24HF's conclusion, as confirmed in deposition testimony in this case, that COVID-19 was actually present and spreading at each of its locations (i.e., among staff, patrons and other visitors) during the winter and early spring of 2020 was reasonable.  Given all of this, I also agree it was reasonable and necessary for 24HF to close all of its locations for the health and safety of individuals visiting its clubs.

(Exh. A-17 at A.0638) (Carnethon Report at p. 5).

9.      Critically, Dr. Carnethon offers no opinion on whether COVID-19 was actually present and spreading at any 24 Hour location. She simply concludes that 24 Hour's assumption that COVID-19 was present and spreading was reasonable.

10.      To support this conclusion, Dr. Carnethon purports to employ the Bradford Hill criteria to "draw conclusions about causality." (Exh. A-17 at A.0636) (Carnethon Report at p. 3). While Bradford Hill criteria are used by epidemiologists to examine causality, Dr. Carnethon misapplies these criteria to support her opinion about the reasonableness of 24 Hour's assumptions.

11.      At Dr. Carnethon's deposition, counsel for the Property Insurers confirmed that all of Dr. Carnethon's opinions were expressed in her Report:

Q.      Are all of the opinions that you intend to express in this case set forth in the report that we've marked as Exhibit 1?

A.      Yes, all of my opinions are represented in this report.

(Exh. A-27 at A.0809) (Carnethon Depo. at 10:1–5).

12.      On November 11, 2023, 24 Hour filed the *Plaintiff 24 Hour Fitness Worldwide, Inc.'s Motion for Partial Summary Judgment* [Adv. D.I. 237, 238] (the "24 Hour Motion").  Also on November 11, 2023, 24 Hour filed the *Declaration of Dr. Mercedes Carnethon in Support of Plaintiff 24 Hour Fitness Worldwide, Inc.'s Motion for Partial Summary Judgment* [Adv. D.I. 241-2] (the "Carnethon Declaration").

13.      Apparently recognizing that Dr. Carnethon's opinion as to the reasonableness of 24 Hour's assumptions is irrelevant to the issues presented in this case, 24 Hour offered the Carnethon Declaration in support of the 24 Hour Motion, positing a completely new opinion—that the flu was actually present and spreading at all 24 Hour locations during the relevant time period. (*See* Carnethon Declaration at ¶ 40). This opinion, in addition to being untimely, suffers the same critical flaws as Dr. Carnethon's original opinion, and should be excluded.

## RELIEF REQUESTED

14.      The Property Insurers ask this Court to exclude Dr. Carnethon's original opinion as to the reasonableness of 24 Hour's assumption that COVID-19 was actually present and spreading at any particular 24 Hour location, as well as Dr. Carnethon's new opinion that the flu and common cold (as well as other unnamed communicable diseases) were actually present and spreading at all 24 Hour locations.

## BASIS FOR RELIEF REQUESTED

**A. The Court Should Exclude as Irrelevant Dr. Carnethon's Original Opinion as to the Reasonableness of 24 Hour's Assumptions.**

15.    As a threshold matter, this Court should exclude as irrelevant Dr. Carnethon's original opinion that 24 Hour's assumption that COVID-19 was actually present and spreading at all 24 Hour locations and that its resultant decision to close all of its gyms was reasonable.

16.    First, it is axiomatic that expert testimony must be relevant to be admissible. *See, e.g.*, *Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1269 (Del. 2013); *Bowen v. E.I. DuPont De Nemours & Co., Inc.*, 906 A.2d 787, 794 (Del. 2006); *Innovative Block of South Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 422 (Tex. 2020); Jeff Todd & R. Todd Jewell, *Dubious Assumptions, Economic Models, and Expert Testimony*, 42 Del. J. Corp. L. 279, 296 (2018).

17.    Here, whether 24 Hour reasonably believed that COVID-19 was actually present and spreading at its gyms (and its subsequent decision to close all of its locations) is completely irrelevant to any issue presented in this case. In order to trigger coverage under the ICD Endorsement, 24 Hour must demonstrate that its claim meets the requirements of that provision. 24 Hour, therefore, bears the burden of proving the "***actual*** presence of and spread of" COVID-19 at a particular location. (Exh. A-4 at A.0227) (Continental Policy, p. 33, at Endorsement 2) (emphasis added). The ICD Endorsement does not contain any requirements based on 24 Hour's subjective beliefs. *See id.*

18.    Dr. Carnethon, however, has no opinion on whether COVID-19 was actually present or spreading at any 24 Hour location. Indeed, 24 Hour curiously never asked her to offer such an opinion:

> Q.    Were you asked as part of your assignment to determine whether COVID 19 was actually present at any particular 24 hour fitness location?
>
> A.    No, I was not ever asked to determine whether COVID 19 was actually present.
>
> Q.    Were you ever asked to determine as part of your assignment whether or not COVID was actually spreading at any particular 24 hour fitness location?
>
> A.    I was not asked to assess whether or not COVID 19 was actually spreading.

