## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RS FIT NW LLC, | ) | |
| | ) | Case No. 20-11568 (TMH) |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| 24 HOUR FITNESS WORLDWIDE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY; | ) | Adv. Pro. No. 20-51051 (TMH) |
| ENDURANCE AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY; STARR SURPLUS | ) | |
| LINES INSURANCE COMPANY; ALLIANZ | ) | |
| GLOBAL RISKS US INSURANCE COMPANY; | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY; | ) | |
| BEAZLEY-LLOYD'S SYNDICATES 2623/623; | ) | |
| ALLIED WORLD NATIONAL ASSURANCE | ) | |
| COMPANY; QBE SPECIALTY INSURANCE | ) | |
| COMPANY; and GENERAL SECURITY | ) | |
| INDEMNITY COMPANY OF ARIZONA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### PLAINTIFF 24 HOUR FITNESS WORLDWIDE, INC.'S OPPOSITION TO EXCESS INSURERS' MOTION FOR SUMMARY JUDGMENT

David E. Weiss (admitted *pro hac vice*)
T. Connor O'Carroll (admitted *pro hac vice*)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
Telephone: (415) 543-8700
E-mail:  dweiss@reedsmith.com
E-mail:  cocarroll@reedsmith.com

Counsel for Plaintiff 24 HOUR FITNESS
WORLDWIDE, INC.

Mark W. Eckard (No. 4542)
REED SMITH LLP
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
E-mail:  meckard@reedsmith.com

# TABLE OF CONTENTS

**Page**

I.   NATURE OF THE PROCEEDING .................................................................................... 1

II.   SUMMARY OF ARGUMENT ......................................................................................... 1

III.   STATEMENT OF FACTS ............................................................................................... 2

IV.   ARGUMENT .................................................................................................................... 5

    A.   The Excess Insurers' Policies Contain an Explicit Communicable Disease Endorsement, Providing an Additional $2.5 Million Per Occurrence Within Their Excess Layer ................................................................................................. 5

    B.   The Excess Insurers' Motion is Premature and, at a Minimum, Ruling Should Be Deferred Until Phase II of This Proceeding ..................................................... 9

V.   CONCLUSION ............................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alston v. Parker*,
    363 F.3d 229 (3d Cir. 2004) .................................................................................9

*Books v. United Nat'l Ins. Co.*,
    No. 157328/2013, 2017 N.Y. Misc. Lexis 13967 (Sup. Ct. Aug. 21, 2017) .............................7

*Collin v. Am. Empire Ins. Co.*,
    21 Cal. App. 4th 787 (1994) .................................................................................2, 5

*Grant v. Shalala*,
    989 F.2d 1332 (3d Cir. 1993) ...............................................................................8

*Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*,
    211 Cal. App. 3d 1285 (1989) ..............................................................................5

*Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*,
    898 F.2d 946 (3d Cir. 1990) .................................................................................9

*JRK Prop. Holdings, Inc. v. Colony Ins. Co.*,
    96 Cal. App. 5th 1 (2023) .....................................................................................8

*Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*,
    132 Cal. App. 4th 1058 (2005) ..........................................................................2, 5, 6

*In re Primes*,
    518 B.R. 466 (Bankr. N.D. Ill. 2014) ...................................................................8

*Safeco Ins. Co. v. Robert S.*,
    26 Cal. 4th 758 (2001) ......................................................................................5, 6

Plaintiff 24 Hour Fitness Worldwide Inc. ("24 Hour") incorporates herein its separate Opposition to the Property Insurers' Motion for Summary Judgment in this matter, which it files concurrently herewith.[1]  Additionally, 24 Hour submits this Opposition in response to QBE Specialty Insurance Company ("QBE"), General Security Indemnity Company of Arizona ("General Security of Arizona"), and Allianz Global Risks US Insurance Company ("Allianz") (collectively, "Excess Insurers") Motion for Partial Summary Judgment ("Motion") concerning coverage to 24 Hour under their respective excess policies.

## I.      NATURE OF THE PROCEEDING

In the interest of brevity, this Opposition incorporates in full the Statement concerning the Nature of the Proceeding from 24 Hour's Opposition to the Property Insurers' Summary Judgment Motion.

