# EXHIBIT 10



Zeesie Pertain
Senior Claims Analyst
Tel.:      (646) 794-0651
Email:    zeesie.pertain@awac.com

**VIA E-MAIL ONLY**

April 27, 2020

Jeremy Gottlieb
24 Hour Holdings I Corp.
12647 Alcosta Boulevard, 5th Floor
San Ramon, CA 94583
JGottlieb@24hourfit.com

Re:   Insured:       24 Hour Holdings I Corp.
      Subject:       Notice of Potential Business
                     Interruption-1210 NW Johnson St.,
                     Portland, OR
      Policy No.:    0309-1873 [eff. 9/03/2017 – 9/03/2020]
      Claim No.:     2020006252

Dear Mr. Gottlieb:

Allied World National Assurance Company ("Allied World") issued Scheduled Location Pollution Liability Policy Number 0309-1873 for the period of September 9, 2017 to September 9, 2020 ("the Policy") to 24 Hours Holding I Corp. ("24HH"). Allied World previously acknowledged receipt of 24HH's March 21, 2020 notice of the shutdown of the 1210 NW Johnson St., Portland, OR gym location as a result of a staff member's presumptive position case of COVID-19.

We write to advise you that Allied World does not have sufficient information at this time to make a determination regarding the availability of coverage for this matter. After carefully evaluating the Notice, the Policy, and the information made available to date, it appears unlikely that 24HH is entitled to business interruption coverage. Accordingly and for the reasons set forth below, Allied World has determined to continue to investigate this matter subject to a full reservation of rights. Allied World reserves all of its rights and defenses in accordance with all of the terms, conditions, definitions, limitations, exclusions, endorsements and other provisions of the Policy, including the right to assert any and all defenses of non-coverage which may be developed or discovered in the course of further investigation.

199 Water Street          E. info@awac.com
23rd Floor                www.awac.com
New York, NY 10038
U.S.A.

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 566 of 2921

AWPLL000023

### Summary of Facts

On or about March 21, 2020, Allied World received correspondence notifying it of a claim for business interruption caused by a staff member's presumptive positive case of COVID-19 at the 1210 NW Johnson St., Portland, OR location. This is a scheduled location under the Policy. The March 21, 2020 correspondence references the various "shelter in place" orders and other civil authority prohibiting customers to visit **scheduled locations** in response to COVID-19. In response to Allied World's April 7, 2020 request for information, 24HH restated its position regarding the grounds for closure of the **scheduled locations** is "[a]ll of the statewide and local governmental [shelter in place] orders."

### The Policy

Allied World issued the Policy to 24HH in San Ramon, California. The Policy's Business Interruption Coverage is subject to a $25 million Each Incident Limit and a $25 million Coverage Section Aggregate Limit. A 72 hour Business Interruption Waiting Period applies to the Business Interruption Coverage.

Attached to this letter as Addendum A are some of the relevant policy provisions for convenient review. Please note that by quoting portions of the Policy, we do not waive any, and in fact specifically reserve, all other terms, including conditions, definitions, limitations, exclusions and other Policy provisions. Please consult your copy of the Policy for its complete terms, conditions, definitions, limitations, exclusions, endorsements and other provisions. Allied World reserves all of its rights to rely upon all such Policy provisions, including those not specifically quoted, in support of its coverage position, and based upon its on-going investigation.

### Reservation of Rights

Allied World is obligated under the Business Interruption Coverage to pay business interruption costs resulting from a business interruption that is first discovered and reported during the policy period. The Business Interruption Coverage grant provides that Allied World will pay business interruption costs resulting from business interruption caused solely and directly by a pollution incident on, at or under a scheduled location. Business interruption means the necessary suspension of your operations, at a scheduled location, but only if such suspension of your operations first commenced during the policy period. The Policy defines a pollution incident to include the presence of microbial matter on, at, or within buildings or structures. A pollution incident also means the discharge, emission, seepage, migration, dispersal, release or escape of any pollutant into or upon land, any structure on land, or the atmosphere (including indoor air). The Policy defines pollutant to include microbial matter and microbial matter to include viruses.

