EXHIBIT 65



**COLORADO**
Department of Public
Health & Environment

## SIXTH AMENDED PUBLIC HEALTH ORDER 20-28 SAFER AT HOME AND IN THE VAST, GREAT OUTDOORS
### June 5, 2020

### PURPOSE OF THE ORDER

I issue this Amended Public Health Order (PHO or Order) pursuant to the Governor's directive in **Executive Order D 2020 091** in response to the existence of thousands of confirmed and presumptive cases of Coronavirus disease 2019 (COVID-19) and related deaths across the State of Colorado.  Further, as there is substantial evidence of community spread of COVID-19 throughout the State, it is crucial to take measures now that can mitigate further spread of disease in our communities.

### FINDINGS

1.      Governor Polis issued **Executive Order D 2020 003** on March 11, 2020, declaring a disaster emergency in Colorado due to the presence of COVID-19.  Since that time, the Governor has taken numerous steps to implement measures to mitigate the spread of disease within Colorado, and has further required that several public health orders be issued to implement his orders.

2.      I have issued public health orders pertaining to the limitation of visitors and nonessential individuals in skilled nursing facilities, intermediate care facilities, and assisted living residences; closing bars and restaurants to in-person services; defining the terms of the Governor's stay at home requirements and critical business designations; requiring hospitals to report information relevant to the COVID-19 response; and requiring the wearing of face coverings in the workplace and urging their use in public.  These measures all act in concert to reduce the exposure of individuals to disease, and are necessary steps to protect the health and welfare of the public.  Additionally, in reducing the spread of disease, these requirements help to preserve the medical resources needed for those in our communities who fall ill and require medical treatment, thus protecting both the ill patients and the healthcare workers who courageously continue to treat patients.

3.      As of June 1, 2020, there are 26,577 known cases of COVID-19 in Colorado, 4,372 Coloradans have been hospitalized and 1185 Coloradans have died from COVID-19.  Multiple sources of data show that COVID-19 transmission and the use of healthcare due to COVID-19

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

have leveled off in Colorado. Our work to "flatten the curve" appears to be succeeding, and the Governor has ordered some lessening of the current Safer at Home restrictions as a result.

4.      **Executive Order D 2020 091 Safer at Home and in the Vast, Great Outdoors** still strongly encourages that people at risk of severe illness from COVID-19, also known as **Vulnerable Individuals,** remain at home or in the great outdoors as much as possible, but allows limited reopening of postsecondary institutions and certain businesses.  Additionally, individuals are encouraged to stay at home as much as possible and practice **Social Distancing** to reduce the likelihood of disease transmission, but certain activities, such as gathering in groups of no more than ten for activities, are permitted.  As we continue to combat COVID-19 in our communities, continuing restrictions on individual travel and necessary activities remain appropriate.

## INTENT

This Order sets forth the requirements for implementation of **Safer at Home and in the Vast, Great Outdoors**, as directed by Governor Polis.  Individual restrictions remain in place concerning limitations on activities, travel, and public gatherings. Workplace restrictions remain necessary to implement standard **Social Distancing Requirements**, cleaning standards, and other items necessary to reduce the possibility of disease spread.  Additionally, certain businesses and activities require specific guidance based on their business practices, and those are included in the appendices to this Order.

## ORDER

Unless otherwise specifically noted in this Order, the requirements of this Order are effective June 1, 2020 and expire 30 days from June 1, 2020. This Order supersedes and replaces Public Health Orders 20-22 and 20-24, as amended.

I.      **Safer at Home and in the Vast, Great Outdoors**
        A.      All individuals currently living within the State of Colorado are encouraged to stay at home or in the vast, great outdoors and avoid unnecessary interactions whenever possible in order to reduce the spread of disease. Individuals living in shared or outdoor spaces must at all times, to the greatest extent possible, comply with **Social Distancing Requirements**, defined in Section III below, and are encouraged to leave their residences only to perform or utilize **Necessary Activities,** defined in Section III below.

        B.      Individuals are urged to wear non-medical cloth face coverings that cover the nose and mouth whenever in public as required by **Executive Order D 2020 091**.

2

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

**C.**     All public and private gatherings are limited to no more than ten (10) individuals, except for the purposes expressly permitted in this PHO, which include **Necessary Activities**. Nothing in this Order prohibits the gathering of members living in the same residence.

**D.**     People at risk of severe illness from COVID-19 are urged to stay in their residence at all times except as necessary to seek medical care.  People at risk of severe illness from COVID-19 cannot be compelled to work for any business or government function, including a Critical Business or Critical Government Function, during the pendency of this pandemic emergency. People who are sick must stay in their residence at all times except as necessary to seek medical care, and must not go to work, even for a **Critical Business,** defined in Section III below.

**E.**     Individuals who are sick or are experiencing flu-like symptoms should get tested for COVID-19, and must self-isolate until their symptoms cease or until they have a negative test result.  If an individual has tested positive for COVID-19 and/or has developed symptoms of COVID-19, including early or mild symptoms (such as cough and shortness of breath), they should be in isolation (staying away from others) until they have had no fever for at least seventy-two (72) hours (that is three full days of no fever without the use of medicine that reduces fevers), other symptoms have improved (such as cough or shortness of breath), and at least ten (10) days have passed since symptoms first appeared. Coloradans who are sick and receive negative COVID-19 test results should continue to stay home while they are sick and should consult with their healthcare provider about the need for additional testing and the appropriate time to resume normal activities.

**F.**     Governmental and other entities are strongly urged to make shelter available to people experiencing homelessness as soon as possible and to the maximum extent practicable, and are authorized to take all reasonable steps necessary to provide non-congregate sheltering along with necessary support services to members of the public in their jurisdiction as necessary to protect all members of the community.  People experiencing homelessness are urged to protect their health and safety by complying with **Social Distancing Requirements** at all times.

**G.**     Individuals are encouraged to limit travel to **Necessary Travel**, defined in Section III below, including but not limited to, travel by automobile or public transit. People must use public transit only for purposes of performing **Necessary Activities** or to travel to and from work to operate **Businesses** or maintain **Critical Governmental Functions** as authorized in Section II of this Order.  People riding on public transit must comply with **Social Distancing Requirements** to the greatest extent feasible.

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

**H.**    Activities that are done with 10 or fewer individuals, following **Social Distancing Requirements** for non-household members are authorized.  Individuals may participate in local and personal recreation in outside public spaces, as an authorized **Necessary Activity**, in groups no larger than 10 and practicing social distancing maintaining 6 feet between participants.  Travel should occur within an individual's local community or as necessary to access outdoor recreation areas. If travelling outside their community, Coloradans are urged to honor all restrictions in place at their destination and avoid travel to counties or municipalities that issue travel restrictions. Local authorities have the discretion to close recreation as needed.

1.    Private campgrounds may open for use.  Campground operators must regularly clean and disinfect all common areas, such as bathrooms, in accordance with the CDPHE Cleaning Guidance. Group facilities, pavilions, cabins, and yurts remain closed.  Campsites must be a minimum of 6 feet apart, and should only be available by reservation.  Campground operators must post signs to remind guests of physical distancing requirements, and limit visitors in campground offices to maintain such distancing.

2.    Effective June 4, 2020, the following personal recreation activities are permitted:

a.    Playgrounds and outdoor sports facilities, such as tennis and pickleball courts,  may be open for use for no more than 25 people at a time.  High touch areas should be cleaned and disinfected frequently.

b.    Outdoor swimming pools may open at 50% capacity, limited to no more than 50 people.  Frequently touched surfaces, shared objects, and bathrooms should be cleaned and disinfected every hour.

c.    Organized recreational youth or adult league sports may resume activities with no more than 25 players outdoors or 10 players indoors. Parents may attend youth sports activities but must remain 6 feet apart from non-household members.  Spectators are strongly discouraged for adult sports. The sports league must retain records of who played in case later disease outbreak investigations become necessary.

d.    Gyms, recreation centers and indoor pools may open at 25% capacity, not to exceed 50 people, whichever is less, per room, maintaining 6 feet distancing.  Sharing of equipment is discouraged, and equipment must be cleaned and disinfected between uses. Restrooms and showers are open, while lockers remain closed.

4

e.      Competitive events such as races and endurance events are permitted as long as 6 foot distancing and limitations on group size can be maintained. This includes implementing, including implementation of staggered start times and making efforts to prevent gatherings at starts and finishings, so that no more than 10 people are gathered at a time.

3.      Effective June 4, 2020, the following outdoor recreation activities are permitted if authorized within the local jurisdiction and conducted in accordance with the jurisdiction's policies, the requirements below, and the requirements in **Appendix K** of this Order:

a.      Non-guided recreation in groups no larger than 10;

b.      Non-guided equipment rentals, subject to compliance with the retail requirements in **Appendix A** of this Order;

c.      Guide services for fishing, hunting, biking, horseback riding, canoeing, kayaking, stand up paddle boarding, ATV tours, and climbing are permitted in groups no larger than 10;

d.      River outfitters, rafting, or Jeep Tours in groups of up to 2 households in a boat or jeep only in groups of no more than 10;

e.      Developed hot springs may operate in accordance with the outdoor pools requirements in Section I.H.2.b of this Order;

f.      Outdoor recreation activities at ski resorts (mountain biking, hiking, climbing walls, mountain coasters, ropes courses, adventure parks, zip lines, etc) if the local public health agency has reviewed and approved the resort's plans;

g.      Zip lines, ropes courses, outdoor artificial climbing walls, or outdoor sports adventure centers not affiliated with ski resorts if the local public health agency has reviewed and approved the resort's plans;

h.      Scenic trains if every local public health agency in each jurisdiction through which the train operates has approved the train's plans; and

i.      Trail and conservation crews no larger than 10.

