# EXHIBIT 79

## BROWARD COUNTY ADMINISTRATOR'S
## EMERGENCY ORDER 20-13

**WHEREAS**, COVID-19, a respiratory illness caused by a virus that spreads rapidly from person to person and may result in serious illness or death, constitutes a clear and present threat to the lives, health, welfare, and safety of the people of Broward County;

**WHEREAS**, on March 1, 2020, Governor DeSantis declared a Public Health Emergency as a result of COVID-19, and on March 9, 2020, Governor DeSantis issued Executive Order 20-52, declaring a State of Emergency as a result of COVID-19;

**WHEREAS**, on March 10, 2020, I declared a Local State of Emergency;

**WHEREAS**, on March 11, 2020, the World Health Organization declared the spread of COVID-19 to be a global pandemic;

**WHEREAS**, on March 13, 2020, President Trump declared a national emergency concerning COVID-19;

**WHEREAS**, to reduce the spread of COVID-19, the United States Centers for Disease Control and Prevention ("CDC") and the Florida State Department of Health recommend implementation of community mitigation strategies to increase containment of the virus, including cancellation of large gatherings and social distancing of at least six (6) feet between persons in smaller gatherings;

**WHEREAS**, on March 10, 2020, the Broward County Board of County Commissioners authorized me to take any appropriate and necessary action to protect the health and safety of Broward County residents and visitors in connection with COVID19, and other emergency powers, including under the state-approved emergency management plan, had previously been delegated to me (as further outlined below);

WHEREAS, on March 20, 2020, Governor DeSantis issued Executive Order 20-70 closing the beaches in Broward County and Palm Beach County, which closure was extended by Executive Order 20-90, but permitted the County Administrators to relax or modify those closures as warranted;

WHEREAS, on March 30, 2020, Governor DeSantis issued Executive Order 20-89 ordering Broward, Palm Beach, and Monroe counties to "restrict public access" to all businesses deemed non-essential pursuant to the guidelines published by Miami-Dade County in its Emergency Order 07-20, as modified by amendments prior to March 30, 2020 (collectively, the "Miami-Dade Emergency Order 07-20");

WHEREAS, on April 1, 2020, Governor DeSantis issued Executive Order 20-91, ordering all persons in Florida to limit their movements and personal interactions outside their homes to only those necessary to obtain or provide essential services or conduct essential activities;

WHEREAS, on April 9, 2020, I issued Broward County Emergency Order 20-06, as required by the Governor's Executive Order 20-89, restricting public access to businesses and facilities deemed nonessential pursuant to the guidelines established by Miami-Dade Emergency Order 07-20;

WHEREAS, on April 28, 2020, as part of a coordinated effort with the local municipalities and the adjoining counties, I reopened certain parks, golf courses, and other recreational facilities in Broward County pursuant to the guidelines in Broward County Emergency Order 20-08, as amended by Broward County Emergency Order 20-09;

**WHEREAS**, beginning on April 29, 2020, Governor DeSantis issued a series of Executive Orders, including Executive Orders 20-112, 20-120, and 20-123, establishing Phase 1 of a step-by-step plan for Florida's recovery (initially excluding Broward, Miami-Dade, and Palm Beach Counties) and permitting certain additional activities for individuals;

**WHEREAS**, on May 14, 2020, Governor DeSantis issued Executive Order 20-122 permitting Broward and Miami-Dade Counties to participate in the Phase 1 reopening;

**WHEREAS**, on May 21, 2020, I issued Broward County Emergency Order 20-12, which outlines the establishments currently permitted to operate in Broward County, and permits a customized approach to reopening Broward County that incorporates guidelines and requirements for safe operations for opened businesses and services;

**WHEREAS**, the current trend supports additional steps in the measured reopening of Broward County to include beaches, commercial gyms and fitness centers, and hotels and other commercial lodging,

**NOW, THEREFORE**, I, Bertha Henry, the Broward County Administrator, pursuant to my emergency authority under Sections 8-53 and 8-56 of the Broward County Code of Ordinances, as well as the authority granted to me by the Declaration of Emergency issued by Governor DeSantis in Executive Order 20-52, by Chapter 252, Florida Statutes, by the Board of County Commissioners, and by the Broward County Comprehensive Emergency Management Plan, hereby order as follows:

**Section 1.    Beaches in Broward County.**

All beaches in Broward County are permitted to open as of the effective date of this Emergency Order.  All persons utilizing the beaches in Broward must comply with the

requirements of **Attachment 1** hereto. Failure to comply with the requirements of Attachment 1 may result in penalties (civil or criminal) for violators and require beaches in Broward County be re-closed.

