# EXHIBIT 84

# OFFICE OF THE MAYOR
# CITY AND COUNTY OF HONOLULU

530 SOUTH KING STREET, ROOM 300 • HONOLULU, HAWAII 96813
PHONE: (808) 768-4141 • FAX: (808) 768-4242 • INTERNET: www.honolulu.gov



KIRK W. CALDWELL
MAYOR

ROY K. AMEMIYA, JR.
MANAGING DIRECTOR

GEORGETTE T. DEEMER
DEPUTY MANAGING DIRECTOR

March 22, 2020

### OFFICE OF THE MAYOR
### CITY AND COUNTY OF HONOLULU
### EMERGENCY ORDER NO. 2020-02
### (COVID-19 [Novel Coronavirus])

### STAY AT HOME / WORK FROM HOME ORDER

By the authority vested in me as Mayor of the City and County of Honolulu (the **"City"**) pursuant to Revised Charter of the City and County of Honolulu 1973 (2017 Edition), as amended; the Revised Ordinances of the City and County of Honolulu 1990, as amended; the Hawai'i Revised Statutes, as amended (**"Haw. Rev. Stat."**), the Constitution and laws of the State of Hawai'i, I, KIRK W. CALDWELL, hereby issue this order (the **"Order"**) to address the emergency declared in the Proclamation COVID-19 [Novel Coronavirus] that I issued on March 4, 2020, and Supplemental Proclamation of Emergency or Disaster (COVID-19 [Novel Coronavirus]) that I issued on March 18, 2020.

The virus that causes Coronavirus 2019 Disease (**"COVID-19"**) is easily transmitted, especially in group settings, and it is essential that the spread of COVID-19 be slowed to protect the ability of public and private health care providers to handle the influx of new patients and to safeguard public health and safety.

Due to the risk of the rapid spread of the virus causing COVID-19, and the need to protect all members of the City, especially including our members most vulnerable to the virus and also health care providers, this Order requires all individuals anywhere in the City to shelter in place—that is, stay at home and work from home—except for certain essential activities and work to provide essential business and government services or perform essential public infrastructure construction, including housing. This Order is effective at **4:30 p.m. on Monday, March 23, 2020**, and will continue through Thursday, April 30, 2020, at 4:30 p.m., subject to the limited exceptions and under the terms and conditions more particularly set forth below.

Pursuant to Haw. Rev. Stat. § 127A-25 and the Rules of the Mayor City and County of Honolulu, dated March 20, 2020 (**"Mayor's Rules"**) promulgated under that section, each of the orders contained in this Order ("the Orders") shall have the force and effect of law. The Orders are in accordance with and incorporate by reference the Proclamation COVID-19 [Novel Coronavirus] that I issued on March 4, 2020; the Supplemental Proclamation of Emergency or

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1132 of 2921

Disaster (COVID-19 [Novel Coronavirus]) that I issued on March 18, 2020, and Hawai'i Governor David Y. Ige's Proclamation dated March 4, 2020, and Supplementary Proclamation dated March 16, 2020, Second Supplementary Proclamation dated March 21, 2020, and the Order for Self-Quarantine dated March 21, 2020, issued by the Hawai`i Emergency Management Agency.

Violation of any of the Orders is punishable as a misdemeanor, with fines of up to $5,000, up to a year in jail, or both. Haw. Rev. Stat. § 127A-29; Mayor's Rules.

## I. ORDERS

**Order 1:** All individuals currently living within the City are ordered to stay at their place of residence. To the extent individuals are using shared or outdoor spaces, they must at all times as reasonably possible maintain social distancing of at least six feet from any other person when they are outside their residence and comply with Social Distancing Requirements (as defined in Section II). All persons may leave their residences only for Essential Activities, Essential Governmental Functions, or to operate Essential Businesses, as those terms are defined in Section II. Individuals experiencing homelessness are exempt from this section, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to make such shelter available as soon as possible and to the maximum extent practicable (and to use COVID-19 risk mitigation practices in their operation).

**Order 2:** All businesses with a facility in the City, except **Essential Businesses** (as defined in Section II), are required to cease all activities within such facilities, except Minimum Basic Operations (as defined in Section II). For clarity, businesses may also continue operations consisting exclusively of employees or contractors performing activities at their own residences (i.e., working from home). All Essential Businesses are strongly encouraged to remain open. To the greatest extent feasible, Essential Businesses shall comply with Social Distancing Requirements (defined in Section II), including by maintaining six-foot social distancing for both employees and members of the public, including, but not limited to, customers standing in line.

