EXHIBIT 88

**EXECUTIVE ORDER NO. 107**

WHEREAS, through Executive Order No. 102 (2020), which I signed on February 3, 2020, I created the State's Coronavirus Task Force, chaired by the Commissioner of the New Jersey Department of Health ("DOH"), in order to coordinate the State's efforts to appropriately prepare for and respond to the public health hazard posed by Coronavirus disease 2019 ("COVID-19"); and

WHEREAS, in light of the dangers posed by COVID-19, I issued Executive Order No. 103 (2020) on March 9, 2020, the facts and circumstances of which are adopted by reference herein, which declared both a Public Health Emergency and State of Emergency; and

WHEREAS, in accordance with N.J.S.A. App. A:9-34 and -51, I reserved the right to utilize and employ all available resources of State government to protect against the emergency created by COVID-19; and

WHEREAS, in accordance with N.J.S.A App. A:9-40, I declared that, due to the State of Emergency, no municipality, county, or any agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution which will or might in any way conflict with any of the provisions of my Executive Orders, or which will in any way interfere with or impede their achievement; and

WHEREAS, to further protect the health, safety, and welfare of New Jersey residents by, among other things, reducing the rate of community spread of COVID-19, I issued Executive Order No. 104 (2020) on March 16, 2020, the facts and circumstances of which are also adopted by reference herein, which established statewide social mitigation strategies for combatting COVID-19; and

2

WHEREAS, Executive Order No. 104 (2020) limited the scope of service and hours of operation for restaurants and certain retail establishments to balance the need to allow individuals to access food and other essential materials with the need to limit unnecessary person-to-person contact; and

WHEREAS, Executive Order No. 104 (2020) deemed a subset of businesses as "essential," including grocery/food stores, pharmacies, medical supply stores, gas stations, healthcare facilities, and ancillary stores within healthcare facilities, and it authorized the State Director of Emergency Management, who is the Superintendent of State Police, to make additions, amendments, clarifications, exceptions, and exclusions to that list; and

WHEREAS, Executive Order No. 104 (2020) made clear that such essential businesses may continue operating without limits on their scope of service or hours of operation, absent further amendments by the State Director of Emergency Management; and

WHEREAS, Executive Order No. 104 (2020) and subsequent Administrative Orders issued by the State Director of Emergency Management also placed restrictions on other businesses' scope of service and hours of operation, and also placed restrictions on the size of gatherings in the State; and

WHEREAS, as of March 20, 2020, according to the Centers for Disease Control and Prevention ("CDC"), there were more than 234,000 confirmed cases of COVID-19 worldwide, with over 9,800 of those cases having resulted in death; and

WHEREAS, as of March 20, 2020, there were more than 15,000 confirmed cases of COVID-19 in the United States, with at least 201 of those cases having resulted in death; and

WHEREAS, as of March 20, 2020, there were at least 890 positive cases of COVID-19 in New Jersey, with at least 11 of those cases having resulted in death; and

3

WHEREAS, social mitigation strategies for combatting COVID-19 require every effort to reduce the rate of community spread of the disease; and

WHEREAS, the CDC has advised that COVID-19 spreads most frequently through person-to-person contact when individuals are within six feet or less of one another; and

WHEREAS, as a result, the CDC has recommended that individuals practice "social distancing" to prevent community spread of the virus; and

WHEREAS, the CDC has defined social distancing as the practice of "remaining out of congregate settings, avoiding mass gatherings, and maintaining distance (approximately 6 feet or 2 meters) from others when possible"; and

WHEREAS, to mitigate community spread of COVID-19, it is necessary to limit the unnecessary movement of individuals in and around their communities and person-to-person interactions in accordance with CDC and DOH guidance; and

WHEREAS, the best way for New Jersey residents to keep themselves, their families, and their communities safe during the COVID-19 outbreak is to stay at home as much as possible; and

WHEREAS, as of March 15, 2020, the CDC recommends that for the next eight weeks, gatherings of 50 or more people be canceled or postponed throughout the United States; and

WHEREAS, as of March 16, 2020, the White House went further than the CDC had and recommended that Americans avoid social gatherings in groups of more than 10 people; and

WHEREAS, restricting the physical presence of individuals in office environments and work sites is critical to preventing future spread of COVID-19; and

