# EXHIBIT 91



## DECLARATION OF EMERGENCY
### DIRECTIVE 003

**WHEREAS,** on March 12, 2020, I, Steve Sisolak, Governor of the State of Nevada issued a Declaration of Emergency to facilitate the State's response to the COVID 19 pandemic; and

**WHEREAS,** on March 13, 2020, Donald J. Trump, President of the United States declared a nationwide emergency pursuant to Sec. 501(6) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act"); and

**WHEREAS,** the World Health Organization and United States Centers for Disease Control and Prevention have advised that there is a correlation between density of persons gathered and the risk of transmission of COVID-19; and

**WHEREAS,** close proximity to other persons is currently contraindicated by public health and medical best practices to combat COVID-19; and

**WHEREAS,** recreational social gatherings unnecessarily extend periods of interpersonal contact and promulgates spread of COVID-19; and

**WHEREAS,** certain non-essential activities result in the congregation of persons for extended periods of time; and

**WHEREAS,** fire se1vices, law enforcement agencies, emergency medical services, and public safety agencies are essential to the welfare, safety, and health of our communities; and

**WHEREAS,** NRS 414.060 outlines powers and duties delegated to the Governor during the existence of a state of emergency, including without limitation, directing and controlling the conduct of the general public and the movement and cessation of movement of pedestrians and vehicular traffic during, before and after exercises or an emergency or disaster, public meetings or gatherings; and

**WHEREAS,** NRS 414.070 outlines additional powers delegated to the Governor during the existence of a state of emergency, including without limitation, enforcing all laws and regulations relating to emergency management and assuming direct operational control of any or all forces, including, without limitation, volunteers and auxiliary staff for emergency management in the State; providing for and compelling the evacuation of all or part of the population from any stricken or threatened area or areas within the State and to take such steps as are necessa1y for the receipt and care of those

persons; and performing and exercising such other functions, powers and duties as are necessary to promote and secure the safety and protection of the civilian population; and

**WHEREAS,** NRS 414.090 limits the powers of political subdivisions in the event of an emergency, and provides that counties shall, and cities may, in pertinent part establish local organizations for emergency management in accordance with the state emergency management plan and program for emergency management; enter into contracts and incur obligations necessary to combat such an emergency or disaster, protect the health and safety of persons and property and provide emergency assistance to the victims of such an emergency or disaster; and exercise the powers vested under NRS 414.090 in the light of the exigencies of the extreme emergency or disaster without regard to time-consuming procedures and formalities prescribed by law, except constitutional requirements, pertaining to the performance of public work, entering into contracts, the incurring of obligations, the employment of temporary workers, the rental of equipment, the purchase of supplies and materials, the levying of taxes, and the appropriation and expenditure of public funds; and

**WHEREAS,** the Nevada Attorney General opined in Opinion Number 57-336 that "[t]here can be no question but that the Legislature intended to give to the Governor the broadest possible powers consistent with constitutional government in a time of dire emergency;" and

**WHEREAS,** the Nevada Attorney General opined in Opinion Number 95-03 that, in the context of the Governor's exercise of powers under NRS Chapter 414, municipalities exceed their statutoly authority in adopting emergency powers that:
- Establish a curfew allowing only authorized persons in public places;
- Forbid or limit the number of persons who may gather or congregate in public places;
- Prohibit or restrict traffic on public streets and roads;
- Prohibit the sale or distribution of gasoline (or other flammable/combustible), except in vehicle gas tanks or other proper container;
- Close businesses which sell gasoline (or other flammable/combustible);
- Prohibit the sale or distribution of alcohol;
- Close businesses which sell alcohol;
- Prohibit the sale or distribution of guns, ammunition or explosives; or
- Close businesses which sell guns, ammunition or explosives; and

**WHEREAS,** the Nevada Attorney General further opined in Opinion Number 95-03 that such powers as outlined immediately above, if enacted, would be preempted by other grants of power set forth in Chapter 414 and elsewhere; and

**WHEREAS,** Article S, Section 1 of the Nevada Constitution provides: "The supreme executive power of this State, shall be vested in a Chief Magistrate who shall be Governor of the State of Nevada;" and

**WHEREAS,** on March 17, 2020, I directed Nevadans to implement the following measures; and

**WHEREAS,** non-essential businesses continue to operate and avail themselves to the general public, further exacerbating the public health emergency:

**NOW THEREFORE,** by the authority vested in me as Governor by the Constitution and the laws of the State of Nevada and the United States, and pursuant to the March 12, 2020, Emergency Declaration,

**Exhibit 91 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

IT IS HEREBY ORDERED THAT:

SECTION 1:    Non-Essential Businesses, as further defined in regulations promulgated under this Directive, that promote recreational social gathering activities including, but not limited to, recreation centers, clubhouses, nightclubs, movie theaters, massage parlors, adult entertainment establishments, brothels, and live entertainment venues, and any other such Non-Essential Business shall close effective March 20, 2020, at 11:59 p.m., for the duration that this Directive shall be in effect.

SECTION 2:    Non-Essential Businesses that promote extended periods of public interaction where the risk of transmission is high, including fitness establishments such as gyms and studios; aesthetic selvices such as beauty shops, barber shops, nail salons, tanning salons, and wax salons; and any other such Non-Essential Business shall close effective March 20, 2020, at 11 :59 p.m., for the duration that this Directive shall be in effect.

