# EXHIBIT 93



DECLARATION OF EMERGENCY

DIRECTIVE 021

PHASE TWO REOPENING PLAN

**WHEREAS**, in late 2019, the United States Centers for Disease Control and Prevention began monitoring an outbreak of respiratory illness caused by a novel coronavirus first identified in Wuhan, Hubei Province, China; and

**WHEREAS**, on February 11, 2020, the International Committee on Taxonomy of Viruses named this novel coronavirus "severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2);" and

**WHEREAS**, on February 11, 2020, the World Health Organization named the disease caused by SARS-CoV-2, "COVID-19:" and

**WHEREAS**, the World Health Organization advises that the novel coronavirus that causes COVID-19 virus is highly contagious, and spreads through respiratory transmission, and direct and indirect contact with infected persons and surfaces; and

**WHEREAS**, the World Health Organization advises that respiratory transmission occurs through both droplet and airborne transmission, where droplet transmission occurs when a person is within 6 feet of someone who has respiratory symptoms like coughing or sneezing, and airborne transmission may occur when aerosolized particles remain suspended in the air and is inhaled; and

**WHEREAS**, the World Health Organization advises that contact transmission occurs by direct contact with infected people or indirect contact with surfaces contaminated by the novel coronavirus; and

**WHEREAS**, some persons with COVID-19 may exhibit no symptoms but remain highly infectious; and

**WHEREAS**, on March 5, 2020, Clark County and Washoe County both reported the first known cases of COVID-19 in the State of Nevada; and

**WHEREAS**, on March 11, 2020, the World Health Organization declared COVID-19 a pandemic; and

**WHEREAS**, on March 12, 2020, I, Steve Sisolak, Governor of the State of Nevada issued a Declaration of Emergency to facilitate the State's response to the COVID-19 pandemic; and

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1237 of 2921

*WHEREAS*, on March 13, 2020, Donald J. Trump, President of the United States declared a nationwide emergency pursuant to Sec. 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act"); and

**WHEREAS**, on March 14, 2020, I formed a medical advisory team to provide medical guidance and scientifically based recommendations on measures Nevada could implement to better contain and mitigate the spread of COVID-19; and

*WHEREAS*, infectious disease and public health experts advised that minimizing interpersonal contact slows the rate at which the disease spreads, and is necessary to avoid overwhelming healthcare systems, commonly referred to as "flattening the curve"; and

*WHEREAS*, since the March 12, 2020 Declaration of Emergency, I have issued 20 Directives pursuant to that order to provide for the safety, wellbeing, and public health of Nevadans and the administration of the State of Nevada; and

*WHEREAS*, these Directives were promulgated to reduce interpersonal contact and promote social distancing to flatten the curve; and

*WHEREAS*, data showed that Nevada was one of the top five states in the United States for social distancing; and

*WHEREAS*, Nevada's medical experts indicate that the rate at which COVID-19 is spreading in the State of Nevada has effectively slowed to a level that does not jeopardize the state's healthcare system due, in part, to Nevadans following strict social distancing measures individually and pursuant to Directives I issued pursuant to the March 12, 2020, Declaration of Emergency; and

*WHEREAS*, although the danger to Nevadans from the COVID-19 disease has abated, the disease has not been eliminated and measures that protect safety, wellbeing, and public health of Nevadans must remain in effect; and

*WHEREAS*, on April 21, 2020, the National Governors Association issued guidance for a staged reopening that protects the public's health while laying a strong foundation for long-term economic recovery; and

*WHEREAS*, on April 30, 2020, I introduced the *Nevada United: Roadmap to Recovery* plan that outlined a phased approach to reopening Nevada businesses and industry; and

*WHEREAS*, the *Nevada United: Roadmap to Recovery* plan set forth a collaborative partnership between state and local governments that included the formation of the Local Empowerment Advisory Panel ("LEAP") to serve as a resource to local governments and local communities; and

