# EXHIBIT 138

Electronically FILED by Superior Court of California, County of Los Angeles on 02/22/2022 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Lara,Deputy Clerk

SPERTUS, LANDES & UMHOFER, LLP
Kevin J. Minnick (SBN 269620)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
kminnick@spertuslaw.com

*Attorneys for Plaintiff*
*JRK Property Holdings, Inc.*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JRK PROPERTY HOLDINGS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> COLONY INSURANCE COMPANY, et al., <br><br> Defendants, | Case No. 21STCV19983 <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Assigned to: Hon. Daniel S. Murphy <br> Department 32 <br><br> **Reservation I.D.** 280833900024 <br><br> Date: April 6, 2022 <br> Time: 8:30 a.m. <br><br><br> Complaint Filed: May 27, 2021 <br> Trial Date: August 9, 2022 |

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     SUMMARY OF ALLEGATIONS .........................................................................3

        A.      JRK Suffers Massive Losses Resulting from the Presence of a
                Dangerous Physical Substance on Its Properties ......................................3

        B.      JRK's Insurers Wrongfully Deny Coverage ..............................................5

III.    LEGAL STANDARDS ...........................................................................................6

        A.      Motions for Judgment on the Pleadings......................................................7

        B.      Insurance Policy Interpretation ...................................................................8

IV.     ARGUMENT ..........................................................................................................8

        A.      JRK Sufficiently Alleges "Direct Physical Loss or Damage" to Property ..........8

        1.      The Actual Presence of COVID-19 in and on JRK's Insured Properties,
                Which Altered the Properties and Impaired Their Physical Function,
                Constitutes Direct Physical Loss or Damage .........................................9

        2.      JRK's Well-Pleaded Allegations Belie Insurers' Claims that JRK Has
                Not Alleged Direct Physical Loss or Damage ....................................15

        B.      JRK Sufficiently Alleged Civil Authority and Ingress/Egress Coverage ..........19

        C.      JRK Sufficiently Alleged Coverage for Interruption by Communicable
                Disease—Which Does Not Require a Showing of Physical Loss or
                Damage .......................................................................................................20

        D.      No Exclusion in the Policies Bars Coverage at the Pleadings Stage ................22

        E.      Alternatively, JRK Should Be Given Leave to Amend its Complaint or
                Stay Resolution of the Insurers' Motion Pending Guidance From the
                California Supreme Court ...........................................................................24

V.      CONCLUSION .....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*,
No. ATL-L-0703-21, *slip op.* (N.J. Super. Dec. 22, 2021) ................................ 14

*ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*,
17 Cal. App. 4th 1773 (1993) ................................................................. 23

*Am. Airlines, Inc. v. County of San Mateo*,
12 Cal. 4th 1110 (1996) ......................................................................... 7

*Am. Alliance Ins. Co. v. Keleket X-Ray Corp.*,
248 F.2d 920 (6th Cir. 1957) ................................................................. 9

*Arbeiter v. Cambridge Mut. Fire Ins. Co.*,
1996 WL 1250616 (Mass. Super. Mar. 15, 1996) ................................ 9

*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*,
45 Cal. App.4th 1 (1996) ...................................................................... 10

*Ass'n of Apartment Owners of Imperial Plaza v. Fireman's Fund Ins. Co.*,
939 F. Supp. 2d 1059 (D. Haw. 2013) ................................................. 10

*Atwells Realty Corp. v. Scottsdale Ins. Co.*,
2021 WL 2396584 (R.I. Super. June 4, 2021) ................................ 14, 20

*Azalea, Ltd. v. Am. States Ins. Co.*,
656 So.2d 600 (Fla. Dist. Ct. App. 1995) ............................................. 9

*Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*,
720 N.E.2d 622 (Ill. App. Ct. 1999) ..................................................... 9

*Belt Painting Corp. v. TIG Ins. Co.*,
100 N.Y.2d 377 (2003) ......................................................................... 23

*Blarney, Inc. v. Cincinnati Ins. Co.*,
2021 WL 1745905 (Ohio Com. Pl. Mar. 23, 2021) ........................... 14

*Blue Springs Dental Care, LLC v. Owners Ins. Co.*,
488 F. Supp. 3d 867 (W.D. Mo. 2020) ................................................ 13

*Boardwalk Ventures CA, LLC v. Century-Nat'l Ins. Co., et al.*,
No. 20STCV27359 (Cal. Super. Ct. Mar. 18, 2021) .......................... 13

*Brown's Gym, Inc. v. Cincinnati Ins. Co.*,
2021 WL 3036545 (Pa. Com. Pl. July 13, 2021) ........................... 14, 18

*Century Sur. Co. v. Casino W., Inc.*,
329 P.3d 614 (Nev. 2014) ..................................................................... 23

*Chapparells Inc v. Cincinnati Ins. Co.*,
2020 WL 7258117 (Ohio Com. Pl. Oct. 21, 2020) ............................ 13

*Cherokee Nation v. Lexington Ins. Co.*,
    2021 WL 506271 (Okla. Dist. Jan. 28, 2021) ....................................................................... 14

*Choctaw Nation of Okla. v. Lexington Ins. Co.*,
    No. CV-20-42, *slip op.* (Okla. Dist. Feb. 15, 2021) ............................................................. 14

*Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*,
    500 F. Supp. 3d 565 (E.D. Tex. 2021) ................................................................................... 14

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.*,
    1999 WL 619100 (D. Or. Aug. 4, 1999) .................................................................................. 9

*Cooper v. Travelers Indemnity Company of Illinois*,
    2002 WL 32775680 (N.D. Cal. Nov. 4, 2002) ......................................................................... 9

*de Laurentis v. United Servs. Auto. Ass'n*,
    162 S.W.3d 714 (Tex. App. 2005) ........................................................................................... 9

*Derek Scott Williams PLLC v. Cincinnati Ins. Co.*,
    522 F. Supp. 3d 457 (N.D. Ill. 2021) ..................................................................................... 14

*Dino Palmieri Salons, Inc. v. State Auto. Mut. Ins. Co.*,
    2020 WL 7258114 (Ohio Com. Pl. Nov. 17, 2020) ............................................................... 13

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*,
    506 F. Supp. 3d 360 (E.D. Va. 2020) ..................................................................................... 13

*Essex Ins. Co. v. BloomSouth Flooring Corp.*,
    562 F.3d 399 (1st Cir. 2009) .................................................................................................... 9

*Eye Assocs. of N.M., Ltd. v. Cincinnati Ins. Co.*,
    No. D-202-CV-2020-06851, *slip op.* (N.M. Dist. Ct. Jan. 12, 2022) .................................. 14

*Farmers Ins. Co. of Oregon v. Trutanich*,
    858 P.2d 1332 (Or. Ct. App. 1993) .......................................................................................... 9

*Franklin EXC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
    488 F. Supp. 3d 904 (N.D. Cal. 2020) ................................................................................... 23

*Garvey v. State Farm Fire & Cas. Co.*,
    48 Cal. 3d 395 (1989) ............................................................................................................ 18

*Gen. Mills, Inc. v. Gold Medal Ins. Co.*,
    622 N.W.2d 147 (Minn. Ct. App. 2001) .................................................................................. 9

*Gerawan Farming, Inc. v. Lyons*,
    24 Cal. 4th 468 (2000) ............................................................................................................. 7

*Goodwill Indus. of Orange County California v. Philadelphia Indem. Ins. Co.*,
    2021 WL 476268 (Super. Ct. Orange Cty. Jan. 28, 2021) .................................................... 13

*Graff v. Allstate Ins. Co.*,
    54 P.3d 1266 (Wash. Ct. App. 2002) ....................................................................................... 9

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
    2014 WL 6675934 (D.N.J. Nov. 25, 2014) ............................................................................ 20

*Hetrick v. Valley Mut. Ins. Co.*,
   15 Pa. D. & C.4th 271 (Pa. Com. Pl. 1992) ...................................................... 9

*Hotel Adventures, LLC v. Fireman's Fund Ins. Co.*,
   No. 30-2021-01188889-CU-CO-CJC, *slip op.* (Cal. Super. Ct. Sept. 24,
   2021) ................................................................................................................ 13

*Hughes v. Potomac Ins. Co. of D.C.*,
   199 Cal. App. 2d 239 (1962) (abrogated on other grounds) ........................ 10, 11

*Humans & Res., LLC v. Firstline Nat'l Ins. Co.*,
   512 F. Supp. 3d 588 (E.D. Pa. 2021) .............................................................. 13

*Independence Barbershop, LLC v. Twin City Fire Ins. Co.*,
   499 F. Supp. 3d 331 (W.D. Tex. 2020) ............................................................ 13

*Inns-by-the-Sea v. California Mutual Ins. Co.*,
   71 Cal. App. 5th 68 (2021) .......................................................................... *Ibid.*

*Inter-Modal Rail Employees Ass'n v. Burlington N. & Santa Fe Ry. Co.*,
   73 Cal. App. 4th 918 (1999) ............................................................................. 7

*JDS Const. Grp., LLC v. Cont'l Cas. Co.*,
   No. 2020-CH-5678, *slip op.* (Ill. Cir. Ct. Aug. 12, 2021) ................................ 14

*JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*,
   2020 WL 7190023 (D. Nev. Nov. 30, 2020) ..................................................... 13

*K.C. Hopps, Ltd. v. Cincinnati Ins. Co., Inc.*,
   2020 WL 6483108 (W.D. Mo. Aug. 12, 2020) .................................................. 13

*Kingray Inc. v. Farmers Grp., Inc.*,
   523 F. Supp. 3d 1163 (C.D. Cal. 2021) ............................................................ 13

*Koeppel Clark LLC v. Starr Indem. & Liab. Co.*,
   No. 20-02055, *slip op.* (E.D. La. Sept. 30, 2021) ............................................. 14

*Life Time, Inc. v. Zurich Am. Ins. Co.*,
   2021 WL 734669 (D. Minn. Feb. 25, 2021) ...................................................... 14

*Life Time, Inc. v. Zurich Am. Ins. Co.*,
   No. 27-CV-20-10599, *slip op.* (Minn. Dist. Ct. Oct. 7, 2021) .......................... 14

*Live Nation Entertainment, Inc. v. Factory Mutual Ins. Co.*,
   2022 WL 390712 (C.D. Cal. Feb. 3, 2022) ............................................. 13, 15, 21

*MacKinnon v. Truck Ins. Exch.*,
   31 Cal. 4th 635 (2003) ............................................................... 10, 14, 22, 23

