EXHIBIT 139

Electronically FILED by Superior Court of California, County of Los Angeles on 03/23/2022 11:25 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Gonzalez,Deputy Clerk

Case 20-51051-TMH    Doc 258-139    Filed 01/12/24    Page 2 of 30

**ROBINS KAPLAN LLP**
Amy Churan (SBN 216932)
AChuran@RobinsKaplan.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone:    310 552 0130
Facsimile:    310 229 5800

Melissa D'Alelio (admitted *pro hac vice*)
MDAlelio@RobinsKaplan.com
800 Boylston Street, Suite 2500
Boston, MA 02199
Telephone:    617 267 2300
Facsimile:    617 267 8288

Attorneys for Defendants Ironshore Specialty Insurance
Company; Certain Underwriters at Lloyd's, London and
London market companies Subscribing to Policy No.
(UMR) B0180PG1902606; Certain Underwriters at
Lloyd's, London and London market companies
Subscribing to Policy No. (UMR) B0180PG1902611;
Certain Underwriters at Lloyd's, London Subscribing to
Policy No. (UMR) B0180PG1902610; Certain
Underwriters at Lloyd's, London Subscribing to Policy
No. (UMR) B0180PG1903066; Certain Underwriters at
Lloyd's, London Subscribing to Policy No. (UMR)
B0180PG1902622; Ategrity Specialty Insurance
Company; and RSUI Indemnity Company

(Additional counsel listed on following page)

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| JRK PROPERTY HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> COLONY INSURANCE COMPANY, et al. <br><br> Defendants. | Case No. 21STCV19983 <br><br> REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS <br><br> [Declaration of Amy M. Churan filed concurrently herewith] <br><br> **RESERVATION NO. 280833900024** <br><br> DATE:    April 6, 2022 <br> TIME:    8:30 a.m. <br> DEPT.:    32 <br><br> Complaint Filed: May 27, 2021 <br> Trial Date: August 9, 2022 <br> Judge: Hon. Daniel S. Murphy <br> Department: 32 |

**Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 1956 of 2921**

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**ADDITIONAL DEFENDANTS' COUNSEL**

| Counsel | Defendants |
|---|---|
| DENTONS US LLP<br>Julia M. Beckley (SBN 247493)<br>2000 McKinney Avenue, Suite 1900<br>Dallas, Texas 75201<br>Tel (214) 259-1854<br>Fax (214) 259-0910<br>julia.beckley@dentons.com<br><br>G. Richard Dodge , Jr. (admitted *pro hac vice*)<br>1900 K Street NW<br>Washington, DC 20006<br>Tel (202)496-7500<br>Fax (202) 496-7756<br>rich.dodge@dentons.com<br><br>Keith Moskowitz (admitted *pro hac vice*)<br>233 South Wacker Drive, Suite 5900<br>Chicago, IL 60606-6361<br>Tel (312) 876-8220<br>Fax (312) 876 7934<br>keith.moskowitz@dentons.com | Attorneys for Defendant<br>American International Group UK<br>Limited as Subscriber to Policy No.<br>(UMR) BO180PG1902606 |
| CUMMINS & WHITE, LLP<br>Larry M. Arnold (SBN 060459)<br>Margaret R. Miglietta (SBN 116026)<br>Noura K. Rizzuto (SBN 291455)<br>2424 S.E. Bristol Street, Suite 300<br>Newport Beach, CA 92660-0757<br>Tel (949) 852-1800<br>Fax (949) 852-8510<br>larnold@cwlawyers.com<br>mmiglietta@cwlawyers.com<br>nrizzuto@cwlawyers.com<br><br>STEWART SMITH<br>William F. Stewart (admitted *pro hac vice*)<br>300 Four Falls Corporate Center<br>300 Conshohocken Road, Suite 670<br>West Conshohocken, PA 19428<br>Tel (484) 344-5296<br>Fax (484) 534-9470<br>WStewart@stewartsmithlaw.com | Attorneys for Defendant<br>Colony Insurance Company |

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Counsel | Defendants |
|---|---|
| **KENNEDYS CMK LLP**<br>Susan Frances Dent (SBN 292900)<br>101 California Street, Suite 1225<br>San Francisco, CA 94111<br>Tel (415) 323-4460<br>Fax (415) 323-4445<br>Susan.Dent@kennedyslaw.com<br><br>Gary S. Kull (*pro hac vice* application pending)<br>120 Mountain View Boulevard<br>Basking Ridge, NJ 07920<br>Tel (908) 848-6300<br>Fax (908) 647-8390<br>Gary.Kull@kennedyslaw.corn | Attorneys for Defendant<br>Crum & Forster Specialty Insurance Company |
| **CLYDE & CO US LLP**<br>Susan Koehler Sullivan (SBN 156418)<br>Brett Charles Safford  (SBN 292048)<br>355 S. Grand Avenue, Suite 1400<br>Los Angeles, CA 90071<br>Telephone: (213) 358-7600<br>Facsimile: (213) 358-7650<br>susan.sullivan@clydeco.us<br>brett.safford@clydeco.us | Attorneys for Defendants<br>Endurance American Specialty Insurance Company; and Maxum Indemnity Company |
| **DICKINSON WRIGHT RLLP**<br>Bennett Evan Cooper (SBN 128544)<br>800 W. California Avenue, Suite 110<br>Sunnyvale, California 94086<br>Tel: (602) 285-5044<br>Fax: (844) 670-6009<br>bcooper@dickinsonwright.com | Attorneys for Defendant<br>Evanston Insurance Company |
| **MUSICK, PEELER & GARRETT LLP**<br>David A. Tartaglio (SBN 117232)<br>624 South Grand Avenue, Suite 2000<br>Los Angeles, CA 90017-3383<br>Tel (213) 629-7600<br>Fax (213) 624-1376<br>d.tartaglio@musickpeeler.com<br><br>WILEY REIN LLP<br>Benjamin C. Eggert (admitted *pro hac vice*)<br>Joseph W. Gross (admitted *pro hac vice*)<br>2050 M Street NW<br>Washington, DC  20036<br>Tel (202) 719-7000<br>Fax (202) 719-7049<br>BEggert@wiley.law<br>JGross@wiley.law | Attorneys for Defendant<br>General Star Indemnity Company |

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1958 of 2921

| Counsel | Defendants |
|---------|-----------|
| AKERMAN, LLP<br>Michael R. Weiss (SBN 180946)<br>601 West Fifth Street, Suite 300<br>Los Angeles, CA 90071<br>Tel (213) 688-9500<br>Fax (213) 627-6342<br>Michael.Weiss@akerman.com<br><br>Bryan G. Scott (*pro hac vice* forthcoming)<br>100 North Main Street, Suite 2425<br>Winston-Salem, NC 27101<br>Tel (336) 296-7104<br>Fax (336) 296-7010<br>Bryan.Scott@akerman.com<br><br>LEWIS BRISBOIS BISGAARD<br>& SMITH LLP<br>Seth I. Weinstein (*pro hac vice* forthcoming)<br>77 Water Street, 21st Floor<br>New York, NY 10005<br>Tel (212) 232-1300<br>Fax (212) 232-1399<br>Seth.Weinstein@lewisbrisbois.com | Attorneys for Defendants<br>Homeland Insurance Company; and<br>Hallmark Specialty Insurance<br>Company |
| FAEGRE DRINKER BIDDLE & REATH LLP<br>Kristopher S. Davis (SBN 193452)<br>1800 Century Park East Suite 1500<br>Los Angeles, CA 90067-1517<br>Tel (310) 203-4000<br>Fax (310) 229-1285<br>kristopher.davis@faegredrinker.com<br><br>RIKER DANZIG SCHERER HYLAND<br>& PERRETTI LLP<br>Brian E. O'Donnell (admitted *pro hac vice*)<br>Maura C. Smith (admitted *pro hac vice*)<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, NJ 07962-6981<br>Tel (973) 538-0800<br>Fax (973) 538-1984<br>bodonnell@riker.com<br>msmith@RIKER.com | Attorneys for Defendant<br>Mitsui Sumitomo Insurance<br>Company of America |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1959 of 2921

