# EXHIBIT 146



Gregory Dennison
973.645.4808
gdennison@saiber.com

January 30, 2023

**VIA eCourts**
Honorable David V. Nasta, J.S.C.
Bergen County Courthouse
10 Main Street, 3rd Floor
Hackensack, New Jersey 07601

      Re:    *Urban Edge Properties, et al. v. Allied World Assur. Co. (U.S.) Inc.*
             Docket No.: BER-L-7987-20

Honorable Judge Nasta:

      We respectfully submit this letter brief in lieu of a more formal submission in support of defendant Allied World Assurance Company (U.S.), Inc.'s motion for reconsideration of two discrete parts of this Court's January 10, 2023 Order and Opinion denying Allied World's motion for summary judgment as to Business Interruption[1] coverage, and on the voluntary payment issue. Alternatively, Allied World seeks clarification as to the specific facts warranting partial denial of Allied World's motion.

      Subpart A. of the Business Interruption definition requires Urban Edge to demonstrate the "necessary suspension of your operations at a scheduled location, provided that such suspension…is caused solely and directly by a pollution incident on, at or under a scheduled location." Ex. B. Allied World asserted that Urban Edge[2] could not demonstrate a suspension of its operations, or satisfy the "solely and directly" causation language. While Allied World disagrees with the Court's finding that Urban Edge's reduction of rent collection qualifies as the suspension, this motion focuses on the Court's application of the phrase "solely and directly" to the evidence. Allied World respectfully submits that the decision did not properly apply the Court's formulation of "solely and directly" to the policy language or the evidence Urban Edge put forth in opposition.

      As to the issue of Urban Edge's failure to obtain the requisite consent from Allied World prior to granting rent abatements, Allied World seeks reconsideration on the basis that Urban Edge presented argument but no actual evidence to raise an issue of fact. Alternatively, Allied World requests clarification as to the specific facts it found are disputed in this regard.

---

[1] The Court's Opinion appears to use "Business Interruption" to refer to Subpart A. of the definition.

[2] "Urban Edge" refers collectively to plaintiffs Urban Edge Properties and Urban Edge Properties, LP.
01656992.DOCX

Saiber LLC • 18 Columbia Turnpike, Suite 200 • Florham Park, New Jersey • 07932-2266 • Tel 973.622.3333 • Fax 973.622.3349 • www.saiber.com
Florham Park • Newark • New York • Philadelphia

Exhibit 146 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment      Page 2063 of 2921

Honorable David V. Nasta, J.S.C.
*Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.*
Docket No.:  BER-L-7987-20
January 30, 2023
Page 2

## Legal Standard

The Court's January 10, 2023 Order is considered an interlocutory order. *Vitanza v. James*, 397 N.J. Super. 516, 517 (App. Div. 2008). New Jersey courts have "the inherent power to be exercised in [their] sound discretion, to review, revise, reconsider and modify interlocutory orders at any time prior to the entry of final judgment." *Johnson v. Cyklop Strapping Corp.*, 220 N.J. Super. 250, 257 (App. Div. 1987), *certif. denied*, 110 N.J. 196 (1988).

Unlike reconsideration motions to alter or amend final judgments and final orders under *R.* 4:49-2, a motion for reconsideration of an interlocutory order is governed by the "far more liberal approach" under *R.* 4:42-2. *Brooks v. Twp. of Tabernacle*, No. A-1132-20, 2022 N.J. Super. Unpub. LEXIS 1327, at *14 (App. Div. July 22, 2022) (*citing Lawson v. Dewar*, 468 N.J. Super. 128, 134 (App. Div. 2021)). It does not require a showing that the challenged order was "'palpably incorrect,' 'irrational,' or based on a misapprehension or overlooking of significant material presented on the earlier application." *Lawson*, 468 N.J. Super. at 134. The Court therefore has expansive discretion to modify and clarify its January 10 Order.

## Argument

I. **There is no evidence that the presence of COVID-19 at any Urban Edge property was a "sufficiently independent" proximate cause of the claimed loss to raise a disputed issue of fact.**

In interpreting the phrase "solely and directly," the Court found that "directly" requires proximate causation, Ex. A at 15, and that "solely" "may reasonably impose a requirement that the covered risk be an independently sufficient cause of the interruption." Ex. A at 16. When the Court's interpretations are juxtaposed, "solely and directly" means an "independently sufficient proximate cause."  For purposes of this motion, Allied World accepts this interpretation, which requires Urban Edge to produce evidence that COVID-19 at an Urban Edge property was, alone, sufficient to cause an interruption of its operations at that location.[3]

---

[3] While Allied World submits that the phrase "sufficiently independent" is clear on its face, other jurisdictions have applied this tort and criminal law concept consistent with Allied World's formulation. *See, Burrage v. United States,* 571 U.S. 204, 215 (2014) (heroin use not "independently sufficient cause" of death from overdose where no evidence victim "would have died from the heroin use alone").  By contrast, *see* Restat 3d of Torts: Liability for Physical and Emotional Harm, § 27, for example of multiple sufficient causation:

> Rosaria and Vincenzo were independently camping in a heavily forested campground. Each one had a campfire, and each negligently failed to ensure that the fire was extinguished upon retiring for the night. Due to unusually dry forest conditions and a stiff wind, both campfires escaped their sites and began a forest fire. The two fires, burning out of control, joined together and engulfed Centurion Company's hunting lodge, destroying it. Either fire alone would have destroyed the lodge. Each of Rosaria's and Vincenzo's negligence is a factual cause of the destruction of Centurion's hunting lodge.

