# EXHIBIT 147

**BLANK ROME LLP**
*A Pennsylvania LLP*
STEPHEN M. ORLOFSKY (ID 012431974)
New Jersey Resident Partner
MICHAEL R. DARBEE (ID 119682014)
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Tel.: 609-750-2646
Fax: 609-897-7286
Stephen.Orlofsky@BlankRome.com
Michael.Darbee@BlankRome.com

**FERRO LABELLA & WEISS L.L.C.**
CHRISTOPHER L. WEISS (ID 033391992)
RUSSELL T. BROWN (ID 044391999)
The Landmark Building
27 Warren Street, Suite 201
Hackensack, NJ 07601
Tel.: 201-489-9110
Fax: 201-489-5653
CWeiss@ferrolabella.com
RBrown@ferrolabella.com

**BLANK ROME LLP**
Jared Zola (*admitted pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Tel.: 212-885-5000
Fax: 212-885-5001
Jared.Zola@BlankRome.com

**BLANK ROME LLP**
Kyle P. Brinkman (*admitted pro hac vice*)
Steven J. Roman (*admitted pro hac vice*)
1825 Eye Street NW
Washington, DC 20006
Tel.: 202-420-2200
Fax: 202-420-3171
Kyle.Brinkman@BlankRome.com
Steve.Roman@BlankRome.com

*Attorneys for Plaintiffs Urban Edge Properties and Urban Edge Properties LP*

| | |
|---|---|
| URBAN EDGE PROPERTIES, and URBAN EDGE PROPERTIES LP, <br><br> *Plaintiffs*, <br><br> v. <br><br> ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., and GREENWICH INSURANCE COMPANY, <br><br> *Defendants*. | SUPERIOR COURT OF NEW JERSEY <br> BERGEN COUNTY LAW DIVISION <br> Docket No. BER-L-7987-20 <br><br> CIVIL ACTION <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.'S MOTION FOR RECONSIDERATION** |

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 2069 of 2921**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

PROCEDURAL HISTORY ................................................................................ 3

ARGUMENT ................................................................................................. 5

    I.      LEGAL STANDARD ............................................................................ 5

    II.     THERE IS NO BASIS TO RECONSIDER THE DENIAL OF SUMMARY
          JUDGMENT AS TO THE BUSINESS INTERRUPTION CLAIM.................... 7

          A.    AWAC Identifies No Injustice in the Court's Causation Holding............. 7

          B.    AWAC'S Misconstruction of the Order Regarding the Virus's
               Omnipresence Falls Well Short of Overcoming the Burden Required
               for Reconsideration.................................................................... 8

          C.    The Record Is Replete With Competent Evidence Concerning
               Causation, Which Properly Defeated AWAC's Motion For
               Summary Judgment ................................................................... 9

               1.    AWAC Acknowledged That Its Policy Provides Coverage......... 10

               2.    The Court Correctly Held That the Evidence Supports the
                    Conclusion of What Operations Urban Edge Provides................ 11

               3.    The Court Correctly Held That Urban Edge Proffered
                    Competent Evidence Showing That Its Suspension of
                    Operations Was Caused By The Presence of the COVID-19
                    Virus................................................................................ 12

    III.    AWAC FAILED TO DEMONSTRATE THAT THE COURT'S
          MITIGATION AND WAIVER DECISION SHOULD BE
          RECONSIDERED ........................................................................... 18

CONCLUSION .............................................................................................. 22

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.D. v. Morris County Bd. of Soc. Servs.*,
353 N.J. Super. 26 (App. Div. 2002)...................................................................15

*Borough of Berlin v. Remington & Vernick Eng'rs*,
337 N.J. Super. 590 (App. Div. 2001)..................................................................15

*Brill v. Guardian Life Ins. Co. of Am.*,
142 N.J. 520 (1995).............................................................................................17

*Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*,
20 F.4th 303 (7th Cir. 2021)................................................................................11

*Great Atl. & Pac. Tea Co., Inc. v. Checchio*,
335 N.J. Super. 495 (App. Div. 2000)....................................................................6

*J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*,
58 N.Y.S.3d 38 (1st Dep't 2017)..........................................................................18

*Johnson v. Cyklop Strapping Corp.*,
220 N.J. Super. 250 (App. Div. 1987).....................................................................5

*Lawson v. Dewar*,
468 N.J. Super. 128 (App. Div. 2021).....................................................................5

*Lombardi v. Masso*,
207 N.J. 517 (2011) ...........................................................................................1, 5

*Mettinger v. Globe Slicing Mach. Co., Inc.*,
153 N.J. 371 (1998) ...............................................................................................5

*NL Indus., Inc. v. Commercial Union Ins. Co.*,
926 F. Supp. 446 (D.N.J. 1996).......................................................................18, 19

*Ventrice v. Lexington Ins. Co.*,
2022 WL 3013078 (D.N.J. July 28, 2022)............................................................19

**Statutes**

Rule 1:7-4 .......................................................................................................5, 6, 7

Rule 3:29 .................................................................................................................6

Rule 4:42-2 ..........................................................................................................2, 5

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

Rule 4:46-2(c) ..................................................................................................5, 6

**Other Authorities**

S. Pressler, *Current NJ Court Rules,* comment to R. 4:40-2 (1991) ......................................... 17

WINDT, 1 Insurance Claims and Disputes § 3:10 (6th ed.) ...................................................... 18

iii

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 2072 of 2921**

## PRELIMINARY STATEMENT

Defendant Allied World Assurance Company (U.S.) Inc.'s ("AWAC") motion for reconsideration (the "Motion") falls woefully short of warranting reconsideration of this Court's January 10, 2023 Order (the "Order"), which denied AWAC summary judgment on the Business Interruption insurance coverage claim of Plaintiffs Urban Edge Properties and Urban Edge Properties LP (collectively, "Urban Edge"). In the context of interlocutory orders, the New Jersey Supreme Court warns against "vexatious, repetitive motions for reconsideration by a disappointed litigant,"[1] yet that is precisely what the Motion attempts. AWAC's arguments for reconsideration make no serious effort to deal with the disputed material facts contained in more than 3,990 pages of briefing on its summary judgment motion, including fact statements, exhibits, deposition testimony, and certifications filed by the parties, as well as the substantial and engaging oral argument on the summary judgment motion. After presentation of this information, the Court issued a thorough, well-reasoned, 21-page Order denying AWAC's motion for summary judgment on Urban Edge's Business Interruption claim and its alleged partial Waiver of that claim. Now, with an unchanged legal landscape and the same set of facts comprehensively presented on summary judgment, AWAC demands that the Court reach a different conclusion. AWAC is not entitled to a second bite at the apple.

