EXHIBIT 148



**Gregory Dennison**
973.645.4808
gdennison@saiber.com

February 13, 2023

**Via eCourts**

Honorable David V. Nasta, J.S.C.
Bergen County Courthouse
10 Main Street, 3rd Floor
Hackensack, New Jersey 07601

Re:     ***Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.***
          **Docket No.:  BER-L-7987-20**

Honorable Judge Nasta:

We submit this letter reply in further support of defendant Allied World Assurance Company (U.S.), Inc.'s motion for reconsideration of and clarification of the Court's January 10, 2023 Order that denied its motion for summary judgment in part. Urban Edge's opposition urges application of the wrong standard of review; fails to identify any evidence satisfying the business interruption standard; and again offers only argument without any factual support that it reasonably believed Allied World had repudiated the Policy in April 2020.  As such, Allied World submits that its motion should be granted.

## A.  Urban Edge Argues for a Demonstrably Incorrect Standard of Review

Urban Edge's proposed "injustice" standard for reconsideration motions is wrong. As recently set forth in *Lawson v Dewar*, 468 NJ Super 128, 132-33 (App. Div. 2021), *R.* 4:42-2(b) presents a more "liberal standard" permitting New Jersey courts discretion to correct, amplify or clarify interlocutory orders. Some extraordinary manifest injustice is not required for the Court to reconsider a prior order; rather, such motions should be granted in the interest of justice:[1]

> But some reconsideration motions — those that argue in good faith a prior mistake, a change in circumstances, or the court's misappreciation of what was previously argued — **present the court with an opportunity to either reinforce and better explain why the prior order was appropriate or correct a prior erroneous order.** Judges should view well-reasoned motions based on *Rule* 4:42-2 as an invitation to apply Cromwell's rule: "I beseech you…think it possible you may be mistaken." The

---

[1] Urban Edge's argument ignores that similar language is used in other rules. *R.* 4:9-1 provides that leave to amend a pleading shall be "freely given in the interest of justice." No court has found that a litigant must establish "injustice" to amend its pleading.

**Exhibit 148 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

Honorable David V. Nasta, J.S.C.
Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.
Docket No.:  BER-L-7987-20
February 13, 2023
Page 6

fair and efficient administration of justice is better served when reconsideration motions are viewed in that spirit and not as nuisances to be swatted aside.

*Lawson,* 468 N.J. Super. at 136 (emphasis added). This quote is particularly apt in this case of first impression, where it appears Urban Edge does not even agree with this Court's application of the "independently sufficient" proximate cause standard.

## B.  Urban Edge Mischaracterizes Allied World's Causation Argument

The Court's January 10 opinion correctly refused to ignore the word "solely," and held that it required the cause of loss to be an "independently sufficient" cause.  The Court also held that "directly" as used in the Policy required proximate causation. To be an "independently sufficient" cause, the covered cause, itself, must be sufficient to proximately cause the loss. It does not exclude the potential for intervening or contributing causes, so long as the covered cause was nonetheless "independently sufficient" to bring about the result. See, *e.g.*, FN3 to Allied World's January 30, 2023 letter brief.

Unable to put forth evidence of loss based upon the presence of COVID-19 at its properties, Urban Edge instead suggests it is entitled to insurance for any "drop off" of rent caused by the "global COVID-19 pandemic."[2] However, the definition of business interruption in Subpart A does not cover the broad spectrum of risks that resulted from the entire pandemic. Whereas Subpart B Contingent Business Interruption Coverage applies to situations where government orders result from pollutants at other "independent locations," Subpart A specifically requires the presence of COVID-19 at the scheduled location to be the sole and direct cause of the suspension.

Urban Edge summarizes the evidence it contends establishes disputed issues of material fact on the issue of causation. However, while it has produced evidence of the presence of COVID-19, there is simply no cognizable evidence of any specific suspension of operations (or even a partial suspension) resulting from the presence of COVID-19. Allied World addresses each category of alleged evidence in turn:

1.  *Business records showing that even at Urban Edge's own scheduled office locations, which unlike retail locations were not subject to visits by hundreds or thousands of customers each day, the COVID-19 virus was present in the buildings in March and April 2020 from the presence of a sick employee, which AWAC's claims handler testified was sufficient evidence to satisfy the Policy's definition of a "Pollution Incident" (SAF ¶¶ 80-83).*

---

[2]  See, Op. Br. at p. 17:  "The evidence overwhelmingly shows that the global COVID-19 pandemic is the one and only Pollution Incident at issue in this case, that the pandemic's COVID-19 virus was at, on, or under Urban Edge's shopping centers and malls, and thus that it solely and directly caused Urban Edge's suspension of operations-the Court already correctly held that any alleged intervening cause would not preclude the Pollution Incident from being the sole cause."

