# EXHIBIT 150

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
BERGEN COUNTY
DOCKET NO. BER-L-7987-20
APP. DIV. NO. _______________

| | |
|---|---|
| URBAN EDGE PROPERTIES, AND URBAN EDGE PROPERTIES LP,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., AND GREENWICH INSURANCE COMPANY,<br><br>Defendants. | TRANSCRIPT<br><br>OF<br><br>MOTION FOR RECONSIDERATION |

Place: Bergen County Courthouse (Heard via Zoom)

Date: February 17, 2023

BEFORE:

HONORABLE DAVID V. NASTA, J.S.C.

TRANSCRIPT ORDERED BY:

RUSSELL T. BROWN, ESQ. (Ferro Labella & Weiss, LLC)

Transcriber: Tammy DeRisi, AD/T 518

Agency: KLJ Transcription Service, LLC
P.O. Box 8627
Saddle Brook, NJ 07663
(201) 703-1670
www.kljtranscription.com
info@kljtranscription.com

Digitally Recorded
Operator - Daniel J. Leonardi

APPEARANCES:

CHRISTOPHER L. WEISS, ESQ. (Ferro LaBella & Weiss, LLC)
- and -
JARED ZOLA, ESQ. (Blank Rome, LLP)
- and -
KYLE P. BRINKMAN, ESQ. (Blank Rome, LLP)
Attorneys for the Plaintiffs, Urban Edge Properties and Urban Edge Properties LP

GREGORY DENNISON, ESQ. (Saiber, LLC)
- and -
LISA C. WOOD, ESQ. (Saiber, LLC)
- and -
RAFAEL A. LLANO, ESQ. (Saiber, LLC)
Attorneys for the Defendant, Allied World Assurance Company (U.S.) Inc.

ROBERT MILTON, ESQ.
General Counsel to Urban Edge

ADAM KEATING
Client Representative to Allied World

# I N D E X

ARGUMENT: PAGE
By: Mr. Dennison . . . . . . . . . . . . . . . . . . . 5,15
By: Mr. Zola . . . . . . . . . . . . . . . . . . . . . 11

RULING:
By the Court . . . . . . . . . . . . . . . . . . . 16

**Note: Due to the remote nature of the proceedings the attorneys were difficult to discern, resulting in instances of (indiscernible) throughout the transcript.

(Proceedings commenced at 11:34:00 a.m.)

COURT CLERK: Judge, we're on the record.

THE COURT: Okay. Thank you. Okay. Good morning, counsel. Thank you for your patience. As usual running a bit behind. This is the matter of Urban Edge Properties v. Allied World Assurance Company. This is Bergen Docket L-7987-20.

Counsel, may we have appearances for the record, please?

MR. WEISS: Good morning, Your Honor. Christopher Weiss of Ferro LaBella & Weiss on behalf of the plaintiffs, Urban Edge Properties and Urban Edge Properties LP.

THE COURT: Good morning, counsel.

MR. ZOLA: Good morning, Your Honor. Jared Zola from Blank Rome, LLP. Also for Urban Edge. And with me is my partner, Kyle Brinkman from Blank Rome, and Robert Milton, our client representative, general counsel of Urban Edge.

THE COURT: Thank you. Thank you, Mr. Zola.

MR. ZOLA: Thank you, Your Honor.

MR. DENNISON: Good morning, Your Honor. Greg Dennison of Saiber, LLC on behalf of Allied World Assurance Company. I'm joined here this morning by my colleagues Lisa Wood and Rafael Llano, as well as our



client representative, Adam Keating.

THE COURT: Okay. Thank you, Mr. Dennison. I think that covers everyone, I'm guessing. Have I missed anyone? No? Okay.

So, we have before us -- this is a motion for reconsideration filed by defendant Allied World. So, Mr. Dennison, the ball is in your court. The Court will hear you.

MR. DENNISON: Thank you, Your Honor. As indicated in our papers we are challenging two very discrete findings the Court made in its decision on the motion for summary judgment.

The first one occupies most of the -- mostly when you're looking at our papers, it is simply the causation element in the -- of the business interruption (indiscernible). Summarizing, in the general form the policy requires a pollution incident, which we have -- which we are, you know, acknowledging here is COVID-19. It requires a suspension of operations, which Your Honor found in its decision, which we are not challenging today. And it requires causation. The closure has to be caused by the presence of COVID at the properties.

