# EXHIBIT 151

```
 1      SUPREME COURT OF THE STATE OF NEW YORK
        COUNTY OF BRONX : CIVIL TERM : PART IA-32
 2      -------------------------------------------x

 3      NEW YORK BOTANICAL GARDEN                 :
                          Plaintiff,
 4                                                        Index No.
                                                          803872/2021E
 5
        ALLIED WORLD ASSURANCE CO. (USA),        :
 6                          Defendant            :
        -------------------------------------------x
 7                          Bronx Supreme Court
                            851 Grand Concourse
 8                          Bronx, New York 10451

 9                          July 20, 2021

10      B E F O R E:   HONORABLE EDDIE MCSHAN,
                                   Supreme Court Justice
11
        A P P E A R A N C E S: (Via Microsoft Teams)
12

13
                        Attorney for the Plaintiff
14                      477 Madison Avenue #15
                        New York, N.Y. 10022
15                      BY:  JOHN H. KAZANJIAN, ESQ.

16

17
                        Attorney for the Defendant
18                      Clyde & Co.
                        200 Campus Drive, Suite 300
19                      Florham Park, N.J. 07932
                        BY:  KEVIN M. HAAS, ESQ.
20

21

22

23

24

25                          Xiomara O. Carias-Mier
                            Senior Court Reporter
```

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 2118 of 2921

1 of 29

```
 1                    (Whereupon, the following occurred via virtual

 2       proceedings.)

 3                    THE COURT:  So, we have everybody?

 4                    THE CLERK:  We do.

 5                    THE COURT:  I'm asking counsel, do you want a

 6       record?

 7                    MR. KAZANJIAN:  Yes, Your Honor.

 8                    THE COURT:  So we'll have the clerk call the case.

 9                    THE CLERK:  Certainly.

10                    This is index 803872 of 2021E, the case of New

11       York Botanical Gardens versus Allied World Assurance.

12                    Mr. Kazanjian, you may now note your appearance

13       again.

14                    MR. KAZANJIAN:  Thank you.  My name is John

15       Kazanjian, I represent the New York Botanical Garden, the

16       Plaintiff in this matter.

17                    Along with me today, Your Honor, are Justin

18       Jamail, the general counsel of the New York Botanical

19       Garden and Paul Sinegal, the associate general counsel.

20       They are observants today.

21                    And also along with me today is my colleague,

22       Jessica Kyle also pending before the Court motion sequence

23       number one, is a motion to admit Ms. Kyle pro hac vice in

24       this matter.

25                    That motion was not opposed.  I'm pleased to
```

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment                    Page 2119 of 2921

2 of 29

Proceedings

 1              address it to the extent the Court wishes today but just

 2              wanted you to know that the matter was pending.

 3                      Thank you.

 4                      THE COURT:  Good morning.

 5                      MR. KAZANJIAN:  Good morning.

 6                      THE CLERK:  And Mr. Haas.

 7                      MR. HAAS:  Yes.

 8                      Good morning, Your Honor.  Kevin M. Haas from the

 9              law firm of Clyde Co US, LLP and I represent the defendant

10              Allied Assurance Company in this matter.

11                      THE COURT:  Good morning.

12                      This matter is on for oral arguments.  The

13              defendant has made a motion to dismiss.

14                      So Mr. Haas, I'll give you the floor.

15                      MR. HAAS:  Thank you, Your Honor.

16                      New York Botanical Garden filed this action

17              against Allied World Assurance Company for breach of

18              contract, declaratory judgment and breach of the implied

19              covenant of good faith.  And on behalf of Allied World, we

20              filed the subject motion to dismiss the complaint with

21              prejudice.

22                      This is a claim for contingent business

23              interruption where New York Botanical Garden seeks

24              insurance coverage for alleged business interruption loss

25              resulting from various government orders issued to stop the

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment                Page 2120 of 2921
3 of 29

1    spread of the COVID virus.

2    Courts in New York have decided a string of

3    similar cases.  In all of these cases, they have dismissed

4    the subject complaints with prejudice.

5    Allied World respectfully requests this Court to

6    follow this unbroken line of cases and dismiss this

7    complaint as well.  Your Honor does not need to look

8    further than the complaint endorsement 15 to the Allied

9    World policy.  And the New York case is cited in our

10    briefs.  Together they compel dismissal of this action in

11    its entirety.

12    Endorsement 15 to the Allied World policy sets

13    forth the scope of the policy's contingent business

14    interruption coverage in clear and unambiguous terms.

