# EXHIBIT 156

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RS FIT NW LLC, | Case No.: 20-11558 (KBO) |
| Debtor. | (Jointly Administered) |
| 24 HOUR FITNESS WORLDWIDE, INC., | Adv. Proc. No. 20-51051 (KBO) |
| Plaintiff, | |
| v. | |
| CONTINENTAL CASUALTY COMPANY; ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY; STARR SURPLUS LINES INSURANCE COMPANY; ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; BEAZLEY-LLOYD'S SYNDICATES 2623/623; ALLIED WORLD NATIONAL ASSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; and GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, | |
| Defendants. | |

### DEFENDANT ALLIED WORLD NATIONAL ASSURANCE COMPANY'S SUPPLEMENTAL ANSWERS AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Defendant, Allied World National Assurance Company ("Allied World"), by and through

its undersigned counsel, for its Supplemental Answers and Objections to Plaintiff's Second Set

of Interrogatories to Defendant Allied World National Assurance Company (collectively, the

"Interrogatories," and each, individually, an "Interrogatory"), states as follows:

## GENERAL OBJECTIONS

Discovery in this adversary proceeding is continuing. Allied World's answers and objections to the Interrogatories as set forth below are based on the documents and information known or reasonably available to Allied World at the time of these answers and objections. Without assuming any duty to do so, Allied World reserves the right to amend or supplement its answers and objections if it learns of new information through discovery or otherwise. The following answers are, therefore, provided without prejudice to Allied World's rights to rely on facts or documents that may subsequently be discovered or recalled, and to raise contentions and arguments based thereon. No answer contained herein shall be deemed to constitute an agreement or concession that the subject matter thereof is relevant to this adversary proceeding, and all answers are provided without waiving, or intending to waive, any objection as to relevance, privilege or admissibility.

Allied World makes the following General Objections to the Interrogatories. These General Objections are part of the answer to each and every Interrogatory, as if set forth in full therein. The assertion of the same, similar or additional objections in the individual objections to the Interrogatories, or the failure to assert any additional objections, does not waive any of Allied World's General Objections as set forth below.

1.      Allied World's answers herein represent a good faith effort to comply with the Interrogatories. Allied World responds to the Interrogatories based upon its present knowledge.

2.      Allied World objects to the Interrogatories to the extent that they are inconsistent with or seek to impose obligations or burdens upon Allied World beyond those required and/or permitted by the applicable provisions of Fed. R. Civ. P. 26 and 33, made applicable to this adversary proceeding by Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, the

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

Local Rules for the United States Bankruptcy Court for the District of Delaware, and/or any order of this Court.

      3.     Allied World objects to the Interrogatories to the extent they seek information that is not relevant or material to the subject matter of this adversary proceeding or necessary or proportional to the needs of this adversary proceeding.

      4.     Allied World objects to the Interrogatories to the extent they are overly broad or oppressive, or would require an undue burden or expense to respond to that would greatly exceed the value of the information in the context of this adversary proceeding.

      5.     Allied World objects to the Interrogatories to the extent they lack geographic and temporal limitations and/or seek information pertaining to a time period other than a period reasonably related to the alleged business income losses Plaintiff allegedly incurred from COVID-19 because such discovery is overly broad, unduly burdensome, irrelevant and not necessary or proportional to the needs of this adversary proceeding.

      6.     Allied World objects to the Interrogatories to the extent they seek information that was prepared, generated or received in anticipation of or after the commencement of this adversary proceeding, and to the extent they seek information that is subject to the attorney-client privilege, attorney work-product doctrine or any other applicable privilege, legal protection or rule of confidentiality.

      7.     Allied World objects to the Interrogatories to the extent they seek information regarding trade or business secrets or other confidential, proprietary or sensitive business information.

      8.     Allied World objects to the "Definitions" contained in the Interrogatories to the extent they seek to impose obligations greater than those imposed by the applicable provisions of

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

Fed. R. Civ. P. 26 and 33, made applicable to this adversary proceeding by Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court and/or any order of this Court.

9.      In answering the Interrogatories, Allied World does not in any way waive or intend to waive, but rather reserves and intends to reserve, the following:

(a)      all objections as to competency, relevancy, materiality and admissibility;

(b)      all rights to object on any ground to the use of any of the responses herein and the documents referred to herein in any subsequent proceeding, including trial of any other action;

(c)      all objections as to vagueness and ambiguity; and

(d)      all rights to object on any ground to any further discovery requests involving or relating to the Interrogatories.

10.      Allied World objects to the Interrogatories to the extent they call for the disclosure of information or documents protected by the attorney-client privilege, the work product doctrine or any other privilege or rule of confidentiality.  Allied World further objects to the Interrogatories insofar as they seek information related to mental impressions, legal conclusions, opinions or theories of any attorney or other representative of Allied World. Privileged and/or confidential information and/or documents will not be produced.

11.      Allied World objects to the Interrogatories to the extent they seek confidential, proprietary or otherwise protected business or commercial information, including but not limited to information relating to reinsurance and/or reserves, which is not relevant to any claims or defenses, is privileged and confidential, contains trade or business secrets or other confidential,

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

proprietary or sensitive business information, or is not necessary or proportional to the needs of this adversary proceeding.

12.    Allied World objects to the Interrogatories to the extent they seek information about policyholders other than Plaintiff.  Such information is confidential; is not relevant to any issue in this adversary proceeding; is not proportional to the needs of this adversary proceeding; may be subject to a protective order, confidentiality agreement or other prohibition against disclosure; and would create an undue burden on Allied World to identify, locate and provide.

13.    All answers and objections herein are based on information currently available to Allied World, and Allied World reserves the right to amend or supplement these responses as discovery is ongoing.

**INTERROGATORY NO. 23:**    If YOU contend that the presence of COVID-19 on, at, or within buildings or structures does not constitute a "pollution incident," state all facts that support YOUR contention.

**INITIAL RESPONSE TO INTERROGATORY NO. 23:**

Allied World objects to this Interrogatory as overly broad and unduly burdensome. Allied World also objects to this Interrogatory to the extent that it may be construed as seeking disclosure of information protected by the attorney-client privilege and/or which constitutes the work product of its attorneys and/or their agents.  In addition, Allied World incorporates by reference its General Objections.  Without waiving the foregoing objections and subject to Allied World's right to supplement its responses as it investigates, and discovery proceeds regarding, plaintiff's claims and Allied World's defenses, Allied World responds to this Interrogatory as follows:

Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

The burden is on Plaintiff, not Allied World, to establish and prove that its claim falls within the insuring agreements of the Pollution Policy.  To date, Plaintiff has failed to establish or prove that its claim falls within the insuring agreements of the Pollution Policy.  Allied World will not speculate about theoretical evidence which Plaintiff has failed to provide and/or identify to Allied World that Plaintiff may assert sets forth a prima facie claim.  Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Allied World refers Plaintiff to the Pollution Policy and the non-privileged portions of Allied World's claims file with respect to the Pollution Policy produced by Allied World in this adversary proceeding.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:

Allied World incorporates by reference its General Objections and its Initial Response to this Interrogatory other than the incorporation of materials pursuant to Rule 33(d) of the Federal Rules of Civil Procedure.  Allied World also objects to this Interrogatory on the grounds that it is vague and seeks the interpretation of the "Scheduled Location Pollution Liability Policy" at issue in this adversary proceeding (the "Pollution Policy"), which is a question of law, not fact, and is therefore not the proper subject of discovery.  Allied World further objects to this Interrogatory to the extent it purports to require Allied World to "state all facts that support YOUR contention" on the grounds that, in the present circumstances, such a requirement would be unduly burdensome.  Without waiving the foregoing objections and subject to Allied World's right to supplement its responses further as it investigates, and discovery proceeds regarding, Plaintiff's claim in this adversary proceeding and Allied World's defenses, Allied World further responds to this Interrogatory as follows:

Allied World does not dispute that (other than for "Biological Hazard Response Expense Coverage," *see* Pollution Policy, Endorsement No. 3) the Pollution Policy defines a "**pollution**

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**incident**" to include, among other things, "[t]he presence of **microbial matter** on, at or within buildings or structures," and defines "**microbial matter**" in a manner that includes COVID-19. *See* Pollution Policy, Section VII – Definitions ¶ 23 & Endorsement No. 9.  [Boldface in original text.]

