# EXHIBIT 179

```
UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

--------------------------------------x
In re:                       Chapter 11
                             Case No. 20-11558
                             (KBO)

24 HOUR FITNESS WORLDWIDE,
INC., et al.,

                Debtors.
--------------------------------------x
24 HOUR FITNESS WORLDWIDE, INC.,

                Plaintiff,

     v.            Adv. Pro. No.
                   20-51051 (KBO)

CONTINENTAL CASUALTY COMPANY;
ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY; STARR SURPLUS
LINES INSURANCE COMPANY; ALLIANZ
GLOBAL RISKS US INSURANCE COMPANY;
LIBERTY MUTUAL INSURANCE COMPANY;
BEAZLEY-LLOYD'S SYNDICATES 2623/623;
ALLIED WORLD NATIONAL ASSURANCE
COMPANY; QBE SPECIALTY INSURANCE
COMPANY and GENERAL SECURITY
INDEMNITY COMPANY OF ARIZONA,

                Defendants.
--------------------------------------x
          DATE:  April 27, 2022

          TIME:  11:32 a.m.
```

Video-recorded Deposition of MATTHEW PIRO, on behalf of 24 Hour Fitness Worldwide, Inc., taken by counsel for defendant, held via Zoom videoconference, before Roberta Caiola, a Notary Public of the State of New York.

Exhibit 179 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 2518 of 2921

```
                                                            Page 2
 1   REMOTE APPEARANCES:
 2
     REED SMITH LLP
 3   Attorneys for Plaintiff
          101 Second Street
 4        Suite 1800
          San Francisco, California 94105
 5        (415) 659-4787
     BY:  T. CONNOR O'CARROLL, ESQ.
 6        cocarroll@reedsmith.com
 7
     DLA PIPER LLP (US)
 8   Attorneys for Defendant Continental
     Casualty Company
 9        1201 North Market Street
          Suite 2100
10        Wilmington, Delaware 19801-1147
          (302) 468-5700
11   BY:  MATTHEW P. DENN, ESQ.
          MATTHEW S. SARNA, ESQ.
12        matthew.denn@us.dlapiper.com
          matthew.sarna@us.dlapiper.com
13
          - and -
14
     DLA PIPER LLP (US)
15        6225 Smith Avenue
          Baltimore, Maryland 21209-3600
16        (410) 580-3000
     BY:  BRETT INGERMAN, ESQ.
17        brett.ingerman@us.dlapiper.com
18        - and -
19   PAUL, WEISS, RIFKIND, WHARTON
     & GARRISON LLP
20   Attorneys for Defendant Continental
     Casualty Company
21        1285 Avenue of the Americas
          New York New York 10019
22        (212) 373-3000
     BY:  JACQUELINE MATYSZCZYK, ESQ.
23        jmatyszczyk@paulweiss.com
24
25
```

```
                                                            Page 3
 1   REMOTE APPEARANCES (CONT'D):
 2
     ZELLE LLP
 3   Attorneys for Defendant QBE Specialty
     Insurance Company and General Security
 4   Indemnity Company of Arizona
          500 Washington Avenue South
 5        Suite 4000
          Minneapolis, Minnesota 55415
 6        (612) 359-4261
     BY:  ELIZABETH KNIFFEN, ESQ.
 7        EKniffen@zelle.com
 8
     MOUND COTTON WOLLAN & GREENGRASS LLP
 9   Attorneys for Defendant Allied World
     National Assurance Company
10        3 Greenway Plaza, Suite 1300
          Houston, Texas 77046
11        (281) 572-8353
     BY:  ANDREA A. ORTIZ, ESQ.
12        aortiz@moundcotton.com
13
     OTTERBOURG P.C.
14   Attorneys for Defendant Allied World
     National Assurance Company
15        230 Park Avenue
          New York, New York 10169
16        (212) 661-9100
     BY:  RICHARD G. HADDAD, ESQ.
17        rhaddad@otterbourg.com
          ANDREW S. HALPERN, ESQ.
18        ahalpern@otterbourg.com
19
     CLYDE & CO US LLP
20   Attorneys for Defendant Allianz Global
     Risks US Insurance Company
21        271 17th Street NW
          Suite 1720
22        Atlanta, Georgia 30363
          (404) 410-3184
23   BY:  MARLIE McDONNELL, ESQ.
          marlie.mcdonnell@clydeco.us
24
25
```

```
                                                            Page 4
 1   REMOTE APPEARANCES (CONT'D):
 2
     ROBINSON & COLE LLP
 3   Attorneys for Defendant Liberty Mutual
     Fire Insurance Company
 4        777 Brickell Avenue
          Suite 680
 5        Miami, Florida 33131
          (786) 725-4119
 6   BY:  JOEL L. McNABNEY, ESQ.
          jmcnabney@rc.com
 7
 8   Also Present:
 9        MIGUEL EVANGELISTA, The Videographer
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                            Page 5
 1                 Matthew Piro
 2           THE VIDEOGRAPHER:  Good
 3      morning.  We are on the record at
 4      8:32 a.m. on April 27, 2022.
 5           Please note that recording will
 6      continue to take place until all
 7      parties agree to go off the record.
 8           This is the video deposition of
 9      Matthew Piro in the matter of 24 Hour
10      Fitness Worldwide, Incorporated
11      versus Continental Casualty Company,
12      Case Number 20-11558.
13           This proceeding is being taken
14      remotely via Zoom video.
15           My name is Miguel Evangelista,
16      I am the videographer.  The court
17      reporter is Roberta Caiola.  We are
18      here from U.S. Legal Support located
19      at 1818 Market Street, Suite 1400,
20      Philadelphia, Pennsylvania 19103.  I
21      am not related to any party nor am I
22      financially interested in the
23      outcome.
24           Will the court reporter please
25      swear in the witness.
```

