# EXHIBIT 186

```
                  IN THE UNITED STATES BANKRUPTCY COURT

                      FOR THE DISTRICT OF DELAWARE

                                ---o0o---

In re                              )Chapter 11
                                   )Case No.: 20:11558 (KBO)
RS FIT NW LLC,                     )(Jointly Administered
                                   )
              Debtor,              )
_____    )
24-HOUR FITNESS WORLDWIDE, INC.,   )
                                   )
              Plaintiff,           )
                                   )
v.                                 )
                                   )
CONTINENTAL CASUALTY COMPANY;      )
ENDURANCE AMERICAN SPECIALTY       )
INSURANCE COMPANY; STARR SURPLUS   )
LINES INSURANCE COMPANY; ALLIANZ   )
GLOBAL RISKS US INSURANCE COMPANY; )
LIBERTY MUTUAL INSURANCE COMPANY;  )
BEAZLEY-LLOYD'S SYNDICATES         )
2623/623; ALLIED WORLD NATIONAL    )
ASSURANCE COMPANY; QBE SPECIALTY   )
INSURANCE COMPANY; and GENERAL     )
SECURITY INDEMNITY COMPANY OF      )
ARIZONA,                           )
                                   )
              Defendants.          )
_____    )

                                ---o0o---

               REMOTE VIDEO 30(b)(6) DEPOSITION OF

                             DANA PARKER

                   THURSDAY, DECEMBER 15, 2022

                            9:00 A.M. PST

                                ---o0o---

Reported by: JULIE RUMSEY, CSR 14144
Job No. 79107
PAGES 1 - 77
```

Exhibit 186 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 2641 of 2921

### Page 2

```
 1            IN THE UNITED STATES BANKRUPTCY COURT
 2               FOR THE DISTRICT OF DELAWARE
 3                     ---o0o---
 4   In re                   )Chapter 11
                             )Case No.: 20:11558 (KBO)
 5   RS FIT NW LLC,          )(Jointly Administered
                             )
 6            Debtor,        )
     _____)
 7   24-HOUR FITNESS WORLDWIDE, INC., )
                             )
 8            Plaintiff,     )
                             )
 9   v.                      )
                             )
10   CONTINENTAL CASUALTY COMPANY;   )
     ENDURANCE AMERICAN SPECIALTY    )
11   INSURANCE COMPANY; STARR SURPLUS )
     LINES INSURANCE COMPANY; ALLIANZ )
12   GLOBAL RISKS US INSURANCE COMPANY;)
     LIBERTY MUTUAL INSURANCE COMPANY; )
13   BEAZLEY-LLOYD'S SYNDICATES       )
     2623/623; ALLIED WORLD NATIONAL  )
14   ASSURANCE COMPANY; QBE SPECIALTY )
     INSURANCE COMPANY; and GENERAL   )
15   SECURITY INDEMNITY COMPANY OF    )
     ARIZONA,                         )
16                                    )
              Defendants.             )
17   _____)
18
19        REMOTE VIDEO 30(b)(6) DEPOSITION OF DANA PARKER,
20   located in Hernando, Florida, commencing at 9:05 a.m. PST
21   on Thursday, December 15, 2022, before JULIE RUMSEY,
22   Certified Shorthand Reporter 14144, in and for the State of
23   California.
24
25
```

### Page 3

```
 1   APPEARANCES VIA ZOOM:
 2
 3   FOR THE PLAINTIFF FOR 24 HOUR FITNESS WORLDWIDE, INC.:
 4        REED SMITH LLP
          BY:  ELIZABETH BOWMAN, ESQ.
 5        101 SECOND ST., STE. 1800
          SAN FRANCISCO, CA 94105
 6        (415) 543-8700
          ebowman@reedsmith.com
 7
 8
     FOR THE DEFENDANT ALLIANZ GLOBAL RISKS U.S. INSURANCE
 9   COMPANY:
10        CLYDE&CO
          BY:  MARLIE McDONNELL, ESQ.
11        271 17TH STREET NW, STE. 1720
          ATLANTA, GA 30363
12        (404) 410-3150
          marlie.mcdonnell@clydeco.us
13
14
     FOR THE DEFENDANT ALLIED WORLD ASSURANCE COMPANY:
15
          MOUND COTTON WOLLAN & GREENGRASS LLP
16        BY:  DEANNA MANZO, ESQ.
          ONE NEW YORK PLAZA
17        NEW YORK, NY 10004
          (212) 804-4587
18        dmanzo@moundcotton.com
19
20   FOR THE DEFENDANT CONTINENTAL CASUALTY COMPANY:
21        DLA PIPER LLP (US)
          BY:  MATTHEW S. SARNA, ESQ.
22        1201 NORTH MARKET ST., STE. 2100
          WILMINGTON, DE 19801
23        (302) 468-5659
          matthew.sarna@us.dlapiper.com
24
25
```

