**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RS FIT NW LLC, | ) | |
| | ) | Case No. 20-11568 (TMH) |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| 24 HOUR FITNESS WORLDWIDE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY; | ) | Adv. Pro. No. 20-51051 (TMH) |
| ENDURANCE AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY; STARR SURPLUS | ) | |
| LINES INSURANCE COMPANY; ALLIANZ | ) | |
| GLOBAL RISKS US INSURANCE COMPANY; | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY; | ) | |
| BEAZLEY-LLOYD'S SYNDICATES 2623/623; | ) | |
| ALLIED WORLD NATIONAL ASSURANCE | ) | |
| COMPANY; QBE SPECIALTY INSURANCE | ) | |
| COMPANY; and GENERAL SECURITY | ) | |
| INDEMNITY COMPANY OF ARIZONA, | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**PLAINTIFF 24 HOUR FITNESS WORLDWIDE, INC.'S REPLY**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

David E. Weiss (admitted *pro hac vice*)          Mark W. Eckard (No. 4542)
T. Connor O'Carroll (admitted *pro hac vice*)     REED SMITH LLP
REED SMITH LLP                                     1201 North Market Street, Suite 1500
101 Second Street, Suite 1800                      Wilmington, DE 19801
San Francisco, CA 94105-3659                       Telephone: (302) 778-7500
Telephone: (415) 543-8700                          E-mail: meckard@reedsmith.com
E-mail: dweiss@reedsmith.com
E-mail: cocarroll@reedsmith.com

Counsel for Plaintiff 24 HOUR FITNESS
WORLDWIDE, INC.

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ........................................................................................................... 1

SUMMARY OF REPLY ................................................................................................. 1

LEGAL STANDARD FOR REPLY ............................................................................... 3

ARGUMENT .................................................................................................................. 4

A.    Insurers Do Not Dispute 24 Hour's Evidence Establishing That Access Was Prohibited To Its Clubs Because Communicable Diseases Were Actually Present And Spreading In 24 Hour's Los Angeles Clubs .............................................................. 5

    1.    24 Hour's Evidence Is Sufficient To Meet Its Burden That Communicable Diseases Were Actually Present And Spreading At Its Los Angeles Clubs ........... 5

    2.    Accepting The Insurers' Argument That 24 Hour's Evidence Is Insufficient To Show The "Actual Presence And Spread" Of A Communicable Disease While Insurers Are Unable To Even Specify What Evidence Might Suffice Would Render Coverage Illusory ...................................................................... 11

B.    Insurers Cannot Credibly Dispute That Access To 24 Hour's LA County Clubs Was Prohibited Due To Enforcement Of Laws Regulating Communicable Diseases ............ 13

C.    Insurers' Argument That 24 Hour Must Demonstrate Cleaning Costs To Obtain Business Interruption Coverage Is Both Wrong And Irrelevant To 24 Hour's Motion .......................................................................................................................... 16

D.    Insurers Incorrectly Claim That The Communicable Disease Endorsement Does Not Cover Other "Communicable Diseases" Such As The Cold Or Flu ......................... 17

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajaxo, Inc. v. E*Trade Group Inc.*,
    135 Cal. App. 4th 21 ................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................3

*Baldwin Acad., Inc. v. Markel Ins. Co.*,
    2020 U.S. Dist. LEXIS 239916 (S.D. Cal. 2020) ..................................16

*Bichai v. DaVita, Inc.*,
    72 Cal. App. 5th 1126 (2021) ...................................................................6

*Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.*,
    365 F.2d 742 (3d Cir. 1966)......................................................................3

*People ex rel. Brown v. Tri-Union Seafoods, LLC*,
    171 Cal. App. 4th 1549 (2009) .................................................................6

*Buss v. Superior Court*,
    16 Cal. 4th 35 (1997) ................................................................................6

*Danville Reg'l Med. Ctr., LLC v. Am. Guarantee*,
    No. 4:21-cv-00012, 2022 U.S. Dist. LEXIS 206563 (W.D. Va. Nov. 14, 2022) ...................15

*Gibson v. Mayor & Council of Wilmington*,
    355 F.3d 215 (3d Cir. 2004)......................................................................6

*Gov't Emps. Ret. Sys. of the V.I. v. Gov't of the V.I.*,
    995 F.3d 66 (3d Cir. 2021)......................................................................18

*Hunt v. Cromartie*,
    526 U.S. 541 (1999)...............................................................................4, 8

*Inns-by-the-Sea v. Cal. Mut. Ins. Co.*,
    71 Cal. App. 5th 688 (2021) ...................................................................15

*John's Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.*,
    86 Cal. App. 5th 1195 (2022) .................................................................13

*K.C. Hopps Ltd. v. Cincinnati Ins. Co.*,
    561 F. Supp. 3d 827 (W.D. Mo. 2021) ..................................................6, 7

*Mason v. Rolando Lumber Co.*,
    111 Cal. App. 2d 79 (1952) ..................................................................8, 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................3

*Northwell Health, Inc. v. Lexington Ins. Co.*,
    550 F. Supp. 3d 108 (S.D.N.Y. 2021)....................................................15

*Paulino v. Harrison*,
    542 F.3d 692 (9th Cir. 2008) ................................................................6

*Podobnik v. U.S. Postal Serv.*,
    409 F.3d 584 (3d Cir. 2005)...............................................................3, 11

*Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co.*,
    No. 20 CV 50284, 2021 U.S. Dist. LEXIS 120957 (N.D. Ill. June 29, 2021)........................16

*Robin Construction Co. v. United States*,
    345 F.2d 610 (3d Cir. 1965)..................................................................3

*S. Cal. Counseling Ctr. v. Great Am. Ins. Co.*,
    162 F. Supp. 3d 1045 (C.D. Cal. 2014) ................................................14

*Schultz v. Cally*,
    528 F.2d 470 (3d Cir. 1975)................................................................18

*Scottsdale Ins. Co. v. Essex Ins. Co.*,
    98 Cal. App. 4th 86 (2002) .................................................................13

