## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RS FIT NW LLC, | ) | |
| | ) | Case No. 20-11568 (TMH) |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| 24 HOUR FITNESS WORLDWIDE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY; | ) | Adv. Pro. No. 20-51051 (TMH) |
| ENDURANCE AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY; STARR SURPLUS | ) | |
| LINES INSURANCE COMPANY; ALLIANZ | ) | |
| GLOBAL RISKS US INSURANCE COMPANY; | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY; | ) | |
| BEAZLEY-LLOYD'S SYNDICATES 2623/623; | ) | |
| ALLIED WORLD NATIONAL ASSURANCE | ) | |
| COMPANY; QBE SPECIALTY INSURANCE | ) | |
| COMPANY; and GENERAL SECURITY | ) | |
| INDEMNITY COMPANY OF ARIZONA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFF 24 HOUR FITNESS WORLDWIDE, INC.'S OPPOSITION TO INSURERS' MOTIONS TO EXCLUDE DR. CARNETHON'S PROPOSED EXPERT TESTIMONY

David E. Weiss (admitted *pro hac vice*)
T. Connor O'Carroll (admitted *pro hac vice*)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
E-mail: dweiss@reedsmith.com
E-mail: cocarroll@reedsmith.com
Counsel for Plaintiff 24 HOUR FITNESS
WORLDWIDE, INC.

Mark W. Eckard (No. 4542)
REED SMITH LLP
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
E-mail: meckard@reedsmith.com

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

A.      Dr. Carnethon's Expert Report and Declarations are Admissible ..................................... 3

B.      Dr. Carnethon's Proposed Testimony Regarding 24 Hour's Sick Data is
        Admissible ............................................................................................................. 3

        1.      Dr. Carnethon's Opinion about 24 Hour's Sick Data is Not Untimely .................. 4

        2.      Dr. Carnethon's Opinion is Relevant and Supported ............................................ 6

        3.      Dr. Carnethon Is Qualified To Opine About 24 Hour's Sick Time Data .............. 9

CONCLUSION ...................................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allergan USA, Inc. v. MSN Labs. Private Ltd.*,
   No. 19-1727-RGA, 2023 U.S. Dist. LEXIS 135710 (D. Del. Aug. 4, 2023) ...........................5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (2016)...........................................................................................................8

*Avco Corp. v. Turn & Bank Holdings, LLC*,
   No. 4:12-CV-01313, 2020 U.S. Dist. LEXIS 108566 (M.D. Pa. June 22, 2020).....................5

*Bichai v. DaVita, Inc.*,
   72 Cal. App. 5th 1126 (2021) .............................................................................................7

*Blancha v. Raymark Indus.*,
   972 F.2d 507 (3d Cir. 1992)................................................................................................7

*Brown v. Robert Packer Hosp.*,
   341 F.R.D. 570 (M.D. Pa. 2022)........................................................................................10

*People ex rel. Brown v. Tri-Union Seafoods, LLC*,
   171 Cal. App. 4th 1549 (2009) .......................................................................................2, 7

*Buss v. Superior Court*,
   16 Cal. 4th 35 (1997) ....................................................................................................2, 7

*De La Cruz v. V.I. Water & Power Auth.*,
   597 F. App'x 83 (3d Cir. 2014) .........................................................................................9

*Ely v. Cabot Oil & Gas Corp.*,
   No. 09-2284, 2014 U.S. Dist. LEXIS 40930, 2014 WL 1276487 (M.D. Pa.
   Mar. 27, 2014)...............................................................................................................11

*Emcore Corp. v. Optium Corp., Civil Action No. 6-1202*,
   2008 U.S. Dist. LEXIS 59794 (W.D. Pa. Aug. 5, 2008) .......................................................4

*Gibson v. Mayor & Council of Wilmington*,
   355 F.3d 215 (3d Cir. 2004)................................................................................................6

*Hozier v. Midwest Fasteners, Inc.*,
   908 F. 2d 1155 (3d Cir. 1990).............................................................................................7

*Johnson v. Fed. Exp. Corp.*,
   No. 1:12-CV-444, 2014 U.S. Dist. LEXIS 1763, 2014 WL 65761 (M.D. Pa.
   Jan. 8, 2014)..................................................................................................................11

*Koons v. XL Ins. Am., Inc.*,
    516 F. App'x 217 (3d Cir. 2013) ...........................................................7

