**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RS FIT NW LLC, | ) | |
| | ) | Case No. 20-11568 (TMH) |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| 24 HOUR FITNESS WORLDWIDE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY; | ) | Adv. Pro. No. 20-51051 (TMH) |
| ENDURANCE AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY; STARR SURPLUS | ) | |
| LINES INSURANCE COMPANY; ALLIANZ | ) | |
| GLOBAL RISKS US INSURANCE COMPANY; | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY; | ) | |
| BEAZLEY-LLOYD'S SYNDICATES 2623/623; | ) | |
| ALLIED WORLD NATIONAL ASSURANCE | ) | |
| COMPANY; QBE SPECIALTY INSURANCE | ) | |
| COMPANY; and GENERAL SECURITY | ) | |
| INDEMNITY COMPANY OF ARIZONA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**REPLY OF THE PROPERTY INSURERS TO PLAINTIFF 24 HOUR FITNESS WORLDWIDE, INC.'S OPPOSITION TO PROPERTY INSURERS' MOTIONS TO EXCLUDE DR. CARNETHON'S PROPOSED EXPERT TESTIMONY**

Defendants Continental Casualty Company ("Continental"), Starr Surplus Lines Insurance Company ("Starr"), Allianz Global Risks US Insurance Company ("Allianz"), Liberty Mutual Insurance Company ("Liberty Mutual"), Certain Underwriters at Lloyd's ("Underwriters"), Allied World National Assurance Company ("Allied World"), QBE Specialty Insurance Company ("QBE"), and General Security Indemnity Company of Arizona ("GSINDA") (collectively, the "Property Insurers"), by and through their undersigned counsel, hereby submit this reply (this

"<u>Supplemental Reply</u>")[1] to *Plaintiff 24 Hour Fitness Worldwide, Inc.'s Opposition to Insurers'*
*Motions to Exclude Dr. Carnethon's Proposed Expert Testimony* [Adv. D.I. 300] (the
"<u>Supplemental Opposition</u>").  In support of this Supplemental Reply, the Property Insurers
respectfully state as follows:

## PRELIMINARY STATEMENT

1.      In support of its claim for insurance coverage under the Policies' Interruption by
Communicable Disease ("<u>ICD</u>") provision, 24 Hour initially offered the opinion of Dr. Mercedes
Carnethon.  Dr. Carnethon opined that it was reasonable for 24 Hour to close all of its insured
locations across the country based on the assumption that COVID-19 was present and spreading
at each location.  At her deposition, Dr. Carnethon admitted that she had no opinion whether
COVID-19 was ***actually*** present and spreading at any location and, incredibly, was not even asked
to offer such an opinion.

2.      Apparently recognizing this evidentiary gap in its case, 24 Hour filed a declaration
from Dr. Carnethon in support of its Motion for Summary Judgment, wherein Dr. Carnethon
opined for the first time that the flu was present and spreading at 24 Hour locations across
California.  The Property Insurers filed a Motion to Exclude Dr. Carnethon's testimony based, in
part, on the fact that she was offering a new "flu opinion" that she did not disclose in her report or
at her deposition.

3.      With this new "flu opinion" also at risk, 24 Hour offered a second declaration from
Dr. Carnethon in support of its Opposition to the Defendants' Motions for Summary Judgment

---

[1]      The Adversary Proceeding is a non-core proceeding within the meaning of 28 U.S.C. § 157(b). (*See* Adv.
D.I. 68). The Property Insurers have not consented to this Court's entry of final judgments in this Adversary
Proceeding. (*See* Adv. D.I. 37 at ¶ 15; Adv. D.I. 40 at ¶ 15; Adv. D.I. 43 at ¶ 15; Adv. D.I. 49 at ¶ 15; Adv. D.I. 53 at
¶ 15; and Adv. D.I. 56 at ¶ 15). By filing this Supplemental Reply to the Supplemental Opposition, the Property
Insurers do not consent to entry of final judgments by this Court in this Adversary Proceeding or otherwise waive any
rights with respect to withdrawal of the reference, all of which rights are reserved.