(Exh. A-27 at A.0823) (Carnethon Depo. at 24:9–19).

19.    At best, all Dr. Carnethon could say was that 24 Hour's assumption that COVID-19 was present and spreading at any 24 Hour location was "reasonable":

> A.    I took the evidence that 24 hour fitness shared with me and what I did was I used these criteria to make an independent determination about whether or not I thought *their assumption* about the presence was reasonable and the reason that I thought *their assumption* that it was present is reasonable is – based on consistency, analogy and biological plausibility.
>
> Q.    Okay. Let me make sure I understand this. Do you have an opinion one way or the other as to whether COVID 19 was present at any location – at any 24 hour fitness location?
>
> A.    No, I do not have an opinion.
>
> Q.    Do you have an opinion one way or the other whether COVID-19 was spreading at any 24 Hour Fitness location?
>
> A.    I do not have an opinion about whether it was spreading.

(Exh. A-27 at A.0861 at A.0862) (Carnethon Depo. at 62:24, 63:1–18) (emphasis added).

20.    But 24 Hour's "reasonable assumption" is not the same as the actual presence and spread of COVID-19—and it is certainly not sufficient to trigger coverage under the ICD Endorsement.

21.    Finally, the reasonableness of 24 Hour's assumptions about the actual presence and spread of COVID-19 at 24 Hour locations is not an appropriate subject for expert testimony.  In

7

effect, Dr. Carnethon has offered a purported expert opinion as to a legal conclusion—albeit an irrelevant legal conclusion. *See, e.g.*, *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (quoting *United States v. Leo*, 941 F.2d 181, 195–96 (3d Cir. 1991) ("Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that 'embraces an ultimate issue to be decided by the trier of fact,' an expert witness is prohibited from rendering a legal opinion."); *Convertino v. U.S. Dep't of Justice*, 772 F. Supp. 2d 10, 13–14 (D.D.C. 2010) (granting plaintiff's motion to strike expert's proposed testimony amounting to inadmissible legal conclusions as opposed to admissible factual information).

22.     Accordingly, Dr. Carnethon's original opinion as to the reasonableness of 24 Hour's assumptions is irrelevant and should be excluded.

**B. Dr. Carnethon Is Not Qualified to Opine on the Actual Presence and Spread of COVID-19 at Any Particular Location.**

23.     Even if Dr. Carnethon's opinion as to the reasonableness of 24 Hour's assumptions was somehow relevant, she is not qualified to offer such opinions.

24.     Rule 702 of the Federal Rules of Evidence provides that an expert must be "qualified . . . by knowledge, skill, experience, training, or education" in order to offer expert testimony. Fed. R. Evid. 702; *see also Delaware v. Jones*, 2003 WL 21519842, at *2 (Del. July 2, 2003) (discussing Delaware's application of Delaware Rule of Evidence 702, which is identical to its federal counterpart).

25.     Dr. Carnethon testified at her deposition that she had never before conducted any analysis to determine whether COVID-19 was present or spreading at any particular location, other than one instance of volunteer work at her child's pre-school:

Q:     Other than this case, have you ever done any work in determining whether or not COVID-19 is present at any particular location?

A:      No, I have not done any work related to the presence of COVID-19.

Q:      Okay. Have you done any work related to tracking the spread of the COVID-19 virus?

A:      I have volunteered on behalf of my children's [pre-school through 8th grade] school to help them set up appropriate contact tracing for the spread of the COVID-19 virus within the school setting.

Q:      Other than the work for your child's school, have you done any other work related to tracking the COVID-19 virus?

A:      I have not done any work related to that.

(Exh. A-16 at A.0614–A.0615) (Carnethon Depo. at 11:20–24, 12:1–11).