## II.      SUMMARY OF ARGUMENT

The Excess Insurers joined the Property Insurers' Motion for Summary Judgment seeking to disclaim all coverage for 24 Hour under the policies for 24 Hour's pandemic-related losses.[2]

The Excess Insurers write separately to address a single issue:  whether their excess policies, which contain explicit endorsements providing coverage to 24 Hour for losses caused by Interruption by Communicable Disease (the "Communicable Disease Endorsement"), actually do provide such coverages.  According to the Excess Insurers, and notwithstanding their explicit Communicable Disease Endorsements, it is "impossible" for their policies to provide coverage for communicable disease losses because 24 Hour's communicable disease claims may not exceed

---

[1]      "Property Insurers" means Defendants Continental Casualty Company; Starr Surplus Lines Insurance Company; Allianz Global Risks US Insurance Company; Liberty Mutual Fire Insurance Company; Certain Underwriters at Lloyd's, London; Allied World National Assurance Company; QBE Specialty Insurance Company; and General Security Indemnity of Arizona.

[2]      24 Hour opposes the Property Insurers' Motion in full and has submitted a separate Opposition to their Motion, which 24 Hour files concurrently herewith.

$2,500,000 per occurrence, and their policies only provide coverage for losses exceeding $20,000,000 per occurrence.[3]  The Excess Insurers' Motion should be denied for the following reasons:

1.      Excess Insurers' arguments should be rejected in full because the Excess Insurers' policies contain explicit Communicable Disease Endorsements that cannot be read out of their excess policies.  Indeed, if this Court, as the Excess Insurers suggest, determined that the excess policies do not provide coverage to 24 Hour for communicable disease losses, it would render such explicit coverages meaningless, which would violate well-settled law.  *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 818 (1994) (stating that a court "cannot read a policy term in such a way that would render some of its words meaningless").  Instead, this Court should read the policies so "as to give effect to every term" therein and avoid any interpretation that renders any policy provision "superfluous."  *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1073 (2005).

2.      At the very least, the Excess Insurers' Motion is premature, and this Court should defer ruling on these excess insurance issues until Phase II of this litigation.

### III.      STATEMENT OF FACTS[4]

In the interest of brevity, this Opposition incorporates 24 Hour's Statement of Facts from its Opposition to the Property Insurers' Principal Summary Judgment Motion.  Also, to the extent the Excess Insurers rely on any facts stated in the Property Insurers' Principal Summary Judgment Motion, 24 Hour incorporates its objections to such facts, which it files concurrently herewith.

---

[3]      The number of occurrences with respect to 24 Hour's claims, including claims under the Communicable Disease Endorsement, will be decided in Phase II of this litigation.  [DI-66].

[4]      24 Hour objects to Excess Insurers' incorporated statement of facts as it contains improper arguments contrary to Local Rule 7007-2(b)(i)(E).

The Excess Insurers' policies contain provisions that control the order of payments between primary and excess insurance, and when the primary or excess layer is triggered. The Excess Insurers' policies explain that the primary policies "shall first apply to loss or damage" and, upon exhaustion of the primary limits, the Excess Insurers' policies "shall then be liable for the loss uncollected from the coverage(s) or peril(s) insured hereunder, subject to the Limit of Liability specified herein." Appx, Ex. 5 at 268; Appx, Ex. 9 at 516. For example, the Excess Insurers' policies state as follows:

A. Primary

Any recoveries made under the primary shall first apply to loss or damage not insured against by the excess policy(ies). Upon exhaustion of the primary limit, the excess policy(ies) shall step down and be liable for loss in the excess of the amount attributed to such policy as respects loss or damage insured thereunder subject to the excess policy(ies) limits.

B. Excess

The amount of loss from any one occurrence, for which this policy is excess, shall be determined by combining the loss, damage or expense as insured under the primary policy.

In the event of loss or damage involving more than one coverage or peril, the Limits of Liability of the underlying policies shall first apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any, to the coverage(s) or peril(s) as provided hereunder. <u>Upon erosion or exhaustion of the Limits of Liability of underlying policy(ies), this policy shall then be liable for the loss uncollected from the coverage(s) or peril(s) insured hereunder, subject to the Limit of Liability specified herein.</u>

Appx, Ex. 5 at 268–269; Appx, Ex. 9 at 516–517. (Emphasis added).