The information provided does not indicate that 24HH suspended its operations at 1210 NW Johnson St., Portland, OR solely and directly because of a pollution incident at a scheduled location – *i.e.*, the presence of COVID-19 on, at, or within a building or structure, or because of the discharge or dispersal of COVID-19 into or upon land or the atmosphere. While 24HH has advised that an employee has presumptively tested positive for COVID-19 at this location, the suspension of 24HH's operations does not appear to have been caused solely and directly by the presence of COVID-19 on, at, or within buildings or structures. Rather, it appears the Oregon shelter in place order suspended

2

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 567 of 2921

AWPLL000024

all non-essential business operations, including 24HH's business, to promote social distancing and minimize the spread of COVID-19 to the population at large. Allied World therefore reserves the right to limit or deny coverage if any suspension of 24HH's operations did not result from a business interruption as that term is defined in the Policy.

Allied World also reserves the right to rely on the following definitions of business interruption costs, business interruption period, and business income to limit or deny coverage for this matter.

Business interruption costs are defined by the Policy to mean the actual loss of business income and extra expense you incur during the business interruption period. Business interruption costs will be reduced to the extent that the insured can resume operations, in whole or in part, at the scheduled location, or by making use of other locations. Business interruption costs must directly result from a covered pollution incident.

Business interruption period means the period of time that begins after the 72 hours shown as the "Business Interruption Waiting Period" in Item 3. of the Declarations after the time and date that the business interruption first commenced, and ends on the time and date that is the earlier of:

a.  The time and date that the insured resumes normal business operations at the scheduled location or at another location;

b.  The time and date that the insured, acting reasonably and with due diligence, should have resumed normal business operations at the scheduled location or at another location; and

c.  The time and date that is three hundred sixty five (365) days after the time and date that the business interruption first commenced.

Business income is defined to include your net profit or loss before income taxes that would have been earned or incurred had there been no business interruption, your continuing normal operating and payroll expenses (except for payroll expenses of officers, executives, department managers and employees under contract), costs you are required to pay to rent temporary premises and charges you incur which are the legal obligations of your tenant under the terms of a written lease that would have otherwise been your obligations but for the written lease.

In addition, the Policy requires certain reporting obligations in SECTION VI-CONDITIONS at Paragraph "17. Your Duties in the Event of Pollution Incident or Claim." 24HH is required to notify Allied World of a pollution incident or claim "as soon as practicable," furnish specific information, and cooperate with Allied World's investigation of the pollution incident and/or claim. Allied World reserves the right to limit or deny coverage for this matter to the extent 24HH failed or fails to provide timely or sufficient notice or information as required by Paragraph 17 of SECTION VI.

Paragraph "14. Other Insurance" of SECTION V provides that coverage for a pollution incident arising from microbial matter applies as excess insurance over other valid and collectible insurance. We also wish to advise you that the Policy is subject to certain monetary limits as representing the maximum sums that Allied World is obligated to pay. Those sums are set forth in the Declaration pages of the Policy and outlined above.

3

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 568 of 2921

AWPLL000025

### Request for Information

To assist us with our continuing investigation into the availability of Business Interruption Coverage to 24HH, we request that you provide us with the following information to the extent you have not done so already. You do not need to provide information as to your business income and any business interruption costs incurred now. If Allied World determines Business Interruption Coverage is available, we will provide you with an additional request for such supporting documents and information.

1. A completed Acord claim form that includes the date(s) of the incident(s);

2. Copies of all governmental restrictions affecting the 1210 NW Johnson St., Portland, OR location, including the authority issuing such restrictions, the nature of the restrictions, the date the restrictions took effect, and the date the restrictions are scheduled to be lifted;

3. A description of the circumstances leading up to the closure and/or shut down of the location(s), including the date and time the location(s) were shut down;

4. A description of any remediation that you believe is necessary and/or expect to undertake in order to resume operations;

5. The date and time when you expect to resume operations and all actions you have taken to resume operations; and

6. The names and contact information of federal, state and/or local government agencies involved in the investigation, monitoring or management of the incident(s).

\* \* \*

Allied World's coverage analysis is based on facts and information it currently has in its possession. If you disagree with Allied World's coverage analysis or if you are aware of new or different facts that you believe are relevant to the determination of the coverage issues, please provide them to us as soon as possible.

Allied World reserves all rights with regard to the above referenced Policy provisions, as well as all other rights, remedies, and defenses under the Policy, at law, and in equity. Nothing contained in this letter, and no action on our part in investigating these matters, shall be construed as an admission of coverage or as a waiver of any right, remedy or defense that may be available to Allied World.