**J.**      Due to ongoing concerns regarding disease transmission in larger groups settings that could result in disease outbreaks, the following activities are not authorized to occur:

1.      Gatherings or events of more than 10 people that are not otherwise authorized in this Order;

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 937 of 2921**

2.    Adult and youth sports tournaments that attract crowds or travelers;

3.    Rodeos, fairs, festivals, and parades;

4.    Receptions for more than 10 people; and

5.    Car, motorcycle or horse races unless there are no spectators and race personnel maintain 6 feet distancing as much as possible; and

6.    Sporting events except for recreational sports leagues as authorized in Section I.H.2.c of this Order.

**K.**    Life rites, such as wedding ceremonies, graduation ceremonies and funerals, and other religious rites are authorized at 50% capacity not to exceed 50 people indoors, with strict compliance with **Social Distancing Requirements** for employees and any attendees of services.  For outdoor rites, individuals must maintain 6 feet distance between non-household members and work with the appropriate local authority to obtain approval for the maximum number of individuals who may attend in the designated outdoor space. Only the ceremony or rite itself is included in this authorization, receptions or parties associated with life rites are not included in this authorization.  Life rites should follow the guidance for houses of worship found here.

## II.    Business Requirements

Any business or activity not addressed in **Executive Order D 2020 091,** this Order or corresponding interpretive guidance found here may operate with 10 or fewer individuals in accordance with  the requirements in Section II.I of this Order.

**A.**    The following places of public accommodation remain closed to ingress, egress, use, and occupancy by members of the public:

1.    Bars, taverns, brew pubs, breweries, microbreweries, distillery pubs, wineries, tasting rooms, special licensees, clubs, and other places of public accommodation offering alcoholic beverages for on-premises consumption unless the establishment ensures access to food from a licensed retail food establishment for on-premise consumption;

2.    Cigar bars;

3.    Movie and performance theaters except for drive in movie theaters, opera houses, concert halls, and music halls; and

4.    Casinos, amusement parks and arcades.

These restrictions do not apply to any of the following:

1.    Room service in hotels;

2.    Health care facilities, residential care facilities, congregate care facilities, and juvenile justice facilities;

3.    Crisis shelters or similar institutions;

4.    Airport concessionaires;

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 938 of 2921**

5.      Institutions of higher education offering dining hall services located in or adjacent to campus dormitories that are accessed through student, staff, faculty, or campus associated identification, as well as grab and go food services within these institutions, while exercising social distancing measures of at least six feet between individuals; and

6.      Any emergency facilities necessary for the response to these events.

**B.**      All  **Critical Businesses** and **Critical Government Functions**, as defined in Section III below,  may continue to operate.  **Critical Businesses** must comply with **Social Distancing Requirements** at all times, adopt work from home or tele-work policies for any operations that can be done remotely, and implement other strategies, such as staggered schedules or re-designing workplaces, to create more distance between workers unless doing so would make it impossible to carry out critical functions.  **Critical Businesses** that serve the public such as grocery stores and other **Critical Retail** shall comply with **Social Distancing Requirements** at all times including, but not limited to, when any customers are standing in line. **Critical Business** and **Critical Government Functions** shall continue to promote telecommuting to the greatest extent possible.

**C.**      All places of public accommodation subject to Public Health Order 20-22, as amended, that offer food and beverages may continue to offer food and beverage using delivery service, window service, walk-up service, drive-through service, drive-up service, curbside delivery or any manner set forth in that PHO and in accordance with mandatory **Social Distancing Requirements**, except as prohibited or limited by **Executive Orders D 2020 091** or this Order.  These entities include restaurants, food courts, cafes, coffeehouses, and other similar places of public accommodation offering food or beverage for on-premises consumption as or from a licensed retail food establishment, referred to in this Order as Restaurants; and bars, taverns, brew pubs, breweries, microbreweries, distillery pubs, wineries, tasting rooms, special licensees, clubs, and other places of public accommodation serving alcoholic beverages and, if serving food, only snacks and not kitchen-prepared meals, referred to in this Order as Bars.

1.      Effective May 27, 2020, Restaurants may open to in-person dining at 50% of the indoor posted occupancy code limit, not to exceed 50 people, whichever is less.  Tables or groups must be limited to no more than 8 people and be spaced so that patrons are a minimum of 6 feet apart.  Restaurants may also use any existing, licensed outdoor space for in-person dining with the same group limit of 8 and minimum spacing of 6 feet apart.  Restaurants must have or obtain approval from their local government's permitting, building and fire code oversight agency for any new outdoor dining space prior to use. Additional requirements for Restaurants are contained in **Appendix I.**

7

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

    **D.**      All **Non-Critical Retail,** as defined in Section III below**,** may operate and offer goods through delivery service, window service, walk-up service, drive-through service, drive-up service, curbside delivery, or any other manner allowing for strict compliance with mandatory social distancing requirements, similar to the requirements for **Critical Retail.** Additional requirements for **Critical** and **Non-Critical Retail** are contained in **Appendix A** of this Order.

    **E.**      All **Field Services**, including real estate, may resume operations, in accordance with the requirements of this Order including **Appendix B**.  Real estate includes in-person real estate showings and marketing services which must adhere to **Social Distancing Requirements** with cleaning and disinfection between each showing, but may not hold open houses.

    **F.**      Other health care services not covered by **Executive Order 20 045 Voluntary or Elective Surgeries Or Procedures** and extended by **Executive Order D 2020 080**, in certain limited healthcare settings may resume if done in accordance with the requirements of **Appendix E**.

    **G.**      Effective May 1, 2020, **Non-Critical Retail** and limited **Personal Services** may resume in-person services if they meet the requirements in Section II.I below and the additional requirements outlined for these services in **Appendices A** and **D** of this Order.

    **H.**      Effective May 4, 2020, the following businesses may reopen in accordance with the requirements of this Order:

        **1.**      **Non-Critical Office-Based Businesses** operating in an office and not a production environment, as defined in Section III below, may allow up to fifty (50) percent of their employees to conduct in-person work that takes place outside a private residence in accordance with the requirements in Section II.I below and the additional requirements outlined in **Appendix C**.

        **2.**      **Non-Critical Manufacturing** operating in a production environment with no more than ten (10) employees that comply with the requirements in Section II.I below and the additional requirements in **Appendix H**.

    **I.**      **All Business and Government Functions.  All Businesses and Government Functions** shall all follow the protocols below:

        1.      Employers and sole proprietors shall take all of the following measures within the workplace to minimize disease transmission, in accord with the CDPHE Guidance:

            a.      deputize a workplace coordinator(s) charged with addressing COVID-19 issues;

            b.      maintain 6 foot separation between employees and discourage

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

shared spaces;

c.      clean and disinfect all high touch areas;

d.      post signage for employees and customers on good hygiene;

e.      ensure proper ventilation;

f.      avoid gatherings (meetings, waiting rooms, etc) of more than 10 people or provide sufficient spaces where appropriate distancing can be maintained if larger gatherings are required by law, such as for some government functions like trials;

g.      implement symptom monitoring protocols, conduct daily temperature checks and monitor symptoms in employees at the worksite to the greatest extent possible, or if not practicable, through employee self-assessment at home prior to coming to the worksite.  A sample form can be found here.  If an employee reports any symptoms, refer symptomatic employees to the CDPHE Symptom Tracker and take all of the following steps:

      1.      send employee home immediately;

      2.      increase cleaning in your facility and require social distancing of staff at least 6 feet apart from one another;

      3.      exclude employee until they are fever-free, without medication, for 72 hours and 10 days have passed since their first symptom; and

      4.      if two or more employees have these symptoms, consult CDPHE's outbreak guidance, contact your local health department and cooperate in any disease outbreak investigations; and

h.      eliminate or regularly clean and disinfect any items in common spaces, such as break rooms, that are shared between individuals, such as condiments, coffee makers, vending machines.

2.      Employers shall take all of the following measures regarding employees to minimize disease transmission:

a.      require employees to stay home when showing any symptoms or signs of sickness, which include fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea or vomiting,  and diarrhea  and connect employees to company or state benefits providers;

b.      provide work accommodations for people who are at risk of severe illness from COVID-19 who remain subject to **Stay at Home** advisement, prioritizing telecommuting, as people who are at risk for severe illness

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

from COVID-19 shall not be compelled to go to work during the pendency
of this pandemic emergency;

c.        provide to the greatest extent possible flexible or remote
scheduling for employees who may have child or elder care obligations, or
who live with a person who still needs to observe **Stay at Home** due to
underlying condition, age, or other factor;

d.        encourage and enable remote work whenever possible;

e.        encourage breaks to wash hands or use hand sanitizer;

f.        phase shift and breaks to reduce density; and

g.        provide appropriate protective gear like gloves, masks, and face
coverings as defined by OSHA industry standards.