**Section 2.    Additional Businesses/Services Permitted to Operate.**

Emergency Order 20-12 is amended at Section 1.B to add new Sections 1.B.xiii and 1.B.xiv to include the following additional categories of establishments permitted to open in Broward County subject to compliance with the other requirements of Emergency Order 20-12 including the applicable attachment:

> xiii.    Hotels, Motels, and Commercial Lodging Establishments: **Attachment 13**;
>
> xiv.    Commercial Gyms and Fitness Centers:  **Attachment 14**.

Broward County Emergency Order 20-12 is further amended to incorporate Attachments 13 and 14 hereto and to delete Section 2.D (hotels, motels, and commercial lodging establishments) and Section 2.H (commercial gyms and fitness centers).  Pools that are located in hotels, motels, and commercial lodging establishments and pools in commercial gyms, or fitness centers must comply with the guidelines stated in **Attachment 12** to Emergency Order 20-12.

**Section 3.    Other Amendments to Emergency Order 20-12**

Emergency Order 20-12 is further amended as set forth in this section, with bold underlined text to indicate additions and strikethrough text to indicate deletions.

Section 2.C is amended as follows: "C.  Vacation rentals__, except as authorized by the Governor's Executive Order 20-87__."

A new Section 2.J is added as follows: "**J.  Pari-mutuel Facilities (as defined by Florida Statutes Section 550.002(23)), except for when the establishment is being**

Exhibit 79 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1093 of 2921

**utilized for a use expressly permitted under a Broward County Emergency Order or by a professional sports team to conduct or host a training, competition, event, or game in accordance with the Governor's Executive Order 20-123.**"

Attachment 6, at Section A.2, is amended as follows:  "Community rooms, fitness centers, and gyms shall be limited to residents of the housing development **and their families (if authorized by the housing development, which may impose more stringent restrictions)** only. No **other** guests shall be allowed."

Attachment 11, at Number 1, is amended as follows: "Such pools and pool decks are used only by current residents of the housing development **and their families (if authorized by the housing development, which may impose more stringent restrictions). No other guests shall be allowed.**"

Attachment 12, at Section A.5, is amended as follows: "**All pools subject to this attachment** ~~Private club pools~~ are limited to use by their members **and authorized users** only. ~~No guests shall be allowed.~~"

**Section 4.    Applicability; Severability.**

This Emergency Order supersedes and replaces any contrary provision in any prior Broward County Emergency Order. Except as superseded, all Broward County Emergency Orders remain in full force and effect. This Emergency Order applies to incorporated and unincorporated areas within Broward County, but has no application outside of Broward County. The provisions of this Emergency Order shall serve as minimum standards, and municipalities within Broward County may establish more stringent standards within their jurisdictions, to the extent permitted by law. Any provision(s) within this Emergency Order that (i) conflict(s) with any state or federal law

Exhibit 79 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

or constitutional provision, or (ii) conflict(s) with or are superseded by a current or subsequently-issued Executive Order of the Governor or the President of the United States solely to the extent such Executive Order (a) expressly preempts the substance of this Emergency Order or (b) imposes stricter closures than set forth herein, shall be deemed inapplicable and deemed to be severed from this Emergency Order, with the remainder of the Emergency Order remaining intact and in full force and effect. To the extent application of some or all of the provisions of this Emergency Order is prohibited on the sovereign land of a federally or state recognized sovereign Indian tribe, such application is expressly excluded from this Emergency Order.

**Section 5.    Effective Date; Duration.**

This order shall be effective as of 12:01 a.m. on Tuesday, May 26, 2020, with the exception of Section 3 solely as to the amendment to add a new Section 2.J of Emergency Order 20-12, which shall be effective immediately.  This Emergency Order shall expire upon the expiration of the existing State of Local Emergency, as same may be extended by subsequent order or declaration, unless earlier terminated by subsequent Emergency Order.

BROWARD COUNTY, FLORIDA

By: _____
Bertha Henry
County Administrator

RECEIVED AND FILED in the Records, Taxes and Treasury Division on this _27__ day of May, 2020, at ___6:01___ a.m./p.m.