**Order 3:** All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes as expressly permitted in Section II. Nothing in this Order prohibits the gathering of members of a household or living unit.

**Order 4:** All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel and Essential Activities (as defined in Section II), is prohibited. People must use public transit only for purposes of performing Essential Activities or to travel to and from work to operate Essential Businesses or maintain Essential Governmental Functions. People riding on public transit must comply with Social Distancing Requirements (as defined in Section II), to the greatest extent feasible. This Order allows travel into or out of the City to perform Essential Activities, operate Essential Businesses, or maintain Essential Governmental Functions.

2

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1133 of 2921

## II. DEFINITIONS AND EXEMPTIONS

A. For purposes of this Order, individuals may leave their residence only to perform any of the following **"Essential Activities."** However, people at high risk of severe illness from COVID-19 and people who are sick are urged to stay in their residence to the extent possible except as necessary to seek medical care.

   1. To engage in activities or perform tasks essential to their health and safety, or to the health and safety of their family or household members (including, but not limited to, pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, visiting a health care professional, or obtaining supplies needed to work from home.

   2. To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products, and products necessary to maintain the safety, sanitation, and essential operation of residences.

   3. To engage in outdoor activity in locations as allowed by law, provided the individuals comply with Social Distancing Requirements as defined in this section, such as, by way of example and without limitation, walking, hiking, or running (with or without pets).

   4. To perform work providing essential products and services at an Essential Business or to otherwise carry out activities specifically permitted in this Order, including Minimum Basic Operations.

   5. To care for a family member or pet in another household.

B. For purposes of this Order, individuals may leave their residence to work for or obtain services at any **"Healthcare Operations"** including hospitals, clinics, dentists, pharmacies, pharmaceutical and biotechnology companies, other healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services, organizations collecting blood, platelets, plasma, and other necessary materials, licensed medical marijuana dispensaries and licensed medical marijuana production centers, eye care centers, including those that sell glasses and contact lenses. "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals. Further, "Healthcare Operations" includes prepaid health care plan contractors as that term is defined under Haw. Rev. Stat. ch. 393, and other employer-sponsored health and welfare benefit plans, and/or individual or group health insurance plans that provides healthcare insurance benefits for payment or reimbursement for healthcare services provided by Healthcare Operations. This exemption shall be construed broadly to avoid any impacts to

3

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1134 of 2921

the delivery of healthcare, broadly defined. "Healthcare Operations" does not include fitness and exercise gyms and similar facilities.

C. For purposes of this Order, individuals may leave their residence to provide any services or perform any work necessary to the operations and maintenance of **"Essential Infrastructure,"** including, but not limited to, public works construction, construction of housing (in particular affordable housing or housing for individuals experiencing homelessness), airport operations, water, sewer, gas, electrical, oil refining, roads and highways, public transportation, solid waste collection and removal, internet, and telecommunications systems (including the provision of essential global, national, and local infrastructure for computing services, business infrastructure, communications, and web-based services), provided that they carry out those services or that work in compliance with Social Distancing Requirements as defined this section, to the extent possible. This Order shall be construed and applied in compliance and consistent with the United States Department of Homeland Security, Cybersecurity & Infrastructure Security Agency Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, dated March 19, 2020 (and any subsequent guidance memoranda thereto). Click here

D. For purposes of this Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, and law enforcement personnel, jails and prisons personnel, and others working for or to support Essential Businesses are categorically exempt from this Order. Further, nothing in this Order shall prohibit any individual from performing or accessing "Essential Governmental Functions." **"Essential Government Functions"** means all services needed to ensure the continuing operation of the government agencies and provide for the health, safety, and welfare of the public. All Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements as defined this section, to the extent possible.

E. For the purposes of this Order, covered businesses include any for-profit, non-profit, or educational entities, regardless of the nature of the service, the function they perform, or its corporate or entity structure.

F. For the purposes of this Order, **"Essential Businesses"** means

   1. Healthcare Operations and Essential Infrastructure;

   2. Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products (such as cleaning and personal care products). This includes stores that sell groceries and also sell other non-grocery products, and products necessary to maintaining the safety, sanitation, and essential operation of residences;

4

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1135 of 2921

3. Food cultivation, including farming, livestock, and fishing;

4. Businesses that provide food, shelter, and social services and other necessities of life for economically disadvantaged or otherwise needy individuals;