4

WHEREAS, accommodating work-from-home arrangements is an effective means to ensure continuity of operations while also limiting person-to-person contact; and

WHEREAS, the CDC has recommended employers to establish policies and practices to increase the physical distance among employees and between employees; and

WHEREAS, permitting the workforce to work from home may reduce stress on the State's child care system; and

WHEREAS, as of March 19, 2020, I have instructed all State departments and agencies to utilize work-from-home arrangements for both essential and non-essential employees wherever feasible; and

WHEREAS, given the rapidly rising incidence of COVID-19, temporarily closing non-essential retail businesses will strengthen New Jersey's efforts to slow the spread of COVID-19; and

WHEREAS, even as we institute social distancing measures, the number of COVID-19 cases in New Jersey is likely to increase for the immediate future, meaning we must take all possible steps to preserve our health care system's capacity to treat those who require emergency or intensive care; and

WHEREAS, the Constitution and statutes of the State of New Jersey, particularly the provisions of N.J.S.A. 26:13-1 et seq., N.J.S.A. App. A: 9-33 et seq., N.J.S.A. 38A:3-6.1, and N.J.S.A. 38A:2-4 and all amendments and supplements thereto, confer upon the Governor of the State of New Jersey certain emergency powers, which I have invoked;

NOW, THEREFORE, I, PHILIP D. MURPHY, Governor of the State of New Jersey, by virtue of the authority vested in me by the Constitution and by the Statutes of this State, do hereby ORDER and DIRECT:

Exhibit 88 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1201 of 2922

5

1.   The operative paragraphs of Executive Order No. 104
(2020) are hereby superseded in full.   The factual findings of
Executive Order No. 104 (2020) remain applicable except to the
extent they are in conflict with the factual findings in this or
any intervening Executive Order.

2.   All New Jersey residents shall remain home or at their
place of residence unless they are 1) obtaining goods or services
from essential retail businesses, as described in Paragraph 6; 2)
obtaining takeout food or beverages from restaurants, other dining
establishments, or food courts, pursuant to Paragraph 8; 3) seeking
medical attention, essential social services, or assistance from
law enforcement or emergency services; 4) visiting family or other
individuals with whom the resident has a close personal
relationship, such as those for whom the individual is a caretaker
or romantic partner; 5) reporting to, or performing, their job; 6)
walking, running, operating a wheelchair, or engaging in outdoor
activities with immediate family members, caretakers, household
members, or romantic partners while following best social
distancing practices with other individuals, including staying six
feet apart; 7) leaving the home for an educational, religious, or
political reason; 8) leaving because of a reasonable fear for his
or her health or safety; or 9) leaving at the direction of law
enforcement or other government agency.

3.   When in public, individuals must practice social
distancing and stay six feet apart whenever practicable, excluding
immediate family members, caretakers, household members, or
romantic partners.

4.   Individuals who have to travel pursuant to Paragraph 2
should only use public transportation only if they have no other
feasible choice.   Individuals who ride public transportation
should abide by best social distancing practices, including making

Exhibit 88 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

6

all efforts to stand or sit six feet away from other riders and frequently use sanitizing products.

5. Gatherings of individuals, such as parties, celebrations, or other social events, are cancelled, unless otherwise authorized by any part of this Order. The State Director of Emergency Management, who is the Superintendent of the State Police, shall have the discretion to make clarifications and issue orders related to this provision.

6. The brick-and-mortar premises of all non-essential retail businesses must close to the public as long as this Order remains in effect. Essential retail businesses, listed below, are excluded from this directive and may remain open during their normal business hours. Essential retail businesses must, wherever practicable, provide pickup services outside or adjacent to their stores for goods ordered in advance online or by phone. Additionally, online and telephonic delivery services are permitted to the extent the retail business is authorized to operate an online or telephonic delivery service under existing law. The State Director of Emergency Management, who is the Superintendent of the State Police, shall have the discretion to make additions, amendments, clarifications, exceptions, and exclusions to this list:

    a. Grocery stores, farmer's markets and farms that sell directly to customers, and other food stores, including retailers that offer a varied assortment of foods comparable to what exists at a grocery store;

    b. Pharmacies and alternative treatment centers that dispense medicinal marijuana;

    c. Medical supply stores;

    d. Retail functions of gas stations;