SECTION 3:    The Nevada general public may utilize restaurants and food establishments selving prepared meals.  Such establishments may continue selving the public, but shall cease onsite dining effective March 20, 2020 at 11:59 p.m., for the duration that this Directive shall be in effect.  Food establishments open to the Nevada general public shall only serve customers through a take-out, drive-through, curbside pickup, or delivery capacity.  Food establishments shall adopt COVID-19 risk mitigation policies including, but not limited to:

- To the extent practicable, ensuring that customers receiving orders outside the food establishment maintain adequate social distancing practices by not congregating within a minimum of six feet of separation between each other. This social distancing requirement does not apply to persons residing in the same household.
- To the extent practicable, disallowing the formation of queues whereby persons congregate in a manner that violates the social distancing guidelines above.
- Adopting contactless payment systems whenever possible.
- All food workers must strictly abide by all applicable hygiene guidelines including handwashing and glove requirements.
- Follow United States Centers for Disease Control and Prevention sanitization recommendations, including disinfecting surfaces routinely and at frequent intelvals throughout the workday.

SECTION 4:    An Essential Licensed Business, including but not limited to, and as further defined in regulations promulgated under this Directive, healthcare providers, veterinaty services, grocety stores, pharmacies, financial institutions, hardware stores, convenience stores, security services, and gas stations, is encouraged to continue operation, but must adopt COVID-19 risk mitigation measures that reduce the risk of community disease spread, including but not limited to:

- Providing curbside, pickup, or delivety of goods whenever possible.
- Ensuring that customers picking up or accepting curbside delivety of goods maintain adequate social distancing practices by not congregating within a minimum of six feet of separation between each other as practicable.  This

**Exhibit 91 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

       social distancing requirement does not apply to persons residing in the same household.

- Disallowing the formation of queues whereby persons congregate in a manner that violates the social distancing guidelines above as practicable.
- Adopting contactless payment systems, as further defined in regulations promulgated under this Directive, whenever possible.
- An Essential Licensed Business that is unable to provide take-out, drive-through services, curbside pickup, or delivery of goods must limit access to its premises so that customers can maintain a minimum of six feet of separation between each other as practicable.
- An Essential Licensed Business that is unable to provide takeout, drive through, curbside pickup, or delivery of goods must implement sanitation and disinfection policies that comply with United States Centers for Disease Control and Prevention sanitization recommendations, including disinfecting surfaces routinely and at frequent intervals throughout the workday.

SECTION 5:  Retail cannabis dispensaries may operate by delivery only pursuant to the guidance that shall be issued by the Department of Taxation in conjunction with the Cannabis Compliance Board effective March 20, 2020, at 11:59 p.m.

SECTION 6:  The construction, mining, manufacturing, and infrastructure sector labor force may continue operations, but shall maintain strict social distancing practices to facilitate a minimum of six feet of separation between workers, and to adopt policies and practices that ensure minimum contact between the workforce and the general public. This social distancing restriction shall not be construed to supersede any safety practices imposed on the industry by state or federal law. Business sectors operating under this authority must comply with any applicable COVID-19 risk mitigation policies, as further defined in regulations promulgated under this Directive, and any precautionary measures and guidance that shall be promulgated by Nevada Department of Business and Industry.

SECTION 7:  This Directive shall not be construed to hinder the ability of the industries identified in the U.S. Department of Homeland Security Cyber & Infrastiucture Security Agency Essential Critical Infrastructure Workforce memorandum dated March 19, 2020 to continue their operation appropriately modified to account for Centers for Disease Control (CDC) workforce and consumer protection guidance.

SECTION 8:  Businesses not delineated above or in regulations promulgated under this Directive may continue operations, not to include retail sales, if they are able to implement social distancing safeguards for the protection of their employees and:

- Perform operations without contact with the Nevada general public; or
- To the extent practicable, provide services without causing members of the Nevada general public to congregate in a manner contrary to social distancing goals of a minimum of six feet of separation for more than incidental contact; or
- Provide services without causing more than ten members of the Nevada general public to congregate.

SECTION 9:  Businesses that do not comply with this Directive or regulations promulgated under this Directive, after receiving written notice from law enforcement, may be subject to criminal prosecution and civil penalties under NRS 202.595, NRS 202.450, and any other applicable statute, ordinance, or regulation. All law enforcement agencies in the State of Nevada are authorized to enforce this Directive and regulations promulgated under this Directive. The Office of the Attorney General is given concurrent jurisdiction to prosecute violations of this Directive and any regulations promulgated thereunder.

SECTION 10:  Pursuant to NRS 414.060(3)(£), I hereby authorize all local, city, and county governments to enforce this Directive and regulations promulgated thereunder. This includes, but is not limited to, suspending a license, revoking a license, or issuing penalties for violating business, professional, liquor, tobacco, or gaming licenses issued by the local jurisdiction for actions that jeopardize the health, safety, or welfare of the public; conduct which may injuriously affect the public health, safety, or welfare; conduct that may be detrimental to the public peace, health, or morals; or any other applicable ordinance or requirement for such a license.

SECTION 11:  This Directive. shill remain in effect until April 16, 2020, unless renewed by a subsequent Directive promulgated pursuant to the March 12, 2020 Declaration of Emergency to facilitate the State's response to the COVID-19 pandemic.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Nevada to be affi.'{ed at the State Capitol in Carson City, this 20th day of March, in the year two thousand twenty.



Governor of the State of Nevada

Secretary of State

Deputy Secretary of State