*WHEREAS*, on May 9, 2020, the State of Nevada entered Phase One of the *Nevada United: Roadmap to Recovery* plan; and

*WHEREAS*, in the 19 days since Nevada entered Phase One, our state has experienced a consistent and sustainable downward trajectory in the percentage of positive COVID-19 cases, a decrease in the trend of COVID-19 hospitalizations, and a decline in our cumulative test positivity rate from a maximum rate of 12.2% on April 24, 2020 to 6.3% on May 27, 2020 with a 33-day downward trend; and

2

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1238 of 2921

***WHEREAS,*** the LEAP develops statewide guidelines for social distancing and phased reopening in consultation with local health authorities and other subject matter experts; and

***WHEREAS,*** NRS 414.060 outlines powers and duties delegated to the Governor during the existence of a state of emergency, including without limitation, directing and controlling the conduct of the general public and the movement and cessation of movement of pedestrians and vehicular traffic during, before and after exercises or an emergency or disaster, public meetings or gatherings; and

***WHEREAS,*** NRS 414.070 outlines additional powers delegated to the Governor during the existence of a state of emergency, including without limitation, enforcing all laws and regulations relating to emergency management and assuming direct operational control of any or all forces, including, without limitation, volunteers and auxiliary staff for emergency management in the State; providing for and compelling the evacuation of all or part of the population from any stricken or threatened area or areas within the State and to take such steps as are necessary for the receipt and care of those persons; and performing and exercising such other functions, powers and duties as are necessary to promote and secure the safety and protection of the civilian population; and

***WHEREAS,*** the Nevada Attorney General opined in Opinion Number 95-03 that in times of emergency when the Governor's authority under Nevada Revised Statutes Chapter 414 is in effect, the powers of political subdivisions to control business activity is limited; and

***WHEREAS,*** NRS 414.060(3)(f) provides that the administrative authority vested to the Governor in times of emergency may be delegated; and

***WHEREAS,*** Article 5, Section 1 of the Nevada Constitution provides: "The supreme executive power of this State, shall be vested in a Chief Magistrate who shall be Governor of the State of Nevada;" and

***NOW THEREFORE,*** by the authority vested in me as Governor by the Constitution and the laws of the State of Nevada and the United States, and pursuant to the March 12, 2020, Emergency Declaration,

IT IS HEREBY ORDERED THAT:

SECTION 1: To the extent this Directive conflicts with earlier Directives or regulations promulgated pursuant to the March 12, 2020 Declaration of Emergency, the provisions of this Directive shall prevail.

SECTION 2: Consistent with the *Nevada United: Roadmap to Recovery* plan for a federally supported, state managed, and locally executed reopening approach, county governments are hereby delegated the authority to impose additional COVID-19 related restrictions on businesses and public activities. Restrictions imposed by county government may exceed the standards imposed by Declaration of Emergency Directives or set forth under the LEAP guidelines, but in no case shall county-guidelines be more permissive than the provisions of this Directive.

SECTION 3: Businesses may adopt practices that exceed the standards imposed by Declaration of Emergency Directives, guidelines promulgated by the Nevada State Occupational Safety and Health Administration (NV OSHA) or LEAP guidelines, but in no case shall business practices be more permissive than the provisions of this Directive or those imposed by NV OSHA and the LEAP.

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1239 of 2921

SECTION 4: Businesses performing non-retail services, including without limitation, legal services, accounting services, or real estate services, are encouraged to conduct business telephonically or virtually to the greatest extent practicable. These businesses are encouraged to permit employees to work from home to the greatest extent practicable.

SECTION 5: For the purposes of this Directive, "vulnerable persons" are defined as those who are at heightened risk of complications from COVID-19 disease, and include:
(1) Individuals who are 65 years of age and older;
(2) Individuals with chronic lung disease or moderate to severe asthma;
(3) Individuals who have serious heart conditions;
(4) Individuals who are immunocompromised;
(5) Pregnant women; or
(6) Individuals determined to be high risk by a licensed healthcare provider.