*Matzner v. Seaco Ins. Co.*,
   1998 WL 566658 (Mass. Super. Ct. Aug. 12, 1998) .......................................... 9

*McKinley Dev. Leasing Co. Ltd. v. Westfield Ins. Co.*,
   2021 WL 506266 (Ohio Com. Pl. Feb. 9, 2021) ............................................... 14

*Mellin v. N. Sec. Ins. Co.*,
   115 A.3d 799 (N.H. 2015) ............................................................................... 10

*Meza v. S. Cal. Physicians Ins. Exch.*,
  62 Cal. App. 4th 709 (1998) ....................................................................................10

*Minkler v. Safeco Ins. Co.*,
  49 Cal. 4th 315 (2010) ............................................................................................14

*Motorists Mut. Ins. Co. v. Hardinger*,
  131 F. App'x 823 (3d Cir. 2005) ...............................................................................9

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Insurance Co.*,
  187 Cal. App. 4th 766 (2010) .............................................................................15, 16

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
  487 F. Supp. 3d 834 (N.D. Ca. 2020), *aff'd*, 15 F.4th 885 (9th Cir. 2021) ..................16, 17

*NeCo, Inc. v. Owners Ins. Co.*,
  520 F. Supp. 3d 1175 (W.D. Mo. 2021) ...................................................................14

*Netherlands Ins. Co. v. Main Street Ingredients*,
  LLC, 745 F.3d 909 (8th Cir. 2014) ...........................................................................10

*Nev. Prop. 1, LLC v. Factory Mut. Ins. Co.*,
  A-21-831049-B, *slip op.* (Nev. Dist. Ct. Aug. 16, 2021).........................................14

*Nolte v. Cedars-Sinai Medical Center*,
  236 Cal. App. 4th 1401 (2015) ................................................................................12

*North State Deli, LLC v. Cincinnati Ins. Co.*,
  2020 WL 6281507 (N.C. Super. Oct. 9, 2020) ........................................................14

*Novant Health Inc. v. Am. Guarantee & Liab. Ins. Co.*,
  2021 WL 4340006 (M.D.N.C. Sept. 23, 2021)........................................................14

*Optical Servs. USA/JCI v. Franklin Mut. Ins. Co.*,
  2020 WL 5806576 (N.J. Super. Aug. 13, 2020) ......................................................13

*P.F. Chang's China Bistro, Inc. v. Certain Underwriters at Lloyd's of London*,
  2021 WL 818659 (Super. Ct. Los Angeles County Feb. 4, 2021)......................................13

*Palacin v. Allstate Ins. Co.*,
  119 Cal. App. 4th 855 (2004) ...............................................................................7, 15

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*,
  487 F. Supp. 3d 937 (S.D. Cal. 2020)......................................................................16

*Perry Street Brewing Co., LLC v. Mut. of Enumclaw Ins. Co.*,
  2020 WL 7258116 (Wash. Super. Nov. 23, 2020) ..................................................14

*Pillsbury Co. v. Underwriters at Lloyd's, London*,
  705 F. Supp. 1396 (D. Minn. 1989) ...........................................................................9

*Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*,
  2002 WL 31495830 (D. Or. June 18, 2002) ..............................................................9

*Regents of the Univ. of Colo. v. Factory Mut. Ins. Co.*,
  No. 2021CV30206, *slip op.* (Colo. Dist. Ct. Jan. 26, 2022) .................................14

*Reserve Ins. Co. v. Pisciotta*,
    30 Cal. 3d 800 (1982) ..................................................................................8

*Ross Stores Inc., v. Zurich Am. Ins. Co.*,
    No. RG20-084158 (Cal. Super. Ct. July 13, 2021)....................................13

*Rowan Univ. v. Factory Mut. Ins. Co.*,
    No. GLO-L-000250-21, *slip op.* (N.J. Super. Jan. 24, 2022) ..................14

*S. Cal. Edison Co. v. City of Victorville*,
    217 Cal. App. 4th 218 (2013) .......................................................................7

*S. Dental Birmingham LLC v. Cincinnati Ins. Co.*,
    527 F. Supp. 3d 1341 (N.D. Ala. 2021).....................................................14

*Schlamm Stone & Dolan LLP v. Seneca Ins. Co.*,
    800 N.Y.S.2d 356 (Sup. Ct. 2005) (unpublished table decision).................9

*Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Cos.*,
    2021 WL 4029205 (N.H. Super. June 15, 2021) ........................................14

*Scott Craven DDS PC v. Cameron Mut. Ins. Co.*,
    No. 20CY-CV06381, 2021 WL 1115247 (Mo. Cir. Mar. 9, 2021) ....................24

*Selane Product, Inc. v. Continental Casualty Co.*,
    No. 21-55123, 2021 WL 4496471 (9th Cir. Oct. 1, 2021) .................................17

*Sentinel Mgmt. Co. v. N.H. Ins. Co.*,
    563 N.W.2d 296 (Minn. Ct. App. 1997)......................................................9

*Serendipitous, LLC/Melt v. Cincinnati Ins. Co.*,
    537 F. Supp. 3d 1274 (N.D. Ala. 2021).....................................................14

*Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*,
    78 Cal. App. 4th 847 (2000) ......................................................................10

*Sincoff v. Liberty Mut. Fire Ins. Co.*,
    11 N.Y.2d 386 (1962) ................................................................................24

*Snoqualmie Ent. Auth. v. Affiliated FM Ins. Co.*,
    2021 WL 4098938 (Wash. Super. Sept. 3, 2021) ......................................14

*In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*,
    521 F. Supp. 3d 729 (N.D. Ill. 2021) ...................................................14, 18

*Sofias v. Bank of Am.*,
    172 Cal. App. 3d 583 (1985) ........................................................................7

*Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Conn.*,
    2007 WL 464715 (D. Or. Feb. 7, 2007)........................................................9

*State Farm Mut. Auto. Ins. Co. v. Jacober*,
    10 Cal. 3d 193 (1973) ..................................................................................8

*Strickland v. Fed. Ins. Co.*,
    200 Cal. App. 3d 792 (1988) ......................................................................10

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
   478 F. Supp. 3d 794 (W.D. Mo. 2020) ............................................................ 13

*Susan Spath Hegedus, Inc. v. ACE Fire Underwriters Ins. Co.*,
   538 F. Supp. 3d 457 (E.D. Pa. 2021) ............................................................ 14

*SWB Yankees, LLC v. CNA Fin. Corp.*,
   No. 2020-02155, *slip op.* (Pa. Com. Pl. Aug. 4, 2021) .......................................... 14

*Sylvester & Sylvester, Inc. v. State Auto. Mut. Ins. Co.*,
   2021 WL 137006 (Ohio Com. Pl. Jan. 7, 2021) ................................................. 14

*Thor Equities, LLC v. Factory Mut. Ins. Co.*,
   531 F. Supp. 3d 802 (S.D.N.Y. 2021) .......................................................... 14

*TRAVCO Ins. Co. v. Ward*,
   715 F. Supp. 2d 699 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir.
   2013) ................................................................................................ 9

*Travelers Cas. Ins. Co. of Am. V. Geragos & Geragos*,
   495 F. Supp. 3d 848 (C.D. Cal. 2020) ......................................................... 23

*Treo Salon, Inc. v. West Bend Mut. Ins. Co.*,
   538 F. Supp. 3d 859 (S.D. Ill. 2021) .......................................................... 14

*Ungarean, DMD v. CNA*,
   2021 WL 1164836 (Pa. Ct. Comm. Pl. Mar. 25, 2021) .................................. 18, 24

*Urogynecology Specialist of Fla., LLC v. Sentinel Ins. Co.*,
   489 F. Supp. 3d 1297 (M.D. Fla. 2020) ........................................................ 13

*Villa Los Alamos Homeowners Ass'n v. State Farm Gen. Ins. Co.*,
   198 Cal. App. 4th 522 (2011) ................................................................... 23

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*,
   498 F. Supp. 3d 1233 (C.D. Cal. 2020) ....................................................... 23

*W. Fire Ins. Co. v. First Presbyterian Church*,
   437 P.2d 52 (Colo. 1968) (en banc) ............................................................. 9

*Waller v. Truck Ins. Exch., Inc.*,
   11 Cal. 4th 1 (1995) ............................................................................... 8

*Widder v. La. Citizens Prop. Ins. Corp.*,
   82 So.3d 294 (La. App. 4 Cir. 2011), cert. denied, 76 So.3d 1179 (La. 2011) ............... 9

*Yale Univ. v. Cigna Ins. Co.*,
   224 F. Supp. 2d 402 (D. Conn. 2002) .......................................................... 9

## Other Authorities

10A Couch on Insurance § 148:46 (3d ed. 2021) ....................................................... 9

*CAT Claims: Insurance Coverage for Natural and Man-Made Disasters* § 8:6 ........................ 9

Merriam Webster, https://www.merriam-webster.com/dictionary/damage ........................... 10

**Exhibit 138 to Plaintiff's Omnibus Appendix of Evidence in support of its
Opposition to Defendants' Motions for Summary Judgment**
   **Page 1924 of 2921**

Merriam Webster, https://www.merriam-webster.com/dictionary/direct .................................. 10

Merriam Webster, https://www.merriam-webster.com/dictionary/loss .................................... 10

Merriam Webster, https://www.merriam-webster.com/dictionary/physical ............................ 10

Merriam Webster, https://www.merriam-webster.com/dictionary/property ............................ 11

## I.    INTRODUCTION

Since March of 2020, Plaintiff JRK Holdings, Inc.'s ("JRK") business has been devastated by the novel coronavirus and resulting disease COVID-19's invasion into JRK's residential properties and hotels throughout the United States, physically attaching to surfaces and altering the ambient air within these properties, transforming once high-occupancy tourist and lifestyle destinations into unusable and inherently dangerous proverbial ghost towns.

COVID-19 has proven itself to be a noxious and resilient peril.  Not only is COVID-19 highly infectious, it is nearly impossible to eradicate from enclosed spaces without undertaking persistent and permanent alterations.  COVID-19's constant threat and presence at JRK's properties has undermined JRK's ability to attract and maintain high occupancy levels at competitive rents in its residential properties, too, since tenants and prospective residents have been unable to access and safely use JRK's leasing offices, lounges, gyms and activity spaces.  Its infiltration into and around JRK's hotels rendered these properties unfit for lodging, dining, business events, social events, spa treatments, and other services that underpin JRK's core business.  Notwithstanding JRK's significant repair and remediation efforts to attempt to bring its properties back to normal and mitigate the impact of the virus, the financial impact has been staggering.