| Counsel | Defendants |
|---|---|
| PHELPS DUNBAR LLP<br>Jay R. Sever  (SBN 165859)<br>365 Canal Street, Suite 2000<br>New Orleans, LA 70130-6534<br>Tel (504) 566-1311<br>Fax (504) 568-9130<br>jay.sever@phelps.com<br><br>SELMAN BREITMAN LLP<br>Meka Moore  (SBN 180017)<br>Damian L. Palombi (SBN 311252)<br>11766 Wilshire Boulevard, 6th Floor<br>Los Angeles, CA 90025-6538<br>Tel (310) 445-0800<br>Fax (310) 473-2525<br>mmoore@selmanlaw.com<br>dpalombi@selmanlaw.com | Attorneys for Defendant<br>Scottsdale Insurance Company |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

1

## TABLE OF CONTENTS

2

I.     INTRODUCTION ........................................................................................................ 1

3

II.    ARGUMENT ............................................................................................................... 2

4
       A.    *Inns* forecloses JRK's recovery for financial losses it alleges were caused by government
5            orders. ........................................................................................................................ 2

6      B.    *Inns* also forecloses JRK's recovery for financial losses it contends were caused by the
             presence of the COVID-19 virus at its properties. ...................................................... 5

7      C.    JRK misapprehends the Court of Appeal's holdings in *Inns*. ..................................... 8

8      D.    JRK fails to allege facts showing that access to any of its properties, or ingress to or egress
9            from any of its properties, was impaired. ................................................................... 10

10     E.    JRK concedes it does not meet the requirements for coverage under the Interruption by
             Communicable Disease provision. ............................................................................. 11

11     F.    To the extent JRK alleges its financial losses were caused by the COVID-19 virus, those
12           losses fall squarely within the Policies' pollutants-or-contaminants and pathogens
             exclusions. ................................................................................................................. 13

13     G.    JRK's request to amend its Complaint should be denied; its alternative request to hold a
             decision granting Insurers' motion in abeyance is moot. ........................................... 15

14

15     III.   CONCLUSION ......................................................................................................... 15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1961 of 2921

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AECOM v. Zurich American Insurance Co.*,
No. 21-cv-00237, 2021 WL 6425546 (C.D. Cal., Dec. 1, 2021) ............................................. 13

*Ascent Hospitality Management, LLC v. Employers Insurance Co. of Wausau*,
No. 21-11924, 2022 WL 130722 (11th Cir. Jan. 14, 2022) .................................................... 10

*Baker v. Oregon Mutual Insurance Co.*,
No. 21-15716, 2022 WL 807592 (9th Cir. Mar. 16, 2022) ...................................................... 3

*Barbizon School of San Francisco, Inc. v. Sentinel Insurance Co.*,
No. 20-CV-08578, 2021 WL 1222161 (N.D. Cal. Mar. 31, 2021) ......................................... 9

*Belt Painting Corp. v. TIG Insurance Co.*,
795 N.E.2d 15 (N.Y. 2003) ...................................................................................................... 14

*Brown v. City of Fremont*,
75 Cal. App. 3d 141 (1977) ...................................................................................................... 13

*Cantu v. Resolution Trust Corp.*,
4 Cal. App. 4th 857 (1992) ....................................................................................................... 13

*Castillo v. Barrera*,
146 Cal. App. 4th 1317 (2007) ................................................................................................ 13

*Century Surety Co. v. Casino West, Inc.*,
329 P.3d 614 (Nev. 2014) ........................................................................................................ 15

*Circus Circus LV, LP v. AIG Specialty Insurance Co.*,
525 F. Supp. 3d 1269 (D. Nev. 2021) ............................................................................... 13, 14

*Create Advertising Group, LLC v. Fed. Insurance Co.*,
No. 21-cv-5975, 2022 WL 831479 (C.D. Cal. Mar. 17, 2022) ............................................... 11

*Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*,
No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) ................................................. 10

*Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*,
21 F.4th 704 (10th Cir. 2021) .................................................................................................. 10

*Inns by the Sea v. California Mutual Insurance Co.*,
71 Cal. App. 5th 688 (2021) ............................................................................................ *passim*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1962 of 2921

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*JC/SC LLC v. Travelers Indemnity Co. of Connecticut,*
　No. 21-CV-04835, 2022 WL 263157 (C.D. Cal. Jan. 26, 2022) .............................................. 9

*Kim-Chee LLC v. Philadelphia Indemnity Insurance Co.,*
　No. 21-1082-CV, 2022 WL 258569 (2d Cir. Jan. 28, 2022) ................................................. 10

*MacKinnon v. Truck Insurance Exchange,*
　31 Cal. 4th 635 (2003) ........................................................................................................ 14

*Mudpie, Inc. v. Travelers Casualty Insurance Co. of America,*
　15 F.4th 885 (9th Cir. 2021) ............................................................................................ 4, 10

*Northwell Health, Inc. v. Lexington Insurance Co.,*
　No. 21-cv-1004, 2021 WL 3139991 (S.D.N.Y. July 26, 2021) ........................................... 14

*O'Brien Sales & Marketing, Inc. v. Transportation Insurance Co.,*
　512 F. Supp. 3d 1019 (N.D. Cal. 2021) .............................................................................. 10

*Oral Surgeons, P.C. v. Cincinnati Insurance Co.,*
　2 F.4th 1141 (8th Cir. 2021) ............................................................................................... 10

*Out West Rest. Group Inc. v. Affiliated FM Insurance Co.,*
　527 F. Supp. 3d 1142 (N.D. Cal. 2021) ................................................................................ 7

*Protégé Rest. Partners LLC v. Sentinel Insurance Co.,*
　517 F. Supp. 3d 981 (N.D. Cal. 2021) ................................................................................... 9

*Sandy Point Dental, PC v. Cincinnati Insurance Co.,*
　20 F.4th 327 (7th Cir. 2021) ............................................................................................... 10

*Santo's Italian Café LLC v. Acuity Insurance Co.,*
　15 F.4th 398 (6th Cir. 2021) ............................................................................................ 4, 10

*Taxpayers for Improving Public Safety v. Schwarzenegger,*
　172 Cal. App. 4th 749 (2009) ............................................................................................. 15

*Terry Black's Barbecue, L.L.C. v. State Automobile Mutual Insurance Co.,*
　22 F.4th 450 (5th Cir. 2022) ............................................................................................... 10

*Uncork & Create LLC v. Cincinnati Insurance Co.,*
　No. 21-1311, 2022 WL 66298 (4th Cir. Mar. 7, 2022) ....................................................... 10

*Wellness Eatery La Jolla LLC v. Hanover Insurance Group,*
　517 F. Supp. 3d 1096 (S.D. Cal. 2021) ............................................................................... 10

*Zwillo V, Corp. v. Lexington Insurance Co.,*
　504 F. Supp. 3d 1034 (W.D. Mo. 2020) ............................................................................. 14

**Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its**
**Oppositions to Defendants' Motions for Summary Judgment**          **Page 1963 of 2921**