01656992.DOCX

Honorable David V. Nasta, J.S.C.
*Urban Edge Properties, et al. v. Allied World Assur. Co. (U.S.) Inc.*
Docket No.: BER-L-7987-20
January 30, 2023
Page 3

Allied World respectfully submits that the Court did not properly apply this standard to the record before it, as it is unclear what facts the Court relied on to find a disputed issue of fact. The Court's discussion of Business Interruption concludes by stating that Urban Edge established a genuine issue of material fact for trial because, "[i]t could be reasonably argued that it was the presence of COVID-19 "on, at, or under" the scheduled locations that caused Urban Edge's interruption; indeed, it was the presence of COVID-19 practically everywhere that proximately caused the closure orders." Ex. A at 16. Allied World submits that the Court's conclusion is inconsistent with the language of the Policy and the independently sufficient proximate cause standard for two reasons.

### A. There is no evidence that COVID-19 at Urban Edge's tenants' locations was an independently sufficient proximate cause of their failure to pay rent.

First, the Business Interruption definition is not satisfied by losses caused by COVID-19 "practically everywhere." While Allied World agrees that the Policy does not require the pollution incident to be confined to only scheduled locations, Subpart A. specifically requires that pollution – here, COVID-19 - "on, at or under" each scheduled location be an independently sufficient proximate cause of each tenant's failure to pay rent. Allied World respectfully submits that the Court's Opinion failed to identify any evidence that any Urban Edge tenants failed to pay rent because of COVID-19 at their location necessary to create a disputed issue of material fact. *See, R.* 4:46-2(c)("The court shall find the facts and state its conclusions in accordance with *R.* 1:7-4); *see also, Great Atlantic & Pacific Tea Co., Inc. v. Checchio*, 335 N.J. Super. 495, 498 (App. Div. 1995) ("A trial judge is obliged to set forth factual findings and correlate them to legal conclusions. Those findings and conclusions must then be measured against the standards set forth in [*Brill*]").

On reconsideration, Allied World submits there is no evidence before the Court to raise an issue of fact that the presence of COVID-19 at any of Urban Edge location was an independently sufficient proximate cause of any tenant's failure to pay rent. Urban Edge's General Counsel, Robert Milton, testified as a corporate designee that Urban Edge:

- did not know if a tenant ever gave notice that it could not pay rent because COVID-19 was on their premises (Ex. C, Milton Dep., 83:10-17);

- could not "speculate as to each tenant's state of mind" on whether to pay or not pay rent. *See id.* at 87:1-4; and

- did not know whether Urban Edge maintained records as to tenant reasons for not paying rent. *See id.* at 88:9-16.

Urban Edge's damages expert, Clark Schweers, testified he did not determine the reasons

01656992.DOCX

Exhibit 146 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 2065 of 2921

Honorable David V. Nasta, J.S.C.
*Urban Edge Properties, et al. v. Allied World Assur. Co. (U.S.) Inc.*
Docket No.: BER-L-7987-20
January 30, 2023
Page 4

why individual tenants failed to pay rent (Ex. D, Schweers Dep., 143:5-20), or whether individual tenants were generating revenue sufficient to pay their rents. *See id.* at 128:8-129:12.

Urban Edge's medical statistics expert, Dr. Lemuel Moye, testified he did not issue an opinion regarding whether any specific Urban Edge properties closed because COVID-19 was detected at the location, or the reason any tenant stopped paying rent.[4]

Urban Edge included affidavits from employees Joe DeGiorgio and Roger Real with their opposition. Ex. G. Both Mr. DeGiorgio and Mr. Real attested that they purportedly "received a significant amount of communication from Urban Edge tenants beginning in March 2020 informing Urban Edge that certain tenants' employees were sick and, because of the sick employees during the pandemic, certain of the tenants closed their retail locations." DeGiorgio Aff. at ¶10; Real Aff. at ¶22. Aside from the fact that Urban Edge made no effort to show such purportedly closed tenants failed to pay rent, such hearsay statements are inadmissible to raise an issue of fact to defeat summary judgment. *Jeter v. Stevenson*, 284 N.J. Super. 229, 233 (App. Div. 1995)("evidence submitted in support of a motion for summary judgment must be admissible); Comment to *R.* 1:6-6 (rule requirements are not met by affidavits containing argument, other forms of hearsay and general factual or legal conclusions).