AWAC burdens the Court and Urban Edge with the same arguments it made in extensive briefing and oral argument on its failed bid for summary judgment. Those failed arguments are repackaged, with the only addition being limited to AWAC's unfounded criticism of the Court's well-reasoned holdings on the Business Interruption and Mitigation/Waiver issues decided by the Order. On this record, AWAC's request for reconsideration is unwarranted and should be denied.

---

[1] *Lombardi v. Masso*, 207 N.J. 517, 537 n.6 (2011).

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

The inadequacies of AWAC's Motion start early, when AWAC fails to state the applicable standard for relief governing motions for reconsideration. It relies instead on the unremarkable, hornbook premise that the Court's Order denying summary judgment is an interlocutory order that a trial court may modify. That basic concept cannot be stretched into a proxy for a "standard of relief" governing AWAC's Motion. Contrary to AWAC's "may modify" premise, motions for reconsideration are rarely granted. Rule 4:42-2 imposes a burden on the movant. Specifically, Rule 4:42-2 expressly requires "sound discretion" and the "interest of justice" to reconsider and, ultimately, modify an interlocutory order. "Sound discretion" and the "interest of justice" do not mean that a trial judge may grant a motion for reconsideration on the regurgitated arguments that AWAC advances here. A "disappointed litigant" that merely disagrees with the result does not overcome the burden imposed on a moving party. Nor is reconsideration a substitute for an appeal.

Urban Edge submits that AWAC has not and cannot meet its burden for reconsideration. Even if, assuming *arguendo*, the Court may be inclined to reconsider its Order, however, the question becomes whether AWAC can overcome the stringent standard of relief required of a movant seeking summary judgment to have central facts of this insurance dispute summarily decided by the Court and not a jury. AWAC did not and cannot meet that burden previously or in its current Motion. As the Court has already held:

> This Court's obligation in the instant matter is limited by the rule and case law governing the review of summary judgment applications. The review and analysis set forth herein does not constitute final and binding decisions on the merits of the myriad of issues and arguments presented to the Court. Although the matter and issues are complex and with potential broad implication the Court's assignment here is simple. Are sufficient questions of fact presented to the Court to indicate a need for review and resolution by a finder of fact? The answer at this juncture is yes.

Order at 20.

Urban Edge respectfully submits that the Court should reaffirm its prior well-reasoned

2

Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 2074 of 2921

Order denying AWAC's motion for summary judgment on the Business Interruption and Mitigation/Waiver issues and summarily deny AWAC's motion for reconsideration, as well as its alternative request that the Court list the specific evidence on which it relied, which is equally unmeritorious and unsupported by New Jersey law.

## PROCEDURAL HISTORY

Urban Edge provides for purposes of this Opposition a truncated version of the case's procedural history and incorporates by reference the summary judgment record before the Court.

Urban Edge commenced this action on December 23, 2020. *See* SAF ¶ 1.[2] AWAC did not move to dismiss and instead filed its Answer on March 8, 2021. *See id.* ¶ 2. Urban Edge paid more than $400,000 of premiums to AWAC for a $25 million Pollution Liability Insurance Policy (the "Policy") that expressly provides coverage for viruses (such as SARS-CoV-2, which causes COVID-19) and business interruption for lost rental income. *See id.* ¶¶ 14, 18, 136–37. Unlike the vast majority of insurance policies involved in other COVID-19 business interruption lawsuits, the Policy does not require physical loss or damage to trigger coverage, and it does not exclude losses caused by or otherwise involving viruses or communicable/infectious diseases. *See id.* ¶¶ 15–16, 24. In fact, the Policy expressly *covers* viruses. *See id.* ¶¶ 20–22, 27.

During fact discovery, Urban Edge produced over 844,000 pages to AWAC in response to AWAC's requests for production. *See id.* ¶ 5. Urban Edge responded to AWAC's interrogatories in depth, with citations to the factual record. *See id.* ¶ 6. Despite Urban Edge identifying *49 individuals with relevant knowledge* in its Interrogatory Responses (38 of whom are current or former Urban Edge employees), AWAC deposed only two Urban Edge corporate designees. *See*

---

[2] Citations to the "SAF" refer to Urban Edge's November 22, 2022 Statement of Additional Facts filed in opposition to summary judgment concurrently with its Response to AWAC's Statement of "Undisputed" Facts.

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**          **Page 2075 of 2921**

*id.* ¶¶ 7, 47. It then deposed Urban Edge's two expert witnesses. *See id.* ¶ 8. Urban Edge deposed

five AWAC fact witnesses and AWAC's three experts. *See id.* ¶¶ 9–10. This lengthy and expensive

fact and expert discovery concluded in September 2022.