**Exhibit 148 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

Honorable David V. Nasta, J.S.C.
Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.
Docket No.:  BER-L-7987-20
February 13, 2023
Page 6

Urban Edge has put forth no evidence that the office location shut down because of COVID-19, or that the presence of this unnamed sick employee caused or contributed to a business interruption.  Urban Edge is also not seeking business interruption costs for the closure of its own offices, only for its tenants' unpaid rent.  (SJ Ex. I,[3] Milton Dep., 66:12-17; UE Ex. 31, Reilly Dep., 28:5-14).

    *2. With respect to the letter issued by Urban Edge's building manager in April 2020 noting that a sick individual had been in the building, AWAC's claims handler testified that he "wouldn't shut the door" to coverage based on the information in the letter (id. ¶ 83).*

Urban Edge has put forth no evidence that the office location shut down because of COVID-19, or that the presence of this unnamed sick individual caused or contributed to a business interruption.  Urban Edge is also not seeking business interruption costs for the closure of its own offices, only for its tenants' unpaid rent.  *See id.*

    *3. AWAC's concession on summary judgment that the opinion of Urban Edge's expert, Dr. Lemuel Moye, that the virus was present at each Urban Edge retail location at all necessary times, is correct (Order at 6, 9, 12).*

Dr. Moye testified he did not issue an opinion regarding whether any specific Urban Edge properties closed because COVID-19 was detected at the location, or as to the reason any tenant stopped paying rent. (Ex. E, Moye Dep. 14:2-13; 122:21-123:15; 144:6-8; 144:25-145:5). Dr. Moye, as a medical doctor with a Ph.D. in statistics, is not qualified to opine on causation in any event, and Urban Edge does not allege that it suspended operations based upon a statistical analysis showing COVID-19 was present at its properties.

    *4. Urban Edge's tenant assistance program created in early 2020 to address its inability to provide usable retail space because its operations were suspended, which involved a case-by-case review subject to Urban Edge's CEO and COO approval (SAF ¶¶ 61-67).*

Urban Edge's program to provide tenants with rent abatements and deferrals has no relevance to whether the presence of COVID-19 at such tenants' locations was an "independently sufficient proximate cause" of such tenants' failure to pay rent.

    *5. Urban Edge's business records from its tenant assistance program detailing its suspension of operations caused by the presence of the virus at its locations, including its records highlighting many examples of tenants' inability to use Urban Edge's retail space because of sick employees who would continue to present and discharge the virus at the scheduled locations if use was not suspended (id. ¶¶ 66-69, 71-72).*

---

[3] "SJ" Exhibits are those filed with Allied World's Motion for Summary Judgment. (LCV20223754303). "UE" Exhibits are those filed with Urban Edge's opposition (LCV20224037371).

**Exhibit 148 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 2097 of 2921**

Honorable David V. Nasta, J.S.C.
Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.
Docket No.:  BER-L-7987-20
February 13, 2023
Page 6

As set forth in Allied World's reply brief and objections to ¶¶ 69-72 of Urban Edge's counterstatement of undisputed material facts, statements in Urban Edge's records attributable to tenants constitute inadmissible hearsay. Opposing counsel's suggestion at oral argument that it was Allied World's burden to establish these statements were inadmissible misstates New Jersey law. (Tr. 50:1-3); *e.g. State v. Stubbs*, 433 N.J. Super. 273, 285-86 (App. Div. 2013) (proponent of hearsay exception faced "burden of persuasion that the out-of-court statement satisfied the elements of an exception to the general rule of inadmissibility"); *State v. James*, 346 N.J. Super. 441, 457, 788 A.2d 334 (App. Div. 2002) (assigning to the hearsay's proponent the burden to establish the prerequisites of admissibility). Urban Edge has not and cannot establish any applicable hearsay exception.

6. *Testimony of AWAC's lead claims handler and corporate designee on the topic of claims handling (responsible not only for Urban Edge's claim but also all other COVID-19 claims presented to AWAC for Pollution Liability Coverage) admitting that Urban Edge's business records were "indubitably" the type of information AWAC policyholders with "open" claims provided to AWAC (id. ¶ 70).*

Testimony that Allied World would consider certain information in its investigation does not establish a suspension of operations caused by COVID-19 at an Urban Edge property. Moreover, Mr. Serrano's comment was made with respect to the closure of Urban Edge's headquarters in New York City, which is not at issue in this action as Urban Edge is not seeking, and did not sustain, any damages because of any closure of its headquarters. (SJ Ex. I,[4] Milton Dep., 66:12-17; UE Ex. 31, Reilly Dep., 28:5-14).