Your Honor grappled with the policy language, which required the -- the suspension be solely and

directly caused by the pollution incident, here COVID. Your Honor, I formulated that language and (indiscernible) that language to require independent and sufficient proximate cause. We submit to Your Honor that the decision on -- the January 10th decision did not then complete the analysis by identifying what issue of fact exists as to whether or not the presence of COVID at these -- and all the locations that did not pay the rent was -- what was -- the causation element was fine, but there is no evidence that any of these tenants did not pay rent independently because of the presence of COVID (indiscernible).

That, I think, really sums it up as neatly as we can make it, and the Court found that the presence of COVID, I think the dispute largely in this case turns on the last paragraph of the Court's opinion on Page 16, where the Court says it can reasonably be argued that it was the presence of COVID that (indiscernible) on or under these scheduled locations that caused business interruption.

Well, the evidence actually shows pretty much exactly the opposite. The evidence shows that all the tenants that didn't pay rent closed on the day the orders -- that the government orders came into effect, requiring their closure. The only tenants that didn't



pay rent were the non-essential tenants affected by these orders. And the tenants resumed operations the day the orders were lifted.

In order to satisfy this standard Urban Edge has to put forth evidence that these tenants who were closed did not pay rent independently of closing. That was it, that the orders -- if you take away the orders, (indiscernible) these tenants (indiscernible). As our papers put forth there is no evidence in the record that this happened.

And our position, which identified (indiscernible) they set aside the standard. In our reply letter brief I addressed each one of them in summary fashion, that says no, that's not correct. The -- they point to the fact that their headquarters were closed. There was a sick employee which closed their headquarters. Well, they're not seeking credit from their own headquarters. They had -- their own headquarters, a closure from headquarters is not part of this case. That's the first two -- two elements right there. It's, you know, the first two points they made. It's not part of the case.

They point to their expert, Dr. Moyé. Dr. Moyé is a medical statistician. He testified expressly it was not a (indiscernible) causation. The -- they

point to their tenant assistance program which has nothing to do with the finding that there was COVID on these locations, and that's what caused these tenants to not pay their rent. They talk about -- claims -- testimony from our claims (indiscernible), who said, yeah, we were asking for information throughout the claims process from them, and they never gave it to us. The question (indiscernible) was was this the kind of information that he would consider? Yeah. He would consider it, but it's not evidence of -- you know, of a closure caused by COVID-19 at a property.

The property closed because the orders closed the -- because the businesses were shut down, the non-essential businesses.

The certifications are the only -- the two affidavits they put forth are the only evidence, or the only purported evidence that anything was closed because there was COVID at their properties. These affidavits are hearsay, and they make no argument to the contrary. They point to no exceptions of the hearsay rule that would permit a witness on behalf of Urban Edge to come forward and testify to what other people told him. They are putting that forth for the truth of the matter asserted.

They (indiscernible) pages talking about the



presence of COVID. Well, that goes to whether or not COVID was present, not to causation. We are not -- on this motion we are not arguing COVID wasn't present. We are just saying it had nothing to do with the closure. The closures were a hundred percent caused by the government orders that went into effect.

And then finally they want to (indiscernible) their own witness, who testified to the opinion (indiscernible) that it was because of both the orders and because of the presence of COVID. But when pressed he admitted that there was no way for him to know that, he was speculating, and Urban Edge didn't maintain any such records that would allow him to make that statement factually. Simply recording of the -- repeating a (indiscernible) position is not evidence. You know, when pressed on the facts behind that he admitted that he was speculating.

So, what we -- what we are arguing here today is the Court's opinion in January didn't go quite far enough. It didn't address this one issue. What is the causal language? Your Honor formulated (indiscernible) required an independently sufficient proximate cause. The presence of COVID, irrespective of the orders, would have had to cause these closures and failure to pay rent at the time (indiscernible) in this case.

And we respectfully submit that there is no evidence, that the Court's opinion just doesn't quite go far enough and doesn't address the issue.

THE COURT: Okay. Thanks.

MR. DENNISON: The second thing we --

THE COURT: Sure.