15    Contingent business interruption means the necessary

16    suspension of your operations at a location owned by or

17    leased to you as a result of an order by a government body

18    or authority denying access to the location opened by or

19    leased to you, provided that such suspension is caused

20    solely and directly by a pollution incident on at or under

21    an independent location and such order is solely and

22    directly the result of a pollution incident at that

23    independent location.

24    So the requirements for coverage are very clear.

25    The government orders must deny access to the insured

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment    Page 2121 of 2921
4 of 29

FILED: BRONX COUNTY CLERK 08/18/2021 09:03 AM
NYSCEF DOC. NO. 32
Case 20-51051-TMH   Doc 258-151   Filed 01/12/24   Page 6 of 30
INDEX NO. 803872/2021E
RECEIVED NYSCEF: 08/18/2021

Proceedings

1        location at issue.  The government orders must be issued

2        solely and directly as a result of a pollution incident at

3        a location not owned by New York Botanical Garden and the

4        suspension of New York Botanical Garden's operations must

5        have been caused solely and directly by a pollution

6        incident at that non-owned location.

7               New York Botanical Garden is not entitled to

8        contingent business interruption coverage under the policy

9        unless it can establish all three of these requirements.

10       In fact, none of them have been met and none could be.

11              First, none of the government orders in question

12       were issued solely and directly as a result of a pollution

13       incident at a non-owned location.  They are all general in

14       nature and refer to no specific place.

15              Second, none of the government orders in question

16       denied New York Botanical Garden's access to the location

17       at issue.  Access was limited, not denied.

18              In fact, as plaintiff points out in its brief, if

19       access had been denied the planets at The Garden would have

20       died.

21              Third, the suspension of New York Botanical

22       Garden's business was not caused solely and directly by a

23       pollution condition that a specific non-owned location

24       subject of any of the government orders.  The affect on New

25       York Botanical Garden's business and the orders themselves

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
Page 2122 of 2921
5 of 29

1    pertain to the potential presence of COVID-19 everywhere,

2    not at any specific location.  And the orders were not

3    solely and directly focused on the presence of COVID-19

4    anywhere specifically.

5         There are no cases that have addressed contingent

6    business interruption coverage for COVID-19 claim under a

7    pollution liability policy like this policy.

8         However, as I mentioned, there are multiple cases

9    in New York that have addressed contingent business

10   interruption coverage for COVID-19 claims in the context of

11   civil authority coverage and property policies.

12        Now, the civil authority contingent business

13   interruption coverage grant addressed in these cases is

14   very similar to the contingent business interruption

15   coverage in the Allied World policy.  They both require

16   loss of income because access to the insured location was

17   prohibited or denied by a government order issued as a

18   direct result of a covered cause of loss at a non-owned

19   location.

20        New York Botanical Garden does not and cannot

21   claim that the relevant government orders were issued

22   solely as a result of COVID-19 at a specific location nor

23   does or can New York Botanical Garden claim that the impact

24   on its business was caused solely by the presence of

25   COVID-19 at that specific location.

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Opposition to Defendants' Motions for Summary Judgment          Page 2123 of 2921
6 of 29

Proceedings

1          The relevant government orders were issued to

2      reduce the potential spread of COVID-19 with everywhere,

3      not in response to the presence of COVID-19 anywhere in

4      particular.

5          In 1012 Holdings versus Sentinel, Southern

6      District case reported at 507 F. 3d 482 coverage grant

7      language provided this insurance is extended to apply to

8      the actual loss of business income you sustain when access

9      to your scheduled premises is specifically prohibited by

10     order of a civil authority as a direct result of a covered

11     cause of loss to property in the immediate area of your

12     scheduled premises.

13         Addressing the very same government orders at

14     issue here, the Court held that the complaint did not

15     allege that closure of a neighboring property directly

16     resulted of closure of the insured property, rather the

17     insured and the neighbors were all forced to close for the

18     same reason, the general risk of harm from COVID-19.

19         The Court further concluded that coverage at issue

20     applied to a factually distinct situation when some

21     dangerous condition on neighboring premises forces a

22     shutdown of the insured premises.

23         The Allied World policy language is even more

24     restricted than that issue in that case in that the

25     government order must be issued solely and directly as a

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
Page 2124 of 2921
7 of 29

Proceedings

1        result of a pollution incident at a non-owned location and

2        the denial of access to that insured must be solely and

3        directly caused by that specific incident at that specific

4        non-owned location.

5              In Food For Thought versus Sentinel, Southern

6        District addressed another coverage contingent business

7        interruption with the same policy language and the same

8        government orders.