However, as set forth in greater detail in the Supplemental Responses to Interrogatories 24 and 25 below:  (a) There is no evidence that COVID-19 was "on, at or within" any of the "buildings or structures" at any "**scheduled location**" or that a "**pollution incident**" otherwise occurred "on, at or under a **scheduled location**" referred to in the Pollution Policy.  *See infra* Supplemental Response to Interrogatory No. 24 and deposition transcripts and other documents cited therein; Pollution Policy, Section I – Insuring Agreements ¶ 5(a), Section VII – Definitions ¶ 23 & Endorsement No. 9 (boldface in original text).  (b) Plaintiff did not sustain (i) "**business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location**," or (ii) "**business interruption costs** resulting from **business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location**."  *See infra* Supplemental Responses to Interrogatories 24 and 25 and deposition transcripts and other documents cited therein; Pollution Policy, Section I – Insuring Agreements ¶ 5(a) (boldface in original text).  (c) Even if Plaintiff could show (which it cannot) that a "**pollution incident**" involving COVID-19 occurred "on, at or under a **scheduled location**" listed in the Pollution Policy and that Plaintiff sustained "**business interruption costs** resulting from **business interruption** caused solely and directly by [that] **pollution incident** on, at or under [that] **scheduled location**," that "**pollution incident**" nevertheless could not have "solely and directly" caused more than, at most, a day of "**business interruption**" or "**business interruption costs**" while Plaintiff conducted (either itself or through an outside service) or had the opportunity to

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

conduct a "deep cleaning" of the "**scheduled location**" or the affected portion thereof, after which (i) any subsequent "**business interruption**" or "**business interruption costs**" would not have been "caused solely and directly by [that] **pollution incident** on, at or under [that] **scheduled location**," and (ii) there would not have been any subsequent "**business interruption costs** resulting from **business interruption** caused solely and directly by [that] **pollution incident** on, at or under [that] **scheduled location**." *See* Pollution Policy, Section I – Insuring Agreements ¶ 5(a) (boldface in original text); transcript of 30(b)(6) deposition of Allied World by Glenn Serrano on September 15, 2022, at 59:22-60:3, 112:1-114:18, 125:25-127:9. Moreover, even without a "deep cleaning," any COVID-19 allegedly present on, at, within or under a "scheduled location" would, upon information and belief, have subsequently dissipated and/or become noninfectious and/or become nondetrimental to human beings.  (d) The 72-hour "Business Interruption Waiting Period" under the Pollution Policy precludes any payment for "business interruption costs" allegedly incurred before the expiration of that "Business Interruption Waiting Period."  Pollution Policy, at Declarations, Item 3 § 5.

**INTERROGATORY NO. 24:**  If YOU contend that PLAINTIFF did not sustain "business interruption" and "business interruption costs" caused "solely and directly by a pollution incident," state all facts that support YOUR contention.

**INITIAL RESPONSE TO INTERROGATORY NO. 24:**

Allied World objects to this Interrogatory as overly broad and unduly burdensome to the extent that it seeks information that is within Plaintiff's possession.  Allied World also objects to this Interrogatory to the extent it omits a portion of the language in paragraph 5 of Section I of the Pollution Policy, entitled "Business Interruption Coverage," which, subject to the other terms, conditions, provisions, exclusions of the [Pollution] Policy, provides, in pertinent part,

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

that "We [*i.e.*, Allied World] will pay **business interruption costs** resulting from **business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location** …." [Boldface in original text.] Allied World further objects to this Interrogatory to the extent that it may be construed as seeking disclosure of information protected by the attorney-client privilege and/or which constitutes the work product of its attorneys and/or their agents. In addition, Allied World incorporates by reference its General Objections. Without waiving the foregoing objections and subject to Allied World's right to supplement its responses as it investigates, and discovery proceeds regarding, Plaintiff's claims and Allied World's defenses, Allied World responds to this Interrogatory as follows:

The burden is on Plaintiff, not Allied World, to establish and prove that its claim is within the insuring agreements of the Pollution Policy, including, as relevant to this Interrogatory, that any alleged "**business interruption costs** result[ed] from **business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location**" referred to in the Pollution Policy. [Boldface in original text.] To date, Plaintiff has failed to establish or prove that its claim falls within the insuring agreements of the Pollution Policy, including that any alleged "**business interruption costs** result[ed] from **business interruption** caused solely and directly by a **pollution incident** on, at or under" any "scheduled location" referred to in the Pollution Policy. [Boldface in original text.] Allied World will not speculate about theoretical evidence that Plaintiff has failed to provide and/or identify to Allied World that Plaintiff may assert sets forth a prima facie claim.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Allied World refers Plaintiff to the Pollution Policy, the non-privileged portions of Allied World's claims file with respect to the Pollution Policy produced by Allied World in this adversary proceeding, Allied

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

World's Opening Brief and its Reply filed in support of its Motion for Judgment on the Pleadings, Plaintiff's Complaint insofar as it alleges or admits that closures of Plaintiff's business locations were caused by the governmental orders referred to in Plaintiff's Complaint, the transcript of the 30(b)(6) deposition of Plaintiff taken by Allied World on April 28, 2022, the exhibits marked at that deposition, the transcripts of the other depositions of present and former representatives of Plaintiff taken in this adversary proceeding, and the exhibits marked at those depositions.

### **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 24:**

Allied World incorporates by reference its General Objections and its Initial Response to this Interrogatory other than the incorporation of materials pursuant to Rule 33(d) of the Federal Rules of Civil Procedure.  Allied World also objects to this Interrogatory on the grounds that it seeks the interpretation of the Pollution Policy, which is a question of law, not fact, and is therefore not the proper subject of discovery.  Allied World further objects to this Interrogatory to the extent it purports to require Allied World to "state all facts that support YOUR contention" because, in the present circumstances, such a requirement would be unduly burdensome. Without waiving the foregoing objections and subject to Allied World's right to supplement its responses further as it investigates, and discovery proceeds regarding, Plaintiff's claim in this adversary proceeding and Allied World's defenses, Allied World further responds to this Interrogatory as follows:

There is no evidence that COVID-19 was "on, at or within [the] buildings or structures" at any "scheduled location" or that a "pollution incident" otherwise occurred "on, at or under a scheduled location" listed in the Pollution Policy.  *See* Pollution Policy, Section I – Insuring Agreements ¶ 5(a), Section VII – Definitions ¶ 23, Endorsement No. 9 (boldface omitted);

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

**Page 2227 of 2921**

transcript of 30(b)(6) deposition of Plaintiff by Dan Larson on April 28, 2022, at 46:12-47:6, 48:5-55:17, 66:2-67:10, 78:16-79:16 and 81:22-89:9 and Exhibit 7 at that deposition; transcript of second deposition of Dan Larson on April 28, 2022, at 38:8-23, 82:22-83:5, 103:11-25; transcript of deposition of Matthew Piro on April 27, 2022, at 178:20-179:14, 183:5-184:25 and Exhibits 2 and 4 at that deposition; AWPLL000136 at n. 1; transcript of deposition of Jeremy Gottlieb on June 17, 2022, at 13:20-18:9.   Because there is no evidence that a "**pollution incident**" occurred on, at or under a "**scheduled location**" listed in the Pollution Policy, Plaintiff could not have sustained (i) "**business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location**," or (ii) "**business interruption costs** resulting from **business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location**." *See* Pollution Policy, Section I – Insuring Agreements ¶ 5(a), Section VII – Definitions ¶ 23 & Endorsement 9 (boldface in original text); Allied World's Opening Brief and its Reply in support of its Motion for Judgment on the Pleadings.