Page 6

Matthew Piro

```
 2    THE COURT REPORTER:  The
 3  attorneys participating in this
 4  deposition acknowledge that I am not
 5  physically present in the deposition
 6  room and that I will be reporting
 7  this deposition remotely.
 8    They further acknowledge that
 9  in lieu of an oath administered in
10  person, I will place the witness
11  under penalty of perjury.  The
12  parties and their counsel consent to
13  this arrangement and waive any
14  objections to this manner of
15  reporting.
16    Please indicate your agreement
17  by stating your name and your
18  agreement on the record.
19    MR. DENN:  Matt Denn from DLA
20  Piper agrees.
21    MR. O'CARROLL:  This is Connor
22  O'Carroll on behalf of plaintiff.  We
23  agree as well.
24  MATTHEW PIRO, called as a witness herein,
25  having been first duly sworn, is examined
```

Page 7

Matthew Piro

```
 2  and testifies as follows:
 3  EXAMINATION BY
 4  MR. DENN:
 5    Q.    Good morning, Mr. Piro.  How
 6  are you this morning?
 7    A.    Good, thank you.
 8    Q.    My name is Matt Denn, part of
 9  the fraternity of Matts, and I am with the
10  DLA Piper law firm.  We represent
11  Continental Casualty and I'm going to be
12  taking your deposition today.  You were
13  just sworn in by the court reporter, so
14  you're aware that you're testifying under
15  oath today just as you would be if you were
16  testifying in court?
17    A.    I am.
18    Q.    Great.  Just a few sort of
19  preliminaries.  I'm going to be asking you
20  a series of questions and if you don't
21  understand a question that I've asked you,
22  please just ask me to clarify the question
23  and I would be happy to do that for you.
24  If you answer a question, then of course
25  we'll assume that you've understood it.  If
```

Page 8

Matthew Piro

```
 2  at any point today you want to take a
 3  break, please just let me know that and
 4  obviously we would be happy to do that for
 5  you.
 6    As you know, we're doing this
 7  deposition remotely and these remote
 8  depositions can be a little bit challenging
 9  if people are talking at the same time
10  because the court reporter is not in the
11  same room, so please just make sure that
12  you let me finish whatever question I'm
13  asking you before you try to answer it so
14  we're not talking over each other and I
15  will try to do the same.  I will try not to
16  talk while you're talking, and if there
17  ever is a point where you feel like you
18  haven't had a chance to answer a question,
19  please just let me know that so we can make
20  sure that you have an opportunity to answer
21  any question as fully as you want to.
22    You know Mr. O'Carroll, your
23  attorney, and he may make some objections
24  to the form of the questions that I ask.
25  Unless he specifically tells you not to
```