### Page 4

```
 1   APPEARANCES VIA ZOOM CONTINUED:
 2
 3
     FOR THE DEFENDANT LIBERTY MUTUAL:
 4
          ROBINSON & COLE LLP
 5        BY:  JOEL L. McNABNEY, ESQ.
          777 BRICKELL AVE., STE. 680
 6        MIAMI, FL 33131
          (786) 725-4119
 7        jmcnabney@rc.com
 8
 9   LEGAL VIDEOGRAPHER:
10        ALEJANDRO SOLORZANO
11              ---o0o---
```

### Page 5

```
 1                       INDEX
 2                     ---o0o---
 3   EXAMINATION
 4                                                 PAGE
 5     BY ATTORNEY BOWMAN                             7
 6     BY ATTORNEY McDONNELL                         67
 7                     ---o0o---
 8   EXHIBITS
 9   EXHIBIT    DESCRIPTION                        PAGE
10   Exhibit 1  Plaintiff's Second Amended Notice of
                30(b)(6) Deposition to Allianz Global Risks
11              US Insurance Company
                8 Pages                              14
12
     Exhibit 2  6/25/2019 Email String
13              Subject: RE: 24 Hour Fitness - Pending Quote
                Bates AGRUS000112 to AGRUS000115
14              4 Pages                              29
15   Exhibit 3  Allianz Commercial Lines Policy
                Bates AGRUS000288 to AGRUS000351
16              64 Pages                             39
17   Exhibit 4  6/27/2019 Email and Attachment
                Quotation for: 24 Hour Fitness Worldwide, Inc.
18              Bates AGRUS000116 to AGRUS000169
                54 Pages                             46
19                     ---o0o---
```