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
    12 Cal. App. 4th 715 (1993) ................................................................6

*Shipley v. First Fed. Sav. & Loan Assoc.*,
    703 F. Supp. 1122 (D. Del. 1988)..........................................................3

*Spirit Realty Capital, Inc. v. Westport Ins. Corp.*,
    568 F. Supp. 3d 470 (S.D.N.Y. 2021)....................................................15

*St. Mary & St. John Coptic Orthodox Church v. SBC Ins. Servs., Inc.*,
    57 Cal. App. 5th 817 (2020) ................................................................12

*St. Tammany Par. Hosp. Serv. Dist. No. 2 v. Zurich Am. Ins. Co.*,
    593 F. Supp. 3d 399 (E.D. La. 2022).....................................................15

*Toledo Mack Sales & Serv. v. Mack Trucks, Inc.*,
    386 Fed. Appx (3rd Cir. 2010)..............................................................7

*Treo Salon, Inc. v. West Bend Mut. Ins. Co.*,
    538 F. Supp. 3d 859 (S.D. Ill. 2021) ....................................................................................16

*Tunnell v. Wiley*,
    514 F.2d 971 (3d Cir. 1975) ..................................................................................................3

**Rules**

Fed. R. Civ. P. 15(b) .................................................................................................................18

Fed. R. Evid. 401 .........................................................................................................................6

**Other Authorities**

Model Civil Jury Instructions For The Districts of the Third Circuit, Committee
    on Model Civil Jury Instructions Within The Third Circuit (2018 Ed.) ..................................7

## INTRODUCTION

Plaintiff 24 Hour Fitness Worldwide, Inc. ("24 Hour") submitted its Motion for Partial Summary Judgment ("Motion"). In its Motion, 24 Hour seeks an order that certain provisions of the Communicable Disease Endorsement in each of the Insurers'[1] policies are triggered for 24 Hour's 50 Los Angeles County clubs. Insurers submitted their Opposition to the Motion, in which they largely do not dispute 24 Hour's evidence, or the reasonable conclusions that may be drawn from that evidence. Instead, the Insurers primarily respond with arguments that are not responsive to the relief 24 Hour seeks in its Motion. 24 Hour submits this Memorandum of Law in reply.

## SUMMARY OF REPLY

24 Hour seeks an order from this Court that access to its Los Angeles County clubs was prohibited by: (1) the actual presence and spread of communicable diseases at such clubs and (2) declarations by a civil authority enforcing certain laws or ordinances regulating communicable diseases. For the following reasons, the Insurers fail to present any persuasive grounds for the Court to deny the relief 24 Hour seeks:

1.      24 Hour submitted admissible and uncontroverted circumstantial evidence establishing that access to 24 Hour's Los Angeles County clubs was prohibited because communicable diseases were, at least, more likely than not "actually present and spreading," which is sufficient to establish this requirement under the Communicable Disease Endorsement. Insurers' failure to dispute 24 Hour's evidence, and the reasonable conclusions to be drawn therefrom, is fatal to their opposition to 24 Hour's Motion. Instead of disputing the evidence, Insurers assert that

---

[1]      "Insurers" means Defendants Continental Casualty Company ("Continental"), Starr Surplus Lines Insurance Company ("Starr"), Allianz Global Risks US Insurance Company ("Allianz"), Liberty Mutual Fire Insurance Company ("Liberty"), Certain Underwriters at Lloyd's, London ("Lloyd's"), Allied World National Assurance Company ("Allied World"), QBE Specialty Insurance Company ("QBE"), and General Security Indemnity of Arizona ("GSINDA").

24 Hour presented the wrong kind of evidence, but such arguments must fail as a matter of law, as the Insurers cannot dictate the type of evidence 24 Hour can put forth to establish its case.

2.      24 Hour also submitted admissible and uncontroverted evidence establishing that access was prohibited to 24 Hour's Los Angeles County clubs due to civil authority orders regulating communicable diseases, satisfying this condition of coverage under the Communicable Disease Endorsement. The Insurers do not dispute the veracity of such orders or that such orders applied to 24 Hour's clubs, which is also fatal to their opposition. Instead, Insurers argue, without factual or legal support, that these orders are too general to trigger coverage because they are not specific to 24 Hour's locations.

3.      Rather than address the merits of 24 Hour's Motion, Insurers devote several pages of their brief to argue that 24 Hour has not incurred certain "cleaning costs," and has not shown its business interruption losses are tied to such costs. These arguments are a distraction from the merits of 24 Hour's Motion as the policies do not require 24 Hour establish that it incurred "cleaning costs" to obtain coverage for its business interruption losses and, even if they did, that was not the subject of 24 Hour's Motion. Thus, whether or not 24 Hour presented evidence on its Motion regarding "cleaning costs" is irrelevant. As such, these arguments should be disregarded entirely.

4.      Similarly, no doubt realizing the merits of 24 Hour's positions, Insurers incorrectly argue that 24 Hour has made new arguments in its Motion that communicable diseases other than COVID-19, such as the cold and flu, were also actually present and spreading at its insured locations. 24 Hour's arguments are not new. 24 Hour has been consistent throughout this case that access to its clubs, including its Los Angeles County clubs, was directly prohibited due to: (1) the actual presence and spread of *communicable diseases* at such clubs and (2) declarations by a civil authority enforcing certain laws or ordinances regulating *communicable diseases*. Insurers'

policies provide coverage for "communicable diseases," not just COVID-19.