*Leonard v. Stemtech Health Scis., Inc.*,
    981 F. Supp. 2d 273 (D. Del. 2013) .......................................................3

*Lipari v. Sullivan*,
    No. 17 CV 1566, 2018 U.S. Dist. Lexis 212127 (N.D. Ill. Dec. 17, 2018) ............................7

*Lucent Techs. Inc. v. Gateway, Inc.*,
    2007 U.S. Dist. LEXIS 36246 (May 16, 2007) .........................................4

*Marcum v. Colum. Gas Transmission, LLC*,
    658 F. Supp. 3d 252 (E.D. Pa. 2023) ...................................................13

*Merchs. Ins. Co. of N.H. v. 3 R Painting & Contracting Co.*,
    No. 06-1602, 2008 U.S. Dist. LEXIS 47564, 2008 WL 2478387 (D.N.J. June
    18, 2008) ...................................................................................11

*Nationwide Mut. Ins. Co. v. William Hukill*,
    No. 4:CV-04-0399, 2005 U.S. Dist. Lexis 55993 (M.D. Pa. July 12, 2005) ............................7

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ..................................................................9

*Power Integrations, Inc. v. Fairchild Semiconductor Ina, Inc.*,
    585 F. Supp. 2d 568 (D. Del. 2008) ........................................................5

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
    12 Cal. App. 4th 715 (1993) ................................................................7

*Spain v. Gallegos*,
    26 F.3d 439 (3d Cir. 1994) ..................................................................7

*Thompson v. Doane Pet Care Co.*,
    470 F.3d 1201 (6th Cir. 2006) ..............................................................4

*TRB Invs., Inc. v. Fireman's Fund Ins. Co.*,
    40 Cal. 4th 19 (2006) ........................................................................2

*United States v. Johnson & Johnson*,
    Civil Action No. 12-7758 (MAS) (LHG), 2021 U.S. Dist. LEXIS 256277
    (D.N.J. June 14, 2021) .....................................................................11

*Vuckson v. United States*,
    354 F.2d 918 (9th Cir. 1966) ...............................................................7

*White v. Beaver County*,
    2019 U.S. Dist. LEXIS 182357, 2019 WL 5395212 (W.D. Pa. Oct. 22, 2019) ...............10, 11

**Rules**

Fed. R. Civ. P. 26 ...............................................................................................................13

Fed. R. Evid. 401 ...............................................................................................................6

Fed. R. Evid. 702 ...............................................................................................................9

Plaintiff 24 Hour Fitness Worldwide, Inc. ("24 Hour") submits this Opposition to both Allied World National Assurance Company's ("Allied World") Motion to Exclude ("Allied Motion") and Property Insurers'[1] Motion to Exclude (Property Motion) (collectively, "Insurers' Motions") the proposed testimony of 24 Hour's expert witness, Mercedes R. Carnethon, Ph.D.[2] Allied World and Property Insurers (collectively, "Insurers") submitted two separate Motions to Exclude. However, Insurers' Motions contain near-identical arguments. For sake of judicial efficiency, 24 Hour responds to Insurers' Motions together in this single Opposition.

## **PRELIMINARY STATEMENT**

As the Court is well aware, the parties have submitted competing motions for summary judgment regarding 24 Hour's insurance claims arising from the COVID-19 pandemic.

Throughout their Motions for Summary Judgment, Insurers contend that no matter what evidence 24 Hour seeks to introduce regarding the presence and spread of communicable diseases or viruses, including COVID-19, such evidence will be insufficient to establish coverage under the policies.[3]

---

[1]     "Property Insurers" refers to Defendants Continental Casualty Company ("Continental"), Starr Surplus Lines Insurance Company ("Starr"), Allianz Global Risks US Insurance Company ("Allianz"), Liberty Mutual Fire Insurance Company ("Liberty"), Certain Underwriters at Lloyd's, London ("Lloyd's"), Allied World National Assurance Company ("Allied World"), QBE Specialty Insurance Company ("QBE"), and General Security Indemnity of Arizona ("GSINDA").

[2]     In its Motion, Allied World objects to the declaration of Dr. Mercedes Carnethon in support of 24 Hour's Motion for Summary Judgment. Motion at ¶¶ 5, 9. In doing so, Allied World incorporates the Property Insurers' Motion to Exclude Dr. Carnethon's first declaration [DKT No. 249]. Accordingly, and in the interest of brevity, 24 Hour similarly incorporates by reference its Opposition to Property Insurers' Motion to Exclude [DKT No. 275].