[Adv. D.I. 257-4] (the "<u>Second Carnethon Declaration</u>").  In this Second Carnethon Declaration, Dr. Carnethon offers yet another new opinion (486 days after the expert disclosure deadline), this time based on 24 Hour sick leave data ***that was never provided to the Defendants during discovery*** (the "<u>Second New Opinion</u>").  Specifically, Dr. Carnethon, relying on this newly disclosed information, opines that, "[i]t is also plausible, given the lack of available COVID-19 testing during this time period, that some proportion of 24 Hour's sick time incurred in the first quart[er] of 2020 may have been attributed to COVID-19 and other communicable diseases."  Second New Op. at ¶ 37.  24 Hour offers no excuse for why it waited 486 days to disclose the sick leave data and reveal Dr. Carnethon's Second New Opinion.

4.      In addition to being untimely, Dr. Carnethon does not explain what analysis, if any, she undertook of the sick leave data to reach her Second New Opinion.  Nor does she explain how her experience as an epidemiologist qualified her to analyze sick leave data and opine on whether any of the purportedly sick employees had COVID-19 or some other communicable disease.

5.      Accordingly, the Property Insurers have moved to exclude Dr. Carnethon's Second New Opinion on the grounds that it is untimely, irrelevant, and unsupported, and she is not qualified to offer such an opinion.

6.      24 Hour's attempts to salvage Dr. Carnethon's Second New Opinion fall flat.  First, 24 Hour suggests that Dr. Carnethon's Second New Opinion is "consistent with her prior opinions."  Supp. Opp. at 4.  Not so.  Nowhere in her report or at her deposition did Dr. Carnethon opine about sick leave or what it might or might not mean about employee illnesses.  Second, 24 Hour argues that Second New Opinion is relevant as "circumstantial evidence" of the actual presence and spread of COVID-19 at 24 Hour insured locations.  But again, Dr. Carnethon's "opinion" about whether the 24 Hour employees who took sick leave had COVID-19 or some

other communicable disease is inadmissible speculation with no evidentiary foundation.  And finally, 24 Hour does not explain how or why Dr. Carnethon is qualified to speculate about what might have caused the 24 Hour employees to take sick leave.

7.      The Property Insurers submit that there is no basis to allow Dr. Carnethon to continue to render new, unchallenged opinions, and respectfully ask this Court to exclude Dr. Carnethon's Second New Opinion.

## **RELEVANT BACKGROUND**

8.      On January 12, 2024, the Property Insurers filed the *Motion of the Property Insurer Defendants to Exclude Dr. Carnethon's Proposed Expert Testimony* [Adv. D.I. 249] (the "Motion to Exclude").  On February 12, 2024, Plaintiff 24 Hour Fitness Worldwide, Inc. ("24 Hour") filed its *Opposition to Property Insurer Defendants' Motion to Exclude Dr. Carnethon's Proposed Expert Testimony* [Adv. D.I. 275].  On March 1, 2024, the Property Insurers filed the *Reply of the Property Insurers to Plaintiff 24 Hour Fitness Worldwide, Inc.'s Opposition to Property Insurer Defendants' Motion to Exclude Dr. Carnethon's Proposed Expert Testimony* [Adv. D.I. 296] (the "Initial Reply").

9.      Additionally, on February 12, 2024, the Property Insurers filed the *Supplement to the Motion of the Property Insurer Defendants to Exclude Dr. Carnethon's Proposed Expert Testimony* [Adv. D.I. 271] (the "Motion to Exclude Supplement").  On March 1, 2024, 24 Hour filed its Supplemental Opposition.[2]  In accordance with the *Order Approving Stipulated Scheduling Order* [Adv. D.I. 295], the Property Insurers hereby file this Supplemental Reply.

---

[2]      In a footnote, 24 Hour argues, "Insurers do not actually object to or file a motion to exclude Ms. Healon's declaration or the sick hour data she provides."  Supp. Oppo. at 10 n.9.  That is false.  In fact, the Property Insurers have requested on multiple occasions that this Court exclude the Healon Declaration in its entirety.  *See Property Insurer Defendants' Reply in Support of Their Motion for Summary Judgment* [Adv. D.I. 267] at 5 ("The Court should therefore exclude Healon's Declaration in its entirety and not consider it on summary judgment."); Mot. to Exclude Supp. at ¶ 5 ("[T]he Property Insurers are also asking this Court to exclude the Healon Declaration and the exhibits thereto.").