26.      And even though Dr. Carnethon is proffered as an expert in epidemiology, her specialty is in chronic diseases, not infectious diseases. (Exh. A-27 at A.0814) (Carnethon Depo. at 15:17–24). In particular, Dr. Carnethon's area of scientific expertise is the causes and consequences of chronic diseases such as cardiovascular disease, obesity, and diabetes. (Exh. A-27 at A.0814) (Carnethon Depo. at 15:2–7). She does not, in other words, focus on the emergence or spread of infectious diseases or strategies for preventing and containing them.

27.      It is not surprising, therefore, that Dr. Carnethon has never participated in an epidemiological study involving the presence or spread of COVID-19 or that she has never conducted an outbreak investigation of any virus or disease, let alone COVID-19. (Exh. A-27 at A.0815–A.0816) (Carnethon Depo. at 16–17). Indeed, outside of her volunteer work for her child's pre-school, Dr. Carnethon has never even utilized the Center for Disease Control ("CDC") criteria for any outbreak investigations. (Exh. A-27 at A.0817) (Carnethon Depo. at 18).

28.      Nor did Dr. Carnethon conduct an actual investigation into whether COVID-19 was actually present and spreading at any 24 Hour location. She did not visit any 24 Hour gym, she did

ACTIVE\1606202113.8

not review any test results related to any 24 Hour gym, and she could not even recall seeing

photographs of any 24 Hour gyms. (Exh. A-27 at A.0825–A.0826) (Carnethon Depo at 26–27).

29.     Dr. Carnethon is likewise not qualified to testify about the presence or spread of

COVID-19 at any 24 Hour location because she has no expertise, and therefore can offer no

opinion, on the physical properties of the COVID-19 virus, how long the COVID-19 virus can live

on particular surfaces even if actually present, and the mechanism necessary for the COVID-19

virus to spread:

> Q:     Do you agree that SARS Co-V-2 must have a living host of the correct
> species in order to spread?
>
> A:     My expertise is not on the properties of the virus.
>
> *       *       *
>
> Q:     Do you know whether or not SARS Co-V-2 must have a living host of the
> correct species in order to spread?
>
> A:     This is not within my area of expertise.
>
> *       *       *
>
> Q:     Do you know whether or not SARS Co-V-2 is enveloped inside an outer
> layer of proteins and lipids?
>
> A:     Understanding the properties of the virus falls outside of my scope . . . .
>
> Q:     Do you have familiarity with how COVID-19 or SARS Co-V-2 degrades
> into fragments over time?
>
> A:     No, that falls outside of my expertise as well.
>
> Q:     Do you know how long it takes SARS Co-V-2 droplets that are suspended
> in the air to fall to the ground?
>
> A:     I do not.
>
> Q:     Are you aware of a scientific conclusion as to a primary route of
> transmission amongst humans for COVID-19?

A:      I am not familiar with that literature.

Q:      Do you have an understanding as to how long SARS Co-V-2 can stay alive
        on surfaces?

A:      I do not . . . .

(Exh. A-27 at A.0838–A.0842) (Carnethon Depo. at 39:3–8:20–24, 40:1–3:9–14:20–24, 43:13–

22).

30.     And finally, Dr. Carnethon admits that she is not aware of a single confirmed case

of COVID-19 at any 24 Hour location:

Q:      Do you know as you sit here today whether or not 24 Hour Fitness had a
        single    confirmed    COVID-19    case    at    any    of    its    locations?

A:      I do not know that . . . .

*        *        *

Q:      Do you know whether or not 24 Hour Fitness closed any particular location
        as a result of any particular report of a positive person being at the premises?

A:      Nothing – no, nothing like that was shared with me.

(Exh. A-27 at A.0856, A.0867–A.0868) (Carnethon Depo. at 57:8–12, 68:23–24, 69:1–4).

31.     While Dr. Carnethon may be a well-qualified epidemiologist in the area of chronic

diseases (not infectious diseases), she is roundly unqualified to offer an opinion on the presence

and spread of COVID-19 at 24 Hour gyms in this case (or the reasonableness of 24 Hour's

assumptions in this regard). She has never participated in any study related to the presence or

spread of COVID-19 nor has she ever conducted an outbreak investigation for any disease or virus.

She has never visited a 24 Hour gym, seen photos of the gyms, or done any other analysis of any

particular 24 Hour location. She is not even aware of a single confirmed case of COVID-19 at any

24 Hour location. And perhaps most importantly, Dr. Carnethon admits she has no expertise with

how COVID-19 actually interacts with surfaces or spreads from person to person. Simply stated,

11

Dr. Carnethon has no expertise in evaluating the presence and spread of COVID-19, and therefore should not be permitted to opine on the reasonableness of 24 Hour's assumption that COVID-19 was actually present and spreading in all of its gyms.