Importantly, the Excess Insurers' policies contain a "Limits of Liability" provision that lists certain sublimits that the Excess Insurers agreed to pay for specified covered losses. Appx, Ex. 5 at 248–249; Appx, Ex. 9 at 496–497. One of the sublimits listed in the Excess Insurers' policies is a $2,500,000 per occurrence sublimit for "Interruption by Communicable Disease," which applies to losses arising under the Communicable Disease Endorsement for the presence

and spread of communicable diseases at insured locations. *Id.*[5] Similarly, the primary policies also contain their own $2,500,000 per occurrence sublimit for such communicable disease coverage. Appx, Ex. 2 at 73; Appx, Ex. 4 at 191; Appx, Ex. 6 at 312; Appx, Ex. 7 at 376; Appx, Ex. 8 at 441. The Excess Insurers' policies state:

> **3.   LIMITS OF LIABILITY**
>
> The Company(ies) shall not be liable for more than its proportion of the following limits for any one occurrence, applicable separately to each limit, irrespective of the sequence of occurrences, whether or not proximate or ensuing as respects loss or damage arising out of all coverages insured against under this policy:

* * *

> **B.   Sublimits:**
>
> The liability of the Company(ies) resulting from loss or damage insured against shall not exceed more than its proportion of:
>
> | | | |
> |---|---|---|
> | 1) | $10,000,000 | Accounts Receivable; |
> | 2) | 45 Days | Civil Authority; |
> | 3) | $25,000,000 | Course of Construction including erection, installation & assembly; |
> | 4) | $5,000,000 | Contingent Time Element and Contingent Extra Expense; |
> | 5) | $10,000,000 | Electronic Data Processing Equipment and Media; |
> | 6) | $10,000,000 | Extra Expense; |
> | 7) | $2,500,000 | Fine Arts; |
> | 8) | 45 Days | Ingress/Egress; |
> | 9) | $2,500,000 | Interruption by Communicable Disease; |
> | 10) | $2,500,000 | Leader Properties; |

The Excess Insurers also included specific policy provisions that alter the sublimits of certain coverages in the Excess policies. Appx, Ex. 5 at 300. For example, Allianz included an

---

[5]      Not all of 24 Hour's Property Insurers included the Communicable Disease Endorsement. In fact, one of 24 Hour's Property Insurers, Endurance American Specialty Insurance Company, added an **exclusion** for Communicable Diseases. Appx, Ex. 3 at 155.

- 4 -

endorsement changing the sublimits for certain losses, including hazardous substances, ammonia contamination, and temporary removal of property. Appx, Ex. 5 at 300. Notably, no Excess Insurer altered its $2,500,000 per occurrence sublimit for the Communicable Disease losses. *See* Appx, Ex. 5; Appx, Ex. 9.

Reading these provisions together, as required by California insurance law, the Excess Insurers' policies contain their own $2,500,000 per occurrence sublimit for the communicable disease coverage, and this sublimit applies once the $2,500,000 per occurrence sublimit in the primary layer is exhausted.

## IV.   ARGUMENT

**A.   The Excess Insurers' Policies Contain an Explicit Communicable Disease Endorsement, Providing an Additional $2.5 Million Per Occurrence Within Their Excess Layer**

The Excess Insurers' Motion should be denied in full because their policies contain explicit coverages and sublimits for communicable disease losses and accepting the Excess Insurers' interpretation of their policies would render such provisions meaningless.

Under California law, insurance policies must be "read as a whole" with each part being read "in conjunction with other portions thereof." *Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*, 211 Cal. App. 3d 1285, 1298 (1989). In assessing a policy, courts should be mindful not to adopt any interpretation that "would render some of its words meaningless." *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th at 818. Instead, courts must read insurance policies so "as to give effect to every term" therein and avoid any interpretation that renders any policy provision "superfluous." *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132 Cal. App. 4th at 1073. Importantly, when certain terms in a policy conflict or raise ambiguity, such ambiguity is "resolved in the insureds' favor, consistent with the insureds' reasonable expectations." *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 763 (2001).