If you believe all or part of this claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance. The Department can be contacted at:

California Department of Insurance
Consumer Communications Bureau
300 South Spring Street, South Tower
Los Angeles, CA 90013
1-800-927-4357

4

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 569 of 2921

AWPLL000026

Allied World expects that you may have questions after reading this letter regarding the potential applicability of certain terms, provisions, exclusions, conditions, limitations and definitions that could potentially apply to this claim. Please feel free to contact me at (646) 794-0651 or zeesie.pertain@awac.com.

Sincerely,

*[signature]*

Zeesie Pertain
Senior Claims Analyst
Allied World Environmental Claims

cc:    Teresa Cowart [via email only]
       Lockton
       TCowart@lockton.com

5

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 570 of 2921

AWPLL000027

## ADDENDUM A

### SECTION I – INSURING AGREEMENTS

5. **Business Interruption Coverage**

   a. We will pay **business interruption costs** resulting from **business interruption** caused solely and directly by a pollution incident on, at or under **a scheduled location**, provided that:

      (1) The **pollution incident** first commenced prior to the **retroactive date** if you have purchased the pre-existing conditions coverage described in SECTION I – INSURING AGREEMENTS, 1. Pre-existing Conditions Coverage, or the **pollution incident** first commenced on or after the **retroactive date** if you have purchased the new conditions coverage described in SECTION I – INSURING AGREEMENTS, 2. New Conditions Coverage;

      (2) The **pollution incident** is first discovered during the **policy period**; and

      (3) You report the **business interruption** to us, in writing, during the **policy period**.

6. **Our Rights and Duties in the Event of a Pollution Incident or Claim**

   c. **Clean-up**

      We also have the right, but not the duty, to assume direct control of any clean-up, investigation, abatement, containment, treatment, removal, remediation, monitoring or disposal activities to which this insurance applies. In the event we exercise such right, all amounts we incur which are **loss, clean-up costs, emergency response expense, business interruption costs**, or any other amount for which coverage may be afforded under this policy will reduce the applicable Deductible and Limits of Insurance according to SECTION IV – LIMITS OF INSURANCE AND DEDUCTIBLE.

*  *  *  *

### SECTION VI – CONDITIONS

11. **Other Insurance**

    If other valid and collectible insurance is available to the **insured** for insurance afforded by this policy, our obligations are limited as follows:

    a. **Primary Insurance**

       This insurance is primary except as set forth in paragraph c. below. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph b. below.

6

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 571 of 2921

AWPLL000028

b. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable Limits of Insurance of all insurers.

c. **Microbial Matter**

Solely with respect to insurance afforded for a **pollution incident** arising from **microbial matter**, this insurance is excess over any other valid and collectible insurance and we will: (i) have the right, but not duty to defend the **insured** against any **claim** to which this insurance applies; and (ii) pay only the amount of **loss, emergency response expense, business interruption costs** and any other amounts for which insurance may be afforded under this policy which exceed the total amount of such other insurance.

17. **Your Duties in the Event of a Pollution Incident or Claim**

    a. You must see to it that we are notified of a **pollution incident** or **claim** to which this insurance may apply, as soon as practicable at the address shown in Item 8. of the Declarations or via email at envcasclaims@awac.com. To the extent possible, notice should include:

        (1) How, when and where the **pollution incident** took place;

        (2) The names and addresses of any injured persons and witnesses;

        (3) The nature and location of any injury or damage arising out of the **pollution incident**;

        (4) The specifics of the claim and the date it was first asserted against and received by an **insured**; and

        (5) With respect to **emergency response expense**, the nature and extent of the emergency, the manner in which you or others acting on your behalf responded to the emergency, the amount of **emergency response expense** incurred, and the names and addresses of those persons having knowledge of any of the foregoing. You and any other involved insured must send us any technical reports, laboratory data, field notes, expert reports, investigation reports, data collected, invoices, regulatory correspondence or any other documents relating to such **emergency response expense**.

    b. You and any other involved **insured** must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim**;

7

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 572 of 2921

AWPLL000029

 (2) Authorize us to obtain records and other information relevant to the claim or **pollution incident**;

 (3) Co-operate with us in the investigation of the **pollution incident**, as well as the investigation, settlement or defense of the **claim**;