3.        Employers and sole proprietors shall implement the following measures
regarding customers to minimize disease transmission:

a.        create whenever possible special hours for people who are at risk
of severe illness from COVID-19 only;

b.        encourage 6 foot distancing inside of the business for all patrons;

c.        encourage customer use of protection like gloves and face
coverings;

d.        provide hand sanitizer at the entrances to the greatest extent
possible; and

e.        use contactless payment solutions, no touch trash cans, etc.
whenever possible.

4.        Employers with over fifty (50) employees in any one location shall, in
addition to the above requirements, implement the following protocols:

a.        implement employee screening systems that follow the
requirements of Section II.I.1.g above in one of the following ways:

i.        Set up stations at the worksite for symptom screening and
temperature checks;  or

ii.        Create a business policy that requires at-home employee
self-screening each work day and reporting of the results to the employer
prior to entering the worksite;

b.        close common areas to disallow gatherings of employees;

c.        implement mandatory cleaning and disinfection protocols; and

d.        require mandatory adherence to **Social Distancing Requirements**.

**J.        Work Accommodations.**  Employers must provide reasonable work
accommodations for people who are at risk of severe illness from COVID-19 who are still under

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

the **Stay at Home** advisement, such as telecommuting.  Employers are encouraged to provide reasonable work accommodations for individuals who reside with or are caring for people who are at risk of severe illness from COVID-19, or facing child care needs while schools remain closed.

K.    **Children's Day Camps and Youth Sports Camps.**  Effective June 1, 2020, children's day camps, youth sports camps and exempt single skill-building youth camps may open in accordance with the requirements in **Appendix J** of this Order.  Residential camps are not authorized to open at this time.

L.    **Specific Industry Requirements**.  Additional requirements for specific industries are included in the following Appendices to this Order:

1.    Appendix A:  Critical and Non-Critical Retail Requirements
2.    Appendix B:  Field Services
3.    Appendix C:  Non-Critical Office-Based Businesses
4.    Appendix D:  Personal Services
5.    Appendix E:  Limited Healthcare Settings
6.    Appendix H:  Non-Critical Manufacturing
7.    Appendix I:  Restaurants
8.    Appendix J:  Children's Day Camps, Youth Sports Day Camps and Exempt Single Skill-Building Youth Camps
9.    Appendix K:  Outdoor Recreation

M.    **Houses of Worship.**  Houses of worship are encouraged to implement electronic platforms to conduct services whenever possible or to conduct more frequent services of 10 people or less to allow for compliance with **Social Distancing Requirements**.  Effective June 4, 2020, houses of worship may open to 50% of the posted occupancy limit indoors not to exceed 50 people, whichever is less, per room, while meeting the 6 feet distancing requirements in every direction between non-household members.  For outdoor worship services, a house of worship must maintain 6 feet distance between non-household members and work with the appropriate local authority to obtain approval for the maximum number of individuals who may attend in the designated outdoor space.  In addition to meeting the requirements of Section II.I of this Order, houses of worship shall also meet the following requirements:

1.    Face coverings are strongly encouraged to be worn by staff, volunteers and congregants while on the premises of the house of worship, except for children 2 years old and under, those with trouble breathing, or those unable to remove a mask without assistance.
2.    Houses of worship should follow the Colorado Department of Health and Environment Cleaning Guidance, as well as the CDC guidelines for Cleaning and

11

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

Disinfecting Your Facility in preparing their buildings prior to, during, and following any gathering. Restrooms and the worship space, particularly any metal or plastic on chairs, and all high touch surfaces or shared objects must be cleaned and disinfected between services.

## III.    Definitions

A.    **Necessary Activities.** For purposes of this PHO, individuals are encouraged to only leave their Residence to perform any of the following **Necessary Activities**, provided they comply at all times and to the greatest extent possible with **Social Distancing Requirements** below.  People at risk of severe illness from COVID-19 are urged not to leave their residence except as necessary to receive medical care. People who are sick must not leave their residence except as necessary to receive medical care, and must not go to work, even for a **Critical Business**.  **Necessary Activities** include:

1.  Engaging in activities or perform tasks essential to their health and safety, or to the health and safety of their family or household members, including, but not limited to, pets and livestock, such as, by way of example only and without limitation, obtaining medical supplies, walking your dog, feeding barnyard animals, obtaining durable medical equipment, obtaining medication, visiting a healthcare professional, or obtaining supplies they need to work from home.

2.  Obtaining necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, food, pet supply, other household consumer products, and products or equipment necessary to maintain the safety, sanitation, and essential operation of a Residence.

3.  Engaging in outdoor activity, such as, by way of example and without limitation, walking, hiking, nordic skiing, snowshoeing, biking or running. For purposes of outdoor activity, State parks will remain open to the public who live in the vicinity to engage in walking, hiking, biking, running, camping and similar outdoor activities, basketball and tennis courts may be open for use. For other parks, check with the local jurisdiction and follow any requirements for that jurisdiction.  For ski resorts, the local public health agency must approve the ski resort's plan prior to opening.  Additionally, the permitted outdoor activities in this PHO do not include activities that would violate the **Social Distancing Requirement**s defined in Section III, below.

4.  Performing work providing for businesses, government entities, and industries authorized Section II of this Order, or to otherwise carry out activities permitted in this Order.

5.  Caring for a family member, a vulnerable person, or pet in another household, or to care for livestock kept at a location other than an individual's home.

12

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**B.      Necessary Travel**.  For purposes of this Order, travel is Necessary for any of the following purposes: (1) providing or accessing **Necessary Activities**, **Minimum Basic Operations**, **Critical Government Functions**, and **Critical Businesses,** and other businesses or industries authorized in Section II of this Order; (2) receiving materials for distance learning, for receiving meals, and any other related services from educational institutions; (3) returning to a place of residence from outside the jurisdiction; (4) travel required by law enforcement or court order; (5) travel to transport children between separate households pursuant to a parenting plan or other agreement governing parental responsibilities; (6) non-residents returning to their place of residence**;** (7) moving to a new residence**,** including individuals whose Residence is unsafe due to domestic violence concerns.

**C.      Critical Business.**  Any business, including any for profit or non-profit, regardless of its corporate structure, engaged primarily in any of the commercial, manufacturing, or service activities listed in **Appendix F**, must continue to comply with the guidance and directives for maintaining a clean and safe work environment issued by the Colorado Department of Public Health and Environment (CDPHE) and any applicable local health department. **Critical Businesses** must comply with **Social Distancing Requirements** and all PHOs currently in effect to the greatest extent possible and will be held accountable for doing so.  A list of Critical Businesses is contained in **Appendix F** to this Order.

**D.      Critical Government Functions**.  The provision, operation and support of the following state and local government functions shall continue:

      1.      Public safety (police stations, fire and rescue stations, correctional institutions, emergency vehicle and equipment storage, and, emergency operation centers)

      2.      Emergency response

      3.      Judicial branch operations including state and municipal courts, including attorneys, experts, witnesses, parties, and any personnel necessary for trials, court appearances, or other court business.  The Judicial branch is encouraged to make remote participation available to the greatest extent possible.

      4.      The Colorado General Assembly, legislative bodies of municipal governments, and executive branch functions

      5.      Emergency medical (hospitals, ambulance service centers, urgent care centers having emergency treatment functions, and non-ambulatory surgical structures but excluding clinics, doctors offices, and non-urgent care medical structures that do not provide these functions)

      6.      Designated emergency shelters

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 945 of 2921**

7.      Communications (main hubs for telephone, broadcasting equipment for cable systems, satellite dish systems, cellular systems, television, radio, and other emergency warning systems, but excluding towers, poles, lines, cables, and conduits)

8.      Public utility plant facilities for generation and distribution (drinking water and wastewater infrastructure, hubs, treatment plants, substations and pumping stations for power and gas, but not including towers, poles, power lines, and oil and gas buried pipelines)

9.      Transportation. All public and private airports, airlines, taxis, transportation network companies (such as Uber and Lyft), vehicle rental services, paratransit, and other private, public, and commercial transportation and logistics providers necessary for **Necessary Activities**

10.     Transportation infrastructure (aviation control towers, air traffic control centers, and emergency equipment aircraft hangars), critical road construction and maintenance

11.     Hazardous material safety

12.     Services to at-risk populations and people who are at risk of severe illness from COVID-19

13.     Activities related to federal, state, and local elections, including any required acts of a political party, provided **Social Distancing Requirements** are observed to the greatest extent possible

14.     Any government service, state or local, required for the public health and safety, government functionality, or vital to restoring normal services

15.     Election operations, including but not limited to election judges, signature gatherers/circulators, campaign workers and volunteers

**E.     Field Services** means a service that is being provided out in the field as opposed to a company property, including third party private properties, such as a third party household.

**F.     Gym** means a building or room used for indoor sports or exercise, such as fitness, dance, exercise or group classes, exercise studios and centers, recreation centers, bowling alleys, pools, and other indoor athletic facilities.

**G.     Horse track** means a licensed race track, which is any premises licensed pursuant to this Article 32 of Title 44 of the Colorado Revised Statutes for the conduct of racing. Sections 44-32-102(2)(a), (2)(b), (3), (8) & (24), C.R.S.