**Exhibit 79 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 1095 of 2922**

## ATTACHMENT 1
## BEACHES IN BROWARD COUNTY LIMITED REOPENING GUIDELINES

All beaches in Broward County may reopen for limited ocean activities (such as surfing, swimming, kayaking, paddle boarding, body surfing) as well as limited active recreation and exercise (such as walking, running, biking).

### A. Beach Restrictions.

1. Beach hours shall be limited to between sunrise and sunset.

2. No picnicking, sunbathing, sitting, or lying on the beach.

3. No umbrellas, canopies, chairs, loungers, or coolers allowed.

4. No group or organized sports including, but not limited to, volleyball, soccer, or football.

5. No group gathering or events of more than ten (10) individuals.

6. Individuals must maintain a minimum six feet (6') of physical distance from others at all times, except between members of the same household or group.

7. Municipalities shall have the ability to enact more stringent requirements than set forth herein, and, as with all other aspects of this Emergency Order, municipalities are authorized to enforce the requirements of this Emergency Order.

**Exhibit 79 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 1096 of 2921**

## ATTACHMENT 13
## HOTELS, MOTELS, AND COMMERCIAL LODGING ESTABLISHMENTS

For the safe reopening of lodging and accommodations, it is important that employers and employees respect the myriad of protective measures to ensure the comfort and safety of guests and staff.

**A.      Operations Requirements**

1.      All establishments must comply with the applicable attachments to Emergency Order 20-12, as it relates to the specific uses within the hotel, motel, or other commercial lodging establishment.

2.      Ballrooms and other function spaces must remain closed.

3.      Guests must wear facial coverings in check-in areas, elevators, and all other common spaces, but not in rented rooms. The facial covering requirements applicable to the specific use areas (such as restaurants and fitness centers) shall be required in the specific use areas.

4.      Establishments must impose capacity limits for common areas to adhere to the 6 feet social distancing requirements.

5.      Maintain records of guest registration, staff work assignments, and facility usage for a minimum of 90 days to enable contact tracing. This includes maintaining guest registration records, employee work assignments, documentation of key control procedures including the electronic lock records, and security camera closed circuit tapes/files.

6.      Create a page on your website or blog that outlines what you are doing to clean, sanitize and disinfect, and otherwise keep guests safe.

**B.      Check-in/Check-out**

1.      Areas in front of the reception desk must be marked to ensure guests maintain physical distancing while waiting.

2.      Social distancing requirements must be posted at all elevator access points. Areas in front of the first-floor elevator access points must be marked to ensure guests maintain physical distancing while waiting.

3.      The number of guests on elevators must be limited to maintain social distancing requirements, unless all of the users are from the same household.

4.      Hand sanitizer must be available to guests at the front desk.

5.      When possible, guests should check-in and check-out online. When possible, email guest checkout forms to avoid contact via paper forms.

6.      Consider providing an "amenities bag" with hand sanitizer, masks, and/or gloves, and a fact sheet with COVID-19 awareness information for your establishment at

check-in.  All establishments must provide local COVID-19 guidance for guests. Broward County has a dedicated webpage that includes local information at broward.org/coronavirus. If the establishment is pet friendly, CDC guidance must be provided to guests regarding COVID-19 and animals.

7.      Consider installing physical barriers such as plexiglass at customer interface points such as the front desk and valet stand.

8.      Clearly designated entrances and exits should be used to maintain social distancing, if possible.

**C.      Food Services**

1.      Dine-in restaurants must operate consistent with Emergency Order 20-12, **Attachment 2**.

2.      Room service: Employees delivering and collecting items served to a room must wear gloves and masks.  Food delivery to rooms must be done in a contactless method (such as room service to guests' doors).

3.      Encourage guests to utilize pick-up for restaurant orders.

**D.      Amenities**

1.      Gyms and Fitness Centers

   a)      If a gym or fitness center cannot comply with the requirements of **Attachment 14** to this Emergency Order, gyms and fitness centers must remain closed.

   Any operating gym or fitness center must adhere to the rules outlined in **Attachment 14** to this Emergency Order.

2.      Pools

   a)      All pools that cannot comply with the requirements of **Attachment 12** to Emergency Order 20-12 must remain closed.

   b)      Any operating pool must adhere to the requirements of Emergency Order 20-12, **Attachment 12**.