5. Newspapers, television, radio, and other media services;

6. Gas stations and auto and bicycle supply, auto and bicycle repair, towing services, and related facilities;

7. Banks and related financial institutions. This provision shall be construed and applied in compliance and consistent with the United States Department of Homeland Security, Cybersecurity & Infrastructure Security Agency Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, dated March 19, 2020 (and any subsequent guidance memoranda thereto), and the United States Department of the Treasury Memorandum for Financial Services Sector Essential Critical Infrastructure Workers, dated March 22, 2020 (and any subsequent guidance memoranda thereto); Click here

8. Hardware stores;

9. Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the safety, sanitation, and essential operation of residences, Essential Activities, and Essential Businesses;

10. Businesses providing mailing and shipping and delivery services, and businesses that ship or deliver groceries, food, alcoholic and non-alcoholic beverages, goods or services to residences and end users or through commercial channels, and including post office boxes;

11. Educational institutions-including public and private K-12 schools, colleges, and universities-for purposes of facilitating distance learning, performing critical research, or performing essential functions, provided that social distancing of six-feet per person is maintained to the greatest extent possible;

12. Laundromats, dry cleaners, industrial laundry services, and laundry service providers;

13. Restaurants and other facilities that prepare and serve food, but only for delivery or carry out.

   a. Schools and other entities that typically provide food services to students or members of the public may continue to do so under this Order on the condition that the food is provided to students or

5

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1136 of 2921

        members of the public on a pick-up and takeaway basis only, provided that social distancing of six-feet per person is maintained to the greatest extent possible. Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site;

    **b.**    Cafeterias, lunchrooms, or dining facilities providing food and beverage services located within "healthcare facilities" as that term is defined under Haw. Rev. Stat. § 321-15.2 and similar facilities, may continue to do so under this order, provided that consumption within the cafeteria, lunchroom, or dining facility located within the healthcare facility is restricted to employees of the healthcare facility; patients of the healthcare facility; and no more than two (2) authorized visitors of the patient of the healthcare facility that have been appropriately screened by the healthcare facility in compliance with all of the facility's protocols related to infectious disease control measures and processes.;

**14.**    Businesses that supply products needed for people to work from home;

**15.**    Businesses that supply other essential businesses with the support or supplies necessary to operate;

**16.**    Airlines, taxis, and other private transportation providers, vehicle rental services, paratransit, and other private, public, and commercial transportation and logistics providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;

**17.**    Home-based care for seniors, adults, or children, and/or people with developmental disabilities, intellectual disabilities, substance use disorders, and/or mental illness, including care givers such as nannies who may travel to the child's home to provide care, and other in-home services, including meal delivery;

**18.**    Residential facilities and shelters for seniors, adults, and children, and/or people with developmental disabilities, intellectual disabilities, substance use disorders, and/or mental illness;

**19.**    Professional services, such as legal or accounting services, insurance services, real estate services (including appraisals and title services) when necessary to assist in compliance with legally mandated activities;

**20.**    Childcare facilities providing services that enable employees exempted in this Order to work as permitted. To the extent possible, childcare facilities must operate under the following mandatory conditions:

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment    Page 1137 of 2921

  a. Childcare must be carried out in stable groups of 12 or fewer ("stable" means that the same 12 or fewer children are in the same group each day).

  b. Children shall not change from one group to another.

  c. If more than one group of children is cared for at one facility, each group shall be in a separate room. Groups shall not mix with each other.

  d. Childcare providers shall remain solely with one group of children.;

21. Businesses that provide food, shelter, and other necessities of life for animals, including animal shelters, rescues, kennels, and adoption facilities, provided they must, at all times reasonably possible, comply with Social Distancing Requirements defined in this section;

22. Hotels and motels, to the extent used for lodging; and service providers to hotels and motels that provide services that are necessary to maintaining the safety, sanitation, and essential operations of the hotel and/or motel, provided that they must, at all times reasonably possible, comply with Social Distancing Requirements defined in this section

23. Funeral, mortuary, cremation, burial, cemetery, and related services, provided, the services provided must comply with Social Distancing Requirements defined in this section at all times reasonably possible; and

24. Critical trades. Building and construction tradesmen and tradeswomen, and other trades, including but not limited to, plumbers, electricians, exterminators, cleaning and janitorial staff for commercial and governmental properties,, security staff, operating engineers, HVAC, painting, moving and relocation services, and other service providers who provide services that are necessary to maintaining the safety, sanitation, and essential operations of residences, Essential Activities, and Essential Businesses, provided that they must, at all times reasonably possible, comply with Social Distancing Requirements defined in this section.

25. Critical labor union functions that are essential activities that include the administration of health and welfare funds and personnel checking on the well-being and safety of members providing services in Essential Businesses, provided that these checks should be done by telephone or remotely.