Exhibit 88 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1203 of 2922

e.  Convenience stores;

f.  Ancillary stores within healthcare facilities;

g.  Hardware and home improvement stores;

h.  Retail functions of banks and other financial institutions;

i.  Retail functions of laundromats and dry-cleaning services;

j.  Stores that principally sell supplies for children under five years old;

k.  Pet stores;

l.  Liquor stores;

m.  Car dealerships, but only to provide auto maintenance and repair services, and auto mechanics;

n.  Retail functions of printing and office supply shops; and

o.  Retail functions of mail and delivery stores.

7.  Any essential retail business whose brick-and-mortar premises remain open to the public shall abide by social distancing practices to the extent practicable while providing essential services.  These include all reasonable efforts to keep customers six feet apart and frequent use of sanitizing products on common surfaces.

8.  All restaurants, cafeterias, dining establishments, and food courts, with or without a liquor license, all bars, and all other holders of a liquor license with retail consumption privileges, are permitted to operate their normal business hours, but are limited to offering only food delivery and/or take-out services in accordance with their existing liquor licenses.  If alcoholic beverages are to be sold from a restaurant, dining establishment or bar with a liquor license, such sales shall be

8

limited to original containers sold from the principal public barroom.  The on-premises consumption of alcohol is prohibited. All retail sales of alcoholic beverages by limited brewery licensees, restricted brewery licensees, plenary and farm winery licensees (and associated salesrooms), craft distillery licensees and cidery and meadery licensees must be in original containers and must be sold through customer pick up and/or delivered by licensees in accordance with their existing licenses.

9.   All recreational and entertainment businesses, including but not limited to the following list, must close to the public as long as this Order remains in effect.  The State Director of Emergency Management, who is the Superintendent of State Police, shall have the discretion to make additions, amendments, clarifications, exceptions, and exclusions to this list:

    a.   Casino gaming floors, including retail sports wagering lounges, and casino concert and entertainment venues. Online and mobile sports and casino gaming services may continue to be offered notwithstanding the closure of the physical facility.

    b.   Racetracks, including stabling facilities and retail sports wagering lounges. Mobile sports wagering services may continue to be offered notwithstanding the closure of the physical facility.

    c.   Gyms and fitness centers and classes.

    d.   Entertainment centers, including but not limited to, movie theaters, performing arts centers, other concert venues, and nightclubs.

    e.   All indoor portions of retail shopping malls. Restaurants and other stores located within

9

shopping malls that have their own external entrances open to the public, separate from the general mall entrance, may remain open pursuant to the terms and directives of this Order for operating hours and takeout or food delivery services. All entrances and exits to the common area portions of retail shopping malls must remain closed.

f.   All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement parks, water parks, aquariums, zoos, arcades, fairs, children's play centers, funplexes, theme parks, bowling alleys, family and children's attractions.

g.   Facilities where personal care services are performed that, by their very nature, result in noncompliance with social distancing guidelines, including but not limited to cosmetology shops; barber shops; beauty salons; hair braiding shops; nail salons; electrology facilities; spas, including day spas and medical spas, at which solely elective and cosmetic medical procedures are performed; massage parlors, tanning salons, tattoo parlors, and public and private social clubs, whether or not they serve alcohol, including but not limited to facilities owned or operated by the American Legion, Veterans of Foreign Wars, Knights of Columbus, and any other social clubs associated with community service organizations. This excludes any health facilities that provide medically necessary or therapeutic services.

10

      h.   All municipal, county, and State public libraries, and all libraries and computer labs at public and private colleges and universities.

10.  All businesses or non-profits in the State, whether closed or open to the public, must accommodate their workforce, wherever practicable, for telework or work-from-home arrangements. For purposes of this order, "telework" means the practice of working from home or alternative locations closer to home through the use of technology that equips the individual to access necessary materials.

11.  To the extent a business or non-profit has employees that cannot perform their functions via telework or work-from-home arrangements, the business or non-profit should make best efforts to reduce staff on site to the minimal number necessary to ensure that essential operations can continue.  Examples of employees who need to be physically present at their work site in order to perform their duties include, but are not limited to, law enforcement officers, fire fighters, and other first responders, cashiers or store clerks, construction workers, utility workers, repair workers, warehouse workers, lab researchers, information technology maintenance workers, janitorial and custodial staff, and certain administrative staff.