SECTION 6: All vulnerable persons are strongly encouraged to stay at home to the greatest extent possible, except when necessary to provide, support, perform, or operate necessary activities, minimum basic operations, critical government functions, necessary travel, or essential businesses.

SECTION 7: The phrase "social distancing" references guidance promulgated by the United States Centers for Disease Control and Prevention, including without limitation, maintaining at least six feet of physical distancing from other individuals. The phrase "sanitation requirements," "sanitation measures," and "sanitation guidelines" includes without limitation, washing hands with soap and water for at least twenty seconds as frequently as possible, using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.

SECTION 8: All Nevadans are strongly encouraged to stay in their residences to the greatest extent possible. Recognizing that COVID-19 is still present in Nevada and highly contagious, Nevadans are advised that they are safer at home and should avoid interpersonal contact with persons not residing in their households to the extent practicable. Nevadans are urged to avoid travel to the greatest extent practicable. To reduce the spread of COVID-19 via respiratory transmission, the Nevada public should utilize face coverings in public spaces.

SECTION 9: Pursuant to NRS 441A.180, persons testing positive for COVID-19 shall stay at home and "self-quarantine" for a minimum of two weeks, except as necessary to care for themselves or seek medical care. Persons determined to be in contact with an individual who tested positive for COVID-19 must quarantine and stay at home for two weeks, or until a negative test result has been received.

SECTION 10: Section 1 of Directive 007 is hereby further amended to provide that effective 12:01 am on May 29, 2020, the Nevada general public shall not gather in groups of more than fifty in any indoor or outdoor area subject to the limitations of this section, whether publicly owned or privately owned where the public has access by right or invitation, express or implied, whether by payment of money or not. Section 3 of Directive 007 shall remain in force.

SECTION 11: Communities of worship and faith-based organizations, including without limitation, churches, synagogues, mosques, and temples, are strongly encouraged to offer online and drive-up services to the greatest extent possible. Effective 12:01 am on May 29, 2020, consistent with other

4

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1240 of 2921

Directives on public gatherings, houses of worship may conduct indoor in-person services in a manner so that no more than fifty persons are gathered, and all social distancing requirements are satisfied. This limitation shall not apply to houses of worship offering drive-up services pursuant to Section 10 of Directive 016. Houses of worship offering indoor, in-person services are encouraged to follow the guidelines promulgated by the LEAP, as well as the following provisions that are consistent with other Directives on public gatherings:

(1) Seating must be arranged to ensure a minimum of six feet of separation between congregants who do not reside in the same household.
(2) Participants, including leaders and staff, are encouraged to utilize face coverings to the greatest extent practicable.
(3) Houses of worship are encouraged to stagger services so that the entrance and egress of congregants for different services do not result in a gathering greater than fifty persons, and to provide proper sanitation between services.

SECTION 12: All employers must take proactive measures to ensure compliance with the social distancing and sanitation guidelines. All employers shall continue to require employees who interact with the public to wear face coverings, to the maximum extent possible, and shall abide by all other guidelines promulgated by NV OSHA.

SECTION 13: All businesses must adopt measures that meet or exceed the standards promulgated by NV OSHA to minimize the risk of spread of COVID-19. All businesses are encouraged to permit their employees to work from home to the maximum extent practicable. NV OSHA shall continue to ensure that businesses reopened pursuant to this Directive or otherwise operating during the state of emergency provide adequate protections to their workers and adopt sanitation protocols that minimize the risk of spread of COVID-19 among their workforce. NV OSHA shall enforce all violations of its guidance, protocols, and regulations.

SECTION 14: All employers are encouraged to consult guidelines issued by the LEAP for industry-specific information for operating in the phased reopening under the *Nevada United: Roadmap to Recovery* plan. The LEAP guidelines will be posted on the Nevada Health Response website at https://nvhealthresponse.nv.gov/.