JRK carefully purchased a comprehensive tower of broad property and business interruption insurance to protect against "all risks" of fortuitous and catastrophic physical loss or damage, as well as its business interruption losses—*including those caused by the presence of communicable disease*.  But when disaster struck, JRK's insurers turned their backs, leaving JRK without the benefits of the coverage for which they had collected substantial premiums.

JRK, like any reasonable business, rightly expected that its policies would cover JRK's losses if it was unable to use its properties due to the actual presence or imminent threat of a dangerous substance.  Indeed, for decades, courts across the country have interpreted such policies in line with JRK's reasonable expectation, holding similar policy language provides coverage for losses resulting from the presence of invisible but destructive substances, such as ammonia and E. coli.  California courts in particular have construed such policies broadly to

cover business losses resulting from even the imminent *threat* of such physical loss or damage.

Nevertheless, JRK's insurers refused to honor their obligation, and now argue that COVID-19 can never constitute physical loss or damage sufficient to trigger coverage under the policies they sold to JRK, including coverage for closure due to civil authority orders or limitations on ingress to or egress from insured property. They maintain this position despite the California Court of Appeal recently holding in *Inns-by-the-Sea v. California Mutual Ins. Co.*, 71 Cal. App. 5th 68 (2021), that a virus *can* result in physical loss or damage if it causes business interruption losses, which is exactly what JRK has alleged here. Ignoring this applicable and persuasive caselaw, the insurers also gloss over their policies' plain language in attempts to shirk their clear obligation to pay under JRK's communicable disease coverage, which unambiguously applies to a subset of JRK's financial losses.

And as a last resort, the insurers point to inapplicable policy exclusions to justify their erroneous denial. The insurers *could* have included an express, industry available virus exclusion in the policies they sold to JRK. But they intentionally did not. Accordingly, their retroactive attempts to rewrite a "pollution and contamination" exclusion that the California Supreme Court has held only applies to traditional environmental pollutants, or a "pathogenic or poisonous material" exclusion that does not apply to communicable diseases, cannot stand. Such attempts violate bedrock principles of insurance policy interpretation under California law.

Finally, the insurers rely on exclusions for "loss of market" and "loss of use" to claim JRK's recovery is precluded. But these exclusions only apply to bar recovery when a loss of market or loss of use is untethered to any physical impact to property, such as an unexpected drop in demand for a product due to general market forces. That is not what happened here. And the insurers' over-broad interpretation to the contrary has already been rejected by numerous courts who have concluded such a reading would swallow the policies' physical loss or damage coverage entirely, rendering it illusory.

At bottom, JRK has sufficiently alleged its entitlement to coverage under numerous policy provisions to survive the pleadings stage. To conclude otherwise would require the Court to inappropriately resolve disputed issues of fact without an evidentiary record and risk violating

California's parol evidence rule.  Accordingly, the Insurers' motion for judgment on the pleadings should be denied.

## II.     SUMMARY OF ALLEGATIONS

### A.     JRK Suffers Massive Losses Resulting from the Presence of a Dangerous Physical Substance on Its Properties

JRK owns, develops, manages, and leases modern, renovated apartments and hotels in California, Colorado, Connecticut, Florida, Georgia, Illinois, Massachusetts, Maryland, Michigan, Minnesota, North Carolina, Nebraska, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Texas, Virginia, and Washington (the "Insured Properties"). Compl. ¶¶ 2, 68.  In early 2020, the coronavirus pervaded the Insured Properties, attaching to surfaces and altering the air within, rendering the Insured Properties unsafe and effectively useless for their intended function.  *Id*. ¶¶ 3–5, 52–57, 70.  Although the virus is not visible, it is a physical, tangible substance with numerous modes of transmission.  *Id*. at ¶¶ 41–47, 53.  For example, aerosol transmission, such as the discharge of viral droplets during a cough or sneeze, can cause infections both in the near vicinity of an infected person, as well as throughout a property when particles are pulled into air circulation systems.  *Id*. at ¶¶ 43–45.  These respiratory droplets also deposit on surfaces and objects, causing them to become unsafe and unusable for extended periods of time absent intervention.  *Id*. ¶ 46.  The virus has continuously threatened and been reintroduced into and onto the air and surfaces of the Insured Properties.  *Id*. ¶¶ 52, 56.

Moreover, unlike other substances, like dust, the virus cannot simply be wiped away or removed with routine cleaning and disinfecting measures.  *Id*. ¶ 58–61.  Nor is enhanced ventilation sufficient to reduce the ever-present risk to property and persons that exists when an infected person enters JRK's indoor premises, causing reintroduction and further damage.  *Id*. ¶¶ 60–61.  Instead, physical alterations to property, far beyond routine cleaning or improved ventilation—measures that JRK has been forced to undertake at its Insured Properties—are necessary to combat the spread of the virus and reduce its damaging impact to its physical environment.  *Id*. ¶ 61.  And even despite JRK's best efforts, "coronavirus continues to be

present in and cause physical loss or damage to JRK's properties," including by causing the loss of function and purpose of the JRK properties. *Id*. ¶¶ 7, 109.

The physical loss and damage caused by the virus has also resulted in various governmental authorities issuing orders to protect property and persons, which resulted in the closure of JRK's hotels and severely limited access to JRK's apartments, amenity spaces, and surrounding properties (the "Orders"). *Id*. ¶¶ 5, 6, 63, 65, 66.

For instance, in Los Angeles, California, where JRK is headquartered, Mayor Eric Garcetti issued a stay-at-home order closing non-essential business and directing residents to remain home except for limited, essential purposes. The Order recognized that "the COVID-19 virus . . . is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time." *Id*. ¶ 64. Governor Gavin Newsom also signed Orders closing non-essential businesses and severely limiting the ability of people to travel to and around the state of California, in which JRK has more than ten insured apartment buildings and the insured Hotel Oceana Santa Monica. *Id.* ¶ 65. As the pandemic has continued, these Orders have been renewed and amended. *Id*. ¶ 67.[1]

The physical presence of the virus and the resulting Orders caused direct physical loss or damage to JRK's Insured Properties, resulting in significant losses, which continue to this day. *Id*. ¶¶ 1, 66, 70, 73, 76, 78. Indeed, the main source of revenue for JRK's insured hotels is guests coming to its properties and booking hotel rooms, purchasing food, beverages, spa services, and other amenities. *Id*. ¶¶ 47, 78. Beginning in March 2020, however, due to the environmental risks posed by being in and around JRK's Insured Properties, JRK's hotel rooms sat empty, generating no revenue and resulting in devastating losses. *Id*. ¶ 6. JRK had to restrict access to shared spaces and amenities in its insured apartment properties, too, and many residents moved out or failed to renew leases. *Id.* JRK also incurred additional covered expenses from the

---

[1] Since the filing of JRK's Complaint, multiple new strains of the coronavirus have been identified, resulting in new waves of infection of various severity and potential for damage, resulting in new governmental orders and restrictions.

alterations that JRK made to help combat the destruction to its premises the spread of COVID-19 caused. *Id*. ¶¶ 61, 96, 99.

**B.    JRK's Insurers Wrongfully Deny Coverage**

JRK had the foresight to purchase $250 million of property and business interruption insurance to cover precisely the kinds of losses that it suffered and continues to suffer due to COVID-19 (the "Policies"). *Id*. ¶¶ 81–83; GENERALSTAR00001.[2]  The Policies broadly cover "[a]ll risks of direct physical loss or damage," and resulting business interruption losses *Id.* ¶ 83. The Policies do not define the phrase "direct physical loss or damage" (*id*. ¶ 84) and provide numerous relevant coverages, including the following:

- The Property Damage coverage in the Policies covers physical loss or damage to certain real property in which the Insured has an insurable interest and personal property owned by the Insured. *Id*. ¶ 83.

- The Business Interruption coverage in the Policies covers business interruption loss resulting from direct physical loss or damage to insured property, including loss of Rental Value/Rental Income. *Id*. ¶¶ 86–88; GENERALSTAR00000060.

- The Business Interruption coverage also covers "Extra Expense" loss or "the excess of the total cost during the period of restoration of the damaged property chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss or damage occurred." Compl. ¶ 87; GENERALSTAR00000060.

- The Policies include Interruption by Civil or Military Authority coverage, which covers losses sustained when access to real or personal property is impaired by an order of civil or military authority as a result of direct physical loss, damage, or destruction of the type insured against. Compl. ¶ 90; GENERALSTAR00000062.

- The Policies' Ingress/Egress coverage insures losses sustained when ingress to or egress from insured premises is impaired as a

---

[2] Unless stated otherwise, the Insurers' policies all offer the same basic coverage. Thus, and pursuant to the parties' stipulation, JRK cites to the General Star policy (Ex. 1 to Joint Stipulation Regarding Briefing Schedule and Citations to Policy Provisions) as an exemplar. To the extent certain policies diverge, such as in connection with particular exclusions, JRK will identify those distinctions as appropriate.

direct result of a peril insured against.  Compl. ¶ 92; GENERALSTAR00000062.

Critically, the Policies also provide specific coverage for "Interruption by Communicable Disease," which includes the Actual Loss Sustained and Extra Expense incurred if access to an Insured Property is "limited, restricted, or prohibited as a result of: (a) An order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or (b) A decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease."[3]  Compl. ¶ 93; GENERALSTAR00000062.

Given the Policies' broad scope of coverage, and the fact that Insurers deliberately omitted a widely available exclusion for losses resulting from viruses, JRK reasonably expected the Policies would cover its pandemic-related losses.  Compl. ¶ 97.  However, when JRK submitted a claim for coverage to the Insurers, the Insurers denied coverage.  Compl. ¶¶ 108, 117.  Ignoring COVID-19's presence and impact on JRK's properties, the Insurers argue that the presence of *persons* infected with COVID-19 does not constitute direct physical loss or damage to property.  In their Motion, the Insurers also cite two plainly inapplicable exclusions.  First, the Insurers cite a "Pollutants or Contaminants" exclusion in their policies, despite this exclusion applying only to traditional environmental and industrial pollution and contamination that causes damage after its release into the environment—not a naturally occurring virus.  Second, certain Insurers relied on a "Pathogenic or Poisonous Materials" exclusion in their policies that does not apply to or mention viruses.