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

## I.    INTRODUCTION

The California Court of Appeal has rejected the theories of recovery on which JRK Property Holdings, Inc. ("JRK") bases its claims for insurance coverage.  JRK attributes its financial losses to the government suspension orders issued to slow the transmission of COVID-19.  But the Court of Appeal rejected that theory of recovery for pandemic-related financial losses in *Inns by the Sea v. California Mutual Insurance Co.*, 71 Cal. App. 5th 688 (2021) (*Inns*), *review denied* (Cal. Mar. 9, 2022). The *Inns* court held that government-ordered suspensions of business operations do not cause or constitute "direct physical loss or damage" to property under California law.[1]

It is perhaps not surprising, then, that in its Opposition to Insurers' motion for judgment on the pleadings, JRK reframes its theory of loss by pointing almost exclusively to generalized allegations of the presence of the COVID-19 virus.  But JRK's reframing is unavailing because *Inns* again forecloses JRK's recovery.  Like the *Inns* plaintiff, JRK fails to allege any *facts* showing that the virus caused direct physical loss or damage to any of its hotel or residential properties, or that its financial losses were caused by any such loss or damage.  JRK is left arguing that "[t]he *Inns* analysis and its ultimate conclusion are deeply flawed . . ." Opp. at 12 n.10.  To the contrary, *Inns* tracks longstanding California precedent.  It is also controlling authority of which the California Supreme Court has now denied review, and is on all fours with this case.  *Inns* also tracks the decisions of the vast majority of state and federal courts across the country that have dismissed such claims, rejecting the very arguments JRK makes in its Opposition.  State and federal appellate courts have unanimously affirmed dismissal.

---

[1] As explained in the opening brief, all but one of the coverage provisions JRK invokes require it to show "direct physical loss or damage" to property to satisfy coverage.  The single coverage provision (present in some policies) that does not require direct physical loss or damage is a sub-limited Interruption by Communicable Disease provision.  But this coverage applies only where access to the properties is "limited, restricted, or prohibited" "as a result of" "[a]n order of an authorized governmental agency regulating the actual not suspected presence of communicable disease," or a "decision of an Officer of [JRK's]" arising from "the actual presence" of COVID-19 at JRK's properties. Jt. Stip., Ex. 1, at GENERALSTAR00000062.  JRK has admitted in two federal complaints that "[t]he limited or prohibited access to JRK properties was a result of the global pandemic and government responses to it, ***not due to an order by a governmental agency or JRK officer arising from the actual not suspected presence of the virus.***"  Churan Decl., Mar. 23 2022, Ex. 1 ¶ 81 (emphasis added); Churan Decl., Jan. 21, 2022, Ex. 1 ¶ 81 (emphasis added).

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Finally, JRK asks the Court for leave to amend its Complaint to cure any pleading

2  deficiencies the Court may identify, but it offers no hint of what such an amendment might look

3  like or what additional facts it might allege, even though it has the burden to prove that an

4  amendment would cure its pleading deficiencies.  The operative complaint is JRK's third attempt.[2]

5  If there were more facts to allege that could bring its claims within the terms of the Policy, JRK

6  would have alleged them by now.  A fourth complaint is not warranted.

7    As a last resort, JRK requests in the alternative that the Court hold in abeyance a ruling

8  granting Insurers' motion pending the appellate disposition of *Inns*.  The California Supreme Court

9  denied the petition for review in *Inns* on March 9, so there is no ground for abeyance.

10  **II.    ARGUMENT**

11    **A.    *Inns* forecloses JRK's recovery for financial losses it alleges were caused by
    government orders.**

13    In its Complaint, JRK traces its alleged pandemic-related financial losses to government

14  orders issued to slow the transmission of the COVID-19 virus.  It alleges that "[t]he Orders . . .  have

15  devastated JRK's business.  Overnight, hotel properties that were once busy, bustling destinations

16  for travelers became ghost towns, decimating JRK's revenue."  Compl. ¶ 6; *see also id.* ¶11

17  ("Shortly after the pandemic reached the United States and shutdown orders began to be issued,

18  JRK began suffering [financial] losses . . . .").  JRK also alleges:

> States, counties, and cities where JRK properties are located declared states of
> emergency to limit the spread of the virus.  They issued orders suspending or
> severely curtailing the operations of all non-essential or high-risk businesses and
> permitting residents to leave their homes only for limited purposes, such as for
> groceries, medicine, and to perform essential jobs.  *The Orders directly impacted
> JRK's hotels and residential tenants, ultimately leading to the devastating financial
> losses at issue in this lawsuit.*

23  *Id.* ¶ 63 (emphasis added); *id.* ¶ 66 (alleging the government orders "had wide-reaching impacts,

24  including reduced travel and loss of jobs, resulting in tenants failing to pay market rents").  And

25  JRK points to the economic impact of the pandemic and the government orders on the financial

---

[2] JRK filed a complaint and an amended complaint in the Eastern District of Virginia in civil action
No. 1:21-cv-00071 (ECF Nos. 1 and 34).  *See* Churan Decl., Mar. 23 2022, Ex. 1; Churan Decl.,
Jan. 21, 2022, Ex. 1. JRK dismissed its federal action the same day Insurers filed their reply in
support of their motion to dismiss, and filed its complaint here later that day.

**Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 1965 of 2921**

1    stability of a primary source of its income—renters of its residential apartments: "[D]ue to the

2    pandemic and shutdown Orders, many of the residential tenants to whom JRK had leased

3    apartments have been unable to continue paying rent, have sought and obtained decreased rental

4    rates, or have terminated their leases." *Id.* ¶ 76. JRK also describes the negative economic impact

5    governmental restrictions on evictions and rental increases have had on its bottom line: "Other

6    governmental restrictions, specifically affecting companies in the business or [sic] owning and

7    managing properties, have prohibited residential evictions, allowed tenants to defer rent payments,

8    prohibited the charging of late fees or interest on unpaid rent, and prohibited otherwise normal rent

9    increases during the pandemic." *Id.* ¶ 77.

10        In *Inns*, the Court of Appeal rejected the insured's argument that its pandemic-related

11    financial losses caused by government orders could be covered under commercial property

12    insurance policies that require direct physical loss or damage to property to satisfy coverage. 71

13    Cal. App. 5th at 703-4 (holding that loss allegedly resulting from government orders based on an

14    "invisible virus" throughout the community does not satisfy coverage); *see also Baker v. Oregon*

15    *Mutual Ins. Co.*, No. 21-15716, 2022 WL 807592, at *1 (9th Cir. Mar. 16, 2022) (citing *Inns* and

16    holding that "the commercial property insurance policy language at issue does not cover loss of

17    business income caused by COVID-related closure orders."). The *Inns* court also explained:

> According to Inns, regardless of the physical presence of the COVID-19 virus, it has
> adequately pled direct physical loss by alleging "the loss of use, function, and value
> of its property." Thus, as Inns argues, even if we conclude that the presence of the
> COVID-19 virus on the premises did not constitute *physical damage* to property
> within the meaning of the Policy, "a policyholder can reasonably expect that a claim
> constitutes *physical loss* where the insured property cannot function as intended."
> As we will explain, this argument fails because it collapses coverage for "direct
> physical loss" into "loss of use" coverage. *Case law and the language of the Policy*
> *as a whole establish that the inability to use physical property to generate business*
> *income, standing on its own, does not amount to a "'suspension'. . .caused by direct*
> *physical loss of" property* within the ordinary and popular meaning of that phrase.

24    71 Cal. App. 5th at 705 (last emphasis added).