As such, Allied World respectfully requests this Court reconsider its findings that an issue of fact exists as to whether the presence of COVID-19 at Urban Edge's tenants' locations was an independently sufficient proximate cause of their failure to pay rent, and grant summary judgment to Allied World. Alternatively, Allied World requests that the Court identify the specific facts giving rise to the factual dispute warranting denial of its motion in this regard so that it may properly prepare to try such factual dispute.

### B. The Court's finding that "the presence of COVID-19 practically everywhere proximately caused the closure orders" is not part of the analysis under Subpart A.

The Court's conclusion at the end of its Business Interruption discussion held that "[i]t could be reasonably argued that it was the presence of COVID-19 "on, at, or under" the scheduled locations that caused Urban Edge's interruption; indeed, it was the presence of COVID-19 practically everywhere that proximately caused the closure orders." Ex. A at 16. Allied World respectfully submits that this conclusion conflated Subpart A. of the business interruption definition with contingent business interruption.

Subpart A., as discussed above, can be satisfied only by an independently sufficient proximate causal link between the presence of COVID-19 at Urban Edge's tenants' locations and such tenants' failure to pay rent. Governmental orders do not factor into the analysis under Subpart A. This provision does not provide coverage for losses caused by government closure orders.

---

[4] (Ex. E, Moye Dep. 14:2-13; 122:21-123:15; 144:6-8; 144:25-145:5).

01656992.DOCX

Honorable David V. Nasta, J.S.C.
*Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.*
Docket No.:  BER-L-7987-20
January 30, 2023
Page 5

To the extent the Court's finding that "the presence of COVID-19 practically everywhere…proximately caused the closure orders" has any potential relevance, it would be with respect to that aspect of the contingent business interruption definition that requires that closures by governmental orders that be "solely and directly" the result of a pollution incident at the independent location. However, the Court granted summary judgment to Allied World on contingent business interruption because Urban Edge could not demonstrate the requisite denial of access to its locations, even if such denial need only be partial.[5]

As such, Allied World respectfully submits that the cause and impact of any governmental orders cannot satisfy the requirements of Subpart A. of the business interruption definition, and no other basis for denying summary judgment to Allied World in this regard is identified in the Court's opinion. Allied World respectfully requests that the Court grant reconsideration of its denial of the Business Interruption prong of its motion, and enter summary judgment accordingly.

**II. The record fails to establish a triable issue of fact that Allied World disclaimed coverage before Urban Edge granted rent abatements.**

The Court held that because both Urban Edge and Allied World presented evidence and argument regarding whether Allied World repudiated coverage, that there remain disputed issues of fact. Allied World recognizes that issues of credibility are properly resolved at trial. However, Allied World respectfully submits Urban Edge did not provide any evidence to satisfy its burden to establish a repudiation.

New Jersey's Model Jury Charge 4.10M ANTICIPATORY BREACH (Approved 5/98; Revised 7/10) requires a definite and clear repudiation. The charge states that "[i]f the defendant clearly indicates through words or conduct before the time for performance has arrived, that the defendant would not or could not perform the contract, the plaintiff would be entitled to treat that indication as a breach . . .  [t]o qualify as a breach, the defendant's indication of non-performance must have been definite and clear."  Urban Edge has not produced any evidence of record upon which a reasonable jury could find 1. Allied World made a "definite and clear" indication of non-performance, or 2. Reflecting a belief that Allied World had denied coverage. Urban Edge presented only <u>arguments</u> regarding the substance of a phone call between the parties but failed to support those arguments actual evidence, such as an affidavit from a participant on the call. The only <u>evidence</u> submitted was an email from Mr. Milton after the call which unequivocally shows that he understood that Allied World had not denied coverage. (Ex.

---

[5] "Urban Edge has admitted that it could continue some of its operations at all relevant times. It has not alleged that it was prohibited by the government from entering its properties in any way, at any time. Thus, there was not even a partial denial of access, and Urban Edge's claim for Contingent Business Interruption coverage must fail as a matter of law." Ex. A at 19.

01656992.DOCX

Exhibit 146 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 2067 of 2921

Honorable David V. Nasta, J.S.C.
*Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.*
Docket No.:  BER-L-7987-20
January 30, 2023
Page 6

F at AWAC009026). Urban Edge has not presented any evidence that it granted abatements because it believed that Allied World had disclaimed, let alone definite and clear evidence that would be required to present to the fact finder.

    Alternatively, if the Court is unwilling to reconsider its denial of Allied World's motion on the voluntary payment issue, Allied World respectfully requests that the Court identify the evidence supporting Urban Edge's repudiation argument so that Allied World can prepare to try the issue before a jury.

    We thank the Court for its attention to this matter.

                                  Respectfully submitted,

                                  GREGORY DENNISON
                                  LISA C. WOOD
                                  RAFAEL A. LLANO

01656992.DOCX

Exhibit 146 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 2068 of 2921