On October 25, 2022, AWAC filed a motion for summary judgment, seeking to (1) prevent

this matter from being presented to a fact finder and (2) hide from the unique Policy it sold to

Urban Edge and all of the facts and context surrounding the sale of the Policy. With its motion

contending that no factual disputes existed, AWAC asserted 88 separate fact paragraphs, of which

Urban Edge disputed 66 (or 75%) with citation to significant supporting record evidence. *See*

*generally* Plaintiffs' Response AWAC's Statement of "Undisputed" Facts. Urban Edge opposed

AWAC's motion on November 22, 2022. In opposition, Urban Edge asserted 160 separate fact

paragraphs, of which AWAC disputed 109 (or 68%). *See generally* SAF; AWAC's Response to

Urban Edge's Counterstatement of Undisputed Material Facts.[3] AWAC filed reply papers on

December 8, 2022. The Court held thorough oral argument via video hearing conducted on

December 16, 2022, in which it heard from the parties for more than two hours. *See generally*

Certification of Christopher L. Weiss, Esq. dated February 9, 2023 at Ex. A (Summary Judgment

Oral Argument Transcript dated Dec. 16, 2022 (the "Transcript")).

On January 10, 2023, the Court issued a 21-page Order explaining the basis for its decision

granting in part and denying in part AWAC's motion for summary judgment. *See* Order. The Court

denied AWAC's motion as to Business Interruption and Waiver, finding that genuine issues of

material fact exist that require a jury trial to resolve. *See id.* at 11–16, 19–20. The Court granted

AWAC's motion as to Contingent Business Interruption. *See id.* at 16–19.

---

[3] Although mislabeled by AWAC in response, Urban Edge's counterstatement was properly titled "Additional Material Facts Highlighting the Parties' Dispute." SAF at 44.

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

## ARGUMENT

### I.   LEGAL STANDARD

"[A]ny order or form of decision which adjudicates fewer than all the claims as to all the parties shall not terminate the action as to any of the claims, and it shall be subject to revision at any time before the entry of final judgment *in the sound discretion of the court in the interest of justice*." R. 4:42-2(b) (emphasis added); *see also Lawson v. Dewar*, 468 N.J. Super. 128, 134 (App. Div. 2021). "Although the rule is expansive, the power to reconsider an interlocutory order should be exercised *only for good cause shown and in the service of the ultimate goal of substantial justice*." *Lombardi v. Masso*, 207 N.J. 517, 536 (2011) (internal quotation marks and citations omitted) (emphasis added).

New Jersey law "emphasize[s] that the court's exercise of discretion is not subject to wanton invocation or unfettered judicial response." *Johnson v. Cyklop Strapping Corp.*, 220 N.J. Super. 250, 263 (App. Div. 1987), *disagreed with on other grounds by Mettinger v. Globe Slicing Mach. Co., Inc.*, 153 N.J. 371 (1998). The New Jersey Supreme Court's decision in *Lombardi* addressing a trial court judge's "exercise of his power to reconsider a previous interlocutory ruling, should *not be read as approving vexatious, repetitive motions for reconsideration by a disappointed litigant or as limiting, in any way, a judge's power to sanction such conduct*." *Lombardi*, 207 N.J. at 537 n.6 (emphasis added).

AWAC's Motion does not even cite the requisite standard and does not come close to showing an injustice created by the Court's Order that would warrant modification or alteration on reconsideration. As a result, the Court should reject the Motion.

Additionally, AWAC's unsupported request for a statement of the specific evidence on which the Court relied is without merit. AWAC cites Rule 4:46-2(c), which states, in pertinent part, that the "court shall find the facts and state its conclusions in accordance with R. 1:7-4."

5

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

However, AWAC fails to cite Rule 1:7-4, which states, in relevant part: "The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, *on every motion decided by a written order that is appealable as of right*, and also as required by R. 3:29." Rule 1:7-4 (emphasis added) (Rule 3:29 addresses criminal matters and, thus, is inapplicable).

Because—as AWAC admits—the Order is interlocutory and, thus, not appealable as of right, it is not subject to Rule 1:7-4. Moreover, denial of summary judgment does not require *finding* any facts at all—only *concluding*, as the Court did in the Order, that there are fact disputes to be tried. There is no requirement to list the record evidence on which the Court relied to conclude that fact issues exist for trial. The lone case AWAC cited in "support" of this argument is inapposite. In that case, the trial court *granted* summary judgment on the parties' cross-motions pursuant to Rule 4:46-2(c), disposing of all parties' claims and defenses (resulting in a final judgment subject to R. 1:7-4), but issued a "brief opinion of little more than two pages" that was "devoid of analysis or citation to even a single case." *Great Atl. & Pac. Tea Co., Inc. v. Checchio*, 335 N.J. Super. 495, 497, 498 (App. Div. 2000). AWAC's attempt to equate the trial court order in that case to this Court's 21-page Order is misleading, at best.

AWAC asks for the disputed facts "so that it may properly prepare to try such factual dispute." Motion at 4. This request is illogical. The parties will exchange exhibit and witness lists before trial and will have the opportunity to file *in limine* motions and otherwise make objections at trial. However, Urban Edge will present both disputed and undisputed facts to the jury because presenting only the facts in dispute would leave the jury without context to consider the case in its entirety. Accordingly, granting AWAC's alternative request for a list of the factual issues to be decided by the jury would create unnecessary delay. The Court, however, need not consider the

6

impact of such delay because <u>Rule</u> 1:7-4 requires the details of "specific evidence" only where an appeal is granted as of right, which is not the case with the Court's summary judgment Order.

## II.    THERE IS NO BASIS TO RECONSIDER THE DENIAL OF SUMMARY JUDGMENT AS TO THE BUSINESS INTERRUPTION CLAIM

### A.    AWAC Identifies No Injustice in the Court's Causation Holding

AWAC focuses on and mischaracterizes one sentence within the Court's Order concerning the Policy's causation requirement and then uses this mischaracterization as a springboard to improperly cloak an appeal as a motion for reconsideration. AWAC fails to identify any basis for the Court to revisit "in the interest of justice" its well-reasoned Business Interruption holding. The Motion did not state any injustice because the Court's Order did not create any injustice.