7. *The same AWAC claims handler and corporate designee testifying on AWAC's behalf that it "comes as no surprise" that Urban Edge's tenants "were having trouble paying rent as a result of the [COVID-19] virus" (id. ¶ 54).*

The referenced testimony does not link the presence of COVID-19 at an Urban Edge property to any tenant's failure to pay rent, nor does the witness have personal knowledge of any such circumstance.

8. *Sworn certifications from Urban Edge property managers who AWAC chose not to depose despite Urban Edge disclosing their personal knowledge of "suspension of operation" at nearly all scheduled locations, including [Urban Edge's Vice President, Asset Management, Property Operations, Joe DeGiorgio and Property Manager, Robert Real]*

The affidavits refer to statements made by unidentified third parties that Urban Edge offers for the truth of the matter asserted – to prove tenants closed retail locations because of sick

---

[4] "SJ" Exhibits are those filed with Allied World's Motion for Summary Judgment. (LCV20223754303). "UE" Exhibits are those filed with Urban Edge's opposition (LCV20224037371).

**Exhibit 148 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 2098 of 2921**

Honorable David V. Nasta, J.S.C.
Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.
Docket No.:  BER-L-7987-20
February 13, 2023
Page 6

employees. This is hearsay. New Jersey law places the burden on Urban Edge to establish that these statements satisfy the elements of a hearsay exception, which Urban Edge has not done and cannot do. *Stubbs*, 433 N.J. Super. at 285-86. Allied World again raised the impropriety of these statements in its reconsideration brief at page 4.

> 9.  *Urban Edge's expert report and testimony based on analysis of the company's records that there was a "huge drop off" in rent collection in April 2020 versus historical percentages because of the COVID-19 pandemic (id. ¶¶ 108-09).*

Urban Edge's damages expert, Clark Schweers, testified he did not determine the reasons why individual tenants failed to pay rent (Reconsideration Ex. D, Schweers Dep., 143:5-20), or whether individual tenants were generating revenue sufficient to pay their rents. *See id.* at 128:8-129:12. Urban Edge's emphasis on this particular testimony highlights the deficiency in its case: Section A of the business interruption coverage does not cover a drop off in rent collection "because of the COVID-19 pandemic" – it covers losses caused solely and directly by COVID-19 on, at, or under an Urban Edge location.

> 10.  *AWAC's own white papers distributed to its policyholders providing contemporary risk management analysis and advice concerning the effect of COVID-19 on retail locations, including [examples omitted]:*

Urban Edge offers no explanation as to how Allied World's white papers, which do not mention any of Urban Edge's properties, establish any causal link between COVID-19 at its tenants' locations and such tenants' failure to pay rent, much less that the presence of COVID-19 at the locations was an independently sufficiently proximate cause of such failure to pay rent.

> 11.  *Testimony from Urban Edge through its corporate designee 14 separate times throughout his deposition detailing Urban Edge's suspension of operations solely and directly caused by the presence, discharge, and migration of the COVID-19 virus, which includes but is not limited to the following [examples omitted]:*

Urban Edge's general counsel merely restated the policy language and Urban Edge's theory of the case without providing any factual basis for his position.  "Unsubstantiated inferences and feelings" are not sufficient to defeat summary judgment. *Oakley v. Wianecki*, 345 N.J. Super. 194, 201 (App. Div. 2001); *Puder v. Buechel*, 183 N.J. 428, 440 (2005) (stating, "conclusory and self-serving assertions by one of the parties" are insufficient to overcome motion for summary judgment; *Hoffman v. Asseenontv.Com, Inc.*, 404 N.J. Super. 415, 425 (App. Div. 2009) (conclusory and self-serving assertions without explanatory or supporting facts will not defeat meritorious motion for summary judgment; competent opposition requires competent evidential material beyond speculation and fanciful arguments). When pressed, Mr. Milton admitted that he could not "speculate" as to why each tenant did not pay rent, and that Urban Edge maintained no records in this regard.  (SJ Ex. I, 83:4 - 88:16).

01659171.DOCX

**Exhibit 148 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 2099 of 2921**

Honorable David V. Nasta, J.S.C.
Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.
Docket No.:  BER-L-7987-20
February 13, 2023
Page 6

As such, Allied World submits that Urban Edge is unable to demonstrate on reconsideration that the presence of COVID-19 at any of Urban Edge's tenants' locations was an independently sufficient proximate cause for such tenants' failure to pay rent.  As set forth in Allied World's motion for summary judgment, every one of Urban Edge's non-essential tenants closed when required to do so by governmental order, and reopened when permitted to do so by re-opening orders.  No evidence exists that non-essential tenants would have also closed and failed to pay rent absent the governmental orders.  As such, Allied World respectfully submits that reconsideration should be granted in this regard and summary judgment granted in Allied World's favor.  Alternatively, Allied World requests that the Court identify the disputed issues of fact in this regard.