MR. DENNISON: -- pointed to the evidence, Urban Edge's argument that they didn't -- they were not obligated to comply with the requirements -- that they get permission from Allied World before they incur any costs or any liabilities. And there's no question, and the Court, you know, correctly looked at that and said, yes, that that is the law, and there is no -- there's no dispute as to whether or not they didn't get permission.

The argument they (indiscernible) to put forth is that they were -- that they (indiscernible) contract, and was -- had disclaimed as early as April of 2020. But they put forth no evidence. They made arguments based upon documents that are in the record. They don't make -- there's no evidence to support this position, we believe. There's no contemporaneous writings. In fact, the only contemporaneous writing that exists is the e-mail sent by their general counsel (indiscernible) July 2020 conference call where he says



thank you for clarifying that we have not disclaimed. They knew full well they didn't disclaim.

So we submit that there's simply -- the arguments that they made were just that. There was no fact, that they put forth no evidence as to a reasonable belief that Allied World had disclaimed.

THE COURT: Okay. Thank you, Mr. Dennison. We'll hear opposition.

MR. ZOLA: Good morning, Your Honor. Gary Zola for Urban Edge.

THE COURT: Thank you, Mr. Zola.

MR. ZOLA: Your Honor, AWAC did not meet its burden for reconsideration. (Indiscernible) Lawson from the Appellate Division in 2021 in which a new judge in a new county was asked to reconsider an interlocutory discovery order issued by a prior judge in a prior county nine months earlier. The Court in that case erred by applying an arbitrary and capricious standard to reconsider an interlocutory order. AWAC misstates Lawson by omission. Here's what Lawson says. Quote, to be sure, some reconsideration motions are frivolous, vexatious or merely repetitious, and some constitute an unwarranted attempt to reverse matters previously decided solely because the prior judge is no longer available, but some reconsideration motions

argued in good faith, a prior mistake, a change in circumstances, or the Court's misappreciation of what was previously argued.

Lawson goes on to cite Rule 4:42, (indiscernible) orders are subject to revision, quote, in the sound discretion of the Court, in the interest of justice. Lawson cites Lombardi, New Jersey Supreme Court 2011. Courts reconsider interlocutory orders, quote, only for good cause shown in the service of the ultimate goal of substantial justice. AWAC has not met any of Lawson's elements of reconsideration.

In the 20 days between the Court's January 10th order denying AWAC's motion for summary judgment on business interruption and waiver and AWAC's motion for reconsideration of that order nothing has changed. Your Honor is still the presiding judge. There was no prior mistake identified, no change in circumstance, and the Court did not misappreciate what the parties previously argued.

Quite to the contrary. Regarding business interruption AWAC argued on summary judgment, and the Court rejected it, quote, but for the government orders the properties would have remained open. And that's a direct quote from Your Honor's order on Page 5.

During oral argument in December Your Honor



was laser focused on this issue and questioned counsel for AWAC for several pages on this exact point, Pages 24 to 31.

On the waiver point AWAC argued and in part rejected, AWAC, quote, did not deny coverage to Urban Edge at these times -- at the time these abatements were granted. That's a quote from Your Honor's order at Page 8, and Your Honor was equally as focused and gave careful consideration to this exact point at oral argument back in December, Pages 64 to 68. There was no mistake. The Court did not misappreciate the arguments. They were carefully considered by the Court.

AWAC's motion doesn't even attempt to show good cause. (Indiscernible) words one time, doesn't mention any need to advance the ultimate goal of substantial justice. It doesn't say it once. AWAC merely seeks to reargue exactly what this Court already decided on January 10th in a thorough, clear, well-reasoned, carefully considered order on business interruption, pay waiver and mitigation.

AWAC spent seven single-spaced pages on the reply, again, trying to argue away the existence of evidence that merely highlights the factual dispute for trial. That evidence, when viewed in the light most

favorable to Urban Edge, and accepting it as true, as the New Jersey Supreme Court requires of summary judgment, and affording Urban Edge all legitimate inferences which can be deduced from that evidence, as the Supreme Court requires, then if the Court already correctly held on January 10th there exists genuine issues of material fact for trial, because, one, regarding business interruption it could be reasonably argued that it was the presence of the COVID-19 virus on, at or under Urban Edge's locations that caused Urban Edge's interruptions, the quote from Page 16 of Your Honor's order; and two, regarding waiver and mitigation, quote, whether coverage was repudiated is a question of fact for the jury, and both parties in their briefs and at oral argument presented evidence that coverage was or was not disclaimed. Page 20 of Your Honor's order.