9              The Court held that the government orders did not

10       specifically prohibit access to the insured property.  The

11       orders required work force reduction and closure of

12       non-essential business but did not deny access to the

13       property.

14             The Court explained that unlike a situation where

15       an unsafe condition in an adjoining property requires the

16       safe of evacuation of a covered property, here the owner

17       could continue to access its property.

18             The Court further concluded that the orders did

19       not prohibit access to the insured's property because of

20       COVID-19 at a specific neighboring property.  Rather, both

21       locations were restricted for the same reason, to limit the

22       risk of spreading COVID-19.

23             In Sharde Harvey versus Sentinel, the Southern

24       District addressed another contingent business interruption

25       claim under the same policy language and addressed the same

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment          Page 2125 of 2921
8 of 29

Proceedings

1    government orders.

2        The Court discussed the serious of cases issued by

3    New York Court COVID-19 contingent reasons interruption

4    claim under similar policy language.  In the same

5    government orders the Court noted that all of the cases

6    that have addressed the same or similar policy language

7    found that the insureds are not entitled to coverage.

8        The Court noted that the order limited the address

9    but did not prohibit.  The Court observed that New York

10   courts have consistently found that the same government

11   shutdown orders issued here did not prohibit access to the

12   premises.

13       The Court held that the insured could not

14   plausibly allege that any COVID issue of access was the

15   direct result of a covered cause of loss to property in the

16   immediate area because the orders did not name a specific

17   business.  The complaint did not allege that closures of

18   neighboring property directly resulted in the closure of

19   the insured's property.  Rather, the Plaintiff was forced

20   to close for the same reason as its neighbors, the risk of

21   harm to individuals on its own premises from the pandemic.

22       In Dressel versus Hartford, the Eastern District

23   addressed another COVID-19 contingent business interruption

24   claim under similar policy language.  In the same

25   government order, policy applied where a civil authority

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment        Page 2126 of 2921
9 of 29

Proceedings

1     restricted access as the direct result of a covered cause

2     of loss property in the immediate area.

3          The Court held that Governor Cuomo's orders were

4     simply not issued as a direct result of the presence of

5     COVID-19 at any specific property.

6          In Cetta versus Admiral, the Southern District

7     addressed another COVID-19 contingent business interruption

8     claim under similar policy language as seen on the orders.

9     The policy applied where there was damage to property other

10    than the insured's and an action by civil authority

11    prohibited access to both the insured's property and the

12    surrounding area due to the damage.

13         The Court determined that the very same civil

14    authority orders at issue here did not deny access to the

15    insured's property or neighboring property due to COVID-19

16    at any specific location.

17         In Office Solutions versus National Fire, Southern

18    District, another COVID-19 contingent business interruption

19    claim involving similar language and the same government

20    orders there.

21         The Court followed the prior clear and consistent

22    trend of other New York court cases declining to

23    reinterpret the executive orders.

24         Again, the Court noted that the orders were issued

25    in response to the rapid spread of the virus everywhere,

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
10 of 29

Page 2127 of 2921

Proceedings                                                                11

```
 1        not on the account of the presence of the virus on any

 2        specific location.  The orders neither prohibited access to

 3        property nor they required closure of plaintiff's property

 4        because of the specific presence of COVID-19 that a

 5        neighbor's property.

 6              In Visconti Bus Service, the Supreme Court in

 7        Orange County addressed another COVID-19 contingent

 8        business interruption coverage under similar policy

 9        language.  In the same government's orders the Court

10        discussed many of these cases and following them held that

11        the gist of civil authority coverage that harm to someone

12        else's property caused the civil authorities to prohibit

13        access to the insured's premises.

14              Here, both premises are restricted for the same

15        reason, to limit the risk of spreading COVID-19.  This

16        simply does not implicate this coverage.

17              In 6593 Weighlock, the Supreme Court in Onondaga

18        County addressed another COVID-19 contingent business

19        interruption claim under similar policy language and the

20        same government orders, the Court similarly concluded that

21        the various government orders were not issued as a result

22        of COVID-19 at any specific location but instead to

23        mitigate and slow the spread of COVID-19 across the state.

24              And so in no less than eight cases every court in

25        New York that has considered complaints like this one has
```

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Opposition to Defendants' Motions for Summary Judgment          Page 2128 of 2921
11 of 29

Proceedings

1          granted a motion to dismiss and held that there's no

2          coverage for a COVID-19 contingent business interruption

3          claim under similar policy language and the same government

4          orders.