Further, Plaintiff's Complaint, the deposition testimony in this adversary proceeding, the exhibits marked at depositions, and other documents produced in this adversary proceeding show that any alleged "business interruption" or "business interruption costs" were not caused "solely and directly" by the presence of COVID-19 on, at or within any of the buildings or structures at Plaintiff's fitness clubs or a "pollution incident" on, at or under any "scheduled location" listed in the Pollution Policy, and instead resulted from:

(a)     compliance with the requirements of governmental orders and/or directives issued by state, county and municipal governments or governmental agencies with respect to the COVID-19 pandemic, including, without limitation, those referred to in the Complaint or at 24HF_Production_0000044-0002147, (collectively, the

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**    **Page 2228 of 2921**

"Governmental Orders" and each, individually, a "Governmental Order"), which: (i) mandated (in some cases subject to exceptions for specified categories of businesses or business operations) the closure[1] of all fitness clubs and/or all non-essential businesses within entire states, counties or municipalities and/or otherwise prevented individuals in such jurisdictions from visiting fitness clubs; (ii) were not specifically directed at and did not mention any of Plaintiff's fitness clubs or any "scheduled location"; (iii) did not refer to (A) any presence of COVID-19 on, at, or within the buildings or structures at any "scheduled location" listed in the Pollution Policy or (B) any other circumstances constituting a "pollution incident" "on, at or under a scheduled location" listed in the Pollution Policy; and (iv) indicated that the business closures and other restrictions imposed by the Governmental Orders were intended to reduce person-to-person contacts among individuals and promote social distancing in order to slow and/or prevent the spread of COVID-19, prevent high-risk individuals from becoming infected with COVID-19, and prevent healthcare facilities from becoming overwhelmed with COVID-19 patients (*e.g.*, Compl. ¶¶ 27-34, 40, 42, 55, 58; 24HF_Production_0000044-0002147; 24HF_Production_0003406; transcript of 30(b)(6) deposition of Plaintiff by Dan Larson on April 28, 2022, at 32:20-43:15, 49:15-58:21, 62:18-65:25, 69:2-71:8, 87:17-88:8, 89:24-92:23, 102:3-12, 106:22-107:12, 113:7-16 and Exhibits 3, 5, 6, 8 and 10 at that deposition; second deposition of Dan Larson on April 28, 2022, at 50:25-57:8, 61:23-62:11; Exhibits 9 and 15 at deposition of Matthew Piro on April 27, 2022; Allied World's

---

[1] As used in these Supplemental Answers and Objections to Plaintiff's Second Set of Interrogatories, the phrases "closure" or "closures" refer to the closing of one or more fitness clubs and the continued status of such fitness club(s) as closed until the reopening of such fitness club(s).

Opening Brief and its Reply in support of its Motion for Judgment on the

Pleadings; *see infra* Supplemental Response to Interrogatory No. 25);

(b)    a decision made by Plaintiff on a global basis to close all of its fitness clubs that

were not already closed[2] at midnight on March 16, 2020, irrespective of whether

COVID-19 was present on, at, within or under any of those fitness clubs or any

"scheduled location"[3] (*e.g.*, 24HF_Production_0003406; transcript of 30(b)(6)

deposition of Plaintiff by Dan Larson on April 28, 2022, at 29:21-34:4, 59:19-

61:14 and Exhibits 3-5, 8 and 10 at that deposition; transcript of second

deposition of Dan Larson on April 28, 2022, at 42:7-46:10, 47:20-48:18 and

60:11-61:2 and Exhibits 2 and 5 at that deposition; transcript of deposition of

---

[2] In an email sent by Matthew Piro of Plaintiff to the "COVID-19 Leadership Team" on March 16, 2020, at 3:39 p.m. and a chart attached to that email, Mr. Piro described "what [he was] aware of in terms of club closures" "[a]s of 8:30am [on March 16, 2020]." *See* Document marked as Exhibit 3 at 30(b)(6) deposition of Plaintiff by Dan Larson on April 28, 2022, at 1 ("Larson 30(b)(6) Exhibit 3"). In that email, Mr. Piro stated: "Last night, LA City and King County, WA announced required closures of all gyms. All were to close by midnight I believe. This morning, NY/NJ/MD all announced required closures of gyms. NY/NJ are required to close by 8:00pm and MD are required by close by 5:00pm." Larson 30(b)(6) Exhibit 3 at 1. In the email, he also indicated, among other things, that, as of 8:30 a.m. on March 16, 2020, "16 [of Plaintiff's fitness clubs] … are closed or are closing," "29 [fitness clubs] … must close today (so far)" (and, upon information and belief, did in fact close before midnight on March 16, 2020), and "12 [fitness clubs are] currently in question in the LA area." Larson 30(b)(6) Exhibit 3 at 1-2. The chart attached to Mr. Piro's email indicated that club no. 562 in Portland, Oregon, had "Closed" "Due To" "Exposure," and that the other closings and required closings were "Due To" various Governmental Orders referred to in the chart. Larson 30(b)(6) Exhibit 3 at 1-2.

According to the chart and discovery provided by Plaintiff, club no. 562 in Portland, Oregon, was shut down on March 16, 2020, at 12:00 a.m., for a "deep cleaning" scheduled for March 16, 2020, at 6:00 p.m. (which was cancelled after the decision to close all of Plaintiff's fitness clubs that were still open by midnight on March 16, 2020) following an unverified report of a "presumed positive" case of COVID-19 involving a manager at that club, and (prior to Plaintiff's decision made to close all clubs that were still open) was expected to reopen by March 18, 2020, following that "deep cleaning." Transcript of 30(b)(6) deposition of Plaintiff by Dan Larson on April 28, 2022, at 42:11-20, 43:16-49:8, 111:13-112:2; Larson 30(b)(6) Exhibit 3 at 2; transcript of deposition of Matthew Piro on April 27, 2022, at 97:10-100:18, and Exhibit 4 marked at that deposition. However, no evidence that this individual actually had COVID-19, or had COVID-19 while at that club, was ever provided by Plaintiff, and, according to a subsequent letter from Jeremy Gottlieb of Plaintiff to Zeesie Pertain of Allied World, "it later was determined that the individual likely did not have COVID-19." AWPLL000136 at n. 1; AWPLL001251-53; transcript of 30(b)(6) deposition of Plaintiff by Dan Larson on April 28, 2022, at 42:11-20, 43:16-49:8, and Larson 30(b)(6) Exhibit 3; transcript of deposition of Matthew Piro on April 27, 2022, at 97:10-100:18, and Exhibit 4 at that deposition.