Page 9

Matthew Piro

```
 2  answer a question, then you can go ahead
 3  and answer the question after he makes
 4  whatever objection that he has to make.
 5    You have a set of documents
 6  with you that we sent to your attorneys
 7  last night; correct?
 8    A.    I do.  I have them printed in
 9  front of me and I also have them on my
10  computer, if that's okay to review when we
11  may need to review ones that are pretty
12  hard to read in printed form.
13    Q.    Sure.  And we sent them over
14  identified by letter, so A, B, C.  I'm
15  probably not going to use them exactly in
16  the order that they were sent.  So at
17  various times during the deposition I will
18  just ask you to take out an exhibit with a
19  particular letter and then we'll just ask
20  the court reporter to mark it with a
21  number, just to make sure that we're all
22  looking at the same exhibit.
23    Most of the documents also have
24  a number at the bottom of them that were
25  stamped by your attorneys, so for those
```

Page 50
Matthew Piro

2 A. No, I would not say that that's
3 the most that we would do. We had other
4 procedures, I don't recall all of them off
5 the top of my head, but in addition to
6 doing a deep cleaning we would close the
7 club and I believe we notified all of the
8 team members of a confirmed case so that
9 they could be aware, and I'm not sure when
10 we started the process, but I believe we
11 also had a process by which we were working
12 to notify the member population who used
13 the club at the time that there was a
14 confirmed case.
15     So there were several things
16 that we were doing to try to, when we had a
17 confirmed case, make sure even just from
18 a -- you know, from the standpoint of
19 making sure that, like, as a business if
20 we're aware of a confirmed case that it was
21 clear in those instances, since the
22 confirmed case had been reported to us,
23 that we were reacting appropriately and
24 doing everything that we could.
25 Q. So the company believed that

Page 51
Matthew Piro
2 the virus was likely in all of its
3 facilities, but it only took those extra
4 steps if a customer or employee took the
5 initiative to inform the company that they
6 had tested positive?
7     MR. O'CARROLL: Objection to
8     form.
9 A. During that period of time we
10 were -- we were certainly very concerned
11 that COVID-19 was present in all of our
12 clubs because of the information that was
13 related to how contagious it was, and
14 because our typical club has anywhere
15 between, you know, 500 and 2,000, 2,500
16 people that walk through its doors on any
17 given day, so yes, we were very concerned
18 with that many people coming into our club
19 at any given day and how fast the virus
20 seemed to be spreading, that it was very
21 likely in all of our clubs.
22     However, given the fact that we
23 didn't even precisely know what to do about
24 it because there wasn't clarity on what
25 businesses should do, we did what we

Page 52
Matthew Piro
2 thought was best and probably was frankly
3 a -- well, we did what we thought was best
4 when we had a confirmed exposure, because
5 we felt very clearly that we had a high
6 level of responsibility to go above and
7 beyond when there was an instance that we
8 had a confirmed exposure reported.
9 Q. In terms of protecting the
10 health and safety of members, what was the
11 difference between a confirmed exposure and
12 what I think you referred to as the concern
13 that the virus was likely present in all of
14 the clubs, what prompted the heightened
15 response to a confirmed exposure?
16     MR. O'CARROLL: Objection to
17     form.
18 A. You finished your question with
19 what prompted the response, which I think I
20 just answered. Can you articulate your
21 question again, what you're specifically
22 asking?
23 Q. Sure. Why was there a
24 different response with a confirmed
25 exposure in comparison to all other clubs