Exhibit 186 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 2642 of 2921

```
                                                                 Page 6                                                                  Page 8
 1            THURSDAY, DECEMBER 15, 2022, 9:05 A.M. PST                    1   R-o-b-e-r-t, P-a-r-k-e-r.
 2                         ---o0o---                                         2   Q.     Exactly how it sounds.
 3            THE VIDEOGRAPHER:  Good morning.  We are on the                3          How are you this morning?
 4   record.  This is the beginning of media unit Number 1 in                4   A.     Just fine.  Thank you.  Suffering from a little
 5   the deposition of Dana Parker in the matter of In re RS FIT             5   bit of a cold, but not too bad.  Thank you very much.
 6   NW LLC, case Number 20-11558(KBO) held remotely.                        6   Q.     Okay.  Well, I'm hoping that this doesn't go too
 7            This deposition is being taken on behalf of the                7   long so you can get some rest.
 8   plaintiff on December 15th, 2022, at 9:05 a.m.  The court               8          My name is Elizabeth Bowman, as you've heard.  I'm
 9   reporter is Julie Rumsey.  I am Alejandro Solorzano, the                9   an attorney with Reed Smith, and I'm representing 24 Hour
10   videographer, on behalf of First Legal Depositions located             10   Fitness in this case.  Before we really get started, I'm
11   in Los Angeles, California.  This deposition is being                  11   going to go over some remote deposition protocols and just
12   videotaped at all times unless specified to go off the                 12   ask you to confirm that you understand each one of them.
13   video record.                                                          13          So well, I guess, actually, first, have you given
14            Would all present please identify themselves                  14   a deposition testimony before?
15   beginning with the noticing attorney.                                  15   A.     Yes, I have.
16            CERTIFIED STENOGRAPHER:  Attorney Bowman, can you             16   Q.     How many times have you given depositions before?
17   make your appearance, please.                                          17   A.     One -- one formal in, I guess, it would formal
18            ATTORNEY BOWMAN:  This is Elizabeth Bowman,                   18   in-person deposition, and I'm not sure if it was -- I guess
19   attorney at Reed Smith, representing 24 Hour Fitness, the              19   it was a deposition.  One -- one other one with just one
20   plaintiff.                                                             20   other attorney.
21            ATTORNEY MCDONNELL:  This is Marlie McDonnell for             21   Q.     When were those?
22   Clyde & Co representing and defending the deposition today             22   A.     1991.
23   representing defendant Allianz Global Risks U.S. Insurance             23   Q.     Okay.  And have you ever given testimony at a
24   Company.                                                               24   trial before?
25            CERTIFIED STENOGRAPHER:  And, Attorney Manzo?                 25   A.     No, I have not.

                                                                 Page 7                                                                  Page 9
 1            ATTORNEY MANZO:  Deanna Manzo, Mound Cotton Wollan             1   Q.     So first, you heard the court reporter swear you
 2   & Greengrass, representing Allied World Assurance Company.              2   in.
 3            CERTIFIED STENOGRAPHER:  And Attorney Sarna.                   3          Do you understand the effect of the oath that you
 4            ATTORNEY SARNA:  Matthew Sarna, DLA Piper, on                  4   were given?
 5   behalf of Continental.                                                  5   A.     Yes.
 6            THE VIDEOGRAPHER:  Okay.  Thank you, all.                      6   Q.     And do you understand that you've been sworn to
 7            Would the court reporter please swear in the                   7   tell the truth and that we are expected to get your best
 8   witness, after which we may proceed.                                    8   testimony here today?
 9            CERTIFIED STENOGRAPHER:  One moment.                           9   A.     Yes.
10            Good morning.  My name is Julie Rumsey, California            10   Q.     The court reporter is transcribing everything we
11   Certified Shorthand Reporter Number 14144.  The                        11   say today.  I think -- give me one --
12   stenographic record is the official record pursuant to                 12          ATTORNEY BOWMAN:  I think, Julie, we might have
13   C.C.P. 2025.                                                           13   some background noise.
14                         ---o0o---                                        14          (Clarification by the certified stenographer.)
15                       DANA PARKER,                                       15          THE VIDEOGRAPHER:  Sure.  We can go off.
16         called as a witness herein, having been                          16          Counsel, is that okay?
17   administered an oath remotely in accordance with C.C.P.                17          ATTORNEY BOWMAN:  Yeah.  That's fine.
18   Section 2096, was examined and testified as follows:                   18          THE VIDEOGRAPHER:  Okay.  The time is now 9:09
19                         ---o0o---                                        19   a.m., and we are off the record.  Just a moment, please.
20                       EXAMINATION                                        20          (Discussion held off the record.)
21   BY ATTORNEY BOWMAN:                                                    21          THE VIDEOGRAPHER:  Okay.  The time is now 9:10
22   Q.     Good morning, Mr. Parker.                                       22   a.m., and we are back on the record.
23          Will you please go ahead and state your full name               23          ATTORNEY BOWMAN:  Okay.  Thank you.
24   and spell it for me for the record.                                    24   BY ATTORNEY BOWMAN:
25   A.     Certainly.  Dana Robert Parker, D-a-n-a,                        25   Q.     All right.  Mr. Parker, so the court reporter
```

Exhibit 186 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 2643 of 2921

Page 46

1  Q.    Okay.  What's an example of something that an
2  underwriter clearly should not be doing in a property
3  policy?
4        ATTORNEY MCDONNELL:  Object to the form.
5        THE WITNESS:  So we should not cover war.
6  BY ATTORNEY BOWMAN:
7  Q.    Got it.
8        Is that pretty standard to not cover --
9  A.    Yes.  Yeah.
10 Q.    That makes sense.
11 A.    That's pretty standard.
12 Q.    Okay.  So you can go ahead and close --
13 actually -- okay.  Yeah.  You can go ahead and close the
14 emails between Mr. Barrett and Ms. Berger.
15 A.    Okay.
16 Q.    And going to ask you to pull up my next exhibit,
17 which is the document ending in 116.
18 A.    Okay.
19       ATTORNEY BOWMAN:  For the court reporter, I
20 believe this is going to be marked as Exhibit 4.
21       (Exhibit 4 was presented and subsequently marked
22       for identification.)
23 BY ATTORNEY BOWMAN:
24 Q.    Okay.  Do you have this document in front of you?
25 A.    I do, Elizabeth.