## LEGAL STANDARD FOR REPLY

To defeat 24 Hour's Motion, Insurers must "produce specific evidence showing that there is a genuine issue for trial." *Shipley v. First Fed. Sav. & Loan Assoc.*, 703 F. Supp. 1122, 1126 (D. Del. 1988) (citing *Celotex*, 477 U.S. at 323). Insurers cannot defeat summary judgment through arguments or facts that are irrelevant to the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome. . .will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Insurers must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also*, *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that the party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Also, a mere demand for more proof or general denials of fact does not create a material issue of fact requiring the denial of a motion for summary judgment. *See, e.g., Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir. 1975) ("Given the opportunity to respond to a movant's affidavits, an adverse party . . . must set forth specific facts showing that there is a genuinely disputed factual issue for trial"); *Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.*, 365 F.2d 742, 747 (3d Cir. 1966) (the nonmoving party must present facts which indicate that material issues of fact exist); *Robin Construction Co. v. United States*, 345 F.2d 610, 613 (3d Cir. 1965) (a nonmoving party cannot defeat a summary judgment motion by "mere formal denials or general allegations which do not show the facts in detail and with precision").

Moreover, the Court may grant summary judgment based on uncontroverted circumstantial evidence when any inferences favoring the non-moving party from that circumstantial evidence

are not substantial or "significantly probative." *See Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) (there may be times where the "uncontroverted evidence and the reasonable inferences to be drawn in the nonmoving party's favor would not be 'significantly probative' so as to create a genuine issue of fact for trial.").

Here, Insurers have failed to meet their burden to defeat 24 Hour's Motion and 24 Hour's Motion should be granted in full.

## ARGUMENT

As a threshold matter, Insurers misstate and misconstrue what 24 Hour seeks in its Motion. Specifically, the Insurers incorrectly allege that 24 Hour "seeks partial summary judgment for coverage under the Interruption by Communicable Disease provision." Oppo. at 1.

As stated in its Motion, 24 Hour seeks an order from this Court that "***certain provisions*** of the communicable disease coverages in the Defendant Insurers' policies are triggered for 24 Hour's 50 clubs in Los Angeles County." Motion at 2 (emphasis added). Specifically, 24 Hour seeks an order that the two provisions in the Communicable Disease Endorsement requiring that access to 24 Hour's Los Angeles County clubs be directly prohibited due to: (1) the actual presence and spread of communicable diseases at such clubs and (2) declarations by a civil authority enforcing certain laws or ordinances regulating communicable diseases ***are satisfied by 24 Hour's undisputed evidence***. 24 Hour is not seeking summary judgment on whether there is coverage under the Interruption by Communicable Disease provision as Insurer's improperly allege.

Rather than addressing 24 Hour's evidence, the Insurers build and attack a strawman to distract this Court's attention. The Insurers did not and cannot dispute the evidence establishing that access to 24 Hour's Los Angeles clubs was prohibited (a) by communicable disease(s) that were more likely than not "actually present and spreading" at these clubs and (b) the civil authority orders that were regulating communicable diseases. As such, the Court should conclude that the

undisputed evidence submitted by 24 Hour is conclusive and there are no triable issues of fact on these points. Finally, Insurers improperly re-urge irrelevant arguments from their own motion for summary judgment that have no bearing on the relief 24 Hour seeks here. Such arguments, therefore, should be disregarded in full.

**A.     Insurers Do Not Dispute 24 Hour's Evidence Establishing That Access Was Prohibited To Its Clubs Because Communicable Diseases Were Actually Present And Spreading In 24 Hour's Los Angeles Clubs**

In its Motion, 24 Hour submitted admissible evidence that access to its Los Angeles County clubs was prohibited "due to the actual presence of and spread of communicable diseases" at such clubs. *See* Appendix of Evidence in Support of 24 Hour's Motion for Summary Judgment ("Appx"). Rather than dispute 24 Hour's evidence, or the reasonable conclusions to be drawn therefrom, the Insurers simply ***ignore*** such evidence and argue instead that 24 Hour failed to "come forward with any evidence . . . that COVID-19 was ***actually*** present and spreading at any [24 Hour location]." Oppo. at 19 (emphasis in original).

Specifically, Insurers argue that the evidence 24 Hour submitted is the wrong kind of evidence, and only certain evidence that Insurers deem worthy can support a finding of coverage. Notably, however, Insurers do not specify what sort of evidence would suffice, nor do Insurers articulate why 24 Hour's evidence is purportedly insufficient to trigger coverage. *See* Oppo at 12–19. As such, Insurers' arguments must be rejected because (1) 24 Hour has presented uncontroverted evidence sufficient to establish the presence and spread of communicable diseases at the Los Angeles clubs and (2) Insurers' over-reading of the Communicable Disease Endorsement renders coverage illusory under the policies.

**1.     24 Hour's Evidence Is Sufficient To Meet Its Burden That Communicable Diseases Were Actually Present And Spreading At Its Los Angeles Clubs**

Insurers contend 24 Hour has not shown the "presence" and "spread" of COVID-19 at 24

Hour's Los Angeles clubs. In support of their arguments, Insurers claim that all of 24 Hour's evidence concerning the history, chemistry, impact, statistics of positive COVID-19 tests, number of guests visiting clubs, and information about the spread of COVID-19 is irrelevant to establishing the presence and spread of COVID-19. Oppo. at 12. Insurers' arguments must be disregarded because 24 Hour's circumstantial evidence is relevant to establishing coverage, and such evidence demonstrates that COVID-19 and other communicable diseases were actually present and spreading at its clubs in Los Angeles County.

To start, "[t]he definition of relevant evidence is very broad." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004). Under the Federal Rules of Evidence, "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"; this "does not raise a high standard." *Id.* (citing Fed. R. Evid. 401).