[3]     *See* DKT No. 239 at 2 ("24 Hour cannot meet its burden of proof because it has no evidence to establish the presence of the COVID virus on, at or under a scheduled location (its facilities)"); *Id.* at 5 ("after an extensive discovery process, 24 Hour has offered no evidence to support [its] allegations"); *Id.* at 13 ("Although discovery is now complete, 24 Hour still has no evidence that COVID-19 was physically present at any of its clubs."); *See* DKT No. 232 at 2 ("24 Hour has not offered evidence sufficient to demonstrate that it has met [the] prerequisites to coverage"); *Id.* at 21 ("24 Hour has offered no evidence with respect to the actual presence and spread of COVID-19 at any of its facilities, a prerequisite to coverage under the ICD Endorsement."); *Id.* at 24 ("These conclusory assertions are patently insufficient to support the 'actual presence and spread' of COVID-19 at any single facility, let alone all of them.").

In response to these and other similar arguments, 24 Hour has stressed that the evidentiary standards to establish coverage are flexible, and require only "proof by a preponderance of the evidence." *Buss v. Superior Court*, 16 Cal. 4th 35, 54 (1997). 24 Hour has also stressed that this standard is met when the evidence establishes that something, here the presence and spread of communicable diseases or viruses, "is more likely to be true than not true.'" *People ex rel. Brown v. Tri-Union Seafoods, LLC*, 171 Cal. App. 4th 1549, 1567 (2009).

With these standards in mind, 24 Hour has submitted voluminous evidence suggesting what commonsense confirms: that communicable diseases, including COVID-19, were more likely than not actually present and spreading throughout 24 Hour's clubs in early 2020.[4]

In responding to such admissible evidence establishing these facts, Insurers reveal their own insecurities regarding their attempts to disclaim coverage. Indeed, if 24 Hour has "no evidence" establishing coverage, as Insurers repeatedly suggest, it is puzzling why the Insurers are arguing so vociferously to exclude evidence that they contend is worthless. The reason Insurers are taking such extreme measures in seeking to exclude 24 Hour's admissible evidence, including the testimony of Dr. Carnethon, is because they know that such evidence concerning the presence and spread of communicable diseases or viruses meets the minimum requirements to trigger coverage under the policies. *See TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27, (2006) (holding that insurance policies are "interpreted broadly so as to afford the greatest possible protection to the insured.")

---

[4]     In conjunction with its summary judgment briefing, 24 Hour has submitted copious evidence establishing that communicable diseases, including COVID-19, were actually present and spreading throughout 24 Hour's clubs in early 2020. This evidence includes: (1) information about the *tens of thousands of individuals* frequenting 24 Hour's clubs during the pandemic; (2) studies and testimony about gyms being considered high-risk environments for spreading COVID-19; (3) information about how COVID-19 and other diseases were spreading rapidly in the areas where 24 Hour operated; (4) payroll data showing an increase in the number of sick hours used compared to the prior year; (5) confirmed cases of COVID-19 reported by 24 Hour's guests; etcetera.

Notwithstanding, through their Motion, Insurers argue that Dr. Carnethon's expert testimony should be excluded because such testimony is (1) untimely, (2) irrelevant, and (3) because Dr. Carnethon is not qualified to offer the opinions she proffers. For the reasons discussed below, the Insurers' arguments should be rejected in full.

## ARGUMENT

### A.   Dr. Carnethon's Expert Report and Declarations are Admissible

As a threshold matter, Insurers seek to exclude Dr. Carnethon's expert report and declarations for the reasons articulated in the Property Insurers' Motion to Exclude Dr. Carnethon's Proposed Expert Testimony [DKT No. 249]. *See* Allied Motion at ¶ 16; Property Motion at ¶ 6. As such, Insurers incorporate such arguments into these Motions.

24 Hour addresses these arguments, and all their flaws, in detail in its Opposition to the Property Insurers' Motion to Exclude [DKT No. 275]. 24 Hour similarly incorporates its Opposition herein.