## <u>REPLY</u>

**A. Dr. Carnethon's Second New Opinion Is Untimely.**

10.     24 Hour argues that Dr. Carnethon's Second New Opinion is not untimely because it is not a new opinion, but instead is "consistent with her entire expert report." Supp. Opp. at 5. 24 Hour goes so far as to tell this Court: "Dr. Carnethon does not purport to analyze the sick leave data. She simply uses the information provided by 24 Hour to further explain her opinions and conclusions." Supp. Opp. at 9. This is simply wrong.

11.     First, Dr. Carnethon absolutely "purport[s] to analyze the sick leave data" when she concludes that "It is also plausible … some proportion of 24 Hour's sick time incurred in the first quart[er] of 2020 may have been attributed to COVID-19 and other communicable diseases." Second New Op. at ¶ 37. While Dr. Carnethon does not explain what analysis she performed to arrive at this new opinion (or, more accurately, speculation), presumably she could not do so without doing analyzing the data.[3]

12.     Second, Dr. Carnethon's Second New Opinion is not "consistent with her entire expert report," nor is it "a reasonable synthesis and/or elaboration of the opinions" contained in her expert report. Dr. Carnethon's expert report offered one principal opinion—24 Hour's decision to close all of its gyms was reasonable because it assumed that COVID-19 was present and spreading at all of its locations. Dr. Carnethon's Second New Opinion is that because more employees purportedly took sick leave in the first quarter of 2020 than in the prior year, the 24 Hour employees who took sick leave may have had COVID-19 or some other unknown communicable disease. That is not consistent with, nor a synthesis or elaboration of, her prior

---

[3]     Dr. Carnethon's pure, unsupported speculation should be excluded. *See, e.g.*, *Hoefling v. U.S. Smokeless Tobacco Co., LLC*, 576 F. Supp. 3d 262, 275 (E.D. Pa. 2021) (rejecting expert opinion making "'speculative leaps'" in claiming that a causal link exists simply because it is biologically plausible").

opinion and the cases cited by 24 Hour are, therefore, distinguishable.  It is an entirely new opinion about sick leave data that was never produced, speculating about the reasons why the employees took the sick leave.[4]  That new opinion is nowhere in Dr. Carnethon's expert report and was not disclosed during her deposition.

13.     Third, Dr. Carnethon's opinion is clearly new—she is relying upon information not referred to anywhere in her report, but rather was disclosed for the first time in the Healon Declaration, which also is not referred to in her original report.  Specifically, nowhere in Dr. Carnethon's report did she address purported increases in the number of 24 Hour employees who reported sick or any details regarding any employees who may or may not have had COVID-19 or refer to any information about sick hours at 24 Hour facilities.  Nor did Dr. Carnethon identify documents about sick leave as information she relied upon in generating her report.  (*See* Exh. A-17) (Carnethon Report at Ex. B).

14.     Courts have excluded new opinions that rely upon data that was not previously disclosed.  *See, e.g.*, *Krys v. Aaron*, 112 F. Supp. 3d 181 (D.N.J. 2015) (excluding new opinion that relied upon document not referred to in expert's original report).  This is precisely what Dr. Carnethon does here, even though she does not actually cite the data itself, but rather states vaguely that she somehow developed an understanding regarding 24 Hour's sick leave data without actually disclosing how she developed that understanding—which itself is impermissible.

15.     24 Hour attempts to save Dr. Carnethon's Second New Opinion from exclusion by arguing that the Property Insurers have not been prejudiced by 24 Hour's decision to wait 486 days after the expert disclosure deadline to offer this new opinion.  24 Hour also suggests that, even if

---

[4]     Indeed, throughout its Supplemental Opposition, 24 Hour refers to the Carnethon Second New Opinion as an "opinion regarding 24 Hour's sick hour data."  *See* Supp. Opp. at 9 ("Dr. Carnethon's opinion regarding 24 Hour's sick hour data,"), 9 ("Dr. Carnethon is qualified to opine about 24 Hour's sick time data,"), and 13 ("There is no reason . . . to exclude Dr. Carnethon's opinions based on 24 Hour's sick hour data.").

there is prejudice, the Court could re-open discovery (which has been closed for 140 days) so that the Property Insurers could re-depose Dr. Carnethon on her new opinions and depose Ms. Healon (the proponent of the sick leave data) for the first time.  That argument is absurd and should be rejected.