**C. The Court Should Exclude Dr. Carnethon's Original Opinion Because It Is Not Based on Sufficient Facts or Data.**

32.    Even if this Court were to conclude that Dr. Carnethon's opinions are relevant and that she is qualified to offer them, the Court nevertheless should exclude her testimony as to the reasonableness of 24 Hour's assumptions about the actual presence and spread of COVID-19 at its gyms because it is not based on sufficient facts or data.

33.    Here, Dr. Carnethon conducted no study or analysis to determine whether COVID-19 was actually present and spreading at any 24 Hour location. Dr. Carnethon admits:

- She is not aware of COVID-19 being present at any particular 24 Hour location (Exh. A-16 at A.0617) (Carnethon Depo. at 24:9–13);

- She is not even aware of a single confirmed case of COVID-19 at any 24 Hour location (Exh. A-27 at A.0856) (Carnethon Depo. at 57:8–12);

- She is not aware of 24 Hour closing or prohibiting access to any gym due to a positive case of COVID-19 at that gym (Exh. A-27 at A.0867–A.0868) (Carnethon Depo. at 68:23–24, 69:1–4);

- She is not aware of COVID-19 spreading at any particular 24 Hour location (Exh. A-16 at A.0617) (Carnethon Depo. at 24:14–19);

- She is not aware of any person who tested positive for COVID-19 being present at any 24 Hour gym (Exh. A-27 at A.0867–A.0868) (Carnethon Depo. 68:23–24, 69:1–4);

- She is not aware of any person contracting COVID-19 while at any 24 Hour gym (Exh. A-27 at A.0877) (Carnethon Depo. at 78:9–15);

- She is not aware of any health department reaching out to 24 Hour about the presence or spread of COVID-19 at any particular location. (Exh. A-27 at A.0877) (Carnethon Depo. at 78:16–22);

ACTIVE\1606202113.8

- She is not aware of any governmental order prohibiting access to any 24 Hour gym due to the presence and spread of COVID-19 at that gym. (Exh. A-16 at A.0621–A.0622) (Carnethon Depo. at 73:17–24, 74:1–4);

- She does not know how COVID-19 interacts with surfaces or how long it can remain on surfaces at 24 Hour gyms. (Exh. A-27 at A.0842–A.0843) (Carnethon Depo. at 43:18–24, 44:1–5); and

- She does not know how COVID-19 spreads from human to human (Exh. A-27 at A.0842) (Carnethon Depo. at 43:12–17).

34.    In short, Dr. Carnethon has no facts or data, let alone sufficient facts or data, showing that COVID-19 was actually present or spreading at any 24 Hour location. It follows, therefore, that Dr. Carnethon cannot opine that 24 Hour's assumption that COVID-19 was actually present and spreading at its Los Angeles County locations was reasonable. There is simply no basis for such an opinion.

### D. Dr. Carnethon's Original Opinion Is Not the Product of a Reliable Application of Principles and Methods to the Facts of This Case.

35.    When considering whether an expert's testimony is "reliable", the United States Supreme Court delineated a non-exhaustive test that courts should consider: (1) whether the expert's technique or theory can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether there is a high error rate for the expert's technique, and whether there are standards controlling the operation; and (4) whether the expert's technique or theory is generally accepted by the relevant scientific community. *Daubert v. Merrell Dow Pharma, Inc.,* 509 U.S. 579, 592–94 (1993); *see also Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1270 (Del. 2013) (applying *Daubert* to exclude admission of expert testimony as unreliable); *Bowen v. E.I. DuPont De Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del. 2006)

ACTIVE\1606202113.8

(applying five-step test similar to *Daubert* to exclude unreliable expert testimony which failed to recognize established EPA guidelines).

36.     Here, Dr. Carnethon purports to have conducted a Bradford Hill analysis in support of her expert opinions. Specifically, she claims to have used some of the Bradford Hill criteria to confirm the reasonableness of 24 Hour's assumption that COVID-19 was present and spreading at its Los Angeles County locations. (Exh. A-17 at A.0654–A.0654) (Carnethon Report at pp. 20–21); (Exh. A-27 at A.0859) (Carnethon Depo. at 60:7–9).