Here, the Excess Insurers' policies are clear that upon "erosion or exhaustion of the Limits of Liability of underlying policies" the excess policies "***shall then be liable for the loss uncollected from the coverage(s) or peril(s) insured hereunder, subject to the Limit of Liability specified herein***." Appx, Ex. 5 at 268–269; Appx, Ex. 9 at 516–517 (emphasis added). The "Limit of Liability" specified in the Excess Insurers' policies for "Interruption by Communicable Disease," which is a line of coverage explicitly granted by the Communicable Disease Endorsement in the Excess Insurers' policies, is $2,500,000 per occurrence. Appx, Ex. 5 at 248–249; Appx, Ex. 9 at 496–497.

Applying the foregoing legal principles, consistent with the plain language of the Excess Insurers' policies, coverage is provided for communicable disease losses in excess of $2,500,000 per occurrence (the limit stated in the primary policies) up to their excess sublimit of $2,500,000 per occurrence (for a total of at least $5,000,000 in coverage per occurrence). Appx, Ex. 5 at 248–249; Appx, Ex. 9 at 496–497. To hold otherwise, as the Excess Insurers suggest, would render their Communicable Disease Endorsement coverages a nullity, violating well-settled policy interpretation principles. *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132 Cal. App. 4th at 1073.

Moreover, to the extent there is any ambiguity regarding how the Excess Policies' limits attach, such ambiguity must be resolved in 24 Hour's favor consistent with 24 Hour's reasonable expectations. *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th at 763 (ambiguity is "resolved in the insureds' favor, consistent with the insureds' reasonable expectations"). 24 Hour's understanding that these excess policies grant communicable disease coverage for losses above the $2,500,000 per occurrence primary sublimit up to the sublimits of the excess policies is reasonable because the Excess Insurers included explicit communicable disease coverages in their policies, and such reading gives meaning to such coverages. If the Excess Insurers wanted to convey to 24 Hour that

they did not intend to cover losses from communicable diseases, they could have deleted the Communicable Disease Endorsement from their policies through a clear and explicit policy exclusion.[6]

Alternatively, the Excess Insurers could have included language making clear that their policies do not apply to coverages subject to a sublimit in the primary policies.  This is a common provision that some excess insurance companies use when they do not intend to provide coverage above an underlying sublimit.  *See Books v. United Nat'l Ins. Co.,* No. 157328/2013, 2017 N.Y. Misc. Lexis 13967, at *2-3 (Sup. Ct. Aug. 21, 2017) (interpreting an excess insurance policy with a provision stating that the policy "does not provide excess coverage over any primary coverage that is subject to a sub-limit in the 'primary insurance.'")  Instead, here, the Excess Insurers included the *opposite* language, and their policies expressly provide that, upon "erosion or exhaustion of the Limits of Liability of underlying [primary] policies," the excess policies provide coverage "***subject to the Limit of Liability specified***."  Appx, Ex. 5 at 268–269; Appx, Ex. 9 at 516–517.  The Excess Insurers failed to issue an exclusion for communicable disease losses and failed to include language stating that their policies do not apply to any coverage subject to underlying sublimits.  As such, the Excess Insurers cannot now invent a policy exclusion by arguing that they have no coverage obligations because the primary policies contain a sublimit for

---

[6]     For example, Endurance American ("Endurance") added a specific "Communicable or Infectious Disease Exclusion" to its policy, which eliminated all coverage for communicable diseases claims, including coverage provided by the Communicable Disease Endorsement.  Appx, Ex. 3 at 155.  In discovery, Endurance explained that it included this exclusion "to eliminate and exclude any obligation to provide insurance coverage for and/or to cover any alleged losses . . . arising out of or related in any way to communicable or infectious diseases (which would include COVID-19) . . . ."  Appx, Ex. 163 at 2370.  The Excess Insurers were well-aware of Endurance's "Communicable or Infectious Disease" exclusion yet chose not to include the same or similar exclusion in their policies to address communicable diseases directly.

communicable disease coverage. Absent express language making these contentions clear, which does not exist in their policies, the Excess Insurers are simply wrong.