 (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply; and

 (5) Update us regarding any requested information that is not available at the time of the request but subsequently becomes available.

c. No **insured** will, except at that **insured**'s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than **emergency response expense** for which you are entitled to recover under this policy, without our prior consent.

d. The **insured** must:

 (1) Submit, for our approval, all proposed work plans prior to submittal to any regulatory agency or duly licensed scientist or engineer authorized by law to oversee the investigation and clean-up of a **pollution incident**;

 (2) Submit, for our approval, any bid or contract regarding any investigation, removal, response or clean-up action or activity prior to the submission, execution or issuance of such bid or contract; and

 (3) Forward progress reports in connection with any investigation, removal, response or clean-up action or activity at reasonable intervals and always prior to submitting such reports to any regulatory agency or duly licensed scientist or engineer that is authorized by law to review and approve such reports.

This clause d. does not apply to any investigation, removal, response or clean-up action or activity for which you are entitled to recover **emergency response expense** under this policy.

\* \* \* \*

## SECTION VII – DEFINITIONS

1. **Bodily injury** means physical injury, sickness, building related illness, mental anguish, shock or emotional distress or disease sustained by a person, including death resulting from any of these.

2. **Business income** means:

 a. Your net profit or loss before income taxes that would have been earned or incurred had there been no **business interruption**;

 b. Your continuing normal operating and payroll expenses, except for payroll expenses of officers, executives, department managers and employees under contract;

8

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 573 of 2921

AWPLL00003C

    c.    Costs you are required to pay to rent temporary premises when that portion of the **scheduled location** occupied by you cannot be occupied, loaned, leased or rented. Such costs shall not exceed the fair rental value of such portion of the **scheduled location** that cannot be occupied, loaned, leased or rented; and

    d.    Charges you incur which are the legal obligations of your tenant under the terms of a written lease that would have otherwise been your obligations but for the written lease.

3. **Business interruption** means the necessary suspension of your operations, at a **scheduled location**, but only if such suspension of your operations first commenced during the **policy period**.

4. **Business interruption costs** mean actual loss of **business income** and **extra expense** you incur during the **business interruption period**. **Business interruption costs** will be reduced to the extent that the **insured** can resume operations, in whole or in part, at the **scheduled location**, or by making use of other locations.

5. **Business interruption period** means the period of time that begins the number of hours shown as the "Business Interruption Waiting Period" in Item 3. of the Declarations after the time and date that the **business interruption** first commenced, and ends on the time and date that is the earlier of:

    a.    The time and date that the **insured** resumes normal business operations at the **scheduled location** or at another location;

    b.    The time and date that the **insured**, acting reasonably and with due diligence, should have resumed normal business operations at the **scheduled location** or at another location; and

    c.    The time and date that is three hundred sixty five (365) days after the time and date that the **business interruption** first commenced.

18. **Microbial matter** [as modified via Endorsement No. 9] means fungi, mold, bacteria or viruses which reproduce through the splitting of cells, the release of spores or by any other means, whether or not such **microbial matter** is living.

22. **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals, hazardous substances, petroleum hydrocarbons, low-level radioactive material and waste, medical or infectious or pathological waste, waste materials, electromagnetic fields, Legionella pneumophilia, and **microbial matter**.

23. **Pollution incident** means:

    a.    The discharge, emission, seepage, migration, dispersal, release or escape of any **pollutant** into or upon land, or any structure on land, the atmosphere (including indoor air) or any watercourse or body of water (including groundwater), provided such conditions are not naturally present in the environment in the concentration or amounts discovered;

9

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment   Page 574 of 2921

AWPLL000031

b. The presence of **microbial matter** on, at or within buildings or structures; or

c. The presence of **pollutants**, whether contained or uncontained, that have been illegally disposed of or abandoned at a **scheduled location** by parties other than an **insured**, provided that no **insured** had knowledge of such disposal or abandonment.

25. **Property damage** means:

   a. Physical injury to or destruction of tangible property, including all resulting loss of use and diminished value of that property;

   b. Loss of use of tangible property that is not physically injured or destroyed arising out of physical injury to or destruction of other tangible property; and

   c. **Natural resource damage**.

   **Property damage** does not include **environmental damage**.

\* \* \* \*

Exhibit 10 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 575 of 2921

AWPLL000032