**H.     Minimum Basic Operations**.  The minimum necessary activities to (1) maintain the value of the business's inventory, ensure security, process payroll and employee benefits, or for related functions; or (2) facilitate employees of the business being able to continue to work

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

remotely from their residences are allowable pursuant to this Order; continue filling online product orders and to process customer orders remotely.  Any business supporting **Minimum Basic Operations** must comply at all times with **Social Distancing Requirements**.

      **I.**    **Non-Critical Office-Based Business** means any commercial business that is conducted in an office and not a production environment and is not included in the list of **Critical Businesses** in **Appendix F**.

      **J.**    **Non-Critical Retail** means any retail service that is not included in the list of critical retail services in **Appendix F**.  Examples of **Non-Critical Retail** include retailers of clothing, home goods, cell phone stores, mattresses, appliances, thrift shops, apothecaries, vape and tobacco shops, craft, hobby and fabric stores, fishing tackle retailers, sporting goods, boutiques, etc.

      **K.**    **Limited Healthcare Settings** means those locations where certain healthcare services are provided, including acupuncture (not related to personal services), athletic training (not related to personal services), audiology services, services by hearing aid providers, chiropractic care, massage therapy (not related to personal services), naturopathic care, occupational therapy services, physical therapy, and speech language pathology services.  These individual services may only be performed with 10 or fewer people in a common business space at a maximum of 50% occupancy for the location, whichever is less, including both employees and patients, e.g. 5 chiropractors providing services to 5 customers, with **Social Distancing Requirements** in place of 6 feet distancing between customers receiving services.  Employees must wear medical grade masks at all times, and patients must wear at least a cloth face covering at all times.  Services provided in **Limited Healthcare Settings** that are ordered by a medical, dental or veterinary practitioner, are subject to the requirements of Reference PHO 20-29; otherwise, the services are subject to the requirements of PHO 20-28.

      **L.**    **Personal Services** means services and products that are not necessary to maintain an individual's health or safety, or the sanitation or essential operation of a business or residence. **Personal Services** include, but are not limited to, pastoral services except as specified in **Appendix F**, personal training, dog grooming, or body art and also applies to noncritical professionals regulated by the Division of Professions and Occupations, within the Department of Regulatory Agencies (DORA) including but not limited to services provided by personal beauty professionals such as hairstylists, barbers, cosmetologists, estheticians, nail technicians, as well as massage therapists, whose work requires these professionals to be less than six feet from the person for whom the services are being provided.  Massage therapy services ordered by a healthcare professional should consult **Executive Order D 2020 027.** These individual services may only be performed with 10 or fewer people in a common business space at a maximum of

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

50% occupancy for the location, whichever is less, including both employees and customers, e.g. 5 hairstylists providing services to 5 customers, with **Social Distancing Requirements** of at least 6 feet distancing between different customers receiving services.  Both employees and customers must wear at least a cloth face covering or a medical grade mask at all times. Only services that can be performed without the customer removing their mask are permitted.

      1.    Effective June 4, 2020, individual personal services may be performed at 50% of the posted occupancy limit not to exceed 50 people in a common business space.

     **M.**    **"Safer at Home"** means individuals stay in your place of residence as much as possible, and avoid unnecessary social interactions.

     **N.**    **Social Distancing Requirements**.  To reduce the risk of disease transmission, individuals shall maintain at least a six-foot distance from other individuals, wash hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, cover coughs or sneezes (into the sleeve or elbow, not hands), regularly clean high-touch surfaces, and not shake hands.

     **O.**    **Stay at Home** means to stay in your place of residence, which includes hotels, motels, and shared rental facilities, and not leave unless necessary to provide, support, perform, or operate **Necessary Activities, Minimum Basic Operations, Critical Government Functions, and Critical Businesses**.

     **P.**    **"Vulnerable Individual"**, also known as an individual at risk of severe illness from COVID-19,  means:

    1.    Individuals who are 65 years and older;

    2.    Individuals with chronic lung disease or moderate to severe asthma;

    3.    Individuals who have serious heart conditions;

    4.    Individuals who are immunocompromised;

    5.    Pregnant women; and

    6.    Individuals determined to be high risk by a licensed healthcare provider.

**IV.**    **Postsecondary Institutions.**  Programs and courses at postsecondary institutions that cannot be conducted remotely, generally due to equipment requirements, may be conducted through limited in-person instruction.  Institutions that wish to resume providing in-person instruction must inform the Colorado Department of Higher Education and ensure that **Social**

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

**Distancing Requirements** are strictly followed.  Additionally, students are allowed to opt out of the in-person instruction; such students will be treated no differently than students in all other courses that have ceased in-person instruction due to the COVID-19 situation.

**V.     Variance Requests.**  Any Colorado county may request a variance from the Colorado Department of Public Health and Environment authorizing implementation of an alternative COVID-19 suppression plan that differs from part or all the requirements of **Executive Order D 2020 091** or this Order.  The variance request must include an alternative COVID-19 suppression plan endorsed by the local public health agency and adopted by the county commissioners or other county-level governing body, in addition to verification from local hospitals that they have the capacity to serve all people needing their care.  Further guidance on variance requests is contained in **Appendix G**.

**VI.     Enforcement**

This Order will be enforced by all appropriate legal means.  Local authorities are encouraged to determine the best course of action to encourage maximum compliance. Failure to comply with this order could result in penalties, including jail time, and fines, and may also be subject to discipline on a professional license based upon the applicable practice act.

**VII.     Severability**

If any provision of this Order or the application thereof to any person or circumstance is held to be invalid, the reminder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of this Order are severable.

**VIII.     Duration**

This Order shall become effective on Friday June 5, 2020 and will expire 30 days from June 1, 2020, unless extended, rescinded, superseded, or amended in writing.

_Jill Hunsaker Ryan_                                             June 5, 2020
Jill Hunsaker Ryan, MPH                                    Date
Executive Director

17

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**          **Page 949 of 2921**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

**Appendix A. Critical and Non-Critical Retail Requirements**
**Appendix B. Field Services**
**Appendix C: Non-Critical Office-Based Businesses**
**Appendix D: Personal Services**
**Appendix E: Limited Healthcare Settings**
**Appendix F: Critical Businesses List**
**Appendix G: County Variance Requests**
**Appendix H: Non-Critical Manufacturing**
**Appendix I: Restaurants**
**Appendix J: Children's Day Camps, Youth Sports Day Camps And Exempt Single Skill-Building Youth Camps**
**Appendix K: Outdoor Recreation**

Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

# APPENDIX A.  CRITICAL AND NON-CRITICAL RETAIL REQUIREMENTS

**I.**     Effective April 27, 2020, in addition to meeting the requirements of this Order, and specifically Section II.I, **Non-Critical Retail** may operate and offer goods through delivery service, window service, walk-up service, drive-through service, drive-up service, curbside delivery, or any other manner allowing for strict compliance with mandatory **Social Distancing Requirements**, except as prohibited or limited by this Order.  Restricting interactions to curbside pick-up or delivery minimizes touch.  **Non-Critical Retailers** are encouraged to continue curbside pick-up or delivery for longer term service wherever possible.  **Critical** and **Non-Critical Retailers** must implement the requirements in Section II.I, in addition to the specific requirements in this Appendix.  Indoor malls are addressed separately in Section III of this **Appendix**.  Libraries, both public and private, are limited to providing window service, walk-up service, drive-through service, or curbside delivery.

>    **A.**     **Critical** and **Non-Critical Retail** must implement the following measures within the workplace to minimize disease transmission:
>
>>    1.     Elevate and increase frequency of cleaning practices, including cleaning and disinfection of high touch areas.
>>    2.     Restrict return policy to only items that can be properly sanitized prior to re-selling.
>>    3.     Post signage for employees and customers on good hygiene and other sanitation practices.
>
>    **B.**     **Critical** and **Non-Critical Retail** must implement the following measures regarding employees to minimize disease transmission:
>
>>    1.     Provide guidance and encouragement on maintaining 6 foot distancing between both employees and employees and customers.
>>    2.     Provide appropriate face coverings and gloves to all employees whenever possible, and also allow employees who can to provide their own appropriate face coverings and gloves for work activities.  Employees without face coverings shall not perform tasks that require engagement with the public or with other coworkers.
>>    3.     Encourage frequent breaks to allow employees to wash or sanitize their hands.
>>    4.     Require employees to stay home when showing any symptoms or signs of sickness.

19

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                                **Page 951 of 2921**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

     5.     Provide personal protective equipment (PPE) for employees who are managing deliveries, returns, etc.

**C.**    Employers must implement the following measures regarding customers to minimize disease transmission:
     1.     Require 6 foot distancing measures wherever possible, such as marked space in pick up lines.

**II.**    Effective May 1, 2020, **Non-Critical Retail** may open at fifty percent (50%) capacity for in-person services if the business can demonstrate compliance with all of the following requirements:

**A.**    **Critical** and **Non-Critical Retail** must continue implementing the measures within the workplace listed in Section I.A of this **Appendix A**, and in addition:
     1.     maintain 6 foot distancing between patrons and employees;
     2.     effectively symptom monitor employees as listed in Section II.I;
     3.     provide face coverings, and gloves as necessary and appropriate, to employees;
     4.     ensure ability to adequately clean and disinfect both back-room and retail spaces; and
     5.     provide dedicated, in-store hours for vulnerable or at-risk individuals.