3.      Beachfronts

   a)      All beachfront establishments must comply with **Attachment 1** of this Emergency Order.

4.      Other Outdoor Recreation

   a)      All outdoor recreation areas on hotel property are permitted to operate only in accordance with the applicable portions of Emergency Order 20-12 (for example, boating and marine activities

must comply with Attachment 9, golf courses must comply with Attachment 10, and so forth).

Personal Care Services

a)   Any spa or salon services must comply with the requirements of Emergency Order 20-12, **Attachment 4**.

6.   Bellhop and Valet Service

a)   Bellhop staff and Valets must wear single use gloves and a facial covering while performing the requested service and must sanitize their hands before and after performing the requested service.

b)   Valet parking should be restricted only to guests with placards or plates for disabled parking or who otherwise need assistance.

c)   Luggage should be delivered either before or after guests arrive to their room and avoid traveling with guests to their rooms.

7.   Courtesy Shuttles

a)   Courtesy shuttles must sanitize high-touch points of the shuttle after each trip, deep clean the vehicle on a daily basis, and ensure compliance with physical distancing requirements by limiting capacity of the vehicle consistent with the CDC Guidelines. People in the same household are not required to comply with the social distancing requirements.

b)   All persons within the courtesy shuttle must wear a facial covering.

8.   Laundry Service

a)   Laundry must be washed in accordance with CDC guidelines (https://www.cdc.gov/infectioncontrol/guidelines/environmental/background/laundry.html).

b)   Dirty linens must be bagged in guest rooms to eliminate unnecessary contact.

9.   Business Centers

a)   Business center capacity must be limited to 50% maximum occupancy.

b)   All persons in business centers must wear a facial covering.

c)   Sanitizing wipes must be made available to guests to sanitize technology, equipment, office supplies, and workspaces prior to their use.

d)   This area must be cleaned as frequently as other public spaces and communal areas.

e)   A staff member must monitor the business center to ensure compliance with these requirements.

f)   Technology and other machines must be appropriately spaced to allow for at least 6 feet of social distancing.

g)   There should be separate places designated for clean and for used writing utensils.

**E.   Sanitation and Safety Requirements**

1.   Public Spaces and Communal Areas

a)   All Department of Business and Professional Regulation (DBPR) sanitation guidelines must be followed, including Florida Administrative Code Section 61C-3.001, Sanitation and Safety Requirements.

b)   High-touch front services spaces and equipment, including keys, property management systems, bell desks, luggage storerooms, luggage belts, bell carts, etc., must be sanitized frequently and no less than hourly.

c)   HVAC air filters should be cleaned or replaced monthly to maximize clean air.

d)   Sanitation and safety efforts should comply with Emergency Order 20-12, **Attachment 1**.

2.   Guest Rooms

a)   Guest rooms must be deep cleaned after guest check-out in accordance with  the CDC-recommended cleaning procedures https://cdc.gov/coronavirus/2019-ncov/community/disinfecting-building-facility.html.

b)   Staff must wear facial coverings and gloves when cleaning.

c)   After a room has been cleaned, guest rooms may not be entered by any person until the next guest arrives.

d)   A tent card that explains the heightened cleaning procedures must be placed in every guest room, particularly related to high-touch areas, when possible.

e)   For the duration of the guest stay, guest room housekeeping must be limited or by-request.

f)   The number of amenity items provided in the guest room (e.g., coffee stations, extra pillows, pens, robes, single-serve beverages) should be limited. Consider providing these amenities on demand in order

Exhibit 79 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1100 of 2921

to reduce the number of touch points and cleaning/sanitation demands of the room, when possible.  Offer written services (e.g., magazines, guest service directory, mini bars) electronically on the guest room screen or send to guest mobile phone.

**Exhibit 79 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 1101 of 2921**

## ATTACHMENT 14
## COMMERCIAL GYMS AND FITNESS CENTERS

Commercial gyms and fitness centers, including, but not limited to, dance studios, martial arts studios, yoga studios, spinning studios, personal training services, and similar establishments, must comply with all applicable provisions of this Attachment 14.

Patrons must wear facial coverings except when physically working out and during the cool-down portion of their workout.

### A.      Occupancy and Access

1.      Monitor building occupancy and restrict customer access to no more than fifty percent (50%) of the building's maximum occupancy.