26. Licensed private detectives and agencies and guards and agencies as those terms are defined under Haw. Rev. Stat. ch. 463.

7

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1138 of 2921

G. For the purposes of this Order, **"Minimum Basic Operations"** include the following, provided that employees comply with Social Distancing Requirements as defined this section, to the extent possible, while carrying out such operations:

1. The minimum necessary activities to maintain the value of the business's inventory, ensure security, process payroll and employee benefits, or for related functions.

2. The minimum necessary activities to facilitate employees of the business being able to continue to work remotely from their residences.

H. For the purposes of this Order, **"Essential Travel"** includes travel for any of the following purposes. Individuals engaged in any Essential Travel must comply with all Social Distancing Requirements as defined in this section.

1. Any travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, or Minimum Basic Operations.

2. Travel to care for elderly, minors, dependents, persons with disabilities, or other vulnerable persons.

3. Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

4. Travel to return to a place of residence from outside the jurisdiction.

5. Travel required by law enforcement or court order.

6. Travel required for non-residents to return to their place of residence outside the City. Individuals are strongly encouraged to verify that their transportation out of the City remains available and functional prior to commencing such travel.

I. For purposes of this order, residences include hotels, motels, shared rental units, and similar facilities.

J. For purposes of this order **Social Distancing Requirements** includes maintaining at least six-foot social distancing from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.

## III. BASIS FOR THE ORDER

This Order is issued based on evidence of increasing occurrence of COVID-19 within the City, as reported by the Centers for Disease Control and Prevention, the State Department of Health,

8

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1139 of 2921

and guidance from the City's medical advisory experts, scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, and evidence that the age, condition, and health of a significant portion of the population of the City places it at risk for serious health complications, including death, from COVID-19. Due to the outbreak of the COVID-19 virus in the general public, which is a pandemic according to the World Health Organization, there is a public health emergency throughout the City. In addition, some individuals who contract the COVID-19 virus have no symptoms or have mild symptoms, which means they may not be aware they carry the virus. Because even people without symptoms can transmit the virus, and because evidence shows that it is easily spread, gatherings can result in preventable transmission of the virus. The scientific evidence shows that at this stage of the emergency, it is essential to slow virus transmission as much as possible to protect the most vulnerable and to prevent the health care system from being overwhelmed. One proven way to slow the transmission is to limit interactions among people to the greatest extent practicable. By reducing the spread of the COVID-19 virus, this Order helps preserve critical and limited healthcare capacity in the City.

This Order also is issued in light of the existence of 41 cases of COVID-19 in the City, as well as at least 56 total confirmed cases in the State of Hawai'i, as of March 22, 2020.

## IV.   INTENT

The intent of this Order is to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 to the maximum extent possible. When people need to leave their places of residence, whether to obtain or perform vital services, or to otherwise facilitate authorized activities necessary for continuity of social and commercial life, they should at all times reasonably possible comply with Social Distancing Requirements as defined in Section II. All provisions of this Order should be interpreted to effectuate this intent.

## V.   GENERAL

   A.   **Superseding Order.** The Office of the Mayor City and County of Honolulu Emergency Order No. 2020-01 (COVID-19 [Novel Coronavirus]) dated March 20, 2020 ("**Order 2020-01**") is hereby rescinded and superseded by this Order.

   B.   **Duration.** This Order shall take effect on Monday, March 23, 2020, at 4:30 p.m., and shall continue in force and effect until Thursday, April 30, 2020, at 4:30 p.m., or until it is extended, rescinded, superseded, or amended by a subsequent order, or as otherwise provided under Haw. Rev. Stat. ch. 127A.

   C.   **Enforcement.** All law enforcement of the State of Hawai'i and City shall ensure compliance with and enforce these Orders in accordance with Haw. Rev. Stat. § 127A-29 and Mayor's Rules.

   D.   **Promulgation/posting.** This Order shall be posted on the City website as soon as practicable in one or more appropriate places, and shall remain posted while in effect.

9

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1140 of 2921

E. **Severability.** If any provision of the Orders or their application to any person or circumstance is held to be invalid, the remainder of the Orders, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of the Orders are severable.

*[signature]*
KIRK W. CALDWELL
Mayor
City and County of Honolulu

Date: March 22, 2020
Time: 2:30 PM

APPROVED:

*[signature]*
PAUL S. AOKI
Acting Corporation Counsel
City and County of Honolulu

CND.EHN/882120

10

Exhibit 84 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1141 of 2921