12.  All public, private, and parochial preschool program premises, and elementary and secondary schools, including charter and renaissance schools, shall remain closed to students as long as this Order remains in effect.

13.  All institutions of higher education shall continue to cease such in-person instruction as long as this Order remains in effect. The Secretary of the Office of Higher Education shall have the authority to grant a waiver to allow in-person instruction to students on a case-by-case basis where a compelling rationale to

Exhibit 88 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
Page 1207 of 2922

11

allow such access exists. The Secretary of the Office of Higher Education shall coordinate with institutions of higher education to determine appropriate student housing conditions for those students who reside in on-campus housing as their primary residence.

14.   The Commissioner of the Department of Education ("DOE"), in consultation with the Commissioner of DOH, shall be authorized to permit schools to remain open on a limited basis for the provision of food or other essential, non-educational services, or for educational or child care services if needed in emergency situations after consultation with the Commissioner of DOH. The Commissioner of DOE shall also have the authority to close any other career or training facilities over which he has oversight, after consultation with the Commissioner of DOH.

15.   The Commissioner of DOE shall continue working with each public school district, and private and parochial schools as appropriate, to ensure that students are able to continue their educations during this time period through appropriate home instruction. Local school districts, charter schools, and renaissance schools, in consultation with the Commissioner of DOE, shall have the authority and discretion to determine home instruction arrangements as appropriate on a case-by-case basis to ensure all students are provided with appropriate home instruction, taking into account all relevant constitutional and statutory obligations.

16.   The Secretary of the Department of Agriculture, in conjunction with the Commissioner of DOE, shall take all necessary actions to ensure that all students eligible for free or reduced meals shall continue to receive the services or supports necessary to meet nutritional needs during closures.

12

17.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the provision of health care or medical services to members of the public.

18.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way access to essential services for low-income residents, including but not limited to food banks.

19.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of newspapers, television, radio, and other media services.

20.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of law enforcement agencies.

21.  Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the operations of the federal government, or the movement of federal officials in New Jersey while acting in their official capacity.

22.  In accordance with N.J.S.A. App. A:9-33, et seq., as supplemented and amended, the State Director of Emergency Management, who is the Superintendent of State Police, through the police agencies under his control, to determine and control the direction of the flow of vehicular traffic on any State or interstate highway, municipal or county road, and any access road, including the right to detour, reroute, or divert any or all traffic and to prevent ingress or egress from any area that, in the State Director's discretion, is deemed necessary for the protection of the health, safety, and welfare of the public, and to remove parked or abandoned vehicles from such roadways as conditions warrant.

23.  The Attorney General, pursuant to the provisions of N.J.S.A. 39:4-213, shall act through the Superintendent of State Police, to determine and control the direction of the flow of

Exhibit 88 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1209 of 2922

13

vehicular traffic on any State or interstate highway, municipal or county road, and any access road, including the right to detour, reroute, or divert any or all traffic, to prevent ingress or egress, and to determine the type of vehicle or vehicles to be operated on such roadways. I further authorize all law enforcement officers to enforce any such order of the Attorney General or Superintendent of State Police within their respective municipalities.

24.  It shall be the duty of every person or entity in this State or doing business in this State and of the members of the governing body and every official, employee, or agent of every political subdivision in this State and of each member of all other governmental bodies, agencies, and authorities in this State of any nature whatsoever, to cooperate fully in all matters concerning this Executive Order.

25.  Penalties for violations of this Executive Order may be imposed under, among other statutes, N.J.S.A. App. A:9-49 and - 50.

26.  This Order shall take effect on Saturday, March 21, 2020, at 9:00 p.m., and shall remain in effect until revoked or modified by the Governor, who shall consult with the Commissioner of DOH as appropriate.

GIVEN, under my hand and seal this 21st day of March, Two Thousand and Twenty, and of the Independence of the United States, the Two Hundred and Forty-Fourth.

[seal]            /s/ Philip D. Murphy

Governor

Attest:

/s/ Matthew J. Platkin

Chief Counsel to the Governor