SECTION 15: To the maximum extent practicable, employers and employees are strongly encouraged to incorporate the following protocols into their business operations:
(1) Encourage customers to wear face coverings
(2) Continue to encourage telework, whenever possible and feasible with business operations
(3) Return to work in phases
(4) Close common areas where personnel are likely to congregate and interact, or enforce strict social distancing protocols
(5) Strongly consider special accommodations for personnel who are members of a vulnerable population
(6) Encourage employees to do a self-assessment each day in order to check if they have any COVID-19 type symptoms, for example, fever, cough or shortness of breath
(7) Practice hand hygiene
(8) Perform frequent enhanced environmental cleaning of commonly touched surfaces
(9) Implement separate operating hours for vulnerable populations
(10) Provide signage advising the public of appropriate social distancing within the facility, including six feet of social distancing from other individuals; and

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment    Page 1241 of 2921

(11) Provide readily available hand sanitizer or other sanitizing products for employees and customers

SECTION 16: All employers operating under Phase Two are encouraged to accommodate vulnerable persons and workers caring for a child whose school or place of care is closed, or childcare provider is unavailable, for reasons related to COVID-19, by promoting telecommuting or other remote work options, flexible schedules, or other means. To the greatest extent possible, employers should extend similar accommodations to workers who live in the same household as a vulnerable person. Upon request, all employers covered by the Families First Coronavirus Response Act ("FFCRA") must provide leave to eligible employees as provided by the Act. Employers covered by the FFCRA must notify covered employees seeking accommodations of their eligibility. The provisions of this Section shall be in effect for the duration that the March 12, 2020 Declaration of Emergency shall be in effect, unless specifically terminated by a subsequent Directive.

SECTION 17: All businesses that engage in retail sales may continue to provide retail sales on a curbside or home delivery basis, or allow onsite customer access, with a maximum occupancy of 50% based on listed fire code capacity. Businesses are strongly encouraged to promote home delivery, curbside delivery, walk-up, drive-through, or window service whenever possible. Businesses must adopt measures promulgated by NV OSHA to minimize the risk of spread of COVID-19 including social distancing and sanitation measures, and abide by all other guidance promulgated pursuant to this and other Directives. To the maximum extent practicable, businesses must provide services in a manner disallowing the formation of queues whereby persons congregate in a manner that violates the social distancing guidelines above. All businesses are encouraged to permit their employees to work from home to the maximum extent practicable. Retail businesses operating in open-air malls or strip malls are expressly permitted to operate under the conditions set forth in this Directive.

SECTION 18: Effective 12:01 am on May 29, 2020, indoor malls may open to the public, and allow retail businesses to operate. Businesses engaged in retail sales at indoor malls are subject to the same restrictions as retail businesses operating at other locations, as provided in Section 17 of this Directive. Mall operators shall discourage the public from congregating by removing or prohibiting access to indoor and outdoor seating, except at food courts. Food courts may reopen to customers, but must abide by all restrictions imposed on restaurants pursuant to Section 25 of this Directive, including without limitation, sanitation protocols, and social distancing seating requirements.

SECTION 19: The limitations imposed on drive-in movie theaters in Section 14 of Directive 018 are hereby amended to provide that concession stands may serve food and drinks on a prepackaged basis only.

SECTION 20: Effective 12:01 am on May 29, 2020, non-retail indoor venues, including without limitation, indoor movie theaters, bowling alleys, or arcades may reopen to the public. Indoor movie theaters operating pursuant to this section must ensure that occupancy shall not exceed the lesser of 50% of the listed fire code capacity or fifty persons, and implement measures to ensure that all social distancing requirements are satisfied. All other businesses operating pursuant to this section must ensure that occupancy shall not exceed 50% of the listed fire code capacity, and implement measures to ensure that all social distancing requirements are satisfied. Businesses operating pursuant to this Section shall limit food and beverage sales to prepackaged products only.