As a result of the Insurers' coverage denials and delay, JRK was forced to bring this lawsuit to obtain the coverage to which it is entitled.

## III.   <u>LEGAL STANDARDS</u>

---

[3] "Communicable disease" includes COVID-19, as it is defined as "a disease which is transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges."  Compl. ¶ 93; GENERALSTAR00000063.

A.    **Motions for Judgment on the Pleadings**

The standard for reviewing a motion for judgment on the pleadings is "essentially the same as that applicable to a general demurrer." *S. Cal. Edison Co. v. City of Victorville*, 217 Cal. App. 4th 218, 227 (2013). Thus, a defendant may not prevail on a motion for judgment on the pleadings unless it can show a complaint fails to state any cause of action. *See Sofias v. Bank of Am.*, 172 Cal. App. 3d 583, 586 (1985). "A trial court's determination of a motion for judgment on the pleadings accepts as true the factual allegations that the plaintiff makes . . . [and] gives them a liberal construction." *Gerawan Farming, Inc. v. Lyons*, 24 Cal. 4th 468, 515–16 (2000) (citations omitted). In this regard, "[a]ll facts alleged in the complaint are deemed admitted, and [courts] give the complaint a reasonable interpretation by reading it as a whole and all of its parts in their context." *Inter-Modal Rail Employees Ass'n v. Burlington N. & Santa Fe Ry. Co.*, 73 Cal. App. 4th 918, 924 (1999) (quoting *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 198 (1996)). Accordingly, a court's "primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under *any* theory." *Am. Airlines, Inc. v. County of San Mateo*, 12 Cal. 4th 1110, 1118 (1996) (citation omitted) (emphasis added); *see also Davis*, 57 Cal. App. 5th at 926.

In the context of insurance coverage, it is the insurer's "burden on its motion for judgment on the pleadings to establish *conclusively* an interpretation of the policy which negates the construction expressly alleged in the body of the [complaint]." *Columbia Cas.*, 231 Cal. App. 3d at 471 (emphasis added). "Given the liberality of California's parol evidence rule," a motion for judgment on the pleadings that "rel[ies] on the terminology of an incorporated complex contract to negate an express allegation of [the policy's] meaning is highly suspect." *Id.* at 470. Thus, an insurer's ability to establish that the policy "conclusively negates the express allegation in the pleading . . . is unlikely because of the inevitable prospect that parol evidence may lead to an interpretation of the contract consistent with the pleading's express allegation." *Id.*; *see also Palacin v. Allstate Ins. Co.*, 119 Cal. App. 4th 855, 862 (2004) (absent a showing that "policy language supporting [the insurer's] position is so clear that parol evidence would be inadmissible to refute it," a court "must overrule the demurrer

and permit the parties to litigate the issue in a context that permits the development and presentation of a factual record, e.g., summary judgment or trial").

### B.    Insurance Policy Interpretation

When interpreting insurance contracts, courts "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) (internal citations and quotation marks omitted). The parties' mutual intent at the time of contracting "is to be inferred, if possible, solely from the written provisions of the contract." *Id.* Policy language evincing "clear and explicit meaning" will control and terms must be construed according to their "ordinary and popular sense." *Id.* "[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates." *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807–08 (1982) (internal citations and quotation marks omitted).

To find in favor of a policyholder, the court "need not determine that the . . . interpretations proposed by the insurer are not possible[.]" *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 202 (1973). "Instead, even assuming that the insurer's suggestions are reasonable interpretations," the court "must nonetheless affirm . . . coverage so long as there is any other reasonable interpretation under which recovery would be permitted." *Id.* at 202–03.

## IV.   ARGUMENT

### A.    <u>JRK Sufficiently Alleges "Direct Physical Loss or Damage" to Property</u>

The Policies broadly cover JRK for "all risks" of "direct physical loss or damage" unless otherwise excluded. Compl. ¶ 83. JRK's robust allegations, which must be accepted as true at this stage, sufficiently plead "physical loss or damage" under the plain terms of the Policies and applicable law. JRK has alleged in exacting detail that a physical, resilient, lethal substance pervaded its Insured Properties, and altered the air and surfaces in the Insured Properties, rendering them functionally useless for their intended and insured purpose. *Id.* ¶¶ 3–5, 52–57, 70. Therefore, the Insurers' motion should be denied.

1.    **The Actual Presence of COVID-19 in and on JRK's Insured**

**Properties, Which Altered the Properties and Impaired Their**

**Physical Function, Constitutes Direct Physical Loss or Damage**

For decades, courts across the country have interpreted the term "direct physical loss or

damage" to encompass the loss of functionality of insured property as a result of the presence

of a noxious, physical substance in and on the property.  *See CAT Claims: Insurance Coverage*

*for Natural and Man-Made Disasters* § 8:6 Catastrophe Claims ("Courts have allowed

coverage when the actual, demonstrable presence of a contaminant renders the property

uninhabitable or unfit for its intended use for a period of time.") (emphasis added); Steven Plitt

et al., Generally; "Physical" loss or damage, 10A Couch on Insurance § 148:46 (3d ed. 2021)

("persistent chemical or biological agent, not otherwise excluded from coverage, may cause

'direct physical loss' if it renders insured property unusable," even though agent may be

gaseous, microscopic, or invisible; covered losses are not confined to obvious physical changes

to building caused by fire or bad weather).[4]

---

[4] *See e.g.*, *Am. Alliance Ins. Co. v. Keleket X-Ray Corp.*, 248 F.2d 920 (6th Cir. 1957) (radioactive dust and radon gas); *W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (en banc) (gasoline vapors); *Pillsbury Co. v. Underwriters at Lloyd's, London*, 705 F. Supp. 1396 (D. Minn. 1989) (health-threatening organisms); *Hetrick v. Valley Mut. Ins. Co.*, 15 Pa. D. & C.4th 271 (Pa. Com. Pl. 1992) (oil); *Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332 (Or. Ct. App. 1993) (methamphetamine fumes); *Azalea, Ltd. v. Am. States Ins. Co.*, 656 So.2d 600 (Fla. Dist. Ct. App. 1995) (unknown pollutant); *Arbeiter v. Cambridge Mut. Fire Ins. Co.*, 1996 WL 1250616 (Mass. Super. Mar. 15, 1996) (oil fumes); *Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296 (Minn. Ct. App. 1997) (asbestos); *Matzner v. Seaco Ins. Co.*, 1998 WL 566658 (Mass. Super. Ct. Aug. 12, 1998) (carbon monoxide); *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 720 N.E.2d 622 (Ill. App. Ct. 1999), as modified on denial of reh'g (Dec. 3, 1999) (asbestos); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, 1999 WL 619100 (D. Or. Aug. 4, 1999) (mold or mildew); *Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147 (Minn. Ct. App. 2001) (food treated with unapproved pesticide); *Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d 402 (D. Conn. 2002) (asbestos and lead); *Graff v. Allstate Ins. Co.*, 54 P.3d 1266 (Wash. Ct. App. 2002) (methamphetamine vapors); *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, 2002 WL 31495830 (D. Or. June 18, 2002) (mold); *Cooper v. Travelers Indem. Co. of Ill.*, 2002 WL 32775680, at *5 (N.D. Cal. Nov. 4, 2002) (coliform bacteria and E. coli); *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005) (E. coli); *de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714 (Tex. App. 2005) (mold); *Schlamm Stone & Dolan LLP v. Seneca Ins. Co.*, 800 N.Y.S.2d 356 (Sup. Ct. 2005) (unpublished table decision) (dust and noxious particles); *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Conn.*, 2007 WL 464715 (D. Or. Feb. 7, 2007) (lead); *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009) (odors); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013) (toxic gas); *Widder v. La. Citizens Prop. Ins. Corp.*, 82 So.3d 294 (La. App. 4 Cir. 2011), cert. denied, 76 So.3d 1179 (La. 2011) (lead contamination); and *Ass'n of Apartment Owners of Imperial Plaza v. Fireman's Fund*

Indeed, for 60 years, California courts have held that even the imminent *threat* of physical loss or damage resulting in losses can trigger coverage, irrespective of a visible or tangible alteration to property.  *See e.g.*, *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co*., 45 Cal. App.4th 1 (1996) (the mere presence of asbestos in an insured's building constituted "property damage" that amounted to "physical injury"—even though the insured's building was not structurally altered—because the asbestos was a "health hazard"); *Hughes v. Potomac Ins. Co. of D.C.*, 199 Cal. App. 2d 239, 248–49 (1962) (abrogated on other grounds) (coverage when landslide left home at risk of imminent collapse); *Strickland v. Fed. Ins. Co.*, 200 Cal. App. 3d 792, 800–801 (1988) (coverage based on "significant risk" of home collapsing); *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc*., 78 Cal. App. 4th 847, 865 (2000) (intermingling of unwanted substances with otherwise undamaged goods).

This long-standing interpretation is consistent with the plain language of the Policies JRK purchased, which must be read "in their ordinary and popular sense," *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003), and consistent with dictionary definitions.  *Meza v. S. Cal. Physicians Ins. Exch*., 62 Cal. App. 4th 709, 712 (1998).

The ordinary meaning of "direct" includes "natural, straightforward" and a "close logical, causal, or consequential relationship."[5]  "Physical" is defined as "of or relating to material things."[6] "Loss" includes "partial or complete deterioration or absence of physical capability or function,"[7] "Damage" is defined as "loss or harm resulting from injury to person, property, or reputation."[8] "Property" means "something owned or possessed specifically: a piece of real estate; the exclusive right to possess, enjoy, and dispose of a thing: ownership; something to

---

*Ins. Co.*, 939 F. Supp. 2d 1059 (D. Haw. 2013) (arsenic); *Netherlands Ins. Co. v. Main Street Ingredients*, LLC, 745 F.3d 909 (8th Cir. 2014) (salmonella in food); *Mellin v. N. Sec. Ins. Co*., 115 A.3d 799 (N.H. 2015) (odor of cat urine).

[5] "Direct," Merriam Webster, https://www.merriam-webster.com/dictionary/direct.

[6] "Physical," Merriam Webster, https://www.merriam-webster.com/dictionary/physical.

[7] "Loss," Merriam Webster, https://www.merriam-webster.com/dictionary/loss.