25        The court noted that its conclusion that government orders do not cause "direct physical loss

26    of" property was further supported by the "period of restoration" provision in the *Inns* policy, which

27    "is defined as ending on the earlier of '(1) The date when the property at the described premises

28

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1966 of 2921

1  should be repaired, rebuilt or replaced with reasonable speed and similar quality; or [¶] (2) The date

2  when business is resumed at a new permanent location.'"  *Id.* at 707.  It went on to explain:

3      The Policy's focus on repairing, rebuilding or replacing property (or moving entirely

4      to a new location) is significant because it implies that the "loss" or "damage" that
    gives rise to Business Income coverage has a *physical* nature that can be *physically*

5      fixed, or if incapable of being *physically* fixed because it is so heavily destroyed,
    requires a complete move to a new location.  Put simply, "[t]hat the policy provides

6      coverage until property 'should be repaired, rebuilt or replaced' or until business
    resumes elsewhere assumes physical alteration of the property, *not mere loss of use.*"

7  *Id.* (quoting *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021)).

8      Like the period of restoration in *Inns*, the Policies' Period of Recovery supports the

9  conclusion that the loss or damage to property must be *physical* in nature for coverage to attach.

10  As explained in the opening brief, the Policies issued to JRK provide that "[t]he length of time for

11  which loss may be claimed" "[s]hall not exceed such length of time as would be required with the

12  exercise of due diligence and dispatch to *rebuild, repair, or replace* such part of the property as has

13  been destroyed or damaged."  Jt. Stip., Ex. 1, at GENERALSTAR00000061 (emphasis added).

14  JRK argues that the Policies' Period of Recovery "merely sets forth the period of time during which

15  business interruption losses are measured; it does not narrow the scope of the Policies' insuring

16  agreement," Opp. at 18, but the *Inns* court rejected this very argument as "miss[ing] the point":

17      We do not focus on the "period of restoration" as an explicit definition of the scope

18      of coverage.  Instead, we cite the language because our task is to interpret the Policy
    using *the whole* of its language . . . The definition of "period of restoration" provides

19      an indication that the phrase "direct physical loss of" property was not intended to
    include the mere loss of use of physical property to generate income, without any

20      other physical impact to property that could be repaired, rebuilt or replaced.

21  71 Cal. App. 5th at 707–08; *accord Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 403

22  (6th Cir. 2021) ("Baked into this timing provision is the understanding that any covered 'direct

23  physical loss of or damage to' property could be remedied by repairing, rebuilding, or replacing the

24  property or relocating the business."); *see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15

25  F.4th 885, 892 (9th Cir. 2021) ("To interpret the Policy to provide coverage absent physical damage

26  would render the 'period of restoration' clause superfluous.").

27      The *Inns* holding that financial losses resulting from government-ordered suspensions of

28  business operations are not covered under policies that require direct physical loss or damage to

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment    **Page 1967 of 2921**

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    property applies squarely to JRK's allegations that the government orders caused its financial

2    losses. *See, e.g.*, Compl. ¶ 63 ("The Orders directly impacted JRK's hotels and residential tenants,

3    ultimately leading to the devastating financial losses at issue in this lawsuit."). JRK's allegations

4    are thus insufficient to state a claim for coverage under the Policies as a matter of California law.

5    
6        **B.    *Inns* also forecloses JRK's recovery for financial losses it contends were caused by the presence of the COVID-19 virus at its properties.**

7        Perhaps recognizing that *Inns* forecloses recovery for financial losses attributed to the

8    government orders, JRK belatedly strains to reframe its theory of loss to focus on the presence of

9    the COVID-19 virus. In the opening paragraph of its Opposition, JRK contends that, since March

10    2020, its "business has been devastated by the novel coronavirus and resulting disease COVID-

11    19's invasion into JRK's residential properties and hotels throughout the United States, physically

12    attaching to surfaces and altering the ambient air within these properties, transforming once high-

13    occupancy tourist and lifestyle destinations into unusable and inherently dangerous proverbial ghost

14    towns." Opp. at 1. But in its Complaint, JRK repeatedly alleged that it was the government

15    orders—not the COVID-19 virus—that turned its properties into "ghost towns." Compl. ¶ 6; *see

16    also id*. ¶¶ 76-77.[3] JRK cannot rewrite its Complaint through arguments in its opposition brief.

17        JRK's attempted reframing of its theory of loss fails to save its Complaint. JRK does not

18    allege any *facts* showing that its properties suffered any physical loss or damage due to the presence

19    of the COVID-19 virus, or that its financial losses were caused by any such loss or damage. Even

20    assuming JRK alleged the "presence" of COVID-19—as the *Inns* court assumed for purposes of its

21    decision—JRK's claim for economic losses (just like the plaintiff's claim in *Inns*) stems from

22    governmental orders issued to stop the spread of COVID-19, which affected its business activities,

23    and *not* from direct physical loss or damage occasioned by the presence of the virus. *See Inns*, 71

24    Cal. App. 5th at 699-705.

25    
26    _____
[3] JRK's Opposition also abandons any mention of the government restrictions that "prohibited residential evictions, allowed tenants to defer rent payments, prohibited the charging of late fees or interest on unpaid rent, and prohibited otherwise normal rent increases during the pandemic," or of the alleged financial losses caused by the pandemic's economic impact on "many of the residential tenants to whom JRK had leased apartments" who became "unable to continue paying rent, have sought and obtained decreased rental rates, or have terminated their leases." Compl. ¶¶ 77, 76.

27    
28    

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment                                   Page 1968 of 2921

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Also, like the insured in *Inns,* in an effort to avoid dismissal, JRK focuses on allegations

2   that the virus must have been present at many of its hotel and apartment properties because of the

3   presence of tenants and employees who tested positive, and that it is "statistically certain" to have

4   been present at all of JRK's properties given the "countless" people entering and inhabiting its

5   properties. *Id.* ¶¶ 52, 73. JRK alleges that the virus remains in the air for hours or days, attaches

6   to property for days, and cannot be removed through routine cleaning. *Id.* ¶¶ 53, 55-56, 58. And

7   JRK contends that "coronavirus particles" "physically alter[] and transform[] [surfaces] into

8   disease-transmitting fomites." *Id.* ¶ 60. JRK also contends that the coronavirus "compromises the

9   physical integrity of the structures it permeates and poses an *imminent risk of physical damage to*

10  *all other structures,*" and that the presence of the virus has rendered JRK's properties "*unusable*

11  *for their intended purpose.*" *Id.* ¶¶ 55, 70 (emphasis added).

12  But JRK does not (and cannot) provide any factual support for its conclusory contentions

13  that the presence of the virus "compromises the physical integrity of the structures it permeates" or

14  that it rendered JRK's properties "unusable for their intended purpose." The *Inns* court rejected as

15  conclusory similar allegations—that "the presence of COVID-19 clearly constitutes the requisite

16  'damage,' as that undefined term is reasonably understood, because its physical presence

17  transforms property, specifically indoor air and surfaces, from a safe condition to a dangerous and

18  potentially deadly condition unsafe and unfit for its intended purpose." 71 Cal. App. 5th at 699-

19  700. As the court observed, "[a]dditional allegations about the science behind the pandemic would

20  not change that analysis." *Id.* at 714. The same reasoning applies to JRK's allegations here.

21  JRK also does not allege it has had to repair any damage to the "physical integrity" of any

22  of its properties. While JRK alleges that it undertook "heightened measures" "far beyond ordinary

23  or routine cleaning or improved ventilation" "in an attempt to repair the properties from their

24  unsafe, hazardous, and potentially deadly condition," Compl. ¶ 61, it does not say what those

25  "heightened measures" were or identify any measures it undertook to repair damage the virus

26  allegedly caused to the "physical integrity" of any of its properties. Nor can it. Enhanced sanitizing

27  or other prophylactic hygiene measures do not qualify as a repair of damage to property. *Out W.*

28  *Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 527 F. Supp. 3d 1142, 1150 (N.D. Cal. 2021).