Subheading "B" on page 14 of the Order states: "'Solely and directly' requires a sufficient, proximate cause." Order at 14. The Court then correctly explains New Jersey's adherence to "Appleman's rule" of causation when considering "directness" of a cause to a result. *Id.* (citations omitted). Further, the Order holds that in New Jersey a proximate cause analysis is applied to determine whether a loss is direct under an insurance policy. *See id.* Turning to the Policy's undefined use of the word "solely," the Court correctly held that "solely" cannot mean "exclusively" because such an interpretation would improperly make entire coverage grants in the Policy illusory. *See id.* at 15.

AWAC centers the spotlight on the following sentence: "The word 'solely' may reasonably impose a requirement that the covered risk be an independently sufficient cause of the interruption." *Id.* at 16. It then contorts the Court's language in that sentence in a strained effort to impose a burden on Urban Edge that does not exist in the Policy and the Court expressly rejected. Concentrating on the sentence quoted above, AWAC states that it "accepts this interpretation, which requires Urban Edge to produce evidence that COVID-19 at an Urban Edge property was,

7

*alone*, sufficient to cause an interruption of its operations at that location." Motion at 2 (emphasis added). AWAC's clumsily concocted burden contravenes the Order, which rejected AWAC's position that "sole" means "exclusive" causation as used in the Policy and further held that intervening causes do not preclude coverage. *See* Order at 15–16.

AWAC's improper attempt to reargue its prior, failed motion is underscored by its omission of the immediately following sentences after the one on which it focuses, which state: "The word [solely] does not preclude intermediate causes, nor does it require that the covered risk be a necessary condition of the interruption. The word merely requires that the covered risk be an independently sufficient cause of the interruption." *Id.* at 16. The Order makes clear that it does not adopt a strained tort or criminal liability concept of causation as AWAC attempts to do by footnote in the Motion. The Order is clear on its face: "Solely and directly" requires a sufficient, proximate cause; it does not preclude intermediate causes, nor does it require that the covered risk be a necessary condition of the interruption. There is no "injustice" for the Court to reconsider.

### B.   AWAC'S Misconstruction of the Order Regarding the Virus's Omnipresence Falls Well Short of Overcoming the Burden Required for Reconsideration

AWAC also misconstrues by carefully cherry-picking the language in the Order regarding the omnipresence of the COVID-19 virus. AWAC takes issue with the last paragraph of the section of the Order denying summary judgment as to Business Interruption but points only to the second clause of the first sentence. The sentence states, in full: "It could be reasonably argued that it was the presence of COVID-19 'on, at, or under' the scheduled locations that caused Urban Edge's interruption; indeed, it was the presence of COVID-19 practically everywhere that proximately caused the closure orders." Order at 16. Contrary to AWAC's misreading, the second clause of the sentence (appearing after the semicolon) emphasizing the omnipresence of the virus and its relation to governmental closure orders does nothing to detract from the first clause of the sentence that

8

conclusively states it "*could be reasonably argued that it was the presence of COVID-19 'on, at, or under' the scheduled locations that caused Urban Edge's interruption*." *Id.* (emphasis added).

Indeed, just the opposite is true; the second clause underscores the first. It merely emphasizes that the virus also was at locations other than Urban Edge's shopping centers and malls and causing other results in addition to disrupting Urban Edge's operations. The face of the Order makes this clear in the very next sentence that the Motion tellingly omits: "The words 'on, at, or under' do not restrict the Pollution Incident to *only* the scheduled locations where the incident is so severe that it extends beyond the boundaries of the insured's premises." *Id.* (emphasis in original). The Order needs no clarification, and AWAC demonstrated no injustice to reconsider.

AWAC grasps at straws in arguing that, merely by using the words "closure orders" in the section of the Order denying summary judgment as to Business Interruption, the Court has erred. AWAC goes so far as to argue that except for the closure orders "no other basis for denying summary judgment to Allied World in this regard is identified in the Court's opinion." Motion at 5. That is incorrect. *See, e.g.*, Order at 9, 13, 14, 16, 20–21. Urban Edge proffered substantial competent evidence (including from its expert Dr. Lemuel Moyé), that the virus was present at its scheduled locations before those locations closed and repeatedly afterwards during the business interruption period causing it to suspend its operations. *See, e.g.*, *infra* Section II.C.3.

### C. The Record Is Replete With Competent Evidence Concerning Causation, Which Properly Defeated AWAC's Motion For Summary Judgment

The Policy's Business Interruption coverage endorsement defines "business interruption," in relevant part, as: "The necessary suspension of your operations at a **scheduled location** . . . caused solely and directly by a **pollution incident** on, at or under a **scheduled location**." SAF ¶ 139.

The Court correctly held that the extensive evidence (as addressed in briefing, fact

9

statements, exhibits, and oral argument) presented in opposition to summary judgment provided

competent evidence of Urban Edge's suspension of operations caused solely and directly by the

presence of the COVID-19 virus at, on, or under its shopping centers and malls creating a genuine

issue of material fact.[4] AWAC has not met its burden of showing any injustice warranting

reconsideration of that conclusion; AWAC's disappointment is insufficient for reconsideration.

### 1.   *AWAC Acknowledged That Its Policy Provides Coverage*

AWAC's underwriter acknowledged that AWAC was "eager" to obtain Urban Edge's

business and highlighted "enhancements" to the AWAC Policy, including that it did <u>not</u> exclude

"communicable disease" and did provide "business interruption coverage." *Id.* ¶ 24. On April 3,

2020, one of AWAC's most senior underwriters in its Environmental Division, Helen Eichmann,

wrote an e-mail to all other underwriters in AWAC's Environmental Division instructing them

that, as of that date, it was *mandatory* for *all* new and renewed "SPL2" Pollution Liability

insurance policies (shorthand for the policy AWAC sold to Urban Edge) to include an *Infectious*

*Disease Exclusion* or a *COVID-19 Exclusion*, and AWAC was *no longer offering* the endorsement

that adds *"viruses"* to the definition of "pollutant" (that it sold to Urban Edge). *See* SAF ¶ 28.