## C.  Urban Edge's "Evidence" of Disclaimer Lacks Support in the Record

It is undisputed that Urban Edge gave tenants rent abatements without providing notice to Allied World. These payments were in violation of the condition in the Allied World policy prohibiting voluntary payments. Urban Edge argues that Allied World breached its contract by denying coverage, thereby relieving Urban Edge of its obligations under the insurance contract. However, the only cognizable evidence shows Urban Edge did not believe Allied World denied coverage. Allied World submits this fact is fatal to the repudiation argument.

Urban Edge argues that the jury instruction on repudiation/anticipatory breach is irrelevant, but that is precisely the principle of contract law on which it relies. The section of the treatise both Urban Edge and this Court cite recognizes as such, stating, "[i]t is a basic principle of contract law that once one party to a contract breaches the agreement, the other party is no longer obligated to continue performing his or her own contractual obligations." Windt, Insurance Claims and Disputes §3:10.

To establish that Allied World repudiated its contract, Urban Edge must establish its reasonable belief that Allied World denied coverage. "Anticipatory repudiation includes cases in which reasonable grounds support the obligee's belief that the obligor will breach the contract.'" *Spring Creek Holding Co. v. Shinnihon U.S.A. Co., Ltd.*, 399 N.J. Super. 158, 179 (App. Div.) *certif. denied*, 196 N.J. 85 (2008); *Restat 2d of Contracts,* § 250.[5] A close analysis of Urban Edge's claimed proofs shows that it did not believe Allied World denied coverage. It relies upon:

- April 20, 2020: Allied World's reservation of rights letter, which states, at the outset, "[w]e write to advise you that Allied World does not have sufficient information at this time to

---

[5] *b.* The Restatement provides: "*Nature of statement.* In order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform. Mere expression of doubt as to his willingness or ability to perform is not enough to constitute a repudiation, although such an expression may give an obligee reasonable grounds to believe that the obligor will commit a serious breach and may ultimately result in a repudiation under the rule stated in § 251."

01659171.DOCX

**Exhibit 148 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 2100 of 2921**

Honorable David V. Nasta, J.S.C.
Urban Edge Properties, et al.  v. Allied World Assur. Co. (U.S.) Inc.
Docket No.:  BER-L-7987-20
February 13, 2023
Page 6

make a determination regarding the availability of coverage for this matter." The letter contains an information request for documents "[t]o assist us in our continuing investigation into the availability of Business Interruption Coverage…" (SJ Ex. P, p. 1, 4).

- <u>July 7, 2020</u>: Urban Edge states "Allied World's coverage counsel in this lawsuit plainly reasserted its position that it would not cover Urban Edge's claim." This statement has absolutely no support in the record. Urban Edge provided no evidence in its Motion for Summary Judgment that such a statement was made – in an affidavit or otherwise. Urban Edge cites ¶125 of its Counterstatement of Undisputed Material Facts, but the exhibit that statement cites does not support Urban Edge's argument. Opposing counsel's contention and argument is not admissible on a motion for summary judgment.

- <u>July 9, 2020</u>: General counsel Robert Milton sends an email specifically stating that during the call Allied World confirmed the "claim had not been denied and that discussions will continue…" (Reconsideration Ex. F). This is the only admissible evidence of Urban Edge's belief during the pendency of the claim and is fatal to its repudiation argument. In its opposition brief, Urban Edge again attributes statements to Allied World's counsel that have no evidential support in the record. Tellingly, Urban Edge did not produce an affidavit from any participants to establish the substance of this July 7 phone call.

The summary judgment record shows, and Urban Edge admitted, that the parties continued to communicate regarding the claim following the July 7, 2020 phone call. Indeed, Urban Edge submitted records supporting its claimed losses, and does not explain why it continued to do so if it believed coverage had been denied.

In its opinion, the Court states "[w]hether coverage was repudiated is a question of fact for the jury, and both parties in their briefs and at oral argument presented evidence that coverage was or was not disclaimed. (Reconsideration Ex. A, p. 20). Allied World respectfully submits that upon closer examination of the record, the Court will find that Urban Edge presented arguments – not evidence. As such, Allied World respectfully requests the Court reconsider its decision in this regard and enter summary judgment in favor of Allied World on the voluntary payment issue.

We thank the Court for its attention to this matter.

Respectfully submitted,

GREGORY DENNISON
LISA C. WOOD
RAFAEL A. LLANO

01659171.DOCX

**Exhibit 148 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**Page 2101 of 2921**

**Exhibit 148 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**