And Your Honor got it exactly right. There is no basis to reconsider the Court's January 10th order, and the Court should dispose of this motion with a one word order, denied.

Unless the Court has any questions for me, which I would be pleased to answer, Urban Edge rests on its papers.

THE COURT: Thank you, Mr. Zola. I



appreciate that. Mr. Dennison, anything in reply?

MR. DENNISON: Your Honor, if I may briefly? I just want to briefly address one issue or two issues that --

THE COURT: Yes.

MR. DENNISON: -- Mr. Zola (indiscernible). As to the -- (indiscernible) repetitious of the prior summary judgment motion, I am a little (indiscernible) on this case. The reason that -- the Court formulated a causation standard that neither side addressed in its motion, which was (indiscernible) sufficient proximate cause. However, (indiscernible) solely that there's an epidemic, Urban Edge argued (indiscernible) the Court found a third way, a different -- didn't agree with either side on that.

So, what we are addressing here is an issue that was never -- has never been briefed, was never argued back in December, simply that there is no ends to support even the -- even with the standard the Court found applicable, even (indiscernible) there was no evidence to support the Court's finding.

And addressing the reason -- the sentence Mr. Zola just addressed on -- or raised on Page 16 in the brief where the Court concluded it can be reasonably argued that it was the presence of COVID on, at or

under the scheduled location that caused the business interruptions. Well, I think the -- that sentence is really almost the entire focus of this motion. We disagree. and for the reasons set forth in our -- our reply papers, and the initial -- initial moving papers.

THE COURT: Okay. Thank you, Mr. Dennison. I appreciate it. Any other counsel wish to be heard? Okay. It does not appear to be the case.

UNIDENTIFIED ATTORNEY: No.

THE COURT: Okay. We have no’s across the board. All right. Excellent. Thank you. Mr. Dennison, thank you. Mr. Zola, thank you. Again, as usual and as expected the papers and briefing were thorough. The arguments, of course, were excellent. Again, we’re dealing with some of the best counsel around.

What the Court has before it this morning is a motion for reconsideration filed by defendant Allied World Assurance Company, and the question presented to it is whether it is in the interest of justice to reconsider the Court’s January 10, 2023 order granting in part and denying in part I’ll call it AWAC’s, for short, motion for summary judgment.

AWAC, in its moving papers, and plaintiff in opposition have produced vol -- voluminous, excuse me,



records of the facts and arguments in support of their positions in this insurance dispute, and presented them to this Court on AWAC’s motion for summary judgment. The Court heard oral argument on December 16, 2022, and issued a written decision on January 10, 2023.

This Court relied on all of the evidence presented to it at oral argument and in the moving papers and attached exhibits. The Court studied the insurance policy drafted by AWAC and sold to the plaintiff, analyzed the facts as presented in the parties’ exhibits and statements of fact, and read dozens of cases from courts across the country at the trial, at appellate levels, as well as the state and federal levels, in order to reach its decision.

This Court will not reiterate the facts of this case as they were presented to it on the initial motion for summary judgment, nor will it reiterate its own statement of facts as written in the January 10 decision.

This Court directs the party to its -- parties to its January 10 decision for discussion of the most relevant facts it considered, and to the moving papers and exhibits for a complete record of the facts.

This Court will also use the terms as defined

in its January 10 decision. Specifically, Rule 4:42-2 provides that, quote, any order or form of decision which adjudicates fewer than all the claims as to all the parties shall not terminate the action as to any claims, and it shall be subject to revision at any time before the entry of final judgment in the sound discretion of the Court and in the interest of justice.

This Court is permitted to amend its January 10 order because it merely granted partial summary judgment on the issue of contingent business interruption. The issues of business interruption coverage and waiver have been left open to a trier of fact.

The Court will now address the points raised by AWAC to challenge this Court's January 10 decision. This Court interpreted the word solely to require that the pollution incident covered by the policy be a sufficient cause of the business interruption. This Court did not interpret the word solely to require the pollution incident to be a necessary cause and rejected outright AWAC's contention that it be an exclusive cause. In exceedingly simple terms this Court found that there was enough evidence that the pandemic caused the closure orders which caused Urban Edge's tenants to close, which caused Urban Edge to experience a business



interruption in order to deny summary judgment.