5                    We submit this Court should follow these cases and

6          dismiss the complaint with prejudice and without the right

7          to amend.

8                    In the end, plaintiff claims that the government

9          orders to cause the loss in question, no amendment can fix

10         that and overcome this unbroken line of cases standing for

11         the same proposition that the subject government orders did

12         not deny access to plaintiff's property.  They were not

13         issued solely because of the presence of COVID-19 at any

14         owned location and there is no basis to claim that the

15         presence of COVID-19 at a specific location subject of such

16         orders as the sole cause of any claim impact plaintiff's

17         business.  The orders were simply issued to stop the spread

18         of COVID-19 everywhere.

19                   Unless Your Honor has any questions, we would like

20         to rely on the arguments and cases cited in our briefs with

21         respect to the dismissal of the claim for breach of the

22         good faith and fair dealing.

23                   I would just add that in light of all of the above

24         cases, this claim is clearly not viable.

25                   Thank you, Your Honor.

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment          Page 2129 of 2921
12 of 29

Proceedings

```
 1              THE COURT:  Thank you counsel.

 2              I'm going to listen to the other side's argument,

 3         the plaintiff's arguments.

 4              I may have a couple of questions once we finish

 5         the argument.

 6              MR. HAAS:  Yes, sir.  Thank you.

 7              THE COURT:  All right Mr. Kazanjian, are you going

 8         to argue or is Ms. Kyle?

 9              MR. KAZANJIAN:  I'm doing the argument, Your

10         Honor.  Thank you.

11              First of all, I want to make sure that everyone

12         can hear me.  I lost contact during Mr. Haas's argument and

13         called back in on another device.  Hopefully you can hear

14         me.

15              THE COURT:  A little low but we can hear you.

16              MR. KAZANJIAN:  Thank you very much.

17              I don't know if I can get the audio up a little

18         bit harder.  Hopefully you can hear me all right.

19              THE COURT:  I can.

20              MR. KAZANJIAN:  Thank you very much.  And again,

21         good morning to everyone.

22              I am representing the New York Botanical Garden.

23         During the course of my remarks I may refer to the New York

24         Botanical Garden as NYBG or The Garden, obviously it's the

25         same entity.  I may refer to Allied World as AWAC, A-W-A-C,
```

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
13 of 29
Page 2130 of 2921

Proceedings

1         which is an acronym.  I just wanted to mention that for the

2         court reporter's purposes and to make clear who I'm

3         referring to.

4              The Court should deny the motion to dismiss that

5         has been brought by Allied World.

6              New York Botanical Garden's distinctive policy is

7         the touchstone for determining whether it has pleaded

8         coverage under the policy.  This policy, Your Honor, is a

9         blanket pollution legal liability policy with business

10        interruption coverage.  It's not a commercial property

11        insurance policy with civil authority coverage.

12             All of the cases that Mr. Haas discussed in his

13        argument, in his remarks, deal with commercial property

14        policies that have civil authority coverage and the key

15        issue in those policies is whether or not the policy holder

16        could demonstrate whether the presence of COVID-19 on

17        property constituted direct physical loss or damage caused,

18        that's what triggered the policy.

19             The policy here that was sold by Allied World to

20        my client, The Garden, doesn't contain that language.  In

21        essence, what triggers the policy here is a pollution

22        incident.  And a pollution incident is defined to include

23        viruses.  In fact, in its papers, Allied World concedes

24        that COVID-19 constitutes a pollution incident under the

25        policy.  So we're really dealing with apples and oranges.

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment                    Page 2131 of 2921
14 of 29

FILED: BRONX COUNTY CLERK 08/18/2021 09:03 AM
INDEX NO. 803872/2021E
NYSCEF DOC. NO. 32
Case 20-51051-TMH    Doc 258-151    Filed 01/12/24    Page 16 of 30
RECEIVED NYSCEF: 08/18/2021

15

Proceedings

1          The policy language here that under the Allied

2     World blanket pollution legal liability policy also differs

3     meaningfully in other respects from those in the cases that

4     Allied World cites in support of its motion.

5          The Allied World policy that was purchased by The

6     Garden doesn't require that an order, a governmental order

7     specifically prohibits access to property.  It doesn't

8     require that an independent location where there is a

9     pollution exclusion be proximate to The Garden's location.