[3] As noted at pages 10-11 above, there is no evidence that COVID-19 was "on, at or within [the] buildings or structures" at any "scheduled location" listed in the Pollution Policy or that a "pollution incident" otherwise occurred "on, at or under a scheduled location" listed in the Pollution Policy.

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

Jeremy Gottlieb at 12:24-18:9; transcript of deposition of Matthew Piro on April 27, 2022, at 136:20-140:11 and Exhibits 10, 12 and 18 at that deposition);

(c)    "lease rejection[s]" which resulted in the permanent closures of club nos. 208, 366, 387, 573, 637, 658, 673, 676, 694 and 870 (24HF_Production_0003406; transcript of 30(b)(6) deposition of Plaintiff by Dan Larson on April 28, 2022, at 92:11-16); and/or

(d)    decisions made by Plaintiff to permanently close (i) numerous temporarily closed fitness clubs as of June 14, 2020, (ii) one temporarily closed fitness club as of August 31, 2020 (club no. 103), and (iii) six temporarily closed fitness clubs as of December 28, 2020 (club nos. 88, 90, 150, 385, 407 and 927) (24HF_Production_0003406).

In the Complaint, Plaintiff admits that the Governmental Orders required the closure of all commercial fitness clubs in numerous jurisdictions including "in the areas where 24 Hour Fitness conducted business" (for the time periods set forth in those orders), "required [Plaintiff] to keep its clubs closed," and prevented customers from accessing Plaintiff's fitness clubs. *E.g.,* Compl. ¶¶ 27-34 (describing various Governmental Orders); Compl. ¶ 40 ("Plaintiff … was required to keep its clubs closed due to various governmental orders. … In some cases, … Plaintiff was subject to the rolling back of its ability to reopen in certain states, including in California, its largest market, which implemented orders causing the prohibition of operations at nearly all of its clubs in California on July 15, 2020."); Compl. ¶ 42 ("As noted above, in certain jurisdictions, including California, Plaintiff is still prohibited from operating, as the government has determined that fitness clubs should be closed due to perceived risks associated with such businesses.  While Plaintiff believes that the modifications it has put in place now allow it to

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Opposition to Defendants' Motions for Summary Judgment**                    **Page 2231 of 2921**

operate safely, it is required to comply with these government directives."); Compl. ¶ 55 (referring to "the various civil authority orders that prevented customers from accessing the 24 Hour Fitness business locations").

Thus, Plaintiff's Complaint, the deposition testimony in this adversary proceeding, and documents produced in this adversary proceeding confirm that Plaintiff did not sustain (a) "**business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location**," or (b) "**business interruption costs** resulting from **business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location**." *See* Pollution Policy, Section I – Insuring Agreements, ¶ 5(a). [Boldface in original text.]

Even if Plaintiff could show (which it cannot) that a "**pollution incident**" involving COVID-19 occurred "on, at or under a **scheduled location**" and that Plaintiff sustained "**business interruption costs** resulting from **business interruption** caused solely and directly by [that] **pollution incident** on, at or under [that] **scheduled location**," after a short period of "business interruption" of not more than a day while Plaintiff conducted or had the opportunity to conduct a "deep cleaning" of the fitness club at that "scheduled location" or the affected portion thereof:  (i) any subsequent "**business interruption**" or "**business interruption costs**" would not have been "caused solely and directly by [that] **pollution incident** on, at or under [that] **scheduled location**," and (ii) Plaintiff would not have sustained any subsequent "**business interruption costs** resulting from **business interruption** caused solely and directly by [that] **pollution incident** on, at or under [that] **scheduled location**." *See* Pollution Policy, Section I – Insuring Agreements, ¶ 5(a) (boldface in original text); transcript of 30(b)(6) deposition of Allied World by Glenn Serrano on September 15, 2022, at 59:22-60:3, 112:1-114:18, 125:25-127:9; transcript of second deposition of Dan Larson on April 28, 2022, at 23:23-24:8, 88:24-90:13,

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

94:3-22 and Exhibits 3 and 4 at that deposition.  Moreover, even without a "deep cleaning," any COVID-19 present on, at or under a "scheduled location" would, upon information and belief, have subsequently dissipated and/or become noninfectious and/or become nondetrimental to human beings.  Further, the 72-hour "Business Interruption Waiting Period" under the Pollution Policy precludes any payment for "business interruption costs" allegedly incurred before the expiration of that "Business Interruption Waiting Period."   Pollution Policy, at Declarations, Item 3 § 5.

**INTERROGATORY NO. 25:**   If YOU contend that there can be no covered "business interruption" where the "business interruption" is the result of a "pollution incident" that occurred when there was a governmental order issued in conjunction with or following a "pollution incident" that placed limitations on the use of a covered location, state all facts that support YOUR contention.

**INITIAL RESPONSE TO INTERROGATORY NO. 25:**

Allied World objects to this Interrogatory as overly broad, unduly burdensome and vague.  Allied World further objects to this Interrogatory to the extent that it may be construed as seeking disclosure of information protected by the attorney-client privilege and/or which constitutes the work product of its attorneys and/or their agents.   In addition, Allied World incorporates by reference its General Objections.  Without waiving the foregoing objections and subject to Allied World's right to supplement its responses as it investigates, and discovery proceeds regarding, Plaintiff's claims and Allied World's defenses, Allied World responds to this Interrogatory as follows:

The burden is on Plaintiff, not Allied World, to establish and prove that its claim falls within the insuring agreements of the Pollution Policy.  To date, Plaintiff has failed to establish

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                    **Page 2233 of 2921**

or prove that its claim falls within the insuring agreements of the Pollution Policy. Allied World will not speculate about theoretical evidence that Plaintiff has failed to provide and/or identify to Allied World that Plaintiff may assert sets forth a prima facie claim.

Paragraph 5 of Section I of the Pollution Policy, entitled "Business Interruption Coverage," provides, in pertinent part, that, "We [*i.e.*, Allied World] will pay **business interruption costs** resulting from **business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location** …." [Boldface in original text.] Under this provision, if a closure of a "scheduled location" of Plaintiff was caused in whole or in part by a governmental order such as those referred to in the Complaint, then any "**business interruption costs**" for that closure did not "result[] from **business interruption** caused solely and directly by a **pollution incident** on, at or under [the] **scheduled location**," and there is no "Business Interruption Coverage" under the Pollution Policy for that closure. [Boldface in original text.]

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Allied World also refers Plaintiff to the Pollution Policy, the non-privileged portions of Allied World's claims file with respect to the Pollution Policy produced by Allied World in this adversary proceeding, Allied World's Opening Brief and its Reply filed in support of its Motion for Judgment on the Pleadings, Plaintiff's Complaint insofar as it alleges or admits that closures of Plaintiff's business locations were caused by the governmental orders referred to in Plaintiff's Complaint, the governmental orders referred to in Plaintiff's Complaint, the transcript of the 30(b)(6) deposition of Plaintiff taken by Allied World on April 28, 2022, the exhibits marked at that deposition, the transcripts of the other depositions of present and former representatives of Plaintiff taken in this adversary proceeding, and the exhibits marked at those depositions.