Page 53
Matthew Piro
2 where you've testified that there was a
3 concern that the virus was likely present?
4     MR. O'CARROLL: Objection.
5     Go ahead.
6 A. I would say a couple of
7 reasons. One, we didn't know, frankly,
8 what to do other than just do our best and
9 try to clean up high-touch areas as much as
10 possible in all of our clubs, as was
11 generally the common practice of most
12 businesses. We were doing more I would say
13 than many businesses because of how much we
14 were being targeted by health departments,
15 as just the fitness industry and gyms.
16     However, we felt that there
17 was, you know, greater risk, frankly, to
18 the organization to show we were doing --
19 taking it very, very seriously when we had
20 a confirmed positive because, number one,
21 we knew then 100 percent with certainty,
22 and it wasn't just a grave concern, but
23 there was clear evidence that there was
24 COVID-19 present in a club, and we were
25 concerned also from the risk standpoint of

Page 254

1 Matthew Piro
2  Q. Would it be accurate to say
3 that in those areas where clubs were
4 reopened in June of 2020, that case counts
5 were higher than they had been when the
6 clubs were closed in March of 2020?
7     MR. O'CARROLL: Objection to
8   form.
9  A. I would have to consult case
10 count-related data. I don't have any
11 reason to disagree with that, but I don't
12 know off the top of my head what case count
13 was specifically in March versus what it
14 was in June.
15     MR. DENN: Those are all the
16   questions that I have; thank you very
17   much for your patience.
18     MR. O'CARROLL: Are we okay to
19   go off the record and conclude the
20   deposition? I don't have any
21   questions; we'll reserve all our
22   questions.
23     Miguel, I think we're finished.
24     THE VIDEOGRAPHER: Okay. This
25   concludes today's deposition of

Page 255

1 Matthew Piro
2 Matthew Piro. We're going off the
3 record at 3:31 p.m.
4     (Time noted: 6:32 p.m.
5 Eastern.)
6     (Off the video record.)
7     THE COURT REPORTER:
8 Mr. O'Carroll, you're ordering the
9 transcript?
10     MR. O'CARROLL: Yes, we'll take
11 a rough draft.
12     MR. HADDAD: We'll take the
13 rough draft as well.
14     THE COURT REPORTER: You're
15 ordering the transcript; correct?
16     MR. HADDAD: Sure.
17
18 _____
19         MATTHEW PIRO
20
21 Subscribed and sworn to before me
22 this_____day of_____20___.
23
24 _____
25

Page 256

1 Matthew Piro
2    C E R T I F I C A T E
3
4 STATE OF NEW YORK  )
5         : ss
6 COUNTY OF BRONX    )
7
8  I, ROBERTA CAIOLA, a Certified
9 Shorthand Reporter, do hereby certify:
10    That MATTHEW PIRO, the witness whose
11 deposition is hereinbefore set forth, was
12 duly sworn by me and that such deposition
13 is a true record of the testimony given by
14 the witness.
15    I further certify that I am not
16 related to any of the parties to this
17 action by blood or marriage, and that I am
18 in no way interested in the outcome of this
19 matter.
20    IN WITNESS WHEREOF, I have hereunto
21 set my hand on May 5, 2022
22
23        _Roberta Caiola_
24        ROBERTA CAIOLA
25

Page 257

1 Matthew Piro
2           INDEX
3 EXAMINATION OF MATTHEW PIRO         PAGE
4  BY MR. DENN                          7
5
6 PIRO      DESCRIPTION              PAGE
7 Exhibit 1  Emails Bates-stamped     68
8            24HF_Production_0202587 to
9            24HF_Production_0202590
10 Exhibit 2  Email Bates-stamped      74
11            24HF_Production_0081994
12 Exhibit 3  Email with attachment, Bates-  82
13            stamped 24HF_Production_0195718
14 Exhibit 4  Emails Bates-stamped     99
15            24HF_Production_0205006 to
16            24HF_Production_0205009
17 Exhibit 5  Emails Bates-stamped    104
18            24HF_Production_0194800
19 Exhibit 6  Emails Bates-stamped    114
20            24HF_Production_0215237 to
21            24HF_Production_0215240
22 Exhibit 7  Emails Bates-stamped    120
23            24HF_Production_0203985 to
24            24HF_Production_0203988
25