Page 47

1  Q.    Thank you.
2        Do you know what this is?
3  A.    Yes.
4  Q.    What is it?
5  A.    So this is a system-generated email with -- which
6  would have a quotation attached to it.
7  Q.    Okay.
8  A.    And -- and if there are, you know, other documents
9  besides the quote that are, you know, apart of that, part
10 of that, then they would be included as well as
11 attachments.
12 Q.    Okay.  And what -- what is the date of this email,
13 if you can find it?
14 A.    June 27th.
15 Q.    2019?
16 A.    2019.  Yes.  Sorry.
17 Q.    No.  That's fine.
18       So this would be the quotation for the -- would
19 this be the quotation for the 2019-to-2020 policy?
20 A.    Give me just one second, please.
21 Q.    No worries.  Take your time.
22 A.    Yes, it would.
23 Q.    Okay.  Do you know who Shirley McKinney is?
24 A.    She works in the operations -- or she is retired
25 now, but she worked in the operations team, and -- and her

Page 48

1  and other members of that team would issue the -- issue the
2  quotes on behalf of the underwriters.
3  Q.    Thank you.
4  A.    Uh-huh.
5  Q.    Do you know who -- I hope I'm not saying -- Kelly
6  Trice is?
7  A.    I have no idea.
8  Q.    That's totally fine.
9        Okay.  Why don't we go to PDF page 2, and there's
10 a part where it says additional comments.  And it says,
11 attached, please find the revised quote for 24 Hour Fitness
12 Worldwide along with a copy of the policy form.  Should you
13 have any questions, please do not hesitate to contact Jason
14 at his phone number.
15 A.    Uh-huh.
16 Q.    Okay.  So I guess my first question, what kind
17 of -- what goes into revising a quote -- or what went into
18 revising this quote for 24 Hour Fitness?
19 A.    I can't speak --
20       ATTORNEY MCDONNELL:  Object --
21       THE WITNESS:  Sorry, Marlie.
22       (Clarification by the certified stenographer.)
23       ATTORNEY MCDONNELL:  I just said object to the
24 form.
25       THE WITNESS:  Okay.  Thanks, Julie.

Page 49

1        I can't speak to what -- what Jason did to revise
2  this quote.  I just -- I have no -- no knowledge of that
3  whatsoever.  But if you are asking a general question about
4  how a quote gets revised, then you -- you know, you saw the
5  communication between the underwriter and their broker and
6  you would go in the system and make a change and ask to
7  have the quote reissued.
8  BY ATTORNEY BOWMAN:
9  Q.    And would every change in the system generate a
10 new quote?
11 A.    No.
12 Q.    What are some changes that would not generate a
13 new quote?
14 A.    Well -- so, again, that's a -- so you would make
15 the -- you would make changes and then do it, you know, in
16 bulk, right?  You just -- that way you just -- otherwise,
17 you'd be sending -- you'd be sending quotes every time you
18 issued a change which is very inefficient.  So normally,
19 there's an exchange.  You saw it in the email.
20 Q.    Uh-huh.
21 A.    And then a change -- a change would be made which
22 would include multiple changes, and then the quote would be
23 reissued.
24 Q.    Got it.
25       Would an Allianz underwriter ever discuss changes

Exhibit 186 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 2644 of 2921

Page 50

```
 1  with the client or with someone like Ms. -- my gosh, I
 2  can't remember her name -- Kathryn over the phone, or was
 3  it usually over email.
 4  A.     No.  It could be both.
 5  Q.     Okay.  Okay.  Do you see the part where it says,
 6  but there is two attachments -- or, yeah, looks like see
 7  attached file, and then another parens, see attached file?
 8  A.     Yes.
 9  Q.     Okay.  Go ahead and control down to PDF page 3.
10  A.     Okay.
11  Q.     What is this page -- I guess, what is this next
12  series of pages?
13  A.     This is our quote.
14  Q.     Okay.  So would this be the quotation attached to
15  that email?
16  A.     Correct.
17  Q.     And what are -- so I'm just going to scroll down
18  to -- I guess we can start at page 4.
19         What are the -- what do the numbers on the right
20  mean that looks like they coincide with real property,
21  personal property, so on?
22  A.     Those -- I'm sorry.  So about -- let's see.
23  That's on page 4, right?
24  Q.     Yes.  And down.
25  A.     Yep.  I've got that.  Those would be sublimits.
```