To meet the burden of proof in an insurance case, as in any civil lawsuit, a party may use any manner of relevant evidence, including circumstantial evidence. *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 744 (1993). Circumstantial evidence may be used to establish the "fact to be proved *through inference based on human experience*." *Paulino v. Harrison*, 542 F.3d 692, 700 n.6 (9th Cir. 2008) (emphasis added).[2] Thus, an insurance company cannot place an arbitrary restriction on the type of evidence a policyholder can put forth to establish its case in the

---

[2]    The burden of proof in an insurance case "is proof by a preponderance of the evidence." *Buss v. Superior Court*, 16 Cal. 4th 35, 54 (1997). This standard is met when "the evidence on one side outweighs, preponderates over, is more than, the evidence on the other side, not necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed." *Bichai v. DaVita, Inc.*, 72 Cal. App. 5th 1126, 1138 (2021). In other words, "a party 'need prove only that [a fact] is *more likely to be true than not true*.'" *People ex rel. Brown v. Tri-Union Seafoods, LLC*, 171 Cal. App. 4th 1549, 1567 (2009) (emphasis added); *K.C. Hopps Ltd. v. Cincinnati Ins. Co.*, 561 F. Supp. 3d 827, 839 (W.D. Mo. 2021) (explaining that the insured "does not need definitive proof of the virus's presence, but instead must prove that it was more likely than not that the virus physically contaminated its premises").

context of litigation. A party to litigation may use all manner of relevant evidence to support a

claim, including circumstantial evidence, as is clear from the following sample jury instruction

from a case in the Third Circuit:

> [T]here were two types of evidence presented. There was direct evidence, which is
> evidence of something the witness observed from the use of his senses, something
> he saw, heard, maybe smelled, something through the use of senses, that's direct
> evidence. The other type of evidence is circumstantial evidence and ***circumstantial
> evidence is every bit as good as direct evidence***, provided that inference you draw
> from facts which you have found to be correct is a reasonable one. Now, the
> example that has been given from time in memorial [sic] is the raining-outside
> example; it's a good example. I add a little bit more to it in this respect: Suppose
> the question before you now is, has it been raining since you came into the
> courtroom this morning? I think today it was sunny, wasn't it, when we came in?
> For a change. The question was, has it rained? And suppose while you were here
> today you heard unmistakable claps of thunder like yesterday, right? God, it was
> terrible. Unmistakable claps of thunder.
>
> Could you reasonably infer from that that it was raining? Maybe you could, it's
> going to be up to you to decide what's a reasonable inference, but suppose you also
> saw people come in here shaking off umbrellas and so forth. ***You put those two
> together, then I think most would agree it's a reasonable inference that it was
> raining outside***.

*Toledo Mack Sales & Serv. v. Mack Trucks, Inc.*, 386 Fed. Appx, 214, 222 (3rd Cir. 2010)

(emphasis added); *see also*, Model Civil Jury Instructions For The Districts of the Third Circuit,

Committee on Model Civil Jury Instructions Within The Third Circuit (2018 Ed.) (Instruction 1.6

"Direct and Circumstantial Evidence"); *K.C. Hopps Ltd.*, 561 F. Supp. 3d at 837–839 (finding the

policyholder's circumstantial evidence from an expert epidemiologist who provided information

regarding the nature of the virus, how it spreads and data regarding its prevalence in the community

could support a finding that COVID-19 was actually present at the premises). This is the same

under California law. *See Ajaxo, Inc. v. E*Trade Group Inc.,* 135 Cal. App. 4th 21, 58 (stating that

a party may rely on deductions that may be logically and reasonably drawn from evidence to

support a verdict).

In its Motion, 24 Hour presented ample evidence that logically supports the reasonable

conclusion that COVID-19 and other communicable diseases were actually present and spreading at its clubs in Los Angeles County, and this was the reason 24 Hour prohibited access to its clubs. In the absence of any countervailing evidence from Insurers, such conclusions *must* be accepted as established fact. *See Mason v. Rolando Lumber Co.,* 111 Cal. App. 2d 79, 82 (1952) (reasonable conclusions "drawn from circumstantial evidence will support a finding against direct evidence to the contrary"). Here, because Insurers presented no contrary evidence to 24 Hour's circumstantial evidence, or any contrary inferences from it, they fail to raise a triable issue of fact. *See Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) (explaining that summary judgment may be appropriate when uncontroverted circumstantial evidence does not raise "significantly probative" inferences in favor of the nonmoving party).

Indeed, 24 Hour demonstrated that communicable diseases, including COVID-19, were spreading widely and rapidly in Los Angeles County during the period of January to March 2020. *See* Motion at 9–16. Insurers do not refute 24 Hour's overwhelming evidence and failed to controvert the following undisputed facts, among others discussed in 24 Hour's Motion:

- Defendant Continental Casualty recognized in 2019 that pandemics are among the catastrophic risks that "are an inevitable part of [its] business." Motion at 5; Appx, Ex. 68 at 1221.

- COVID-19 was circulating in the U.S. at least as early as January 2020, including where 24 Hour operated, and ten of the first twenty COVID-19 cases in the U.S. occurred in California. Motion at 11; Appx, Ex. 71.

- COVID-19 primarily spreads through respiratory excretions, such as from breathing, talking, coughing, sneezing, etc., and can also survive on surfaces and surface transmission may be a source of contracting COVID-19. Motion at 10.

- Early transmission of COVID-19 was travel related, and millions of people each month traveled through the busy airports in LA County, plus the Port of Los Angeles. Motion at 3; Appx, Ex. 42 at 809; Appx, Exs. 64–67.

- The Insurers' designated epidemiology expert stated that "In January through

March of 2020, there was highly localized transmission in locations such as California, Seattle and New York City." Motion at 11; Appx, Ex. 60 at 996.

- Metropolitan areas, such as Los Angeles, experienced rapid spread of COVID-19 and according to the Insurers' expert, "We know it was hitting large major metropolitan areas where there was increased travel in and out of those locations." Motion at 11; Appx, Ex. 42 at 815.

- On March 4, 2020, both the Mayor of Los Angeles and the LA County Board of Supervisors issued emergency declarations, with the mayor's declaration citing "conditions of disaster or extreme peril to the safety of persons or property" due to the introduction of COVID-19. Motion at 11; Appx, Ex. 6 at 44.

- Beginning March 4, the Los Angeles County Department of Public Health ("DPH") warned that anyone planning to watch the LA Marathon "with even mild illness should stay home." Motion at 11; Appx, Ex. 8 at 51.