### B.   Dr. Carnethon's Proposed Testimony Regarding 24 Hour's Sick Data is Admissible

Making additional arguments through these Motions, Insurers seek to exclude Dr. Carnethon's opinion[5] regarding 24 Hour's sick hour data.[6] Allied Motion at ¶¶ 15, 17; Property

---

[5]   Insurers never actually specify which opinion it seeks to exclude. Rather, Insurers only state that they request this Court to exclude Dr. Carnethon's "second new opinion" which is "not only irrelevant to the issues presented in this case, but is also untimely and based upon the equally untimely and impermissible submission of the Healon Declaration and the underlying Sick Hour Data." Allied Motion at ¶ 15; Property Motion at ¶ 6. To start, this Court should not exclude opinions by Dr. Carnethon that Insurers fail to sufficiently identify. *See Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) ("The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion . . . when it lacks the necessary specificity with respect to the evidence to be excluded.").

[6]   Even though Insurers' fail to clarify which "second new opinion" they seek to exclude. 24 Hour identifies that Paragraph 37 of Dr. Carnethon's Declaration states information about 24 Hour's sick hour data. Specifically, Dr. Carnethon states: "I am also aware that this lack of testing particularly affected 24 Hour and its ability to track whether its employees had COVID-19. For example, I understand that 24 Hour experienced an increase of sick hours used for the first quarter of 2020 as compared with the same period

Motion at ¶¶ 6, 8. In support, Insurers argue that Dr. Carnethon's opinion is (1) untimely, (2) irrelevant, and (3) that Dr. Carnethon is unqualified to speak about 24 Hour's sick hour data.

All of Insurers' contention lack merit and should be rejected.

### 1.    Dr. Carnethon's Opinion about 24 Hour's Sick Data is Not Untimely

Insurers first argue that Dr. Carnethon's declaration is untimely because it was purportedly submitted 108 days after the close of expert discovery and contains "new" opinions concerning 24 Hour's sick leave data. Allied Motion at ¶ 18; Property Motion at ¶ 8. These arguments are insufficient to exclude Dr. Carnethon's proposed testimony because such testimony is consistent with Dr. Carnethon's prior opinions.

An expert's statement that is consistent with an opinion or issue previously addressed in an expert report is not considered a new opinion. *Emcore Corp. v. Optium Corp., Civil Action No. 6-1202*, 2008 U.S. Dist. LEXIS 59794, at *11 (W.D. Pa. Aug. 5, 2008) (citing *Thompson v. Doane Pet Care Co.,* 470 F.3d 1201, 1203 (6th Cir. 2006) (the Federal Rules "do[] not limit an expert's testimony simply to reading his report. No language in the rule[s] would suggest such a limitation. The rule[s] contemplate[] that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."); *Lucent Techs. Inc. v. Gateway, Inc.,* 2007 U.S. Dist. LEXIS 36246, *15 (May 16, 2007) (declaration permitted to be used where it is more detailed than report because it does not offer new opinions on the issues, but rather just elaborates on them)).

---

in the previous year. It is reasonable to infer that the lack of available COVID-19 testing impacted 24 Hour's ability to monitor or track whether its employees had contracted the virus. It is also plausible, given the lack of available COVID-19 testing during this time period, that some proportion of 24 Hour's sick time incurred in the first quart of 2020 may have been attributed to COVID-19 and other communicable diseases." DKT No. 257-4 at ¶ 37. This Opposition assumes that this is the opinion Insurers seek to exclude and will address Insurers' Motion with this in mind. To the extent Insurers seek to exclude other aspects of Dr. Carnethon's opinions, those arguments should be disregarded.

To determine whether an expert's testimony has exceeded the scope of her report, "'***the Court has not required verbatim consistency with the report*** but has allowed testimony which is consistent with the report and is *a reasonable synthesis and/or elaboration* of the opinions contained in the expert's report.'" *Allergan USA, Inc. v. MSN Labs. Private Ltd.*, No. 19-1727-RGA, 2023 U.S. Dist. LEXIS 135710, at *3–4 (D. Del. Aug. 4, 2023) (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Ina, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008)) (emphasis added). Moreover, an expert may use new data or additional information to supplement her prior opinion. *Avco Corp. v. Turn & Bank Holdings, LLC*, No. 4:12-CV-01313, 2020 U.S. Dist. LEXIS 108566, at *14-15 (M.D. Pa. June 22, 2020) (holding that it will not exclude an expert's opinion utilizing "new data not available at the time that she drafted her original expert report" because an expert is permitted to supplement her report when she "receives newly produced information after submitting her expert report.") (internal citations omitted).