16.    In support of its argument to re-open discovery, 24 Hour quotes from factually distinguishable cases outside this District.  This is so because courts in this District have routinely rejected such arguments.  For example, in *Stambler v. RSA Security, Inc.*, 212 F.R.D. 470 (D. Del. 2003), the defendants sought to belatedly introduce testimony from previously unidentified witnesses.  *Id.* at 471.  The defendants acknowledged failing to previously disclose these witnesses but argued that plaintiff would not be prejudiced because the court could allow plaintiff to depose those witnesses.  *Id.* at 472.  In language that could not be clearer or more applicable to this case, the Court rejected the argument, holding:

> [R]e-opening the fact record through depositions at this late stage would impede the court's ability to manage its docket.  First the fact record would be re-opened, and then the summary judgment briefs would need to be supplemented to account for the revised record.  This is impractical (not to mention disorderly and inefficient) at this late stage.  In every trial there comes a time when discovery must be closed for the issues to be resolved through summary judgment and/or trial.  In the case at bar, that time has long since passed.

*Id.*

17.    *Stambler* is directly on point.  Expert disclosures were due **_520 days ago_**, fact discovery closed **_525 days ago_**, and expert discovery closed **_140 days ago_**.  The parties' summary judgment motions are fully briefed.  But perhaps most importantly, the Property Insurers' experts have already issued reports and have been deposed, without having the opportunity to review and respond to Dr. Carnethon's new opinions.  Allowing 24 Hour's untimely new evidence (sick leave data), previously undisclosed fact witness (Healon) and new expert opinions from Dr. Carnethon would be "impractical . . . disorderly and inefficient at this late stage." *Stambler*, *supra*.  Just by

way of example, the Property Insurers would have to: (1) seek additional document discovery related to the sick leave data (only the summary chart was produced, not the underlying data); (2) depose Ms. Healon; (3) obtain whatever additional documents and analysis Dr. Carnethon relied upon for her new opinions; (4) re-depose Dr. Carnethon; (5) amend their expert reports to respond to Dr. Carnethon's new opinions; (6) make their experts available to be re-deposed on the response to Dr. Carnethon's new opinions; and (7) supplement their summary judgment briefing.  This would substantially and unfairly prejudice the Property Insurers and is precisely the type of late-inning case disruption the *Stambler* court rejected.

18.    This is particularly true here where 24 Hour offers no credible explanation for why it waited 486 days to disclose Ms. Healon, the sick leave data, or Dr. Carnethon's Second New Opinion.  At best, 24 Hour asserts that, after reviewing the Property Insurers' summary judgment motions, it "thought it might be helpful to analyze whether there were increased sick hours during the pandemic."  Supp. Opp. at 13.  But 24 Hour does not identify any new defenses in those motions—and there is nothing.  The Property Insurers have argued from the very beginning of this case that 24 Hour cannot prove that COVID-19 was actually present and spreading at any insured location, and therefore is not entitled to ICD coverage.  *See, e.g.*, *Answer of Continental Casualty Company* [Adv. D.I. 40] at ¶ 98.  There is simply no excuse for the inordinate delay.

19.    Finally, 24 Hour makes the strange argument that it was not required "to produce *all exhibits* it intends to introduce at trial at the start of discovery" in purporting to explain why it did not previously disclose the sick leave data.  Supp. Opp. at 13 (emphasis in original).  But neither the Healon Declaration, Dr. Carnethon's Second New Opinion, nor the previously unproduced sick leave data are "exhibits."  Nor is this the *start* of discovery.  Moreover, even if, as 24 Hour apparently now claims, it did not understand that it needed to produce the data cited in

the Healon Declaration in response to the specific document requests identified by the Property Insurers, 24 Hour certainly cannot dispute that it had the obligation under to Fed. R. Civ. P. 26(a) to disclose documents or categories of documents it may rely upon to support its claims or defenses.  The sick leave data now relied upon by 24 Hour does not fall within the categories of documents it identified in its initial disclosures as documents that it may rely upon.  *See Plaintiff's Rule 26(a)(1) Disclosure Statement* at 8–9.  Indeed, 24 Hour has still not produced the underlying information supporting the sick leave data referenced in the Healon Declaration.  This information should have been disclosed in accordance with the Case Management Order while fact discovery was open, and 24 Hour's failure to do so requires that it be excluded.