37.     "The Bradford Hill factors form the generally accepted set of criteria by which, when reliably applied, modern practicing epidemiologists assign causality to an association." *Daniels-Feasel v. Forest Pharma., Inc.*, 2021 WL 4037820, at *6 (S.D.N.Y. Sept. 3, 2021) (citing *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 858 F.3d 787, 795 (3d Cir. 2017). A Bradford Hill analysis examines nine metrics: (i) strength of association/statistical association; (ii) temporality; (iii) biological plausibility; (iv) biologic coherence; (v) biologic gradient/dose-response effect; (vi) consistency; (vii) analogy; (vii) experimental evidence; and (ix) specificity. *See id.* at *6–7.

38.     To start, a Bradford Hill analysis is inappropriate under the circumstances to support Dr. Carnethon's opinion as to the reasonableness of 24 Hour's assumptions. The Property Insurers have not identified any case, study, or peer reviewed article that has applied the Bradford Hill criteria to the reasonableness of an assumption regarding whether a virus is actually present and spreading at a location. Thus, while Bradford Hill is an appropriate methodology for assigning causality to an association, Dr. Carnethon does not reliably apply that methodology to the issues presented here.

ACTIVE\1606202113.8

39.      And even if it were appropriate to utilize the Bradford Hill criteria in this case, Dr. Carnethon misapplies the methodology. Experts who apply methodologies such as Bradford Hill must "rigorously explain how they have weighted the criteria" because "'[o]therwise, such methodologies are virtually standardless and their applications to a particular problem can prove unacceptably manipulable.'" *Daniels-Feasel v. Forest Pharma., Inc.*, 2021 WL 4037820, at *7 (S.D.N.Y. Sept. 3, 2021) (quoting *In re Mirena lus Levornorgestrel-Related Prods. Liab. Litig.* (No. II), 341 F. Supp. 3d 213, 247 (S.D.N.Y. 2018)).  Absent such analysis, Bradford Hill becomes "a mere conclusion-oriented selection process." *In re Zoloft*, 858 F.3d at 796.

40.      The court in *Mirena* discussed these issues at length in connection with proposed expert testimony from Dr. Lemuel A. Moyé, an epidemiologist and trained medical doctor with a Ph.D. in community sciences biostatistics, regarding whether an intrauterine device can cause idiopathic intracranial hypertension. *In re Mirena*, 341 F. Supp. at 217. There, Dr. Moyé's proposed testimony asserted that all nine Bradford Hill metrics demonstrated causation. *Id.* at 246–47. Even though the court acknowledged that Dr. Moyé's testimony was the most thorough and substantial of the experts involved in the case, the court still found serious methodological deficiencies in his analysis. *Id.* at 247. First, the court explained, "At the most general level, his report does not explain the weight that he attaches to any of the Bradford Hill criteria or address the relationship among them … Dr. Moyé's approach effectively disables a finder of fact from critically evaluating his work." *Id.* at 248. The court went on to discuss the deficiencies in Dr. Moyé's analysis as to each of the nine metrics, specifically noting with respect to biologic plausibility that Dr. Moyé was, by any measure, unqualified to give an expert opinion. *Id.* at 251. Ultimately, the court excluded Dr. Moyé's proposed testimony. *Id.* at 253.

41.    Dr. Carnethon's proposed Bradford Hill analysis is even more flawed than that of Dr. Moyé's. Dr. Carnethon only looked at four of the nine factors and failed to identify what weight, if any, she applied to each. (Exh. A-17 at A.0653–A.0654) (Carnethon Report at pp. 20–21); (Exh. A.27 at A.0853–A.0856) (Carnethon Depo. at 54:23–24, 55:1–24, 56:1–24, 57:1–18). Nor did she explain why she failed to consider the other five Bradford Hill criteria (i.e., strength of association/statistical association, temporality, biologic gradient/dose-response effect, experimental evidence, or specificity). Rather, Dr. Carnethon baldly asserts, "Not all criteria must be met in order to determine the likelihood of an association; however, when multiple criteria are present, the argument for causality is strengthened." (Exh. A-17 at A.0653) (Carnethon Report at p. 20).