Finally, the authorities cited by the Excess Insurers purporting to support their contentions are readily distinguishable. For example, the Excess Insurers rely on *JRK Prop. Holdings, Inc. v. Colony Ins. Co*., 96 Cal. App. 5th 1, 9 (2023), which discussed a trial court ruling that communicable disease coverages in certain primary policies did not apply to the excess insurers because such coverage was "subject to a $2.5 million cap." But here, unlike in *JRK*, the Excess Insurers' policies contain explicit coverage for communicable disease losses with ***their own explicit communicable disease sublimits***. Appx, Ex. 5 at 248–249; Appx, Ex. 9 at 496–497. Moreover, the *JRK* trial court could not seriously consider these sublimit issues because the policyholder in *JRK* did not substantively respond to the excess insurers' arguments, which further undermines the usefulness of this aspect of the decision. Appx, Exs. 135–145; *see also In re Primes*, 518 B.R. 466, 477 (Bankr. N.D. Ill. 2014) ("Judicial decisions do not stand as binding precedent for points that were not raised, not argued, and hence not analyzed."); *Grant v. Shalala*, 989 F.2d 1332, 1341 (3d Cir. 1993) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.")

In sum, the coverages afforded in the Excess Insurers' policies must have meaning and cannot be rendered illusory by virtue of the Excess Insurers' strained sublimit arguments. At most, the sublimit issues raise ambiguity, which must be resolved in 24 Hour's favor consistent with its reasonable understanding that it has $2,500,000 of primary Communicable Disease coverage per occurrence and an additional $2,500,000 of excess communicable disease coverage per occurrence (totaling at least $5,000,000 in coverage for each occurrence).

- 8 -

**B.**   **The Excess Insurers' Motion is Premature and, at a Minimum, Ruling Should Be Deferred Until Phase II of This Proceeding**

Finally, and notwithstanding the foregoing, the Excess Insurers' Motion is premature.  At the outset of this litigation, the parties agreed to divide this case into two phases:  Phase I concerned issues of liability and insurance coverage and Phase II concerned 24 Hour's monetary losses and how much of those losses each insurer would have to pay.  [Dkt. 66].  Currently, this case is in Phase I.  Phase II, which will concern 24 Hour's monetary losses and the number of occurrences, including whether 24 Hour's losses reach any Excess Insurers' layer of coverage, has not yet been litigated.

For these reasons, the parties have not taken any discovery regarding 24 Hour's damages or the contentions by the Excess Insurers as to whether, or under what circumstances, their policies attach to particular losses.  For example, 24 Hour has not conducted discovery regarding the Excess Insurers' contention that their policies provide no communicable disease coverage based on their currently asserted sublimit argument; 24 Hour considers that to be a damages issue reserved for Phase II because it involves the question as to the amount of 24 Hour's losses the Excess Insurers must pay.  Thus, it is premature to address these issues regarding coverage exhaustion or the attachment of coverage under the Excess Insurers' policies.

As such, rather than deciding this issue now on an incomplete record, at a minimum, the Court should defer its ruling on this Motion because the parties have not yet conducted discovery regarding monetary damages and there has been no determination as to whether the Excess Insurers' policies may be impacted at all by 24 Hour's communicable disease losses.  *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) ("It is a first principle of federal civil procedure that litigants 'are entitled to discovery before being put to their proof'"); *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 950 (3d Cir. 1990) (denying summary judgment as premature).

- 9 -

# V.     CONCLUSION

For the foregoing reasons, Excess Insurers' Motion should be denied in full or, at minimum, deferred until Phase II of this litigation.


Dated: January 12, 2024                    Respectfully submitted,

                                           **REED SMITH LLP**

                                           */s/ Mark W. Eckard*
                                           Mark W. Eckard (No. 4542)
                                           1201 North Market Street, Suite 1500
                                           Wilmington, DE 19801
                                           (302) 778-7500
                                           (302) 778-7575 (Fax)
                                           meckard@reedsmith.com

                                           David E. Weiss (admitted *pro hac vice*)
                                           T. Connor O'Carroll (admitted *pro hac vice*)
                                           101 Second Street, Suite 1800
                                           San Francisco, CA 94105-3659
                                           (415) 543-8700
                                           (415) 391-8269 (Fax)
                                           dweiss@reedsmith.com
                                           cocarroll@reedsmith.com

                                           *Counsel for Plaintiff 24 HOUR FITNESS*
                                           *WORLDWIDE, INC.*