**B.**    **Critical** and **Non-Critical Retail** must implement the measures regarding employees listed in Section I.B of this **Appendix A**.

**C.**    **Critical** and **Non-Critical Retail** must implement the measures to minimize disease transmission for customers listed in Section I.C of this **Appendix A** in addition to the following measures:
     1.     limit the number of customers on the premises as needed to make 6 foot distancing between customers attainable;
     2.     provide decals and demarcation for waiting area in lines that meet social distancing criteria;
     3.     create signage encouraging vulnerable and at-risk individuals to refrain from shopping outside of dedicated hours set aside for those who are more vulnerable or at-risk;
     4.     create signage to encourage the use of masks and gloves by customers while on the premises; and

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**    **Page 952 of 2921**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

     5.     provide hand sanitizer and wipes at entrances and other high-traffic locations to the greatest extent possible.

**III.**    **Indoor Malls.**  Indoor malls must not open to the public for entry.  Retailers operating in indoor malls that have their own exterior entrance from the outside may operate as all other **Non-Critical Retail** in accordance with this **Appendix.**  Retailers and service providers operating in an indoor mall that do not have their own exterior entrance from the outside remain closed; however, these vendors may establish delivery service, including curbside delivery, in strict compliance with mandatory **Social Distancing Requirements.**

21

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

## APPENDIX B: FIELD SERVICES

**I.**     Effective April 27, 2020, **Field Services** may resume if the business can demonstrate compliance with the requirements in Section II.I of this Order, in addition to the following requirements specific to **Field Services**:

   **A.**     Employers must implement the following measures regarding employees to minimize disease transmission:

   1.     adhere to all general rules or guidance on social gathering limitations when working out of the office;

   2.     implement procedures for field-based employees to monitor for symptoms and report-in to management daily on health status.

   3.     comply with the **Social Distancing Requirements** and maintain a 6 foot distance between employees and from their customers;

   4.     provide gloves and masks for any customer interactions or work being done in third-party home or office spaces;

   5.     When scheduling or conducting field services, either the employer or an employee must inquire whether third-party homes have individuals symptomatic for COVID-19 or have been in contact with known positive cases, and exercise caution when inside the home and interacting with anyone in the home if they do;

   6.     maintain a detailed log of customer interactions to enable contact tracing if it becomes necessary.  The log should include name, date, and location of contact, as well as the contact's phone number and/or email address;

   7.     require that all tools or equipment be sanitized after each customer visit;.

   8.     prioritize work accommodations for individuals at risk of severe illness from COVID-19, prioritizing telecommuting;

   9.     provide guidance and encouragement on personal sanitation, including frequently washing hands.  This guidance should include all of the following:

      a.     frequently and thoroughly wash your hands with soap and water for at least 20 seconds. If soap and water are not available, use hand sanitizer with at least 60% alcohol;

      b.     cover coughs and sneezes with a tissue, then throw the tissue in the trash, or use your inner elbow or sleeve;

      **c.**     avoid touching your eyes, nose, and mouth with unwashed hands;

      d.     stay home if you're sick, and keep your children home if they are sick; and

      e.     clean high touch surfaces in your home, and personal items such as cell phones, using regular household products.

22

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

**B.**     Employers must implement the following measures regarding customers to minimize disease transmission:

1.     provide estimates, invoices, receipts, and other documentation electronically to negate the need for paper;

2.     provide contactless payment options in the field whenever possible;

3.     encourage customers to maintain 6 foot distancing from field service employees; and

4.     encourage customers to use facial coverings when field services are being conducted.

23

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

## APPENDIX C: NON-CRITICAL OFFICE-BASED BUSINESSES

**I.**    Effective May 4, 2020, **Non-Critical Office-based Businesses** may resume at fifty percent (50%) of their in-office occupancy if the business can demonstrate compliance with the requirements of this Order, including Section II.I, and all of the following:

    **A.**    Employers must implement the following measures within the workplace to minimize disease transmission:

        1.    ensure a minimum of 6 feet of space between all desks and workspaces;

        2.    modify the flow of people traffic to minimize contacts, such as identifying doors for entry or exit only;

        3.    conduct standard office cleaning with increased frequency and supplement with sanitization of high touch areas, in accord with CDPHE guidelines;

        4.    provide employees with cleaning and disinfecting products and guidance on daily workspace cleaning routines; and

        5.    post signage for employees and customers on good hygiene and new office practices.

    **B.**    Employers must implement the following measures regarding employees to minimize disease transmission:

        1.    maintain in-office occupancy at no more than 50% of total by maximizing use of telecommuting and developing in-office rotation schedules;

        2.    minimize the number of in-person meetings and maintain 6 foot distancing in those meetings;

        3.    provide guidance and encouragement on maintaining 6 foot distancing and taking breaks to wash hands;

        4.    require gloves and masks for any customer interactions; and

        5.    allow telecommuting to the greatest extent possible.

    **C.**    Employers must implement the following measures regarding customers to minimize disease transmission:

        1.    require 6 foot distancing measures wherever possible, such as marked space in check-out lines;

        2.    encourage customers to use facial coverings when on the business premises;

        3.    provide hand sanitizer at entrances and other high-traffic locations; and

        4.    implement hours where service is only provided to individuals at risk of severe illness from COVID-19 if possible.

24

# APPENDIX D: PERSONAL SERVICES

**I.**      Effective May 1, 2020, **Personal Services** may resume if the business can demonstrate compliance with the requirements of this Order, including Section II.I, and all of the following:

    **A.**      Employers and sole proprietors must implement the following measures within the workplace to minimize disease transmission:

        1.      Employ strict hygiene guidelines and cleaning and disinfection procedures for all contact surfaces and tools, in accordance with CDPHE Worker and Customer Protection Guidelines for Non-Healthcare Industries;

        2.      Ensure a minimum of 6 feet of separation between clients and customers, including services for pets, when not directly performing service;

        3.      Post signage for employees and customers on good hygiene and safety measures being taken;

        4.      Minimize in-home and in-facility services with remote alternatives whenever possible, such as drive-by services or virtual meetings; and

        5.      Through June 3, 2020, limit individuals, including employees and customers, to no more than 10 people in a common business space at a maximum of 50% occupancy. Effective June 4, 2020, limit individuals including employees and customers, to no more than 50 people in a common business space at a maximum of 50% occupancy. All businesses offering services through employees or lessees in individual rooms must comply with the requirements of this Order for each room.

    **B.**      Employers must implement the following measures regarding employees to minimize disease transmission:

        1.      Services with close personal contact, such as beauty professionals, massage, etc., must implement the following:

            a.      wear a face covering and gloves at all times, or, if wearing gloves is not feasible or appropriate, meticulous hand washing;

            c.      change gloves and wash hands between every individual or pet served;

            d.      clean and disinfect all shared equipment and tools between every individual or pet served; and

            e.      maintain a detailed log of customer interactions to enable contact tracing if it becomes necessary.  The log should include name, date, details of services performed, and location of contact, as well as the contact's phone number and/or email address.

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 957 of 2921**

2.      Personal services with low personal contact, such as movers or repair services, must implement the following:

a.      maintain a minimum of 6 feet of separation between customers and adhere to social gathering limits of no more than 10 people.  For real estate work, open houses are prohibited;

b.      require face coverings and, if feasible, gloves for any customer interactions; and

c.      provide guidance on strict hygiene precautions to employees.

C.      **Personal Services** must implement the following measures regarding customers to minimize disease transmission:

1.      provide customer services by appointment only, do not allow walk-ins or waiting for an appointment, and limit all group classes of any kind for individuals or for pets, pet training classes, or other activities associated with picking up pets to no more than 10 customers at a time and all following **Social Distancing Requirements**;

2.      require customers to wear face coverings, except for personal training in a pool;  if a customer does not have a mask, a "disposable mask" could be provided;

3.      conduct symptoms check for all customers of services with close personal contact and decline to provide services to anyone who has symptoms. A sample form can be found here; and

4.      provide contactless payment options whenever possible.

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

# APPENDIX E: LIMITED HEALTHCARE SETTINGS

**I.**    Effective April 27, 2020, **Limited Healthcare Settings** may resume if the healthcare entity can demonstrate compliance with the requirements of this Order, including Section II.I and may restart voluntary and elective surgeries and procedures in limited healthcare facilities and offices with required personal protective equipment (PPE) in accord with the priorities, requirements, and specific criteria below.

    A.  Employers and sole proprietors of **Limited Healthcare Settings** must implement the following measures within the overall workplace, including administrative and front office operations, to minimize disease transmission:

        1.  The practice must have access to adequate PPE in order to sustain recommended PPE use for its workforce for two weeks without the need for emergency PPE-conserving measures. If a practice proposes to extend the use of or reuse PPE, it must follow CDC guidance.[1]

        2.  The practice must implement strict infection control policies as recommended by the CDC.[2]

        3.  The practice must ensure a minimum of 6 feet of separation between clients and patients, when not directly performing service, with no more than ten (10) people in a common business space at a maximum of 50% occupancy, and all settings offering services in individuals rooms must comply with the requirements of this Order for each room.

        4.  The practice must post signage for employees and patients on good hygiene and safety measures being taken.

        5.  The practice must minimize in-home and in-facility services with remote alternatives whenever possible, such as drive-by services or virtual meetings.