2.      Provide an exit from the facility separate from the entrance, when possible.

### B.      Sanitation and Safety Requirements

1.      Make readily available dispensers of a disinfectant included on the EPA List N: Disinfectants for Use Against SARS-CoV-2 (https://www.epa.gov/pesticide-registration/list-n-disinfectants-use-against-sars-cov-2) and provide patrons with sufficient cleaning materials, including disposable wipes, at all entrances and at various locations throughout the facility. Hygiene signage must be prominently displayed at all entrances. All employees and patrons must be required to sanitize their hands:

      a)      Upon entering the facility (or before beginning their fitness activities if conducted outdoors);

      b)      After using each piece of equipment; and

      c)      Upon completing their fitness routine.

2.      Social distancing markers should be placed in front of the reception/membership desk and all other appropriate areas.

3.      Equipment stations must be appropriately distanced (at least ten feet between each piece of cardiovascular equipment or exercise station, except that spacing can be six feet if non-cloth protective barriers, such as plexiglass or panels, are placed between equipment/stations and are regularly sanitized).

4.      Fitness classes must be restricted in number of attendees to ensure social distancing of at least ten feet between persons in all directions unless there are non-cloth protective barriers, such as plexiglass or panels, placed to separate each attendee. Markers must be placed to indicate the appropriate distance.

5.      Aquatic programs must be limited as to class size to meet the ten foot distance requirement; in lap lanes, the ten-foot requirement is deemed met while swimming laps provided no more than one person is using a lane at any time. Lap lane sharing is prohibited.

6.      Social distancing between persons engaged in any physical activity should be measured from head to head.

7.      Disinfecting wipes must be available throughout the facility and patrons must sanitize each machine after use. Equipment must be allowed to fully dry before next use. Staff must monitor the floor and exercise area to sanitize any and all equipment if a patron fails to do so. Surfaces to be sanitized include but are not limited to:

a)      Hand grips on cardio equipment such as treadmills, bicycles, ellipticals;

b)      Hand grips on dumbbells, weight bars, and other strength-training systems;

c)      Pads/cushioned components such as fitness mats, bike seats, lifting benches, and other cushioned components of strength training machines;

d)      Fitness balls, rope handles, and other fitness accessories;

e)      Touch screens on exercise equipment; and

f)      All seating, counters, weights, weight bars, mats, machines, and all other fitness equipment upon closing the facility each day.

8.      Ensure that all products used to sanitize have adequate time to dry, which drying time is essential to ensuring the safety of workers and patrons.

9.      Remove any unnecessary chairs, tables, or other furniture and all magazines and similar shared items.

10.     Discontinue providing heart monitors, mats, blocks, bolsters, or similar equipment to customers.

11.     During daily operation, routinely clean and disinfect surfaces, particularly high-touch surfaces such as faucets, toilets, doorknobs, light switches, and all furniture/equipment that is in use.

12.     Restrooms must be sanitized no less frequently than hourly. Soap must be readily available for patrons.

13.     Deep clean the facility at least once every twenty-four (24) hours.

**Exhibit 79 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

## C.   <u>Operational Requirements</u>

1.      Patrons must have their temperature taken upon entrance, including any children exercising or entering a child-care program.  Any patron with a temperature above 100.1 degrees Fahrenheit or who appears to have flu-like symptoms or other symptoms related to COVID-19 must be denied entry to the facility.

2.      Employees must wear facial coverings, and have temperature checked prior to commencing work each day. Any employee with a temperature above 100.1 degrees Fahrenheit or who appears to have flu-like symptoms or other symptoms related to COVID-19 upon arrival at work, or who becomes sick during the day, must immediately be separated from other employees, customers, and visitors, and sent home.

3.      Signs on how to stop the spread of COVID-19, including signs on properly washing hands, everyday protective measures, facial coverings, social distancing, and requirements for patrons to sanitize equipment after use, must be conspicuously posted.

4.      Keep doors open between separate fitness areas or rooms of the facility to reduce surface touching by multiple people. Open windows where feasible to improve ventilation in the facility.

5.      Remove all unnecessary, frequently touched items like magazines, newspapers, and service menus from customer waiting areas and locker rooms.

6.      Shower facilities must be closed, except for showers at facilities with pools but only for use to shower prior to entering the pool.

7.      Consider offering "senior hours" or designated times for elderly and high-risk groups to safely exercise.

**Exhibit 79 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 1104 of 2921**