SECTION 21: Effective 12:01 am on May 29, 2020, non-retail outdoor venues, including without limitation, miniature golf facilities, amusement parks, theme parks may reopen to the public. Businesses

6

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1242 of 2921

operating pursuant to this section must ensure that occupancy shall not exceed 50% of the listed fire code capacity, and implement measures to ensure that all social distancing requirements are satisfied.

SECTION 22: Effective 12:01 am on May 29, 2020, musical performances, live entertainment, concerts, competitions, sporting events, and any events with live performances may resume, but shall remain closed for public attendance. Events held pursuant to this section may be recorded, filmed, streamed or broadcast to the public. Live events ordinarily regulated by the Nevada Athletic Commission or the Nevada Gaming Control Board must be approved by the applicable board prior to the event. All other live events under this Section must be approved by the Nevada Department of Business & Industry, Division of Industrial Relations prior to the event. Events held pursuant to this Section must additionally comply with all guidance promulgated by NV OSHA.

SECTION 23: Nail care salons and hair salons licensed by the Nevada Board of Cosmetology and barber shops licensed by the State Barber's Health and Sanitation shall continue to operate under the Phase One conditions set forth in Section 16 of Directive 018.

SECTION 24: Effective 12:01 am on May 29, 2020, estheticians and salons or businesses that provide aesthetic skin services, including without limitation, facials, hair removal, tanning, eyelash services, professional make-up artist services, eyebrow threading, and salt therapy, may reopen to the public pursuant to all protocols and guidelines promulgated by the Nevada State Board of Cosmetology and LEAP, as well as the following provisions:
(1) Partitions or walls between each chair or workstation are strongly encouraged.
(2) Establishments with walls or partitions between stations or chairs may utilize all stations, but under no circumstances may more than one customer or client be seated at any given station or chair.
(3) Establishments without walls or partitions between stations must only seat customers or clients at every other station or chair, or arrange stations or chairs so that a minimum of 6 feet of separation between customers is maintained.
(4) Establishments must not accept customers or clients on a walk-in basis, and estheticians and technicians must not serve or accept appointments for more than one customer at any given time.
(5) Customers waiting for appointments must wait outside the facility and must practice social distancing by maintaining a minimum of 6 feet of separation between customers not residing in the same household.
(6) Make-up application services must use disposable tools or sanitize tools between customers.
(7) Estheticians, technicians, and other employees must wear face coverings while interacting with customers and clients. Customers and clients should wear face coverings to the extent practicable.
(8) These businesses must follow the Enhanced Sanitation Guidelines for Salons in Response to COVID-19 issued by the Nevada State Board of Cosmetology. The Board is directed to take action, including the closure of salons and businesses, for all actions by licensees not in compliance with these Guidelines for Response to COVID-19.
(9) With the exception of pool usage pursuant to Section 29 of this Directive, steam rooms, saunas, portable saunas, vapor baths, salt therapy rooms, hot tubs, and other communal facilities shall remain closed to the public.

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1243 of 2921

SECTION 25: Restaurants and food establishments shall continue to operate under the Phase One conditions set forth in Section 17 of Directive 018, but may additionally utilize tables and serve food within the bar area. Establishments operating under this provision shall abide by the following provisions:
   (1) Establishments shall require employees to wear face coverings, and should encourage customers to wear face coverings to the maximum extent practicable.
   (2) Areas within establishments that promote congregation, including without limitation, dance floors, arcade areas, billiards, and similar activities shall remain closed to the public.
   (3) Customers may sit at and be served at bar tops only if bar top seating is limited such that barstools are spaced a minimum of six feet apart from other barstools of other customers not in the same party.
   (4) Buffets, cafeterias, and self-serve dining facilities shall remain closed until further notice.