[8] "Damage," Merriam Webster, https://www.merriam-webster.com/dictionary/damage.

which a person or business has legal title."[9]  Thus, taken together, the ordinary meaning of the term "direct physical loss or damage" is simply that a "material thing" has impaired the physical function or capability of the insured's property, or a "material thing" has injured the property sufficiently to impair "value or usefulness."  Put differently, based on customary dictionary definitions and common meaning, a reasonable policyholder purchasing property and business interruption insurance covering losses from "physical loss or damage" to its properties would conclude that coverage applies where the insured is unable to use its properties for their intended function due to pervasion by a dangerous, physical substance, and/or the imminent threat thereof.  Given this accepted meaning of the phrase "physical loss or damage," it is unsurprising that the California Court of Appeal recently recognized that a policyholder can sufficiently allege direct physical loss or damage by alleging—as JRK has here—that the COVID-19 virus was on insured property and caused the insured's losses.  That is, "physical loss or damage" may be shown by alleging "damage that is not structural, but instead is caused by a noxious substance or an odor" or other "invisible substance or biological agent."  *Inns*, 71 Cal. App. 5th at 706 n.19, 710 n.21.  To support this conclusion, the *Inns* court cited California authority holding that an "all risks" policy that covers "physical loss or damage" is triggered by a wide range of physical perils, including perils that cause no "tangible injury to the physical structure itself."  *Id.* (*citing Hughes v. Potomac Ins. Co. of D.C.*, 199 Cal. App. 2d 239, 248 (1962)).

Although *Inns* ultimately ruled for the insurer, it did so not because COVID-19 cannot cause physical loss or damage as a matter of law, as the Insurers wrongly argue here, but because the complaint in *Inns* did not allege losses caused by the presence of the virus, and because the particular government order that resulted in the policyholder's losses was not issued as a result of physical loss or damage to property.  *Id.* at 699.  In fact, the *Inns* court held that an insured can "successfully allege" that the COVID-19 virus caused "physical loss or damage" by pleading, for instance, that it closed due to presence of the virus on site, requiring the property to be sanitized.  *Id.* at 704–705.

---

[9] "Property," Merriam Webster, https://www.merriam-webster.com/dictionary/property.

Here, JRK has alleged *in detail* that its losses were caused both by the actual presence of the virus at its properties and Orders that were issued as a direct result of the virus's propensity to cause physical loss or damage to property.  JRK's allegations regarding the nature, presence, and impact of the virus on the Insured Properties are detailed, specific and supported by citations to scientific evidence.  Indeed, JRK has plausibly alleged that:

- The virus is a dangerous, tangible, physical substance that attaches to and alters property and air within property. Compl. ¶ 53;

- The virus has numerous modes of transmission, including through asymptomatic individuals.  *Id*. ¶¶ 41–51;

- The virus was physically present on the surfaces and air at JRK's Insured Properties, was continuously re-introduced to the Insured Properties, and imminently threatened the Insured Properties. *Id.* ¶¶ 52, 109;

- JRK made significant and costly efforts to repair, alter and remediate its property in response to the presence of the virus, but the virus is not susceptible to routine cleaning, and even extensive cleaning does not eliminate the virus entirely or the risks of its reintroduction. *Id*. ¶ 61;

- The actual and imminent presence of the virus on JRK's Insured Properties and nearby properties resulted in the issuance of the Orders, which resulted in the temporary closure of the Insured Properties, and imposed limitations and restrictions on JRK's operations. *Id.* ¶¶ 76–77.  For example, the Los Angeles order that resulted in JRK's losses was issued, in its own words, because "the COVID-19 virus . . . is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time." *Id*. ¶ 64.

- The actual presence of the virus, and the resulting Orders, rendered the Insured Properties unusable for their insured and intended function, resulting in significant business interruption losses. *Id* ¶¶ 3, 57, 70.

Therefore, under *Inns* and the plain language of the Policies, JRK has sufficiently and plausibly alleged physical loss or damage.[10]  *See Nolte v. Cedars-Sinai Medical Center*, 236 Cal. App. 4th 1401, 1406 (2015) (noting that even an "improbable alleged fact" must be accepted as true at the

---

[10] The *Inns* analysis and its ultimate conclusion are deeply flawed for numerous reasons, including that it resolved disputed issues of causation as a matter of law, resolved issues of fact against the policyholder at the demurrer stage, and invented from whole cloth a requirement that to trigger coverage a governmental order must specifically identify particular insured property— a result that would have devastating effects in connection with insurance coverage in California for losses occasioned, for example, by evacuation orders in the context of wildfires.  A petition for review is currently pending before the California Supreme Court.  Regardless, even under *Inns*' flawed analysis, the Insurers' motion must be denied.

pleadings stage).

Tellingly, multiple California state and federal courts and courts applying California law have denied insurers' motions to dismiss under similar circumstances.[11]  *See P.F. Chang's China Bistro, Inc. v. Certain Underwriters at Lloyd's of London*, 2021 WL 818659 (Super. Ct. Los Angeles County Feb. 4, 2021) (deferring to policyholder's reasonable interpretation of the contract); *Boardwalk Ventures CA, LLC v. Century-Nat'l Ins. Co., et al.*, No. 20STCV27359 (Cal. Super. Ct. Mar. 18, 2021) (finding insurer could not show its interpretation of the policy unambiguously negated the insured's construction); *Goodwill Indus. of Orange County California v. Philadelphia Indem. Ins. Co.*, 2021 WL 476268 (Super. Ct. Orange Cty. Jan. 28, 2021); *Ross Stores Inc., v. Zurich Am. Ins. Co.*, No. RG20-084158 (Cal. Super. Ct. July 13, 2021); *Kingray Inc. v. Farmers Grp., Inc.*, 523 F. Supp. 3d 1163, 1173 (C.D. Cal. 2021) ("Plaintiff compellingly contends that under both California and New York law, physical alteration to property is not necessary to constitute a physical loss."); *Live Nation Entertainment, Inc. v. Factory Mutual Ins. Co.*, 2022 WL 390712 (C.D. Cal. Feb. 3, 2022) (noting that California federal courts have reached different outcomes on the issue, but holding "[t]he position that the presence of COVID-19 is a physical intrusion that affects the integrity of a property is the more persuasive one"); *Hotel Adventures, LLC v. Fireman's Fund Ins. Co.*, No. 30-2021-01188889-CU-CO-CJC, *slip op.* (Cal. Super. Ct. Sept. 24, 2021).  So, too, have courts across the country.[12]

---

[11] Insurers attach as Appendix B to their Motion a list of California federal and state court decisions dismissing pandemic-related coverage cases.  These cases pre-date *Inns*, are not controlling on this Court, and many are distinguishable factually.  Further, as listed below, many California state and federal courts have reached the opposite conclusion.

[12] *See, e.g., Urogynecology Specialist of Fla., LLC v. Sentinel Ins. Co.*, 489 F. Supp. 3d 1297 (M.D. Fla. 2020); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867 (W.D. Mo. 2020); *K.C. Hopps, Ltd. v. Cincinnati Ins. Co., Inc.*, 2020 WL 6483108 (W.D. Mo. Aug. 12, 2020); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020); *Independence Barbershop, LLC v. Twin City Fire Ins. Co.*, 499 F. Supp. 3d 331 (W.D. Tex. 2020); *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.,* 506 F. Supp. 3d 360 (E.D. Va. 2020); *Optical Servs. USA/JCI v. Franklin Mut. Ins. Co.*, 2020 WL 5806576 (N.J. Super. Aug. 13, 2020); *Chapparells Inc v. Cincinnati Ins. Co.*, 2020 WL 7258117 (Ohio Com. Pl. Oct. 21, 2020); *Dino Palmieri Salons, Inc. v. State Auto. Mut. Ins. Co.*, 2020 WL 7258114 (Ohio Com. Pl. Nov. 17, 2020); *JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*, 2020 WL 7190023 (D. Nev. Nov. 30, 2020); *Wagner Shoes, LLC v. Auto-Owners Ins.* Co., 2020 WL 7260032 (N.D. Ala. Dec. 8, 2020); *Humans & Res., LLC v. Firstline Nat'l Ins. Co.*,

**Exhibit 138 to Plaintiff's Omnibus Appendix of Evidence in support of its Opposition to Defendants' Motions for Summary Judgment**

**Page 1938 of 2921**

These cases unequivocally establish that JRK's interpretation of the term "physical loss or damage" is, at the very least, reasonable and, thus, controls at the pleadings stage. *See Minkler v. Safeco Ins. Co.*, 49 Cal. 4th 315, 332 (2010) (noting that differing constructions of the same policy language by different courts requires that such policy language "must be resolved, if possible, in a way that preserves the objectively reasonable coverage expectations of the insured seeking coverage."); *MacKinnon*, 31 Cal. 4th at 655 ("even assuming that the insurer's suggestions are reasonable interpretations which would bar recovery by the claimants," coverage