---

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

1    Indeed, although JRK contends that "no amount of diligence can actually prevent

2    coronavirus from causing physical loss or damage to surfaces and air within insured properties,"

3    *id.*, it acknowledges that the virus only "linger[s] in the air for minutes or hours," and only

4    "survive[s] on surfaces for days," *id.* ¶¶ 42, 55.  JRK thus recognizes the reality that the presence

5    of the COVID-19 virus does not require the kind of remediation and restoration measures that may

6    be needed to rid a property of other substances dangerous to human health, such as asbestos or

7    mold.  The Court of Appeal agrees.  *See Inns*, 71 Cal. App. 5th at 704 (noting with approval another

8    court's observation that "the presence of COVID-19 on Plaintiff's property did not cause damage

9    to the property necessitating rehabilitation or restoration efforts similar to those required to abate

10   asbestos or remove poisonous fumes which permeate property.  Instead, all that is required for

11   Plaintiff to return to full working order is for the [government orders and restrictions to be lifted].")

12   (quoting *First & Stewart Hotel Owner, LLC v. Fireman's Fund Ins. Co.*, No. 21-cv-00344, 2021

13   WL 3109724, at *4 (W.D. Wash. July 22, 2021)).[4]

14   While *Inns* did not foreclose the possibility that some other "invisible airborne agent" might

15   "cause a policyholder to suspend operations," 71 Cal. App. 5th at 704-05, the court *specifically*

16   considered the effect (or lack thereof) of COVID-19 on property, finding that even COVID-19's

17   alleged and assumed presence at the insured's property *did not present a situation where the virus*

18   *was causing physical loss or damage to property*.  *Id.* at 705.  JRK likewise fails to identify any

19   specific direct physical loss or damage to its properties, i.e., physical alteration or permanent

20   dispossession, caused by COVID-19's presence.

21   JRK's pleading deficiencies go deeper, however, for its own allegations betray its

22   contentions that the virus "compromises the physical integrity of the structures it permeates" and

23   that it rendered JRK's properties "unusable for their intended purpose."  For example, JRK alleges

24   _____

25   [4] The *Inns* court noted that the claim at issue did "not involve a scenario in which a business has alleged it was the target of an order requiring its particular premises to close for a period of time due to the demonstrated presence of a person infected with the COVID-19 virus.  For example,

26   such an order hypothetically might be issued to allow a particular business to undertake disinfection procedures or to allow time for the virus to dissipate.  Inns has not suggested that it could amend

27   its complaint to add any such allegations."  *Inns*, 71 Cal. App. 5th at 699 n.12.  But the court did "not decide whether commercial property insurance coverage might be triggered in such a

28   circumstance." *Id.*  In any event, JRK makes no such allegations here.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    that the government orders required tenants to stay at home unless they were engaging in certain

2    limited activities, "such as getting groceries or medicine, or to perform essential jobs," that "its

3    apartment properties face increased exposure when tenants are ordered to 'stay home,'" and that

4    "the public areas such as lobbies and elevators [were] required to be open for safety and building

5    use." Compl. ¶¶ 5, 73.  In so doing, JRK acknowledges that, despite their "increased exposure" to

6    the virus, its residential properties remained open and were used for their intended purpose while

7    the government orders were in effect because JRK's tenants were required to stay at home.

8    Similarly, JRK alleges that "three of [its] properties primarily house senior citizens at

9    particularly high risk of infection, necessitating even greater vigilance by JRK in order to ensure

10    their safety.  In an effort to ensure residents' safety, JRK recently sponsored and coordinated a

11    vaccine drive for senior citizen residents at its La Mirada, California property." Compl. ¶ 74.  None

12    of this establishes physical loss or damage to the properties, which continued to be used for their

13    intended purpose—housing senior citizens.  The *Inns* court observed that "despite [plaintiff's]

14    allegation that the COVID-19 virus was present on its premises, it has not identified any direct

15    physical damage to property that caused it to suspend its operations." 71 Cal. App. 5th at 705.  That

16    observation applies squarely to JRK's Complaint.

17    JRK also does not allege that the financial losses for which it seeks coverage resulted from

18    any direct physical loss or damage caused by the presence of the COVID-19 virus on its properties.

19    Nor can it.  *Inns*, 71 Cal. App. 5th at 703 ("[Plaintiff] cannot reasonably allege that the presence of

20    the COVID-19 virus on its premises is what *caused* the premises to be uninhabitable or unsuitable

21    for their intended purpose.").  And without such a causal connection, JRK's coverage claims fail

22    as a matter of law.  *Id.*

23    **C.    JRK misapprehends the Court of Appeal's holdings in *Inns*.**

24    In an apparent effort to resist the controlling authority of *Inns*, JRK cites a minority of pre-

25    *Inns* California cases that denied motions to dismiss pandemic-related claims for coverage.  Opp.

26    at 13.  Those cases have no application to this matter now that the Court of Appeal has spoken.

27    Even less helpful to JRK is its citation to the minority of out-of-state cases that have denied similar

28

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment                    **Page 1971 of 2921**

1  motions. *Id.* at 13-14 n.12.  JRK does not try to reconcile the holdings in any of those cases with

2  the Court of Appeal's analysis in *Inns*.  It cannot be done.

3      JRK also disputes the requirement that it must show "a distinct, demonstrable, physical

4  alteration of the property" to meet its burden of establishing direct physical loss or damage to

5  property.  Opp. at 15 (arguing that "no such requirement exists for JRK to state a valid claim for

6  physical loss or damage under California law.").  JRK is mistaken.  *Inns* makes that clear:

> [I]n the context of first party property insurance[,] . . . mere loss of use of physical property to generate business income, without any other physical impact on the property, does not give rise to coverage for direct physical loss: "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers *a detrimental economic impact* unaccompanied by a *distinct, demonstrable, physical alteration of the property.*"

12  71 Cal. App. 5th at 705–06 (citations omitted) (last emphasis added).

13      Implicitly conceding that it has not met its burden of showing "a distinct, demonstrable,

14  physical alteration of the property," JRK argues that "setting [that requirement] aside, it is a matter

15  of common sense that the coronavirus is a physical substance that pervades property, attaches to

16  surfaces, tangibly alters the air and renders indoor spaces dangerous."  Opp. at 15.  This "common

17  sense" observation has been rejected by courts across California and across the country.  *E.g.*,

18  *JC/SC LLC v. Travelers Indem. Co. of Conn.*, No. 21-CV-04835, 2022 WL 263157, at *5 (C.D.

19  Cal. Jan. 26, 2022) ("[T]o the extent Plaintiff asserts that the presence of COVID-19 on surfaces of

20  or at the insured properties constitutes direct physical loss of or damage to the properties, numerous

21  district courts within this circuit have also rejected this argument.") (collecting cases); *Barbizon*

22  *Sch. of S.F., Inc. v. Sentinel Ins. Co.*, No. 20-CV-08578, 2021 WL 1222161, at *9 (N.D. Cal. Mar.

23  31, 2021) (collecting cases rejecting the theory that the virus constitutes direct physical loss or

24  damage to property because COVID-19 can remain on surfaces); *Protégé Rest. Partners LLC v.*

25  *Sentinel Ins. Co.*, 517 F. Supp. 3d 981, 988 (N.D. Cal. 2021) ("Even if Plaintiff had known of a

26  specific instance of COVID-19 particles inside of its business, evidence of such would still not

27  qualify as a 'physical change' to the property."); *Wellness Eatery La Jolla LLC v. Hanover Ins.*

28  *Grp.*, 517 F. Supp. 3d 1096, 1106 (S.D. Cal. 2021) (finding that the virus does not cause "physical

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

---

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

9

damage to property because the virus harms human beings, not property"); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 512 F. Supp. 3d 1019, 1024 (N.D. Cal. 2021) (same).[5]

JRK's appeal to "common sense" does not satisfy its burden, as the plaintiff, to allege facts sufficient to state a claim—a burden it has failed to meet here. Indeed, "common sense" shows that COVID-19 never caused any physical loss or damage to JRK's residential and hotel properties.