Further, in March 2020, AWAC created the "Infectious Disease Exclusion" to replace the

virus coverage that AWAC sold to Urban Edge and others. When asked about whether the AWAC

Policy provides coverage for COVID-19 claims, Ms. Eichmann testified that "certainly there was

a pandemic going on and the pandemic was caused by a virus, and some of my policies had the

---

[4] While AWAC concedes that "suspension of operations" is not the subject of this Motion, it nonetheless mischaracterizes the Court's holding throughout the Motion. The Order does not hold that "each tenant's failure to pay rent" equates to Urban Edge's suspension of operations, as AWAC repeatedly and erroneously suggests. *See* Motion at 2–4. The Court correctly held that "[t]here is sufficient evidence in the record to demonstrate that the leased properties were untenable for use as shopping centers or for other relevant purposes during a global pandemic" and "[t]here is sufficient evidence in the record that Urban Edge's rent collection and property management operations were reduced." *Id.* at 14. The Court should ignore AWAC's baseless reformation.

10

word 'virus' in it" and "because COVID-19 virus is a virus, and some of the SPL2 policies had a microbial matter definition that had the word 'virus' in it. <u>And so if, you know -- if everything else lined up, could there be coverage? Yes.</u>"[5] SAF ¶ 30 (emphasis added). At oral argument, AWAC's counsel agreed, "there absolutely is potential coverage for COVID, if you satisfy the language.... well, I know that one of them was paid under business interruption; not contingent business interruption." Transcript at 9:2–4; 10:23–25.

The Court agreed with AWAC that the Policy can provide Business Interruption coverage, but did not agree with AWAC's narrow view of causation. The Court therefore recognized Urban Edge's right to proffer the full evidentiary record to a jury.

### 2. *The Court Correctly Held That the Evidence Supports the Conclusion of What Operations Urban Edge Provides*

The words "operations" and "suspension" are undefined by the Policy. The Court correctly held: "Both parties must have understood at the outset that 'operations' included rental operations—including the collection of rent and maintenance of properties—because Endorsement No. 18 adds Rental Income to the definition of Business Income. Loss of Rental Income is covered by the Policy if the leased premises are rendered 'untenable for the use disclosed to [AWAC] in the Application' for the Policy." Order at 13 (alteration in original). Even if the parties did not have a meeting of the minds, as the Court correctly held they did as a matter of law, Urban Edge proffered competent evidence of its operations, sufficient to defeat summary judgment and require a jury's determination.

---

[5] In reply on summary judgment, AWAC cited a Seventh Circuit case for the rudimentary proposition that an insurer's later in time exclusion of a risk does not create coverage for that risk prior to the exclusion's existence. *See Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 311 (7th Cir. 2021). That case has no bearing here. The jury will hear testimony directly from AWAC's underwriter that she instructed her entire AWAC team to stop selling the policy that Urban Edge purchased because—if everything lined up—there is Business Interruption coverage as the AWAC Policy existed prior to April 2020 and as AWAC sold it to Urban Edge.

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**                    **Page 2083 of 2921**

The Policy does not define "Application" as used in the Policy's Rental Income Suspension endorsement. The "Application" for the 2019 Policy includes at minimum two forms submitted to AWAC with the titles "Application" and "Supplemental Application," documents incorporated by reference in those forms, the statement of values document "UE SOV 2019-2020—SOV Incl. Puerto Rico 6.14.19.xlsx," and "reports provided on the Urban Edge Environmental Documents CD Rom and Flash Drive on file with" AWAC. SAF ¶ 149. The underwriter for the 2016 Policy testified that AWAC received a CD Rom disc with some 4,400 documents when underwriting Urban Edge's coverage, including documents describing the Bergen Town Center mall and many retail tenants, all of which was submitted to the AWAC employee underwriting the 2019 Policy. *See id.* The underwriter for the 2019 Policy also reviewed publicly disclosed information about Urban Edge. *See id.* Based on its review of this information regarding Urban Edge's operations, AWAC added the Rental Income Suspension endorsement to the Policy. *See id.* ¶¶ 23, 49, 138. Urban Edge proffered additional evidence of its operations in opposition to summary judgment.

Urban Edge articulated through its corporate representative, Mr. Milton: "We're just speaking recovery of rental income because we were—our operations were highly disrupted, and we were unable to perform a basic duty, if that's the right word, to provide our tenants with spaces they can use which is the whole reason they lease space from us." *Id.* ¶ 28. AWAC's underwriter, A.J. Polito, agreed: "your main revenue is collecting the income from your tenants, or the rent from your tenants." *Id.* ¶ 50. AWAC's underwriter, Julie Eisenberg, and its lead claims handler, Glenn Serrano, both concurred. *See id.* ¶¶ 53–55.

### 3. *The Court Correctly Held That Urban Edge Proffered Competent Evidence Showing That Its Suspension of Operations Was Caused By The Presence of the COVID-19 Virus*

Urban Edge was not required to prove causation to defeat summary judgment. Applying the proper standard that AWAC did not and cannot satisfy, the Court correctly held that "[t]here

12

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 2084 of 2921**

is sufficient evidence in the record to demonstrate that the leased properties were untenable for use as shopping centers or for other relevant purposes during a global pandemic" and it "could be reasonably argued that it was the presence of COVID-19 'on, at, or under' the scheduled locations that caused Urban Edge's interruption." Order 14, 16.