AWAC is partially correct in stating that this Court requires Urban Edge to produce evidence that COVID-19 was alone sufficient to cause an interruption of its operation. More precisely, Urban Edge was required to produce evidence that a pollution incident, here being COVID-19, was a sufficient but not exclusive proximate cause of its business interruption. This Court found that Urban Edge produced enough evidence that the COVID-19 pandemic set in motion a chain of events which resulted in a business interruption for the purposes of defeating summary judgment.

This Court cited cases which acknowledged, as this Court does as well, that the closure orders were obviously proximately caused by the pandemic.

Applying Appleman's rule on causation and proximate cause standards this Court held that there was enough evidence that the pandemic was a sufficient cause of the business interruption for the purposes of denying summary judgment.

If AWAC requires the Court to point to a specific piece of evidence in the record it need only look at its own motion papers, which attempted to show an alternate cause for Urban Edge's interruption, the closure orders.

AWAC pointed out that Urban Edge's tenants closed at the same time the closure orders were issued in an attempt to show that the orders, not a pollution incident, caused the business interruption. This Court held for purposes of denying summary judgment that the closure orders fell in the chain of causation started by COVID-19 and ending in a business interruption. Appleman's rule supports this conclusion as discussed in greater detail in the January 10 decision.

AWAC also graciously provides evidence in its brief for its motion -- for this motion for reconsideration which supports this Court's January 10 decision.

Joe DiGiorgio and Roger Real stated that certain tenants closed their retail locations because of sick employees. This Court need not engage in mental gymnastics to link the closure of a tenant's storefront with potential -- with its potential inability to pay rent.

This Court decided that the closure orders fell in a chain of proximate causation that began with the COVID-19 pandemic, which was, quote, practically everywhere, including on, at or under the scheduled locations and ended with business interruption. The government orders are therefore an integral part of



this chain of proximate causation. Thus, this Court did not conflate the analysis of business interruption and contingent business interruption. Indeed, this Court granted summary judgment -- granted summary judgment to AWAC on this issue of contingent business interruption while it denied summary judgment on the issue of business interruption.

The parties clearly have different views on whether coverage was repudiated. There is at best little evidence that AWAC unequivocally acknowledged coverage for the claimed business interruptions. This lawsuit is glaring evidence to the contrary.

There is also at best little evidence that AWAC unequivocally disclaimed coverage. This is to be expected given the sophistication of the parties and their respective abilities to negotiate. There is, however, a great deal of evidence that the parties discussed coverage and could not reach an agreement.

As discussed, in the January 10 decision this undisputed fact of disagreement and the contents of all communications provided in the motion papers and exhibits for summary judgment led this Court to believe that a reasonable jury could find a disclaimer. AWAC is free to argue at trial that it never disclaimed coverage while it refused to pay Urban Edge's claim for

business interruption.

This Court does not believe that it is in the interest of justice to reconsider its January 10 decision. No new evidence has been presented to the Court to justify its vacation. This Court thanks AWAC for the opportunity to revisit its January 10 decision but declines to disturb it. The motion for reconsideration is denied. Again, thank you to all counsel for your submissions and your arguments today. They are well appreciated. I wish everyone the best, a safe and happy weekend. Any counsel with any further comment?

UNIDENTIFIED ATTORNEY: No. Thank you, Your Honor.

THE COURT: Thank you. Okay. Counsel?

MR. DENNISON: Your Honor -- no. We'll have to (indiscernible) the transcript to fully understand what you said. I don't want to ask you to clarify things without having an opportunity.

THE COURT: I suspect that you will do so. But for the reasons stated on the record this morning. Thank you. I appreciate it, Mr. Dennison. Have a good afternoon.

MR. DENNISON: Thank you, Your Honor.

(Proceeding concluded at 11:59:40 a.m.)



CERTIFICATION

I, TAMMY DeRISI, the assigned transcriber, do hereby certify the foregoing transcript of proceedings on CourtSmart, Index No. from 11:33:55 to 11:59:41, is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate compressed transcript of the proceedings, as recorded.

***/s/ Tammy DeRisi*** — AD/T 518

Tammy DeRisi — AD/T Number

KLJ Transcription Service — 02/19/23

Agency Name — Date