10          In the cases that Mr. Haas described, the civil

11     authority provisions in those policies required proximity

12     that the neighboring property that was damaged be in some

13     approximate location, whether it was miles or immediately

14     nearby or neighboring property, that's not required under

15     the policy here.  All it says is that there be a pollution

16     incident i.e., which includes viruses at an independent

17     location.

18          An independent location is defined very broadly

19     under the policy.  An independent location is a location

20     that is not and was not at any time a location owned,

21     leased managed, operated or used by the insured New York

22     Botanical Garden.  Very broad definition.  There is no

23     proximity requirement.  It doesn't have to be nearby, it

24     doesn't have to be a specific independent location.  There

25     is no language in the policy saying that the pollution

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
15 of 29
Page 2132 of 2921

FILED: BRONX COUNTY CLERK 08/18/2021 09:03 AM        INDEX NO. 803872/2021E
NYSCEF DOC. NO. 32   Case 20-51051-TMH   Doc 258-151   Filed 01/12/24   Page 17 of 30   RECEIVED NYSCEF: 08/18/2021

16

Proceedings

1        incident at an independent location needs to be a specific

2        independent location.  You will not find that language in

3        the policy, Your Honor.

4               And all of that is important because the Court of

5        Appeals has made clear that in construing insurance

6        policies in insurance coverage disputes like this one, the

7        first principle is for the Court to look for the language

8        of the policy and that the policy language should be

9        enforced as written and that the policy should be construed

10        looking at the language of the policy as a whole, not

11        snippets here or there.

12               And we contend, Your Honor, that if you look at

13        the language of this policy as a whole that The Garden has

14        clearly pled facts sufficient to bring this action within

15        the scope of the coverage and clearly pleaded sufficiently

16        causes of action for breach of contract, for breach of the

17        implied covenant of good faith and fair dealing and for

18        declaratory judgment.

19               Mr. Haas indicated that the case law that he's

20        relying on requires that a government order impose total

21        denial of access to the policy holder's location.  A

22        reading of the Allied World policy here that was sold to

23        The Garden makes clear that that is not the case.

24               The business interruption period is defined, state

25        that that period end for contingent business interruption

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
16 of 29

Page 2133 of 2921

Proceedings

1          when the insured can access the property on an other than

2          temporary basis.  So it clearly contemplates that there

3          need not be a complete denial of access to trigger the

4          contingent business interruption coverage under the policy.

5               And we've described this in detail in our brief.

6          There are other provisions of the policy that support our

7          view that a total access denial is not required but the

8          business interruption period that is granted under this

9          policy extends to a full year and the limited coverage is

10         five million dollars.

11              There were much lower limits and durations for

12         business interruption where civil authority coverage in the

13         cases that Mr. Haas described in his argument.  So there

14         are a number of distinguishing factors here in the Allied

15         World policy that make the cases that Allied World is

16         relying on in opposite, it's apples and oranges, Your

17         Honor.  It's trying to fit a -- whatever metaphor you want

18         to use -- and Allied World made clear in -- and Mr. Haas

19         indicated in his remark this morning that Allied World

20         cannot cite a case involving this particular policy nor can

21         Allied World cite a case involving any specialty

22         environmental policy that would cover a pollution incident

23         that includes coverage for viruses like this policy does.

24              In view of that, we think that it's a stretch for

25         Allied World to be seeking dismissal and at this particular

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment        Page 2134 of 2921
17 of 29

Proceedings

1     phase of the litigation, dismissal certainly is not

2     warranted.

3          Mr. Haas also talked a bit about the policy

4     language requiring that the necessary suspension of

5     operations from a government order be caused solely and

6     directly by a pollution incident at an independent

7     location.  And again, that's all the policy language says,

8     at an independent location.  It doesn't say a specific

9     independent location.

10         It's clear that there was no viruses being alleged

11    to be on site at New York Botanical Garden, so it's clear

12    that the orders that were an act of the executive order by

13    Governor Cuomo and Mayor de Blasio to deal with the

14    situation to stop the spread of COVID-19 were issued as a

15    result of presence of COVID-19 at independent locations.

16    That's all it says, independent locations, nothing more

17    specific than that.

18         Allied World is trying to conflate the language of

19    this policy, it's the worse specific language in cases

20    involving other policy under the commercial property

21    policies that have entirely different language than what

22    we're dealing with here.