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 25:**

Allied World incorporates by reference its General Objections and its Initial Response to this Interrogatory other than the incorporation of materials pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Allied World also objects to this Interrogatory to the extent it purports to require Allied World to "state all facts that support YOUR contention" on the grounds that, in the present circumstances, such a requirement would be unduly burdensome. Allied World further objects to this Interrogatory on the grounds that it seeks the interpretation of the Pollution Policy, which is a question of law, not fact, and is therefore not the proper subject of discovery. In addition, Allied World objects to this Interrogatory on the grounds that it is an improper, unclear and confusing hypothetical that seeks information that is not relevant to the issues in this adversary proceeding. Without waiving the foregoing objections and subject to Allied World's right to supplement its responses further as it investigates, and discovery proceeds regarding, Plaintiff's claim in this adversary proceeding and Allied World's defenses, Allied World further responds to this Interrogatory as follows:

Paragraph 5(a) of Section I of the Pollution Policy, entitled "Business Interruption Coverage," provides, in pertinent part, that "[w]e [*i.e.*, Allied World] will pay **business interruption costs** resulting from **business interruption** caused solely and directly by a **pollution incident** on, at or under a **scheduled location** …." Pollution Policy, Section I – Insuring Agreements ¶ 5(a) (boldface in original text). Because paragraph 5(a) uses the phrase "solely and directly," if any "**business interruption**" was the result of a "**pollution incident**" on, at or under a "**scheduled location**" listed in the Pollution Policy, and that "**business interruption**" was also required in whole or in part by one or more governmental orders, such as one or more of the Governmental Orders, then that "**business interruption**" would not be

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

"caused solely and directly by a **pollution incident** on, at or under [the] **scheduled location**," and there would be no coverage for that "**business interruption**" under paragraph 5(a) of Section I the Pollution Policy.    Pollution Policy, Section I – Insuring Agreements ¶ 5(a) (boldface in original text).

The provisions of the Governmental Orders confirm that, under paragraph 5(a) of Section I of the Pollution Policy, any "business interruption" alleged by Plaintiff could not have been "caused solely and directly by" a "pollution incident" involving COVID-19 "on, at or under a scheduled location" listed in the Pollution Policy, where that "business interruption" was required in whole or in part by one or more of the Governmental Orders (including, without limitation, where the applicable Governmental Order(s) had the effect of requiring the closure of and/or preventing customers and/or other individuals from visiting or using the "scheduled location"). *See* Pollution Policy, Section I – Insuring Agreements ¶ 5(a) (boldface omitted).  The provisions of the Governmental Orders confirm this because, among other reasons:  (a) the Governmental Orders – including those which had the effect of requiring closures of Plaintiff's fitness clubs, and/or of preventing customers and/or other individuals from visiting or using Plaintiff's fitness clubs – do not state or indicate that COVID-19 was present on, at, within or under any of Plaintiff's fitness clubs or any "scheduled location," or that the presence of COVID-19 on, at, within or under any of Plaintiff's fitness clubs or any "scheduled location" was a reason for the issuance of any of the Governmental Orders[4]; (b) the Governmental Orders do not state that they were issued as a result of any event or condition on, at or under a

---

[4] In its Response to Interrogatory No. 2 in Plaintiff's Response to Defendant Allied World National Assurance Company's Second Set of Interrogatories, Plaintiff claims that it "believes that" "the 'Stay at Home' and other similar orders governing the jurisdictions of Plaintiff's locations" "affirm that operations at each of its locations were 'suspended' 'solely and directly' due to the presence of COVID-19 at insured locations."  However, there is no basis for that claimed belief because none of the Governmental Orders state or imply that COVID-19 was present on, at, within or under any "scheduled location" listed in the Pollution Policy.  *See* 24HF_Production_0000044-0002147.

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**                  **Page 2236 of 2921**

"scheduled location" that would constitute a "pollution incident" under the Pollution Policy; (c) the Governmental Orders do not mention any of Plaintiff's fitness clubs or any of the "scheduled location[s]" listed in the Pollution Policy; and (d) each Governmental Order that had the effect of requiring closure of any of Plaintiff's fitness clubs, and/or of preventing customers and/or other individuals from visiting or using any of Plaintiff's fitness clubs, had that effect because it (i) required the closure of all fitness clubs or all non-essential businesses (in some cases subject to exceptions for specified categories of businesses or business operations) within a designated geographical area (*e.g.*, a state, county or municipality) during the time period referred to therein and/or (ii) imposed other restrictions within such a geographical area during that time period. *See* 24HF_Production_0000044 to 24HF_Production_0002147; Pollution Policy, Section I – Insuring Agreements ¶ 5(a), Section VII – Definitions ¶ 23 & Endorsement No. 9.

Further, numerous Governmental Orders indicated that they were imposing restrictions – including, without limitation, the closure of all fitness clubs or all non-essential businesses (in some cases subject to exceptions) in the geographical areas they covered and/or other restrictions that prevented customers and/or other individuals in such areas from visiting or using fitness clubs – in order to reduce person-to-person contacts among individuals and/or to promote social distancing for the purposes of slowing down or preventing the spread of COVID-19, preventing high-risk individuals from becoming infected, and/or preventing healthcare systems from becoming overwhelmed with COVID-19 patients. *E.g.,* Executive Order N-33-20 signed by Gavin Newsome dated March 19, 2020, 24HF_Production_0000665-67 ("To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability, all residents are directed to immediately heed the current State public health directives, which I ordered the Department of Public Health

Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

to develop for the current statewide status of COVID-19. … To protect the public health, I as State Public Health Officer and Director of the State of California Department of Public Health order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors …. This order is being issued to protect the public health of Californians. … Our goal is simple, we want to bend the curve, and disrupt the spread of the virus."); Order of the Health Officer of the County of Marin, dated March 16, 2020, 24HF_Production_0000833-39 ("All businesses with a facility in the County, except Essential Businesses as defined below in Section 10, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined in Section 10. … One proven way to slow the transmission is to limit interactions among people to the greatest extent practicable.  By reducing the spread of the COVID-19 virus, this Order helps preserve critical and limited healthcare capacity in the County."); Order of the Health Officer of the County of Alameda No. 20-04, dated March 31, 2020, 24HF_Production_0000845-57 ("The intent of this Order is to ensure that the maximum number of people shelter in their places of residence to the maximum extent feasible to slow the spread of COVID-19 and mitigate the impact on delivery of critical healthcare services to those in need.  All provisions of this Order must be interpreted to effectuate this intent. … All businesses with a facility in the County, except Essential Businesses, … are required to cease all activities at facilities located within the County except Minimum Basic Operations … Without this tailored set of restrictions that further reduces the number of interactions between persons, scientific evidence indicates that the public health crisis in the County will worsen to the point at which it may overtake available health care resources within the County and increase the death rate."); County of Los Angeles Department of Public Health, Health Officer Order for the

Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Control of COVID-19, Temporary Prohibition of Group Events and Gatherings, Required

Distancing Measures, Closure of Certain Businesses, dated March 16, 2020,

24HF_Production_0001026-36 ("This Order immediately requires closing the following types of

businesses: … (2) Gyms and Fitness Centers. … In the absence of a specific immunization or

treatment for COVID-19, social distancing is the only and most readily and available tool to

prevent this disease.  Increasing social distancing and limiting gatherings are proven ways to

slow transmission of communicable diseases."); Order of the Health Officer of the County of