Page 51

```
 1  Q.     Okay.  So like the sublimits we talked about
 2  earlier?
 3  A.     Correct.
 4  Q.     Okay.  Let's scroll down to -- I believe page 16
 5  is the start of it.
 6  A.     Did you say 16?
 7  Q.     Yes.  Sorry.
 8  A.     Okay.
 9         Okay.
10  Q.     Okay.  And do you know what the -- what is this
11  the start of?
12  A.     This is the start of the policy form.
13  Q.     Okay.
14  A.     That was also attached.
15  Q.     Okay.  Let's go to page 19.  Thank you for
16  identifying.  Sorry for all the scrolling.
17  A.     That's okay.
18         Okay.
19  Q.     Okay.  And do you see the section where it says
20  term of insurance, and then there is two paragraphs and
21  then there is green text?
22  A.     I do.
23  Q.     What is this green underlined text?
24  A.     Well, the -- the first green text paragraph or
25  whatever you want to call that, that -- that is an
```

Page 52

```
 1  occurrence definition.
 2         The second -- and the second really two paragraphs
 3  are -- are related to an insuring clause.
 4  Q.     And I don't know -- do you still have the policy
 5  up on a -- on a separate -- the final one.  I'm sorry.
 6  A.     I do.
 7  Q.     Let's look at the -- kind of the same page in the
 8  policy.
 9  A.     Uh-huh.
10  Q.     Which I believe -- looks like it's page 11 of that
11  PDF.
12  A.     Yes.
13  Q.     Okay.  So does it appear that the green text from
14  that draft policy appears -- does that appear in this final
15  policy?
16  A.     It is not in Section 2 of the final policy.
17  Q.     Thank you.
18         So you can look back at the draft email with the
19  draft policy.
20         So is this green underlined text, are these edits
21  that Jason or someone from the underwriting team made to
22  the policy?
23  A.     I'm going to, you know, guess that they did.
24  Q.     That -- that Jason did?
25  A.     Yeah.  Yeah.  I'm going to guess he did.  Yes.
```

Page 53

```
 1  Q.     So I guess -- regardless if it was Jason or
 2  someone else from Allianz, were these proposed changes for
 3  the policy?
 4  A.     Yes.
 5  Q.     And go ahead and go to page 23 of this draft.
 6  A.     Okay.  I -- okay.
 7  Q.     And then look at where it has B for peril of
 8  earthquake in any occurrence, and then 1.
 9  A.     Okay.
10  Q.     And then it looks like there is language that is
11  green and struck through.  Do you see that?
12  A.     Yes.
13  Q.     So would this be a proposed deletion in the
14  policy?
15  A.     Yes, it would.
16  Q.     And so why would Allianz want to add language or
17  make a deletion in the 24 Hour Fitness policy?
18         ATTORNEY MCDONNELL:  Object to the form.
19         THE WITNESS:  Well, we would do that -- I don't
20  know why Jason did that specifically, but additions or
21  deletions are suggested by the underwriter because of where
22  we feel our position needs to be on that account.
23  BY ATTORNEY BOWMAN:
24  Q.     Okay.  So would a proposed suggestion -- or would
25  a proposed addition or deletion change the risk associated
```

Exhibit 186 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 2645 of 2921

Page 54

```
 1  with the policy?
 2          ATTORNEY MCDONNELL:  Object to the form.
 3          THE WITNESS:  No.  The risk remains the same.  I
 4  mean, the -- it's the same.  It doesn't change that, right.
 5  BY ATTORNEY BOWMAN:
 6  Q.     You're right.  I -- I misspoke.
 7         Did that change, I guess, the -- the coverage of
 8  that policy?
 9  A.     It could.
10  Q.     Okay.  Okay.  Let's go to page 25.
11  A.     Okay.
12  Q.     And do you see section B where it says business
13  interruption?
14  A.     Yes.
15  Q.     And Number 1.  Do you see the proposed change or
16  addition to section B1?
17  A.     I do.
18  Q.     So why would Allianz want to include the language
19  "direct physical" before loss, damage, or destruction?
20  A.     That would probably -- I mean, that is a preferred
21  language for -- for business interruption to be caused by
22  direct physical loss or damage.
23  Q.     That's Allianz's preferred language?
24  A.     Yeah.  I mean, it's -- it's probably even -- yeah.
25  Yeah.  Allianz's.  Yep.
```