- Data published by DPH demonstrates a 1,627% increase in the number of "confirmed" COVID-19 cases in LA County between March 5, 2020 and March 18, 2020; that there were "positive cases across the entire County"; and that "the public should not think one location is safer than the other." Motion at 12; Appx, Exs. 8–10.

- In the spring of 2020, the capacity and ability to test for and detect COVID-19 were extremely limited. Thus, the total number of actual cases of COVID-19 was vastly higher than what public health departments were reporting as "confirmed" cases. Motion at 12.

- Insurers' epidemiology expert agreed, "by mid-March transmission of SARS-CoV-2…had accelerated with rapidly increasing case counts indicating established transmission in the United States. Ongoing traveler importation of SARS-CoV-2, attendance at professional and social events, introduction into facilities or settings prone to amplification, and challenges in virus detection all contributed to rapid acceleration of transmission during March." Motion at 12; Appx, Ex. 42 at 821.

- Other communicable diseases were also spreading throughout LA County. Without adequate testing COVID-19 could not be distinguished from these other illnesses. Thus, it was important to treat any individual with a respiratory illness as having COVID-19. Motion at 20.

- In March 2020, 24 Hour operated 50 clubs throughout Los Angeles, County one of the most heavily populated areas in the U.S. with around 10 million people. Motion at 3.

- From January through mid-March 2020, 24 Hour employed more than 2,000 employees in its 50 LA clubs, and each had on average **1,300 workouts** per day. Motion at 4.

- Gyms and fitness clubs are high-risk settings for the spread of respiratory diseases including COVID-19. Motion at 16.

- When LA County ordered closed all gyms and fitness clubs, it did so "because of the rapid spread of COVID-19 and the need to protect the most vulnerable members of [the] community." Motion at 16; Appx, Ex. 14 at 65.

- 24 Hour continuously monitored the data and spread of COVID-19, as well as decisions being made by other businesses to limit or close operations and became alarmed about the safety of its employees and members, as both groups also grew concerned about safety given the nature of the virus, and that it was known to spread among individuals with few or no symptoms. Motion at 14.

- 24 Hour received reports of sick individuals visiting its clubs, and there is no reasonable dispute that individuals with the cold and flu would have been present in each of 24 Hour locations, and the symptoms of these illnesses were indistinguishable from COVID-19. Motion at 14.

- 24 Hour believed that COVID-19 was present in all its clubs across the country throughout January to March 16, 2020, including all 50 clubs located in LA County. Motion at 15.

- 24 Hour's expert epidemiologist, among other things, has confirmed that 24 Hour's conclusion that COVID-19 was present at its clubs was a reasonable conclusion. Motion at 15.[3]

The foregoing uncontroverted evidence, in addition to the other evidence 24 Hour cites in its Motion, establishes that it was more likely than not that communicable diseases were actually present and spreading at 24 Hour's LA County locations, which is sufficient to establish coverage under the policies. *See* Footnote No. 2.

Insurers do not dispute the correctness of the circumstantial evidence, nor do Insurers

---

[3]     The reasonableness of a conclusion is an appropriate opinion for an expert witness and is relevant to the case because reasonable conclusions made from circumstantial evidence are sufficient to prove that communicable diseases were more likely than not present and spreading at 24 Hour's Los Angeles County clubs. *See* Footnote No. 2; *See also*, 24 Hour's Opposition to Insurers' Motion to Exclude Dr. Carnethon's Expert Opinion.

dispute the reasonable conclusions to be drawn therefrom. Insurers simply argue that the evidence relied on by 24 Hour is somehow not the right kind of evidence. But that argument has no support in law, because circumstantial evidence has the same evidentiary value as direct evidence, and reasonable conclusions drawn from circumstantial evidence are sufficient to establish a fact. *See Mason,* 111 Cal. App. 2d at 82 (reasonable conclusions "drawn from circumstantial evidence will support a finding against direct evidence to the contrary").

In sum, because Insurers do not dispute 24 Hour's evidence, and the reasonable conclusions drawn from such evidence, they have failed to demonstrate that 24 Hour is not entitled to partial summary judgment on the first question presented in the Motion — whether 24 Hour's access to its Los Angeles clubs was prohibited due to the actual presence and spread of a communicable disease at its locations. Since the Insurers have presented no countervailing evidence, they have failed to meet their burden in opposing 24 Hour's motion. *See Podobnik*, 409 F.3d at 594 (the party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue").

      **2.**      **Accepting The Insurers' Argument That 24 Hour's Evidence Is Insufficient To Show The "Actual Presence And Spread" Of A Communicable Disease While Insurers Are Unable To Even Specify What Evidence Might Suffice Would Render Coverage Illusory**

Coverage under the Communicable Disease Endorsement is triggered when access to the insured location is prohibited due to the actual presence and spread of communicable diseases. Appx, Ex. 17 at 114. While Insurers claim that the Communicable Disease Endorsement is not ambiguous (Oppo. at 8.), they fail to articulate what evidence would be sufficient to trigger coverage.

Indeed, during discovery in this case, ***witness after witness for the Insurers stated under oath that they have no idea what evidence 24 Hour could present to establish coverage. See e.g.,***

- 11 -

Appx, Ex. 58 at 971 ("in the context of this claim, we don't know [how 24 Hour could demonstrate the presence of COVID-19 at a location]; but we know what was provided to us did not confirm the actual presence and spread of COVID-19."); Appx, Ex. 40 at 794 ("I never had enough information to make a decision."); Appx, Ex. 52 at 897–898 ("based on the information that was provided, you know, there wasn't sufficient information for us . . ."); Appx, Ex. 53 at 922 ("Going back to your 'what proof,' I don't know what . . ."); Appx, Ex. 57 at 957 (Insurers' adjuster for the claim, also testified: "I'd want some evidence that there was a communicable disease there at the described location . . . . I'm not sure how they would do that, but that's what I would request.").