Here, Dr. Carnethon's reference to 24 Hour's sick hour data is consistent with her entire expert report and should not be considered a "new" or "untimely" opinion. *See* DKT No. 258-190. For example, the challenged statements in Dr. Carnethon's Declaration concern her discussion: (1) that the increase in sick hours affected 24 Hour's ability to trace COVID-19 and (2) that this increase in sick hours "may have been attributed to COVID-19 and other communicable diseases." Both statements are a reasonable synthesis and/or elaboration of the opinions provided in her expert report. *See e.g.*, DKT No. 258-190 at 2835 ("There was no capacity for community surveillance testing for the presence of SARSCoV-2 in the United States in March and April 2020. Consequently, the scientific consensus during this time was that COVID-19 was universally present (and spreading) throughout the United States, and that limiting interactions among people was the best strategy to stop continued spread."); *Id.* at 2852 ("Tracking asymptomatic spread of

the illness also was not possible in 2020 because there was limited testing capacity."); *Id.* ("in my professional opinion, it was in 2020, and is today, reasonable for 24HF to conclude that COVID-19 was actually present and spread at all of its locations in March 2020"); *Id.* at 2853 ("due to the fact that individuals with the common cold, flu and other respiratory illnesses undoubtedly visited each 24HF location during the cold and flu season, it would have been untenable for 24HF to stay open as discussed").

In sum, Dr. Carnethon does not offer a distinct opinion for 24 Hour's increased number of sick hours. Rather, Dr. Carnethon merely discussed this evidence to elaborate upon and further illustrate her already stated opinions. Insurers know this, which is why they do not articulate any basis for how Dr. Carnethon's statement is new or different from her original opinions. *See* Allied Motion at ¶¶ 17–18; Property Motion at ¶¶ 8–9. Thus, Insurers' conclusory assertions that Dr. Carnethon offers a new opinion should be disregarded and their Motion should be denied on this basis alone.

### 2.      Dr. Carnethon's Opinion is Relevant and Supported

Insurers next argue that Dr. Carnethon's opinion is irrelevant and not supported by reliable facts and data. Allied Motion at ¶ 19; Property Motion at ¶ 10. Again, Insurers do not articulate any clear reason for its conclusory statements, likely because they recognize that Dr. Carnethon's opinion is relevant to the ultimate issue of whether a virus was at 24 Hour's clubs during the relevant period.

Indeed, the "definition of relevant evidence is very broad." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004). Under the Federal Rules of Evidence, "relevant evidence means evidence ***having any tendency*** to make the existence of any fact that is of consequence to the determination of the action ***more probable or less probable*** than it would be without the evidence"; this "does not raise a high standard." *Id.* (citing Fed. R. Evid. 401)

(emphasis added). Simply, evidence does not need to definitively prove or disprove a fact at issue; "evidence is irrelevant only when it has no tendency to prove the fact." *Spain v. Gallegos*, 26 F.3d 439, 452 (3d Cir. 1994) (citing *Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992)).

Moreover, in an insurance case, the burden of proof "is proof by a preponderance of the evidence." *Buss v. Superior Court*, 16 Cal. 4th 35, 54 (1997). This standard is met when "the evidence [including circumstantial evidence] on one side outweighs, preponderates over, is more than, the evidence on the other side, not necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed." *Bichai v. DaVita, Inc.*, 72 Cal. App. 5th 1126, 1138 (2021); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 744 (1993). On summary judgment specifically, "the record need not contain direct evidence to create a genuine issue as to a material fact; ***circumstantial evidence which would allow a jury to find for the nonmovant is sufficient***." *Koons v. XL Ins. Am., Inc.*, 516 F. App'x 217, 221–22 (3d Cir. 2013) (emphasis added).[7]

Accordingly, to establish that a virus or communicable disease was present at an insured location, 24 Hour need only establish that it was "more likely than not" that one or more virus or communicable diseases were at any of its insured locations. *Tri-Union Seafoods, LLC*, 171 Cal. App. 4th at 1567. In meeting this standard, 24 Hour may rely on circumstantial evidence, the credibility of which must be judged by inference "based on human experience." *Vuckson v. United States*, 354 F.2d 918, 920 (9th Cir. 1966). On a motion for summary judgment, 24 Hour has a far lesser burden than at trial. It need only present sufficient evidence from which a jury *might*