**B.  Dr. Carnethon's Second New Opinion Is Irrelevant and Unsupported.**

20.    The issue in this case to which Dr. Carnethon's opinions are directed is whether there is any evidence that COVID-19 was actually present and spreading at any 24 Hour insured location.  24 Hour contends that Dr. Carnethon reviewed the sick leave data to opine that "it was more likely than not that one or more viruses were at [24 Hour's] clubs."  Supp. Opp. at 8.  But Dr. Carnethon's speculation about whether the sick leave data indicates that any 24 Hour employee had COVID-19 or some other communicable disease at some point in time is not circumstantial evidence of presence and spread.  Dr. Carnethon opines that "some proportion of 24 Hour's sick time incurred in the first quart[er] of 2020 may have been attributed to COVID-19 and other communicable diseases."  Second New Op. at ¶ 37.  Dr. Carnethon does not state how she came to her understanding of or what statistical analysis she performed regarding the reliability and significance of the data she purports to rely upon.[5]  She does not even opine that any particular 24

---

[5]    Among other things, Dr. Carnethon fails to discuss whether the purported increase in sick leave data is within the standard deviation of upticks in percentage of sick leave compared to prior years, prior pay periods, or whether any other factors could have contributed to such purported increase.

Hour employee actually had COVID-19 (or any other communicable disease) and, even if she/he did, that the employee was present at an insured location with the virus. Nor does Dr. Carnethon's speculation make it more likely than not that COVID-19 was spreading at any insured location.

21.     Rather, by her own declaration, Dr. Carnethon simply speculates that some sick leave hours "may" have been attributed to COVID-19 or another, unspecified communicable disease. At best, Dr. Carnethon speculates about possible illnesses that may be reflected in the sick leave data, without any explanation for how or why she arrives at her opinion. That is not admissible circumstantial evidence that is relevant to whether COVID-19 was actually present or spreading at a 24 Hour gym. *See* cases cited in the *Reply of the Property Insurers to Plaintiffs 24 Hour Fitness Worldwide, Inc.'s Opposition to Property Insurer Defendants' Motion to Exclude Dr. Carnethon's Proposed Expert Testimony* [Adv. D.I. 296] at ¶¶ 14–15.

22.     Dr. Carnethon's Second New Opinion also is completely without evidentiary support. *See* Fed. R. Evid. 702(b). Nowhere does Dr. Carnethon explain how or why the sick leave data supports her opinion that the "sick time incurred in the first quart[er] of 2020 may have been attributed to COVID-19 and other communicable diseases." Second New Op. at ¶ 37. Did she analyze the underlying data? Did she speak with any of the employees? Did she review the employees' health records? Did she speak with Ms. Healon? Did she review past sick leave data? Did she evaluate where each employee worked? Did she analyze sick leave data from other businesses? In short, the Property Insurers are left to guess at how and why Dr. Carnethon reached her Second New Opinion, and it therefore should be excluded.

## C. Dr. Carnethon's Is Not Qualified to Render Her Second New Opinion.

23.     Finally, there is no real dispute that Dr. Carnethon has no experience or training in analyzing sick leave data or drawing conclusions from such data. 24 Hour does not dispute this

point.  Instead, 24 Hour argues that "Dr. Carnethon does not purport to analyze the sick leave data." Supp. Opp. at 9.  Well, if Dr. Carnethon does not analyze the sick leave data, what does she do with it?  How could she conclude that the "sick time incurred in the first quart[er] of 2020 may have been attributed to COVID-19 and other communicable diseases" if she did not analyze the data?

24.     Instead, 24 Hour argues that Dr. Carnethon is an epidemiologist and therefore she is somehow "qualified to speak about how an increase in sick employees at 24 Hour may mean that those employees were sick with COVID-19 or other respiratory illnesses." Supp. Opp. at 9–10. But 24 Hour fails to identify any experience or expertise that would qualify an epidemiologist to speculate about the illness of an employee from sick leave data.  Not surprisingly, 24 Hour does not (and cannot) point to any study, publication, research or other data to suggest that Dr. Carnethon can interpret sick leave data and opine on the cause of an employee's illness.  It is nothing more than *ipse dixet*, and it should be excluded.  *See, e.g.*, *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000) (excluding expert who based his opinions on *ipse dixit*).

**WHEREFORE**, the Property Insurers respectfully request that this Court grant the Property Insurers' Motion to Exclude Supplement and grant such other and further relief as the Court deems just and proper.