42.    Not only does Dr. Carnethon fail to properly apply and weigh the Bradford Hill criteria, but her analysis of biologic plausibility is particularly unreliable. Stated in full, Dr. Carnethon's discussion of biologic plausibility is as follows:

> That COVID-19 was spreading through person-to-person transmission was biologically plausible given the similarity of the SARS-CoV-2 virus to other respiratory viruses that cause the common cold, influenza and the initial SARS virus. Small virus particles are inhaled by people and animals breathing within the same geographic unit of space. Theoretically, if these viral particles remain alive on surfaces, they can additionally infect individuals who touch these surfaces and transfer the virus to their own respiratory track through the mouth, nose or even the eyes. Thus, the decision by 24HF to close was based on the biological plausibility that individuals inside their clubs were spreading the SARS-CoV-2 virus that causes COVID-19 by breathing together in close proximity.

(Exh. A-17 at A.0653) (Carnethon Report at p. 20).

43.    During her deposition, however, Dr. Carnethon acknowledged her complete lack of expertise on the biological aspects of COVID-19:

> Q.    Do you know whether or not SARS-CoV-2 must have a living host of the correct species in order to spread?

ACTIVE\1606202113.8

A.      This is not within my area of expertise …

Q.      Do you know whether or not SARS-CoV-2 is enveloped inside an outer
        layer of proteins and lipids?

A.      Understanding the properties of the virus falls outside of my scope …

Q.      Do you have familiarity with how COVID 19 or SARS-CoV-2 degrades
        into fragments over time?

A.      No that falls outside of my expertise as well.

Q.      Do you know how long it takes SARS-CoV-2 droplets that are suspended
        in air to fall to the ground?

A.      I do not.

(Exh. A-27 at A.0833–A.0834) (Carnethon Depo. at 34:3–8:20–24, 35:1:9–14:20–24). Simply put,

absent the appropriate expertise to understand the qualities of COVID-19, its degradation

over time, and characteristics of its transmission, Dr. Carnethon's analysis of biologic plausibility

is unreliable.

44.      At bottom, the Carnethon Report is nothing more than 24 Hour "reverse-

engineering a theory to fit the desired outcome." *In re Mirena IUD Prods. Liab. Litig.*, 169 F.

Supp. 3d 396, 430 (S.D.N.Y. 2016). Accordingly, the Court should exclude Dr. Carnethon's

proposed expert testimony.

**E.  This Court Should Exclude Dr. Carnethon's New Opinion.**

45.      This Court also should strike Dr. Carnethon's new opinion that the flu, common

cold, and other unnamed communicable diseases were actually present and spreading at all 24

Hour locations because (a) it is untimely and therefore violates the Case Management Order and

Rule 26(a)(2) and (b) it suffers from the same reliability flaws as her original opinion.

ACTIVE\1606202113.8

**i.    Dr. Carnethon's New Opinion Should Be Excluded as Untimely.**

46.    The Case Management Order provided that all expert disclosures must have been exchanged by October 14, 2022.  24 Hour served Dr. Carnethon's Report on the Property Insurers on October 21, 2022. In the Carnethon Report, Dr. Carnethon offered no opinion about whether the flu, common cold, or other communicable diseases were actually present and spreading at any particular 24 Hour location.[3] In fact, as explained above, she could not even say that COVID-19 was actually present and spreading at any 24 Hour gym.

47.    At her deposition, Dr. Carnethon confirmed that all of the opinions she intended to offer in this case were contained in the Carnethon Report. (Exh. A-27 at A.0809) (Carnethon Depo. at 10:1–5).

48.    Nevertheless, in her Declaration in support of 24 Hour's Motion for Partial Summary Judgment, Dr. Carnethon offers an entirely new opinion—***392 days after the deadline for expert disclosures***. She now opines:

> [T]o a scientific certainty, it is my opinion that communicable diseases, including the flu and the common cold, were also present and spreading at each 24 Hour location, including locations in Los Angeles County, California, during the period of time leading up to the club closures on March 16, 2020.

(Carnethon Declaration at ¶ 40).

49.    Dr. Carnethon offers no explanation for how she arrived at this new opinion. She does not claim to have used the Bradford Hills criteria, nor did she conduct any type of outbreak

---

[3]    While Dr. Carnethon's report does discuss the alleged similarities between flu symptoms and COVID-19 symptoms, and suggests, somewhat cavalierly that, "[it] is without reasonable dispute that individuals with the common cold and related symptoms would have been present in each of the 24HF location during this period, as well as individuals with the flu," (Exh. A-17 at A.0645) (Carnethon Report at p. 12), she offers no analysis for this conclusion. There is no evidence in this case that anyone with the flu was present at any 24 Hour location, nor does Dr. Carnethon opine in her Report (as she does in her Declaration) that the flu was spreading at any 24 Hour location. And, of course, there is no evidence that access to any 24 Hour location was prohibited by any governmental order because the flu was actually present and spreading at any such location. Instead, Dr. Carnethon's Report discussed the similarities between flu and COVID-19 symptoms as support for her opinion that 24 Hour's decision to close all of its locations was reasonable.

investigation. Instead, she simply makes the assertion "to a scientific certainty" without citing to any science at all.