        6.  Practices must maintain a plan to reduce or stop voluntary and elective surgeries and procedures should a surge/resurgence of COVID-19 cases occur in their region.

    B.  Employers of **Limited Healthcare Settings** must implement the following measures regarding employees to minimize disease transmission:

        1.  Services with close, direct personal contact must implement the following:

            a.  wear medical grade mask and gloves at all times;

            b.  change gloves and wash hands between every patient;

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/index.html
[2] https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control.html

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

    c. clean and disinfect all shared equipment and tools between every patient; and

    d. maintain a detailed log of patient interactions to enable contact tracing if it becomes necessary. The log should include name, date, details of services performed, and location of contact, as well as the contact's phone number

2. Services with low personal contact must implement the following:

    a. maintain a minimum of six 6 feet of separation between customers and limit to no more than ten (10) people in a common business space at a maximum of 50% occupancy.

    b. require face coverings and, if feasible, gloves for any customer interactions; and

    c. provide guidance on strict hygiene precautions to employees.

3. The practice must require all administrative personnel to wear a facemask, that can be cloth if necessary. Masks may be removed when social distancing of at least 6 feet if possible (e.g., after entering a private office). In order to ensure staff can take off their masks for meals and breaks, scheduling and location for meals and breaks should ensure that at least a 6-foot distance can be maintained between staff when staff needs to remove their mask. It is important for healthcare settings to emphasize that hand hygiene is essential to maintaining employee safety, even if staff are wearing masks. If the facemask is touched, adjusted or removed, hand hygiene should be performed.

C. **Limited Healthcare Settings** must implement the following measures regarding customers to minimize disease transmission:

1. The practice must provide services by appointment only, do not allow walk-ins or waiting for an appointment;

2. The practice must require patients to wear face coverings; if a patient does not have a mask, a "disposable medical mask" could be provided;

3. The practice must conduct symptom checks for all patients, decline to provide services to anyone who has symptoms, and refer them to their primary care physician. A sample form can be found here; and

4. The practice must provide contactless payment options whenever possible;

5. The practice must follow social distancing protocols of maintaining at least a 6-foot distance between individuals wherever possible such as in waiting rooms and other small spaces, and should use physical barriers within patient care areas when possible.

6. The practice must appropriately schedule patients, so that providers have sufficient time to change PPE and ensure rooms and equipment can be cleaned and disinfected between each patient.

28

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 960 of 2921**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

7. The practice should continue to maximize the use of telehealth and virtual office or clinic visits.

8. The practice should use virtual waiting rooms when possible, with patients who are able to wait in their cars not entering the office until they can be moved immediately to an exam room.

9. The practice should implement source control for everyone entering the office or clinic, including requiring all patients and visitors to wear a cloth mask when entering any healthcare building, and if they arrive without a mask, one should be provided.

D. As best practice, it is recommended that once voluntary and elective surgeries and procedures resume, **Limited Healthcare Settings** reassess their operations every two weeks, in order to ensure:

1. All of the above approaches and criteria are being met;

2. Procedures are prioritized based on whether their continued delay will have an adverse health outcome.

   a. Voluntary and elective surgeries and procedures should be prioritized based on indication and urgency[3];

3. Strong consideration is given to the balance of risks versus benefits for patients in higher-risk groups such as those over age 65 and those with compromised immune systems or lung and heart function;

4. All patients are pre-screened for COVID-19 risk factors and symptoms prior to delivering care, via telehealth when applicable; and

5. Compliance with the guidance and directives for maintaining a clean and safe work environment issued by the CDPHE and any applicable local health department for critical businesses is maintained, including compliance with **Social Distancing Requirements** and all PHOs currently in effect to the greatest extent possible.

---

[3] Urgent and emergent care should continue in accordance with OHA and CMS guidance.

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

# APPENDIX F:  CRITICAL BUSINESSES

**Critical Business.**  Any business, including any for profit or non-profit, regardless of its corporate structure, engaged primarily in any of the commercial, manufacturing, or service activities listed below, may continue to operate as normal.  **Critical Businesses** must comply with the guidance and directives for maintaining a clean and safe work environment issued by the Colorado Department of Public Health and Environment (CDPHE) and any applicable local health department.  **Critical Businesses** must comply with **Social Distancing Requirements** and all PHOs currently in effect to the greatest extent possible and will be held accountable for doing so.  **Critical Businesses** do NOT include health clubs as defined in C.R.S. § 6-1-102(4.6), fitness and exercise gyms, and similar facilities, or any of the other businesses required to close by PHO 20-22.

"**Critical Business**" means:

## 1. Healthcare Operations, Including:

- Hospitals, clinics, and walk-in health facilities
- Medical and dental care, including ambulatory providers
- Research and laboratory services
- Medical wholesale and distribution
- Home health care companies, workers and aides
- Pharmacies
- Pharmaceutical and biotechnology companies
- Behavioral health care providers
- Veterinary care and livestock services
- Nursing homes, residential health care, or congregate care facilities
- Medical supplies and equipment manufacturers and providers, including durable medical equipment technicians and suppliers
- Blood banks

## 2. Critical Infrastructure, Including:

- Utilities and electricity, including generation, transmission, distribution and fuel supply
- Road and railways
- Oil and gas extraction, production, refining, storage, transport and distribution
- Public water and wastewater

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

- Telecommunications and data centers
- Transportation and infrastructure necessary to support critical businesses
- Hotels, and other places of accommodation
- Businesses and organizations that provide food, shelter, social services, and other necessities of life for economically disadvantaged, persons with access and functional needs, or otherwise needy individuals
- Food and plant cultivation, including farming crops, livestock, food processing and manufacturing, animal feed and feed products, rendering, commodity sales, and any other work critical to the operation of any component of the food supply chain
- Any business that produces products critical or incidental to the construction or operation of the categories of products included in this subsection
- Flight schools

## 3. Critical Manufacturing, Including:

- Food processing, manufacturing agents, including all foods and beverages
- Chemicals
- Computers and computer components
- Medical equipment, components used in any medical device, supplies or instruments
- Pharmaceuticals
- Sanitary products
- Telecommunications
- Microelectronics/semiconductor
- Agriculture/farms
- Household paper products
- Any business that produces products critical or incidental to the processing, functioning, development, manufacture, packaging, or delivery of any of the categories of products included in this subsection
- Any manufacturing necessary to support a **Critical Business**

## 4. Critical Retail, Including:

- Grocery stores including all food and beverage stores
- Farm and produce stands
- Gas stations and convenience stores
- Restaurants and bars as authorized in **Appendix I** of this Order

31

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

- Marijuana dispensary (only for the sale of medical marijuana or curbside delivery pursuant to **Executive Order D 2020 011**)
- Liquor stores
- Firearms stores
- Hardware, farm supply, and building material stores
- Establishments engaged in the retail sale of food and any other household consumer products (such as cleaning and personal care products), excluding retailers of only health and nutrition-related products (vitamins, minerals, supplements, herbs, sports nutrition, diet and energy products)
- Establishments engaged in the sale of products that support working from home (this exclusion does not include businesses that primarily sell hobby craft supplies)

**5. Critical Services, Including:**

- Trash, compost, and recycling collection, processing and disposal
- Mail and shipping services, and locations that offer P.O. boxes
- Self-serve laundromats and garment and linen cleaning services for critical businesses
- Building cleaning and maintenance
- Child care services
- Automobile rental, automobile online sales with no touch delivery service, auto supply and repair (including retail dealerships that include repair and maintenance, but not in person retail sales)
- Warehouse/distribution and fulfillment, including freight distributors
- Funeral homes, crematoriums, and cemeteries may operate at 50% of the posted occupancy limit not to exceed 50 people, with strict compliance with **Social Distancing Requirements** for employees and any attendees of services
- In-person pastoral services for individuals who are in crisis or in need of end of life services provided social distancing is observed to the greatest extent possible.
- Houses of worship may operate as authorized in Section II.M of this Order
- Storage for **Critical Businesses**
- Animal shelters, animal boarding services, animal rescues, zoological facilities, animal sanctuaries, and other related facilities
- Moving services

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**          **Page 964 of 2921**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

- In person group counseling or recovery meetings for substance abuse or behavioral health following social distancing of 6 feet and no more than 10 participants

## 6. News Media

- Newspapers
- Television
- Radio
- Other media services

## 7. Financial and Professional Institutions, Including:

- Banks and credit unions
- Insurance and payroll
- Services related to financial markets
- Professional services, such as legal, title companies, or accounting services, real estate appraisals and transactions

## 8. Providers of Basic Necessities to Economically Disadvantaged Populations, Including:

- Homeless shelters and congregate care facilities
- Food banks
- Human services providers whose function includes the direct care of patients in State-licensed or funded voluntary programs; the care, protection, custody and oversight of individuals both in the community and in State-licensed residential facilities; those operating community shelters and other critical human services agencies providing direct care or support

## 9. Construction, Including but not Limited To:

- Housing and housing for low-income and vulnerable people
- Skilled trades such as electricians, plumbers
- Other related firms and professionals who provide services necessary to maintain the safety, sanitation, and critical operation of residences and other **Critical Businesses** or **Critical Government Functions**, and other essential services

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

## 10. Defense

- Defense, security, and intelligence-related operations supporting the State of Colorado, local government, the U.S. Government or a contractor for any of the foregoing
- Aerospace operations
- Military operations and personnel
- Defense suppliers

## 11. Critical Services Necessary to Maintain the Safety, Sanitation and Critical Operations of Residences or Other Critical Businesses, Including:

- Law enforcement
- Fire prevention and response
- Building code enforcement
- Security
- Emergency management and response
- Building cleaners or janitors
- General maintenance whether employed by the entity directly or a vendor (including maintenance and repair of ordinary household and business appliances but not in-person retail sales of such products)
- Automotive and bicycle repair
- Disinfection
- Snow removal
- Bail bonds agents
- Pest control

## 12. Vendors that Provide Critical Services or Products, Including Logistics and Technology Support, Child Care and Services:

- Logistics
- Technology support for online and telephone services
- Child care programs and services
- Government owned or leased buildings
- **Critical Government Functions**

34

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

### 13. Educational Institutions that Provide Critical Services to Students and the General Public:

- P-12 public school and private schools for the purpose of providing meals, housing, facilitating or providing materials for distance learning, and providing other essential services to students, provided that **Social Distancing Requirements** are observed.