SECTION 26: Section 18 of Directive 018 is hereby amended to provide that effective 12:01 am on May 29, 2020, breweries, distilleries, and wineries not licensed to serve food may open to the public subject to the following provisions:
   (1) Bartenders, waitresses, and other employees must wear face coverings.
   (2) The maximum occupancy of these establishments during Phase Two shall not exceed 50% of the listed fire code capacity.
   (3) Tables, booths, or seats must be spaced, or customers seated a minimum of 6 feet apart from other customers not in the same party. Customers sitting at a table or booth must only be served via table service and may not order from the bar top area.
   (4) Customers may sit at and be served at bar tops only if bar top seating is limited such that barstools are spaced a minimum of six feet apart from other barstools of other customers not in the same party.
   (5) Customers waiting to dine onsite must wait outside the establishment until they can be seated and must practice social distancing by maintaining a minimum of 6 feet of separation between customers not residing in the same household or in the same party.
   (6) Breweries, distilleries, and wineries must continue to operate in a manner consistent with worker safety guidelines promulgated by the NV OSHA.

SECTION 27: The following non-essential businesses shall remain closed during Phase Two of the *Nevada United: Roadmap to Recovery* plan:
   (1) Nightclubs
   (2) Day clubs
   (3) Brothels
   (4) Adult entertainment facilities

SECTION 28: Effective 12:01 am on May 29, 2020, gyms, fitness facilities, and fitness studios, including but not limited to dance and yoga studios, may reopen to the public. Gyms, fitness facilities, and fitness studios that provide services to ten or fewer people at a time may reopen only if they are able to provide services in a manner that does not violate social distancing protocols. Establishments providing services to more than ten patrons at a time shall limit customer access so as not to exceed a maximum occupancy of 50% based on listed fire code capacity. All gyms, fitness facilities, and fitness studios must, without exception, abide by all protocols promulgated by NV OSHA, including sanitation protocols. In addition to the protocols promulgated by NV OSHA and the LEAP, all gyms, fitness facilities, and fitness studios must abide by the following provisions:

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment   Page 1244 of 2921

(1) Employees, trainers, and instructors must wear face coverings to the maximum extent practicable, and facilities should encourage patrons to wear face coverings to the maximum extent practicable.
(2) Regardless of listed fire code capacity, facilities must limit access to patrons to ensure that occupancy at any given time does not become sufficiently dense so as to violate social distancing protocols.
(3) Equipment must be regulated to ensure a minimum of six feet of social distancing between users, and equipment should be moved, designated inoperable, or turned off to ensure that social distancing standards are maintained.
(4) Group fitness classes must be limited to ensure at least six feet of separation between participants.
(5) Contact sports, including without limitation, martial arts, basketball, wrestling, and boxing may only be offered in a manner where participants do not physically contact other participants, or activities that require participants to perform within six feet of each other.
(6) Locker rooms, showers, steam rooms, saunas, portable saunas, vapor baths, salt therapy rooms, hot tubs, and other communal facilities, not to include restrooms, shall remain closed to the public.
(7) Pools may open to patrons, but all pool usage is subject to the provisions of Section 29 of this Directive.
(8) Child care facilities in gyms must remain closed.