512 F. Supp. 3d 588 (E.D. Pa. 2021); *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 500 F. Supp. 3d 565 (E.D. Tex. 2021); *Sylvester & Sylvester, Inc. v. State Auto. Mut. Ins. Co.*, 2021 WL 137006 (Ohio Com. Pl. Jan. 7, 2021); *McKinley Dev. Leasing Co. Ltd. v. Westfield Ins. Co.*, 2021 WL 506266 (Ohio Com. Pl. Feb. 9, 2021); *Life Time, Inc. v. Zurich Am. Ins. Co.*, 2021 WL 734669 (D. Minn. Feb. 25, 2021); *NeCo, Inc. v. Owners Ins. Co.*, 520 F. Supp. 3d 1175 (W.D. Mo. 2021); *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729 (N.D. Ill. 2021); *Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 457 (N.D. Ill. 2021); *S. Dental Birmingham LLC v. Cincinnati Ins. Co.*, 527 F. Supp. 3d 1341 (N.D. Ala. 2021); *Blarney, Inc. v. Cincinnati Ins. Co.*, 2021 WL 1745905 (Ohio Com. Pl. Mar. 23, 2021); *Thor Equities, LLC v. Factory Mut. Ins. Co.*, 531 F. Supp. 3d 802 (S.D.N.Y. 2021); *Serendipitous, LLC/Melt v. Cincinnati Ins. Co.*, 537 F. Supp. 3d 1274 (N.D. Ala. 2021); *Susan Spath Hegedus, Inc. v. ACE Fire Underwriters Ins. Co.*, 538 F. Supp. 3d 457 (E.D. Pa. 2021); *Treo Salon, Inc. v. West Bend Mut. Ins. Co.*, 538 F. Supp. 3d 859 (S.D. Ill. 2021); *Atwells Realty Corp. v. Scottsdale Ins. Co.*, 2021 WL 2396584 (R.I. Super. June 4, 2021); *Brown's Gym, Inc. v. Cincinnati Ins. Co.*, 2021 WL 3036545 (Pa. Com. Pl. July 13, 2021); *SWB Yankees, LLC v. CNA Fin. Corp.*, No. 2020-02155, *slip op.* (Pa. Com. Pl. Aug. 4, 2021); *JDS Const. Grp., LLC v. Cont'l Cas. Co.*, No. 2020-CH-5678, *slip op.* (Ill. Cir. Ct. Aug. 12, 2021); *Nev. Prop. 1, LLC v. Factory Mut. Ins. Co.*, A-21-831049-B, *slip op.* (Nev. Dist. Ct. Aug. 16, 2021); *Novant Health Inc. v. Am. Guarantee & Liab. Ins. Co.*, 2021 WL 4340006 (M.D.N.C. Sept. 23, 2021); *Koeppel Clark LLC v. Starr Indem. & Liab. Co.*, No. 20-02055, *slip op.* (E.D. La. Sept. 30, 2021); *Life Time, Inc. v. Zurich Am. Ins. Co.*, No. 27-CV-20-10599, *slip op.* (Minn. Dist. Ct. Oct. 7, 2021); *AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*, No. ATL-L-0703-21, *slip op.* (N.J. Super. Dec. 22, 2021); *Eye Assocs. of N.M., Ltd. v. Cincinnati Ins. Co.*, No. D-202-CV-2020-06851, *slip op.* (N.M. Dist. Ct. Jan. 12, 2022) (motion to dismiss denied for reasons stated on the record and arguments raised in briefing that loss of use can constitute physical loss or damage); *Rowan Univ. v. Factory Mut. Ins. Co.*, No. GLO-L-000250-21, *slip op.* (N.J. Super. Jan. 24, 2022); *Regents of the Univ. of Colo. v. Factory Mut. Ins. Co.*, No. 2021CV30206, *slip op.* (Colo. Dist. Ct. Jan. 26, 2022). Other courts have even granted policyholders' motions for summary judgment, finding, at a minimum, that the insureds alleged "direct physical loss or damage" as a matter of law. *See, e.g.*, *North State Deli, LLC v. Cincinnati Ins. Co.*, 2020 WL 6281507 (N.C. Super. Oct. 9, 2020); *Perry Street Brewing Co., LLC v. Mut. of Enumclaw Ins. Co.*, 2020 WL 7258116 (Wash. Super. Nov. 23, 2020); *Cherokee Nation v. Lexington Ins. Co.*, 2021 WL 506271 (Okla. Dist. Jan. 28, 2021); *Choctaw Nation of Okla. v. Lexington Ins. Co.*, No. CV-20-42, *slip op.*, (Okla. Dist. Feb. 15, 2021); *Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Cos.*, 2021 WL 4029205 (N.H. Super. June 15, 2021); *Snoqualmie Ent. Auth. v. Affiliated FM Ins. Co.*, 2021 WL 4098938 (Wash. Super. Sept. 3, 2021).

still exists "so long as there is any other reasonable interpretation under which recovery would be permitted in the instant cases."); *Live Nation*, 2022 WL 390712 at *8 (holding "it cannot be determined as a matter of law that the presence of COVID-19 in Plaintiff's properties could not cause 'physical loss or damage' to property" and noting "on a motion for judgment on the pleadings, factual issues cannot be resolved . . . ).

In short, because Insurers cannot "establish conclusively" that the Policies' language "unambiguously negates beyond reasonable controversy the construction alleged in the body of the complaint," their Motion cannot be sustained. *Palacin v. Allstate Ins. Co.*, 119 Cal. App. 4th 855, 862 (2004).

> **2.      JRK's Well-Pleaded Allegations Belie Insurers' Claims that JRK Has Not Alleged Direct Physical Loss or Damage**

Unable to meet their burden, the Insurers instead misconstrue JRK's allegations, misstate applicable law, and either ignore or misapply the plain terms of the Policies.

**First**, the Insurers contend without support that JRK's "conclusory" allegations fail to allege losses caused by "distinct, demonstrable, physical alteration to, or a permanent dispossession of, its property." Mot. at 7. As set out above, however, no such requirement exists for JRK to state a valid claim for physical loss or damage under California law, and JRK's allegations are anything but conclusory. But even setting this aside, it is a matter of common sense that the coronavirus is a physical substance that pervades property, attaches to surfaces, tangibly alters the air and renders indoor spaces dangerous. This reality has dominated the lives of billions of people for nearly two years and has resulted in millions of deaths. Thus, the notion that JRK's complaint fails because of some purported lack of specific allegations regarding the nature and impact of the coronavirus' alterations to Insured Properties is not only contrary to JRK's complaint, but is also disconnected from reality.

Further, the Insurers' assertion that even the actual presence of coronavirus on insured property cannot cause physical loss or damage alone rests on factually inapposite California state cases or those having nothing to do with whether noxious substances can cause physical loss or damage. For instance, in *MRI Healthcare Center of Glendale, Inc. v. State Farm General*

*Insurance Co.*, 187 Cal. App. 4th 766, 778–779 (2010), the Court of Appeal not only interpreted a narrower insuring agreement applying only to "accidental physical loss"—but it based its conclusion that a policyholder had suffered a mere "loss of use" on the fact that no outside physical peril impacted or threated to impact insured property. Rather, the insured merely claimed its MRI machine was turned off and would not turn back on. What the *MRI* court did make clear, however, was that coverage would have been triggered in the case of "an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property *causing it to become unsatisfactory for future* use or requiring that repairs be made to make it so." *Id.* (emphasis added). That is what JRK has alleged here.

The Insurers otherwise rely on a handful of *federal* cases that preceded *Inns*, which made clear that under California law the presence of a virus *can* cause physical loss or damage. *See* Mot. at 6-8. JRK's policies are governed by California law, not unpersuasive federal trial court decisions guessing at what California law will be. Besides, these federal cases are deeply flawed, and rely on a standard of physical loss or damage and a pleading standard that have no basis in California law or the Policies. For example, *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, 487 F. Supp. 3d 937 (S.D. Cal. 2020), applied a "physical change" and "permanent dispossession" standard that is inconsistent with California law and the plain terms of the Policies, and relied heavily on federal district court cases, despite purportedly applying California law. The Insurers' remaining federal cases rely heavily on *MRI Healthcare* in support of their holdings that the policyholder failed to allege physical loss or damage. As discussed, however, *MRI Healthcare* involved different policy language and did not involve any physical impact to property. Even *Inns* recognized this fact, citing *MRI Healthcare* in passing in a section of the decision dealing with the policyholder's alternative argument that it had suffered physical loss or damage even if the virus was *not* on its property, which is not the case here.

In any event, to the extent these federal district court decisions provide any persuasive value, they have been superseded by recent decisions from the Ninth Circuit Court of Appeals, which support JRK's position. Specifically, in *Mudpie, Inc. v. Travelers Casualty Insurance Co. of America*, the Ninth Circuit recognized that a virus could cause physical loss or damage, but

affirmed in favor of the insurer because the policyholder "did not allege that COVID-19 was present in its storefront premises during the relevant period." 15 F.4th 885, 889 (9th Cir. 2021). Similarly, in *Selane Product, Inc. v. Continental Casualty Co.*, No. 21-55123, 2021 WL 4496471, at *1 (9th Cir. Oct. 1, 2021), in finding that the policyholder failed to allege physical loss or damage, the Ninth Circuit observed that the policyholder "did not allege that SARS-CoV-2 was present on its property to cause any damage."[13] Here, however, JRK has expressly alleged that its losses were caused by the actual presence of the virus on its properties, and the Policies lack the market-available virus exclusion contained in the *Mudpie* policy.

**Second**, the Insurers mischaracterize JRK's allegations as amounting to a mere "temporary loss of use" of property untethered to any actual or threatened physical impact. Mot. at 9. JRK, however, has alleged a loss of use resulting from the actual presence and ongoing imminent threat of a dangerous, physical substance in and on its properties. Compl. ¶¶ 85, 109.

**Third**, the Insurers attempt to draw a parallel to *Inns*, asserting that, regardless of what JRK claims, its losses were not caused by the presence of the virus but, rather, by the Orders. Mot. at 10. But the Insurers glaringly omit key aspects of *Inns*. Specifically, the Court of Appeal's holding was premised on the fact that the particular governmental order in that case did not result from physical loss or damage to property and the policyholder did not allege that it suffered physical loss or damage as a result of the virus. Here, the Orders that impacted JRK were expressly premised on the virus's propensity to cause physical loss or damage to property.[14] *See, e.g.*, Compl. At ¶ 64 (Los Angeles order providing that "the COVID-19 virus . . . is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time"). And JRK alleges, in detail, that the virus, not some unrelated

---

[13] Notably, the Ninth Circuit affirmed the district court's decision, which stated: "[h]ad Mudpie alleged the presence of COVID-19 in its store, the Court's conclusion about an intervening physical force would be different." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 841 n.7 (N.D. Ca. 2020), *aff'd*, 15 F.4th 885 (9th Cir. 2021).

[14] In any case, the notion that these governmental "stay-at-home" orders targeting particular geographic locations and restricting access to JRK's Insured Properties were not issued because of the physical presence of the virus on properties within the geographic scope of the orders is nonsensical. If the virus was not present at these properties, there would have been no reason to issue the orders in the first place.

governmental orders alone, caused its losses, which JRK anticipated to continue. Compl. ¶¶ 1, 7, 109. Put differently, even after governmental restrictions were lifted, JRK continued to suffer losses due to the virus's actual and imminent threat to its properties. Thus, *Inns* confirms that JRK's allegations are sufficient to survive the Insurers' motion.

Furthermore, to the extent there is a dispute regarding the *actual* cause of JRK's losses, that factual dispute cannot be resolved at the pleadings stage or absent a complete factual record and expert discovery into how the novel coronavirus interacts and alters the environments it infects. *See Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395 (1989) (the efficient proximate cause of an insured's loss is a fact question); *see also* California Civil Jury Instruction 2306.