**D.    JRK fails to allege facts showing that access to any of its properties, or ingress to or egress from any of its properties, was impaired.**

JRK does not respond to Insurers' argument that, beyond the threshold requirement of alleging direct physical loss or damage, JRK also fails to allege the additional requirements for coverage under the Civil or Military Authority and Ingress/Egress provisions. In particular, JRK must also allege that access to its properties was "impaired by any order of civil or military authority" (for Civil or Military Authority coverage), or that ingress to or egress from any of its properties was impaired by direct physical loss or damage to property (for Ingress/Egress

---

[5] Nine federal courts of appeal have concluded there is no coverage in similar cases. *See, e.g.*, *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 21-1311, 2022 WL 66298, *6 (4th Cir. Mar. 7, 2022) ("[N]either the closure order nor the Covid-19 virus caused present or impending material destruction or material harm that physically altered the covered property requiring repairs or replacement so that they could be used as intended. Thus, we hold that the policy's coverage for business income loss and other expenses does not apply to [plaintiff's] claim for financial losses in the absence of any material destruction or material harm to its covered premises. We observe that our holding is consistent with the unanimous decisions by our sister circuits, which have applied various states' laws to similar insurance claims and policy provisions.") (collecting cases) (footnotes omitted); *Santo's Italian Café*, 15 F.4th at 401-402 (noting that the property "has not been tangibly destroyed, whether in part or in full" by the coronavirus, which "did not physically affect the property in the way, say, fire or water damage would"); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) ("Even if the virus was present and physically attached itself to [the insured's] premises, [the insured] does not allege that the virus altered the physical structures to which it attached, and there is no reason to think that it could have done so."); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) ("[W]e do not see how the presence of those particles would cause physical damage or loss to the property."); *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, No. 21-1082-CV, 2022 WL 258569 (2d Cir. Jan. 28, 2022) ("[W]e agree with the district court that the virus's inability to physically alter or persistently contaminate property differentiates it from radiation, chemical dust, gas, asbestos, and other contaminants whose presence could trigger coverage under [plaintiff's] policy."); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 460 (5th Cir. 2022) ("Even if [plaintiff] alleges COVID-19 was present in its restaurants, the civil authority orders did not result from [plaintiff's exposure to the virus."); *Oral Surgeons*, 2 F.4th at 1144 (same); *Mudpie*, 15 F.4th at 892 (same); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 710-711 (10th Cir. 2021) (same); *Ascent Hospitality Mgmt., LLC v. Emps. Ins. Co. of Wausau*, No. 21-11924, 2022 WL 130722, at *3 (11th Cir. Jan. 14, 2022) (same).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

---

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

coverage).  *See* Opening Br. at 13-14.  If anything, JRK's allegations show the opposite—that the government orders forced JRK's tenants to "stay at home except for essential purposes."  Compl. ¶ 62; *see also id.* ¶ 5 ("The Orders . . . permitted residents to leave their homes only for limited purposes such as getting groceries or medicine, or to perform essential jobs.").  JRK also alleges that "countless employees, tenants, and visitors enter[ed] and inhabit[ed] the nearly 100 properties JRK owned at the start of the pandemic."  *Id.* ¶ 73.  Without an impairment of access, there can be no coverage under the Civil or Military Authority or Ingress/Egress coverage provisions.

JRK's argument that the specific orders at issue in this case were issued out of a concern for property damage, Opp. at 17, is also unavailing.  Commenting on the same mayoral order on which JRK relies, the Central District of California recently observed:

> [T]he curiously specific reference to "physically causing property loss or damage" is in the context of an order overwhelmingly concerned with the spread of COVID-19, not any property damage.  There can be no reasonable dispute that the Mayor would have issued the closure order regardless of his purported belief that "physical . . . property loss or damage" was occurring in the city.

*Create Advert. Grp., LLC v. Fed. Ins. Co.*, No. 21-cv-5975, 2022 WL 831479, at *1 (C.D. Cal. Mar. 17, 2022).  The same reasoning applies here.

**E.    JRK concedes it does not meet the requirements for coverage under the Interruption by Communicable Disease provision.**

JRK also fails to establish that it is entitled to coverage under the limited Interruption by Communicable Disease provision.  Although the provision does not require direct physical loss or damage, it provides coverage only if "access to a Location . . . is limited, restricted, or prohibited *as a result of*" an order or decision responding to *the actual presence* of a communicable disease. Jt. Stip., Ex. 1, at GENERALSTAR00000062 (emphasis added).[6]  JRK has not alleged any facts suggesting that this coverage has been satisfied.  It does not identify any "order of an authorized governmental agency regulating the actual presence of communicable disease" or any "decision of

---

[6] As Insurers noted in their opening brief, the Policies' Communicable Disease provision is subject to a program sublimit of $2.5 million. Opening Br. at 14 n.10 (citing Jt. Stip., Ex. 1, at GENERALSTAR00000054). The program sublimit for the Communicable Disease provision precludes any possibility of recovery against the Excess Insurers under that provision. The Ironshore Policy contains an endorsement removing the Communicable Disease coverage provision. *See* Jt. Stip., Ex. 4, at IRONSHORE_000058, Endorsement No. 10.

**Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**                    **Page 1974 of 2921**

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  an Officer of [JRK's] as a result of the actual presence" of the COVID-19 virus on or at JRK's

2  covered locations that "limited, restricted or prohibited" access to any such location in response to

3  the presence of COVID-19 there. *Id.* Nor can it. *See Inns*, 71 Cal. App. 5th at 699 (observing that

4  "as the Orders establish, it was the presence of the virus *throughout* San Mateo and Monterey

5  Counties—not the presence of the virus *specifically* on Inns' premises—that gave rise to the Orders,

6  leading to Inns' suspension of operations.") (emphasis in original). Here, too, it was the presence

7  of the virus throughout the counties in which JRK had properties that gave rise to the stay-at-home

8  orders, not its presence specifically on any of JRK's premises.

9      JRK conceded as much in the amended complaint it filed in the Eastern District of Virginia

10  when it stated: "The limited or prohibited access to JRK properties was a result of the global

11  pandemic and government responses to it, ***not due to an order by a governmental agency or JRK***

12  ***officer arising from the actual not suspected presence of the virus***." Churan Decl., Jan. 21, 2022,

13  Ex. 1 ¶ 81 (emphasis added). JRK made the same allegation in its original complaint in that action.

14  Churan Decl., Mar. 23, 2022, Ex. 1 ¶ 81. JRK thus twice stated categorically that the alleged

15  limitations on or prohibitions of access to JRK's properties were "*not* due to an order by a

16  governmental agency or JRK officer arising from the actual not suspected presence of the virus."

17  *Id.* JRK's refutation of the Communicable Disease requirements was clear.

18      Nevertheless, JRK now tries to distance itself from its admission by arguing that it was not

19  included in the operative complaint in this case. Opp. at 22 n.17. JRK cannot now allege

20  inconsistent facts to try to save its action. The Court of Appeal has made this clear:

> A plaintiff may not avoid a demurrer by pleading facts or positions in an amended
> complaint that contradict the facts pleaded in the original complaint or by
> suppressing facts which prove the pleaded facts false. Likewise, the plaintiff may
> not plead facts that contradict the facts or positions that the plaintiff pleaded in
> earlier actions or suppress facts that prove the pleaded facts false.