The record evidence supporting that finding includes, but is not limited to:

1. Business records showing that even at Urban Edge's own scheduled office locations, which unlike retail locations were not subject to visits by hundreds or thousands of customers each day, the COVID-19 virus was present in the buildings in March and April 2020 from the presence of a sick employee, which AWAC's claims handler testified was sufficient evidence to satisfy the Policy's definition of a "Pollution Incident" (SAF ¶¶ 80–83);

2. With respect to the letter issued by Urban Edge's building manager in April 2020 noting that a sick individual had been in the building, AWAC's claims handler testified that he "wouldn't shut the door" to coverage based on the information in the letter (*id.* ¶ 83);

3. AWAC's concession on summary judgment that the opinion of Urban Edge's expert, Dr. Lemuel Moyé, that the virus was present at each Urban Edge retail location at all necessary times, is correct (Order at 6, 9, 12);

4. Urban Edge's tenant assistance program created in early 2020 to address its inability to provide usable retail space because its operations were suspended, which involved a case-by-case review subject to Urban Edge's CEO and COO approval (SAF ¶¶ 61–67);

5. Urban Edge's business records from its tenant assistance program detailing its suspension of operations caused by the presence of the virus at its locations, including

13

its records highlighting many examples of tenants' inability to use Urban Edge's retail space because of sick employees who would continue to present and discharge the virus at the scheduled locations if use was not suspended (*id.* ¶¶ 66–69, 71–72);[6]

6. Testimony of AWAC's lead claims handler and corporate designee on the topic of claims handling (responsible not only for Urban Edge's claim but also all other COVID-19 claims presented to AWAC for Pollution Liability coverage) admitting that Urban Edge's business records were "indubitably" the type of information AWAC policyholders with "open" claims provided to AWAC (*id.* ¶ 70);

7. The same AWAC claims handler and corporate designee testifying on AWAC's behalf that it "comes as no surprise" that Urban Edge's tenants "were having trouble paying rent as a result of the [COVID-19] virus" (*id.* ¶ 54);

8. Sworn certifications from Urban Edge property managers who AWAC chose not to depose despite Urban Edge disclosing their personal knowledge of "suspension of operation" at nearly all scheduled locations, including:

- Urban Edge's Vice President, Asset Management, Property Operations, Joe DeGiorgio, who certified that he "received a significant amount of communication from Urban Edge tenants beginning in March 2020 informing Urban Edge that certain tenants' employees were sick and, because of the sick employees during the pandemic, certain of the tenants closed their retail

---

[6] Even business records from Urban Edge's tenant assistance program that do not expressly describe the suspension of Urban Edge's operations from the presence of the COVID-19 virus provide a reasonable basis to infer as much. AWAC's expert witness agrees. For example, AWAC's damages expert, Jeffrey Thompson, was shown a tenant assistance approval request for Alamo Drafthouse, a dine-in movie theater chain. *See, e.g.*, Darbee Cert. Ex. 7 at 87:18–88:1. In response to questioning about what happened in March 2020 to prevent Alamo from paying its rent due and owing to Urban Edge, AWAC's expert testified, "I know there was a global pandemic and certain businesses were shut down." *Id.* at 95:12–13. Citations to "Darbee Cert. Ex." refer to the exhibits attached to the Certification of Michael R. Darbee dated November 22, 2022 filed in Opposition to Defendant's Motion for Summary Judgment.

14

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 2086 of 2921**

locations"

- Urban Edge Property Manager, Robert Real, who certified concerning his own near-fatal hospitalization with COVID-19 that he suspects he contracted at an Urban Edge retail location in March 2020, and that when released from the hospital, he received a "significant amount" of tenants communicating that "because of the sick employees during the pandemic, certain of the tenants closed their retail locations"

*Id.* ¶¶ 73–79;[7]

9. Urban Edge's expert report and testimony based on analysis of the company's records that there was a "huge drop off" in rent collection in April 2020 versus historical percentages because of the COVID-19 pandemic (*id.* ¶¶ 108–09);[8]

10. AWAC's own white papers distributed to its policyholders providing contemporary risk management analysis and advice concerning the effect of COVID-19 on retail locations, including:

- A March 2020 AWAC Risk Management Advisory that "[t]here is currently no vaccine to prevent COVID-19 and as we know, the best way to prevent illness is to avoid being exposed to illness"

- An April 2020 AWAC COVID-19 Pandemic Risk Management for Commercial Real Estate Presentation in which AWAC admitted that "[t]ransmission of [COVID-19 is] driving business

---

[7] Urban Edge made clear during oral argument why the certifications and business records are not hearsay and, in any event, would fall within exceptions to the hearsay rule. *See* Transcript at 49:7–50:8. AWAC failed to address Urban Edge's positions in its motion for reconsideration and doing so on reply should be disregarded. "It is improper to raise an argument for the first time in a reply brief. Typically, such an argument will not be recognized." *A.D. v. Morris County Bd. of Soc. Servs.*, 353 N.J. Super. 26, 30 (App. Div. 2002); *see also Borough of Berlin v. Remington & Vernick Eng'rs*, 337 N.J. Super. 590, 596 (App. Div. 2001) ("Raising an issue for the first time in a reply brief is improper."). None of this evidence is barred by the hearsay rule.

[8] Mr. Schweers opined as to what he observed when analyzing Urban Edge's books and records as a qualified business interruption damages expert. The jury is entitled to hear his testimony, even if AWAC believes that it has other testimony for cross-examination. Like the rest of the arguments it raises in its Motion, it raised this too on summary judgment. It is vexatious and repetitive.

15

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

closure"

- A December 2020 Environmental White Paper for AWAC Policyholders co-authored by AWAC's vice president for environmental loss control, in which AWAC admitted that the "*COVID-19 pandemic . . .* forced stores into a prolonged temporary closure" and that "many shopping malls have been closed for a prolonged period *due to the pandemic....*"

*Id.* ¶¶ 84–86 (emphasis added);

11. Testimony from Urban Edge through its corporate designee 14 separate times throughout his deposition detailing Urban Edge's suspension of operations solely and directly caused by the presence, discharge, and migration of the COVID-19 virus, which includes but is not limited to the following:

- "Q. In what way were you unable to provide tenants with -- I don't want to try to restate your testimony, but spaces they could use? A. *We weren't able to provide them with space they could use because there was, you know, a pollutant as defined in the insurance policy,* and by that, I mean, among other things, microbial matter as defined under the policy . . . *and by microbial matter, I mean a virus that resulted in pollution in their spaces, in our properties that made their spaces unusable for the purposes that we leased those spaces to them.*"

- "Q. Do you know if any tenant didn't pay rent because they *closed because of COVID at their location? A. Yeah, many. Yes. I mean that's why we're here today.*"

- "Q. Now, with respect to Urban Edge, its operation at these scheduled locations, were there scheduled locations that you could not conduct your operations in *because there was COVID there? A. Yes*…. We were unable to provide the space -- spaces to our tenants for the purposes intended *because COVID-19 was there* because people were getting sick and people were dying."