23         I don't believe that there's any doubt that these

24    orders were issued as a result of COVID-19.  COVID-19 is a

25    virus and a virus can constitute a pollution incident under

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment          Page 2135 of 2921
18 of 29

FILED: BRONX COUNTY CLERK 08/18/2021 09:03 AM

NYSCEF DOC. NO. 32

INDEX NO. 803872/2021E

RECEIVED NYSCEF: 08/18/2021

Case 20-51051-TMH   Doc 258-151   Filed 01/12/24   Page 20 of 30

Proceedings

1        the policy.  We believe that even used a but for causation

2        standard, there is no other reason why these orders were

3        enacted other than but for COVID-19.

4                 So we believe that that requirement has been met.

5        Certainly from a pleading standpoint.

6                 Mr. Haas is describing the necessity to

7        demonstrate that these orders solely and directly the

8        result of a pollution incident at an independent location.

9        He's getting into a lot of potential fact issues.  This is

10       a motion to dismiss pleading and based on the policy

11       language and based on the language of the orders

12       themselves, those orders cannot be said, conclusively

13       refute the allegations that have been made by New York

14       Botanical Garden in its complaint.

15                I am going to briefly address New York Botanical

16       Garden's claim for breach of the implied covenant of good

17       faith and fair dealing which is the third cause of action

18       in the Garden's complaint.

19                We cited in our brief, Your Honor, the Court of

20       Appeals decision in Bi-Economy, a 2008 decision from the

21       Court of appeals which clearly states that a claim for

22       consequential damages, which is what The Garden is looking

23       for here.  What The Garden has pled can be based upon the

24       breach of the implied duty of good faith and fair dealing.

25       And in that case the only allegations in the Bi-Economy

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

19 of 29

Page 2136 of 2921

FILED: BRONX COUNTY CLERK 08/18/2021 09:03 AM

INDEX NO. 803872/2021E

NYSCEF DOC. NO. 32

Case 20-51051-TMH    Doc 258-151    Filed 01/12/24    Page 21 of 30

RECEIVED NYSCEF: 08/18/2021

20

Proceedings

1    case.  The only allegations that were reported in the case

2    were that the insurer wrongfully delayed payment and failed

3    to conduct a good faith investigation, timely good faith

4    investigation of the claim.

5         There is no requirement under the Bi-Economy case

6    that the policy holder needs to plead a higher standard of

7    conduct such as gross disregard for the policy holder's

8    rights under the policy.

9         Bi-Economy, the 2008 case from the New York Court

10   of Appeals marked the point of departure from the cases

11   that are cited by Allied World in its brief.  A case from

12   1967, et cetera.

13        So we believe that we have sufficiently pled a

14   request for consequential damages based on Allied World's

15   breach of its implied duty of good faith and fair dealing

16   under the policy.

17        We would also refer the Court to the First

18   Department's ruling in the D.K. property case which was

19   cited in our brief which states that there is no heighten

20   leading requirement with respect to consequential damages.

21   And in the complaint New York Botanical Garden has gone

22   beyond that and has stated with particularity the kinds of

23   loss that it suffered as a result of Allied World's failure

24   to pay contingent business interruption coverage.

25        The Garden has stated and alleged and pleaded that

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
20 of 29

Page 2137 of 2921

Proceedings

1          it had to institute judgements, reduce problematic

2          activities, that it was unable to make new hires and

3          achieve its facility maintenance standards, it lost

4          opportunities to expands its plant collection and was

5          forced to deplete its endowment fund.  And last but not

6          least, higher attorneys to litigate its coverage claim

7          here.

8                    We believe, Your Honor, that under the case law

9          from the Court of Appeals and from the First Department

10         that this distinct -- given this distinct policy and the

11         language of this distinct policy that The Garden has more

12         than fulfilled its obligation from a pleading standpoint to

13         assert coverage under this distinct specialty pollution

14         liability policy which is different from the cases that are

15         cited by Allied World in its brief and that the orders that

16         Mr. Haas has attached to his affirmation do not

17         conclusively rule out the basis for coverage under the

18         policy here.

19                   So we would respectfully request, Your Honor, that

20         the motion be denied or alternatively that The Garden be

21         granted leave to replead, if necessary, and I'm also

22         pleased to answer any questions that the Court may have.

23                   Thank you for your time.

24                   THE COURT:  Okay, thank you.

25                   I have a question for you.  The business

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment                Page 2138 of 2921
21 of 29

FILED: BRONX COUNTY CLERK 08/18/2021 09:03 AM INDEX NO. 803872/2021E
NYSCEF DOC. NO. 32 Case 20-51051-TMH   Doc 258-151   Filed 01/12/24   Page 23 of 30 RECEIVED NYSCEF: 08/18/2021

Proceedings                                                                   22

1    distinction that was made in the argument that I reviewed

2    in the papers is how the planet attempts to distinguish

3    their policy as a more blanket policy to deal with the

4    situation as compared to what you're relying on to the

5    specific language of the case that you're relying upon; how

6    would you address that?