Sacramento, dated March 19, 2020, 24HF_Production_0001983-90 ("The intent of this Order is

to ensure that the maximum number of people self-isolate in their homes or places of residence

to the maximum extent feasible, while enabling essential services to continue, to slow the spread

of COVID-19 to the maximum extent possible. … The scientific evidence shows that at this

stage of the emergency, it is essential to slow virus transmission as much as possible to protect

the most vulnerable and to prevent the health care system from being overwhelmed.  One proven

way to slow the transmission is to limit interactions among people to the greatest extent

practicable.  By reducing the spread of the COVID-19 virus, this Order helps preserve critical

and limited healthcare capacity in the County. … All businesses with a facility in the County,

except Essential Businesses as defined in Section 10, are required to cease all activities at

facilities located within the County except Minimum Basic Operations, as defined in Section

10."); County of Placer, California, Health & Human Services, Directive of the Placer County

Health Officer Instructing Individuals to Shelter at Their Place of Residence and Restricting

Non-Essential Activities in Response to COVID-19 Outbreak, dated March 19, 2020,

24HF_Production_0001963-69 ("The intent of this Directive is to slow the spread of COVID-19

in Placer County by having people shelter in place (another way of saying stay home) at their

Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

residence, while enabling essential services to continue. … The scientific evidence shows that at this stage of the emergency, it is essential to slow virus transmission as much as possible to protect the most vulnerable and to prevent the health care system from being overwhelmed.  One proven way to slow the transmission is to limit interactions among people as much as possible. By reducing the spread of the COVID-19 virus, this Directive helps preserve critical and limited health care capacity in Placer County. … All businesses with a facility in the County, except Essential Businesses as defined below, are required to cease activities at facilities located within the County except Minimum Basic Operations, as defined below."); State of New York Executive Chamber, Executive Order No. 202.3, dated March 16, 2020, 24HF_Production_0000044-45, 0000091-92 ("WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue; … I hereby issue the following directives and suspensions and modifications for the period from the date of this Executive Order 202.3 through April 15, 2020: … Any gym, fitness centers or classes, and movie theatres shall also cease operation effective at 8pm on March 16, 2020 until further notice."); The City of New York, Office of the Mayor, Emergency Executive Order No. 100, dated March 16, 2020, 24HF_Production_0000067-0000070, 0000093-96 ("WHEREAS, the risk of community spread throughout New York City impacts the life and health of the public and public health is imperiled by the person-to-person spread of COVID-19; and WHEREAS, the reduction of opportunities for the person-to-person transmission of COVID-19 in meetings and gatherings is necessary to combat the spread of this disease; … all commercial gyms are closed effective Monday, March 16, 2020 at 8:00PM."); Executive Order GA 08 by the Governor of the State of Texas "Relating to COVID-19 preparedness and mitigation," dated March 19, 2020, 24HF_Production_0000148-49

Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

("WHEREAS, the Centers for Disease Control and Prevention (CDC) has advised that person-to-person contract heightens the risk of COVID-19 transmission; WHEREAS, the President's Coronavirus Guidelines for America, as promulgated by President Donald J. Trump and the CDC on March 16, 2020, call upon Americans to slow the spread of COVID-19 by avoiding social gatherings in groups of more than 10 people … effective 11:59 p.m. on March 20, 2020, and continuing until 11:59 p.m. on April 3, 2020, subject to extension thereafter based on the status of COVID-19 in Texas and the recommendations of the CDC: … In accordance with the Guidelines from the President and the CDC, people shall avoid … visiting gyms …."); Stay Home – Work Safe Order 20200324-007 by the Mayor of the City of Austin, dated March 24, 2020, 24HF_Production_0000183-97 ("**Whereas**, COVID-19 is contagious and spreads through person-to-person contact, especially in group settings; … **Whereas**, on March 16, 2020, President Trump acknowledged the gravity of the COVID-19 pandemic, releasing strict new guidelines to limit people's interactions, including that Americans should avoid groups of more than 10 people; … **Whereas**, further restriction of movement of persons is necessary to reduce the substantial risk of harm to the public and, therefore, as long as this Order is in effect, all individuals anywhere in the City of Austin are required to shelter in place, except to perform certain essential activities, or to perform work in or obtain services from an Essential Business, Essential Government Service, or in Critical Infrastructure; … All businesses or operations with a facility in the City of Austin, except Essential Businesses and Essential Government Functions as defined in Section 6 below, are required to cease all activities at facilities located within the City except Minimum Basic Operations as defined in Section 6 below."); Dallas County, Amended Order of County Judge Clay Jenkins, dated March 21, 2020, 24HF_Production_0002093-97 ("WHEREAS, on March 16, 2020, President Trump

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

acknowledged the gravity of the COVID-19 pandemic, releasing strict new guidelines to limit people's interactions, including that Americans should avoid groups of more than 10 people; … Effective as of 11:59 p.m. on March 21, 2020, and continuing until 11:59 p.m. on April 3, 2020 … (c) Bars, lounges, taverns, private clubs, arcades, bowling alleys, theatres, gyms, fitness centers, gymnastics studios, and martial arts studios shall close."); Colorado Department of Public Health & Environment, Notice of Public Health Order 20-22 Closing Bars, Restaurants, Theatres, Gymnasiums, and Casinos Statewide, dated March 16, 2020, 24HF-Production_0001143-48 ("At this time, I find it is necessary to implement emergency measures to close down all bars, restaurants, theatres, gymnasiums and casinos in Colorado in an effort to protect and preserve the public health. … A large surge in the number of persons with serious infections can compromise the ability of the healthcare system to deliver necessary healthcare to the public.  Colorado is experiencing a rapid increase in COVID-19 transmission that threatens the health of residents and risks overwhelming the healthcare system in the state of Colorado. … Pursuant to Colo. Rev. Stat. § 25-1.5-101(1)(a) and § 25-1.5-102(1)(a)(1), this Public Health Order closes bars, restaurants, gyms, theatres, and casinos to slow the spread of the COVID-19 virus."); Executive Order D 2020 017 Ordering Coloradans to Stay at Home Due to the Presence of COVID-19 in the State, signed by Jared Polis, Governor, dated March 25, 2020, 24HF_Production_0001112-14 ("Public health experts recommend we practice 'social distancing,' or maintaining a physical distance of six (6) feet or more from other people, as a way to slow the spread of COVID-19.  This Executive Order requires Coloradans to stay at home, and subject to certain limited, orders the CDPHE to issue a public order defining critical emergency personnel, infrastructure, government functions, and other activities that are exempt from the directives in this Executive Order. … I direct all businesses other than those qualified as

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

'Critical Businesses' under Public Health Order 20-24 or any Public Health Order issued pursuant to this Executive Order, to close temporarily, except as necessary to engage in minimum basic operations needed to protect assets and maintain personnel functions, as of the effective date of this Executive Order."); Tri-County Health Department "Stay at Home" Public Health Order, dated March 25, 2020, 24HF_Production_0001068-78 ("The scientific evidence shows that at this stage of the emergency, it is essential to slow virus transmission as much as possible to protect the most vulnerable and to prevent the health care system from being overwhelmed.  One proven way to slow the transmission is to limit interactions among people to the greatest extent practicable.  By reducing the rate of potential transmission of COVID-19, this Order helps preserve critical and limited healthcare capacity in TCHD's jurisdiction. … All businesses with a facility in the TCHD jurisdiction, except Essential Businesses as defined below in Paragraph 5, are required to cease all activities at facilities located within TCHD jurisdiction, except Minimum Basic Operations, as defined in Paragraph 5.") (underlining omitted); Boulder County Public Health "Stay at Home" Public Health Order, dated March 25, 2020, 24HF_Production_0001118-28 ("One proven way to slow the transmission is to limit interactions among people to the greatest extent practicable. … The intent of this Order is to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible to slow the rate of potential transmission of COVID-19 to the greatest extent possible, while enabling the continuation of essential services, businesses and travel necessary to protect public health and safety, and for the continuity of social and commercial life. … All individuals living within Boulder County are ordered to stay at their place of residence. … For the purposes of this Order, individuals may leave their residence to work for or obtain services at 'Essential Businesses,' …."); Notice of Jefferson County [Colorado] Public