Page 55

```
 1  Q.     So here, do the words direct and physical alter
 2  the word "loss" -- or would they mean to alter the word
 3  "loss"?
 4  A.     You know, that's -- I mean, that's really getting
 5  into an interpretation on that -- on that language, and --
 6  yeah.  I'm not really -- I'm not really sure if I can
 7  really answer that.  I think -- I think that makes it a bit
 8  more restrictive.
 9  Q.     Okay.  What do you mean by makes it more
10  restrictive?
11  A.     Well, I knew you were going to ask me that.  So,
12  again, I think -- I really can't answer that.  I think
13  that's probably a question for our claims people.
14         ATTORNEY MCDONNELL:  Hey, Elizabeth?
15         ATTORNEY BOWMAN:  Yeah.
16         ATTORNEY MCDONNELL:  I'm sorry.  Can we take a
17  quick five-minute restroom break?  I had a lot of water to
18  stop coughing.
19         ATTORNEY BOWMAN:  That is totally fine with me.
20  Let's go off the record for five.
21         ATTORNEY MCDONNELL:  Okay.  Thank you.
22         ATTORNEY BOWMAN:  No problem.
23         THE VIDEOGRAPHER:  Okay.  The time is now 10:36
24  a.m., and we are off the record.
25         (Recess taken.)
```

Page 56

```
 1         THE VIDEOGRAPHER:  Okay.  The time is now 10:43
 2  a.m., and we are back on the record.
 3  BY ATTORNEY BOWMAN:
 4  Q.     Okay.  So, Mr. Parker, do you still have the
 5  exhibit up?
 6  A.     I do.
 7  Q.     Okay.  So let's look at Number 3 versus Number 4.
 8  So Number 3 says, in the event of, proposed addition,
 9  direct physical loss, and then Number 4 says, for any loss
10  resulting from, proposed addition, physical damage.
11         From an underwriter's perspective, is there a
12  difference between "direct physical" and "physical"?
13  A.     I honestly can't tell you what the -- what that
14  difference is.
15  Q.     From an underwriter's perspective, would the
16  addition of "direct physical" or "physical" be a way to
17  restrict the -- the coverage here?
18  A.     No.  I don't believe so because, you know, these
19  clauses in business interruption, you know, do still refer
20  back to -- you know physical loss or damage or direct
21  physical loss or damage because -- because of you have that
22  language that says "covered herein" which is -- which
23  relates back really to, you know, your insuring clause and
24  so it -- it's not -- I don't think it's -- I don't think
25  it's restricting coverage.
```

Page 57

```
 1  Q.     Okay.  Is it making -- is it -- is the addition of
 2  this type of language that we -- like the ones that we've
 3  just discussed in 1, 3, 4, does it create any
 4  substantive -- substantive change in the policy?
 5         ATTORNEY MCDONNELL:  Object to the form.
 6         THE WITNESS:  Not -- I don't believe it does,
 7  because you have that other language in there.
 8  BY ATTORNEY BOWMAN:
 9  Q.     Thank you.
10         Let's go to page 27.
11  A.     Okay.
12  Q.     And do you see F1(a) under the time element
13  extensions?
14  A.     I do.
15  Q.     And do you see the proposed addition there?
16  A.     I do.
17  Q.     And so it looks like contingent time element and
18  contingent extra expense property as a result of direct
19  physical loss or damage that wholly or partially, and so
20  on.
21         What is this -- what is this proposed addition
22  meant to convey?
23         ATTORNEY MCDONNELL:  Object to the form.
24         Can we -- I mean, I just want to make sure if he
25  wants the opportunity to read the time element extension
```

Exhibit 186 to Plaintiff's Omnibus Appendix of Evidence in support of its
Oppositions to Defendants' Motions for Summary Judgment