Thus, while Insurers assert, they cannot explain what is needed to establish coverage, they claim that whatever is needed is not established by 24 Hour's evidence — creating an impossible burden for 24 Hour. Accepting Insurers' paradoxical claim would render coverage illusory, as Insurers have simply argued that whatever evidence 24 Hour puts forth is insufficient, but never articulated what type of evidence would trigger coverage. Indeed, the Insurers have gone so far as to say that 24 Hour could never present sufficient evidence to establish coverage. *See* Ex. 53 at 915 (Starr testified that there could be no coverage for COVID-19 losses because the policy only covers "a communicable disease that can actually be tested," and it did not know of any tests that could detect COVID-19 on property). Simply put, Insurers have no answer as to what "evidence" would trigger coverage under their policies. If Insurers cannot articulate what evidence would be sufficient, they can hardly argue that the evidence put forth by 24 Hour is insufficient.

Given the Insurers' failure to articulate how their coverage applies, this Court must revert to general principles of insurance policy interpretation, which hold that provisions of insurance policies that grant coverage "are interpreted broadly in favor of the insured" and to "afford the insured the greatest possible protection under the policy." *St. Mary & St. John Coptic Orthodox*

*Church v. SBC Ins. Servs., Inc.*, 57 Cal. App. 5th 817, 825 (2020). The Court must also "interpret the provisions of a contract to avoid rendering the instrument 'illusory.'" *John's Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.*, 86 Cal. App. 5th 1195, 1219 (2022) (citing *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal. App. 4th 86, 94–95 (2002)). ***Importantly***, ***Insurers cannot interpret the policy in a way that makes coverage "effectively impossible to meet"*** because such interpretations render coverage illusory. *See John's Grill*, 86 Cal. App. 5th at 1220 (agreeing with a policyholder that a clause that is "effectively impossible to meet" is illusory).

Merely stating there is no evidence, or that the evidence submitted is not the "right kind of evidence," without explaining why the evidence that has been submitted is not sufficient, and without identifying what would be sufficient, is not a legitimate response to 24 Hour's motion and proof. Thus, the Insurers' policy interpretations or, more accurately, their failure to articulate any coherent interpretations, render coverage illusory.

This Court cannot accept an "interpretation" that the "actual presence and spread" of communicable diseases means something unknowable, such that 24 Hour is left to guess what information is needed to qualify for coverage, and which allows the Insurers to sit back and reject claims with impunity. In the absence of any articulated standard from the Insurers, this Court must accept that the evidence submitted by 24 Hour establishes the actual presence and spread of communicable diseases, including COVID-19, at 24 Hour's clubs in Los Angeles County. Insurers' failure to dispute 24 Hour's facts, and the reasonable conclusions from those facts, is dispositive and 24 Hour's Motion should be granted on the first issue.

**B.**      **Insurers Cannot Credibly Dispute That Access To 24 Hour's LA County Clubs Was Prohibited Due To Enforcement Of Laws Regulating Communicable Diseases**

Building on their strawmen, Insurers also inappropriately attempt to rewrite the policy to include a requirement that government orders prohibiting access to 24 Hour's clubs must "relate

to a specific condition at an insured location." Oppo. at 20. But the Communicable Disease Endorsement affords coverage where access to the clubs is "prohibited" as a "direct result" of a "declaration . . . enforcing any law or ordinance regulating communicable diseases." Appx, Ex. 17 at 114. Contrary to Insurers' positions, this provision does not require a government order specific to 24 Hour, and Insurers cannot rewrite the policy to add such a limitation. *S. Cal. Counseling Ctr. v. Great Am. Ins. Co.*, 162 F. Supp. 3d 1045, 1050 (C.D. Cal. 2014) ("A court may not rewrite the terms of the policy or engage in a forced construction."). If Insurers intended coverage to be so narrow, they should have used limiting language to effectuate such intent.

Notably, Insurers only quote part of the policy language in their argument: "All coverage above must be directly resulting from access being prohibited to a *described location* or any portion thereof: (a) Due to the actual presence of and the spread of communicable diseases *at that described location* . . . ." Oppo. at 19 (emphasis in original). However, the policy does not tie the "presence and spread . . . at that described location" language to the requirement that the government issue an order regulating communicable diseases. In fact, the policy language has two separate requirements, as follows:

> All coverage above must be directly resulting from access being prohibited to a described location or any portion thereof:
>
> a) Due to the actual presence of and the spread of communicable diseases at that described location; *and*
>
> b) [] As a direct result of a declaration by a civil authority enforcing any law or ordinance regulating communicable diseases.

Appx, Ex. 17 at 114 (emphasis added).

As such, the orders contemplated in provision "b" above do not need to "relate to a specific condition at an insured location." Rather, such orders simply need to enforce laws regulating communicable diseases generally.

Further, Insurers' cited authorities are inapposite and easily distinguishable, as cases do not concern coverage under a communicable disease endorsement — or other similar policy language. Oppo. at 20. For example, in *Inns-by-the-Sea*, the court was analyzing a policy provision that applied when "damage or loss *somewhere else* gives rise to an order by a civil authority that prohibits access to the [policyholder's] premises." *Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688, 695 (2021) (emphasis in original).

Additionally, when Insurers do cite cases analyzing communicable disease endorsements, the policy language in those cases is much more restrictive than the language at issue here. Oppo. at 20. For example, the policy language in *Danville*, *St. Tammany*, and *Northwell*, all required access to the insured property be prohibited by "order of an authorized governmental agency enforcing any law or ordinance regulating communicable disease *and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the Location.*" *Danville Reg'l Med. Ctr., LLC v. Am. Guarantee*, No. 4:21-cv-00012, 2022 U.S. Dist. LEXIS 206563, at *2 (W.D. Va. Nov. 14, 2022) (emphasis added); *St. Tammany Par. Hosp. Serv. Dist. No. 2 v. Zurich Am. Ins. Co.*, 593 F. Supp. 3d 399, 416 (E.D. La. 2022) (same); *Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 112 (S.D.N.Y. 2021) (same).[4]