---

[7]    *See also Hozier v. Midwest Fasteners, Inc.,* 908 F. 2d 1155, 1165 (3d Cir. 1990) ("[N]othing in Rule 56 prevents [plaintiffs] from creating a genuine issue of material fact by pointing to sufficiently powerful countervailing circumstantial evidence."); *Nationwide Mut. Ins. Co. v. William Hukill*, No. 4:CV-04-0399, 2005 U.S. Dist. Lexis 55993, at *6 (M.D. Pa. July 12, 2005); *Lipari v. Sullivan*, No. 17 CV 1566, 2018 U.S. Dist. Lexis 212127, at *30 (N.D. Ill. Dec. 17, 2018) ("[C]ircumstantial evidence can be enough to defeat a motion for summary judgment").

conclude that 24 Hour has met its burden. It is not for the Court to make the ultimate determination.[8]

Here, Dr. Carnethon's opinion regarding 24 Hour's sick hour data is a relevant piece of evidence to help establish that it was "more likely than not" that one or more viruses were at its clubs. This opinion elaborates on Dr. Carnethon's earlier statements regarding why 24 Hour could not fully track which of its employees had COVID-19 and why 24 Hour could not employ advanced contact tracing to prevent employees from spreading viruses at 24 Hour's clubs. Moreover, Dr. Carnethon's opinion is relevant because it will help the trier of fact understand the context of the pandemic and the issues regarding lack of widespread testing. For all these reasons, Dr. Carnethon's opinions are relevant.

Finally, to the extent that Insurers claim that Dr. Carnethon "asks this Court to impermissibly draw a further inference that, if 24 Hour had implemented a better testing protocol, it would have proof of the actual presence and spread of COVID-19 (or other communicable diseases) at its locations," such arguments should be disregarded as they are not what 24 Hour is arguing and are illogical in any event as there is no evidence that 24 Hour could have developed its own testing protocol in the winter and spring of 2020, when the facts demonstrate that federal and state governments were unable to develop effective testing protocols. Allied Motion at ¶ 19; Property Motion at ¶ 10. To be clear, Dr. Carnethon and 24 Hour do not ask this Court to draw an inference regarding some hypothetical testing program. Indeed, 24 Hour has consistently argued that testing was unavailable during the relevant period, such that it was not possible for anyone, including 24 Hour to provide the level of information the Insurers require. Instead, proof by a

---

[8]    *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (2016) ("The judge's inquiry [is] whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict.").

preponderance of the evidence is all that is required as in every other civil case. 24 Hour simply

seeks to rely on its expert epidemiologist's opinion, including her opinion regarding 24 Hour's

sick hour data, as part of its circumstantial case to demonstrate what is required under its insurance

policies to establish coverage.

### 3.     Dr. Carnethon Is Qualified To Opine About 24 Hour's Sick Time Data

Insurers also attack Dr. Carnethon's expertise and incorrectly claim she is unqualified to

offer her opinion because "[s]he has no experience or training in analyzing Sick Leave Data, nor

does she purport to apply the Bradford Holl criteria or any other reliable methodology to reach her

second new opinion." Allied Motion at ¶ 20; Property Motion at ¶ 11. These arguments are

unequivocally wrong.

To be qualified to render an opinion, a witness must possess specialized "knowledge, skill,

experience, training, or education. . . ." Fed. R. Evid. 702. The Third Circuit has emphasized that

the "'specialized expertise' requirement is a liberal one: 'a broad range of knowledge, skills, and

training [may] qualify an expert as such.'" *De La Cruz v. V.I. Water & Power Auth.*, 597 F. App'x

83, 91 (3d Cir. 2014) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)).

The trial court is not responsible for determining "the best possible training for an expert and

restrict testimony to those who possess it." *De La Cruz*, 597 F. App'x at 91. As such, this Circuit

has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with

[an expert's] generalized qualifications." *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 741 (3d

Cir. 1994).