Dated: March 15, 2024

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Matthew S. Sarna*
Matthew S. Sarna (Bar No. 6578)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
302.468.5700
302.394.2341 (Fax)
Email: matthew.sarna@us.dlapiper.com

Brett Ingerman (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209-3600
410.580.3000
410.580.3001 (Fax)
Email: brett.ingerman@us.dlapiper.com

*Attorneys for Continental Casualty Company*

**HOGAN McDANIEL**

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (No. 4167)
1311 Delaware Avenue
Wilmington, DE 19806
(302) 656-7596
(302) 656-7599 (Fax)
gfmcdaniel@dkhogan.com

12

Benjamin W. Loveland (admitted *pro hac vice*)
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
(617) 526-6641
benjamin.loveland@wilmerhale.com

Lauren R. Lifland (admitted *pro hac vice*)
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
lauren.lifland@wilmerhale.com

*Counsel to Continental Casualty Company; Starr
Surplus Lines Insurance Company; Allianz Global
Risks US Insurance Company; Certain Underwriters
at Lloyd's of London subscribing to Policy No.
W27C0A190101; incorrectly sued as "Beazley-
Lloyd's Syndicates 2623/623"; QBE Specialty
Insurance Company and General Security Indemnity
Company of Arizona*

**GELLERT SCALI BUSENKELL & BROWN,
LLC**

*/s/ Michael Busenkel*
Michael Busenkell (DE No. 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
(302) 425-5812
mbusenkell@gsbblaw.com

Richard G. Haddad (admitted *pro hac vice*)
Andrew S. Halpern
**OTTERBOURG, P.C.**
230 Park Avenue
New York, NY 10169-0075
(212) 661-9100
rhaddad@otterbourg.com
ahalpern@otterbourg.com

**SELMAN LEICHENGER EDSON HSU NEWMAN MOORE LLP**
Elizabeth M. Brockman (admitted *pro hac vice*)
Calvin S. Whang (admitted *pro hac vice*)
10880 Wilshire Blvd., Suite 1200
Los Angeles, CA 90024
(310) 445-0800

*Counsel to Allied World National Assurance Company*

Deanna M. Manzo (admitted *pro hac vice*)
**MOUND COTTON WOLLAN & GREENGRASS, LLP**
One New York Plaza
New York, NY 10004
Telephone: (212) 804-4200
dmanzo@moundcotton.com

*Counsel to Allied World National Assurance Company*

Marlie McDonnell (admitted *pro hac vice*)
**CLYDE & CO US LLP**
271 17th Street NW, Suite 1720
Atlanta, GA 30363
(404) 410-3150
marlie.mcdonnell@clydeco.us

*Counsel to Allianz Global Risks US Insurance Company*

Courtney E. Murphy (admitted *pro hac vice*)
Kyle M. Medley (admitted *pro hac vice*)
Adam S. Cohen (admitted *pro hac vice*)
**HINSHAW & CULBERTSON LLP**
800 Third Avenue, 13th Floor
New York, NY 10022
(212) 471-6200
cmurphy@hinshawlaw.com

*Counsel to Starr Surplus Lines Insurance Company and Certain Underwriters at Lloyd's of London subscribing to Policy No. W27C0A190101, incorrectly sued as "Beazley-Lloyd's Syndicates 2623/623"*

14

Gerald P. Dwyer, Jr. (admitted *pro hac vice*)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
(860) 275-8331
gdwyer@rc.com

Joel L. McNabney (admitted *pro hac vice*)
**ROBINSON & COLE LLP**
777 Brickell Ave, Suite 680
Miami, FL 33131
(786) 725-4119
jmcnabney@rc.com

Douglas R. Gooding (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
**CHOATE, HALL & STEWART LLP** Two
International Place
Boston, MA 02110
(617) 248-5000
dgooding@choate.com
jmarshall@choate.com

*Counsel to Liberty Mutual Fire Insurance Company*

Elizabeth Kniffen (admitted *pro hac vice*)
Dennis Anderson (admitted *pro hac vice*)
**ZELLE LLP**
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55415
(612) 359-4261
ekniffen@zellelaw.com
danderson@zellelaw.com

*Counsel to QBE Specialty Insurance
Company and General Security Indemnity Company
of Arizona*