50.    Rule 26(a)(2) of the Federal Rules of Civil Procedure provides, in relevant part, that parties are required not only to identify their respective experts in accordance with applicable deadlines, but also to provide a written report that includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them …." Fed. R. Civ. P. 26(a)(2)(B)(i). This rule allows opposing parties to "have a reasonable opportunity [to] prepare for effective cross examination and, perhaps, arrange for expert testimony from other witnesses." *Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 31, 36 (S.D.N.Y. 2014) (quoting *LaMarca v. United States*, 31 F. Supp. 2d 110, 122 (E.D.N.Y. 1999) (excluding supplement disclosure "unquestionably 'designed to fill a significant and logical gap' in Dr. Fan's past reports, in contravention of the expert disclosure requirements"); *see also Lincoln Benefit Life Company v. Alexander Dallal*, 2018 WL 11303206, at *4 (C.D. Cal. June 19, 2018); *Luke v. Family Care & Urgent Medical Clinics*, 323 Fed. App. 496, 500 (9th Cir. 2009) (affirming the exclusion of a plaintiff's untimely expert declaration, which "impermissibly attempted to fix the weakness, identified by the Clinic Defendants in their summary judgment motion … to establish causation").

51.    Here, 24 Hour's decision to proffer a new opinion from Dr. Carnethon ***392 days after the expert disclosure deadline and 77 days after the close of expert discovery*** prevented the Property Insurers from questioning Dr. Carnethon at her deposition about the basis for this new opinion and what, if any, analysis she did to arrive at such an opinion. This Court should not countenance such trial by surprise, and Dr. Carnethon's new opinion should be excluded as untimely. *See, e.g.*, *Callwave Commc's, L.L.C. v. AT&T Mobility LLC*, 2015 WL 13730253, at *1

(D. Del. Dec. 17, 2015) (citing *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir.

1990) ("When expert testimony is not timely disclosed, the court has the authority to exclude that

testimony from evidence."); *Bearbox LLC v. Lancium LLC*, 2022 WL 17403466, at *3 (D. Del.

Nov. 23, 2022) (striking untimely and prejudicial expert testimony).

> ## ii. Dr. Carnethon's New Opinion Should Be Excluded for the Same Reasons as Her Original Opinion.

52.     Even if Dr. Carnethon's new expert opinion was not untimely, substantively, it still

suffers from the same flaws as her original opinion.

53.     First, Dr. Carnethon's new expert opinion about the flu and common cold has no

relevance to 24 Hour's claim for coverage under the ICD Endorsement for losses purportedly

caused by COVID-19. *See* Complaint [Adv. D.I. 1] at ¶¶ 44, 59–61. 24 Hour has offered no

evidence that access to any 24 Hour gym was prohibited due to the actual presence and spread of

the flu or common cold at that location. 24 Hour's Complaint does not even contain any allegations

that it is seeking coverage under the ICD Endorsement because of the actual presence and spread

of the flu or common cold. Nor does the Complaint allege that access to any 24 Hour location was

prohibited due to the flu or common cold. In fact, the words "influenza", "flu", and "cold" do not

appear anywhere in the Complaint. *See* Complaint at ¶ 61 ("The presence and spread of COVID-

19 throughout the community, including at Plaintiff's fitness club locations, led to the closure

orders discussed above.").

54.     Second, Dr. Carnethon is not qualified to opine on the actual presence and spread

of the flu or common cold for the same reasons she is not qualified to opine on the actual presence

and spread of COVID-19.

55.     Third, Dr. Carnethon's "flu opinion" is not supported by sufficient facts and data.

She does not cite any evidence of any confirmed case of the flu or common cold, let alone any

evidence of anyone with the flu at a 24 Hour gym. Nor can she point to anyone who contracted the flu or common cold at any 24 Hour gym. Perhaps most importantly, there is no government order that prohibited access to any 24 Hour gym due to the actual presence or spread of the flu or common cold at any 24 Hour location. Simply put, there are zero facts or data to support Dr. Carnethon's new opinion that the flu or common cold was actually present and spreading at any 24 Hour location.