- Postsecondary institutions, including private and public colleges and universities, for the purpose of facilitating distance learning, providing in person classroom or laboratory education for less than 10 students per classroom or lab in medical training fields only, or performing essential functions, provided that **Social Distancing Requirements** are observed, such as security, medical and mental health services, housing, food services, and critical research.

35

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

## APPENDIX G:   COUNTY VARIANCE REQUESTS

Governor Jared Polis issued **Executive Order D 2020 044 Safer at Home** effective April 27, 2020, updated with **Executive Order D 2020 079**, and now replaced with **Executive Order D 2020 091 Safer at Home in the Vast, Great Outdoors**.  The key elements of the Order are that most people still stay at home as much as possible and avoid unnecessary social interactions; vulnerable populations continue to stay at home except to support or perform necessary activities or participate in critical government functions or critical businesses; there is limited reopening of postsecondary institutions, and certain business operations are permitted; people are still encouraged to stay within their county of residence or employment as much as possible; public and private gatherings of more than ten (10) persons are prohibited; and Coloradans are advised to wear non-medical cloth face coverings that cover the nose and mouth whenever in public.

Any county that desires to apply for a variance from part or all of the executive order may do so after meeting the following criteria and submitting an alternative COVID-19 suppression plan to be approved or denied by the Colorado Department of Public Health and the Environment (CDPHE).  The application must be submitted directly to CDPHE through the online application process, found here.

Criteria for variance consideration:
1)    The local public health agency endorses the alternative plan;
2)    Local hospitals can verify that they have the capacity to serve all people needing their care;
3)    The county commissioners or, in the case of the City and County of Denver, the mayor of Denver, or, in the case of the City and County of Broomfield, the city council, vote affirmatively to adopt the alternative plan in place of the state Safer-At-Home order; and
4)     Counties with sovereign tribal nations (Ute Mountain Ute and Southern Ute Indian tribes) must obtain a letter of support from tribes and include it with their variance application.

The local variance process allows communities that are not experiencing a high rate of transmission to tailor social distancing policies to local conditions, in order to promote community wellness and economic stability. To protect other communities and hospital systems statewide, it is paramount that the local variance process only be used when transmission is at a low enough level to be suppressed through testing and containment efforts to detect positive cases, ensure successful isolation and quarantine close contacts.  Examples of local conditions that should be considered in seeking a variance include: a low number of new cases per day, cases declining for the past 14 days, incidence below the state average, declining positive tests as a percent of total tests for the past 14 days, low and stable case growth rate or equivalent, and having an early warning system to detect an increase in community spread or outbreaks, with

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 968 of 2921**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

triggers for tightening restrictions to prevent a breach of local hospital system capacity. Considerations and triggers should be documented in the plan submitted to CDPHE.

Variance requests will be evaluated based on local epidemiological data to assess whether the county requesting the variance has a disease prevalence that is low, medium, or higher than the statewide average. If higher, other metrics may be considered such as two-week case trend, percent positivity of tests and, whether outbreaks exist and are contained. The variance will be commensurate with the local virus transmission and disease burden.

CDPHE is available to provide technical assistance to any county considering a variance. The department will consider applications for variances based on the submitted plan's rationale for a step down and the presence of an early warning system with triggers for tightening back up. CDPHE reserves the right to approve or deny applications. All variances granted pursuant to this Order remain in effect until the Order expires without further extension or is terminated, unless automatically rescinded pursuant to the terms of the variance approval by CDPHE, rescinded for other reasons by CDPHE, or rescinded by the county.

Approved local variances may be rescinded at the discretion of the local public health agency based on changes to State executive or public health orders. If a variance request is rescinded at the local level, the state orders will remain in effect. Local public health agencies may also choose to maintain approved variance requests in the event that a State order becomes less restrictive than the approved variance. At no point may an approved variance request be altered to be less restrictive in any aspect than state orders without updated approval from the Colorado Department of Public Health and Environment.

Counties that choose to not comply with this executive order or an approved variance will be subject to the loss of emergency preparedness funds.

37

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

## APPENDIX H:  NON-CRITICAL MANUFACTURING

**I.**     Effective May 4, 2020, **Non-Critical Manufacturing** may resume if the business can demonstrate compliance with the requirements of this Order, including Section II.I, and all of the following:

    **A.**     Employers must implement the following measures within the workplace to minimize disease transmission:

        1.     Create and implement policies or procedures for all of the following:

            i.     Limiting group interactions to keep any group less than ten (10) people by

                a.     staggering of shift changes, breaks, lunches, etc., and

                b.     eliminating all-staff in-person meetings or lunches;

            ii.     Modifying the flow of people traffic to minimize contacts, such as arranging one-way flow of work and people;

            iii.     Implementing 6 foot distancing and impermeable barriers between employees whenever possible;

            iv.     Limiting the sharing of tools, equipment, or other resources to the greatest extent possible, and if not feasible, implement cleaning and disinfection protocols as often as possible for any such shared tool, equipment and resources; and

            v.     Requiring hand washing upon arrival and before departure, establishing set hand washing time frames throughout shifts, and providing additional hand washing stations if possible.

        2.     Conduct cleaning protocols as follows:

            i.     Daily deep cleaning and disinfecting and full cleaning in-between shifts in accordance with CDPHE guidance; and

            ii.     Establish protocols to increase the frequency of sanitization in work and common spaces, following OSHA requirements and CDPHE guidance, found here;

        3.     Provide contactless options, such as entry to the worksite, payments, etc., whenever applicable and possible;

        4.     Use paperless, electronic options whenever possible to reduce the use of sharing paperwork;

        5.     Ensure ventilation of work and break areas is in line with OSHA guidance;

        6.     Support transportation arrangements that discourage carpooling; and

        7.     Develop a Preparedness and Response document in accordance with OSHA guidance.

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 970 of 2921**

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

**B.**     Employers must implement the following measures for employees to minimize disease transmission:

1.     Provide guidance about how to comply with 6 foot distancing;

2.     Designate workers to monitor and facilitate distancing on processing floor lines;

3.     Require employees to use masks or face coverings, except where doing so would inhibit that individual's health;

4.     Require employees to wash their hands upon arrival to and before departure from the facility, as we well as frequently during workshifts, in accordance with the policy required in Section I.A.1.vi of this **Appendix**;

5.     Disinfect work stations between shifts and/or at the end of the workday;

6.     Group employees into teams or shifts that remain together;

7.     Stagger employee lunch and break times;

8.     Encourage all employees not critical to in-person operations to continue working from home or working remotely; and

9.     Encourage the wearing of masks or other face coverings while carpooling or taking other forms of public transportation.

**C.**     Employers must implement the following measures regarding customers to minimize disease transmission:

1.     Prohibit entry to the worksite of all non-essential external visitors;

2.     Conduct symptom checks for any essential visitors who will interact with employees;

3.     Require essential visitors to wear masks or face coverings; and

4.     Encourage 6 foot distancing and implement procedures to limit person-to-person interaction in inbound/outbound shipping areas.

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 971 of 2921**

## APPENDIX I: RESTAURANTS

I.      Effective May 27, 2020, while **Restaurants** remain encouraged to continue curbside pick up and delivery, including alcohol pick up and delivery, **Restaurants** may resume in-person dining if the business can demonstrate compliance with the requirements of this Order, including Section II.I, and all of the following:

A.      Employers must implement the following measures within the workplace to minimize disease transmission:

1.      Indoor and outdoor in-person services

a.      Post signage notifying patrons and employees of hygiene and sanitation expectations, including not entering if they are experiencing any symptoms.
b.      Patrons in different parties must be a minimum of 6 feet apart.  The spacing of tables should be a minimum of 6 feet to ensure proper distancing.
c.      Limit party size to 8 people or less.
d.      All employees must wear facial coverings that cover the nose and mouth.
e.      Employees may utilize disposable gloves as normally required by their governing regulations.  Employees that are directly involved with disinfecting equipment and surfaces within critical business and/or have direct contact with customers shall wear gloves when involved in these activities.
f.      Cleaning and disinfection of all shared surfaces must be done between seatings.