SECTION 29: Effective 12:01 am on May 29, 2020, all public aquatic venues, may reopen to the public. For the purposes of this Directive, "public aquatic venues" shall include without limitation venues operated and managed by city and county governments; apartment complexes; home owners associations (HOAs); membership clubs including gyms or other privately owned aquatic centers accessible to the public through paid memberships or fees; schools; and hotels, motels, resorts, time-shares, and other guest lodging facilities. Facilities reopening pursuant to this section must abide by the following provisions:
(1) Capacity at all public aquatic venues shall be limited to a maximum occupancy of 50% based on listed fire code capacity.
(2) A minimum of six feet of social distancing between users is required in the pool, the pool deck, and any other areas at the facility. This limitation shall not apply to persons residing in the same household.
(3) Hot tubs shall remain closed to the public.
(4) Attendees should be encouraged to bring their own towels, equipment, and arrive and minimize the time spent in the facility by arriving and leaving wearing their swimsuit.
(5) Public aquatic venues with locker rooms shall limit access to lockers and locker rooms, but should maintain public restrooms and shower facilities and limit the number of users at any one time.
(6) Deck layouts and furniture in standing and seating areas must be arranged to maintain social distancing standards of at least six feet of separation between persons. This requirement shall not apply to persons residing in the same household.
(7) In addition to the provisions above, aquatic schools offering swim lessons must require instructors to wear face coverings to the maximum extent practicable, and limit access to one parent or guardian per student.
(8) Water parks shall control access to the public to ensure that the occupancy does not exceed 50% capacity based on applicable fire code or is sufficiently high that social distancing standards are violated. Water parks shall limit locker room access to restroom usage only.

9

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment    Page 1245 of 2921

All employees must wear face coverings to the maximum extent practicable. Concession sales at water parks must be limited to prepackaged foods only.
(9) In addition to the provisions above, all public aquatic venues are encouraged to abide by all other guidelines promulgated by the LEAP.

SECTION 30: Effective 12:01 am on May 29, 2020, museums, art galleries, zoos, and aquariums may reopen to the public. Capacity at these facilities shall be limited to the lesser of 50% based on listed fire code capacity or fifty persons. Interactive exhibits which encourage touching must remain closed and inaccessible to the public. Facilities operating pursuant to this Section must ensure that employees wear face coverings and shall abide by all other guidelines promulgated by NV OSHA.

SECTION 31: Effective 12:01 am on May 29, 2020, body art and piercing facilities may reopen to the public, subject to the following provisions:
(1) Capacity at these facilities shall be limited to a maximum occupancy of 50% based on listed fire code capacity.
(2) Partitions or walls between each workstation are strongly encouraged.
(3) Establishments with walls or partitions between workstations may utilize all stations, but under no circumstances may more than one customer or client be seated at any given station or chair.
(4) Establishments without walls or partitions between stations must ensure that a minimum of 6 feet of separation between customers is maintained.
(5) Establishments must not accept customers or clients on a walk-in basis, and artists must not serve or accept appointments for more than one customer at any given time.
(6) Customers waiting for appointments must wait outside the facility and must practice social distancing by maintaining a minimum of 6 feet of separation between customers not residing in the same household.
(7) Artists, employees, and customers must wear face coverings at all times. Body art and piercings that require mask removal, including without limitation, work around the mouth and nose are prohibited.
(8) Access must be limited to customers only; persons accompanying customers must not be inside the facility while services are performed.
(9) Artists and facilities operating pursuant to this section must abide by all sanitation and other guidelines promulgated by NV OSHA.

SECTION 32: Effective 12:01 am on May 29, 2020, trade schools and technical schools may reopen to the public. Occupancy in classrooms and instructional areas at schools operating pursuant to this Section shall be limited to the lesser of 50% of maximum occupancy of based on listed fire code capacity or fifty persons, and must abide by all guidelines promulgated by NV OSHA. These provisions shall not be construed to limit the reopening plans of Nevada System of Higher Education institutions, schools under county school districts, charter schools, and the University School for Profoundly Gifted Students.

SECTION 33: Summer camps may continue to operate pursuant to all applicable licensure, regulatory, and statutory requirements and are encouraged to following guidelines issued by the LEAP.