**Finally**, the Insurers argue that JRK has not alleged any property repair or replacement triggering the Policies' "Period of Recovery." Mot. at 11. The "Period of Recovery," however, merely sets forth the period of time during which business interruption losses are measured; it does not narrow the scope of the Policies' insuring agreement. Similar language in the policy analyzed in *Inns* did not preclude the Court of Appeal from concluding that COVID-19 could theoretically cause physical loss or damage in a case where COVID-19 was the actual cause of the insured's loss (as is the case here). Such a conclusion necessarily presupposes that the actual presence of the virus can, in certain circumstances, necessitate a "repair" or "replacement" of property under the "Period of Liability." Notably, numerous courts have rejected insurers' attempts to recast the "Period of Liability/Recovery" as a restriction on the insuring agreement, finding that COVID-19-related losses can satisfy this language. *See In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d at 731; *Brown's Gym*, 2021 WL 3036545, at *22 ("The 'period of restoration' provision set forth in the 'extra expense' coverage . . . was arguably satisfied by Brown's repairs and remedial measures in the form of 'the installation of partitions' and 'handwashing/sanitation stations' and other actions undertaken to renovate the premises in order to make the property safe for public use."); *Ungarean, DMD v. CNA*, 2021 WL 1164836, at *8 (Pa. Ct. Comm. Pl. Mar. 25, 2021) ("[T]o 'replace' or 'rebuild' unused space due to social distancing protocols, businesses might choose to buildout new spaces . . . or rearrange

existing spaces in order to increase the amount of business they can safely handle during these difficult times"). Here, JRK has taken many steps to remediate and repair its properties, beyond routine cleaning and ventilation improvements.

    **B.**    **JRK Sufficiently Alleged Civil Authority and Ingress/Egress Coverage**

Even if, as the Insurers argue, JRK's losses resulted solely from the Orders, the Policies expressly cover such losses. As the Insurers concede, the Policy covers JRK's losses when "as a direct result of a peril insured against, access to real or personal property is impaired by order of civil or military authority." Mot. at 13. JRK has squarely alleged the applicability of this coverage. Specifically, JRK alleged that as a result of the presence of the virus at the Insured Properties and nearby properties, and the virus's propensity to cause physical loss or damage, governmental entities issued orders prohibiting access to the Insured Properties. Compl. ¶¶ 72, 78. There is nothing conclusory about these allegations.[15] On the contrary, these allegations are confirmed by the experience of thousands of businesses and millions of Americans and by the plain language of the orders themselves. They are certainly sufficient to survive a motion for judgment on the pleadings.

Indeed, *Inns* strongly supports the availability of civil authority coverage here. In *Inns*, the particular governmental orders at issue "g[ave] no indication that they were issued 'due to direct physical loss or damage to' any property." Rather, they were solely concerned with public health. Here, in contrast, the Orders made clear that they were issued as a result of the virus's impact to property, and to the extent there is any question on this point, such an essential fact issue cannot be resolved at the pleadings stage. For example, the Los Angeles order impacting the JRK's headquarters and the Hotel Oceana Santa Monica expressly stated that it was being issued, in part, because "the COVID-19 virus . . . is physically causing property loss or damage

---

[15] The Insurers' argument that JRK has not alleged "physical damage" or "impairment" giving rise to "ingress/egress" coverage likewise fails. JRK alleges that the actual presence of the virus has resulted in *both* physical damage *and* physical loss or property. This conclusion is supported by *Inns*, which made clear that the presence of noxious substances can result in "physical damage" to property, but that this was simply not sufficiently pled in *Inns*. *Inns*, 71 Cal. App. 5th at 710 ("a virus could cause a suspension of operations through direct physical loss of or damage to property").

due to its tendency to attach to surfaces for prolonged periods of time."[16]

Once again, the Insurers' contrary case law is comprised of a handful of *federal* district court decisions that preceded *Inns.* Further, the Insurers ignore that numerous courts have persuasively denied motions to dismiss under similar circumstances. *See e.g.*, *Atwells Realty Corp. v. Scottsdale Ins. Co.*, No. PC-2020-04607, 2021 WL 2396584, at *11 (R.I. Super. Jun. 4, 2021) (denying motion to dismiss civil authority coverage where "the Court [was] not prepared to rule out, at the pleading stage, that COVID-19 in the air and on surfaces could be considered a physical alteration of a premises that only causes harm to persons on the premises while not altering the physical structure.").

## C.    JRK Sufficiently Alleged Coverage for Interruption by Communicable Disease—Which Does Not Require a Showing of Physical Loss or Damage

Perhaps most galling is Insurers' effort to dismiss JRK's claim for coverage under the Policies' Interruption by Communicable Disease coverage, which was expressly designed to cover certain categories of loss arising from a communicable disease like COVID-19. Defendants' position that JRK is not, at a minimum, entitled to Communicable Disease coverage during the worst healthcare crisis the world has seen in over a century defies JRK's reasonable expectations and should not be countenanced.

In less than a page, the Insurers seek dismissal of JRK's claim under the Policies' Communicable Disease coverage, even though they concede that such coverage "does not require direct physical loss or damage" to property. Mot. at 14. Insurers fail to cite a single case where a court dismissed a COVID-19 claim where the policy expressly contained such coverage. The reason for that is simple: courts that have addressed policies with similar coverage have rejected

---

[16] Notably, *Inns'* recognition that the subject governmental order in that case was issued to protect the public health, does not mean that it was not also issued as a result of physical loss or damage to property. For example, ammonia leaks have long been considered to cause physical loss or damage to property, despite being invisible and causing no tangible change to property. *See, e.g.*, *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934, at *2, 6 (D.N.J. Nov. 25, 2014) (finding presence of ammonia constituted direct physical loss or damage). If there was an ammonia leak that resulted in a governmental order restricting access to property to protect public health, that order would necessarily still be issued as a result of physical loss or damage to property. The same is true of the coronavirus.

**Exhibit 138 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 1945 of 2921**

insurers' efforts to avoid liability. *See, e.g.*, *Live Nation*, 2022 WL 390712 at *10 (noting that "Communicable Disease Provisions provide coverage for non-physical loss caused by COVID-19 that does not appear elsewhere in the Policy," such as after the physical presence of COVID-19 on property and resulting physical damage has been removed).

Here, Communicable Disease coverage only requires: (1) the "actual not suspected presence" of COVID-19; (2) that access to the insured location be "limited, restricted, or prohibited"; and (3) that the limitation, restriction or prohibition of access results from either a decision by JRK or a governmental order that regulates the communicable disease present at an insured location. Compl. ¶ 93. JRK sufficiently alleges all three elements. Insurers, meanwhile, acknowledge one element, attempt to dispute another, and ignore the third one altogether.

**First,** the Insurers do not and cannot dispute that JRK adequately alleges the "actual not suspected" presence of COVID-19 at multiple Insured Properties. *Id.* ¶¶ 4, 52, 71–72. Indeed, the virus was so ubiquitous on JRK's properties that the Complaint alleges that the majority of its residential properties have had at least one tenant or employee test positive. *Id.* ¶ 71.

**Second,** the Insurers' argument that access to JRK's Insured Properties was not "limited, restricted, or prohibited" due to the actual presence of the virus is incorrect. Mot. at 14. JRK explicitly alleges that "access to JRK's properties has been severely limited" and that after myriad "documented cases" at JRK's insured residential properties, JRK was forced to "[c]onvert physical leasing offices into virtual leasing systems" and "[c]lose various common spaces . . . such as gyms, swimming pools, movie theaters, business centers, bowling alleys, dog parks and playgrounds." *Id.* ¶¶ 75, 78. Furthermore, JRK alleges with respect to its hotels, that "when access to these properties was limited or even prohibited by the Orders, the hotels lost virtually all travelers, and thus revenue, overnight." *Id.* ¶ 78.

**Third,** JRK expressly alleges that its losses were due, in part, to the Orders, including Orders that state they were issued in response to the presence of COVID-19 and the resulting property loss and damage caused by COVID-19's presence. *Id.* ¶ 64 (citing orders applying to JRK that expressly stated "the COVID-19 virus . . . is physically causing property loss or damage" because it "attach[es] to surfaces for prolonged periods of time."). JRK also alleges that

its losses were due, in part, to decisions by JRK personnel to limit, restrict or prohibit access to various leasing offices, common spaces, and amenities—all due to the actual presence of COVID-19 at its properties. *Id*. ¶¶ 75, 111 ("Decisions by JRK officers based on the onsite presence of COVID-19 were a cause of JRK's losses, thus triggering the Interruption by Communicable Disease coverage.").[17]   The Insurers wholly ignore both this coverage grant and JRK's allegations that trigger it.

### D.    No Exclusion in the Policies Bars Coverage at the Pleadings Stage

Insurers have raised several different exclusions based on their particular Policies. However, none of these exclusions apply, let alone at this stage.  Indeed, the Insurers' arguments ignore that under California law, insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon*, 31 Cal. 4th at 635. When analyzed under the proper standard, the Insurers' arguments fail.

First, Insurers seek dismissal based on a "Pollutants or Contaminants" exclusion in the Policies.  This exclusion begins with lead-in language requiring that that the pollutant or contaminant be "release[d], discharge[d], dispers[ed]," "escape[d]," or caused by seepage or migration.  Numerous courts, including the Supreme Court of California, have interpreted such exclusions narrowly to apply only to traditional environmental pollutants and contaminants. *See MacKinnon,* 31 Cal. 4th at 653 ("[l]imiting the scope of the pollution exclusion to injuries arising from events commonly thought of as pollution, i.e. environmental pollution [is] consistent with the choice of terms "discharge, dispersal, release or escape," a lay person's understanding of the

---

[17] Insurers cherry-pick one line from a document that is not even the operative pleading in this action to argue that JRK somehow disclaimed Communicable Disease coverage by stating its losses were not due to the presence of the virus.  Mot. at 15.  This is simply not true. As the operative complaint makes clear, this cited allegation, when read in its entirety, clearly states that JRK's losses were not due "*solely"* to orders regulating the actual presence of COVID-19.  Ex. 1 at ¶ 81.  Rather, JRK's losses also include those due to direct physical loss or damage caused by the presence of the virus on its Insured Properties *and* the government's response.

exclusion, and its purpose);[18] *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 618 (Nev. 2014) (finding "absolute pollution exclusion" which purported to limit coverage for "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'" applies to traditional environmental pollution only; because the exclusion was ambiguous, the court construed it against the insurer and in accordance with the insured's reasonable expectations); *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (same).  Thus, this exclusion does not apply here.  Regardless, despite having the burden to show that this (or any) exclusion, when narrowly construed, bars coverage in its entirety, these Insurers fail to cite a *single* California state or federal decision barring coverage based on this exclusion for COVID-19 related losses.[19]

The same is true for the second exclusion, the "pathogenic or poisonous materials" exclusion, which two Insurers (Evanston and RSUI) attempt to rely on in their respective Policies to claim JRK cannot recover.  As an initial matter, the RSUI exclusion does not even mention the word "virus."  And like all Insurers, Evanston and RSUI could have, but deliberately did not, use the industry's standard virus exclusion. But even if Evanston's exclusion were to apply, that would only reinforce JRK's point that the traditional environmental Pollution Exclusion in the main Evanston Policy form cannot bar coverage for JRK's losses under all other Policies.  *See ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1785 (1993), as modified (Sept. 21, 1993) (under California law, insurance contracts are construed to avoid rendering terms surplusage).  To the extent there is any room for disagreement on whether

---

[18] *See also Villa Los Alamos Homeowners Ass'n v. State Farm Gen. Ins. Co.*, 198 Cal. App. 4th 522, 526–527, 534 (2011) (extending *MacKinnon* reasoning to first-party insurance context).