21
22
23

24  *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 877 (1992) (internal citation omitted). JRK

25  cannot brush away the legal effect of its prior admissions, for "allegations contained in the

26  plaintiff's complaint" "constitute judicial admissions. As such they are conclusive concessions of

27
28

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment                    Page 1975 of 2921

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    the truth of a matter and have the effect of removing it from the issues." *Castillo v. Barrera*, 146

2    Cal. App. 4th 1317, 1324 (2007).

3        Even without its admission, JRK fails to show entitlement to coverage under the

4    Interruption by Communicable Disease provision because it alleges no *facts* showing that any

5    orders limiting access to its properties were issued due to the actual presence of COVID-19 at

6    specific covered locations, as the provision requires.

7    **F.    To the extent JRK alleges its financial losses were caused by the COVID-19
            virus, those losses fall squarely within the Policies' pollutants-or-contaminants**
8           **and pathogens exclusions.**

9        JRK criticizes Insurers for not citing "a single California state or federal decision barring

10   coverage based on [the pollutants-or-contaminants] exclusion for COVID-19 related losses." Opp.

11   at 23 (emphasis omitted).  As a threshold matter, given that JRK has not met its burden of alleging

12   facts sufficient to establish coverage, there is no need for the Court to reach the Policies' exclusions.

13   The vast majority of courts in California and across the country have found no need to analyze

14   applicable exclusions to coverage because the presence of COVID-19 does not result in covered

15   loss in the first instance.  In any event, California courts have yet to interpret the specific pollutants-

16   or-contaminants exclusion at issue here in the context of pandemic-related coverage claims.[7]  But

17   courts in other states have.

18       The District of Nevada, for example, recently interpreted a similar exclusion with an

19   identical definition of "pollutants or contaminants"—which expressly includes "virus"—and held

20   that it precluded coverage for the plaintiff's pandemic-related financial losses.  *Circus Circus LV,*

21   *LP v. AIG Specialty Ins. Co.*, 525 F. Supp. 3d 1269, 1278 (D. Nev. 2021); *accord Zwillo V, Corp.*

22   *v. Lexington Ins. Co*., 504 F. Supp. 3d 1034, 1041-42 (W.D. Mo. 2020), *appeal dismissed*, No. 21-

23   1015, 2021 WL 2792962 (8th Cir. Mar. 18, 2021) (pollution and contamination exclusion

24   unambiguously barred coverage for plaintiff's claims for COVID-related business interruption).

25

26   ---
     [7] In *AECOM v. Zurich American Insurance Co.*, the court, applying California law, held that a
27   contamination exclusion, which was defined to include "virus," "unambiguously applies to
     Plaintiff's claims. COVID-19 is a virus.  Any alleged loss caused by the actual or suspected presence
     of COVID-19 in Plaintiff's properties is due to the virus, and is, therefore, barred by the plain
28   language of the Exclusion."  No. 21-cv-00237, 2021 WL 6425546, at *8 (C.D. Cal., Dec. 1, 2021).

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1976 of 2921

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    The *Circus Circus* court found that "the SARS-CoV-2 virus and resulting COVID-19 pandemic

2    falls squarely within the policy's pollutants-or-contaminants exclusion." 525 F. Supp. 3d at 1278.

3    It then explained that plaintiff "cannot reasonably claim that SARS-CoV-2 is not a virus," and that

4    plaintiff's "own pleadings support a finding that the virus has been released, dispersed, and

5    discharged into the atmosphere, resulting in infections and transmissions." *Id.* The court also

6    rejected the argument JRK makes here that the pollutants-or-contaminants exclusion, which

7    encompasses health-harming viruses, was limited to the context of traditional or environmental

8    pollution. *Id.*; Opp. at 22-23.

9        Likewise, the Southern District of New York held that a similar exclusion precludes

10    coverage for plaintiff's pandemic-related financial losses. *Northwell Health, Inc. v. Lexington Ins.*

11    *Co.*, No. 21-cv-1004, 2021 WL 3139991 (S.D.N.Y. July 26, 2021). It also rejected the same

12    argument JRK makes that the pollutants-or-contaminants exclusion should be interpreted to apply

13    only to traditional or environmental pollution, explaining:

14        [T]he Policies contain endorsements that define contaminants to include viruses.
         Grouping viruses with environmental and industrial pollutants may be unorthodox,
15        but *[plaintiff] cites no controlling cases construing 'contamination' not to include*
         *one of the terms in its contractual definition.* A court may not interpret an insurance
16        contract in a way that leaves part of the contract meaningless. The Court declines
         to rewrite the unambiguous provision at issue here.
17

18    2021 WL 3139991, at *9 (internal citation omitted) (emphasis added). In so doing, the court

19    distinguished *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15 (N.Y. 2003)—a case on which

20    JRK relies, Opp. at 23—on the grounds that, unlike here, the policy at issue in that case did not

21    define "contaminants" to include  viruses. The other cases JRK cites to argue that the Policies'

22    pollutants-or-contaminants exclusion is limited to traditional or environmental pollution, *see* Opp.

23    at 22-23, are distinguishable on the same grounds—there is no reference to "virus" in the exclusions

24    at issue. *See MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (pollution exclusion in

25    comprehensive general liability policy did not reference viruses); *Century Sur. Co. v. Casino W.,*

26    *Inc.*, 329 P.3d 614, 618 (Nev. 2014) (same).

27        The pathogens exclusions in the Evanston and RSUI policies preclude coverage for JRK's

28    pandemic related financial losses for the same reason: JRK cannot reasonably deny that COVID-

---

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1977 of 2921

19—which it alleges "is not only highly contagious but deadly," Compl. ¶ 48—is a pathogen within

the meaning or express terms of those exclusions.  Moreover, JRK has *no* argument that such

pathogens exclusions are somehow limited to any narrow definition of pollutants or contaminants.

> **G.    JRK's request to amend its Complaint should be denied; its alternative request to hold a decision granting Insurers' motion in abeyance is moot.**

In a one-line request at the end of its Opposition, JRK asks the Court for leave to amend its

Complaint "[t]o the extent [the] Court concludes that JRK has failed to adequately allege an

entitlement to coverage."  Opp. at 24.  However, "[t]he plaintiff has the burden of proving that an

amendment would cure the defect."  *Inns*, 71 Cal. App. 5th at 713 (internal quotation marks and

citation omitted).  Without a showing that a reasonable possibility exists that the defect in the

pleadings can be cured by truthful amendment, leave to amend should be denied.  *See Taxpayers*

*for Improving Pub. Safety v. Schwarzenegger*, 172 Cal. App. 4th 749, 781 (2009).  JRK has not met

its burden.  The complaint at issue is JRK's *third* complaint asserting the same claims for pandemic-

related coverage, and involves temporary government-ordered suspensions that occurred two years

ago.  JRK has had ample time and opportunity to allege additional facts that (it believes) could

bring its claims within the terms of the Policy, but, in the several iterations of its claims to date,

JRK never made any factual allegations that would support coverage.  Any further amendment

would be futile.

Alternatively, JRK requests that the Court hold in abeyance a decision granting Insurers'

motion pending the appeal in *Inns*.  Opp. at 25.  But, the California Supreme Court recently denied

review of *Inns*, which controls.  JRK's request is now moot.

## III.    CONCLUSION

For the reasons presented above and in their opening brief, the Moving Insurers respectfully

request the Court grant their motion for judgment on the pleadings and dismiss JRK's Complaint

in its entirety with prejudice.