- "Q. And the fact that people didn't -- there may have been reduced foot traffic as people were told to stay at home. *Was that solely and directly because of a pollution incident* as the policy defines it on and/or under those essential business at your scheduled locations? A. *Yes*…. Because we had in *COVID-19 this virus spread essentially everywhere where people were. So we have a pollution incident, single pollution incident that hits*

16

_everywhere and everything where people are_. So -- and that is really the _sole direct cause_ of why we're here and all we've talked about."

_Id._ ¶¶ 48, 56, 58–59.[9]

The evidence overwhelmingly shows that the global COVID-19 pandemic is the one and only Pollution Incident at issue in this case, that the pandemic's COVID-19 virus was at, on, or under Urban Edge's shopping centers and malls, and thus that it solely and directly caused Urban Edge's suspension of operations—the Court already correctly held that any alleged intervening cause would not preclude the Pollution Incident from being the sole cause. _See_ Order at 16. Notwithstanding the strength of this evidence, the Court properly denied AWAC's motion for summary judgment without weighing it. As the Court correctly held in its Order, a jury could infer from the evidence that the presence of the COVID-19 virus at, on, or under scheduled locations solely and directly caused Urban Edge's suspension of operations. _See id._ Nothing more is needed to defeat summary judgment. On a motion for summary judgment, "'_the court must accept as true all the evidence_ which supports the position of the party defending against the motion and _must accord him [or her] the benefit of all legitimate inferences which can be deduced therefrom_, and if reasonable minds could differ, the motion must be denied.'" _Brill v. Guardian Life Ins. Co. of Am.,_ 142 N.J. 520, 535 (1995) (alteration in original) (emphasis added) (quoting S. Pressler, _Current NJ Court Rules,_ comment to R. 4:40-2 (1991)).

AWAC challenges the sufficiency (but not the existence) of this evidence establishing Business Interruption, and, in doing so, effectively agrees that there are genuine issues of material

---

[9] Contrary to AWAC's assertion, Mr. Milton did not speculate as to causation. Like it tried in its summary judgment briefing and argument, AWAC again miscites his testimony. Mr. Milton testified that he did _not_ wish to "speculate" whether tenants suspended their operations because of the presence of the SARS-CoV-2 virus or government order and, in its Motion, AWAC omits the immediately following two questions and answers confirming that _it was both_. _See_ SAF ¶ 60.

Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

fact for the jury. Deciding the sufficiency of evidence is not the Court's role on summary judgment. As the Court already properly held, Urban Edge proffered competent evidence, which is enough to defeat summary judgment. AWAC identified no injustice, and its Motion should be denied.

## III.   AWAC FAILED TO DEMONSTRATE THAT THE COURT'S MITIGATION AND WAIVER DECISION SHOULD BE RECONSIDERED

In 2023, almost 3 years after the COVID-19 pandemic began, AWAC has not paid a single dollar of coverage to Urban Edge for its COVID-related Business Interruption claim. AWAC posits that it should be relieved of its coverage obligation to pay Urban Edge, in part, on the basis that AWAC did not disclaim coverage until later than the evidence shows it did. That is ironic. The factual record that Urban Edge proffered in opposition to summary judgment is replete with evidence that AWAC disclaimed coverage on this claim in early 2020—the same claim that it still has not paid today. AWAC made the very same arguments on summary judgment as it did in its coverage position letters in early 2020, which are the very letters AWAC now claims did not disclaim coverage. *See* Transcript at 65:7–66:5. As of February 2022, AWAC had not paid a dollar on any COVID-19 claim to any policyholder. *See* SAF ¶¶ 36, 121. Yet, AWAC pretends that Urban Edge did not proffer evidence that AWAC disclaimed coverage in early 2020. That is wrong.

The Court properly found that: "General statements by the insurer regarding their stance on coverage can be sufficient to relieve the insured." Order at 19–20 (citing WINDT, 1 Insurance Claims and Disputes § 3:10 (6th ed.) ("[A]n expression by an insurer of its general position with regard to the applicable coverage issues, indicating the absence of coverage, will serve to free the insured from contractual obligations; the insurer's statements can be deemed the equivalent of a denial of liability."); *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 58 N.Y.S.3d 38, 39–40 (1st Dep't 2017) (reservation of rights letter from insurer stating reason that denial likely equaled repudiation and excused plaintiffs from performance of cooperation obligations); *NL Indus., Inc. v.*

18

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**          **Page 2090 of 2921**

*Commercial Union Ins. Co.*, 926 F. Supp. 446, 456 (D.N.J. 1996) ("*[T]he general doctrine whereby the performance of a condition is excused when it is obvious that the other party is not going to keep its promise to perform…. 'For instance, if an insurance company indicates that it is not going to pay an insurance loss in any event, the insured is excused from compliance with a condition[.]*" (emphasis added))); *see also Ventrice v. Lexington Ins. Co.*, 2022 WL 3013078, at *6 (D.N.J. July 28, 2022) (denying summary judgment on cooperation argument based on *issue of fact* whether insurer's communications reserved rights or denied coverage) (Darbee Cert. Ex. 82).

AWAC's citation to a model jury charge for anticipatory breach—which is so irrelevant to the issue that AWAC failed to cite it when briefing summary judgment—states a standard not addressed in a single case or legal treatise cited by AWAC that discusses a policyholder's performance being excused, or not, upon an insurance company's *disclaimer* of coverage.

The Court properly framed the issue on summary judgment: "The issue thus is whether AWAC disclaimed coverage such that Urban Edge was relieved of its duty to refrain from making voluntary payments under Section VI, subpart 17(c) of the Policy." Order at 20. It then held: "Whether coverage was repudiated is a question of fact for the jury, and both parties in their briefs and at oral argument presented evidence that coverage was or was not disclaimed. Therefore, Urban Edge has presented facts sufficient to survive summary judgment on this issue." *Id.*

AWAC incorrectly states that Urban Edge did not proffer *any* evidence that AWAC disclaimed coverage. AWAC's communications to Urban Edge and its general "no pay" position on COVID-19 claims provide evidence that the insurer had no intention of paying Urban Edge's claim. In the Motion, AWAC fails even to mention its series of letters to Urban Edge, each of which is in the factual record and all of which state that AWAC does not intend to provide Urban Edge with Business Interruption coverage. Indeed, beginning in April 2020, AWAC told Urban

19

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

Edge it had no coverage. *See* SAF ¶ 123; Transcript at 64:17–68:8. The evidence Urban Edge proffered, including AWAC's assertions in its April 20, 2020 letter to Urban Edge, and repeated in its subsequent coverage position letters and the July 2020 telephone call, presents a genuine issue of material fact as to whether AWAC disclaimed coverage in early 2020.

Urban Edge submitted its claim to AWAC on March 19, 2020. *See* SAF ¶ 122. By letter dated April 20, 2020, AWAC made clear that "[a]fter carefully evaluating the Notice, the Policy, and the information made available to date, *it appears unlikely that Urban Edge is entitled to business interruption coverage, including for contingent business interruption*."[10] SAF ¶ 123 (emphasis added). On June 15, 2020, AWAC responded to Urban Edge's May 2020 letter (which responded to AWAC's coverage repudiation rather than information requests, AWAC MSJ Ex. Q),[11] stating "*we continue to maintain that Urban Edge has not satisfied the requirements of the Business Interruption Coverage*." *Id.* ¶ 124 (emphasis added).

On July 7, 2020, AWAC's coverage counsel in this lawsuit plainly reasserted its position that it would not cover Urban Edge's claim. *See id.* ¶ 125. AWAC's claim notes memorialize the fact that "*AWAC did not intend to provide coverage*" and that it was clear that the "[p]arties are far apart." *Id.* ¶ 126 (emphasis added). The apparent self-serving statement from AWAC's claims handler that coverage was not denied is merely another fact that the jury should hear when deciding this issue. It begs the question whether and when AWAC disclaimed coverage. *See* Transcript at

---

[10] It was unclear at oral argument whether AWAC's counsel suggested its coverage letters sent to Urban Edge related solely to Contingent Business Interruption and not to Business Interruption. *See, e.g.*, Transcript at 86:18–88:10. If that is AWAC's position, it lacks merit. For example, AWAC's April 20, 2020 letter states that "it appears unlikely that Urban Edge is entitled to *business interruption coverage*, *including* for *contingent business interruption*." SAF ¶ 123 (emphasis added).

[11] Citations to "AWAC MSJ Ex." refer to the exhibits attached to the Certification of Gregory T. Dennison, Esq. dated October 25, 2022, filed with AWAC's motion for summary judgment.

20

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**          **Page 2092 of 2921**

66:3–68:8. Indeed, Mr. Milton testified in this case that "*[AWAC] had made a no coverage determination* and there wasn't a dialogue." SAF ¶ 127 (emphasis added). AWAC will be free to cross-examine Mr. Milton at trial, and Urban Edge will cross-examine AWAC's participants on that telephone call at trial, as well.

Notably, when AWAC issued what it points to as its formal coverage denial dated December 2020, AWAC relied on the same legal interpretation of the Policy that it held internally and told Urban Edge continually beginning in April 2020; it did not mention alleged lack of cooperation from Urban Edge mitigating its loss through tenant assistance programs. *See id.* ¶ 128.

Urban Edge's mitigation efforts were designed to and in fact accomplished the goal of preventing a significant departure of smaller tenants that could not pay rent at times during the pandemic. It prevented a mass exodus that would have exacerbated Urban Edge's covered rental income losses had it done nothing. *See id.* ¶¶ 130–35. To succeed on its waiver argument as a matter of law, AWAC had to prove that Urban Edge "voluntarily . . . assume[d] any obligation . . . without [AWAC's] prior consent." *See* Order at 5, 8. The absence of *consent* alone does not prove *voluntariness*. Because Urban Edge had a duty to mitigate regardless of any duty to cooperate with AWAC (*see id.* ¶ 130), the jury must hear the entirety of the evidence to determine whether Urban Edge's actions were reasonable mitigation efforts that redounded to AWAC's benefit or were truly voluntary assumptions of obligations that were unreasonable considering all the circumstances.

The jury will weigh the evidence and determine the issues of mitigation and waiver. *See* Order at 20–21. However, it is inaccurate for AWAC to state that Urban Edge has not proffered *any* evidence that AWAC disclaimed coverage. AWAC's motion raises no injustice and nothing worthy of reconsideration.

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 2093 of 2921**

## CONCLUSION

For the foregoing reasons, Urban Edge respectfully requests that this Court deny AWAC's

motion for reconsideration.

**BLANK ROME LLP**
**and**
**FERRO LABELLA & WEISS L.L.C.**
*Attorneys for Plaintiffs Urban Edge Properties*
*and Urban Edge Properties LP*

Dated: February 9, 2023                By: _____

                                       Christopher L. Weiss

22

**Exhibit 147 to Plaintiff's Omnibus Appendix of Evidence in support of its**
**Oppositions to Defendants' Motions for Summary Judgment**                **Page 2094 of 2921**