7              MR. HAAS:  Well, I think it's a distinction.  It

8    is correct that the property policy provides coverage for

9    direct physical loss or damage whereas the pollution policy

10   provides coverage for a pollution incident, but that is

11   all.  So all that means is that the business interruption

12   loss with respect to the property policies must flow from

13   physical loss or damage and the business interruption in

14   the pollution policy must flow from a pollution incident,

15   but otherwise the language is identical and not really

16   distinguishable in any material way.

17             So when you look at the definition of contingent

18   business interruption under the Allied World policy and

19   then look at the civil authority coverage that is discussed

20   in all of the cases that I discussed with Your Honor, it's

21   precisely the same, they both require business interruption

22   loss that results from a covered cause of loss, physical

23   loss or damage in the incident policy, a pollution incident

24   in the incident of the Allied World policy and it must be

25   because of a shutdown of insured premises of a covered

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
22 of 29                                              Page 2139 of 2921

Proceedings

1          location because of a covered cause of loss at a

2          neighboring or other non-owned location.

3                    It's precisely the same thing.  There is really no

4          difference and all of the distinctions that have been

5          pointed out are really distinctions with a no difference.

6          The Allied World policy uses the term denied access whereas

7          some of the others say prohibit.  Denied and prohibit are

8          the same things.  You can't have access.  Access denied.

9          It doesn't mean partial or limited access is permitted.  It

10         means access is denied and that is what is required.

11                   These government orders didn't do that and all of

12         those cases so hold.  The fact that the business

13         interruption period ends when the insured is allowed access

14         on an other than temporary basis doesn't mean anything.

15         The trigger of coverage remains that there must be a denial

16         of access to the insured property.  All this is saying is

17         that the business interruption period will continue until

18         the insured is allowed to come back permanently, so that if

19         they are allowed to come back temporarily but they are

20         still not permitted to continue the operation that existed

21         before the order the business interruption period

22         continues.  And nor does it matter that the costs that can

23         be recovered would be reduced if the insured is able at

24         some point to resume its operations.  That doesn't affect

25         the trigger.

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment    Page 2140 of 2921
23 of 29

Proceedings

```
 1              So the trigger again is you need a civil authority

 2       order that denies access.  That does not exist here.

 3              Then lastly, this point about that the policy will

 4       terminate the business interruption period after three

 5       hundred and sixty-five days if it should continue beyond

 6       that, that has nothing to do with the issues before the

 7       Court whatsoever.  It doesn't change the fact that the

 8       trigger is a civil authority order that denies access.

 9              And Mr. Kazanjian made a couple of other points to

10       try to distinguish the two types of policies and one of the

11       points that he made was that he reads the policy language

12       to not require the location that is impacted by the

13       pollution incident to be proximate to the owned location.

14              THE COURT:  That was actually my next question.

15              MR. HAAS:  Yes, but -- and thank you, Your Honor,

16       but in fact, it needs to be proximate enough that whatever

17       pollution incident affects that covered location affects

18       that other location results in a government order

19       referencing that location that denies access to the insured

20       location.  So what we're talking about -- and as some of

21       the cases talked about in the civil authority cases, we're

22       talking about a pollution incident happens at another

23       location that incident then affects the covered location in

24       such a way that a civil authority order has to be issued to

25       protect anyone who might be on, go on the covered location.
```

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 2141 of 2921

24 of 29

Proceedings

```
 1                    So what happens is is that if you assume something

 2          like a chemical release, for example, at a neighboring

 3          location, if that chemical release then flows onto the

 4          covered location, the government would then say, we're

 5          going to have to deny access to your location for a period

 6          of time, no one can go there until they all clear signal

 7          and then you can go back to your location.  That's not what

 8          happened here.  What happened here is the government wanted

 9          to stop the spread of COVID.  They told everybody to stop

10          their business, they didn't refer to any location alone,

11          one nearby, and they didn't refer to any covered location

12          nor they suggest that that covered location was being

13          denied access because of COVID-19 at some other place.  It

14          was everywhere, it was everywhere, New York and all of New

15          York.

16                    THE COURT:  Okay.

17                    MR. KAZANJIAN:  Your Honor, may I respond briefly?

18          Unless Your Honor has any additional questions.

19                    THE COURT:  Well, I will ask you to respond to the

20          suggestion that since the executive order responded to

21          every place, not a specific location, as how you were

22          trying to suggest how should I consider what you're saying

23          about that.

24                    MR. KAZANJIAN:  Well, Your Honor, I think again we

25          just go back to the policy language.  All of what Mr. Haas
```

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
25 of 29

Page 2142 of 2921

Case 20-51051-TMH    Doc 258-151    Filed 01/12/24    Page 27 of 30

Proceedings

1      has just argued would make sense if that language were in

2      the policy but there is nothing in the policy stating that

3      there is a need for a specific location as an independent

4      location that it need to be nearby or proximate.  That was

5      an interpretation that Mr. Haas and Allied World is reading

6      into the policy and we contend, Your Honor, that that is an

7      unreasonable interpretation based on the language of the

8      policy.

9           When you see the cases that Allied World sites in

10     its brief talking about specific locations, specifically

11     prohibit neighboring, immediate location, none of that

12     language is in our policy.  Allied World knew how to write

13     a policy that had language like that.  It's not in our

14     policy.  So from a pleading standpoint, The Garden has more

15     than fulfilled its obligation to state a claim that's

16     sufficient to go forward with this case.

17          We would we rely on the cases from the Court of

18     Appeals, what the Court of Appeals has said that in Viking

19     Pump that the policy language is, the touchstone is the

20     guiding principle and you won't see anything about

21     specificity, proximity, immediacy anywhere in this policy

22     when you are looking at the phrase independent location.

23     All it says is that an independent location, this is what

24     the policy says, means a location that is not and was not

25     at any time a location owned, leased, managed, operated or

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
26 of 29

Page 2143 of 2921

Proceedings

1          used by The Garden, by the insured.

2                    THE COURT:  So that could be anywhere?

3                    MR. KAZANJIAN:  It could be anywhere.  It could be

4          anywhere that's right, as long as it's in order.

5                    What it does require is that the order be the

6          result, solely directly the result of a pollution incident

7          at an independent location.  That's what we have here.

8          We've got but for causation, Your Honor.  There was

9          COVID-19 at locations all around the state and we believe

10         that under the language of the policy, under the

11         interpreted principles articulated by the Court of Appeals,

12         The Garden has more than sufficiently pleaded coverage

13         under this policy and causes of action based on Allied

14         World obligations.

15                   THE COURT:  Okay, Mr. Haas, I'll give you the last

16         word since this is your motion.

17                   MR. HAAS:  Thank you, Your Honor.

18                   Yes, well, I would just reiterate that the policy

19         language requires that the business suspension be caused

20         solely by a pollution incident at an independent location

21         and that the order is solely and directly the result of a

22         pollution incident at that location.

23                   The government orders referred to no locations.

24         There is not a location.  There is not a location.  There

25         is no location and there is nothing in any of the orders

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
27 of 29

Page 2144 of 2921

Proceedings

1          that suggests that the New York Botanical Garden was shut

2          down, was denied access because of a pollution incident at

3          a separate specific, that location, incident location.

4                    Thank you.

5                    THE COURT:  Okay, all, right thank you counselor.

6          I appreciate your argument.

7                    I'm going to require the Plaintiff to order the

8          transcript -- defendant to order the transcript.  His

9          notion.

10                   I will upload it up to NYSID.  I haven't seen the

11         motion for pro hac vice motion, I haven't seen that.

12                   MR. KAZANJIAN:  Yes, Your Honor, thank you very

13         much.

14                   THE COURT:  Is there any objection to that motion,

15         Mr. Haas?

16                   MR. HAAS:  No objection.

17                   THE COURT:  So I will do a short order granting

18         that decision, that order, all right.

19                   MR. KAZANJIAN:  Thank you, Your Honor, we

20         appreciate your time and the consideration that you gave us

21         today.

22                   THE COURT:  Okay, thank you.

23                   MR. HAAS:  Thank you.

24                   THE COURT:  All right, so motion submitted.

25                   MR. KAZANJIAN:  Thank you, Your Honor.

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
28 of 29
Page 2145 of 2921

```
 1                    MR. HAAS:  Thank you everybody.

 2                    THE COURT:  Take care.

 3

 4

 5

 6              *         *         *         *

 7

 8

 9       Certified to be a true and accurate transcript of the

10       stenographic minutes taken within.

11

12

13

14

15              Xiomara O. Carias-Mier
                Senior Court Reporter
16

17

18

19

20

21

22

23

24

25
```

Exhibit 151 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment
29 of 29

Page 2146 of 2921