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

Health Order 20-002 Requiring All Individuals in Jefferson County to Stay at Home, Including Definitions and Exemptions, dated March 25, 2020, 24HF_Production_0002014-25 ("The scientific evidence shows that at this stage of the emergency, it is essential to slow virus transmission as much as possible to protect the most vulnerable and to prevent the health care system from being overwhelmed.  One proven way to slow the transmission is to limit interactions among people to the greatest extent practicable. … All businesses with a facility in Jefferson County, except Essential Businesses as defined below in Paragraph 5, are required to cease all activities at facilities within Jefferson County, except Minimum Basic Operations, as defined in Paragraph 5.") (underlining omitted); State of Florida Office of the Governor Executive Order Number 20-71 (Emergency Management – COVID-19 – Alcohol Sales, Restaurants, and Gyms), dated March 20, 2020, 24HF_Production_0001216-20 ("**WHEREAS**, on March 16, 2020, President Donald J. Trump and the Centers for Disease Control and Prevention ('CDC') issued the '15 Days to Slow the Spread' guidance advising individuals to adopt far-reaching social distancing measures, such as avoiding gatherings of more than 10 people, and in states with evidence of community spread, bars, restaurants, food courts, gyms and other indoor and outdoor venues where groups of people congregate should be closed; and **WHEREAS**, the State Surgeon General has advised me that gyms and fitness centers are establishments that attract gatherings of more than 10 people and are more susceptible for spreading COVID-19; … I hereby order the closure of gymnasiums and fitness centers within the State of Florida."); Miami-Dade County Emergency Order 03-20, dated March 17, 2020, 24HF_Production_0001399-1401 ("WHEREAS, minimization of contact is necessary to avoid risk of COVID-19 infection for the residents of the County; and … WHEREAS, … gymnasiums and fitness studios are potential gathering places for the spread of COVID-19/novel Coronavirus;

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

… All … gymnasiums and fitness studios shall close..."); Office of the Governor of Hawai'i, Third Supplementary Proclamation, dated March 23, 2020, 24HF_Production_0001451-58 ("**WHEREAS**, the United States Centers for Disease Control and Prevention (CDC) and the Hawai'i Department of Health recommend implementing social distancing strategies to reduce the spread of COVID-19; **WHEREAS**, the dangers of COVID-19 require serious attention, effort, and sacrifice of all people in the State to avert unmanageable strains on our healthcare system and other catastrophic impacts to the State; … All businesses or operations not identified as federal critical infrastructure sectors at https://www.cisa.gov/identifying-critica-infrastructure-during-covid-19 or designated by the Director of HIEMA or listed below, must cease …"); Office of the Mayor, City and County of Honolulu, Emergency Order No. 2020-02, dated March 22, 2020, 24HF_Production_0001434-43 ("All businesses with a facility in the City, except **Essential Businesses** (as defined in Section II), are required to cease all activities within such facilities, except Basic Minimum Operations (as defined in Section II). … One proven way to slow the transmission is to limit interactions among people to the greatest extent practicable.  By reducing the spread of the COVID-19 virus, this Order helps preserve critical and limited healthcare capacity in the City.") (boldface in original text); Executive Order No. 104, signed by Governor Philip D. Murphy on March 16, 2020, 24HF_Production_0001504-12 ("WHEREAS, … gyms, fitness centers, … which are vital to the economic health of the State, are also locations where large numbers of individuals gather in close proximity; and WHEREAS, many individuals also come into contact with common surfaces at gyms, fitness centers, …; and WHEREAS, suspending operations at these businesses is part of the State's mitigation strategy to combat COVID-19 and reduce the rate of community spread; …. The following facilities are ordered closed to members of the public, effective 8:00 p.m. on Monday, March 16, 2020 … : … c.

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**         **Page 2245 of 2921**

Gyms and fitness centers and classes."); Executive Order No. 107, signed by Governor Phillip D. Murphy on March 21, 2020, 24HF_Production_0001545-57 ("WHEREAS, … the CDC has recommended that individuals practice 'social distancing' to prevent community spread of the virus; … All recreational and entertainment businesses, including but not limited to the following list, must close to the public as long as this Order remains in effect. ... c. Gyms and fitness centers and classes."); State of Nevada Executive Department, Declaration of Emergency for COVID-19-Directive 003, dated March 20, 2020, 24HF_Production_0001744-47 ("*WHEREAS*, close proximity to other persons is currently contraindicated by public health and medical best practices to combat COVID-19; and *WHEREAS*, recreational social gatherings unnecessarily extend periods of interpersonal contact and promulgates spread of COVID-19; and *WHEREAS*, certain nonessential activities result in the congregation of persons for extended periods of time; … *NOW*, *THEREFORE*, … Non-Essential Businesses that promote extended periods of public interaction where the risk of transmission is high, including fitness establishments such as gyms and studios … shall close effective March 20, 2020, at 11:59 p.m., for the duration that this Directive shall be in effect …"); State of Nevada Executive Department, Declaration of Emergency Directive 018, Phase One Reopening Plan, dated May 20, 2020, 24HF_Production_0001663-71 ("*WHEREAS*, infectious disease and public health experts advised that minimizing interpersonal contact slows the rate at which the disease spreads, and is necessary to avoid overwhelming healthcare systems, commonly referred to as 'flattening the curve'; and *WHEREAS*, since the March 12, 2020 Declaration of Emergency, I have issued 17 directives pursuant to that order to provide for the safety, wellbeing, and public health of Nevadans and the administrative of the State of Nevada; and *WHEREAS*, these Directives were promulgated to reduce interpersonal contact and promote social distancing and flatten the curve;

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

and … **WHEREAS**, Nevada's medical experts indicate that the rate at which COVID-19 is spreading in the State of Nevada has effectively slowed to a level that does not jeopardize the state's healthcare system due, in part, to Nevadans following strict social distance measures individually and pursuant to Directives I issued pursuant to the March 12, 2020, Declaration of Emergency; and **WHEREAS**, although the danger to Nevadans from the COVID-19 disease has abated, the disease has not been eliminated and measures that protect safety, wellbeing, and public health of Nevadans must remain in effect; … The following non-essential businesses shall remain closed during Phase One of the Nevada United:  Roadmap to Recovery Plan: … (3) Gyms and fitness clubs."); website of King County, Washington, "Executive Constantine and King County Health Officer announce new orders to limit spread of COVID-19," https://kingcounty.gov/elected/executive/constantine/news/release/2020/March/15-COVID-order.aspx (March 15, 2020) (accessed October 17, 2022) ("To limit the spread of COVID-19, Executive Constantine and Dr. Duchin announced a new Local Health Order that directed public health actions effective Monday, March 16. … Restaurants, bars, dance halls, clubs, theaters, health and fitness clubs, and other similar indoor social or recreational venues must cease operations until March 31, 2020."); Office of the Governor, State of Oregon, Executive Order No. 20-12, dated March 23, 2020, 24HF_Production_0001748-55 ("The purpose of this Executive Order is to reduce person-to-person interaction with the goal of slowing transmission. … I prohibit the operation of the following businesses, for which close personal contact is difficult or impossible to avoid: ... gyms and fitness studios…."); State of Tennessee Executive Order by the Governor No. 17, dated March 22, 2020, 24HF_Production_0001800-04 ("**WHEREAS**, the Centers for Disease Control and Prevention (CDC) has stated that COVID-19 is frequently spread '[b]etween people who are in close contact with one another (within about 6

Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

feet),' and on March 16, 2020, President Trump issued the President's Coronavirus Guidelines for America, which encourage people to contribute to the containment of COVID-19 by taking various precautions, including: … Avoiding close contact with people who are sick, and distancing oneself from others, especially those who are at higher risk of getting sick, including in particular older adults and persons with serious chronic medical conditions … **NOW THEREFORE**, … Gyms or fitness/exercise centers or substantially similar facilities shall not be open to members or the public …"); Commonwealth of Virginia, Office of the Governor, Executive Order Number Fifty-Three (2020), dated March 23, 2020, 24HF_Production_0001866-69 ("Unnecessary person-to-person contact increases the risk of transmission and community spread.  Consequently, we must limit such interactions to those necessary to access food and essential materials. … Therefore, … I order the following: … Closure of all public access to recreational and entertainment businesses, effective 11:59 p.m., Tuesday, March 24, 2020 until 11:59 p.m., Thursday, April 23, 2020, as set forth below: … Fitness centers, gymnasiums, recreation centers, indoor sports facilities, and indoor exercise facilities."); State of Washington Office of the Governor, Proclamation 20-13 by the Governor Amending Proclamation 20-05, Statewide Limits: Food and Beverage Services, Areas of Congregation, dated March 16, 2020, 24HF_Production_0001890-92 ("**WHEREAS**, to curtail the spread of the COVID-19 pandemic in Washington State and protect our most vulnerable populations, it is necessary to immediately prohibit any number of people from congregating in public venues for purposes of public entertainment, recreation, food or beverage service, theatre, bowling, and other similar activities, in order to limit opportunities for disease exposure and transmission in the State; … **NOW, THEREFORE**, … Proclamation 20-05 is amended to prohibit any number of people from gathering in any public venue in which people congregate

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**                    **Page 2248 of 2921**

for the purposes of public entertainment, recreation, food and beverage service, theatre, bowling, fitness and other similar activities …") (emphasis in original); State of Washington Office of the Governor, Proclamation by the Governor Amending Proclamation 20-05, Stay Home – Stay Healthy, No. 20-25, dated March 23, 2020, 24HF_Production_0001893-1902 ("WHEREAS, models predict that many hospitals in Washington State will reach capacity or become overwhelmed with COVID-19 patients within the next several weeks unless we substantially slow down the spread of COVID-19 throughout the State; … Effective Midnight on March 25, 2020, all non-essential businesses in Washington State shall cease operations except to remain open and maintain operations …") (boldface omitted); Order of the Governor of the State of Maryland, dated March 16, 2020, 24HF_Production_001944-47 ("WHEREAS, [t]o reduce the threat to human health caused by transmission of the novel coronavirus in Maryland, and to protect and save lives, it is necessary and reasonable that individuals in the state refrain from congregating; … WHEREAS, [i]t is further necessary to control and direct in Maryland the occupancy and use of buildings and premises, as well as places of amusement and assembly; … All Fitness Centers are hereby closed to the general public, effective as of 5:00 p.m. on March 16, 2020, except that the portion of any Fitness Center that is licensed or otherwise permitted by applicable law, regulation, or order to provide child care services may remain open to the general public for the purpose of continuing to provide such child care services."); Salt Lake County, State of Utah, Public Health Order, Order No. 2020-03, dated March 29, 2020, 24HF_Production_0002132-47 ("Reducing person-to-person interaction will slow the transmission of COVID-19, enhance and improve the ability of our healthcare system to meet this mounting challenge, restore consumer confidence, and reduce the economic impact of this global healthcare crisis. … The intent of this Public Health Order is to ensure the maximum

Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

number of people self-isolate in their homes and places of residence to the maximum extent feasible, while enabling essential services to continue, and to slow the spread of COVID-19 to the greatest extent possible. … The following facilities shall be closed based on their inability to observe the social distancing necessary to slow the spread of COVID-19: … gyms and fitness centers.").

The facts set forth above confirm that, under the unambiguous language of paragraph 5(a) of Section I of the Pollution Policy, even assuming that Plaintiff could show (which it cannot) that a "pollution incident" occurred "on, at or under a scheduled location" listed in the Pollution Policy and that the "pollution incident" resulted in "business interruption" at Plaintiff's fitness club at that "scheduled location," if that "business interruption" was also required in whole or in part by one or more of the Governmental Orders (including, without limitation, where the applicable Governmental Order(s) had the effect of requiring the closure of and/or preventing customers and/or other individuals from visiting or using the "scheduled location"), then that "business interruption" would not be "caused solely and directly by a pollution incident on, at or under [that] scheduled location …" and therefore would not be covered under the "Business Interruption Coverage" provision in paragraph 5(a) of Section I of the Pollution Policy.  *See* Pollution Policy, Section I – Insuring Agreements ¶ 5(a), Section VII – Definitions ¶ 23 & Endorsement No. 9 (boldface omitted); Allied World's Opening Brief and its Reply filed in support of its Motion for Judgment on the Pleadings; 24HF_Production_0000044 to 24HF_Production_0002147; transcript of 30(b)(6) deposition of Allied World by Glenn Serrano on September 15, 2022, at 180:19-181-10; *supra* Supplemental Response to Interrogatory No. 24 at 10-13, 14-15.

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**

Dated:  November 2, 2022

**GELLERT, SCALI, BUSENKELL & BROWN, LLC**

By: _/s/ Michael Busenkell_____
       MICHAEL BUSENKELL

1201 N. Orange Street, Suite 300
Wilmington, Delaware 19801
Tel: (302) 425-5812
Email: mbusenkell@gsbblaw.com

**SELMAN BREITMAN LLP**

By: _/s/ Elizabeth M. Brockman_____
       ELIZABETH M. BROCKMAN
       CALVIN S. WHANG

11766 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Tel: (310) 389-7043
E-mail: ebrockman@selmanlaw.com

**OTTERBOURG P.C.**

By: _/s/ Richard G. Haddad___
       RICHARD G. HADDAD
       ANDREW S. HALPERN

230 Park Avenue
New York, New York 10169
Tel: (212) 661-9100
E-mail: rhaddad@otterbourg.com

Attorneys for Defendant Allied World National
Assurance Company

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment**

## **VERIFICATION**

I, Glenn Serrano, on behalf of Allied World National Assurance Company, have reviewed Defendant Allied World National Assurance Company's Supplemental Answers and Objections to Plaintiff's Second Set of Interrogatories. I hereby verify under penalty of perjury that the Supplemental Responses to Interrogatories 23, 24 and 25 contained therein are true and correct to the best of my knowledge, information and belief.

Executed on November 3rd, 2022, at New York, New York .

Glenn Serrano

**Exhibit 156 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment**          **Page 2252 of 2921**