Page 2646 of 2921

**Page 58**

```
 1  provision, he can take time to do that.
 2          ATTORNEY BOWMAN:  Oh, absolutely.
 3          THE WITNESS:  Let me see here.
 4          And I'm sorry, Elizabeth, can you restate your
 5  question, please?
 6  BY ATTORNEY BOWMAN:
 7  Q.      Yeah, of course.
 8          What is this proposed addition meant to convey in
 9  this part of the policy?
10  A.      That -- that there is a physical loss or damage
11  trigger that is required for contingent time element or
12  contingent extra expense to apply.
13  Q.      So it's -- is it adding an additional trigger for
14  this -- for this to apply?
15  A.      I can't say if it adds one, but I think it
16  clarifies.
17  Q.      Thank you.
18          Then let's go to the next page, and go ahead and
19  read Number 2, which is interruption by civil or military
20  authority.  And take your time to review it.
21  A.      Okay.
22          ATTORNEY MCDONNELL:  What page is that, Elizabeth?
23  I'm sorry.
24          ATTORNEY BOWMAN:  It's just on the next page.
25          ATTORNEY MCDONNELL:  I know, but I lost the page.
```

**Page 59**

```
 1          ATTORNEY BOWMAN:  Oh, sorry.  28.
 2          THE WITNESS:  Okay.
 3  BY ATTORNEY BOWMAN:
 4  Q.      Okay.  So what is this proposed addition meant to
 5  convey in the policy?
 6          ATTORNEY MCDONNELL:  Object to the form.
 7          THE WITNESS:  It would be -- sorry, Marlie.
 8          ATTORNEY MCDONNELL:  Go ahead.
 9          THE WITNESS:  It would be the same as the -- as
10  with contingent time element.  It brings in the physical
11  loss or damage trigger.
12  BY ATTORNEY BOWMAN:
13  Q.      Okay.  And go ahead and review just the one below
14  it, the egress and ingress.
15  A.      Okay.
16          Oh, sorry.  Yeah.  Okay.
17  Q.      Oh, sorry.  Fast reader.
18          Is this addition also supposed to convey the same
19  thing as what you just said for the civil authority
20  addition and the time element extension addition?
21  A.      The contingent time element extension and the
22  civil authority, yes, it's the same.
23  Q.      Okay.
24  A.      It does the same thing.
25  Q.      Thank you.
```

**Page 60**

```
 1  A.      Uh-huh.
 2  Q.      Okay.  And let's keep this open, and also kind of
 3  switch over to the -- to the final policy.
 4  A.      Uh-huh.
 5  Q.      So I'm going to have you go to page -- sorry.  Go
 6  back up in the draft to page 25 for the draft.
 7  A.      The draft.  Okay.
 8  Q.      Sorry about that.
 9          And then for the final policy, go ahead and go to
10  page 16.
11  A.      Whoops.
12          Okay.
13  Q.      Okay.  And I don't know if -- if it's easier to
14  click back and forth, but take your time if you need to.
15          Go ahead and look at the change -- the proposed
16  change for Number 1 under business interruption, and then
17  Number 1 for business interruption in the final.
18  A.      Okay.
19  Q.      And take your time to review both of them.
20  A.      Okay.
21  Q.      Does it appear that this proposed change of direct
22  physical was -- was added to the final policy?
23  A.      If it was, it wouldn't be here.  It would be in an
24  endorsement.
25  Q.      Okay.
```

**Page 61**

```
 1  A.      So that would be -- that would be the -- that
 2  would be the correct practice since -- since it's not our
 3  policy, right?  It was drafted by somebody else so we're --
 4  we would endorse it.  If -- if the change was made here,
 5  that would have been done by the person that was
 6  responsible for drafting the policy.  Which would be the
 7  broker.
 8  Q.      Okay.  Thank you.  That's very helpful.
 9          So Jason or whomever would make these
10  additional -- or make these proposed additions or
11  strike-throughs, give that to the broker, and the broker
12  would then be in charge of either incorporating or not
13  incorporating those changes?
14  A.      Into the -- into the body of the policy.
15  Q.      Yes.
16  A.      That's correct.  Or if the -- if -- if -- or we
17  would do it by endorsement.
18  Q.      Got it.
19          Okay.  Go ahead and go to -- one second.
20  A.      Uh-huh.
21  Q.      Go ahead and go to page 40 of the final policy,
22  which should be the endorsement Number 2.
23  A.      Okay.
24  Q.      Did Allianz ever communicate with -- with Lockton
25  or any of the other insurers regarding this endorsement?
```

Exhibit 186 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 2647 of 2921

Page 74

```
1       CERTIFIED STENOGRAPHER:  Anything else on the
2  record?
3       ATTORNEY BOWMAN:  No.  Not from here.
4       CERTIFIED STENOGRAPHER:  Okay.  Counsel, I'll have
5  you state your transcript order on the record.
6       Attorney McDonnell?
7       ATTORNEY MCDONNELL:  I'll do just re- -- full and
8  mini.  I don't -- I don't need a draft.
9       CERTIFIED STENOGRAPHER:  Thank you.
10      Attorney Manzo?
11      ATTORNEY MANZO:  I do not need a copy.  Thank you.
12      CERTIFIED STENOGRAPHER:  Thank you.
13      Attorney Sarna?
14      ATTORNEY SARNA:  Can I get a rough draft and a
15 regular, please.
16      CERTIFIED STENOGRAPHER:  Yes.  Thank you.
17      And Attorney McNabney?
18      ATTORNEY McNABNEY:  Just a copy of the regular.
19      CERTIFIED STENOGRAPHER:  Noted.
20      All right.  Alex, take us off, please.
21      THE VIDEOGRAPHER:  Okay.  And before we go off,
22 Ms. Bowman, do you need a regular video or a sync?
23      ATTORNEY BOWMAN:  Sorry?  Say that again.
24      THE VIDEOGRAPHER:  Yeah.
25      Do you need a regular video or a sync?
```

Page 75

```
1       ATTORNEY BOWMAN:  Let's do -- let's do the regular
2  video.
3       THE VIDEOGRAPHER:  Okay.  And does anyone else
4  need a copy of the video?
5       Okay.  With that, I think we can wrap up.  This
6  concludes today's video-taped deposition of Mr. Dana
7  Parker.  The time on the monitor is 11:17 a.m., and we are
8  off the record.
9       (Proceedings concluded at 11:17 a.m. PST.)
10               ---o0o---
```

Page 76

```
1                ---o0o---
2
3       I, DANA PARKER, do hereby declare under penalty
4  of perjury that I have read the foregoing deposition; that
5  I have made any corrections as appear noted, in ink,
6  initialed by me, or attached hereto; that my testimony as
7  contained herein, as corrected, is true and correct.
8       EXECUTED on this _____ day of _____,
9  2022, at _____, _____.
10
11
12
13                              _____
                                        DANA PARKER
```

Page 77

```
1  Errata Sheet
2
3  NAME OF CASE: IN RE: RS FIT NW LLC
4  DATE OF DEPOSITION: DECEMBER 15, 2022
5  NAME OF WITNESS:  DANA PARKER
6  Reason Codes:
7       1. To clarify the record.
8       2. To conform to the facts.
9       3. To correct transcription errors.
10 Page _____ Line _____ Reason _____
11 From _____ to _____
12 Page _____ Line _____ Reason _____
13 From _____ to _____
14 Page _____ Line _____ Reason _____
15 From _____ to _____
16 Page _____ Line _____ Reason _____
17 From _____ to _____
18 Page _____ Line _____ Reason _____
19 From _____ to _____
20 Page _____ Line _____ Reason _____
21 From _____ to _____
22 Page _____ Line _____ Reason _____
23 From _____ to _____
24
25                          _____
                                 DANA PARKER
```

```
                                                      Page 78
 1                    CERTIFICATE OF REPORTER
                             ---o0o---
 2           I, the undersigned, a Certified Shorthand
 3   Reporter, Licensed by the State of California, being
 4   empowered to administer oaths and affirmations remotely
 5   pursuant to Section 2093(b) of the Code of Civil Procedure,
 6   do hereby certify:
 7           That the foregoing proceedings were taken remotely
 8   before me at the time and place herein set forth; that any
 9   witness in the foregoing proceedings, prior to testifying,
10   were placed under oath; that a verbatim record of the
11   proceedings was made by me using machine shorthand which
12   was thereafter transcribed under my direction; further,
13   that the foregoing is an accurate transcription thereof.
14           I further certify that I am neither financially
15   interested in the action nor a relative or employee of any
16   attorney or any of the parties.
17           Further, that if the foregoing pertains to the
18   original transcript of a deposition in a Federal Case,
19   before completion of the proceedings, review of the
20   transcript [X] was [ ] was not requested.
21           IN WITNESS WHEREOF, I have this date subscribed my
22   name.
23   DATED:  December 20, 2022
24
25                    JULIE RUMSEY,  CSR No. 14144
```

Exhibit 186 to Plaintiff's Omnibus Appendix of Evidence in support of its Oppositions to Defendants' Motions for Summary Judgment

Page 2649 of 2921