Here, by contrast, the policies do not require 24 Hour's clubs be deemed "uninhabitable." 24 Hour's policies merely require that access be "prohibited" as a "direct result" of a "declaration . . . enforcing any law or ordinance regulating communicable diseases." Appx, Ex. 17 at 114. This language is much broader than the Insurers' cases. The policy standards are met by the government

---

[4]     Similarly, in *Spirit Realty Capital, Inc.*, the policy language stated that the government orders must be "regulating the actual not suspected presence of communicable disease." *Spirit Realty Capital, Inc. v. Westport Ins. Corp.*, 568 F. Supp. 3d 470, 474 (S.D.N.Y. 2021). Whereas, 24 Hour's policy is much broader, and only requires that the government orders are "regulating communicable diseases." Appx, Ex. 17 at 114.

orders cited in the Motion, which prohibited access to 24 Hour's Los Angeles Clubs for their intended use as fitness centers.[5] Insurers' contrary arguments lack all merit.[6]

Insurers do not dispute that the government orders affected 24 Hour's Los Angeles clubs. Nor do Insurers dispute that violations of these orders were punishable by such government authorities. Thus, the orders unequivocally prohibited access to 24 Hour's clubs in Los Angeles County. Since access to 24 Hour clubs was prohibited by law, and Insurers fail to dispute this, this prong of the endorsement is triggered and summary judgment should be granted.

**C.    Insurers' Argument That 24 Hour Must Demonstrate Cleaning Costs To Obtain Business Interruption Coverage Is Both Wrong And Irrelevant To 24 Hour's Motion**

24 Hour's Motion asks this court to find that "*certain provisions* of the communicable disease coverages" are triggered for 24 Hour's Los Angeles County clubs. Motion at 2 (emphasis added). Simply, 24 Hour requests that this Court determine only if access to 24 Hour's Los Angeles County clubs was directly prohibited due to: (1) the actual presence and spread of communicable diseases at such clubs and (2) declarations by a civil authority enforcing certain laws or ordinances regulating communicable diseases.

---

[5]    The Insurers' cases  are also factually inapposite, as they **concern hospital or medical facilities that were only partially closed due to the applicable government orders**. As *Riverside Dental* noted, access to these properties was not "prohibited" because "the premises could be accessed for purposes of *performing and receiving essential services*." *Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co.*, No. 20 CV 50284, 2021 U.S. Dist. LEXIS 120957, *7 (N.D. Ill. June 29, 2021) (emphasis added). Here, in contrast, the government orders prohibited 24 Hour from using its facilities to *perform its services* as a fitness club, i.e. 24 Hour was unable to offer its facilities to club members, the very purpose of its existence.

[6]    Courts have been "skeptical" of Insurers' arguments that there must be a causal connection between the outbreak on the insured's premises and the government order with policies like 24 Hour's. *See Baldwin Acad., Inc. v. Markel Ins. Co.*, 2020 U.S. Dist. LEXIS 239916 at *12–*13 (S.D. Cal. 2020) ("the Court is skeptical of Defendant's argument that the language of the Endorsement unambiguously imposes a 'second causation requirement' . . . [and] must be the result of two independent events: (1) an outbreak of a communicable disease at the premises, and (2) a government order or recommendation to shut down operations"); *Treo Salon, Inc. v. West Bend Mut. Ins. Co.*, 538 F. Supp. 3d 859, 866 (S.D. Ill. 2021) (finding that a communicable disease endorsement requiring a "shutdown due to an outbreak *at the insured premises*" may include broad government orders (like those at issue here) because "[t]he government did not create any process through which [the policyholder] could prove it was virus free . . . [essentially, h]ow can [the insurer] or anyone else be so certain that COVID-19 was not on [the policyholder's] premises?").

- 16 -

Nevertheless, Insurers argue that because "24 Hour seeks to recover under the ICD Endorsement for business interruption losses" it must show that "24 Hour incurred 'reasonable and necessary expenses' to 'clean up, remove, and dispose of [the COVID-19 virus].'" Oppo. at 10. As discussed in 24 Hour's Opposition to the Property Insurers' Motion for Summary Judgment, no such requirement exists. *See* Doc. 252 at 22–24. But more importantly, such contentions are beyond the scope of 24 Hour's Motion, and any question concerning cleaning costs, is not relevant to this Motion which asks the Court to decide whether access to 24 Hour's Los Angeles County clubs was directly prohibited due to (1) the actual presence and spread of communicable diseases at such clubs and (2) declarations by a civil authority enforcing certain laws or ordinances regulating communicable diseases. Thus, this argument should be disregarded completely.[7]

**D.    Insurers Incorrectly Claim That The Communicable Disease Endorsement Does Not Cover Other "Communicable Diseases" Such As The Cold Or Flu**

Insurers' last contention to avoid coverage under their policies chides 24 Hour for purportedly rasing an "entirely new argument for the very first time" that the Communicable Diease Endorsment covers the actual presence and spread of all communicable dieases, including the cold, flu, and COVID-19. Oppo. at 22. Insurers' contentions are baseless and should be disregarded in full.

To begin, 24 Hour's arguments that it seeks coverage for the actual presence and spread of "communicbale dieases," and not just COVID-19, are far from "new." Indeed, 24 Hour's Complaint asserts that access to its clubs was prohibited due to "the presence of ***Communicable***

---

[7]       On the merits, Insurers' argument does not prohibit 24 Hour from recovering business interruption losses under the Communicable Disease Endorsement because there is no requirement that 24 Hour spend money to trigger coverage and closing 24 Hour's clubs was the *only* proper way to dispose of communicable diseases and restore the property because, even if such diseases could be simply removed from the surfaces or air, infected persons would continue to reintroduce these diseases as they continued to visit the clubs to work out. *See* Doc. 252 at 22–24.

*Disease* at 24 Hour Fitness' business locations and throughout the communities where such business locations are maintained." Complaint at ¶ 1 (emphasis added).[8] Moreover, 24 Hour's expert witness opines throughout her timely-served expert report that communicable diseases, such as the cold and flu, were indistinguishable from COVID-19, and were actually present and spreading in each of 24 Hour's clubs. Appx, Ex. 62 at 1116, 1124, 1134. 24 Hour's expert report was issued on October 21, 2022, and Insurers had ample opportunity to investigate these claims and question 24 Hour's expert regarding her opinion during her deposition on August 16, 2023. Neither Insurers nor their experts challenged 24 Hour's expert's conclusion that the cold and flu were actually present and spreading in 24 Hour's clubs. In fact, even Insurers' own expert, Dr. Stock, explained in her report that COVID-19 symptoms may have been attributable to other illness, such as a common cold. Appx, Ex. 60 at 987. In deposition, Dr. Stock testified that symptoms of COVID-19 are indistinguishable from other communicable diseases. Appx, Ex. 42 at 812 ("Lots of viral illnesses cause other symptoms that people think about with COVID"); Appx, Ex. 42 at 813 (Q. "those symptoms could have been from other illnesses, correct?" A. "That is correct.). Dr. Stock further opined that 2020 was a particularly bad flu season, and that other communicable diseases were also circulating widely, further supporting 24 Hour's position that these other communicable diseases, in addition to COVID-19, were present and spreading at its clubs. Appx, Ex. 42 at 811.

Insurers characterizing the foregoing arguments as "new" serves only to distract from the fact that Insurers have no response to these arguments on the merits. Even if the evidence did not

---

[8] Even if 24 Hour's complaint did not specifically mention "cold" or "flu," federal law permits that "a pleading may be amended to conform to the proof" *Schultz v. Cally*, 528 F.2d 470, 474 (3d Cir. 1975); *see* Fed. R. Civ. P. 15(b); *Gov't Emps. Ret. Sys. of the V.I. v. Gov't of the V.I.*, 995 F.3d 66, 82 n.11 (3d Cir. 2021) ("Notwithstanding Rule 15's ostensible requirement of a 'trial,' pleadings may be deemed amended to conform to the evidence presented at hearings before a district judge.").

establish the presence and spread of COVID-19 at 24 Hour's clubs, which it does, the undisputed presence and spread of other communicable diseases, including the cold and flu, constitute an independent basis for the Court to grant 24 Hour's Motion.

Notwithstanding the foregoing, Insurers also claim that other communicable diseases, like the cold and flu, cannot trigger coverage under the Communicable Disease Endorsement because (1) the endorsements do not cover the cold or flu and (2) the government orders at issue did not specifically refer to the cold or flu. Both arguments are meritless for two independent reasons.

*First*, the policies at issue provide coverage for the actual presence and spread of "communicable dieases," which is broadly defined as "disease[s] that may be transmitted directly or indirectly by one person or other life form to another. . . due to an infections agent." Appx, Ex. 17 at 114. There is no credible dispute that this includes diseases like the cold, flu, and COVID-19. There is also no dispute that, from the inception of this case, 24 Hour has claimed that access to its clubs, including those in Los Angeles County, was directly prohibited due to (1) the actual presence and spread of ***communicable diseases*** at such clubs and (2) declarations by a civil authority enforcing certain laws or ordinances regulating ***communicable diseases***. As alluded above, there is ample undisputed evidence that multiple communicable diseases were abundant and spreading in Los Angeles; thus, it is more likely than not that those communicable diseases were actually present and spreading at 24 Hour's clubs. *See* Section A.1 *infra*. Insurers do not dispute any of this and instead cry foul that these arguments, which are pled in the first paragraph of 24 Hour's Complaint and discussed throughout 24 Hour's expert's report, are somehow "new."

*Second*, Insurers misread the policy in asserting that the government shutdown orders must be issued "due to the flu or common cold" for such communicable diseases to be relevant. Oppo. at 24. The Communicable Disease Endorsement only requires "a declaration by a civil authority

enforcing certain laws or ordinances regulating *communicable diseases*." Appx, Ex. 17 at 114 (emphasis added). This does not specify that the civil authority declarations must be specific to any particular disease, or that if other disease are spreading that are indistinguishable from the disease of concern (*i.e.*, COVID-19), that those other diseases are somehow irrelevant, even though they must be treated the same as COVID-19.

As established by the undisputed evidence in the Motion, COVID-19 was not the only communicable disease present in Los Angeles County. Other respiratory illnesses were spreading and were indistinguishable from COVID-19 and anyone with symptoms had to be treated as if they had COVID-19. *See* Motion at 27. 24 Hour was forced to close its Los Angeles County clubs due to (1) the actual presence and spread of *communicable diseases* at its clubs and because of (2) declarations by a civil authority enforcing certain laws or ordinances regulating *communicable diseases*. Insurers have been aware of these assertions since the inception of this case and their narrow reading of the policy that "communicable diseases" means only COVID-19 is unsupportable.

## CONCLUSION

For the foregoing reasons, 24 Hour's motion for partial summary judgment should be granted in full. Insurers failed to dispute any evidence and therefore the undisputed evidence establishes that access to 24 Hour's Los Angeles County clubs was directly prohibited due to: (1) the actual presence and spread of communicable diseases at such clubs and (2) declarations by a civil authority enforcing certain laws or ordinances regulating communicable diseases.

Dated: February 12, 2024                  Respectfully submitted,

                                          **REED SMITH LLP**

                                          */s/ Mark W. Eckard*
                                          Mark W. Eckard (No. 4542)
                                          1201 North Market Street, Suite 1500
                                          Wilmington, DE 19801
                                          (302) 778-7500
                                          (302) 778-7575 (Fax)
                                          meckard@reedsmith.com

                                          David E. Weiss (admitted *pro hac vice*)
                                          T. Connor O'Carroll (admitted *pro hac vice*)
                                          101 Second Street, Suite 1800
                                          San Francisco, CA 94105-3659
                                          (415) 543-8700
                                          (415) 391-8269 (Fax)
                                          dweiss@reedsmith.com
                                          cocarroll@reedsmith.com

                                          *Counsel for Plaintiff 24 HOUR FITNESS*
                                          *WORLDWIDE, INC.*