As stated above, Dr. Carnethon is not offering a new opinion, she is simply supporting her

original opinions with additional data. *See supra* Section B.1. Moreover, Dr. Carnethon does not

purport to analyze the sick leave data. She simply uses the information provided by 24 Hour to

further explain her opinions and conclusions. As explained in DKT No. 275, Dr. Carnethon is an

expert epidemiologist and her work concerns investigating the presence of diseases and how such diseases spread among populations. Moreover, Dr. Carnethon has specific experience in the prevalence of SARS-CoV-2. Ultimately, Dr. Carnethon is qualified to speak about how an increase in sick employees at 24 Hour may mean that those employees were sick with COVID-19 or other respiratory illnesses.

## C. Insures are not Prejudiced by Dr. Carnethon's Declaration and any Purported Prejudice can Easily be Cured

Insurers also argue that they are prejudiced by Dr. Carnethon's reliance on 24 Hour's sick hour data and, as such, her opinions should be excluded. *See* Allied Motion at ¶ 17; Property Motion at ¶ 8. Insurers claim that they have not "heard of Ms. Healon or the sick hour data" she provides, nor have Insurers had an opportunity to depose Ms. Healon or Dr. Carnethon on this sick hour data.[9] *Id.* As discussed above, Dr. Carnethon's Declaration is not untimely. But even if this Court is persuaded that Insurers may be prejudiced by its admission, any prejudice can easily be cured.

Indeed, a court should not strike an expert's proposed testimony based on an untimely disclosure "if the prejudice to the opposing party is slight and curable—particularly in the absence of a firm, impending trial date." *Brown v. Robert Packer Hosp.*, 341 F.R.D. 570, 574 (M.D. Pa. 2022) (citing *White v. Beaver County*, 2019 U.S. Dist. LEXIS 182357, 2019 WL 5395212, at *2–3 (W.D. Pa. Oct. 22, 2019) (declining to strike plaintiff's expert report when "(1) the prejudice to the Defendant is slight; (2) any prejudice can be cured by a brief extension of the case-management schedule; (3) Plaintiff's untimely filing is unlikely to disrupt trial of the case because no trial date has yet been set; and (4) in the Court's estimation, the Plaintiff did not act in bad faith")).

---

[9]    Of note, Insurers only filed a motion to exclude Dr. Carnethon's proposed expert testimony. Insurers do not actually object to or file a motion to exclude Ms. Healon's declaration or the sick hour data she provides.

Rather, a court is permitted to reopen discovery for limited purposes or adjusting the case schedule to avoid any prejudice to a party. *See e.g.*, *United States v. Johnson & Johnson*, Civil Action No. 12-7758 (MAS) (LHG), 2021 U.S. Dist. LEXIS 256277, at *15 (D.N.J. June 14, 2021) ("Having found that any prejudice is not disproportionate to the needs of the case, the Court further finds that any prejudice to [a party] can be reduced by making the New Witnesses available for deposition and by giving the parties reasonable time to adjust their expert cases."); *White v. Beaver Cty.,* No. 2:17-CV-00998, 2019 U.S. Dist. LEXIS 182357, 2019 WL 5395212, at *2 (W.D. Pa. Oct. 22, 2019) (finding that the court can "adjust the case-management deadlines to mitigate any prejudice the Defendant might face" by allowing an untimely expert report); *Ely v. Cabot Oil & Gas Corp.*, No. 09-2284, 2014 U.S. Dist. LEXIS 40930, 2014 WL 1276487, at *8 (M.D. Pa. Mar. 27, 2014) ("[T]rial in this matter has not been scheduled, and small modifications to the pretrial schedule can be made that are tailored to alleviating the prejudice to the Defendants while avoiding the exclusion of important evidence in [the] case. . . ."); *Johnson v. Fed. Exp. Corp.*, No. 1:12-CV-444, 2014 U.S. Dist. LEXIS 1763, 2014 WL 65761, at *3 (M.D. Pa. Jan. 8, 2014) (finding that "the court may ameliorate any prejudice . . . suffered [by the party against whom the expert opinions are offered] from the introduction of new witnesses . . . by allowing for additional depositions."); *Merchs. Ins. Co. of N.H. v. 3 R Painting & Contracting Co.*, No. 06-1602, 2008 U.S. Dist. LEXIS 47564, 2008 WL 2478387, at *3 (D.N.J. June 18, 2008) ("[A]llowing discovery to be reopened strictly for the purposes of deposing [the non-disclosed expert] will not disrupt the trial schedule in this case. Indeed, at present, the Court has yet to set a trial date.").

Here, to the extent Insurers argue that they need to depose Ms. Healon and/or Dr. Carnethon regarding 24 Hour's sick time data because they are "prejudiced," the Insurers can take limited depositions of these witnesses on regarding these issues. This will not seriously alter any case

- 11 -

schedule since no trial date has even been set. Such limited depositions should alleviate any purported concerns, especially considering that Insurers have claimed, repeatedly, that there is no coverage under its policies for 24 Hour's claims. In any event, if the Insurers really believed the challenged evidence had no bearing on the case, they would not be fighting hard to excluded. The fact the Insurers are going to great lengths to exclude this evidence, by itself, demonstrates its relevance and suggests that it should not be stricken and, at most, should be subject to some additional limited discovery.

Insurers also argue that 24 Hour "did not produce the Sick Hour Data during discovery" and asserts it "expressly requested" such information from 24 Hour. Allied Motion at ¶ 17, fn. 5; Property Motion at ¶ 8, fn. 5. Insurers arguments are misleading.

In fact, Insurers' Requests for Production largely consisted of overly-broad requests for any information which 24 Hour might use in support of its coverage case. For example, Insurers cite Allied World's Request for Production Nos. 17 and 19 and Property Insurers' Requests for Production Nos. 42 and 50 to claim that they specifically requested such information.[10] But Insurers ignore that 24 Hour objected to such requests because they were overbroad and premature. Additionally, this sick leave data does not "pertain[] to . . . sampling, and testing of any virus and/or microbial contaminant" at 24 Hour's clubs. As Ms. Healon explained in her declaration, she personally prepared sick leave data by extracting data from the payroll software system.

---

[10]    Allied World's Request for Production No. 17 and Property Insurers Request for Production No. 42 sought "All documents, including without limitation all data, information, test results, laboratory reports or results, and/or analyses and/or assessments, pertaining to any samples collected in connection with any actions or circumstances alleged in the Complaint, including without limitation any sampling, and testing of any virus and/or microbial contaminant, including surface and/or environmental testing, on, at or under any of the Scheduled Locations." Allied World's Request for Production No. 19 and Property Insurers Request for Production No. 50 sought "All exhibits, regardless of date, that You intend to introduce at trial or in support of a summary judgment motion in the present action in connection with Your claim for Business Interruption under the Policy."

Moreover, 24 Hour is not required to produce ***all exhibits*** it intends to introduce at trial at the start of discovery. *See* Fed. R. Civ. P. 26; *Marcum v. Colum. Gas Transmission, LLC*, 658 F. Supp. 3d 252, 266 (E.D. Pa. 2023) (explaining that Federal Rule of Civil Procedure 26(a) only requires a party to disclose its trial documents and exhibits at least thirty days before trial, unless the court orders otherwise).

24 Hour determined only after receiving Insurers' motions for summary judgment that it might be helpful to analyze whether there were increased sick hours during the pandemic as compared to prior periods. Only after it received the Insurers' motions and reviewed the arguments they were making did 24 Hour consider that this data might be relevant. 24 Hour is entitled to present whatever facts it can muster in response to a motion for summary judgment. In any event, any purported prejudice to Insurers can be cured by some additional limited to discovery, if the Court deems it appropriate. Thus, there is no reason for this Court to exclude Dr. Carnethon's opinions based on 24 Hour's sick hour data. Nor is there any reason for this Court to exclude Ms. Healon's declaration, to the extent Insurers seeks such a remedy.

<u>**CONCLUSION**</u>

For the foregoing reasons, Insurers' Motion to Exclude the proposed testimony of Dr. Carnethon should be in full. The facts and legal precedent show that (1) Dr. Carnethon has not offered a new opinion, and (2) all of Dr. Carnethon's opinions are admissible under precedent outlined by the Third Circuit and the Supreme Court of the United States.

Dated: March 1, 2024

Respectfully submitted,

**REED SMITH LLP**

*/s/ Mark W. Eckard*
Mark W. Eckard (No. 4542)

1201 North Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
(302) 778-7575 (Fax)
meckard@reedsmith.com

David E. Weiss (admitted *pro hac vice*)
T. Connor O'Carroll (admitted *pro hac vice*)
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
(415) 543-8700
(415) 391-8269 (Fax)
dweiss@reedsmith.com
cocarroll@reedsmith.com

*Counsel for Plaintiff 24 HOUR FITNESS
WORLDWIDE, INC.*