56.     Finally, Dr. Carnethon does not even attempt to apply her Bradford Hill analysis to her conclusion that the flu or common cold was actually present and spreading at all 24 Hour locations. Indeed, Dr. Carnethon conducted no analysis to support this conclusion.

57.     Accordingly, even if this Court were to excuse the untimeliness of Dr. Carnethon's new opinion, it should nevertheless be excluded.

Dated: January 12, 2024

/s/ Matthew S. Sarna
Matthew S. Sarna (Bar No. 6578)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Tel: (302) 468-5659
Fax: (302) 394-2341
Email: matthew.sarna@us.dlapiper.com

Brett Ingerman (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
Harbor East
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202-4576
Tel: (410) 580-3000
Fax: (410) 580-3001
Email: brett.ingerman@us.dlapiper.com

*Attorneys for Continental Casualty Company*

ACTIVE\1606202113.8

**HOGAN McDANIEL**

/s/ *Garvan F. McDaniel*
Garvan F. McDaniel (Bar No. 4167)
1311 Delaware Avenue
Wilmington, DE 19806
Tel: (302) 656-7596
Fax: (302) 656-7599
Email: gfmcdaniel@dkhogan.com

Benjamin W. Loveland (admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6641
Email: Benjamin.loveland@wilmerhale.com

Lauren R. Lifland (admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Email: lauren.lifland@wilmerhale.com

*Counsel to Continental Casualty Company; Starr Surplus Lines Insurance Company; Allianz Global Risks US Insurance Company; Certain Underwriters at Lloyd's of London subscribing to Policy No. W27C0A190101; incorrectly sued as "Beazley-Lloyd's Syndicates 2623/623"; QBE Specialty Insurance Company and General Security Indemnity Company of Arizona*

**GELLERT SCALI BUSENKELL & BROWN, LLC**

/s/ *Michael Busenkell*
Michael Busenkell (Bar No. 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Tel: (302) 425-5812
Email: mbusenkell@gsbblaw.com

22

Richard G. Haddad (admitted *pro hac vice*)
**OTTERBOURG, P.C.**
230 Park Avenue
New York, NY 10169-0075
Tel: (212) 661-9100
Email: rhaddad@otterbourg.com

Deanna M. Manzo (admitted *pro hac vice*)
**MOUND COTTON WOLLAN &
GREENGRASS, LLP**
One New York Plaza
New York, NY 10004
Tel: (212) 804-4200
Email: dmanzo@moundcotton.com

*Counsel to Allied World National
Assurance Company*

Marlie McDonnell (admitted *pro hac vice*)
**CLYDE & CO US LLP**
271 17th Street NW, Suite 1720
Atlanta, GA 30363
Tel: (404) 410-3150
Email: marlie.mcdonnell@clydeco.us

*Counsel to Allianz Global Risks US
Insurance Company*

Courtney E. Murphy (admitted *pro hac vice*)
Kyle M. Medley (admitted *pro hac vice*)
Adam S. Cohen (admitted *pro hac vice*)
**HINSHAW & CULBERTSON LLP**
800 Third Avenue, 13th Floor
New York, NY 10022
Tel: (212) 471-6200
Email: cmurphy@hinshawlaw.com

*Counsel to Starr Surplus Lines Insurance Company
and Certain Underwriters at Lloyd's of London
subscribing to Policy No. W27C0A190101,
incorrectly sued as "Beazley-Lloyd's Syndicates
2623/623"*

ACTIVE\1606202113.8

Matthew M. Burke (admitted *pro hac vice*)
**ROBINSON & COLE LLP**
One Boston Place, 25th Floor
Boston, MA 02108
Tel: (617) 557-5996
Email: mburke@rc.com

Douglas R. Gooding (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA 02110
Tel: (617) 248-5000
Email: dgooding@choate.com
         jmarshall@choate.com

*Counsel to Liberty Mutual Fire Insurance Company*

Elizabeth Kniffen (admitted *pro hac vice*)
Dennis Anderson (admitted *pro hac vice*)
**ZELLE LLP**
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55414
Tel: (612) 359-4261
Email: ekniffen@zellelaw.com
         danderson@zellelaw.com

*Counsel to QBE Specialty Insurance Company and
General Security Indemnity Company of Arizona*

ACTIVE\1606202113.8