2.      Additional indoor dine-in service requirements include:
a.      Limit service to no more than 50% indoor posted occupancy code limit, with no more than 50 patrons total, whichever is less.
b.      Ensure proper ventilation per OSHA guidance

3.      Restaurants must make every effort to maintain physical distancing at all times, both inside and outside the establishment, including:
a.      Using a reservation system, exclusively if possible;
b.      Disallowing close proximity to others outside the patron's group through eliminating communal or seat yourself options
i.      Bar seating options should only be available if the bar is not being used for bar service;
c.      Eliminating self-service stations or buffets; and
d.      Provide appropriate signs or markings within the **Restaurant** to space lines, indicate which tables are unavailable, prohibit games and dance floors that encourage gatherings, and direct foot traffic.

4.      Restaurants must implement measures to maintain the cleanliness and

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 972 of 2921**

sanitation of the restaurant, including:

    a.     Minimize or eliminate high touch surfaces and multi-use objects, such as games, table cloths if used for multiple seatings, permanent menus, and condiments, and clean and disinfect any shared objects between uses;

    b.     Increase cleaning and disinfection protocols and track with publicly posted cleaning logs including:

        i.     Clean and disinfect restrooms every hour, and

        ii.     Block off stalls and urinals with proper signage to adhere to 6 feet distance between patrons; and

    c.     Use disposable items wherever possible, such as single-use menus and condiments.

B.     Employers must implement the following measures for employees to minimize disease transmission:

    1.     Establish a minimum of 6 foot physical distancing standards and train employees on maintaining distancing between employees to the greatest extent possible

        a.     Consider implementing workflow requirements, dividers at pay counters and hostees areas, and modifying the menu to free up kitchen space.

        b.     Limit group interactions including staggering of shift changes, breaks, no consumption of family or shift meals onsite, etc.

        c.     Conduct virtual staff meetings whenever possible, any all staff meetings must meet 6 foot distancing requirements.

    2.     Face coverings and gloves

        a.     Require employees to wear facial coverings at all times, and encourage the use of gloves when in contact with customers or goods.

        b.     Require facial coverings and and encourage gloves for vendors, suppliers, and contract workers entering the licensed establishment.

    3.     Employee sanitary requirements

        a.     Encourage frequent breaks to wash hands (at least every 30 minutes) including upon arrival and departure.

        b.     Strict adherence to the hygienic practices listed in the *Colorado Retail Food Regulations* regarding hand washing and glove use.

C.     Employers should implement as many of the following measures as feasible regarding customers to minimize disease transmission and assist in any necessary outbreak investigations:

    1.     To facilitate notifying customers if a disease exposure occurs, consider

        a.     providing an option for customers to "sign in", and

        b.     utilizing a reservation system;

    2.     Implement as feasible the following low or no touch options:

        a.     Provide contactless payment options, and

        b.     Continue curbside pick up/delivery options and recommend for

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 973 of 2921**

vulnerable individuals or those unable to adhere to hygienic and distancing requirements;

3.      Ensure 6 foot distancing at all times by implementing the following:

      a.      Block of lobbies or waiting areas completely, or establish customer waiting areas that maintain proper social distancing from other guests, and

      b.      Restrict standing or congregating in public spaces such as the bar area, entrance or exit; and

4.      Request facial coverings be worn by customers when not seated for dining, and consider refusing service to customers who refuse to adhere to hygiene and social distancing requirements.

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

### APPENDIX J:  CHILDREN'S DAY CAMPS, YOUTH SPORTS DAY CAMPS AND EXEMPT SINGLE SKILL-BUILDING YOUTH CAMPS

I.      Effective June 1, 2020, summer camps and sports camps may open for business if the camp operator can demonstrate compliance with the requirements in this Appendix.

A.      Prior to hosting a camp, the camp operators must create a plan that implements all of the following:

1.      All activities, including recreation, transportation, and food service must comply with the following restrictions:

a.      Groups of campers are limited to 25 or fewer outdoors, and 10 or fewer indoors per room, and shall not mix with other groups.

b.      Six feet physical distancing is required at all times, which may limit further the size of the group due to the size of the space.

c.      Require face coverings during transportation in camp vehicles to and from the camp.

2.      For staff and camper health and safety:

a.      Provide adequate personal protective equipment (PPE) for staff who supervise and care for ill campers, staff, and volunteers.

b.      Determine the staffing needs, including the availability of substitute staff if staff or volunteers become ill or are exposed.

c.      Ensure space is available to isolate ill staff and campers (cots, bedding, restrooms, and supervision).

d.      Ensure the on-call availability of a nurse or health care professional.

e.      Establish protocols for responding and reporting cases to health care staff, local public health authorities, and CDPHE.

f.      Prepare procedures for closures following a case or outbreak of COVID-19.

g.      Provide access to or sufficient supplies of all of the following:

i.      public restrooms, drinkable water sources, and picnic or other eating areas during activities at outdoor locations;

ii.      handwashing/hand sanitizing locations; and

iii.      adequate cleaning and disinfecting supplies

h.      Train camp staff and volunteers on the requirements of this Order, as well as prevention, transmission, and care of COVID-19 illness.

3.      Single-night overnight excursions are permitted so long as the campers and staff remain strictly cohorted.

B.      Camp operators must meet all of the following requirements while camps are in session:

1.      Staff, volunteer and camper health.

a.      Screen staff, volunteers and campers for symptoms and close-contact exposures upon arrival.  Exclude ill individuals from the camp, and encourage them to use the CDPHE Symptom Tracker

43

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 975 of 2921**

      b.      Staff or volunteers sent home must adhere to isolation and exclusion requirements.

      c.      Establish protocols for staff, volunteers and campers to alert health care staff of symptoms in themselves or campers.

      d.      Determine if any staff or volunteers are at a higher risk for COVID-19 and consider whether job duties that don't involve interaction with others  are advisable.

2.      Require staff, volunteers and campers to do all of the following:

      a.      Remain with the same group of campers and maintain physical distancing of at least 6 feet whenever possible, including during meals and recreation;

      b.      Wash hands upon arrival, before eating, and at regular intervals throughout the day;

      c.      Stagger activities as much as possible to avoid any mixing of groups, and

      d.      Wear masks or face coverings whenever possible.

3.      Post signs or mark spaces to ensure 6 foot minimum distancing, and limit any activities that are not conducive to maintaining this distance.

4.      Educate campers as needed on COVID-19 prevention, including respiratory etiquette and good hygiene, in accordance with public health guidance.

5.      Ensure sufficient cleaning and disinfecting of commonly touched surfaces, equipment, and vehicles throughout the camp.

6.      Provide frequent communication with all families of enrolled campers related to the occurrences of COVID-19 at the camp, the camp's responses, and all issues in the public health order.

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

## APPENDIX K:  OUTDOOR RECREATION

I.      Effective June 4, 2020, outdoor recreation services or activities, including non-guided and guided recreation, equipment rentals, river outfitters, rafting, Jeep tours, developed hot springs, zip lines, ropes courses, and outdoor artificial climbing walls, may operate if authorized by the local jurisdiction.  Operators of recreational services and activities must meet any local policies in effect as well as all of the following requirements:

     A.      Distancing and Capacity Requirements

        1.      Maintain a distance of 6 feet from patrons and fellow employees, except in cases where it is unsafe to maintain that distance.

        2.      Limit the number of people inside a facility to no more than 10 at one time, at a maximum of 50% occupancy.

        3.      For vehicles used to transport patrons, the following requirements apply:

            a.      No closed-air vehicles or tours are allowed, as windows must remain open during the transport or tour.

            b.      Limit smaller vehicles or crafts to two household units not including guides, up to 10 people.

            c.      If larger vehicles or crafts (trains, large boats) can accommodate multiple individual household units and ensure appropriate physical distance between those groups, multiple units are permissible.

            d.      Limit passenger buses and vans to no more than 50% capacity, or less if distancing requirements cannot be met between groups, and prohibit use of the seat behind the driver.

        6.      Conduct staging operations such as customer check-ins and end-of-trip operations outdoors with parties from different households spaced 6 feet apart.

        7.      Maintain and promote physical distance during a tour or trip. Rafts or vehicles should not be full, and ensure distance between guide and patrons.

     B.      Hygiene, Cleaning and Disinfection Requirements

        1.      Post signs for employees and customers outlining good hand/respiratory hygiene and safety measures being taken. Signs should be in languages customers will understand. (CDC examples)

        2.      Encourage hand hygiene by directing customers to where they can wash their hands with soap and water or use hand sanitizer.

        3.      Vehicles used to transport patrons must be cleaned and disinfected after each use.

        4.      Disinfect all equipment used by patrons as well as surfaces or items in common contact with patrons between each use.

     C.      Operators and Employees

        1.      Wear face coverings at all times during staging and disembarking operations. Where safe, wear face coverings during trip operations.

        2.      Operators must conduct symptom and temperature checks for employees and refer symptomatic employees to the CDPHE Symptom Tracker (Additional Guidance). Employees who exhibit COVID-19 symptoms should not come to work. Employees who develop COVID-19 symptoms while at work should immediately notify their supervisor and be separated from others, sent home, and

45

Sixth Amended Public Health Order 20-28 Safer at Home
June 5, 2020

referred to state or company support services.

46

**Exhibit 65 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 978 of 2921**