SECTION 34: Effective 12:01 am on May 29, 2020, massage therapists, massage establishments, and other professionals licensed by the Nevada State Board of Massage Therapy may reopen to the public subject to the following provisions:

10

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1246 of 2921

(1) Massage establishments must follow all NV OSHA and Nevada State Board of Massage Therapy sanitization guidelines.
(2) Massage therapists, masseuses, and other employees must wear face coverings at all times. Establishments should strongly encourage customers to wear face coverings to the maximum extent practicable.
(3) Massage therapists and massage establishments must not accept customers or clients on a walk-in basis, and must not serve or accept appointments for more than one customer at any given time.
(4) Customers waiting for appointments must wait outside the facility and must practice social distancing by maintaining a minimum of 6 feet of separation between customers not residing in the same household.
(5) Out-call or in-home service are permitted, subject to all sanitation protocols and face covering requirements provided in this section.
(6) Establishments, including day and overnight spas, may reopen for massage services as allowed in the Phase 2 Directive. Spas or other establishments that open in Phase 2 must close and prohibit use of steam rooms, saunas, portable saunas, vapor baths, salt therapy rooms, hot tubs, and any other communal facilities (except for pools as allowed in the Phase 2 Directive).
(7) Persons licensed by the Nevada State Board of Massage Therapy must abide by all guidelines promulgated by the Board. The Board is directed to impose disciplinary measures against licensees who violate this provision.

SECTION 35: Directive 002 and Section 021 of Directive 018 are hereby terminated. The Nevada Gaming Control Board shall promulgate requirements for a phased and incremental resumption of gaming operations, with openings commencing no sooner than 12:01 am June 4, 2020. Failure of a gaming licensee to comply with any such requirements shall be considered injurious to the public health, safety, morals, good order and general welfare of the inhabitants of the State, and constitute a failure to comply with this Directive. The Nevada Gaming Control Board is hereby authorized to enforce this Directive as necessary, including, but without limitation, pursuing disciplinary action to limit, condition, suspend, and/or revoke a license, and/or impose a monetary fine against a licensee in accordance with the Gaming Control Act.

SECTION 36: Cannabis dispensaries shall continue to operate under the Phase One conditions set forth in Section 22 of Directive 018.

SECTION 37: Previous Directives not specifically referenced herein remain in effect for the duration specified in those specific Directives or subsequent extensions, unless specifically terminated or extended renewed by subsequent Directive. Directive 018 and all Directives incorporated by reference within Directive 018 with specific expiration dates are extended until June 30, 2020.

SECTION 38: Pursuant to NRS 414.060(3)(f), I hereby delegate to state agencies, and each county of this state, to include the consolidated municipality of Carson City, and local municipalities, the authority to adopt additional protective measures intended to combat the spread of COVID-19, including without limitation, stay at home and face covering orders, so long as those measures are at least as restrictive as those imposed by all Directives promulgated pursuant to the Declaration of Emergency for COVID-19 issued on March 12, 2020. Additional restrictive measures adopted by counties and municipalities may be implemented without additional approval by the State.

11

SECTION 39: Pursuant to NRS 414.060(3)(f), I hereby authorize all local, city, and county governments, and state agencies to enforce this Directive and regulations promulgated thereunder, including but not limited to, suspending licenses, revoking licenses, or issuing penalties for violating business, professional, liquor, tobacco, or gaming licenses issued by the local jurisdiction for actions that jeopardize the health, safety, or welfare of the public; conduct which may injuriously affect the public health, safety, or welfare; conduct that may be detrimental to the public peace, health, or morals; or any other applicable ordinance or requirement for such a license.

SECTION 40: The State of Nevada shall retain all authority vested in the Governor pursuant to NRS Chapter 414.

SECTION 41: This Directive shall remain in effect through June 30, 2020, unless terminated or extended by a subsequent Directive promulgated pursuant to the March 12, 2020 Declaration of Emergency to facilitate the State's response to the COVID-19 pandemic.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Nevada to be affixed at the State Capitol in Carson City, this 28th day of May, in the year two thousand twenty.



_____
Governor of the State of Nevada

_____
Secretary of State

_____
Deputy Secretary of State

Exhibit 93 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 1248 of 2921