[19] None of the three federal court cases Insurers cite for this proposition involved pollution or contamination exclusions requiring seepage, dispersal, or escape; rather, they involved explicit virus exclusions not present in the Policies here. Mot. at 16.  *See W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F. Supp. 3d 1233, 1240 (C.D. Cal. 2020) (addressing exclusion for "[a]ny virus, bacterium or other microorganism…"); *Franklin EXC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 907 (N.D. Cal. 2020) (addressing exclusion with "Bacteria and Virus" in title); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 495 F. Supp. 3d 848, 852 (C.D. Cal. 2020) (addressing exclusion of loss caused by "any virus, bacterium or other microorganism . . . ").

a human-contractable virus falls within the materials identified in these exclusions, the exclusions must be construed narrowly in favor of coverage.  *See Sincoff v. Liberty Mut. Fire Ins. Co.*, 11 N.Y.2d 386, 391 (1962) (holding that where experts "disagree as to the meaning of [a] word, and the dictionaries contain varying connotations" the term "is capable of more than one meaning" and therefore, its meaning "must be resolved in favor of the insured.").  The Insurers cite no controlling case law enforcing such an exclusion at this premature stage.

Finally, the Insurers seek dismissal based on the Policies' "loss of market" and "loss of use" exclusions.  Mot. at 12.  These exclusions, however, do not bar coverage when a loss of market or loss of use is *the result* of the physical loss or damage to insured property. Otherwise, these exclusions would swallow the Policies' coverage and render the protection for business interruption losses illusory.  *See Scott Craven DDS PC v. Cameron Mut. Ins. Co.*, No. 20CY-CV06381, 2021 WL 1115247, at *3 (Mo. Cir. Mar. 9, 2021) (loss of market exclusion as applied to COVID-19 related losses would "vitiate" coverage); *Ungarean*,  2021 WL 1164836, at *14 (finding that loss of market exclusion did not apply to COVID-19 related losses because "this exclusion would effectively eliminate coverage for any kind of loss and/or damage caused by any covered peril, which closes Plaintiff's business while it is being repaired").[20]

E.      **Alternatively, JRK Should Be Given Leave to Amend its Complaint or Stay Resolution of the Insurers' Motion Pending Guidance From the California Supreme Court**

To the extent this Court concludes that JRK has failed to adequately allege an entitlement to coverage, JRK respectfully requests leave to amend its complaint to address any such deficiencies.  Alternatively, the threshold coverage issue in this case—whether COVID-19 can result in direct physical loss or damage—is likely to be decided by the California Supreme Court

---

[20] The Excess Insurers have also argued that JRK's claims should be dismissed because JRK's alleged losses would not reach their respective attachment levels. But JRK has alleged "tens of millions of dollars in financial losses" and that its losses are continuing. Compl. ¶ 7. Thus, JRK alleges losses that could trigger these Policies, and simply because JRK has not yet quantified its total losses does not support premature dismissal of these Insurers on this ground.

in the context of the *Inns* appeal.  Indeed, the parties to that case have briefed a petition for review and, given the significance of the issues involved, it is likely the Supreme Court will review the case.  Thus, although JRK's position is that the Insurers' motion should be denied under longstanding California law, if the Court concludes otherwise, JRK requests that it hold its decision in abeyance pending forthcoming guidance from the California Supreme Court.

## V.     <u>CONCLUSION</u>

JRK respectfully requests that the Court deny the Insurers' motion for judgment on the pleadings in its entirety and allow this case to continue through discovery.

DATED: February 21, 2022                    SPERTUS, LANDES & UMHOFER, LLP

_____
Kevin J. Minnick (SBN 269620)
*Attorneys for Plaintiff JRK Property Holdings, Inc.*

## PROOF OF SERVICE

STATE OF CALIFORNIA,     )
                                          )
                                          )
COUNTY OF LOS ANGELES    )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to this action. My business address is 617 West 7th Street, Suite 200, Los Angeles, CA 90017.

On February 21, 2022, I served documents described as:

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

on the following interested parties in this action:

SEE SERVICE LIST ON NEXT PAGE

**[X]     BY ELECTRONIC SERVICE**:  I personally transmitted true and correct copies of the above-described documents via the user interface at www.onelegal.com (OneLegal, an approved electronic filing service), to the persons named on the service list, originating from the Spertus, Landes & Umhofer, LLP mail server, which did not report any error in sending the transmission.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on February 21, 2022, in Los Angeles, California.

_____
Jon E. Powell

## SERVICE LIST

Julia M. Beckley
Rich Dodge (Pro Hac Vice Pending)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: 213 623 9300
Facsimile: 213 623 9924
Email: julia.beckley@dentons.com
Email: rich.dodge@dentons.com

    Attorneys for Defendant *AMERICAN INTERNATIONAL GROUP UK LIMITED*

Larry M. Arnold
Margaret R. Miglietta
Noura K. Rizzuto
CUMMINS & WHITE, LLP
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660-0764
Telephone: 949-852-1800
Facsimile: 949-852-8510
Email: larnold@cwlawyers.com
Email: mmiglietta@cwlawyers.com
Email: nrizzuto@cwlawyers.com
Email: rwarren@cwlawyers.com
Email: adixon@cwlawyers.com

Gary W. Berdeen
William F. Stewart
STEWART SMITH
1 Park West Circle, Suite 306-D
Midlothian, VA 23114
Telephone: 804-533-1718
Facsimile: 484-534-9470
Email: gberdeen@stewartsmithlaw.com
Email: wstewart@stewartsmithlaw.com

    Attorneys for Defendant *COLONY INSURANCE COMPANY*

Susan F. Dent
Gary S. Kull (pro hac vice forthcoming)
KENNEDYS CMK LLP
101 California Street, Suite 1225
San Francisco, CA 94111
Telephone: 415-323-4460
Facsimile: 415-323-4445
Email: Susan.Dent@kennedyslaw.com
Email: Gary.Kull@kennedyslaw.com

    Attorneys for Defendant *CRUM & FORSTER SPECIALTY INSURANCE COMPANY*

Bennett Evan Cooper
DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone: 602-285-5044
Facsimile: 844-670-6009
Email: bcooper@dickinsonwright.com

    Attorneys for Defendant *EVANSTON INSURANCE COMPANY*

Susan Koehler Sullivan
Negar Azafar
Brett C. Safford
CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: 213-358-7600
Facsimile: 213-358-7650
Email: susan.sullivan@clydeco.us
Email: negar.lencioni@clydeco.us
Email: brett.safford@clydeco.us

    Attorneys for Defendants *ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY and MAXUM INDEMNITY COMPANY*

David A. Tartaglio
MUSICK, PEELER & GARRETT LLP
624 South Grand Avenue, Suite 2000
Los Angeles, CA 90017
Telephone: 213-629-7600
Facsimile: 213-624-1376
Email: d.tartaglio@musickpeeler.com

    Attorneys for Defendant *GENERAL STAR INDEMNITY COMPANY*

Michael R. Weiss
Jonathan M. Turner
Bryan G. Scott (pro hac vice forthcoming)
AKERMAN, LLP
601 West Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: 213-688-9500
Facsimile: 213-627-6342
Email: michael.weiss@akerman.com
Email: jonathan.turner@akerman.com
Email: bryan.scott@akerman.com

Seth I. Weinstein (pro hac vice forthcoming)
LEWIS BRISBOIS BISGAARD & SMITH LLP
77 Water Street, 21st Floor
New York, NY 10005
Seth.Weinstein@lewisbrisbois.com

    Attorneys for Defendants *HALLMARK SPECIALTY INSURANCE COMPANY and HOMELAND INSURANCE COMPANY*

Amy M. Churan
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: 310-552-0130
Facsimile: 310-229-5800
Email: AChuran@RobinsKaplan.com

Sylvia R. Ewald
ROBINS KAPLAN LLP
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
Telephone: 612-349-0647
Facsimile: 612-339-4181
Email: SEwald@RobinsKaplan.com

Attorneys for Defendants *IRONSHORE SPECIALTY INSURANCE COMPANY;
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND LONDON MARKET
COMPANIES SUBSCRIBING TO POLICY NO. (UMR) B0180PG1902611;
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY
NO. (UMR) B0180PG1902610; CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO POLICY NO. (UMR) B0180PG1903066; CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. (UMR)
B0180PG1902622; ATEGRITY SPECIALTY INSURANCE COMPANY, AND RSUI
INDEMNITY COMPANY*

Kristopher S. Davis
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067-1517
Telephone: 310-203-4000
Facsimile: 310-229-1285
Email: kristopher.davis@faegredrinker.com

Brian E. O'Donnell (pro hac vice to be submitted)
Maura C. Smith (pro hac vice to be submitted)
RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza – One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: 973-538-0800
Facsimile: 973-451-3708
Email: bodonnell@riker.com
Email: msmith@riker.com

Attorneys for Defendant *MITSUI SUMITOMO INSURANCE COMPANY OF
AMERICA*

Jay R. Sever
PHELPS DUNBAR LLP
365 Canal Street, Ste 2000
New Orleans, LA 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: jay.sever@phelps.com

Meka Moore
SELMAN BREITMAN LLP
11766 Wilshire Blvd., Sixth Floor
Los Angeles, CA 90025-6546
Telephone: 310-445-0800
Facsimile: 310-473-2525
Email: mmoore@selmanlaw.com

Attorneys for Defendant *SCOTTSDALE INSURANCE COMPANY*

**Exhibit 138 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 1955 of 2921**