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

DATED: March 23, 2022

**ROBINS KAPLAN LLP**

By: *Amy Churan*

Amy M. Churan
Melissa M. D'Alelio

Attorneys For Defendants Ironshore Specialty
Insurance Company; Certain Underwriters at
Lloyd's, London and London market companies
Subscribing to Policy No. (UMR)
B0180PG1902606; Certain Underwriters at
Lloyd's, London and London market companies
Subscribing to Policy No. (UMR)
B0180PG1902611; Certain Underwriters at
Lloyd's, London Subscribing to Policy No. (UMR)
B0180PG1902610; Certain Underwriters at
Lloyd's, London Subscribing to Policy No. (UMR)
B0180PG1903066; Certain Underwriters at
Lloyd's, London Subscribing to Policy No. (UMR)
B0180PG1902622; Ategrity Specialty Insurance
Company; and RSUI Indemnity Company


DENTONS US LLP

*/s/ Julia M. Beckley*
Attorneys for Defendant
American International Group UK Limited
as Subscriber to Policy No. (UMR)
BO180PG1902606
Julia M. Beckley (SBN 247493)
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201
Tel (214) 259-1854
Fax (214) 259-0910
julia.beckley@dentons.com

G. Richard Dodge , Jr. (admitted *pro hac vice*)
1900 K Street NW
Washington, DC 20006
Tel (202)496-7500
Fax (202) 496-7756
rich.dodge@dentons.com

Keith Moskowitz (admitted *pro hac vice*)
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6361
Tel (312) 876-8220
Fax (312) 876 7934
keith.moskowitz@dentons.com

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

6

1

CUMMINS & WHITE, LLP

2

*/s/ Larry M. Arnold*
Attorneys for Defendant

3

Colony Insurance Company
Larry M. Arnold (SBN 060459)

4

Margaret R. Miglietta (SBN 116026)
Noura K. Rizzuto (SBN 291455)

5

2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660-0757

6

Tel (949) 852-1800
Fax (949) 852-8510

7

larnold@cwlawyers.com
mmiglietta@cwlawyers.com

8

nrizzuto@cwlawyers.com

9

STEWART SMITH
William F. Stewart (admitted *pro hac vice*)

10

300 Four Falls Corporate Center
300 Conshohocken Road, Suite 670

11

West Conshohocken, PA 19428
Tel (484) 344-5296

12

Fax (484) 534-9470
WStewart@stewartsmithlaw.com

13

14

KENNEDYS CMK LLP

15

*/s/ Susan Frances Dent*
Attorneys for Defendant

16

Crum & Forster Specialty Insurance Company
Susan Frances Dent (SBN 292900)

17

101 California Street, Suite 1225
San Francisco, CA 94111

18

Tel (415) 323-4460
Fax (415) 323-4445

19

Susan.Dent@kennedyslaw.com

20

Gary S. Kull (*pro hac vice* application pending)
120 Mountain View Boulevard

21

Basking Ridge, NJ 07920
Tel (908) 848-6300

22

Fax (908) 647-8390
Gary.Kull@kennedyslaw.corn

23

24

25

26

27

28

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

7

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1980 of 2921

CLYDE & CO US LLP

/s/ Susan Koehler Sullivan
Attorneys for Defendants
Endurance American Specialty Insurance Company;
and Maxum Indemnity Company
Susan Koehler Sullivan (SBN 156418)
Brett Charles Safford  (SBN 292048)
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600
Facsimile: (213) 358-7650
susan.sullivan@clydeco.us
brett.safford@clydeco.us


DICKINSON WRIGHT RLLP

/s/ Bennet Evan Cooper
Attorneys for Defendant
Evanston Insurance Company
Bennett Evan Cooper (SBN 128544)
800 W. California Avenue, Suite 110
Sunnyvale, California 94086
Tel: (602) 285-5044
Fax: (844) 670-6009
bcooper@dickinsonwright.com


MUSICK, PEELER & GARRETT LLP

/s/ David A. Tartaglio
Attorneys for Defendant
General Star Indemnity Company
David A. Tartaglio (SBN 117232)
624 South Grand Avenue, Suite 2000
Los Angeles, CA 90017-3383
Tel (213) 629-7600
Fax (213) 624-1376
d.tartaglio@musickpeeler.com

WILEY REIN LLP
Benjamin C. Eggert (admitted *pro hac vice*)
Joseph W. Gross (admitted *pro hac vice*)
2050 M Street NW
Washington, DC  20036
Tel (202) 719-7000
Fax (202) 719-7049
BEggert@wiley.law
JGross@wiley.law

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

8

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1981 of 2921

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AKERMAN, LLP

*/s/ Michael R. Weiss*
Attorneys for Defendants
Homeland Insurance Company; and Hallmark
Specialty Insurance Company
Michael R. Weiss (SBN 180946)
601 West Fifth Street, Suite 300
Los Angeles, CA 90071
Tel (213) 688-9500
Fax (213) 627-6342
Michael.Weiss@akerman.com

Bryan G. Scott (*pro hac vice* forthcoming)
100 North Main Street, Suite 2425
Winston-Salem, NC 27101
Tel (336) 296-7104
Fax (336) 296-7010
Bryan.Scott@akerman.com

LEWIS BRISBOIS BISGAARD
& SMITH LLP
Seth I. Weinstein (*pro hac vice* forthcoming)
77 Water Street, 21st Floor
New York, NY 10005
Tel (212) 232-1300
Fax (212) 232-1399
Seth.Weinstein@lewisbrisbois.com


FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Kristopher S. Davis*
Attorneys for Defendant
Mitsui Sumitomo Insurance Company of America
Kristopher S. Davis (SBN 193452)
1800 Century Park East Suite 1500
Los Angeles, CA 90067-1517
Tel (310) 203-4000
Fax (310) 229-1285
kristopher.davis@faegredrinker.com

RIKER DANZIG SCHERER HYLAND
& PERRETTI LLP
Brian E. O'Donnell (admitted *pro hac vice* )
Maura C. Smith (admitted *pro hac vice*)
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Tel (973) 538-0800
Fax (973) 538-1984
bodonnell@riker.com
msmith@RIKER.com

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

19

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1982 of 2921

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PHELPS DUNBAR LLP

*/s/ Jay R. Sever*
Attorneys for Defendant
Scottsdale Insurance Company
Jay R. Sever  (SBN 165859)
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Tel (504) 566-1311
Fax (504) 568-9130
jay.sever@phelps.com

SELMAN BREITMAN LLP
Meka Moore  (SBN 180017)
Damian L. Palombi (SBN 311252)
11766 Wilshire Boulevard, 6th Floor
Los Angeles, CA 90025-6538
Tel (310) 445-0800
Fax (310) 473-2525
mmoore@selmanlaw.com
dpalombi@selmanlaw.com

---

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

20

Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 1983 of 2921

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA )
3
) ss.
COUNTY OF LOS ANGELES )
4

5      I am employed in the County of Los Angeles, State of California. I am over the age of
18 and not a party to the within action; my business address is 2049 Century Park East, Suite
6   3400, Los Angeles, California 90067-3208.

7      On March 23, 2022, I served the foregoing document **REPLY MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS** on the interested parties in this action as follows:
8

9   | Kevin J. Minnick | Attorney for Plaintiff |
    | Sperstus, Landes & Umhofer LLP | JRK PROPERTY HOLDINGS, INC. |
10  | 617 West 7th Street, Suite 200 | |
    | Los Angeles, CA 90017 | |
11  | Tel.: 213.205.6520 | |
    | kminnick@spertuslaw.com | |
12

13

14

15  **[X]    (BY ELECTRONIC SERVICE ):** I caused each document to be sent by electronic
transmission through One Legal through the user interface at www.onelegal.com to all
16  email addresses on the list maintained by One Legal.

17      I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.
18

19      Executed on March 23, 2022 at Los Angeles, California.

20                                          _____
21                                          Jwana Harrold

22

23

24

25

26

27

28

**Exhibit 139 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 1984 of 2921**

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES